Case 1:23-cv-00419-WMS-MJR Document 1-15 Filed 05/11/23 Page 1 of 271

STATE OF NEW YORK
SUPREME COURT:    COUNTY OF ERIE

ERIC C. MARTIN,

*Plaintiff,*

v.

TOWN OF TONAWANDA
POLICE DEPARTMENT
o/b/o the TOWN OF TONAWANDA,

SPEEDWAY, LLC,

JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8
as employees of Defendant,
TOWN OF TONAWANDA
POLICE DEPARTMENT,

*Defendants.*

**MOTION TO COMPEL**

**Index** No: 808523/2021

| | |
|---|---|
| **MOTION MADE BY**: | John Feroleto, Esq., attorney for Plaintiff. |
| **DATE, TIME AND OF MOTION:** | May 19, 2022 at 9:30am, before the Hon. Catherine Nugent-Panepinto, J.S.C., 92 Franklin Steet, Part 3, Buffalo, New York 14202. |
| **SUPPORTING PAPERS**: | Affirmation of John Feroleto, Esq., dated April 20, 2022 with attached exhibits. |
| **RELIEF REQUESTED**: | An Order compelling Defendants to provide full and complete responses to all of Plaintiff's discovery demands including Plaintiffs' Omnibus Demands, Request for Documents and Discovery, including training material and disciplinary records of the identified officers, Comply with CPLR § 3122(b), and identify discovery withheld with a privilege log identifying the reason discovery is withheld within 30 days or Defendants' Answer be stricken, and such other and further relief as this Court deems just and proper. |

Case 1:23-cv-00419-WMS-MJR  Document 1-15  Filed 05/11/23  Page 2 of 271

Pursuant to CPLR §2214(b), answering affidavits, if any, are required to be served upon the undersigned at least seven days before the return date of this motion.

DATED:    April 20, 2022
          Buffalo, New York

                                        _____
                                        JOHN P. FEROLETO, ESQ.
                                        FEROLETO LAW
                                        *Attorneys for Plaintiffs*
                                        438 Main Street, Suite 910
                                        Buffalo, New York 14202
                                        Telephone: (716) 854-0700

TO:   **PAUL G. JOYCE, ESQ.**
      **MARC S. SMITH, ESQ.**
      **COLUCCI & GALLAHER, P.C.**
      *Attorneys for Defendant The Town of Tonawanda*
      *Police Department o/b/o The Town of Tonawanda*
      2000 Liberty Building
      424 Main Street
      Buffalo, New York 14202
      Telephone: (716) 853-4080

CC:   **BRITTANY L. HANNAH, ESQ.**
      **SUGARMAN LAW FIRM, LLP**
      *Attorneys for Speedway LLC*
      211 West Jefferson Street, Suite 20
      Syracuse, New York 13202
      Telephone: (315) 474-2943

STATE OF NEW YORK
SUPREME COURT:    COUNTY OF ERIE

---

**ERIC C. MARTIN,**

                                        *Plaintiff,*

**v.**

**TOWN OF TONAWANDA**
**POLICE DEPARTMENT**
**o/b/o the TOWN OF TONAWANDA,**

**SPEEDWAY, LLC,**

**JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8**
**as employees of Defendant,**
**TOWN OF TONAWANDA**
**POLICE DEPARTMENT,**

                                *Defendants.*

---

**MEMORANDUM OF LAW**

Index No: 808523/2021

---

        This memorandum is submitted in support of Plaintiff Eric Martin's motion

to compel responses to discovery requests made to the Town of Tonawanda Police

Department o/b/o the Town of Tonawanda. The facts are provided in the April 20,

2022 affirmation of John Feroleto, Esq.

## CPLR 3101 PROVIDES FOR BROAD AND LIBERAL DISCLOSURE

        N.Y. C.P.L.R. 3101 is liberally construed to require disclosure where the

matter sought will assist preparation for trial by sharpening the issues and

reducing delay and prolixity. Thus, restricted only by a test for materiality of

usefulness and reason, pretrial discovery is to be encouraged. *Hoenig v. Westphal*,

52 N.Y.2d 605 (1981); *Allen v. Crowell-Collier Publ. Co.,* 21 N.Y.2d 403, 406 (1968).

Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 4 of 271

Plaintiff served his discovery demands September 7, 2021. Plaintiff's various Omnibus Demands included specific requests materially related to the issues that are the subject of this litigation. The disclosure is necessary for the proper prosecution of this action.

In its response to plaintiff's discovery demands, defendant Town of Tonawanda's response includes objections to 18 of Plaintiff's 21 discovery demands, with boilerplate language of "overbroad, unduly burdensome," "duplicative," and "not relevant to or reasonably related to the causes of action or defenses raised in the instant action."

Questions as to discovery should be clear and easily identifiable. Plaintiff requests an order that defendant comply with CPLR 3122(b) and indicate the specific legal grounds for withholding requested documentation, including:

(1) the type of document;

(2) the general subject matter of the document;

(3) the date of the document; and

(4) such other information as is sufficient to identify the document.

Proper responses consistent with CPLR 3122(b) will assist in fettering out and resolving discovery questions. An order directing Defendant to comply with CPLR 3122 (b) is requested.

Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 5 of 271

## REPEAL OF CRL §50-a MANDATES DISCLOSURE BY DEFENDANTS

The legislative purpose underlying Civil Rights Law §50-a was to protect the specified officers from use of records—including unsubstantiated and irrelevant complaints of misconduct—as means for harassment and reprisals and for purposes of cross-examination by plaintiff's counsel during litigation. (NY CLS Civ R §50-a).

However, due to the interpretation of §50-a, records of complaints and findings of law enforcement misconduct that had not resulted in criminal charges against officers became almost entirely inaccessible to the public or to victims of police brutality, excessive use of force, or other misconduct. The State Committee on Open Government realized that §50-a "[created] a legal shield that prohibits disclosure, even when it is known that misconduct has occurred." https://www.nysenate.gov/legislation/bills/2019/S8496

The New York State legislature found that the repeal of §50-a would help the public regain trust that law enforcement officers and agencies may be held accountable for misconduct. As such, §50-a was effectively repealed on June 12, 2020. https://www.nysenate.gov/legislation/bills/2019/S8496; https://www.nysenate.gov/newsroom/press-releases/senate-majority-advances-policing-reforms-legislative-package

In repealing §50-a, the New York State legislature has intended to maintain broad disclosure requirements to ensure public access to information on issues that involved potential misconduct by those acting under the color of state law. As this

Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 6 of 271

circumstance involves such potential misconduct, defense counsel is obligated under the laws of New York State to disclose such materials.

Defense counsel Paul Joyce has not indicated whether such files and audio exist. This is one example of why compliance with CPLR 3122(b) is proper and necessary.

In his **February 23, 2022** letter, defense counsel Mr. Joyce argues disciplinary files are not discoverable and are an unwarranted invasion of personal privacy, citing Public Officers Law (POL). However, POL §89(2)(b) only allows for redaction of certain specific information such as personal references of applicants for employment, certain medical information, and names and addresses which might be used for solicitation or fundraising purposes.

POL Section 87 allows for broad disclosure of public agency records. Section 89(2)(b) allows certain types of information of a personal nature to be redacted. The reactions should be limited, and the rejecting agency has the burden of showing the information requested includes unwarranted information of a personal nature by clearly identified exceptions provided in Public Officer's Law §89(2).

§89(2)(b) provides that an unwarranted invasion of personal privacy includes:

    i.    disclosure of employment, medical or credit histories or personal references of applicants for employment;

    ii.    disclosure of items involving the medical or personal records of a client or patient in a medical facility;

    iii.    sale or release of lists of names and addresses if such lists would be used for solicitation or fund-raising purposes;

    iv.    disclosure of information of a personal nature when disclosure would result in economic or personal hardship to the subject party and such information nis not relevant to the work of the agency requesting or maintaining form a taxpayer under §141 of the real property tax law;

    v.    disclosure of information of a personal nature reported in confidence to an agency and not relevant to the ordinary work of such agency;

    vi.    information of a personal nature contained in a workers' compensation record; and

    vii.    disclosure of electronic contact information, such as an e-mail address or a social network username that has been collected from a taxpayer under section one hundred four of the real property tax law

Defense counsel's position that "unsubstantiated and disputed complaints" are exempt from disclosure is inaccurate in description and incorrect in the law. His basis for non-disclosure does not fall within the scope of the enumerated exceptions.

Plaintiff does not seek personal information such as home addresses, emails, information to be used for solicitation or fundraising purposes, etc. The disciplinary materials and audio are discoverable, with appropriate redaction, if any.

As discussed in *Buffalo Police Benevolent Assn., Inc. v. Brown,* the Buffalo Police union argued that "unsubstantiated allegations" are protected from disclosure, similarly arguing that a "judicial consensus" on such disclosures pre-dates and is independent of the statutory protection once afforded by §50-a." *Buffalo Police Benevolent Assn., Inc. v. Brown,* 69 Misc. 3d 998, 1000 (2020).

In making its ruling, the court provided that any strike that will serve as a blanket prohibition on the release of any and all information regarding any

complaint deemed "unsubstantiated" would be an inappropriate and drastic remedy. Accordingly, the court held that in light of the repeal of §50-a, such a standard automatically precluding the disclosure of "unsubstantiated" records is inconsistent with both the Federal and State Constitutions. *Buffalo Police Benevolent Assn., Inc. v. Brown*, 69 Misc. 3d, 1004.

Moreover, "[t]he legislative intent in repealing §50-a was to make law enforcement disciplinary records available. The definition of 'law enforcement disciplinary records' is expansive and inclusive. *It does not distinguish between unfounded, exonerated, substantiated or unsubstantiated.*" *People v. Herrera*, 2021 N.Y. Misc. LEXIS 1428, pg. 11 (2021), citing to *People v. Cooper*, 71 Misc. 3d 559, (2021).

Defense counsel provides only conclusory statements absent a factual basis for non-disclosure. "A police department may not merely paraphrase the statutory language of the exemptions without describing the records withheld or providing any factual basis for its conclusory assertions that disclosure would constitute an unwarranted invasion of personal privacy." *Matter of McFadden v. Fonda,* 148 A.D.3d 1430 (2017).

Ultimately, in the absence of any proof establishing the applicability of any enumerated categories, the determination of whether disclosure of the information sought constitutes an unwarranted privacy invasion requires a balancing of the privacy interests at stake against the public interest in disclosure of the

information. *Matter of Harbatkin v. New York City Dept. of Records & Info. Servs.,*
19 NY3d 373, 380, (2012).

When applying this balancing test, it is evident that the alleged privacy
interference is significantly outweighed by the public interest in the disclosure of
the requested documentation. This information is materially relevant and is
necessary in the effective prosecution of the issues at hand.

The refusal to produce the disciplinary discovery, or even acknowledge that it
exists is prejudicial and obstructive.

The information is necessary for the proper prosecution of this action. This is
an example as to why CPLR 3122(b) was enacted and must be complied with.
Plaintiff requests an order directing Defendant to produce the disciplinary
materials within 30 days of the date of this motion.

## TRAINING MATERIAL MUST BE DISCLOSED

Plaintiff has sought training information for use of force, etc. for "the
individuals involved." The individuals involved are the officers listed on the
Tonawanda Police Department criminal complaint against Eric Martin. They are
officers IENCO, LAUGEMAN, VALINT, HEFT, SCRANTON and MUSCOREIL, as
identified in the Tonawanda Police Department complaint #20 − 225084 filed
against Eric Martin. *See* Feroleto Aff. at Ex. 4 at Bates TTPD00008.

The Town of Tonawanda's attorney, Paul Joyce claims training material cannot be provided because Mr. Joyce doesn't know who the Tonawanda Police Department personnel listed as John Doe in the above caption are.

An order is requested directing the Town of Tonawanda to produce training material regarding TPD personnel officers IENCO, LAUGEMAN, VALINT, HEFT, SCRANTON and MUSCOREIL, and documents referring or relating to the use of force, probable cause, bias, and implicit bias for the period August 1, 2010 through July 30, 2020, within 30 days of the date of this motion.

## THE DEFENDANT MUST PROVIDE FULL DISCLOSURE

The Defendant must provide full disclosure consistent with CPLR Article 31, and he has the burden of proof in showing evidence is non-discoverable. As an example, the Email of Lieut. Thomas Moore has not been provided. It could be one email, or more items that were not provided. Defendant is in a position to identify what discovery items exist and identify reasons for nondisclosure, consistent with CPLR 3122(b)

An order is requested that Defendant Town of Tonawanda provide within 30 days of the date of this motion:

i.    Training Material provided to or available to TPD personnel IENCO, LAUGEMAN, VALINT, HEFT, SCRANTON and MUSCOREIL and the use of force, probable cause, bias, implicit bias for the period August 1, 2010 through July 30, 2020.

ii.    Disciplinary Records and audio relating to the above individuals or the

matter involving Eric Martin,

iii.   Discovery previously not disclosed,

iv.    Responses identifying which paragraph of Plaintiffs Request is being

responded to by Defendant Tonawanda, or that materials responsive to

a request do not exist, consistent with CPLR 3122(b).

DATED:    April 20, 2022
          Buffalo, New York

**JOHN P. FEROLETO, ESQ.**
**FEROLETO LAW**
*Attorneys for Plaintiffs*
438 Main Street, Suite 910
Buffalo, New York 14202
Telephone: (716) 854-0700

TO:    **PAUL G. JOYCE, ESQ.**
       **MARC S. SMITH, ESQ.**
       **COLUCCI & GALLAHER, P.C.**
       *Attorneys for Defendant The Town of Tonawanda*
       *Police Department o/b/o The Town of Tonawanda*
       2000 Liberty Building
       424 Main Street
       Buffalo, New York 14202
       Telephone: (716) 853-4080

CC:    **BRITTANY L. HANNAH, ESQ.**
       **SUGARMAN LAW FIRM, LLP**
       *Attorneys for Speedway LLC*
       211 West Jefferson Street, Suite 20
       Syracuse, New York 13202
       Telephone: (315) 474-2943

STATE OF NEW YORK
SUPREME COURT:    COUNTY OF ERIE

---

**ERIC C. MARTIN,**

*Plaintiff,*

**v.**

**TOWN OF TONAWANDA**
**POLICE DEPARTMENT**
**o/b/o the TOWN OF TONAWANDA,**

**SPEEDWAY, LLC,**

**JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8**
**as employees of Defendant,**
**TOWN OF TONAWANDA**
**POLICE DEPARTMENT,**

*Defendants.*

**AFFIRMATION IN**
**SUPPORT OF MOTION TO**
**COMPEL**

Index No: 808523/2021

---

JOHN P. FEROLETO., ESQ., hereby states and affirms under the penalties of perjury as follows:

1.     Your Affiant is an attorney duly licensed in the State of New York and represents the Plaintiff Eric Martin in the above-captioned matter.  As such, I am fully familiar with the facts and circumstances herein.

·  2.     This Affirmation is submitted in support of Plaintiff, Eric Martin's motion to compel discovery pursuant to CPLR §§ 3124 and 3126.

1

Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 13 of 271

## PROCEDURAL HISTORY

3.    Plaintiff served Notice of Claim on the Town of Tonawanda on October 1, 2020 by way of Certified Mail Return Receipt Requested. Your Affiant received a post office receipt signed by Brian Mayo on **October 2, 2020** and two (2) post office receipts signed by M. Greco on **October 3, 2020. Exhibit 1**

4.    Plaintiff then served an Amended Notice of Claim on the Town of Tonawanda on **October 22, 2020** by way of Certified Mail Return Receipt Requested. Your Affiant received three (3) post office receipts signed by M. Greco on **October 24, 2020. Ex. 1.**

5.    Mr. Martin testified **December 7, 2020** pursuant to 50 H of the General Municipal Law and Rules. *See* Martin 50H Hr'g Tr. December 7, 2020 annexed hereto as **"Exhibit 2".**

6.    Action was commenced **June 29, 2021** by way of filing a Summons and Complaint within the New York State Courts Electronic Filing ("NYSCEF") as Docket No. 1. Issue was joined by Defendant, SPEEDWAY LLC, (Speedway) **July 21. 2021,** Docket No. 7. Issue was joined by Defendant, TOWN OF TONAWANDA, o/b/o the TOWN of TONAWANDA POLICE DEPARTMENT (TPD) **August 2, 2021**, Docket No. 8. Defendant, TOWN OF TONAWANDA, filed its answer to cross claims of Co-Defendants on **September 10, 2021** as Docket No. 9

7.    **September 7, 2021** Request for Documents and Discovery and Omnibus Discovery Demands were made upon Defendant Town of Tonawanda. *See*

2

Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 14 of 271

Plaintiff's Various Discovery Demands annexed hereto as **"Exhibit 3"**. **November 2, 2021** the Town of Tonawanda responded. *See* Various Discovery Responses of Defendant Town of Tonawanda annexed hereto as **"Exhibit 4"**.

## BACKGROUND

8.      This action arises out of a **July 9, 2020** incident where Plaintiff, Eric C. Martin, went to the Speedway convenient store located at 535 Kenmore Avenue, Tonawanda, New York ("Speedway") to redeem two New York State lottery tickets he purchased at the same Speedway.

9.      Mr. Martin's last lottery ticket purchase at the Speedway location was **July 7, 2020**. The tickets were **$30 "Colossal Cash"** lottery tickets which provided a $50 payout each.

10.     **July 9, 2020** Mr. Martin returned to the Speedway store with his wife, son, and daughter to redeem his two winning tickets, on the way to his father's house. **Ex. 2 at 17-18.**

11.     Mr. Martin gave the two tickets to the cashier; when scanned, one ticket went off with the winning sound, the other didn't. *Id.* at 19:2-16. An error code came up.

12.     The Speedway store manager, Debra Kruder told Mr. Martin she was calling the New York State Lottery. Instead, she called the Tonawanda Police Department (hereinafter "TPD") and stated "Hi, my name is Deb Kruder and I was at the convenience store that got robbed, uh, I want to say the night before... last

3

Tuesday morning 2:30. I have a lottery ticket here that says claim at lottery and I do believe that this is a stolen ticket and somebody's trying to cash it." She recognized the ticket as from the batch that was stolen yesterday. *See* Audio of Debra Kruder annexed hereto as **"Exhibit 5";** *see also* **Ex.** 4 at p. 39, Supporting Deposition of Debra Kruder (marked TTPD00017).

13.      There had been a smash and grab burglary at approximately 2:00 a.m. **July 8, 2020**, the night before. Ex. 4 at p. 24-26 (marked TPD00002-00004).

14.      TPD Lieutenant Brian Valint arrived at the scene; he told Mr. Martin that he was in possession of stolen property. *See* Bodycam video of TPD Officer, Brian Valint annexed hereto as **"Exhibit 6"** at 35-40 seconds; 6:13 to 6:16 seconds. Mr. Martin explained that he purchased the ticket at the same Speedway, frequently buys lottery tickets at the location, and that this could be shown by checking the store video. *Id.* at 1:00 – 1:11 seconds.

15.      Assuming arguendo, the TPD had sufficient evidence to charge Mr. Martin with a class A misdemeanor, New York **Penal Law 165.40,** Criminal Possession of Stolen Property in the 5th degree. Upon information and belief, an appearance ticket should have been issued to Mr. Martin at the Speedway store.

16.      Mr. Martin was willing to meet with the TPD personnel at the station; he didn't want to get into the back of the cop car because he had his kids outside along with his wife and didn't want them to see an image of him being put in the

4

back of the cop car. He thought he and the officers might be able to come to an agreement or work something out **Ex. 2** at p. 35-36.

17.     Four TPD police personnel surrounded Mr. Martin, wrestled him down to the ground, handcuffed him, and took him to TPD headquarters at 1835 Sheridan Drive, Tonawanda, NY. **Ex. 6** at 6:20 – 7:40 seconds.

18.     While at TPD headquarters, Mr. Martin was strip-searched. **Ex. 2** at p. 36:13-15.

19.     Upon information and belief, the strip search of Mr. Martin was improper, illegal, and in violation of laws of New York State, and the United States.

20.     At the TPD headquarters, Mr. Martin was given an appearance ticket and released with charges of violating New York **Penal Law 165.40,** Criminal Possession of Stolen Property in the 5th degree, and **Penal Law 205.30** Resisting Arrest, both class A misdemeanors. **Ex. 4** at p. 36-37 (marked as TPD00014-00015).

## DETERMINING IF THE LOTTERY TICKET WAS STOLEN

21.     Five days after Mr. Martin was taken down, arrested and strip-searched**, on July 14, 2020,** Speedway District Manager Elizabeth Marvel, contacted TPD Detective Lieutenant Thomas Moore requesting that Detective Moore scan the lottery ticket and email images to Elizabeth Marvel so Ms. Marvel could contact the New York State Lottery to determine which **$30 Colossal Cash** scratch-off lottery tickets were stolen July 8, 2020. *Id.* at p. 32 (marked as TPD00010).

5

22.     Later on **July 14, 2020** Ms. Marvel, after checking with the New York

State lottery, contacted TPD Lt. Moore advising that Eric Martin **legally**

**purchased the ticket in question at 14:18 hours on July 7, 2020** at the

Speedway store, 535 Kenmore Avenue *Id.*

23.     On **July 21, 2020** Speedway Manager Deb Kruder provided a

statement. As to the ticket in question, Ms. Kreuder reported as to the lottery

ticket: **"the ticket came up to go to the lottery office to cash the ticket"**

Instead, she called the TPD, who came and the above described events occurred. *See*

July 21, 2020 Statement of Deb Kruder annexed hereto as **"Exhibit 7"**.

24.     Before commencement of action, on **August 5, 2020** Plaintiff made a

Freedom of Information Law (FOIL) request to the Town of Tonawanda and for

documents and video imaging of the arrest. *See* Plaintiff's FOIL Request annexed

hereto as **"Exhibit 8"**. The Town of Tonawanda responded **August 18, 2020,**

attached hereto as **"Exhibit 9"** is a list of what was provided.

## DISCOVERY REQUESTS

25.     **September 7, 2021** Plaintiff served discovery demands in this action

on Defendant Tonawanda. **Ex. 3**

26.     **November 2, 2021**, Defendant Tonawanda responded. Some

documents were provided. However, portions of what was requested was responded

to by the Defenant in boilerplate denials or vauge responses. **Ex. 4** at p. 1-15.

6

Case 1:23-cv-00419-WMS-MJR  Document 1-15  Filed 05/11/23  Page 18 of 271

27.     On **January 26, 2022**, your Affiant spoke with Mr. Joyce in a good faith effort to resolve the discovery questions without court intervention.

28.     By **January 27,  2022** correspondence, your Affiant asked Defense counsel Paul Joyce to identify what requested items were privileged or otherwise non-discoverable to ferret out and resolve potential discovery disputes. Mr. Joyce was asked to provide a response consistant with CPLR 3122(b) and a privilege log. *See* Mr. Feroleto letter to Mr. Joyce dated January 27, 2022 annexed hereto as "**Exhibit 10**".

29.     This request included:

Documents and audio regarding disciplinary hearings that occurred as a result of the incident with Eric Martin;

Documents referring or relating to personal training on use of force, probable cause, bias, implicit bias, including requirements or references to courses required to be taken by the TPD personnel involved in the matter with Eric Martin.

Complete responses and compliance with CPLR 3122(b)

30.     **February 23, 2022,** Mr. Joyce respnded by letter stating he has fully complied with the discovery requests and complied with CPLR 3122(b). See Joyce letter to Mr. Joyce letter to Mr. Feroleto dated February 23, 2022 annexed hereto as "**Exhibit 11**".

31.     Defense counsel has refused to comply with Plaintiff's discovery requests.

7

Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 19 of 271

## DEFENDANTS DISCIPLINARY MATERIAL AND AUDIO MUST BE DISCLOSED

32.     As discussed it the Memorandum of Law filed with this Motion, **June 12, 2020,** Civil Rights Law Section 50(a), which previously prevented disclosure of police personnel files was repealed, allowing access to police personnel and disciplinary files.

33.     Public Officers Law Section 87 allows for broad disclosure of public agency records. Section 89 (2)(b) allows certain types of information of a personal nature to be redacted.

34.     The rejecting agency has the burden of showing the information requested may include unwarranted  information of a personal nature by clearly identified exceptions provided in Public Officer's Law §89(2). The disclosure is meant to be broad and must be limited.

35.     §89(2)(b) provides that an unwarranted invasion of personal privacy includes:

   i.     disclosure of employment, medical or credit histories or personal references of applicants for employment;

   ii.    disclosure of items involving the medical or personal records of a client or patient in a medical facility;

   iii.   sale or release of lists of names and addresses if such lists would be used for solicitation or fund-raising purposes;

   iv.    disclosure of information of a personal nature when disclosure would result in economic or personal hardship to the subject party and such information nis not relevant to the work of the

8

Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 20 of 271

agency requesting or maintaining form a taxpayer under §141 of the real property tax law;

v.    disclosure of information of a personal nature reported in confidence to an agency and not relevant to the ordinary work of such agency;

vi.    information of a personal nature contained in a workers' compensation record; and

vii.    disclosure of electronic contact information, such as an e-mail address or a social network username that has been collected from a taxpayer under section one hundred four of the real property tax law.

36.    Upon information and belief, evidence, including disciplinary hearings, and audio recording of hearings, exist, arising from the TTP actions involving Eric Martin.

37.    By **February 23, 2022** letter, Defense counsel Joyce argued disciplinary files are not discoverable as an "unwarranted invasion of personal privacy", citing Public Officers Law 89(2)(b). **Ex. 11** However, Public Officers Law §89(2)(b) only allows for redaction of specific information enumerated above.

38.    Defense counsel's generalized assertion that "unsubstantiated and disputed complaints" are exempt from disclosure is inaccurate and does not fall within the scope of these exceptions.

39.    As discussed in *Buffalo Police Benevolent Assn., Inc. v. Brown,* the Buffalo Police union argued that "unsubstantiated allegations" are protected from disclosure, similarly arguing that a "judicial consensus" on such disclosures pre-dates and is independent of the statutory protection once afforded by §50-a." *Buffalo Police Benevolent Assn., Inc. v. Brown*, 69 Misc. 3d 998, 1000 (2020).

9

40.     In making its ruling, the court provided that any strike that will serve as a blanket *prohibition on the release of any and all information regarding any complaint deemed "unsubstantiated" would be an inappropriate and drastic remedy. Accordingly, the court held the repeal of §50-a, such a standard automatically precluding the disclosure of "unsubstantiated" records is inconsistent with both the Federal and State Constitutions. Buffalo Police Benevolent Assn., Inc. v. Brown*, 69 Misc. 3d, 1004. *See* Plaintiff's accompanying Memorandum of Law submitted in support.

41.     Plaintiff does not oppose redaction of specific information enumerated in  POL 89(2)(b), should it be warranted. The  evidence of the disciplinary hearing is discoverable. It is material is necessary for the proper prosecution of this action.

42.     The refusal by Mr. Joyce to acknowledge even whether such material exists is an  example of why compliance with CPLR 3122(b) is necessary.

## **TRAINING MATERIAL MUST BE DISCLOSED**

43.     Plaintiff has sought training information for use of force, etc. for "the individuals involved." The individuals involved are officers listed on the TPD criminal complaint# 20-2224888 filed against Eric Martin, they are TPD officers IENCO, LAUGEMAN, VALINT, HEFT, SCRANTON and MUSCORIEL. **Ex. 4** at p. 8.

10

Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 22 of 271

44.     Defense Counsel Paul Joyce argues that training material cannot be provided because Mr. Joyce doesn't know who the John Does listed in the caption are.

45.     An order is requested directing the defendant Town of Tonawanda to produce training material provided TPD personnel officers IENCO, LAUGEMAN, VALINT, HEFT, SCRANTON and MUSCORIEL and that the TPD and Town of Tonawanda produce documents or items referring or relating to the use of force, probable cause, bias, implicit bias for the period August 1, 2010 through July 30, 2020.

## BOILERPLATE OBJECTIONS AND VAGUE DENIALS ALLOW DEFENDANT TO EVADE PROPEER DISCOVERY

46.     The boilerplate objections relied upon by defendant do not allow Plaintiff to know what discovery may exist or was not provided. One example is shown at **Ex. 4** at TTPD00010 which refers to emails in regards to the lottery tickets.

47.     July 22, 2020, Lt. Detective Thomas Moore entered his interaction with Speedway District manager Elizabeth Marvel, in the Police Narrative.  It indicates Mr. Moore scanned and emailed images of both the front and back of the scratch off ticket in question. **Ex. 4** at p. 32 (marked as TTPD00010). A copy of Ms. Marvel's email, was provided.

48.     Detective Moore's email and attachment, has not been provided. It may be one email and attachment were not provided, or other emails or items have

11

Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 23 of 271

not been provided, which plaintiff is unaware of. Plaintiff is not in a position to know what evidence exists, Defendant is.

49.     As such, an order is requested that defendant fully respond to plaintiff's request for documents and discovery, comply with CPLR § 3122(b), and identify discovery withheld with a privilege log identifying the reason discovery is withheld.

**WHEREFORE**, the Plaintiff respectfully requests an Order of this Court compelling the Defendant to provide responses to  Plaintiff's outstanding discovery demands including:

i.      Training Material provided to or available to TPD personnel IENCO, LAUGEMAN, VALINT, HEFT, SCRANTON and MUSCORIEL and the use of force, probable cause, bias, implicit bias for the period August 1, 2010 through July 30, 2020.

ii.     Disiplinary Records and audio relationg to the above individuals or the matter involving Eric Martin,

iii.    Discovery previously not disclosed,

iv.     Responses identifiying which paragraph of Plaintiffs Request is being responded to by Defendant Tonawanda, or that materials responsive to a request do not exist, consistant with CPLR 3122(b),

within 30 days of the date of this Motion or Defendant Tonawanda's Answer be stricken; and such other and further relief as this Court deems just and proper.

DATED:    April 20, 2022
             Buffalo, New York

**JOHN P. FEROLETO, ESQ.**
**FEROLETO LAW**
*Attorneys for Plaintiffs*
438 Main Street, Suite 910
Buffalo, New York 14202
Telephone: (716) 854-0700

TO:    **PAUL G. JOYCE, ESQ.**
        **MARC S. SMITH, ESQ.**
        **COLUCCI & GALLAHER, P.C.**
        *Attorneys for Defendant The Town of Tonawanda*
        *Police Department o/b/o The Town of Tonawanda*
        2000 Liberty Building
        424 Main Street
        Buffalo, New York 14202
        Telephone: (716) 853-4080

CC:    **BRITTANY L. HANNAH, ESQ.**
        **SUGARMAN LAW FIRM, LLP**
        *Attorneys for Speedway LLC*
        211 West Jefferson Street, Suite 20
        Syracuse, New York 13202
        Telephone: (315) 474-2943

13

STATE OF NEW YORK
SUPREME COURT  :  COUNTY OF ERIE

---

**ERIC C. MARTIN,**                                           <u>**NOTICE OF CLAIM**</u>

*Claimant,*

v.

**TOWN OF TONAWANDA NEW YORK POLICE DEPARTMENT,**
**on behalf of the TOWN OF TONAWANDA, NEW YORK,**
*Respondents.*

---

**PLEASE TAKE NOTICE,** that ERIC C. MARTIN, the Claimant, by his attorney, John Feroleto, with offices located at 438 Main Street, Suite 910, Buffalo, New York 14202, hereby make claim against the TOWN OF TONAWANDA POLICE DEPARTMENT, THROUGH ITS PERSONNEL WHOSE NAMES ARE CURRENTLY UNKNOWN, on behalf of the TOWN OF TONAWANDA, a municipal corporation, for damages sustained as follows:

1.      Claimant, ERIC C. MARTIN, born on January 14, 1990, resides at 191 Brinton Street, Buffalo, New York 14216.

2.      The incident occurred on the 9th day of July at approximately 1:30 p.m. at the Speedway convenient store, located at 535 Kenmore Avenue, Tonawanda, New York 14223.

3.      The nature of the claim is for medical bills, pain, and physical injury, violation of rights afforded by 42 U.S.C. §1983, and other established rules and procedures, for wrongful arrest, unnecessary force, imprisonment, humiliation and unlawful search under the color of law, and in violation of the Constitution of the State of New York and the United States and other established rules and procedures.

4.      On July 9, 2020, at approximately 1:30 p.m., while lawfully at the retail establishment known as Speedway, 535 Kenmore Avenue, Tonawanda, New York 14223, with his

wife and children, a retail establishment frequented by ERIC C. MARTIN, as a law abiding retail customer, the TOWN OF TONAWANDA POLICE DEPARTMENT unnecessarily restrained, detained and arrested Mr. Martin, handcuffed him, and took him to the TOWN OF TONAWANDA POLICE DEPARTMENT at 1835 Sheridan Drive, Tonawanda, New York and strip searched him before releasing him. Mr. Martin was at the Speedway store with his family to redeem a $50 pay out on a $30 New York State lottery ticket he purchased the day before, July 8, 2020, at the same Speedway store, located at 535 Kenmore Avenue, Tonawanda, New York.

5.    As a result of the above Mr. MARTIN suffered humiliation, trauma, and physical injuries to his left shoulder, neck, body and head. Medical expenses have accumulated, the exact amount of which is not presently available.

**WHEREFORE**, the Claimant requests compromise of this claim and if such claim is not paid within a reasonable period of time, it is the intention of the claimant to commence an action against the TOWN OF TONAWANDA POLICE DEPARTMENT, and TOWN OF TONAWANDA, NEW YORK.

DATED:       Buffalo, New York
             September 30, 2020

**JOHN FEROLETO, ESQ.**
**FEROLETO LAW**
*Attorneys for Claimant*
438 Main Street, Suite 910
Buffalo, New York 14202
Telephone: (716) 854-0700

2

Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 27 of 271

**VERIFICATION**

STATE OF NEW YORK     )
COUNTY OF ERIE         ) SS.:
CITY OF BUFFALO      )

    ERIC C. MARTIN, JR., being duly sworn deposes and says he is the Claimant in the above-entitled action; he has read the foregoing Notice of Claim and knows the contents thereof; that the same is true to the knowledge of the deponent, except as to matters therein stated to be alleged upon information and belief, and that as to those matters, he believes them to be true.

                                     ERIC C. MARTIN, JR.

Sworn to before me this 30th
day of September 2020.

_____
Notary Public

MOLLY VERA
STATE OF NEW YORK
NOTARY PUBLIC
Qualified in Erie County
01VE6405165
MY COMMISSION EXPIRES 03/02/2024

3

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Town Supervisor
Joseph H. Emminger
2919 Delaware Ave Room 11
Tonawanda, NY 14217

9590 9402 3522 7275 1982 92

2. Article Number *(Transfer from service label)*

7014 2120 0004 7251 6190

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Brian K May_  ☑ Agent
                 ☐ Addressee

B. Received by *(Printed Name)*   C. Date of Delivery
_Brian K May_   10-2-20

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form **3811**, July 2015 PSN 7530-02-000-9053       Domestic Return Receipt



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Town Attorney
Mario A. Giacobbe
2919 Delaware Ave Room 2
Tonawanda, NY 14217

9590 9402 3522 7275 1980 18

2. Article Number *(Transfer from service label)*

7014 2120 0004 7251 6176

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X M. Greco ☒ Agent ☐ Addressee

B. Received by *(Printed Name)*: M GRECO
C. Date of Delivery: 10-3

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☒ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery (over $500)
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☒ Return Receipt for Merchandise
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053 Domestic Return Receipt

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Town Clerk
Marguerite Greco
2919 Delaware Ave Room 14
Tonawanda, NY 14217

9590 9402 3522 7275 1979 98

2. Article Number (Transfer from service label)

7014 2120 0004 7251 6183

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X M. Greco
☑ Agent
☐ Addressee

B. Received by (Printed Name)
M. GRECO

C. Date of Delivery
10-3

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053

Domestic Return Receipt

STATE OF NEW YORK
SUPREME COURT  :  COUNTY OF ERIE

─────────────────────────────

**ERIC C. MARTIN,**

**AMENDED NOTICE OF
CLAIM**

*Claimant,*

v.

**TOWN OF TONAWANDA NEW YORK POLICE DEPARTMENT,**
**on behalf of the TOWN OF TONAWANDA, NEW YORK,**
                              *Respondents.*

─────────────────────────────

      **PLEASE TAKE NOTICE,** that ERIC C. MARTIN, the Claimant, by his attorney, John

Feroleto, with offices located at 438 Main Street, Suite 910, Buffalo, New York 14202, hereby

make claim against the TOWN OF TONAWANDA POLICE DEPARTMENT, THROUGH ITS

PERSONNEL WHOSE NAMES ARE CURRENTLY UNKNOWN, on behalf of the TOWN OF

TONAWANDA, a municipal corporation, for damages sustained as follows:

      1.     Claimant, ERIC C. MARTIN, born on January 14, 1990, resides at 191 Brinton

Street, Buffalo, New York 14216.

      2.     The incident occurred on the 9th day of July at approximately 1:30 p.m. at the

Speedway convenient store, located at 535 Kenmore Avenue, Tonawanda, New York 14223.

      3.     The nature of the claim is for medical bills, pain, and physical injury, violation of

rights afforded by 42 U.S.C. §1983, and other established rules and procedures, for wrongful arrest,

unnecessary force, imprisonment, humiliation and unlawful search under the color of law, and in

violation of the Constitution of the State of New York and the United States and other established

rules and procedures.

4.      On July 9, 2020, at approximately 1:30 p.m., while lawfully at the retail establishment known as Speedway, 535 Kenmore Avenue, Tonawanda, New York 14223, with his wife and children, a retail establishment frequented by ERIC C. MARTIN, as a law abiding retail customer, the TOWN OF TONAWANDA POLICE DEPARTMENT unnecessarily restrained, detained and arrested Mr. Martin, handcuffed him, and took him to the TOWN OF TONAWANDA POLICE DEPARTMENT at 1835 Sheridan Drive, Tonawanda, New York and strip searched him before releasing him. Mr. Martin was at the Speedway store with his family to redeem a $50 pay out on a $30 New York State lottery ticket he purchased the day before, July 8, 2020, at the same Speedway store, located at 535 Kenmore Avenue, Tonawanda, New York.

5.      As a result of the above Mr. MARTIN suffered humiliation, trauma, and physical injuries to his left shoulder, left knee, neck, body and head. Medical expenses have accumulated, the exact amount of which is not presently available.

**WHEREFORE**, the Claimant requests compromise of this claim and if such claim is not paid within a reasonable period of time, it is the intention of the claimant to commence an action against the TOWN OF TONAWANDA POLICE DEPARTMENT, and TOWN OF TONAWANDA, NEW YORK.


DATED:      Buffalo, New York
            October,  2020

**JOHN FEROLETO, ESQ.**
**FEROLETO LAW**
*Attorneys for Claimant*
438 Main Street, Suite 910
Buffalo, New York 14202
Telephone: (716) 854-0700

2

## VERIFICATION

STATE OF NEW YORK    )
COUNTY OF ERIE     ) SS.:
CITY OF BUFFALO    )

     ERIC C. MARTIN, JR., being duly sworn deposes and says he is the Claimant in the above-entitled action; he has read the foregoing Notice of Claim and knows the contents thereof; that the same is true to the knowledge of the deponent, except as to matters therein stated to be alleged upon information and belief, and that as to those matters, he believes them to be true.

_____
ERIC C. MARTIN, JR.

Sworn to before me this 22nd
day of October 2020.

_____
Notary Public
(Commavoto)

MEGAN GALE BECHARD
NOTARY
NO. 01BE6297521
QUALIFIED IN
ERIE COUNTY
COMM. EXP.
02-24-2022
PUBLIC
STATE OF NEW YORK

3









**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Town Clerk
Marguerite Greco
2919 Delaware Ave Room 14
Tonawanda, NY 14217

9590 9402 5240 9122 9131 50

2. Article Number *(Transfer from service label)*
7014 2120 0004 7251 6220

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X M. Greco ☑ Agent ☐ Addressee

B. Received by *(Printed Name)* M. GRECO
C. Date of Delivery 10-24

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053 Domestic Return Receipt

---

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Town Supervisor
Joseph H. Emminger
2919 Delaware Ave Room 11
Tonawanda, NY 14217

9590 9402 5240 9122 9131 43

2. Article Number *(Transfer from service label)*
7014 2120 0004 7251 6244

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X M. Greco ☑ Agent ☐ Addressee

B. Received by *(Printed Name)* M. GRECO
C. Date of Delivery 10-24

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053 Domestic Return Receipt

---

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Town Attorney
Mario A. Giacobbe
2919 Delaware Ave Room 2
Tonawanda, NY 14217

9590 9402 5240 9122 9131 67

2. Article Number *(Transfer from service label)*
7014 2120 0004 7251 6237

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X M. Greco ☑ Agent ☐ Addressee

B. Received by *(Printed Name)* M. GRECO
C. Date of Delivery 10-24

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

USPS TRACKING #

ROCHESTER NY 144
24 OCT 2020PM 1 L

9590 9402 5240 9122 9131 50

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

United States
Postal Service

• Sender: Please print your name, address, and ZIP+4® in this box•

Feroleto Law
438 Main Street, Suite 910
Buffalo, NY 14202

ANDC

USPS TRACKING #

ROCHESTER NY 144
24 OCT 2020PM 1 L

9590 9402 5240 9122 9131 43

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

United States
Postal Service

• Sender: Please print your name, address, and ZIP+4® in this box•

Feroleto Law
438 Main Street, Suite 910
Buffalo, NY 14202

ANDC

USPS TRACKING #

ROCHESTER NY 144
24 OCT 2020PM 1 L

9590 9402 5240 9122 9131 67

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

United States
Postal Service

• Sender: Please print your name, address, and ZIP+4® in this box•

Feroleto Law
438 Main Street, Suite 910
Buffalo, NY 14202

ANDC

ERIC MARTIN

----------------------------------------

IN THE MATTER OF THE CLAIM OF

ERIC C. MARTIN,

    Claimant,

-vs

TOWN OF TONAWANDA,
NEW YORK POLICE DEPARTMENT
on Behalf of The
TOWN OF TONAWANDA, NEW YORK

    Respondent.

----------------------------------------

        Oral Examination of ERIC
MARTIN, taken pursuant to Section 50-h of the
General Municipal Law and Rules, taken by means
of Remote Video, the witness being present at 191
Brinton Street, North Buffalo, New York 14216,
taken on DECEMBER 7, 2020, commencing at 12:10
p.m. Before DEBORAH F. TERRANOVA, Notary Public.

2

```
 1  APPEARANCES:

 2  FEROLETO LAW
    BY JOHN FEROLETO, ESQ.,
 3  438 Main Street,
    910 Main Court Building,
 4  Buffalo, New York 14202.
    Appearing via video conferencing
 5  for the Claimant.

 6  J. PATRICK LENNON
    2919 Delaware Avenue,
 7  Kenmore, New York 14217.
    Appearing via video conferencing
 8  for the Respondents.

 9  COURT REPORTER:  Before we begin, will both

10       parties stipulate pursuant to CPLR 3113 that

11       the witness can be sworn in even though he is

12       outside the presence of the court reporter?

13  MR. FEROLETO:  Yes.

14  MR. LENNON:  Yes.

15

16       E R I C  M A R T I N, 191 Brinton

17       Street, Buffalo, New York 14216, after being

18       duly called and sworn, testified as follows:

19

20            EXAMINATION BY MR. LENNON:

21

22  Q.  Thank you.  Good morning, Mr. Martin --

23  A.  Good morning.
```

FILED: ERIE COUNTY CLERK 04/20/2022 03:41 PM INDEX NO. 808523/2021

NYSCEF DOC. NO. 15 RECEIVED NYSCEF: 04/20/2022

1    Q.   -- or good afternoon.  My name is Pat Lennon.

2         I'm Deputy Town Attorney in the Town of

3         Tonawanda.  I'm going to ask you some

4         questions this morning briefly about yourself

5         and then about the Notices of Claim that you

6         filed, okay?

7    A.   Okay.

8    Q.   For the benefit of the court reporter, just a

9         couple of ground rules, please wait until I'm

10        done giving my question before you provide

11        your answer, as it's difficult for her to

12        take down two people at once, okay?

13   A.   Okay.

14   Q.   And please make sure all of your answers are

15        audible.  It's difficult for her to take down

16        nods and shakes of the head, okay?

17   A.   Okay.

18   Q.   If you start doing that, we'll have Mr.

19        Feroleto kick you under the table, all right?

20   A.   Gotcha.

21   Q.   I don't think we're going to be too long

22        today, but if in the event you need to use

23        the men's room, take a break, whatever the

4

1          case is just stop us, let us know.  You're

2          not locked in there, all right?

3     A.   Okay.

4     Q.   All right.  Mr. Martin, prior to your

5          testimony here this morning did you review

6          any documents, photographs or videos in

7          preparation of your testimony?

8     A.   Yes.

9     Q.   What did you review in preparation of

10         your deposition -- or your 50-h testimony

11         today?

12    A.   I just watched a video.

13    Q.   And when did you watch that?

14    A.   Last night.

15    Q.   And the video that you watched, where did you

16         get that video?

17    A.   I got it from John.

18    Q.   And I'm not allowed to -- I'm not privy to

19         any of the conversations you had with

20         Mr. Feroleto.  That is one hundred percent

21         attorney, client privilege, that's

22         confidential, okay.  So you got that from

23         him?

5

1   A.   Yes.

2   Q.   Do you know what the source of that video

3        was, as to whether or not it was Speedway or

4        it came from the Town of Tonawanda Police

5        Department and if you don't know, you can say

6        you don't know.

7   A.   I don't know.

8   Q.   And how long is the video that you watched?

9   A.   I can't recall how long it was.

10  Q.   And what does the video show?

11  A.   Me and the gas station.  The police at the

12       gas station and the cashier.  And the

13       cashier's manager and a few other people in

14       the background.

15  Q.   Okay.  I'm just going to ask that you

16       preserve that video, sir, and if you got it

17       from your attorney hopefully he has a copy

18       too.  And at the appropriate stage of this

19       matter, we just ask for a copy of that,

20       okay?

21  MR. FEROLETO:  Pat, I can share with you the fact

22       that we received it from your client -- from

23       the police department, but I would be happy

Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 41 of 271

6

1          to send you a copy of it.

2     MR. LENNON:  Thank you very much.  I appreciate

3          your courtesy.  And I haven't seen any videos

4          so I'm coming out of complete ignorance here.

5          Okay.  So --

6     MR. FEROLETO:  And I'll send that to you this

7          week.

8     MR. LENNON:  Yeah.  Oh, yeah, no rush.  Yeah.

9     MR. FEROLETO:  I'll share it with you.

10    MR. LENNON:  Yeah, no rush.  You know, I'm

11         just -- that's just the way it is, no

12         problem.

13    MR. FEROLETO:  Okay.  Sure.

14    BY MR. LENNON:

15    Q.   And other then watching the video did you

16         review any other paperwork, or documents, or

17         photographs prior to your testimony here

18         today?

19    A.   No.  No photographs, no paperwork.  No, I

20         didn't look at anything.

21    Q.   Mr. Martin, have you given any previous

22         testimony regarding this incident at all?

23    A.   Can't remember.

INDEX NO. 808523/2021

RECEIVED NYSCEF: 04/20/2022

Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 42 of 271

7

1   Q.   Other then speaking to your attorney have you

2        given any statements to anybody regarding

3        this incident?

4   A.   Just close family.

5   Q.   And have you given any written statements to

6        anybody other then your attorney regarding

7        this incident?

8   A.   No.

9   Q.   And as you sit here today, Mr. Martin, are

10       you on any medication that would prevent you

11       from understanding my question and providing

12       answers?

13  A.   No.

14  Q.   All right.  And what's your date of birth,

15       sir?

16  A.   January 14th, 1990.

17  Q.   And how old does that make you today?

18  A.   Thirty.

19  Q.   And where do you reside?

20  A.   191 Brinton, Buffalo, New York 14216.

21  Q.   Okay.  I promise that nobody else is going to

22       ask you that today.  Three times is enough.

23       And how long have you lived there?

8

1    A.    About a year and a half now.  Probably,
2          around year and a half.
3    Q.    And do you own that residence?
4    A.    Yes.
5    Q.    And who do you live there with?
6    A.    My family.
7    Q.    And who is in your family?
8    A.    My wife and two kids.
9    Q.    What's your wife's name?
10   A.    Ashley.
11   Q.    Last name, Martin?
12   A.    Yes.
13   Q.    And the names and ages of your children?
14   A.    Trevor and Riley.  Nine and one.
15   Q.    And is that a single family home or multiple
16         unit dwelling?
17   A.    Single.
18   Q.    And where did you reside prior to 191 Brinton
19         Street?
20   A.    I stayed with my parents on Gail.
21   Q.    That's G-A-I-L?
22   A.    Yes.
23   Q.    And what's their address an Gail Street?

1   A.   42.

2   Q.   And how long did you live there for?

3   A.   Couple -- probably like year, year and a

4        half.

5   Q.   Are you currently married?

6   A.   Yes.

7   Q.   And how long have you been married for?

8   A.   Since 2000 -- October 2017.

9   Q.   Any other marriages other then to Ashley?

10  A.   No.

11  MR. FEROLETO:  Hey, Pat, will do a fair amount of

12       leeway, but the Notice of Claim statute, 50-h

13       allows for testimony of the occurrence and

14       the injuries, is the wording of the statute.

15       So a lot of the generalities I'm sure we'll

16       get into at a deposition, but they're beyond

17       the scope of the statute, but you go ahead

18       there.

19  MR. LENNON:  Thanks, John.  I respectfully

20       disagree.  It's just basic pedigree

21       information --

22  MR. FEROLETO:  That's fine.  Go ahead.

23  MR. LENNON:  -- any witness -- I'm just trying to

10

1          do my job.  I'm not trying to be

2          disrespectful in any way shape or form.

3     MR. FEROLETO:  No.  I know you're not.

4     BY MR. LENNON:

5     Q.   Are you currently employed?

6     A.   Yes.

7     Q.   Where do you work?

8     A.   General Mills.

9     Q.   And what's your title there?

10    A.   Logistics Tech.

11    Q.   And how long have you been employed as a

12         Logistics Tech at General Mills?

13    A.   Well, I've been there for about seven years,

14         since 2013.

15    Q.   And what duties are involved with being a

16         Logistics Tech?

17    A.   I drive fork trucks and clamp trucks.

18    Q.   And is that an hourly position or is that

19         salaried position?

20    A.   Hourly.

21    Q.   And how many hours per week do you work?

22    A.   It varies.  Whenever they're -- forty.  It

23         could be more.

1  Q.  So there's overtime available?

2  A.  Correct.  Mandatory overtime.

3  Q.  Are you a member of any union?

4  A.  Yes.

5  Q.  What union or unions are you a member of?

6  A.  I forget the abbreviations, but General Mills

7       would have a union, but I'm part of a union

8       with General Mills.

9  Q.  Where did you attend high school?

10 A.  McKinley High School.

11 Q.  And what year did you graduate?

12 A.  In 2009.

13 MR. FEROLETO:  Hang on a minute.  Okay.  Hey, Pat

14      let me take a look here.  I'm reading 50-h

15      sub part one, said the City, County, et

16      cetera shall have the right to demand an

17      indemnation of the Claimant relative and I

18      quote; to the occurrence and the extent of

19      the injuries or damages for which the claim

20      is made.

21          I mean, that's fine about going back

22      into where he went to high school, but that's

23      really beyond the occurrence and the extent

FILED: ERIE COUNTY CLERK 04/20/2022 03:41 PM
NYSCEF DOC. NO. 15
INDEX NO. 808523/2021
RECEIVED NYSCEF: 04/20/2022

Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 47 of 271

1     of the injuries for damages.  I would like to

2     stay on point.  You'll certainly have an

3     opportunity in a few months or several months

4     to get into the minutia.

5   MR. LENNON:  So you don't want us to know

6     anything about your client's background at

7     this point, John?

8   MR. FEROLETO:  Well, no.  It's not that I don't

9     want you to know, but I would like to, you

10     know, comply with the statute and --

11   MR. LENNON:  If you're going to be making claims

12     of damages as set forth in your Notice of

13     Claim, such as humiliation and various other

14     1983 allegations, it certainly is entirely

15     relevant especially given the damages that

16     you're alleging, who is exactly allegedly

17     damaged.  But if you want to cut this short

18     right now and we can come back and revisit

19     this on a later date, but we're not going to

20     waive our right to conduct the 50-h

21     examination.

22   MR. FEROLETO:  Well, I'm not asking you to waive

23     the right --

13

1    MR. LENNON:  The choice is yours, Mr. Feroleto.

2    MR. FEROLETO:  Well, I'm here and he's ready to

3         testify as to those items and the statute.

4         And I've been giving leeway, but I would just

5         ask that we kind of keep it --

6    MR. LENNON:  Your client's alleged damages?

7    MR. FEROLETO:  Listen, you read the Notice of

8         Claim, I can go get it.  You know exactly

9         what's in it and we're ready to proceed, so

10        let's try to work through this.

11   MR. LENNON:  Thank you.  I've never had an issue

12        with any of this information at any 50-h I've

13        ever run before.  This is the first time I'm

14        ever having this issue.

15   MR. FEROLETO:  All right.  Well, let's keep

16        rolling along and we'll try to get this

17        concluded.

18   BY MR. LENNON:

19   Q.   Do you have any education or certifications

20        or training after McKinley High School?

21   A.   I went to Erie Community College.

22   Q.   Did you obtain a degree there?

23   A.   No, I didn't finish.

 1  Q.  How far did you go?

 2  A.  About a year and a half.

 3  Q.  Do you have any military experience?

 4  A.  No.

 5  Q.  Any criminal convictions, misdemeanor or

 6      felonies?

 7  A.  No.

 8  Q.  Ever file for bankruptcy before?

 9  A.  No.

10  MR. FEROLETO:  I object -- I object to all those

11      questions, but go ahead.

12  BY MR. LENNON:

13  Q.  All right.  Mr. Martin, I have a receipt of

14      Notice of Claim that's signed by you on

15      September 30th, 2020.  Did you execute a

16      Notice of Claim on that date?

17  A.  Did I execute, I'm sorry.  Can you say that

18      again?

19  Q.  Did you sign a Notice of Claim on September

20      30th, 2020?

21  A.  Yes.

22  Q.  Then I'm also in receipt of an amended Notice

23      of Claim dated October 22nd, 2020.  Did you

Case 1:23-cv-00419-WMS-MJR  Document 1-15  Filed 05/11/23  Page 50 of 271

1          also sign an amended Notice of Claim on that

2          date?

3    A.    Yes.

4    Q.    And why did you send an amended Notice of

5          Claim?

6    MR. FEROLETO:  Well, you know, Pat, this is

7          going -- he can answer, but you're asking a

8          legal question, but go ahead, if you know.

9    THE WITNESS:  I was called down to John's office

10         in my events of mix up or something.

11   MR. FEROLETO:  And I object to both the question,

12         you know, and the answer, but go ahead.

13         Anyway -- you got another question?

14   MR. LENNON:  I have several questions.

15   MR. FEROLETO:  All right.

16   MR. LENNON:  Are you aware of any difference

17         between the first Notice of Claim and the

18         second Notice of Claim?

19   MR. FEROLETO:  Are you talking about the amended

20         Notice of Claim and the Notice of Claim that

21         he did not review today; is that what you're

22         referring to, Mr. Lennon?

23   MR. LENNON:  The first one and the second one.


ACR OF WNY
(716) 362-9838

FILED: ERIE COUNTY CLERK 04/20/2022 03:41 PM
NYSCEF DOC. NO. 15

INDEX NO. 808523/2021

RECEIVED NYSCEF: 04/20/2022

Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 51 of 271

1    MR. FEROLETO:  Did you review those today, Eric?

2    THE WITNESS:  No.  I didn't review those today.

3    BY MR. LENNON:

4    Q.   All right.  Sir, directing your attention to

5         Thursday, July 9th, 2020.  Do you recall

6         going to Speedway at 535 Kenmore Avenue on

7         that date?

8    A.   I'm sorry.  What date?

9    Q.   Thursday, July 9th, 2020?

10   A.   Yes.

11   Q.   And what was your purpose of the trip

12        there?

13   A.   To turn in two scratch offs.

14   Q.   And where were you coming from?

15   A.   Home.

16   Q.   And how did you get there?

17   A.   I drove.

18   Q.   What vehicle did you drive?

19   A.   A SUV.

20   Q.   What type of SUV do you have?

21   A.   Chevy Traverse.

22   Q.   What year?

23   A.   '20.

FILED: ERIE COUNTY CLERK 04/20/2022 03:41 PM
INDEX NO. 808523/2021
NYSCEF DOC. NO. 15
Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 52 of 271
RECEIVED NYSCEF: 04/20/2022

17

1    Q.   And did you go alone or were there people

2         with you?

3    A.   With my family.

4    Q.   So your wife and your son and your daughter

5         were with you?

6    A.   Correct.

7    Q.   And when you pulled into Speedway where did

8         you park your vehicle?

9    A.   By the gas meter.

10   Q.   Did you get gas that day?

11   A.   No.

12   Q.   And after you pulled your vehicle up to the

13        gas meter, what did you do next?

14   A.   I parked and I went inside to get the money

15        for my winnings, the two lottery tickets.

16   Q.   And did your family remain in the vehicle?

17   A.   Yes.

18   Q.   And when you entered the store, did you go --

19        where did you go to redeem your winnings?

20   A.   At the cash register.

21   Q.   And when you got to the cash register what

22        did you do?

23   A.   I gave my two tickets to the cashier.

FILED: ERIE COUNTY CLERK 04/20/2022 03:41 PM
NYSCEF DOC. NO. 15
INDEX NO. 808523/2021
RECEIVED NYSCEF: 04/20/2022

1   Q.   Do you recall which games or lottery tickets
2       that you were redeeming?

3   A.   Not offhand, no.

4   Q.   Do you know when you purchased those
5       tickets?

6   A.   I was purchasing the tickets periodically
7       through the month.

8   Q.   Do you recall when you specifically purchased
9       the two tickets you were redeeming on July
10      9th?

11   A.   No.

12   Q.   And approximately what time did you show up
13      at Speedway, was that 1:30?

14   A.   I don't know.  I can't recall specific time,
15      but I know it was during the day.

16   Q.   Okay.  And had this incident not occurred
17      what were you going to do with the rest of
18      your day?

19   A.   I was going to go to my father's house.

20   Q.   Were you working that day?

21   A.   No.

22   Q.   So you went to the register and did you hand
23      the two lottery tickets to the clerk?

1   A.   Yes.

2   Q.   And when you handed them to the clerk, did

3        you say anything?

4   A.   No.

5   Q.   And what happened next?

6   A.   She took the tickets and one went off, one

7        didn't go off.

8   Q.   And when she took the tickets, did she stand

9        right in front of you?

10   A.   Yes.

11   Q.   When you say one went off and one didn't go

12        off, what do you mean by that?

13   A.   When you have a lottery ticket that's a

14        winner, it makes a sound, a specific sound.

15        And when you don't win, it doesn't make a

16        sound.

17   Q.   And so there's, like, a little machine that

18        she can scan it under?

19   A.   Yes.

20   Q.   Okay.  And were you wearing a mask when you

21        went into the store?

22   A.   Yes.

23   Q.   And what happened next after she scanned the

FILED: ERIE COUNTY CLERK 04/20/2022 03:41 PM
INDEX NO. 808523/2021
NYSCEF DOC. NO. 15
Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 55 of 271
RECEIVED NYSCEF: 04/20/2022

20

1          two tickets?

2     A.   She said that she's going to go check with

3          her manager because both say they're a

4          winner, but only one went off.

5     Q.   When she told that to you, what did you do or

6          say, if anything?

7     A.   She told me she was going to go check with

8          her manager and I said, okay.

9     Q.   So you remained there in line?

10    A.   Yes.

11    MR. FEROLETO:  Form.

12    BY MR. LENNON:

13    Q.   Did you see her go and check with her

14         manager?

15    A.   She went and got her manager and her manager

16         came and took it and then she went in the

17         back.

18    Q.   Okay.  Was the manager a male or female?

19    A.   Female.

20    Q.   So when she went and got her manager and she

21         brought her manager over, how much time went

22         by?

23    A.   Minutes.  I can't give you a specific, pin

FILED: ERIE COUNTY CLERK 04/20/2022 03:41 PM
INDEX NO. 808523/2021
NYSCEF DOC. NO. 15
Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 56 of 271
RECEIVED NYSCEF: 04/20/2022

21

1       point of how many minutes.

2  Q.  Okay.  And then the manager went into the

3       back room or something like that?

4  A.  Yeah.

5  Q.  Did they tell you to wait at the register,

6       did they say anything to you during that

7       time?

8  A.  The manager said she was going to go back and

9       call it in and check to see what was going

10      on.

11  Q.  Okay.  And how long was the manager in the

12      back room doing that for?

13  A.  Quite a while.  I don't know the exact time

14      she stayed out.

15  Q.  And what did you do during that time?

16  A.  I waited.

17  Q.  Did you stand to the side or were you just

18      waiting in line?

19  A.  I stood to the side just so she can keep the

20      lines clear.

21  Q.  And so while you stood to the side, other

22      customers came in and did whatever it is they

23      had to do?

22

1    A.   Yes.

2    Q.   Okay.  Did there come a period of time when

3        you -- they came out or you stopped

4        waiting?

5    A.   No.  The police showed up.

6    Q.   Now, when you say the police showed up, was

7        that the Tonawanda Police?

8    A.   Yeah.

9    Q.   And about how soon after you arrived did the

10       police appear?

11   A.   I don't know how soon they were -- but after

12       she went in the back, a few minutes and then

13       they were there.

14   Q.   Okay.  And when the police first arrived, how

15       many cars arrived?

16   A.   I was inside the store, so I couldn't tell

17       you how many cars.

18   Q.   When did you first -- how did you first

19       notice the police arrived?

20   A.   He came in the store, it was one and he asked

21       me for ID.

22   Q.   So was he a uniformed officer?

23   A.   Yes.

Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 58 of 271

23

1    Q.   Okay.  And can you describe -- do you have

2         the name or the description of that

3         officer?

4    A.   Don't have the name.  Pretty tall guy.

5         Caucasian guy.

6    Q.   And so he approached you?

7    A.   Yes.

8    Q.   And he said -- how did he say -- did he say

9         can I see your ID please, or how did it go?

10   A.   ID please.

11   Q.   Okay.  And what did you say?

12   A.   I asked him for what.

13   Q.   Okay.  And what did he say next?

14   A.   He said something about the tickets being

15        stolen.

16   Q.   He said that the lottery ticket that you

17        presented was stolen, something along those

18        lines?

19   A.   He said he got a call for a stolen ticket.

20   Q.   And then did you have any awareness of that

21        prior to this incident?

22   A.   Not at all.

23   Q.   And when he told you that, what was your

FILED: ERIE COUNTY CLERK 04/20/2022 03:41 PM                    INDEX NO. 808523/2021
NYSCEF DOC. NO. 15    Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 59 of 271    RECEIVED NYSCEF: 04/20/2022

24

1       response?

2   A.  I didn't steel a ticket, so I don't know what

3       you're talking about.

4   Q.  Okay.  And then what did the officer say in

5       response to that?

6   A.  From there, I can't remember.

7   Q.  Okay.  After you told that to the officer

8       what happened next?

9   A.  He told me to stay put.  And I guess he was

10      going to meet some other officers outside.

11  Q.  Okay.  And during this -- these moments was

12      your family still outside in the traverse?

13  A.  Yes.

14  Q.  And do you recall which set of pumps you

15      parked at?

16  A.  The ones closest to the door.

17  Q.  Okay.  So -- so not on the -- so the ones

18      on -- so the pumps were sort of facing the

19      store?

20  A.  Yeah.

21  Q.  Okay.  And were you pointed towards the bike

22      path or was the car pointed towards the

23      apartments?

25

1    A.   Apartments I believe.

2    Q.   So the passenger's side door of your traverse

3         was facing the store, correct?

4    A.   Correct.

5    Q.   So he told you to stay put, did you comply

6         with that?

7    A.   Yeah.

8    Q.   Okay.  And then that officer went outside and

9         he spoke to some more officers?

10   A.   Yeah.

11   Q.   Were you able to observe who that officer was

12        speaking to?

13   A.   Not until all officers came inside.

14   Q.   Okay.  Did you give the officer your ID once,

15        you know, before he left the store?

16   A.   No.  He just went outside.

17   Q.   Okay.  And how long were the officers outside

18        for before they reentered the store?

19   A.   A few minutes.

20   Q.   Okay.  And while the officers were outside

21        did you have any conversations with the

22        employees at the Speedway who called them to

23        the store?

26

1   A.   No.

2   Q.   Did they say anything to you at all?

3   A.   Not that I can remember.  Maybe.

4   Q.   Okay.  All right.  So what happened next as

5        you were standing there waiting for the

6        officers?

7   A.   They came in after -- basically, they came

8        in, one detective showed them my ID.  After

9        that shortly the -- after that, he told me

10       what was going to go happen.  And then after

11       that we went to the police station.

12  Q.   Okay.  So the first police officer or

13       detective that approached you upon reentering

14       the store you believe was a detective?

15  A.   Yes.

16  Q.   And do you know that detective's name?

17  A.   Not offhand.

18  Q.   Do you know what that detective looked

19       like?

20  A.   Shorter then the first guy, caucasian.

21       That's it.

22  Q.   All right.  And he approached you and what

23       did he say?

Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 62 of 271

1    A.   He asked me for ID.  So I gave him my ID.

2    Q.   Okay.  And after you give him your ID, what

3         did he say next?

4    A.   Same thing the first cop said, they got a

5         call for a stolen lottery ticket.

6    Q.   And did you say anything to him?

7    A.   What do you mean did I say anything?

8    Q.   Did you say anything in response to the

9         detective when he said we got a call for a

10        stolen lottery ticket?

11   A.   Yeah, I told him I didn't steel a lottery

12        ticket.

13   Q.   All right.  And then what did he say next?

14   A.   Then he told me basically, what was going to

15        go happen.  After he did that -- shortly

16        after I was in a police car going down to the

17        station.

18   Q.   What did he tell you was going to happen?

19   A.   That they need to take me back to the police

20        station for questioning.

21   Q.   Okay.  And what did you say in response to

22        that?

23   A.   You mean in the back of the car?

```
 1    Q.   Okay.  And what did he say?

 2    A.   He said, yes.

 3    Q.   And then what did you say, if anything

 4         next?

 5    A.   I'm not going in the back of a cop car.

 6    Q.   Okay.  And what did the detective say after

 7         that?

 8    A.   I really don't know after that because that's

 9         when they all kind of -- they were going to

10         do what they were going to do.

11    Q.   Okay.  What happened next when you informed

12         the officers that you would not be going into

13         the back of the patrol car?

14    A.   The next thing was they grabbed me and

15         roughed me up a little bit.  And the next

16         thing, you know, I'm on the floor, into the

17         cop car; and from the cop car to the police

18         station.

19    Q.   Now, when you say they grabbed you, do you

20         know which officers grabbed you?

21    A.   Everybody kind of had their hands on me, so I

22         couldn't tell you if it was one or many.  I

23         think it was everybody kind of had their
```

1       hands on me.

2   Q.  Okay.  And do you know how many officers were

3       there total including officers and

4       detectives?

5   A.  I don't know total because it was some

6       outside, some inside.

7   Q.  Okay.  And at any point in time prior to you

8       saying I'm not going to go in the patrol car

9       did they say we're going to place you in

10      cuffs and put you in the back of the patrol

11      car?

12  A.  Could be, but I don't remember.

13  Q.  And so they grabbed you and then, do you know

14      where they grabbed you initially?

15  A.  Everybody was kind of grabbing different

16      parts, so that I couldn't answer.

17  Q.  Okay.  And when you say that they were

18      roughing you up, what do you mean by that?

19  A.  Physical -- they were very physical.

20  Q.  Other then grabbing your arms and perhaps

21      your legs do you know if you were struck at

22      all by any of the officers?

23  A.  I have no idea what happened because I was

Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 65 of 271

1       looking at the ground after they grabbed me.

2   Q.   And then you were on the floor.  How long did

3       it take for them to put you in handcuffs?

4   A.   After they got me on the ground I can't tell

5       you, maybe minutes, seconds.

6   Q.   Okay.  And then they pulled you up and

7       brought you to the back of the police car?

8   A.   Yes.

9   Q.   And were you able to walk out or did they

10      drag you out?

11  MR. FEROLETO:  Form.

12  BY MR. LENNON:

13   Q.   Pardon me?

14   A.   I said I walked out.

15   Q.   And was there -- was it with one officer, two

16      officers holding you, if you know?

17   A.   I can't remember how many, but it was

18      definitely one, but I don't know if it was

19      two.

20   Q.   Okay.  Prior to leaving the store,

21      Mr. Martin, did you experience any type of

22      pain anywhere on your body?

23   A.   I don't know.  I can't recall because my

FILED: ERIE COUNTY CLERK 04/20/2022 03:41 PM
NYSCEF DOC. NO. 15
INDEX NO. 808523/2021
RECEIVED NYSCEF: 04/20/2022

Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 66 of 271

1           adrenaline was going.

2    Q.    And as they were walking you out the store

3           were you saying anything?

4    A.    No.

5    Q.    Were they saying anything to you?

6    A.    Yeah.  They were saying a lot.  I can't

7           remember everything they were saying, they

8           were saying a lot.

9    Q.    What were they saying as they were walking

10          you to the car?

11   A.    I remember one thing was I'll have my day in

12          court, that was one.  I can't remember

13          everything else.

14   Q.    You said that or they said that?

15   A.    They said that.

16   Q.    Okay.  Oh, that you'll have your day in

17          court.

18   A.    Yes.

19   Q.    Okay.  And did they put you in the back of a

20          marked patrol vehicle or one of the

21          detectives cars?

22   A.    It was a Tonawanda SUV.

23   Q.    Was it marked with a Tonawanda police

1    badge?

2  A.  Yes.

3  Q.  Okay.  And at any point in time prior to

4      leaving Speedway did you speak to anybody in

5      your family at all?

6  A.  No.

7  Q.  Did you make any observations of your family

8      at all prior to leaving the Speedway?

9  A.  My kids and wife crying.

10  Q.  They were crying you said?

11  A.  Yes.

12  Q.  And where were they located when you observed

13      them doing that?

14  A.  By the vehicle.

15  Q.  Were they -- where was your family located at

16      the point you observed them?

17  A.  By the vehicle.

18  Q.  Were they inside the vehicle or were they

19      outside the vehicle?

20  A.  I seen my wife, she was outside the vehicle.

21  Q.  All right.  And your children were they

22      inside the vehicle?

23  A.  I think my daughter was in my wife's arms.

33

1   Q.   Okay.  And did you see where your son was

2       located?

3   A.   In the car.

4   Q.   And were the windows up or down for the back

5       seat?

6   A.   I think they were down, but I don't recall.

7   Q.   Okay.  And do you know the name of the

8       officer who transported you back to the

9       station?

10   A.   Not offhand.

11   Q.   Okay.  Was it the same officer who came in

12       and saw you initially?

13   A.   Don't know.  Can't recall that either.

14   Q.   And were you handcuffed in the back or the

15       front?

16   A.   I was in the back.

17   Q.   And on the way to the station house did you

18       have any conversations with the officer who

19       transported you?

20   A.   No.

21   Q.   Did he say anything to you at all?

22   A.   Yes.

23   Q.   What did that officer say to you?

34

1    A.    He asked me if I was all right.

2    Q.    Okay.  And what did you tell him?

3    A.    I didn't speak.

4    Q.    And at any point in time prior to being

5         transported to the station house did any of

6         the officers ever give you your Miranda

7         Rights and Warning, tell you you had the

8         right to remain silent, anything to those --

9         along those lines?

10   A.    No.

11              (Interruption in the internet

12         proceedings.)

13

14   MR. LENNON:  All right.  Thank you.  Mr. Martin,

15         and other than the police officer asking for

16         your identification, the detective asking for

17         your identification and then the detective

18         telling you that he's going to be bringing

19         you to the station house did they give you

20         any other instructions or demands while you

21         were at the Speedway?

22   MR. FEROLETO:  Form.  You can answer.

23   THE WITNESS:  You said any other instructions or

Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 70 of 271

1    demands?

2  BY MR. LENNON:

3  Q.   Correct.  Did they say anything to you as to

4       what they were going to be doing other then

5       those things or what they wanted?

6  A.   The only thing they told me was that I would

7       have to go into the back of a cop car.

8  Q.   Okay.

9  A.   That was the last of the demands.

10  Q.   And you told them you did not want to go into

11       the back of a cop car, correct?

12  A.   Correct.

13  Q.   And at that point why did you not want to go

14       into the back of the cop car?

15  A.   I didn't want to go in the back of a cop car

16       because I had my kids outside, along with my

17       wife.  And I don't want them to see an image

18       of me being put in the back of a cop car.

19       And that's not a good image.  And they think

20       the world of me, so I would not want to do

21       anything to let them down.  And you know, I

22       honestly thought that me and the officers

23       would have been able to come to an agreement

1        or work something out.

2   Q.   Did you ever communicate that to the officers

3        at all while at Speedway?

4   A.   No, but before I knew it they were on me.  So

5        it's not something that they said, you know,

6        as soon as I said I wasn't going in the back

7        of a cop car that was it.  There was no more

8        talking pretty much.

9   Q.   Did you offer them any alternatives other

10       then going into the back of the police

11       vehicle?

12  A.   I didn't get a chance.

13  Q.   Okay.  Once you got to the station house what

14       happened once you got there?

15  A.   I got strip searched and put into a cell.

16  Q.   Now, last question for the location at

17       Speedway, other then the manager saying we're

18       going to go back and take a look, did you

19       have any other conversations with the

20       representatives from Speedway prior to

21       interacting with the police?

22  A.   Can't recall, nothing off the top.

23  Q.   Do you know as to whether or not any of the

37

1          representatives or employees of Speedway were

2          saying anything to the police officers or the

3          detectives while they were interacting with

4          you?

5    A.    The cashier was saying -- she was saying a

6          lot, the young lady, but I couldn't hear it,

7          you know, this was after I was on the ground

8          and everything like that.  So she was saying

9          a lot, but I don't know what she was saying.

10   Q.    Okay.  Now, the cashier that was saying a lot

11         that was the initial cashier that you had

12         interacted with?

13   A.    Correct.

14   Q.    When you say she was saying a lot do you know

15         exactly what she was saying a lot about?

16   A.    I really didn't get a chance to focus in on

17         it because it was something else that was

18         going on.

19   Q.    Do you know as to whether or not it was was

20         she speaking to the police officers, was she

21         speaking on your behalf or was she just, any

22         way you would describe it?

23   A.    Like I said, I wasn't paying attention too

FILED: ERIE COUNTY CLERK 04/20/2022 03:41 PM
INDEX NO. 808523/2021
NYSCEF DOC. NO. 15
Case 1:23-cv-00419-WMS-MJR  Document 1-15  Filed 05/11/23  Page 73 of 271
RECEIVED NYSCEF: 04/20/2022

38

```
 1          much.  I just know she was saying a lot.
 2    Q.    All right.  Now, you got to the police house
 3          you were stripped searched, where did that
 4          take place?
 5    A.    In a big room right before you actually get
 6          into like the cells.
 7    Q.    And how many officers were present for
 8          that?
 9    A.    Two.  Female and a male.
10    Q.    And do you know the names of those
11          officers?
12    A.    Not offhand.
13    Q.    And what did the -- what did they advise you
14          regarding the strip search?
15    A.    They just asked me if I had anything on me
16          and we'd get my stuff back once I was
17          released.
18    Q.    And how did they conduct the strip search?
19    A.    They had me take my stuff off and then that
20          was basically it.
21    Q.    So you removed all of your clothing?
22    A.    Down to my drawers, yeah.
23    Q.    Did you have to remove your undergarments?
```

1   A.   No.

2   Q.   What were you wearing at that time?

3   A.   I think a white shirt, basketball shorts,

4        sneaker, socks and my mask.

5   Q.   And did you have to take the socks off?

6   A.   I took everything off except the -- my

7        underwear.

8   Q.   Okay.  And how long did that last for?

9   A.   Minutes.

10  Q.   Both officers remained in your presence while

11       that occurred?

12  A.   Yes.

13  Q.   Did they ever initiate any physical contact

14       with you while you were in the midst of

15       taking your clothes off?

16  A.   What you say physical, what do you mean?

17  Q.   Were they grabbing you, were they touching

18       you, did they --

19  A.   No.

20  Q.   Did they put their hands anywhere they

21       shouldn't be going?

22  A.   No.

23  Q.   And then after you disrobed down to your

40

1         underwear what happened next?

2    A.   After I got into the cell he gave me my

3         shorts back and then I just waited until he

4         came and got me.

5    Q.   Was it the same male uniformed officer?

6    A.   Yes.

7    Q.   And then how long were you waiting in the

8         cell for?

9    A.   That I don't know.  I was in there quite

10        awhile.

11   Q.   While you were waiting in the cell and while

12        you were being stripped searched did you say

13        anything to the officers at all?

14   A.   No.

15   Q.   And other then them telling you to take off

16        your clothes, put them back on and go into

17        the cell, did they advise you of anything

18        else during that time?

19   A.   When you say advised me of anything else,

20        what do you mean?

21   Q.   Did they say anything to you at all during

22        that period?

23   A.   They asked me to sign some papers and I told

41

1    them I wasn't going to sign any papers.

2 Q. Did they give you the papers to look at

3   before you signed them?

4 A. No.

5 Q. Do you know what those papers were about?

6 A. I can't remember.

7 Q. Did they give you an opportunity to read

8   those papers?

9 A. Not offhand, no.

10 Q. Okay.  And then after the period of time you

11   were in the cell, there was a point of time

12   when they brought you out?

13 A. Yes.

14 Q. And when you were in the cell did you remain

15   handcuffed?

16 A. No, I wasn't handcuffed.

17 Q. When did they take the handcuffs off of

18   you?

19 A. After I got in the cell.

20 Q. And when they came and got you to when you

21   took -- did the strip search you were still

22   in handcuffs at that point?

23 A. Yeah.

42

1   Q.   So when they came and brought you out of the

2         cell did they put the handcuffs back on

3         you?

4   A.   I can't remember.  I don't -- I don't

5         remember.

6   Q.   Where did they bring you?

7   A.   What do you mean, after the cell?

8   Q.   Yes.

9   A.   They brought me, let's see to a room to get

10       my Miranda Rights read to me and they wanted

11       me to sign more paperwork.

12   Q.   And who did you meet with in that room?

13   A.   I was supposed to be meeting the detective

14       that I gave my ID to at the gas station.

15   Q.   Did you meet with him?

16   A.   Yeah, we were in there.

17   Q.   And did you have a conversation with that

18       detective?

19   A.   Yeah.  He wanted me to sign some more

20       paperwork and I refused.

21   Q.   What was the paperwork regarding?

22   A.   Miranda Rights and something else.  I don't

23       know what the other things were, but --

FILED: ERIE COUNTY CLERK 04/20/2022 03:41 PM INDEX NO. 808523/2021

NYSCEF DOC. NO. 15    Case 1:23-cv-00419-WMS-MJR    Document 1-15    Filed 05/11/23    Page 78 of 271    RECEIVED NYSCEF: 04/20/2022

1    Q.    And did you make any statements to him at

2          that time other then I'm not going to be

3          signing these documents?

4    MR. FEROLETO:  Form.

5    THE WITNESS:  I just said I'm not going to be

6          signing them.

7    BY MR. LENNON:

8    Q.    What did the detectives say to you regarding

9          the documents that he was trying to have you

10         sign?

11   A.    I couldn't leave unless I signed the

12         paperwork, so I put refused.

13   Q.    And then after you refused to do that what

14         happened next?

15   A.    I went to get finger printed, my photo shot

16         and I think that was about it.

17   Q.    Did you have any conversations with the

18         police officers while you were being finger

19         printed?

20   A.    I don't know if it was his captain or

21         lieutenant or whoever, he came and talked for

22         a little while and said thanks for

23         cooperating.

FILED: ERIE COUNTY CLERK 04/20/2022 03:41 PM INDEX NO. 808523/2021
NYSCEF DOC. NO. 15 Case 1:23-cv-00419-WMS-MJR Document 1-15 Filed 05/11/23 Page 79 of 271 RECEIVED NYSCEF: 04/20/2022

1   Q.  So that was another male officer?

2   A.  Yeah.

3   Q.  Was that officer in a uniform?

4   A.  No.  He was in a shirt and pants.

5   Q.  And did you say anything to him at all?

6   A.  I said no problem.

7   Q.  Then what happened next?

8   A.  We wrapped everything up, I got the -- I

9       guess a bag with one of the tickets that I

10      won.  They kept the other one.  And then I

11      was released.

12   Q.  Did they give you a copy of any charges or

13      release you with an appearance ticket?

14   A.  I had an appearance ticket.

15   Q.  Do you know approximately what time you were

16      released?

17   A.  I don't know offhand.

18   Q.  And where were you released?

19   A.  At the police station.

20   Q.  So did they take you up to the front desk

21      there or did they take you downstairs,

22      where --

23   A.  Front desk and showed me the front door.

45

1   Q.   Did you have anybody waiting for you out
2        there?
3   A.   My family.
4   Q.   Okay.  And who was waiting for you in the
5        lobby or was it outside?
6   A.   It was outside.
7   Q.   And where were they waiting for you?
8   A.   Outside the doors.
9   Q.   In the Traverse?
10  A.   No.  Actually outside, like, before you come
11       in.
12  Q.   Okay.  So down at the base of the steps
13       there?
14  A.   Yeah.
15  Q.   And who in your family was there?
16  A.   My parents, my brother, my wife.
17  Q.   And after you left or were released did you
18       have any other conversations or overhear any
19       statements about any of the Tonawanda police
20       officers subsequent to that?
21  A.   What do you mean by --
22  Q.   After you were released did you have any
23       other conversations with any of the police

1          officers or detectives regarding this

2          incident?

3     A.   No.

4     Q.   Are you aware of any statements made by any

5          of the police officers, detectives or anybody

6          on behalf of the Town of Tonawanda Police

7          Department regarding this incident?

8     A.   Not that I can remember.

9     Q.   And you've never met in person or spoken to

10         any of the officers or detectives since this

11         incident, correct?

12    A.   Correct.

13    Q.   Are you aware as to whether or not anybody on

14         behalf of you from your family has spoken to

15         anybody from the police department regarding

16         this incident?

17    A.   I have no idea.

18    Q.   Are you aware as to whether or not during the

19         time that you were in custody with the Town

20         of Tonawanda Police Department as to whether

21         or not anybody on behalf of you from your

22         family had been speaking to any

23         representatives from the Town of Tonawanda

47

1        Police Department?

2   A.   I was in the cell, so I don't know.

3   Q.   Okay.

4   MR. FEROLETO:  I believe his father who's name is

5        also Eric may have had some conversations

6        with the Tonawanda police.

7   MR. LENNON:  Okay.  I saw that in one of the

8        articles, I was just wanted to know what your

9        client's awareness was of that, that's all.

10  MR. FEROLETO:  Okay.  Sure.

11  BY MR. LENNON:

12  Q.   Do you have any awareness of any

13       conversations that your father may have had

14       with the Town of Tonawanda Police Department,

15       Mr. Martin?

16  A.   Like I said, I have no idea.

17  Q.   Okay.  Are you aware of any witnesses to this

18       incident other then the police officers,

19       detectives and the two employees from

20       Speedway?

21  A.   Probably would have been about it.  Just the

22       police officers and the people that work

23       there.

48

1  Q.  Have you made any claims against the Speedway
2      at all?
3  A.  What do you mean by claims?
4  Q.  Have you initiated any litigation or filed a
5      lawsuit against Speedway at all, if you
6      know?
7  A.  Maybe.  I would have to talk to John.
8  Q.  Yep.  And I'm not privy to those
9      conversations.  Have you ever received any
10     settlement money from Speedway at all?
11 A.  Not at all.
12 Q.  Okay.  Now, are you aware that your father
13     had also been accused of possessing a stolen
14     lottery ticket from that store?
15 A.  Yes.  He said the same thing happened to him.
16 Q.  Okay.  When did he tell you that?
17 A.  I can't recall what day, but it might have
18     been a few days later.  I took some time to
19     myself for quite a long time.
20 Q.  So this was after the incident that your
21     father advised you of that?
22 A.  Yeah.
23 Q.  Okay.  So it wasn't before this incident that

49

1          your father had told you that, correct?

2    A.    Yeah.

3    Q.    Now, Mr. Martin, I wanted to ask you some

4          questions here about your amended Notice of

5          Claim. And it said as a result of this

6          incident you suffered humiliation, trauma and

7          physical injuries to your left shoulder, left

8          knee, neck, body and head. So I just want to

9          ask you some questions about your injuries,

10         okay?

11   A.    Okay.

12   Q.    What injuries did you sustain to your head?

13   A.    I had a headache.

14   Q.    And where was the headache located?

15   A.    In the backside of my head.

16   Q.    So the back left-hand side?

17   A.    Back left-hand side.

18   Q.    And how long did you have that headache

19         for?

20   A.    I still have periodic headaches from time to

21         time. So they never really stopped.

22   Q.    And when you first experienced that headache,

23         can you describe it for me?

FILED: ERIE COUNTY CLERK 04/20/2022 03:41 PM
NYSCEF DOC. NO. 15
INDEX NO. 808523/2021
RECEIVED NYSCEF: 04/20/2022

1   A.   Pain.  I don't know really how to describe
2        that, just painful.
3   Q.   Did it travel anywhere, did it come to the
4        front of your head, did it go down into your
5        shoulder?
6   A.   Left side, you know.
7   Q.   Left side towards the front of your forehead.
8   A.   From the left side towards the front of my
9        forehead.
10  Q.   And how long did the headaches -- headache
11       last for, was it permanent, you know, 24/7 or
12       did it come and go, anyway you want to
13       describe it?  Go ahead, Mr. Martin.  Yeah, my
14       question was how often, what's the frequency
15       of the headaches?
16  A.   I always have headaches.
17  Q.   Has there come a time prior -- or subsequent
18       to this incident or after this incident where
19       your headache has gone away?
20  A.   It might if I, you know, take medicine, but
21       it always comes back.
22  Q.   Did you ever have any headaches prior to this
23       incident?

51

1    A.   No.

2    Q.   Have you received any treatment for your

3         headaches?

4    A.   Just medicine.

5    Q.   Have you seen any medical providers and

6         discussed your headaches with them at all

7         since this incident?

8    A.   Yes.  I spoke to doctors about all my issues.

9    Q.   Which doctor was that?

10   A.   Cicchetti and Lapoint.  And my therapist,

11        physical therapist.

12   Q.   Did they prescribe any medication for your

13        headaches at all?

14   A.   They just told me to, you know, take Tylenol

15        over-the-counter medicine or something.

16   Q.   How often do you take Tylenol?

17   A.   Whenever I can't bear headaches.

18   Q.   How often within the past seven days have you

19        taken Tylenol?

20   A.   Maybe twice.

21   Q.   And Dr. Cicchetti, is that Dr. Michael

22        Cicchetti?

23   A.   Yes.

Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 87 of 271

52

1   Q.   And is he with Buffalo Spine and Sports?

2   A.   Yes.

3   Q.   And Dr. Lapoint whose Dr. Lapoint with?

4   A.   I forget the name of his company, but --

5   Q.   And who -- what does Dr. Lapoint treat?

6   A.   I think he's a -- specializes in orthopedics

7       or something else like that.

8   Q.   All right.  So other then speaking to them

9       about the headaches have you had any other

10      treatment for your headaches as a result of

11      this incident?

12  A.   No.

13  Q.   Now, you indicated that you injured your neck

14      as a result of this incident?

15  A.   Yes.

16  Q.   Where did you injure your neck?

17  A.   On the left side.

18  Q.   When did you first notice an injury to your

19      neck as a result of this incident?

20  A.   A day later.

21  Q.   And what type of pain or symptoms were you

22      feeling when you noticed it the following

23      day?

53

1   A.   They all, like, go together the neck, the

2       head, shoulder, arms.

3   Q.   And have you had any diagnostic testing

4       X-rays, CAT scan, CT scans or MRIs of your

5       neck at all --

6   A.   Yes.

7   Q.   -- since the accident?  And where did you get

8       those done?

9   A.   Buffalo MRI.

10   Q.   And are you aware of the results of those?

11   A.   Yes.  I have a pinched nerve.

12   Q.   In your neck?

13   A.   Yes.

14   Q.   And whose treating your neck?

15   A.   I go to Optimal Therapy.  So I'm doing

16       therapy there and I'm going to Cicchetti's

17       office.

18   Q.   And had you ever had any prior treatment or

19       injuries to your neck at all before this

20       incident?

21   A.   No.

22   Q.   So right now you're treating that with

23       physical therapy, correct?

54

1    A.    Yes.

2    Q.    Have you received any chiropractic treatment

3          at all?

4    A.    No, not yet.

5    Q.    Have you had any chiropractic treatment prior

6          to this incident?

7    A.    No.

8    Q.    Any diagnostic imaging, CT scans, MRIs,

9          X-rays to your neck before this incident?

10   A.    No.

11   Q.    Okay.  There's also an injury indicated to

12         your left shoulder?

13   A.    Yeah.

14   Q.    When did you first notice pain or symptoms in

15         your left shoulder after this incident?

16   A.    Same thing, a day later.

17   Q.    Can you describe the pain or symptoms that

18         you experienced in your left shoulder?

19   A.    It's all wrapped together.

20   Q.    Did you ever experience any numbness or

21         tingling at all?

22   A.    Yes.

23   Q.    Where do you experience that?

1   A.   From my shoulder down to the middle of my

2       arm.

3   Q.   Does it go below your elbow at all or is

4       it --

5   A.   No. It comes and goes.

6   Q.   Do you take any medication for that at all?

7   A.   Sugar injections.

8   Q.   When did you have trigger point injections?

9   A.   Maybe a few days before Thanksgiving.

10   Q.   And who performed those?

11   A.   Some lady for Dr. Cicchetti's office.

12   Q.   And did those help at all?

13   A.   It took some of the pain away, but I'm still

14       dealing with it.

15   Q.   And how many trigger point injections did you

16       receive?

17   A.   I can't recall because I was laying down.

18   Q.   And any previous injuries to your left

19       shoulder at all?

20   A.   No.

21   Q.   Now, in your amended Notice Of Claim it

22       indicates that you sustained an injury to

23       your left knee?

FILED: ERIE COUNTY CLERK 04/20/2022 03:41 PM
NYSCEF DOC. NO. 15
INDEX NO. 808523/2021
RECEIVED NYSCEF: 04/20/2022
Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 91 of 271

1    A.    Yeah.

2    Q.    And when did you first notice an injury to

3          your left knee or pain or symptoms?

4    A.    A day later.

5    Q.    And what type of pain and symptoms did you

6          feel in your left knee?

7    A.    Sharp pain.

8    Q.    Did you ever have any prior left knee

9          injuries?

10   A.    No.

11   Q.    And the pain you felt in your left knee was

12         that 24/7 constant or is it only --

13   A.    It comes and goes.

14   Q.    Do you know what helps it and what aggravates

15         it or causes it to come about?

16   A.    No.  I don't know when it happens, just

17         happens.

18   Q.    Have you had any diagnostic imaging, X-rays,

19         MRIs to your left knee at all?

20   A.    Yes.

21   Q.    Where did that occur?

22   A.    Dr. Lapoint's office.

23   Q.    And how about in your left shoulder, have you

57

1          had any diagnostic imaging, X-rays, MRIs, to

2          your left shoulder at all?

3     A.   I believe, I'm not sure, but I think it was

4          Dr. Lapoint's office.

5     Q.   Do you know where Dr. Lapoint's office is

6          located?

7     A.   In Williamsville, but I keep all that stuff

8          in my phone, so I wouldn't be able to tell

9          you straight address.

10    Q.   No problem.  Now, other then the physical

11         injuries to your head, neck, left shoulder,

12         and left knee are there any other physical

13         injuries that you sustained as a result of

14         this incident?

15    A.   Just those, back, neck, shoulder, knee, head.

16    Q.   Now, in terms of humiliation and trauma that

17         you experienced, can you articulate that for

18         me what those injuries consist of?

19    MR. FEROLETO:  Form.  You can answer.

20    THE WITNESS:  The humiliation well, I felt like

21         everybody around me kind of seen what

22         happened.  I couldn't get any help from

23         anybody.  You know, everybody is watching me

58

1          like I'm a criminal, going away.

2               My kids you know, they don't know what

3          to think.  And the biggest thing with

4          everything that's going on is that I, you

5          know, it really bothers me.  I feel like less

6          then a person because I don't think any

7          person should be handled like that or treated

8          like that.  And it was humiliating for

9          everybody around me to see.

10    BY MR. LENNON:

11    Q.   Thank you for sharing that Mr. Martin.  Did

12         you miss any time from work as a result of

13         this?

14    A.   Not that I could -- no.

15    Q.   And have you had any out-of-pocket expenses

16         related to this at all?

17    A.   Yes.  I'm paying for everything

18         out-of-pocket.

19    Q.   Your medical treatment?

20    A.   Yeah.

21    Q.   Whose your medical health insurance

22         provider?

23    A.   Blue Cross Blue Shield.

FILED: ERIE COUNTY CLERK 04/20/2022 03:41 PM INDEX NO. 808523/2021
NYSCEF DOC. NO. 15 RECEIVED NYSCEF: 04/20/2022

1  Q.   And that's through your employer?

2  A.   Yes.

3  MR. LENNON:  That's all I have, Mr. Martin.  I

4       appreciate your time today.  Sorry that Mr.

5       Feroleto and I put on a little show for you,

6       but that doesn't have anything to do with you

7       or your case.  Sometimes --

8  MR. FEROLETO:  Pat, I didn't see it as a little

9       show.  We're just -- I see it as kind of just

10      defining, but I'd be happy to send you over

11      the video and if there's anything else I can

12      share with you, I'd be happy to do that.  And

13      of course it was good visiting with you.

14 MR. LENNON:  Thanks, John.  Same here.

15

16                  *       *       *

17

18

19

20

21

22

23

60

1  STATE OF NEW YORK)

2                SS:

3  COUNTY OF NIAGARA)

4

5         I, DEBORAH F. TERRANOVA, a Notary

6  Public in and for the State of New York, County

7  of Niagara, DO HEREBY CERTIFY that the deposition

8  of ERIC MARTIN was taken down by me in a verbatim

9  manner by means of Machine Shorthand, on DECEMBER

10  7, 2020.  That the deposition was then reduced in

11  writing under my direction.  That the deposition

12  was taken to be used in the  above-entitled

13  action.  That the said deponent, before

14  examination, was duly sworn by me to testify to

15  the truth, the whole truth and nothing but the

16  truth, relative to said action.

17         I further CERTIFY that the

18  above-described transcript constitutes a true and

19  accurate and complete transcript of the

20  testimony.

21                *Deborah F. Terranova*

22         ------------------------------

           DEBORAH F. TERRANOVA,

23         Notary Public

ACR OF WNY

(716) 362-9838

# ACR OF WNY

## (716) 362-9838

< Dates >
DECEMBER 7,
   2020  1:25,
   60:9
January 14th,
   1990  7:16
July 9th,
   2020  16:5
October 2017
   9:8
October 22nd,
   2020  14:23
'20.  16:23
-vs  1:9

< 1 >
12:10  1:25
14202.  2:7
14216  1:24,
   2:25
14216.  7:20
14217.  2:13
191  1:23,
   2:24,  7:20,
   8:18
1983  12:14
1:30  18:13

< 2 >
2000  9:8
2009.  11:12
2013.  10:14
2020  14:20,
   16:9
2020.  14:15
24/7  50:11,
   56:12
2919  2:12

< 3 >
30th  14:15,
   14:20
3113  2:18

< 4 >
42.  9:1
438  2:5

< 5 >
50-h  1:21,
   4:10,  9:12,
   11:14,
   12:20,
   13:12
535  16:6

< 9 >
910  2:6
9th  16:9,
   18:10

< A >
abbreviations
   11:6
able  25:11,
   30:9,
   35:23,  57:8
above-describ
   ed  60:18
above-entitle
   d  60:12
accident  53:7
accurate
   60:19
accused  48:13
action  60:13,
   60:16
Actually
   38:5,  45:10
address  8:23,
   57:9
adrenaline
   31:1
advise  38:13,
   40:17

advised
   40:19,
   48:21
afternoon  3:1
ages  8:13
aggravates
   56:14
agreement
   35:23
ahead  9:17,
   9:22,
   14:11,
   15:8,
   15:12,
   50:13
allegations
   12:14
alleged  13:6
allegedly
   12:16
alleging
   12:16
allowed  4:18
allows  9:13
alone  17:1
alternatives
   36:9
amended
   14:22,
   15:1,  15:4,
   15:19,
   49:4,  55:21
amount  9:11
an injury
   52:18,
   54:11,
   55:22,  56:2
answer  3:11,
   15:7,
   15:12,
   29:16,
   34:22,
   57:19
answers  3:14,
   7:12
anybody  7:2,

7:6,  32:4,
   45:1,  46:5,
   46:13,
   46:15,
   46:21,
   57:23
Anyway  15:13,
   50:12
Apartments
   24:23,  25:1
appear  22:10
appearance
   44:13,
   44:14
APPEARANCES
   2:1
Appearing
   2:8,  2:14
appreciate
   6:2,  59:4
approached
   23:6,
   26:13,
   26:22
appropriate
   5:18
approximately
   18:12,
   44:15
arm  55:2
arms  29:20,
   32:23,  53:2
around  8:2,
   57:21,  58:9
arrived  22:9,
   22:14,
   22:15,
   22:19
articles  47:8
articulate
   57:17
Ashley  8:10,
   9:9
attend  11:9
attention
   16:4,  37:23

# ACR OF WNY
## (716) 362-9838

**Attorney** 3:2, 4:21, 5:17, 7:1, 7:6
**audible** 3:15
**available** 11:1
**Avenue** 2:12, 16:6
**aware** 15:16, 46:4, 46:13, 46:18, 47:17, 48:12, 53:10
**awareness** 23:20, 47:9, 47:12
**away** 50:19, 55:13, 58:1

**< B >**
**Back** 11:21, 12:18, 20:17, 21:3, 21:8, 21:12, 22:12, 27:19, 27:23, 28:5, 28:13, 29:10, 30:7, 31:19, 33:4, 33:8, 33:14, 33:16, 35:7, 35:11, 35:14, 35:15, 35:18, 36:6, 36:10,

36:18, 38:16, 40:3, 40:16, 42:2, 49:16, 49:17, 50:21, 57:15
**background** 5:14, 12:6
**backside** 49:15
**badge** 32:1
**bag** 44:9
**bankruptcy** 14:8
**base** 45:12
**basic** 9:20
**basically** 26:7, 27:14, 38:20
**basketball** 39:3
**bear** 51:17
**begin** 2:17
**Behalf** 1:13, 37:21, 46:6, 46:14, 46:21
**believe** 25:1, 26:14, 47:4, 57:3
**below** 55:3
**benefit** 3:8
**beyond** 9:16, 11:23
**big** 38:5
**biggest** 58:3
**bike** 24:21
**birth** 7:14
**bit** 28:15
**Blue** 58:23
**body** 30:22,

49:8
**bothers** 58:5
**break** 3:23
**briefly** 3:4
**bring** 42:6
**bringing** 34:18
**Brinton** 1:24, 2:24, 7:20, 8:18
**brother** 45:16
**brought** 20:21, 30:7, 41:12, 42:1, 42:9
**Buffalo** 1:24, 2:7, 2:25, 7:20, 52:1, 53:9
**Building** 2:6

**< C >**
**C.** 1:5
**call** 21:9, 23:19, 27:5, 27:9
**called** 2:26, 15:9, 25:22
**captain** 43:20
**car** 24:22, 27:16, 27:23, 28:5, 28:13, 28:17, 29:8, 29:11, 30:7, 31:10, 33:3, 35:7, 35:11, 35:14, 35:15, 35:18, 36:7

**cars** 22:15, 22:17, 31:21
**case** 4:1, 59:7
**cash** 17:20, 17:21
**cashier** 5:12, 5:13, 17:23, 37:5, 37:10, 37:11
**CAT** 53:4
**Caucasian** 23:5, 26:20
**cause** 56:15
**cell** 36:15, 40:2, 40:8, 40:11, 40:17, 41:11, 41:14, 41:19, 42:2, 42:7, 47:2
**cells** 38:6
**certainly** 12:2, 12:14
**certifications** 13:19
**CERTIFY** 60:7, 60:17
**cetera** 11:16
**chance** 36:12, 37:16
**charges** 44:12
**check** 20:2, 20:7, 20:13, 21:9
**Chevy** 16:21
**children** 8:13, 32:21
**chiropractic** 54:2, 54:5
**choice** 13:1

# ACR OF WNY
## (716) 362-9838

Cicchetti
51:10,
51:21,
51:22,
53:16,
55:11
City 11:15
Claim 1:3,
3:5, 9:12,
11:19,
12:13,
13:8,
14:14,
14:16,
14:19,
14:23,
15:1, 15:5,
15:17,
15:18,
15:20,
49:5, 55:21
Claimant 1:7,
2:9, 11:17
claims 12:11,
48:1, 48:3
clamp 10:17
clear 21:20
clerk 18:23,
19:2
client 4:21,
5:22, 12:6,
13:6, 47:9
close 7:4
closest 24:16
clothes
39:15,
40:16
clothing
38:21
College 13:21
comes 50:21,
55:5, 56:13
coming 6:4,
16:14
commencing
1:25

communicate
36:2
Community
13:21
company 52:4
complete 6:4,
60:19
comply 12:10,
25:5
concluded
13:17
conduct
12:20,
38:18
conferencing
2:8, 2:14
confidential
4:22
consist 57:18
constant
56:12
constitutes
60:18
contact 39:13
conversation
42:17
conversations
4:19,
25:21,
33:18,
36:19,
43:17,
45:18,
45:23,
47:5,
47:13, 48:9
convictions
14:5
cooperating
43:23
cop 27:4,
28:5,
28:17,
35:7,
35:11,
35:14,

35:15,
35:18, 36:7
copy 5:17,
5:19, 6:1,
44:12
Correct 11:2,
17:6, 25:3,
25:4, 35:3,
35:11,
35:12,
37:13,
46:11,
46:12,
49:1, 53:23
County 11:15,
60:3, 60:6
Couple 3:9,
9:3
course 59:13
COURT 2:6,
2:17, 2:20,
3:8, 31:12,
31:17
courtesy 6:3
CPLR 2:18
criminal
14:5, 58:1
Cross 58:23
crying 32:9,
32:10
CT 53:4, 54:8
cuffs 29:10
currently
9:5, 10:5
custody 46:19
customers
21:22
cut 12:17

< D >
damaged 12:17
damages
11:19,
12:1,
12:12,

12:15, 13:6
date 7:14,
12:19,
14:16,
15:2, 16:7,
16:8
dated 14:23
daughter
17:4, 32:23
day 17:10,
18:15,
18:18,
18:20,
31:11,
31:16,
48:17,
52:20,
52:23,
54:16, 56:4
days 48:18,
51:18, 55:9
dealing 55:14
DEBORAH 1:26,
60:5, 60:24
defining
59:10
definitely
30:18
degree 13:22
Delaware 2:12
demand 11:16
demands
34:20,
35:1, 35:9
Department
1:12, 5:5,
5:23, 46:7,
46:15,
46:20,
47:1, 47:14
deponent
60:13
deposition
4:10, 9:16,
60:7,
60:10,

# ACR OF WNY

## (716) 362-9838

60:11

**Deputy** 3:2

**describe**
23:1,
37:22,
49:23,
50:1,
50:13,
54:17

**description**
23:2

**desk** 44:20,
44:23

**detective**
26:8,
26:13,
26:14,
26:16,
26:18,
27:9, 28:6,
34:16,
34:17,
42:13,
42:18

**detectives**
29:4,
31:21,
37:3, 43:8,
46:1, 46:5,
46:10,
47:19

**diagnostic**
53:3, 54:8,
56:18, 57:1

**difference**
15:16

**different**
29:15

**difficult**
3:11, 3:15

**directing**
16:4

**direction**
60:11

**disagree** 9:20

**discussed**

51:6

**disrespectful**
10:2

**disrobed**
39:23

**Do you know**
29:21,
37:14,
38:10,
44:15

**doctor** 51:9

**doctors** 51:8

**documents**
4:6, 6:16,
43:3, 43:9

**doing** 3:18,
21:12,
32:13,
35:4, 53:15

**done** 3:10,
53:8

**door** 24:16,
25:2, 44:23

**doors** 45:8

**Down** 3:12,
3:15, 15:9,
27:16,
33:4, 33:6,
35:21,
38:22,
39:23,
45:12,
50:4, 55:1,
55:17, 60:8

**downstairs**
44:21

**drag** 30:10

**drawers** 38:22

**drive** 10:17,
16:18

**drove** 16:17

**duly** 2:26,
60:14

**during** 18:15,
21:6,
21:15,

24:11,
40:18,
40:21,
46:18

**duties** 10:15

**dwelling** 8:16

**< E >**

**education**
13:19

**either** 33:13

**elbow** 55:3

**employed**
10:5, 10:11

**employees**
25:22,
37:1, 47:19

**employer** 59:1

**enough** 7:22

**entered** 17:18

**entirely**
12:14

**ERIC** 1:5,
1:20, 16:1,
47:5, 60:8

**Erie** 13:21

**especially**
12:15

**ESQ** 2:4

**et** 11:15

**event** 3:22

**events** 15:10

**Everybody**
28:21,
28:23,
29:15,
57:21,
57:23, 58:9

**everything**
31:7,
31:13,
37:8, 39:6,
44:8, 58:4,
58:17

**exact** 21:13

**exactly**
12:16,
13:8, 37:15

**EXAMINATION**
1:20, 2:28,
12:21,
60:14

**except** 39:6

**execute**
14:15,
14:17

**expenses**
58:15

**experience**
14:3,
30:21,
54:20,
54:23

**experienced**
49:22,
54:18,
57:17

**extent** 11:18,
11:23

**< F >**

**F.** 1:26,
60:5, 60:24

**facing** 24:18,
25:3

**fact** 5:21

**fair** 9:11

**family** 7:4,
8:6, 8:7,
8:15, 17:3,
17:16,
24:12,
32:5, 32:7,
32:15,
45:3,
45:15,
46:14,
46:22

**far** 14:1

**father** 18:19,

## ACR OF WNY

### (716) 362-9838

47:4,
47:13,
48:12,
48:21, 49:1
**feel** 56:6,
58:5
**feeling** 52:22
**felonies** 14:6
**felt** 56:11,
57:20
**Female** 20:18,
20:19, 38:9
**Feroleto** 2:3,
2:4, 3:19,
4:20, 13:1,
59:5
**few** 5:13,
12:3,
22:12,
25:19,
48:18, 55:9
**file** 14:8
**filed** 3:6,
48:4
**fine** 9:22,
11:21
**finger** 43:15,
43:18
**finish** 13:23
**first** 13:13,
15:17,
15:23,
22:14,
22:18,
26:12,
26:20,
27:4,
49:22,
52:18,
54:14, 56:2
**floor** 28:16,
30:2
**focus** 37:16
**following**
52:22
**follows** 2:26

**forehead**
50:7, 50:9
**forget** 11:6,
52:4
**fork** 10:17
**Form** 10:2,
20:11,
30:11,
34:22,
43:4, 57:19
**forth** 12:12
**forty.** 10:22
**frequency**
50:14
**Front** 19:9,
33:15,
44:20,
44:23,
50:4, 50:7,
50:8

**< G >**
**G-A-I-L** 8:21
**Gail** 8:20,
8:23
**games** 18:1
**gas** 5:11,
5:12, 17:9,
17:10,
17:13,
42:14
**gave** 17:23,
27:1, 40:2,
42:14
**General** 1:22,
10:8,
10:12,
11:6, 11:8
**generalities**
9:15
**give** 20:23,
25:14,
27:2, 34:6,
34:19,
41:2, 41:7,

44:12
**given** 6:21,
7:2, 7:5,
12:15
**giving** 3:10,
13:4
**Gotcha** 3:20
**grabbed**
28:14,
28:19,
28:20,
29:13,
29:14, 30:1
**grabbing**
29:15,
29:20,
39:17
**graduate**
11:11
**ground** 3:9,
30:1, 30:4,
37:7
**guess** 24:9,
44:9
**guy** 23:4,
23:5, 26:20

**< H >**
**half** 8:1,
8:2, 9:4,
14:2
**hand** 18:22
**handcuffed**
33:14,
41:15,
41:16
**handcuffs**
30:3,
41:17,
41:22, 42:2
**handed** 19:2
**handled** 58:7
**hands** 28:21,
29:1, 39:20
**Hang** 11:13

**happen** 26:10,
27:15,
27:18
**happened**
19:5,
19:23,
24:8, 26:4,
28:11,
29:23,
36:14,
40:1,
43:14,
44:7,
48:15,
57:22
**happens**
56:16,
56:17
**happy** 5:23,
59:10,
59:12
**head** 3:16,
49:8,
49:12,
49:15,
50:4, 53:2,
57:11,
57:15
**headache**
49:13,
49:14,
49:18,
49:22,
50:10,
50:19
**headaches**
49:20,
50:10,
50:15,
50:16,
50:22,
51:3, 51:6,
51:13,
51:17,
52:9, 52:10
**health** 58:21

## ACR OF WNY
### (716) 362-9838

hear 37:6,
45:18
help 55:12,
57:22
helps 56:14
HEREBY 60:7
High 11:9,
11:10,
11:22,
13:20
holding 30:16
Home 8:15,
16:15
honestly
35:22
hopefully
5:17
Hourly 10:18,
10:20
hours 10:21
house 18:19,
33:17,
34:5,
34:19,
36:13, 38:2
humiliating
58:8
humiliation
12:13,
49:6,
57:16,
57:20
hundred 4:20

< I >
ID 22:21,
23:9,
23:10,
25:14,
26:8, 27:1,
27:2, 42:14
idea 29:23,
46:17,
47:16
identificatio

n 34:16,
34:17
ignorance 6:4
image 35:17,
35:19
imaging 54:8,
56:18, 57:1
in. 45:11
incident
6:22, 7:3,
7:7, 18:16,
23:21,
46:2, 46:7,
46:11,
46:16,
47:18,
48:20,
48:23,
49:6,
50:18,
50:23,
51:7,
52:11,
52:14,
52:19,
53:20,
54:6, 54:9,
54:15,
57:14
including
29:3
indemnation
11:17
indicated
52:13,
54:11
indicates
55:22
information
9:21, 13:12
informed
28:11
ing 21:18
initial 37:11
initially
29:14,

33:12
initiate
39:13
initiated
48:4
injections
55:7, 55:8,
55:15
injure 52:16
injured 52:13
injuries
9:14,
11:19,
12:1, 49:7,
49:9,
49:12,
53:19,
55:18,
56:9,
57:11,
57:13,
57:18
inside 17:14,
22:16,
25:13,
29:6,
32:18,
32:22
instructions
34:20,
34:23
insurance
58:21
interacted
37:12
interacting
36:21, 37:3
internet
34:11
Interruption
34:11
involved
10:15
issue 13:11,
13:14
issues 51:8

items 13:3

< J >
J. 2:11
job 10:1
John 2:4,
4:17, 9:19,
12:7, 15:9,
48:7, 59:14
July 16:9,
18:9

< K >
keep 13:5,
13:15,
21:19, 57:7
Kenmore 2:13,
16:6
kept 44:10
kick 3:19
kids 8:8,
32:9,
35:16, 58:2
kind 13:5,
28:9,
28:21,
28:23,
29:15,
57:21, 59:9
knee 49:8,
55:23,
56:3, 56:6,
56:8,
56:11,
56:19,
57:12,
57:15

< L >
lady 37:6,
55:11
Lapoint
51:10,

## ACR OF WNY

### (716) 362-9838

52:3, 52:5,
56:22,
57:4, 57:5
**Last** 4:14,
8:11, 35:9,
36:16,
39:8, 50:11
**later** 12:19,
48:18,
52:20,
54:16, 56:4
**LAW** 1:22, 2:3
**lawsuit** 48:5
**laying** 55:17
**leave** 43:11
**leaving**
30:20,
32:4, 32:8
**leeway** 9:12,
13:4
**Left** 25:15,
45:17,
49:7, 50:6,
50:7, 50:8,
52:17,
54:12,
54:15,
54:18,
55:18,
55:23,
56:3, 56:6,
56:8,
56:11,
56:19,
56:23,
57:2,
57:11,
57:12
**left-hand**
49:16,
49:17
**legal** 15:8
**legs** 29:21
**Lennon** 2:11,
3:1, 15:22
**less** 58:5

**lieutenant**
43:21
**line** 20:9,
21:18
**lines** 21:20,
23:18, 34:9
**Listen** 13:7
**litigation**
48:4
**little** 19:17,
28:15,
43:22,
59:5, 59:8
**live** 8:5, 9:2
**lived** 7:23
**lobby** 45:5
**located**
32:12,
32:15,
33:2,
49:14, 57:6
**location**
36:16
**locked** 4:2
**Logistics**
10:10,
10:12,
10:16
**long** 3:21,
5:8, 5:9,
7:23, 9:2,
9:7, 10:11,
21:11,
25:17,
30:2, 39:8,
40:7,
48:19,
49:18,
50:10
**look** 6:20,
11:14,
36:18, 41:2
**looked** 26:18
**looking** 30:1
**lot** 9:15,
31:6, 31:8,

37:6, 37:9,
37:10,
37:14,
37:15, 38:1
**lottery**
17:15,
18:1,
18:23,
19:13,
23:16,
27:5,
27:10,
27:11,
48:14


**< M >**
**Machine**
19:17, 60:9
**Main** 2:5, 2:6
**male** 20:18,
38:9, 40:5,
44:1
**manager** 5:13,
20:3, 20:8,
20:14,
20:15,
20:18,
20:20,
20:21,
21:2, 21:8,
21:11,
36:17
**Mandatory**
11:2
**manner** 60:9
**marked** 31:20,
31:23
**marriages** 9:9
**married** 9:5,
9:7
**MARTIN** 1:5,
1:21, 2:30,
4:4, 6:21,
7:9, 8:11,
14:13,

30:21,
34:14,
47:15,
49:3,
50:13,
58:11,
59:3, 60:8
**mask** 19:20,
39:4
**MATTER** 1:3,
5:19
**Mckinley**
11:10,
13:20
**mean** 11:21,
19:12,
27:7,
27:23,
29:18,
39:16,
40:20,
42:7,
45:21, 48:3
**means** 1:22,
60:9
**medical** 51:5,
58:19,
58:21
**medication**
7:10,
51:12, 55:6
**medicine**
50:20,
51:4, 51:15
**meet** 24:10,
42:12,
42:15
**meeting** 42:13
**member** 11:3,
11:5
**men** 3:23
**met** 46:9
**meter** 17:9,
17:13
**Michael** 51:21
**middle** 55:1

# ACR OF WNY
## (716) 362-9838

**midst** 39:14
**military** 14:3
**Mills** 10:8,
  10:12,
  11:6, 11:8
**minute** 11:13
**Minutes**
  20:23,
  21:1,
  22:12,
  25:19,
  30:5, 39:9
**minutia** 12:4
**Miranda** 34:6,
  42:10,
  42:22
**misdemeanor**
  14:5
**mix** 15:10
**moments** 24:11
**money** 17:14,
  48:10
**month** 18:7
**months** 12:3
**morning** 2:30,
  2:31, 3:4,
  4:5
**MR. FEROLETO**
  2:21, 5:21,
  6:6, 6:9,
  6:13, 9:11,
  9:22, 10:3,
  11:13,
  12:8,
  12:22,
  13:2, 13:7,
  13:15,
  14:10,
  15:6,
  15:11,
  15:15,
  15:19,
  16:1,
  20:11,
  30:11,
  34:22,

43:4, 47:4,
  47:10,
  57:19, 59:8
**MR. LENNON**
  2:22, 2:28,
  6:2, 6:8,
  6:10, 6:14,
  9:19, 9:23,
  10:4, 12:5,
  12:11,
  13:1, 13:6,
  13:11,
  13:18,
  14:12,
  15:14,
  15:16,
  15:23,
  16:3,
  20:12,
  30:12,
  34:14,
  35:2, 43:7,
  47:7,
  47:11,
  58:10,
  59:3, 59:14
**MRI** 53:9
**Mris** 53:4,
  54:8,
  56:19, 57:1
**multiple** 8:15
**Municipal**
  1:22
**myself** 48:19

**< N >**
**name** 3:1,
  8:9, 8:11,
  23:2, 23:4,
  26:16,
  33:7,
  38:10,
  47:4, 52:4
**names** 8:13
**neck** 49:8,

52:13,
  52:16,
  52:19,
  53:1, 53:5,
  53:12,
  53:14,
  53:19,
  54:9,
  57:11,
  57:15
**need** 3:22,
  27:19
**nerve** 53:11
**New** 1:12,
  1:14, 1:24,
  2:7, 2:13,
  2:25, 7:20,
  60:1, 60:6
**next** 17:13,
  19:5,
  19:23,
  23:13,
  24:8, 26:4,
  27:3,
  27:13,
  28:4,
  28:11,
  28:14,
  28:15,
  40:1,
  43:14, 44:7
**Niagara** 60:3,
  60:7
**night** 4:14
**Nine** 8:14
**nobody** 7:21
**nods** 3:16
**North** 1:24
**Notary** 1:26,
  60:5, 60:25
**nothing**
  36:22,
  60:15
**Notice** 9:12,
  12:12,
  13:7,

14:14,
  14:16,
  14:19,
  14:22,
  15:1, 15:4,
  15:17,
  15:18,
  15:20,
  22:19,
  49:4,
  52:18,
  54:14,
  55:21, 56:2
**noticed** 52:22
**Notices** 3:5
**numbness**
  54:20

**< O >**
**object** 14:10,
  15:11
**observations**
  32:7
**observe** 25:11
**observed**
  32:12,
  32:16
**obtain** 13:22
**occur** 56:21
**occurred**
  18:16,
  39:11
**occurrence**
  9:13,
  11:18,
  11:23
**offer** 36:9
**offhand** 18:3,
  26:17,
  33:10,
  38:12,
  41:9, 44:17
**office** 15:9,
  53:17,
  55:11,

# ACR OF WNY
## (716) 362-9838

56:22,
57:4, 57:5
**officer**
22:22,
23:3, 24:4,
24:7, 25:8,
25:11,
25:14,
26:12,
30:15,
33:8,
33:11,
33:18,
33:23,
34:15,
40:5, 44:1,
44:3
**officers**
24:10,
25:9,
25:13,
25:17,
25:20,
26:6,
28:12,
28:20,
29:2, 29:3,
29:22,
30:16,
34:6,
35:22,
36:2, 37:2,
37:20,
38:7,
38:11,
39:10,
40:13,
43:18,
45:20,
46:1, 46:5,
46:10,
47:18,
47:22
**offs** 16:13
**often** 50:14,
51:16,

51:18
**old** 7:17
**Once** 3:12,
25:14,
36:13,
36:14,
38:16
**one** 4:20,
11:15,
15:23,
19:6,
19:11,
20:4,
22:20,
26:8,
28:22,
30:15,
30:18,
31:11,
31:20,
44:9, 47:7
**one.** 8:14,
31:12,
44:10
**ones** 24:16,
24:17
**opportunity**
12:3, 41:7
**Optimal** 53:15
**Oral** 1:20
**orthopedics**
52:6
**out-of-pocket**
58:15,
58:18
**Outside** 2:20,
24:10,
24:12,
25:8,
25:16,
25:17,
25:20,
29:6,
32:19,
32:20,
35:16,

45:5, 45:6,
45:8, 45:10
**over-the-coun
ter** 51:15
**overtime**
11:1, 11:2
**own** 8:3

**< P >**
**p.m.** 1:26
**Pain** 30:22,
50:1,
52:21,
54:14,
54:17,
55:13,
56:3, 56:5,
56:7, 56:11
**painful** 50:2
**pants** 44:4
**papers** 40:23,
41:1, 41:2,
41:5, 41:8
**paperwork**
6:16, 6:19,
42:11,
42:20,
42:21,
43:12
**Pardon** 30:13
**parents** 8:20,
45:16
**park** 17:8
**parked** 17:14,
24:15
**part** 11:7,
11:15
**parties** 2:18
**parts** 29:16
**passenger**
25:2
**past** 51:18
**Pat** 3:1,
5:21, 9:11,
11:13,

15:6, 59:8
**path** 24:22
**PATRICK** 2:11
**patrol** 28:13,
29:8,
29:10,
31:20
**paying** 37:23,
58:17
**pedigree** 9:20
**people** 3:12,
5:13, 17:1,
47:22
**per** 10:21
**percent** 4:20
**performed**
55:10
**perhaps** 29:20
**period** 22:2,
40:22,
41:10
**periodic**
49:20
**periodically**
18:6
**permanent**
50:11
**person** 46:9,
58:6, 58:7
**phone** 57:8
**photo** 43:15
**photographs**
4:6, 6:17,
6:19
**Physical**
29:19,
39:13,
39:16,
49:7,
51:11,
53:23,
57:10,
57:12
**pin** 20:23
**pinched** 53:11
**place** 29:9,

## ACR OF WNY
### (716) 362-9838

38:4
**please** 3:9,
3:14, 23:9,
23:10
**point** 12:7,
21:1, 29:7,
32:3,
32:16,
34:4,
35:13,
41:11,
41:22,
55:8, 55:15
**point.** 12:2
**pointed**
24:21,
24:22
**Police** 1:12,
5:4, 5:11,
5:23, 22:5,
22:6, 22:7,
22:10,
22:14,
22:19,
26:11,
26:12,
27:16,
27:19,
28:17,
30:7,
31:23,
34:15,
36:10,
36:21,
37:2,
37:20,
38:2,
43:18,
44:19,
45:19,
45:23,
46:5, 46:6,
46:15,
46:20,
47:1, 47:6,
47:14,

47:18,
47:22
**position**
10:18,
10:19
**possessing**
48:13
**preparation**
4:7, 4:9
**prescribe**
51:12
**presence**
2:20, 39:10
**present** 1:23,
38:7
**presented**
23:17
**preserve** 5:16
**Pretty** 23:4,
36:8
**prevent** 7:10
**previous**
6:21, 55:18
**printed**
43:15,
43:19
**Prior** 4:4,
6:17, 8:18,
23:21,
29:7,
30:20,
32:3, 32:8,
34:4,
36:20,
50:17,
50:22,
53:18,
54:5, 56:8
**privilege**
4:21
**privy** 4:18,
48:8
**Probably** 8:1,
9:3, 47:21
**problem** 6:12,
44:6, 57:10

**proceed** 13:9
**proceedings.**
34:12
**promise** 7:21
**provide** 3:10
**provider**
58:22
**providers**
51:5
**providing**
7:11
**Public** 1:26,
60:6, 60:25
**pulled** 17:7,
17:12, 30:6
**pumps** 24:14,
24:18
**purchased**
18:4, 18:8
**purchasing**
18:6
**purpose** 16:11
**pursuant**
1:21, 2:18
**put** 24:9,
25:5,
29:10,
30:3,
31:19,
35:18,
36:15,
39:20,
40:16,
42:2,
43:12, 59:5

< Q >
**question**
3:10, 7:11,
15:8,
15:11,
15:13,
36:16,
50:14
**questioning**

27:20
**questions**
3:4, 14:11,
15:14,
49:4, 49:9
**Quite** 21:13,
40:9, 48:19
**quote** 11:18

< R >
**read** 13:7,
41:7, 42:10
**reading** 11:14
**ready** 13:2,
13:9
**really** 11:23,
28:8,
37:16,
49:21,
50:1, 58:5
**recall** 5:9,
16:5, 18:1,
18:8,
18:14,
24:14,
30:23,
33:6,
33:13,
36:22,
48:17,
55:17
**receipt**
14:13,
14:22
**receive** 55:16
**received**
5:22, 48:9,
51:2, 54:2
**redeem** 17:19
**redeeming**
18:2, 18:9
**reduced** 60:10
**reentered**
25:18
**reentering**

# ACR OF WNY
## (716) 362-9838

26:13
**referring**
15:22
**refused**
42:20,
43:12,
43:13
**regarding**
6:22, 7:2,
7:6, 38:14,
42:21,
43:8, 46:1,
46:7, 46:15
**register**
17:20,
17:21,
18:22, 21:5
**related** 58:16
**relative**
11:17,
60:16
**release** 44:13
**released**
38:17,
44:11,
44:16,
44:18,
45:17,
45:22
**relevant**
12:15
**remain** 17:16,
34:8, 41:14
**remained**
20:9, 39:10
**remember**
6:23, 24:6,
26:3,
29:12,
30:17,
31:7,
31:11,
31:12,
41:6, 42:4,
42:5, 46:8
**Remote** 1:23

**remove** 38:23
**removed** 38:21
**REPORTER**
2:17, 2:20,
3:8
**representativ
es** 36:20,
37:1, 46:23
**reside** 7:19,
8:18
**residence** 8:3
**respectfully**
9:19
**Respondent**
1:16
**Respondents**
2:15
**response**
24:1, 24:5,
27:8, 27:21
**rest** 18:17
**result** 49:5,
52:10,
52:14,
52:19,
57:13,
58:12
**results** 53:10
**review** 4:5,
4:9, 6:16,
15:21,
16:1, 16:2
**revisit** 12:18
**Rights** 34:7,
42:10,
42:22
**Riley** 8:14
**rolling** 13:16
**room** 3:23,
21:3,
21:12,
38:5, 42:9,
42:12
**roughed** 28:15
**roughing**
29:18

**Rules** 1:22,
3:9
**run** 13:13
**rush** 6:8,
6:10


**< S >**
**salaried**
10:19
**saw** 33:12,
47:7
**saying** 29:8,
31:3, 31:5,
31:6, 31:7,
31:8, 31:9,
36:17,
37:2, 37:5,
37:8, 37:9,
37:10,
37:14,
37:15, 38:1
**scan** 19:18,
53:4
**scanned** 19:23
**scans** 53:4,
54:8
**School** 11:9,
11:10,
11:22,
13:20
**scope** 9:17
**scratch** 16:13
**search** 38:14,
38:18,
41:21
**searched**
36:15,
38:3, 40:12
**seat** 33:5
**second** 15:18,
15:23
**seconds** 30:5
**Section** 1:21
**seen** 6:3,
32:20,

51:5, 57:21
**send** 6:1,
6:6, 15:4,
59:10
**September**
14:15,
14:19
**set** 12:12,
24:14
**settlement**
48:10
**seven** 10:13,
51:18
**several** 12:3,
15:14
**shakes** 3:16
**shall** 11:16
**shape** 10:2
**share** 5:21,
6:9, 59:12
**sharing** 58:11
**Sharp** 56:7
**Shield** 58:23
**shirt** 39:3,
44:4
**short** 12:17
**Shorter** 26:20
**Shorthand**
60:9
**shortly** 26:9,
27:15
**shorts** 39:3,
40:3
**shot** 43:15
**shoulder**
49:7, 50:5,
53:2,
54:12,
54:15,
54:18,
55:1,
55:19,
56:23,
57:2,
57:11,
57:15

## ACR OF WNY
### (716) 362-9838

shouldn't 39:21

show 5:10, 18:12, 59:5, 59:9

showed 22:5, 22:6, 26:8, 44:23

side 21:17, 21:19, 21:21, 25:2, 49:16, 49:17, 50:6, 50:7, 50:8, 52:17

sign 14:19, 15:1, 40:23, 41:1, 42:11, 42:19, 43:10

signed 14:14, 41:3, 43:11

signing 43:3, 43:6

silent 34:8

Single 8:15, 8:17

Sir 5:16, 7:15, 16:4

sit 7:9

sneaker 39:4

socks 39:4, 39:5

Sometimes 59:7

son 17:4, 33:1

soon 22:9, 22:11, 36:6

Sorry 14:17, 16:8, 59:4

sort 24:18

sound 19:14,

19:16

source 5:2

speaking 7:1, 25:12, 37:20, 37:21, 46:22, 52:8

specializes 52:6

specific 18:14, 19:14, 20:23

specifically 18:8

Speed 16:6, 17:7, 18:13, 25:22, 32:4, 32:8, 34:21, 36:3, 36:17, 36:20, 37:1, 47:20, 48:1, 48:5, 48:10

Speedway 5:3

Spine 52:1

spoke 25:9, 51:8

spoken 46:9, 46:14

Sports 52:1

SS 60:2

stage 5:18

stand 19:8, 21:17

standing 26:5

start 3:18

State 60:1, 60:6

statements 7:2, 7:5, 43:1,

45:19, 46:4

station 5:11, 5:12, 26:11, 27:17, 27:20, 28:18, 33:9, 33:17, 34:5, 34:19, 36:13, 42:14, 44:19

statute 9:12, 9:14, 9:17, 12:10, 13:3

stay 12:2, 24:9, 25:5

stayed 8:20, 21:14

steel 24:2, 27:11

steps 45:12

stipulate 2:18

stolen 23:15, 23:17, 23:19, 27:5, 27:10, 48:13

stood 21:19, 21:21

stop 4:1

stopped 22:3, 49:21

store 17:18, 19:21, 22:16, 22:20, 24:19, 25:3, 25:15, 25:18, 25:23,

26:14, 30:20, 31:2, 48:14

straight 57:9

Street 1:24, 2:5, 2:25, 8:19, 8:23

strip 36:15, 38:14, 38:18, 41:21

stripped 38:3, 40:12

struck 29:21

stuff 38:16, 38:19, 57:7

sub 11:15

subsequent 45:20, 50:17

suffered 49:6

Sugar 55:7

supposed 42:13

sustain 49:12

sustained 55:22, 57:13

SUV 16:19, 16:20, 31:22

sworn 2:19, 2:26, 60:14

symptoms 52:21, 54:14, 54:17, 56:3, 56:5

< T >

table 3:19

talked 43:21

tall 23:4

Tech 10:10, 10:12,

## ACR OF WNY
### (716) 362-9838

10:16
**terms** 57:16
**TERRANOVA**
1:26, 60:5,
60:24
**testified**
2:26
**testify** 13:3,
60:14
**testimony**
4:5, 4:7,
4:10, 6:17,
6:22, 9:13,
60:20
**testing** 53:3
**Thanks** 9:19,
43:22,
59:14
**Thanksgiving**
55:9
**therapist**
51:10,
51:11
**Therapy**
53:15,
53:16,
53:23
**they were**
29:17
**Thirty.** 7:18
**though** 2:19
**Three** 7:22
**Thursday**
16:5, 16:9
**ticket** 19:13,
23:16,
23:19,
24:2, 27:5,
27:10,
27:12,
44:13,
44:14,
48:14
**tickets**
17:15,
17:23,

18:1, 18:5,
18:6, 18:9,
18:23,
19:6, 19:8,
20:1,
23:14, 44:9
**tingling**
54:21
**title** 10:9
**today** 3:22,
4:11, 6:18,
7:9, 7:17,
7:22,
15:21,
16:1, 16:2,
59:4
**together**
53:1, 54:19
**Tonawanda**
1:11, 1:14,
3:3, 5:4,
22:7,
31:22,
31:23,
45:19,
46:6,
46:20,
46:23,
47:6, 47:14
**took** 19:6,
19:8,
20:16,
39:6,
41:21,
48:18,
55:13
**top** 36:22
**total** 29:3,
29:5
**touching**
39:17
**towards**
24:21,
24:22,
50:7, 50:8
**Town** 1:11,

1:14, 3:2,
5:4, 46:6,
46:19,
46:23,
47:14
**training**
13:20
**transcript**
60:18,
60:19
**transported**
33:8,
33:19, 34:5
**trauma** 49:6,
57:16
**travel** 50:3
**Traverse**
16:21,
24:12,
25:2, 45:9
**treat** 52:5
**treated** 58:7
**treating**
53:14,
53:22
**treatment**
51:2,
52:10,
53:18,
54:2, 54:5,
58:19
**Trevor** 8:14
**trigger** 55:8,
55:15
**trip** 16:11
**trucks** 10:17
**true** 60:18
**truth** 60:15,
60:16
**try** 13:10,
13:16
**trying** 9:23,
10:1, 43:9
**turn** 16:13
**twice** 51:20
**two** 3:12,

8:8, 16:13,
17:15,
17:23,
18:9,
18:23,
20:1,
30:15,
47:19
**Two.** 30:19,
38:9
**Tylenol**
51:14,
51:16,
51:19
**type** 16:20,
30:21,
52:21, 56:5

**< U >**
**undergarments**
38:23
**understanding**
7:11
**underwear**
39:7, 40:1
**uniform** 44:3
**uniformed**
22:22, 40:5
**union** 11:3,
11:5, 11:7
**unions** 11:5
**unit** 8:16
**unless** 43:11
**until** 3:9,
25:13, 40:3

**< V >**
**varies** 10:22
**various** 12:13
**vehicle**
16:18,
17:8,
17:12,
17:16,

## ACR OF WNY
### (716) 362-9838

31:20,
32:14,
32:17,
32:18,
32:19,
32:20,
32:22,
36:11
**verbatim** 60:8
**via** 2:8, 2:14
**Video** 1:23,
2:8, 2:14,
4:12, 4:15,
4:16, 5:2,
5:8, 5:10,
5:16, 6:15,
59:11
**videos** 4:6,
6:3
**visiting**
59:13

**< W >**
**wait** 3:9,
21:5, 21:18
**waited** 21:16,
40:3
**waiting** 22:4,
26:5, 40:7,
40:11,
45:1, 45:4,
45:7
**waive** 12:20,
12:22
**walk** 30:9
**walked** 30:14
**walking** 31:2,
31:9
**wanted** 35:5,
42:10,
42:19,
47:8, 49:3
**Warning** 34:7
**watch** 4:13
**watched** 4:12,

4:15, 5:8
**watching**
6:15, 57:23
**wearing**
19:20, 39:2
**week** 6:7,
10:21
**whatever**
3:23, 21:22
**Whenever**
10:22,
51:17
**whether** 5:3,
36:23,
37:19,
46:13,
46:18,
46:20
**white** 39:3
**whoever** 43:21
**whole** 60:15
**wife** 8:8,
8:9, 17:4,
32:9,
32:20,
32:23,
35:17,
45:16
**will** 2:17,
9:11
**Williamsville**
57:7
**win** 19:15
**windows** 33:4
**winner** 19:14,
20:4
**winnings**
17:15,
17:19
**within** 51:18
**WITNESS** 1:23,
2:19, 9:23,
15:9, 16:2,
34:23,
43:5, 57:20
**witnesses**

47:17
**won** 44:10
**wording** 9:14
**work** 10:7,
10:21,
13:10,
36:1,
47:22,
58:12
**working** 18:20
**world** 35:20
**wrapped** 44:8,
54:19
**writing** 60:11
**written** 7:5

**< X >**
**X-rays** 53:4,
54:9,
56:18, 57:1

**< Y >**
**year** 8:1,
8:2, 9:3,
11:11,
14:2, 16:22
**years** 10:13
**Yep** 48:8
**York** 1:12,
1:14, 1:24,
2:7, 2:13,
2:25, 7:20,
60:1, 60:6
**you were**
26:5,
29:21,
38:3, 40:11
**young** 37:6
**yourself** 3:4

Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 110 of 271

# FEROLETOLAW

JOHN P. FEROLETO
CARRIE A. ZIMBARDI
JILL WNEK

JOEL FEROLETO
*of Counsel*

PARALEGALS
MEGAN COMMAROTO
MOLLY VERA
NICOLE DALTON

**INJURY ATTORNEYS**

*clients first.*

September 7, 2021

Paul G. Joyce, Esq.
COLUCCI & GALLAHER, P.C.
2000 Liberty Building
424 Main Street
Buffalo, New York 14202

> RE:   **Martin v. Town of Tonawanda Police Department, et al.**
> **Index No.: 808523/2021**

Dear Mr. Joyce:

Enclosed please find Plaintiff's Omnibus Discovery Demands, Demand for Bill of Particulars, Notice Declining Service by Electronic Means, and Plaintiff's Request for Documents and Discovery. Also enclosed is Plaintiff's Bill of Particulars.

In response to Town of Tonawanda Police Department o/b/o The Town of Tonawanda's Omnibus Discovery Demands, please be advised of the following:

A video of the incident and copy of the Police Report are attached hereto. Also attached are various media reports that include statements made by officials of the Defendant Town of Tonawanda.  Plaintiff is not in possession of any other documentation or written reports. All statements made by the agents, servants, employees, former employees or officials of the Defendant Town of Tonawanda, are included in the video that depicts the incident that occurred on July 9, 2020 or in police records which are public records, or police records provided herein. Plaintiff is unaware of the identities of witnesses to the incident, however there were Speedway customers and Town of Tonawanda Police Department personnel present, and Mr. Martin's wife, Ashley Martin, 191 Brinton Street, Buffalo, New York 14216 was outside of the Speedway store.

Plaintiff reserves the right to amend this response should additional witnesses be revealed in the course of discovery.

Enclosed are medical records and authorizations for Trinity Medical, Buffalo MRI, Optimal Therapy Associates, and Buffalo Spine and Sports Medicine, Dr. Michael Cicchetti. Authorizations are provided upon the express condition that no accompanying correspondence/communication to

any provider attempts to broaden the express records authorized for release, and that we are simultaneously copied with any such correspondence, as well as provided copies of records received by use of said authorizations within thirty (30) days of your receipt of the same. If these conditions are not agreeable, we are not authorizing release of any records and you should refrain from attempted usage of the authorizations.

Upon information and belief, Plaintiff's medical bills have been paid by Blue Cross Blue Shield of Western New York; Please see the date and cost chart attached to Plaintiff's Bill of Particulars for costs of Plaintiff's medical care.

Plaintiff has not yet retained an expert for the purposes of trial testimony.

Enclosed are Affidavits of Service for each Defendant with respect to the subject litigation.

Defendants dispute liability and claim Plaintiff assumed the risks which contributed to his injuries; At this point, further discovery is needed, and a response to the demand for specific relief will be provided in a supplemental response.

Please advise if you have any questions, and thank you for your kind cooperation.

Very truly yours,

JOHN FEROLETO

JPF/mbc
Enclosures

cc:     Brittany L. Hannah, Esq.
        Sugarman Law Firm, LLP
        211 W. Jefferson St.
        Syracuse, NY 13202





OCA Official Form No.: 960

### AUTHORIZATION FOR RELEASE OF HEALTH INFORMATION PURSUANT TO HIPAA
[This form has been approved by the New York State Department of Health]

| Patient Name<br>Eric Martin, Jr. | Date of Birth<br>01/14/1990 | Social Security Number |
| --- | --- | --- |

| Patient **Address**<br>191 Brinton St., Buffalo, NY 14216 |
| --- |

I, or my authorized representative, request that health information regarding my care and treatment be released as set forth on this form:

In accordance with New York State Law and the Privacy Rule of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), I understand that:

1. This authorization may include disclosure of information relating to **ALCOHOL** and **DRUG ABUSE, MENTAL HEALTH TREATMENT,** except psychotherapy notes, and **CONFIDENTIAL HIV\* RELATED INFORMATION** only if I place my initials on the appropriate line in Item 9(a). In the event the health information described below includes any of these types of information, and I initial the line on the box in Item 9(a), I specifically authorize release of such information to the person(s) indicated in Item 8.

2. If I am authorizing the release of HIV-related, alcohol or drug treatment, or mental health treatment information, the recipient is prohibited from redisclosing such information without my authorization unless permitted to do so under federal or state law. I understand that I have the right to request a list of people who may receive or use my HIV-related information without authorization. If I experience discrimination because of the release or disclosure of HIV-related information, I may contact the New York State Division of Human Rights at (212) 480-2493 or the New York City Commission of Human Rights at (212) 306-7450. These agencies are responsible for protecting my rights.

3. I have the right to revoke this authorization at any time by writing to the health care provider listed below. I understand that I may revoke this authorization except to the extent that action has already been taken based on this authorization.

4. I understand that signing this authorization is voluntary. My treatment, payment, enrollment in a health plan, or eligibility for benefits will not be conditioned upon my authorization of this disclosure.

5. Information disclosed under this authorization might be redisclosed by the recipient (except as noted above in Item 2), and this redisclosure may no longer be protected by federal or state law.

6. **THIS AUTHORIZATION DOES NOT AUTHORIZE YOU TO DISCUSS MY HEALTH INFORMATION OR MEDICAL CARE WITH ANYONE OTHER THAN THE ATTORNEY OR GOVERNMENTAL AGENCY SPECIFIED IN ITEM 9 (b).**

| 7. **Name** and address **of health** provider or entity to release this information:<br>Buffalo MRI  4925 Main St.  Amherst, NY 14226 |
| --- |

| 8. Name **and address** of person(s) **or category of** person to whom this information will be sent:<br>Colucci & Gallaher, P.C., 424 Main St #2000, Buffalo, NY 14202 |
| --- |

9(a). **Specific information to be released:**
☐ Medical Record from (insert date) _____ to (insert date) _____
☐ Entire Medical Record, including patient histories, office notes (except psychotherapy **notes**), **test** results, radiology studies, films, referrals, consults, billing records, insurance records, and records sent to you by other health care providers.
☒ Other: Medical records limited to:    Include: (*Indicate by Initialing*)
_____  head, neck, back, left knee, ribs, and bilateral wrists    _____ **Alcohol/Drug Treatment**
_____ **Mental Health Information**

**Authorization to Discuss Health Information**    _____ **HIV-Related Information**

(b) ☐ By initialing here _____ I authorize _____
          Initials                                                  Name of individual health care provider
to discuss my health information with my attorney, or a governmental agency, listed here:
_____
(**Attorney/Firm Name or Governmental Agency Name**)

| 10. Reason for release of information:<br>☒ At request of individual<br>☐ Other: | 11. Date or event on which **this** authorization will **expire:**<br>1 (One) Year From Date of Signature |
| --- | --- |
| 12. If not the patient, name of person signing **form:** | 13. Authority to sign on behalf **of patient:** |

All items on this form have been **completed** and my questions about this form have been answered. In addition, I have been **provided** a copy of the form.



Signature **of patient or** representative authorized by law.          Date: September 1, 2021

\* Human Immunodeficiency Virus that causes AIDS. The New York State Public Health Law protects information which reasonably could identify someone as having HIV symptoms or infection and information regarding a person's contacts.

OCA Official Form No.: 960

## AUTHORIZATION FOR RELEASE OF HEALTH INFORMATION PURSUANT TO HIPAA
[This form has been approved by the New York State Department of Health]

| Patient Name | Date of Birth | Social Security Number |
|---|---|---|
| Eric Martin, Jr. | 01/14/1990 | |

**Patient Address**
191 Brinton St., Buffalo, NY 14216

I, or my authorized representative, request that health information regarding my care and treatment be released as set forth on this form:

In accordance with New York State Law and the Privacy Rule of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), I understand that:

1. This authorization may include disclosure of information relating to **ALCOHOL and DRUG ABUSE, MENTAL HEALTH TREATMENT**, except psychotherapy notes, and **CONFIDENTIAL HIV\* RELATED INFORMATION** only if I place my initials on the appropriate line in Item 9(a). In the event the health information described below includes any of these types of information, and I initial the line on the box in Item 9(a), I specifically authorize release of such information to the person(s) indicated in Item 8.

2. If I am authorizing the release of HIV-related, alcohol or drug treatment, or mental health treatment information, the recipient is prohibited from redisclosing such information without my authorization unless permitted to do so under federal or state law. I understand that I have the right to request a list of people who may receive or use my HIV-related information without authorization. If I experience discrimination because of the release or disclosure of HIV-related information, I may contact the New York State Division of Human Rights at (212) 480-2493 or the New York City Commission of Human Rights at (212) 306-7450. These agencies are responsible for protecting my rights.

3. I have the right to revoke this authorization at any time by writing to the health care provider listed below. I understand that I may revoke this authorization except to the extent that action has already been taken based on this authorization.

4. I understand that signing this authorization is voluntary. My treatment, payment, enrollment in a health plan, or eligibility for benefits will not be conditioned upon my authorization of this disclosure.

5. Information disclosed under this authorization might be redisclosed by the recipient (except as noted above in Item 2), and this redisclosure may no longer be protected by federal or state law.

6. **THIS AUTHORIZATION DOES NOT AUTHORIZE YOU TO DISCUSS MY HEALTH INFORMATION OR MEDICAL CARE WITH ANYONE OTHER THAN THE ATTORNEY OR GOVERNMENTAL AGENCY SPECIFIED IN ITEM 9 (b).**

7. Name and address of health provider or entity to release this information:
BlueCross BlueShield of Western New York, P.O. Box 80, Buffalo, NY 14240-0080

8. **Name and address** of person(s) or **category** of person **to whom this** information will be sent:
Colucci & Gallaher, P.C., 424 Main St #2000, Buffalo, NY 14202

9(a). Specific information to be released:
  ☐ Medical Record from (insert date) _____ to (insert date) _____
  ☐ Entire Medical Record, including patient histories, office notes (except psychotherapy notes), test results, radiology studies, films, referrals, consults, billing records, insurance records, and records sent to you by other health care providers.
  ☒ Other: File regarding Eric Martin, DOB: 01/14/1990      Include: (Indicate by Initialing)
  Group No.: 10197775 from July 9, 2020 to Present

  _____ Alcohol/Drug Treatment
  _____ Mental Health Information
**Authorization to Discuss Health Information**      _____ HIV-Related Information

(b) ☐ By initialing here _____ I authorize _____
                    Initials                         Name of individual health care provider
to discuss my health information with my attorney, or a governmental agency, listed here:
_____
(Attorney/Firm Name or Governmental Agency Name)

| 10. Reason for release of information: <br> ☒ At request of individual <br> ☐ Other: | 11. Date or event on which this authorization will expire: <br> 1 (One) Year From Date of Signature |
|---|---|
| 12. If not the patient, name of person signing form: | 13. Authority to sign on behalf of patient: |

All items on **this** form have been **completed** and my questions about this form have been answered. In addition, I have been provided a copy of the form.

X _____      Date: September 1, 2021
Signature of patient or representative authorized by law.

\* Human **Immunodeficiency** Virus that causes AIDS. The New York State Public Health Law protects information which reasonably could identify someone as having HIV symptoms or infection and information regarding a person's contacts.



OCA Official Form No.: 960

## AUTHORIZATION FOR RELEASE OF HEALTH INFORMATION PURSUANT TO HIPAA
[This form has been approved by the New York State Department of Health]

| Patient Name | Date of Birth | Social Security Number |
|---|---|---|
| Eric Martin, Jr. | 01/14/1990 | |

| Patient Address |
|---|
| 191 Brinton St., Buffalo, NY 14216 |

I, or my authorized representative, request that health information regarding my care and treatment be released as set forth on this form:

In accordance with New York State Law and the Privacy Rule of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), I understand that:

1. This authorization may include disclosure of information relating to **ALCOHOL and DRUG ABUSE, MENTAL HEALTH TREATMENT**, except psychotherapy notes, and **CONFIDENTIAL HIV\* RELATED INFORMATION** only if I place my initials on the appropriate line in Item 9(a). In the event the health information described below includes any of these types of information, and I initial the line on the box in Item 9(a), I specifically authorize release of such information to the person(s) indicated in Item 8.

2. If I am authorizing the release of HIV-related, alcohol or drug treatment, or mental health treatment information, the recipient is prohibited from redisclosing such information without my authorization unless permitted to do so under federal or state law. I understand that I have the right to request a list of people who may receive or use my HIV-related information without authorization. If I experience discrimination because of the release or disclosure of HIV-related information, I may contact the New York State Division of Human Rights at (212) 480-2493 or the New York City Commission of Human Rights at (212) 306-7450. These agencies are responsible for protecting my rights.

3. I have the right to revoke this authorization at any time by writing to the health care provider listed below. I understand that I may revoke this authorization except to the extent that action has already been taken based on this authorization.

4. I understand that signing this authorization is voluntary. My treatment, payment, enrollment in a health plan, or eligibility for benefits will not be conditioned upon my authorization of this disclosure.

5. Information disclosed under this authorization might be redisclosed by the recipient (except as noted above in Item 2), and this redisclosure may no longer be protected by federal or state law.

6. **THIS AUTHORIZATION DOES NOT AUTHORIZE YOU TO DISCUSS MY HEALTH INFORMATION OR MEDICAL CARE WITH ANYONE OTHER THAN THE ATTORNEY OR GOVERNMENTAL AGENCY SPECIFIED IN ITEM 9** (b).

7. Name and address of health provider or entity to release this information:
Buffalo Spine and Sports Medicine  Dr. Michael Cicchetti  100 College Pkwy, # 100  Williamsville, NY 14221

8. Name and address of person(s) or category of person to whom this information will be sent:
Colucci & Gallaher, P.C., 424 Main St #2000, Buffalo, NY 14202

9(a). Specific information to be released:
☐ Medical Record from (insert date) _____ to (insert date) _____
☐ Entire Medical Record, including patient histories, office notes (except psychotherapy notes), test results, radiology studies, films, referrals, consults, billing records, insurance records, and records sent to you by other health care providers.
☒ Other: Medical records limited to: _____

head, neck, back, left knee, ribs, and bilateral wrists

Include: (*Indicate by Initialing*)

_____ **Alcohol/Drug Treatment**
_____ **Mental Health Information**
_____ **HIV-Related Information**

**Authorization to Discuss Health Information**

(b) ☐ By initialing here _____ I authorize _____
               Initials                            Name of individual health care provider
to discuss my health information with my attorney, or a governmental agency, listed here:
_____
(Attorney/Firm Name or Governmental Agency Name)

| 10. Reason for release of information: | 11. Date or event on which this authorization will expire: |
|---|---|
| ☒ At request of individual | 1 (One) Year From Date of Signature |
| ☐ Other: | |

| 12. If not the patient, name of person signing form: | 13. Authority to sign on behalf of patient: |
|---|---|
| | |

All items on this form have been completed and my questions about this form have been answered. In addition, I have been provided a copy of the form.

X *Eric Martin*        Date: September 1, 2021
Signature of patient or representative authorized by law.

\* Human Immunodeficiency Virus that causes AIDS. The New York State Public Health Law protects information which reasonably could identify someone as having HIV symptoms or infection and information regarding a person's contacts.



OCA Official Form No.: 960

**AUTHORIZATION FOR RELEASE OF HEALTH INFORMATION PURSUANT TO HIPAA**
[This form has been approved by the New York State Department of Health]

| Patient Name Eric Martin, Jr. | Date of Birth 01/14/1990 | Social Security Number |
|---|---|---|

| Patient Address 191 Brinton St., Buffalo, NY 14216 |
|---|

I, or my authorized representative, request that health information regarding my care and treatment be released as set forth on this form:

In accordance with New York State Law and the Privacy Rule of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), I understand that:

1. This authorization may include disclosure of information relating to **ALCOHOL and DRUG ABUSE, MENTAL HEALTH TREATMENT**, except psychotherapy notes, and **CONFIDENTIAL HIV\* RELATED INFORMATION** only if I place my initials on the appropriate line in Item 9(a). In the event the health information described below includes any of these types of information, and I initial the line on the box in Item 9(a), I specifically authorize release of such information to the person(s) indicated in Item 8.

2. If I am authorizing the release of HIV-related, alcohol or drug treatment, or mental health treatment information, the recipient is prohibited from redisclosing such information without my authorization unless permitted to do so under federal or state law. I understand that I have the right to request a list of people who may receive or use my HIV-related information without authorization. If I experience discrimination because of the release or disclosure of HIV-related information, I may contact the New York State Division of Human Rights at (212) 480-2493 or the New York City Commission of Human Rights at (212) 306-7450. These agencies are responsible for protecting my rights.

3. I have the right to revoke this authorization at any time by writing to the health care provider listed below. I understand that I may revoke this authorization except to the extent that action has already been taken based on this authorization.

4. I understand that signing this authorization is voluntary. My treatment, payment, enrollment in a health plan, or eligibility for benefits will not be conditioned upon my authorization of this disclosure.

5. Information disclosed under this authorization might be redisclosed by the recipient (except as noted above in Item 2), and this redisclosure may no longer be protected by federal or state law.

6. **THIS AUTHORIZATION DOES NOT AUTHORIZE YOU TO DISCUSS MY HEALTH INFORMATION OR MEDICAL CARE WITH ANYONE OTHER THAN THE ATTORNEY OR GOVERNMENTAL AGENCY SPECIFIED IN ITEM 9 (b).**

| 7. Name and address of health provider or entity to release this information: Trinity Medical WNY, Paul L. LaPoint, D.O., 192 Park Club Ln. Williamsville, NY |
|---|

| 8. Name and address of person(s) or category of person to whom this information will be sent: Colucci & Gallaher, P.C., 424 Main St #2000, Buffalo, NY 14202 |
|---|

9(a). Specific information to be released:
  ❑ Medical Record from (insert date) _____ to (insert date) _____
  ❑ Entire Medical Record, including patient histories, office notes (except psychotherapy notes), test results, radiology studies, films, referrals, consults, billing records, insurance records, and records sent to you by other health care providers.
  ☒ Other: Medical records limited to: _____    Include: (Indicate by Initialing)
    head, neck, back, left knee, ribs, and bilateral wrists
    _____ Alcohol/Drug Treatment
    _____ Mental Health Information
**Authorization to Discuss Health Information**    _____ HIV-Related Information

(b) ❑ By initialing here _____ I authorize _____
                         Initials                              Name of individual health care provider
to discuss my health information with my attorney, or a governmental agency, listed here:

_____
(Attorney/Firm Name or Governmental Agency Name)

| 10. Reason for release of information: ☒ At request of individual ❑ Other: | 11. Date or event on which this authorization will expire: 1 (One) Year From Date of Signature |
|---|---|
| 12. If not the patient, name of person signing form: | 13. Authority to sign on behalf of patient: |

All items on this form have been completed and my questions about this form have been answered. In addition, I have been provided a copy of the form.

_____    Date: September 1, 2021
Signature of patient or representative authorized by law.

\*  **Human Immunodeficiency Virus that causes AIDS. The New York State Public Health Law protects information which reasonably could identify someone as having HIV symptoms or infection and information regarding a person's contacts.**



OCA Official Form No.: 960

## AUTHORIZATION FOR RELEASE OF HEALTH INFORMATION PURSUANT TO HIPAA
[This form has been approved by the New York State Department of Health]

| Patient Name<br>Eric Martin, Jr. | Date of Birth<br>01/14/1990 | Social Security Number |
|---|---|---|
| Patient Address<br>191 Brinton St., Buffalo, NY 14216 | | |

I, or my authorized representative, request that health information regarding my care and treatment be released as set forth on this form:

In accordance with New York State Law and the Privacy Rule of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), I understand that:

1. This authorization may include disclosure of information relating to **ALCOHOL** and **DRUG ABUSE, MENTAL HEALTH TREATMENT**, except psychotherapy notes, and **CONFIDENTIAL HIV\* RELATED INFORMATION** only if I place my initials on the appropriate line in Item 9(a). In the event the health information described below includes any of these types of information, and I initial the line on the box in Item 9(a), I specifically authorize release of such information to the person(s) indicated in Item 8.

2. If I am authorizing the release of HIV-related, alcohol or drug treatment, or mental health treatment information, the recipient is prohibited from redisclosing such information without my authorization unless permitted to do so under federal or state law. I understand that I have the right to request a list of people who may receive or use my HIV-related information without authorization. If I experience discrimination because of the release or disclosure of HIV-related information, I may contact the New York State Division of Human Rights at (212) 480-2493 or the New York City Commission of Human Rights at (212) 306-7450. These agencies are responsible for protecting my rights.

3. I have the right to revoke this authorization at any time by writing to the health care provider listed below. I understand that I may revoke this authorization except to the extent that action has already been taken based on this authorization.

4. I understand that signing this authorization is voluntary. My treatment, payment, enrollment in a health plan, or eligibility for benefits will not be conditioned upon my authorization of this disclosure.

5. Information disclosed under this authorization might be redisclosed by the recipient (except as noted above in Item 2), and this redisclosure may no longer be protected by federal or state law.

6. **THIS AUTHORIZATION DOES NOT AUTHORIZE YOU TO DISCUSS MY HEALTH INFORMATION OR MEDICAL CARE WITH ANYONE OTHER THAN THE ATTORNEY OR GOVERNMENTAL AGENCY SPECIFIED IN ITEM 9 (b).**

| 7. Name and address of health provider or entity to release this information:<br>Optimal Therapy Associates Services  2495 Main St., Ste. 234  Buffalo, NY 14214 |
|---|

| 8. Name and address of person(s) or category of person to whom this information will be sent:<br>Colucci & Gallaher, P.C., 424 Main St #2000, Buffalo, NY 14202 |
|---|

9(a). Specific information to be released:
- ☐ Medical Record from (insert date) _____ to (insert date) _____
- ☐ Entire Medical Record, including patient histories, office notes (except psychotherapy notes), test results, radiology studies, films, referrals, consults, billing records, insurance records, and records sent to you by other health care providers.
- ☒ Other: Medical records limited to: _____

head, neck, back, left knee, ribs, and bilateral wrists

Include: (Indicate by Initialing)
- _____ Alcohol/Drug Treatment
- _____ Mental Health Information
- _____ HIV-Related Information

**Authorization to Discuss Health Information**

(b) ☐ By initialing here _____ I authorize _____
     Initials                          Name of individual health care provider
to discuss my health information with my attorney, or a governmental agency, listed here:

_____
(Attorney/Firm Name or Governmental Agency Name)

| 10. Reason for release of information:<br>☒ At request of individual<br>☐ Other: | 11. Date or event on which this authorization will expire:<br>1 (One) Year From Date of Signature |
|---|---|
| 12. If not the patient, name of person signing form: | 13. Authority to sign on behalf of patient: |

All items on this form have been completed and my questions about this form have been answered. In addition, I have been provided a copy of the form.

X _____     Date: September 1, 2021
Signature of patient or representative authorized by law.

\*  **Human Immunodeficiency Virus that causes AIDS. The New York State Public Health Law protects information which reasonably could identify someone as having HIV symptoms or infection and information regarding a person's contacts.**



# Town of Tonawanda
## POLICE REPORT
## CRIM POSS STOLEN PROPERTY 5TH

**Complaint**
## 20-225084

Report Date & Time
07/09/2020 13:31

## INCIDENT

| Address of Occurrence | District | Tract | Occ. Date & Time | Day of Week | Type of Premise |
|---|---|---|---|---|---|
| 535 KENMORE AV | | 03 | 07/09/2020 00:00 | Thursday | Variety/Convenience Store |

| Status | Follow Up By | Supl | TT Mess# | TT Entry Date | TT Cancel## | TT Cancel Date |
|---|---|---|---|---|---|---|
| Cleared By Arrest | Records | N | | | | |

| Officers: | 087 - IENCO | 119 - LAUGEMAN | Rep. Off.: 087 - IENCO | Assigned, Off.: |
|---|---|---|---|---|
| | 477 - VALINT | 104 - HEFT | Supervisor: 403 - KRIER | |

## VICTIM - 1

| Last Name | First Name | MI | Ext | Birth Date | Race | Sex | Age | Juvenile | Arrested | Report |
|---|---|---|---|---|---|---|---|---|---|---|
| SPEEDWAY | | | | | Unknown | U | | N | N | PR |

| Address | City | State | Zip | Home Phone | Work Phone |
|---|---|---|---|---|---|
| 535 KENMORE AV | TONAWANDA | NY | 14225 | (716) 836-7167 | |

| Height | Weight | Hair | Eyes | Build | Complexion | Glasses | Scars/Marks/Tattoos | CellPhone |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

*Victim DID receive information on Victim's Rights and Services pursuant to New York State Law*    Yes

## OFFENDER - 1

| Last Name | First Name | MI | Ext | Birth Date | Race | Sex | Age | Juvenile | Arrested | Report |
|---|---|---|---|---|---|---|---|---|---|---|
| MARTIN | ERIC | C | | 01/14/1990 | Black | M | 30 | N | Y | PR |

| Address | City | State | Zip | Home Phone | Work Phone |
|---|---|---|---|---|---|
| 191 BRITON ST | BUFFALO | NY | 14216 | | |

| Height | Weight | Hair | Eyes | Build | Complexion | Glasses | Scars/Marks/Tattoos | CellPhone |
|---|---|---|---|---|---|---|---|---|
| 5' 09" | 180 | BLK | BRO | M | MBR | Unknown | | |

## REPORTING PERSON - 1

| Last Name | First Name | MI | Ext | Birth Date | Race | Sex | Age | Juvenile | Arrested | Report |
|---|---|---|---|---|---|---|---|---|---|---|
| ███ | ███ | | | ███ | ███ | ███ | ███ | ███ | ███ | ███ |

| Address | City | State | Zip | Home Phone | Work Phone |
|---|---|---|---|---|---|
| ███ | ███ | ███ | ███ | ███ | ███ |

| Height | Weight | Hair | Eyes | Build | Complexion | Glasses | Scars/Marks/Tattoos | CellPhone |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

## OFFENSES

| Law | Section | CA | CL | DG | Description | Report |
|---|---|---|---|---|---|---|
| PL | 165.40 | M | A | 5 | CRIM POSSESSION STOLN PROP 5TH | PR |
| PL | 205.30 | M | A | 0 | RESISTING ARREST | PR |

## ARREST

| Arrest # | Name | Date | Address |
|---|---|---|---|
| 23941 | MARTIN, ERIC C. 1/14/1990 | 07-09-2020 | 535 KENMORE AV TONAWANDA TOWN |

| Status | Arrest Type | Arresting Officers |
|---|---|---|
| Appearance Tick Crime in Progress | | 204-MUSCOREIL |

| Law | Section | CA | CL | DG | Description | Counts |
|---|---|---|---|---|---|---|
| PL | 165.40 | M | A | 5 | CRIM POSSESSION STOLN PROP 5TH | 1 |
| PL | 205.30 | M | A | 0 | RESISTING ARREST | 1 |

## PROPERTY

| Qty | Type | Description | Status | Make | Color | Model | Total Value | Report |
|---|---|---|---|---|---|---|---|---|
| 1 | Non-Negotiable I | LOTTO TICKET | 05 - Recovered | | | | $0.00 | SP |
| 2 | Recordings--Audi | VIDEOS | 01 - None/Not Applic | | | | $2.00 | SP |

## NARRATIVE

| POLICE REPORT | Date Entered: 07/09/2020 15:30 | Typist: BRIAN IENCO | Officer: 087-IENCO |
|---|---|---|---|

    I responded to Speedway located at 535 Kenmore Av. for the report of a male customer trying to cash a stolen lottery ticket. Upon arrival, Detectives Muscoreil and Scranton were inside the store speaking to the male party.
    The male party was identified as Eric C. Martin. The situation was explained to Martin and he was asked to return to the station to give a statement and be processed. Martin refused to cooperate and at this point was informed he was under arrest. Martin was asked to place his hands behind his back, at which point he tensed up, started flailing his arms, yelling get off me, and refused to place his hands behind his back. I grabbed his right arm/shoulder and



## Town of Tonawanda
## POLICE REPORT
## CRIM POSS STOLEN PROPERTY 5TH

| Complaint |
| --- |
| **20-225084** |
| *Report Date & Time* |
| **07/09/2020  13:31** |

assisted in taking Martin to the ground. Once on the ground Martin was handcuffed, he was then immediately sat up, and assisted back to his feet. Use of force (TTP47) completed. (see supplements)  Martin was then searched for weapons and placed in the rear of my patrol vehicle #6 by myself and Lt. Valint without incident. Martin was then transported to the station without incident. I was followed by patrol 52, Ofc. Heft. Once at the station, Martin was brought to the men's cell block area. Martin was searched, his belongings inventoried and placed in locker #8 (seal # 62066770). Martin was placed in cell #8 upon card #20-0117 briefly until the west interview room was available/ready. Suicide screening completed.

Once the west interview room was ready, I brought Martin from the cell block area and turned him over to Det. Muscoreil and Lt. Moore.

Informations were completed/signed for the above charges. All paperwork was completed and forwarded accordingly.

BWC : 087, 477

087

| **SUPPLEMENT # 1** | *Date Entered:* **07/09/2020  15:30** | *Typist:* **WILLIAM  LAUGEMAN** | *Officer:* **119-LAUGEMAN** |

On 7/9/20 I responded to 535 Kenmore Ave, Speedway, to assist patrols with the investigation of stolen property. The clerk, ▆▆▆▆ provided a supporting deposition which I turned over to Det. Scranton. $50 cash was turned over by ▆▆▆ that belonged to subject Eric Martin. The money was returned to him at 1835 Sheridan Dr.

BWC 119

119

| **SUPPLEMENT # 2** | *Date Entered:* **07/09/2020  15:32** | *Typist:* **BRIAN  VALINT** | *Officer:* **477-VALINT** |

I attempted to take Eric Martin into custody for the purpose of processing by the C.I.B. on the charge of Criminal Possession of Stolen Property 5th. Martin was in possession of a lottery ticket that had been stolen at a recent burglary at 535 Kenmore Ave., Speedway. I reached for Martin's arm and he began to back away from me. At this time Det. Muscoreil approached Martin from behind and attempted to place Martin's hands behind his back. Martin began to tense his arms and refused to put his hands behind his back. I grabbed Martin's left arm and I placed a handcuff on his left wrist. Martin continued to resist by clenching his fists and by not putting his hands behind his back. I was able to connect my cuffs to Det. Muscoreil's cuffs as Martin was being lowered to the ground. Martin was placed on the ground at which time he stopped resisting arrest.

477

| **SUPPLEMENT # 3** | *Date Entered:* **07/09/2020  15:36** | *Typist:* **MARK  SCRANTON** | *Officer:* **260-SCRANTON** |

I responded to assist with an investigation into a possession of stolen property and burglary at 535 Kenmore Ave. While on scene, the suspect, Eric Martin, was advised he was under arrest. Martin stated he was not going to jail, and not going into a police car. He was told again he was under arrest, and began to back up. Martin pulled his left arm away from Lt. Valint, and his momentum moved him in my direction. I grabbed Martin's left wrist, and he began to struggle, pulling his arm in front of him and bending forward. Martin was repeatedly told to stop resisting, and that he was under arrest. As he was leaning forward, I struck Martin twice with my knee in the mid thigh, attempting to hit his common paroneal nerve. After I struck him in the thigh, his left arm, which was already in a handcuff, loosened. I was then able to pull his arm behind his back. During the struggle, Martin was taken to the ground, and I was then able to successfully connect the left handcuff with another cuff that was on his right wrist. After he was cuffed, I asked Martin if he was ok, but he didn't respond. A TTP-47 use of force report completed. I then completed two charges for Ofc. Ienco, which was forwarded to records along with the appearance ticket.

While at the store, I recovered the stolen lottery ticket a $10,000,000 colossal cash lottery ticket. The ticket was entered into CHARMS as evidence, and placed in locker 10.

260



## Town of Tonawanda
## POLICE REPORT
## CRIM POSS STOLEN PROPERTY 5TH

**Complaint**
## 20-225084

*Report Date & Time*
**07/09/2020 13:31**

| SUPPLEMENT # 4 | *Date Entered:* **07/09/2020 15:40** | *Typist:* **MARK MUSCOREIL** | *Officer:* **204-MUSCOREIL** |
|---|---|---|---|

Det Scranton and I responded to the radio call of a subject inside the Speedway at 535 Kenmore Ave. in possession of a stolen lottery ticket from a burglary I'm investigating (20-224888) from 7/8/20. Upon arrival I spoke with LT Valint and ▮▮▮▮▮▮▮▮▮▮▮ who confirmed that the ticket was from the batch stolen yesterday. I then tried speaking with the offender, Eric Martin, who claimed he bought the ticket at the store yesterday but wouldn't say what time, when I told him that it was impossible for him to buy that ticket he became argumentative. I asked him to return to TTPD HQ to speak with me about the lotto ticket and he refused. I advised him that he was under arrest and at that time LT Valint attempted to take him into custody. Martin refused to put his hands behind his back, and was advised multiple times he was under arrest. I took control of his left arm and he continued to pull his arms forward refusing to comply with our commands. I was able to cuff his right arm, and get it behind his back, at which time LT Valint and I were able to take Martin into custody. Martin was returned to TTPD HQ West Interview Room by Patrol, where I read him his Miranda Rights and Martin immediately lawyered up. Det LT Moore and I then processed Martin and released him on an Appearance Ticket. Use of Force completed.

| SUPPLEMENT # 5 | *Date Entered:* **07/10/2020 12:55** | *Typist:* **JASON ARLINGTON** | *Officer:* **008-ARLINGTON** |
|---|---|---|---|

I responded to 535 Kenmore Ave, Speedway, to pick up videos stemming from this incident. I brought the video back to 1835, logged them into CHARMS, and turned them over to Detective Coffey. Complaint number of service was 20-225231.

008

| *Officer:* **087 - IENCO** | | *Supervisor:* **403 - KRIER** | |
|---|---|---|---|

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

---

**ERIC C. MARTIN,**

                  *Plaintiff,*

**vs.**

**TOWN OF TONAWANDA POLICE DEPARTMENT
o/b/o THE TOWN OF TONAWANDA, SPEEDWAY LLC,
MARATHON PETROLEUM CORPORATION, and
JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8,**

                  *Defendants.*

**PLAINTIFF'S VERIFIED BILL OF
PARTICULARS**

**Index No.: 808523/2021**

---

**PLEASE TAKE NOTICE** that Plaintiff, ERIC C. MARTIN, by his attorneys, Feroleto Law, in response to Defendant's, TOWN OF TONAWANDA POLICE DEPARTMENT (hereinafter "TTPD"), Demand for Bill of Particulars alleges upon information and belief:

1.      The incident occurred on July 9, 2020 at 1:30 p.m.

2.      The incident occurred in Defendant, SPEEDWAY, LLC's, store located at 535 Kenmore Avenue, Tonawanda, New York 14223

3.      Defendant, TTPD, was negligent, careless, and reckless in its hiring, training, supervision, management, retention, and/or termination of its employees who were involved in, provoked, and facilitated the incident with which the Plaintiff described of in his Complaint. Additionally, Defendant, TTPD, was negligent, careless, and reckless in its management and failure to investigate and/or resolve the dispute described of in Plaintiff's Complaint; by exerting unreasonable and excessive force upon the Plaintiff that was unjustifiable under the circumstance; by depriving Plaintiff of his constitutional rights, including the right to Due Process and Equal Protection of the law; and by unlawfully engaging in a "strip search" of the Plaintiff, which negligence proximately caused the injuries/damages suffered by Plaintiff, ERIC C. MARTIN, both during and after the date of the incident that is the subject of this litigation.

4.      Eric Martin was present at the Defendant Speedway's store to redeem a $50 winning lottery ticket which he purchased for $30 the day before, July 8, 2020 at the same Speedway store, 535 Kenmore Avenue, Tonawanda, NY. Mr. Martin was in the store for some minutes before the incident began. The question is evidentiary in nature and beyond the scope of a Bill of particulars, however Mr. Martin will testify at deposition.

5.      There were customers of Speedway at the premises, names unknown, were employees of Speedway, and employees of the Town of Tonawanda Police Department whose names appear in the police reports, Mr. Martin's wife Ashley Martin was outside of the premises with the Martin's infant child. The question is evidentiary in nature, however interactions are shown on the Speedway video or videos, and Mr. Martin will testify at deposition.

6. Mr. Martin entered the Speedway store to redeem his lottery ticket, his wife, ASHLEY MARTIN, and their daughter remained outside of the store.

7.      Plaintiff suffered injuries including spine injury including injury at cervical area, C5-C6 subligamentous annular bulge, C6-C7 subligamentous annular bulge; cervical disc disorder with radiculopathy and diffused paravertebral tenderness; thoracic spine sprain with associated muscle imbalances; connective oft tissue injuries in the area of the  cervical spine; internal derangements of left knee; left-sided neck pain; left-sided ribs sprain; bilateral wrist injury, muscle spasms and tightness in the area of the neck and shoulders along with the natural sequence and sequela of said injuries . The injuries are permanent and, except those of a superficial nature. Plaintiff reserves the right to supplement this response.

8.      Upon information and belief, Plaintiff's private health insurance carrier has covered all special damages listed in the attached medical date and cost chart. Plaintiff is not a Medicare / Medicaid

recipient. Plaintiff acknowledges this is a continuing demand and will provide defendants with updated amounts accordingly.

9.       Please see attached medical date and cost chart.

10.      Not applicable.

11.      Plaintiff will claim and unliquidated some for pain, suffering, humiliation and deprivation of constitutional rights afforded to a United States citizen.

12.      Claims have been made against the answering defendants, the TTPD due to the actions of personnel of the town of Tonawanda Police Department and Speedway in the above-captioned action. There have been no settlements. A Notice of Claim has previously been served on the Defendant, TOWN OF TONAWANDA.

14.      Upon information and belief, Defendant, TOWN OF TONAWANDA, violated 42 USC 1983, the fourth and 14th amendment of the Constitution of the United States of America, and such other and further laws statutes, rules for regulations which will be provided in the supplement to this bill of particulars. Plaintiff will rely upon any ordinance, rule, or regulation the trial court deems applicable at the time of trial. Plaintiff reserves the right to supplement this response.

Plaintiff reserves the right to supplement each of the foregoing responses up to and including the conclusion of trial.

DATED:  September 7, 2021
        Buffalo, New York

**JOHN FEROLETO, ESQ.**
FEROLETO LAW
*Attorneys for Plaintiff*
438 Main Street, Suite 910
Buffalo, New York 14202
Telephone: (716) 854-0700

TO: **PAUL G. JOYCE, ESQ.**
**MARC S. SMITH, ESQ.**
**COLUCCI & GALLAHER, P.C.**
*Attorneys for Defendant The Town of Tonawanda*
*Police Department o/b/o The Town of Tonawanda*
2000 Liberty Building
424 Main Street
Buffalo, New York 14202
Telephone: (716) 853-4080


CC: **BRITTANY L. HANNAH, ESQ.**
**SUGARMAN LAW FIRM, LLP**
*Attorneys for Speedway LLC*
211 West Jefferson Street, Suite 20
Syracuse, New York 13202
Telephone: (315) 474-2943

## ERIC MARTIN
### DOL: 07/09/20

| | | |
|---|---|---|
| **Trinity Medical WNY**<br>**Paul L. LaPoint, D.O.**<br>192 Park Club Ln.<br>Williamsville, NY 14221 | 07/10/20 | |
| | 07/24/20 | |
| | 08/12/20 | |
| | 08/24/20 | |
| | | |
| **Buffalo MRI**<br>4925 Main St.<br>Amherst, NY 14226 | 08/20/20 | |
| | | |
| **Optimal Therapy Associates Services**<br>2495 Main St., Ste. 234<br>Buffalo, NY 14214 | 09/04/20 | |
| | 09/08/20 | |
| | 09/10/20 | |
| | 09/15/20 | |
| | 09/17/20 | |
| | 09/22/20 | |
| | 09/24/20 | |
| | 09/28/20 | |
| | 10/26/20 | |
| | 10/29/20 | |
| | 11/02/20 | |
| | 11/05/20 | |
| | 11/09/20 | |
| | 11/12/20 | |
| | 11/16/20 | |
| | 11/19/20 | |
| | | |
| **Buffalo Spine and Sports Medicine**<br>**Dr. Michael Cicchetti**<br>100 College Pkwy, Suite 100<br>Williamsville, NY 14221 | 11/18/20 | |
| | 11/24/20 | |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

---

**ERIC C. MARTIN,**

                           *Plaintiff,*             **PLAINTIFF'S OMNIBUS
DISCOVERY DEMANDS**

**vs.**                                          **Index No.: 808523/2021**

**TOWN OF TONAWANDA POLICE DEPARTMENT
o/b/o THE TOWN OF TONAWANDA, SPEEDWAY LLC,
MARATHON PETROLEUM CORPORATION, and
JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8,**

                             *Defendants.*

---

        **PLEASE TAKE NOTICE** that the Plaintiff hereby demands that Defendant, TOWN OF TONAWANDA POLICE DEPARTMENT (hereinafter "TTPD"), serve upon the undersigned attorney with TWENTY (20) days after the date of service hereof the following information and documentation:

        **PLEASE TAKE NOTICE** that pursuant to CPLR § 3101(e), the Plaintiff, hereby demands that you furnish the attorneys for the Plaintiff, within twenty (20) days of the service of this notice, copies of all statements of the Plaintiff, the agents, servants or employees of said Plaintiff including any oral, stenographic or written statements, whether signed or unsigned, or a notice of letter stating that you have no such statements.

        **PLEASE TAKE FURTHER NOTICE** that pursuant to CPLR § 3101, the Plaintiff hereby demands that you provide the attorneys for the Plaintiff, within twenty (20) days of the service of this notice, the names and addresses of each and every party you represent to be a witness, to the following:

          (a)      the occurrence alleged in the complaint;

(b)      the scene of the occurrence alleged in the complaint;

(c)      any condition which it is alleged caused or contributed to the occurrence alleged
         in the complaint.

**PLEASE TAKE NOTICE** that pursuant to CPLR § 3101 and 3120, Plaintiff demands that you furnish to the attorneys for the Plaintiff, within twenty (20) days of the service of this notice, photographs, moving pictures, slides and/or films, any and all surveillance materials, materials depicting or alleging to depict the Plaintiff which you intend to use at the time of the trial of this action, now in your possession, custody or control, or in the possession, custody or control of any party you represent in this action and photographs, moving pictures, slides and/or films which depict the scene of the occurrence alleged in the complaint, the instrumentality or instrumentalities involved in the occurrence and the Plaintiff. This demand is continuing in nature and demand is hereby made that you produce such materials at the undersigned's office for inspection and copying within twenty (20) days of the date of this notice or within twenty (20) days after you, or said party, obtain possession, custody or control of same, whichever is later.

**PLEASE TAKE FURTHER NOTICE** that pursuant to CPLR § 3101(a), the Plaintiff hereby demands that you provide the attorneys for the Plaintiff, within twenty (20) days of the service of this notice, any and all written reports concerning the incident which is the subject of this litigation (i.e., MV-104 forms of any participant in the incident, report to law enforcement agency of fire department, Worker's Compensation forms C-2 and C-3, reports or statements arising from or conducted in connection with internal investigations or inquiries, reports to or from any governmental agency or official, reports of investigations conducted by third parties (excepting those investigations conducted exclusively in preparation for this litigation), reports to liability insurance carriers and/or other similar memoranda).

**PLEASE TAKE FURTHER NOTICE** that pursuant to CPLR § 3101(d), the answering Plaintiff hereby demands that you furnish to the attorneys for the Plaintiff, within twenty (20) days of the receipt of this notice, the identity of each person whom you expect to call as an expert witness at the trial of this above captioned action. As to each person identified, specify:

(a)     the name and qualification of the expert;

(b)     the subject matter upon which the expert is expected to testify;

(c)     the substance of the facts and opinion is expected to testify;

(d)     the grounds for each expert's opinion.

**PLEASE TAKE FURTHER NOTICE** that the Plaintiff hereby demand that you furnish to the attorneys for the Plaintiff any hospital or medical records of the Plaintiff obtained pursuant to Article 3100 of the CPLR.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to § 3101(f) of the CPLR, the Plaintiff hereby demands that you furnish to the attorneys for the Plaintiff within twenty (20) days of the receipt of this notice, proof of the policy limits of any and all insurance including primary, secondary and excess coverage which may be liable to satisfy all or any part of a judgment which may be entered in the above-entitled action or to indemnify or reimburse for payments made to satisfy said judgment.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to <u>Folgate vs. Brookhaven Memorial Hospital</u>, 86 Misc.2d 191, 381 N.Y.S.2d 384, the Plaintiff hereby demands the number and amount of other claims filed against your client and any amounts paid with respect to those claims, which would be applicable to the maximum amount of coverage provided during the policy term.

**PLEASE TAKE FURTHER NOTICE** that unless the aforesaid information and items are furnished within the specified time or a statement in writing indicating that such information and items are not in your possession is supplied within the specified time, appropriate penalties will be sought.

**PLEASE TAKE FURTHER NOTICE** that the Defendants have a continuous duty to inform the Plaintiff of any changes in the Defendants' responses as demanded above.

DATED:       September 7, 2021
             Buffalo, New York

_____
**JOHN FEROLETO, ESQ.**
**FEROLETO LAW**
*Attorneys for Plaintiff*
438 Main Street, Suite 910
Buffalo, New York 14202
Telephone: (716) 854-0700

TO:     **PAUL G. JOYCE, ESQ.**
        **MARC S. SMITH, ESQ.**
        **COLUCCI & GALLAHER, P.C.**
        *Attorneys for Defendant The Town of Tonawanda*
        *Police Department o/b/o The Town of Tonawanda*
        2000 Liberty Building
        424 Main Street
        Buffalo, New York 14202
        Telephone: (716) 853-4080

CC:     **BRITTANY L. HANNAH, ESQ.**
        **SUGARMAN LAW FIRM, LLP**
        *Attorneys for Speedway LLC*
        211 West Jefferson Street, Suite 20
        Syracuse, New York 13202
        Telephone: (315) 474-2943

Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 130 of 271

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

---

**ERIC C. MARTIN,**

<div align="center"><i>Plaintiff</i></div>

**v.**

**TOWN OF TONAWANDA POLICE DEPARTMENT
o/b/o THE TOWN OF TONAWANDA, SPEEDWAY LLC,
MARATHON PETROLEUM CORPORATION, and
JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8,**

<div align="center"><i>Defendants.</i></div>

---

**NOTICE DECLINING SERVICE
BY MEANS OF ELECTRONIC
OR FACSIMILE TRANSMITTAL**

**Index No.: 803299/2021**

SIRS:

      **PLEASE TAKE NOTICE,** that pursuant to CPLR § 2103(5), the undersigned will not accept service of papers, notices, motions, etc., by facsimile transmittal or by any other electronic means.

DATED:     September 7, 2021
            Buffalo, New York

**JOHN FEROLETO, ESQ.**
**FEROLETO LAW**
*Attorneys for Plaintiff*
438 Main Street, Suite 910
Buffalo, New York 14202
Telephone: (716) 854-0700

**TO:** **PAUL G. JOYCE, ESQ.**
**MARC S. SMITH, ESQ.**
**COLUCCI & GALLAHER, P.C.**
*Attorneys for Defendant The Town of Tonawanda*
*Police Department o/b/o The Town of Tonawanda*
2000 Liberty Building
424 Main Street
Buffalo, New York 14202
Telephone: (716) 853-4080


**CC:** **BRITTANY L. HANNAH, ESQ.**
**SUGARMAN LAW FIRM, LLP**
*Attorneys for Speedway LLC*
211 West Jefferson Street, Suite 20
Syracuse, New York 13202
Telephone: (315) 474-2943

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

_____

**ERIC C. MARTIN,**

                           *Plaintiff,*            **PLAINTIFF'S DEMAND FOR
VERIFIED BILL OF PARTICULARS**

**vs.**                                    **Index No.: 808523/2021**

**TOWN OF TONAWANDA POLICE DEPARTMENT
o/b/o THE TOWN OF TONAWANDA, SPEEDWAY LLC,
MARATHON PETROLEUM CORPORATION, and
JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8,**

                           *Defendants.*

_____

      **PLEASE TAKE NOTICE** that the Plaintiff hereby demands that Defendant, TOWN OF

TONAWANDA, serve upon the undersigned attorney with TWENTY (20) days after the date of

service hereof a Verified Bill of Particulars of the claims of the Defendants specifying and

stating the following:

      1.      State the facts which form the basis for Defendant's affirmative defense that

Plaintiff fails to state a proper cause of action against the answering Defendants and should be

dismissed.

      2.      State the facts which form the basis of Defendants affirmative defense that the

acts of others, not under the control of the Town, are the proximate cause of acts alleged by the

Plaintiff.       .

      3.      State the culpable conduct of Plaintiff facts which form the basis for Defendant's

affirmative defense that plaintiff damages sustained were caused or were contributed to by the

culpable conduct of plaintiff.

4.      Identify the administrative remedies Defendant claims Plaintiff failed to exhaust administrative remedies, as alleged in its affirmative defense.

5.      State the facts which form the basis and statute relied on for Defendant's affirmative defense that the Complaint fails to state viable claims against the Town, and therefore, should be dismissed as a matter of law.

6.      State the facts upon which the Defendants rely upon which is the basis of its affirmative defense that this matter should not proceed in the absence of person who should be parties to this action.

7.      State the facts which form the of Defendant's affirmative defense that that the Town, through its agents and/or employees, took actions which were privileged as being judicial, quasi-judicial, or discretionary determinations made by such agents and/or employees while acting within the scope of their duties as public officials and that defendants are therefore immune from any liability for such actions.

8.      State the facts which form the basis and statute you will rely on for Defendant's affirmative defense that the Town must be protected by qualified immunity in this action as the alleged actions would have been undertaken in good faith and with the reasonable belief that they were lawful and did not violate a clearly established federal or state right of Plaintiff.

DATED:       September 7, 2021
             Buffalo, New York

                                    _____
                                    **JOHN FEROLETO, ESQ.**
                                    **FEROLETO LAW**
                                    *Attorneys for Plaintiff*
                                    438 Main Street, Suite 910
                                    Buffalo, New York 14202
                                    Telephone: (716) 854-0700

TO:   **PAUL G. JOYCE, ESQ.**

**MARC S. SMITH, ESQ.**
**COLUCCI & GALLAHER, P.C.**
*Attorneys for Defendant The Town of Tonawanda*
*Police Department o/b/o The Town of Tonawanda*
2000 Liberty Building
424 Main Street
Buffalo, New York 14202
Telephone: (716) 853-4080


CC:   **BRITTANY L. HANNAH, ESQ.**
**SUGARMAN LAW FIRM, LLP**
*Attorneys for Speedway LLC*
211 West Jefferson Street, Suite 20
Syracuse, New York 13202
Telephone: (315) 474-2943

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

---

**ERIC C. MARTIN,**

<div align="center"><em>Plaintiff,</em></div>

**REQUEST FOR**
**DOCUMENTS AND**
**DISCOVERY**

**vs.**

**Index No.: 808523/2021**

**TOWN OF TONAWANDA POLICE DEPARTMENT**
**o/b/o THE TOWN OF TONAWANDA, SPEEDWAY LLC,**
**MARATHON PETROLEUM CORPORATION, and**
**JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8,**

<div align="center"><em>Defendants.</em></div>

---

     Pursuant to Civil Practice Law and Rules, the Plaintiff hereby demands that you produce the following documents for copying and inspection, within TWENTY (20) DAYS of service of this demand.

<div align="center"><strong><u>DEFINITIONS</u></strong></div>

     As used herein, the terms listed below are defined as follows:

     The term "Document" as used herein shall be given a very broad definition to include every type of paper, writing, data, record, graphic, drawing, photograph, audio recording and video recording. The term includes material in all forms, including printed, written, recorded, or other. The term includes all files, records and data contained in any computer system, computer component and/or computer storage (e.g., hard drive, disc, magnetic tape, backup system, etc.). This term includes, but is not limited to, correspondence, reports, meeting minutes, memoranda, stenographic or handwritten notes, diaries, notebooks, account books, orders, invoices, statements, bills, checks, vouchers, purchase orders, studies, surveys, charts, maps, analyses, publications, books, pamphlets, periodicals, catalogues, brochures, schedules, circulars, bulletins, notices, instructions, manuals, journals, e-mails, e-mail attachments, data sheets, work sheets,

statistical compilations, data processing cards, microfilms, computer records (including printouts, disks or other magnetic storage media), tapes, photographs (positive or negative prints), drawings, films, videotapes, hard drive recordings, pictures, and voice recordings. Plaintiff expressly intends for the term "Document" to include every copy of such writing, etc. when such copy contains any commentary or notation whatsoever that does not appear on the original and any attachments or exhibits to the requested document or any other documents referred to in the requested document or incorporated by reference.

With regard to any term used herein that is deemed by the responding party as being ambiguous or vague, a term shall be construed in its broadest sense to encompass all reasonable definitions of that term.

**IF YOU BELIEVE ANY DOCUMENTS ARE PRIVILEGED,** as required by CPLR RULE 3122(b) state with reasonable particularity the reasons for each objection: (1) the type of document; (2) the general subject matter of the document; (3) the date of the document; and (4) such other information as is sufficient to identify the document.

1.     Please see list of requests attached hereto as "**Exhibit 1**".

DATED:     September 7, 2021
            Buffalo, New York

**JOHN FEROLETO, ESQ.**
**FEROLETO LAW**
*Attorneys for Plaintiff*
438 Main Street, Suite 910
Buffalo, New York 14202
Telephone: (716) 854-0700

TO: **PAUL G. JOYCE, ESQ.**
**MARC S. SMITH, ESQ.**
**COLUCCI & GALLAHER, P.C.**
*Attorneys for Defendant The Town of Tonawanda*
*Police Department o/b/o The Town of Tonawanda*
2000 Liberty Building
424 Main Street
Buffalo, New York 14202
Telephone: (716) 853-4080


CC: **BRITTANY L. HANNAH, ESQ.**
**SUGARMAN LAW FIRM, LLP**
*Attorneys for Speedway LLC*
211 West Jefferson Street, Suite 20
Syracuse, New York 13202
Telephone: (315) 474-2943

Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 138 of 271

## Exhibit 1

## Request to TOWN OF TONAWANDA POLICE DEPARTMENT

2.      Documents identifying the name, badge number, and rank of each Town of Tonawanda Police Department (TTPD) personnel who was at the Speedway location of 535 Kenmore Avenue, Tonawanda, New York 14223 on July 9, 2020 or were involved in the arrest, detention, search, booking, processing, searching of ERIC C. MARTIN. Documents indicating chain of command, organizational schematic, or any other documents indicating chain of command, departments, and supervisory capacity of the TTPD in effect at that time.

3.      Documents referring or relating to what instructions and/or orders, if any, the TTPD gave with respect to the arrest, detention and search of ERIC C. MARTIN, including those given to TTPD personnel JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5, personnel at 535 Kenmore Avenue, before, and after the arrest, detention and search of Plaintiff, ERIC C. MARTIN.

4.      All documents referring to or relating to ERIC C. MARTIN or his father, Eric Martin, from the period of July 1, 2019 through June 29, 2021 including investigations, notations, calendars, scheduling or other, whether physical documents, other media such as computer stored data, etc.

5.      Documents referring or relating to any contact between the TTPD and any representative, employee, or individual of Speedway LLC or individuals associated with or representing Speedway with respect to ERIC C. MARTIN and any incident involving ERIC C. MARTIN. All documents, emails, notations, records or other means of correspondence exchanged between the TTPD, Speedway LLC, New York State Lottery, or any other entity with respect to ERIC C. MARTIN. Documents referring or relating to any contact between the TTPD and any representative employee or individual from New York State Lottery with respect to

determining the meaning of an error, or validating a New York State lottery ticket for the period January 1, 2020 through December 31, 2020.

6.     Documents referring or relating to audio calls, documents, or computer-stored information referring or relating to calls or communications to or from the employees or agents of the Speedway located at 535 Kenmore Avenue, Tonawanda, NY 14223 along with dispatches for complaints, reports, incidents or matters within 200 feet of said address for the period of July 7, 2020 through August 30, 2020.

7.     Documents referring or relating to any statements made by the Plaintiff, ERIC C. MARTIN, or statements made by any member of Plaintiff's family or relatives with respect to the incident involving ERIC C. MARTIN, the TTPD, or Speedway, whether written, audio, video, motion picture, police camera, photograph, or any other recording or media during the period of July 2020 through December 2020.

8.     All documents, including reports audio, video, records, investigation referring or relating to a break-in, burglary, or police response involving the Speedway located at 535 Kenmore Avenue, Tonawanda, New York on or about July 8, 2020.

9.     Documents, including protocols, orders, suggestions, policies, or procedures referring or relating to the booking of individuals potentially involving violations, misdemeanors, or crimes in the Town of Tonawanda. Documents referring to booking, charging, or providing appearance tickets for nonviolent misdemeanors along with all protocols for issuing appearance tickets. Documents referring or relating to instances when appearance tickets may be provided instead of arrest in effect in the calendar year 2020.

10.    Documents referring or relating to the use of force in effectuating an arrest in effect for the period of January 1, 2020 through December 31, 2020, along with each iteration of said policies, including COVID protocols, policies, memos, notations or suggestions, and each copy of said documents with marks or notations on them.

11.     Documents referring or relating to and including training materials written materials, slideshows, videos, or other media discussing the use of force or use of violence as to the arrest of individuals, when appropriate, how to decelerate encounters, and how to investigate crimes and misdemeanors used to train TTP personnel JOHN DOEs 1 – 5.

12.     Documents referring or relating to disciplinary actions resulting from the engagement, interaction, or other contact or actions with ERIC C. MARTIN. Documents indicating violations of procedures, protocols, rules, and suggestions in the arrest, detention, and booking of Eric Martin on or about July 9, 2020. Documents, files, transcripts, audio recordings or media otherwise stored referring or relating to disciplinary measures taken against the officers involved in the arrest, detention, or search of Plaintiff, ERIC C. MARTIN.

13.     The personal and disciplinary files, including documents, audio recording, computer stored information, or other media, including every iteration thereof of each hearing, transcript, communication, report, preliminary report, final report in each version thereof, of disciplinary matters, hearings, files of police personnel Brian Ienco, Mark Muscoreil and Brian Valient.

14.     Documents referring or relating to each and every option available to the TTP personnel other than arresting and handcuffing, generally for nonviolent misdemeanors, and specifically Plaintiff, ERIC C. MARTIN, in July, 2020.

15.     Documents referring or relating to all procedures, memos, correspondence, e-mails, notes, and written conversations pertaining to the strip search of Plaintiff, ERIC C. MARTIN. Documents referring or relating to the procedural steps that the TTPD may take or is required to take prior to the commencement of a strip search, and under what circumstances the TTPD may conduct strip searches.

16.     Documents referring or relating to actions which may be taken by the TTPD or its employees in an attempt to resolve a dispute of potentially stolen property before placing an individual in handcuffs and arresting him or her.

17.    Documents indicating all actions taken, investigations performed, or procedures followed before the arrest and detainment of Eric Martin on July 9, 2020. Documents indicating all means taken by the TTPD to determine whether the matter involving ERIC C. MARTIN was a civil dispute or an error by Speedway.

18.    Documents indicating the date of hire of each TTPD personnel involved in the arrest and detainment of Plaintiff, ERIC C. MARTIN; a chronological listing of all ranks and positions held by said personnel; a description of duties for each rank and position held; a list of all police and criminal justice training that they have attended; the dates they attended said training; the address of the facilities that they have attended; and a list of assignments or each Defendant officer from their respective start date with the Defendant, TTPD to present.

19.    Each TTPD document and instruction to police personnel involving the use of force along with each version or iteration of said document in effect from January 1, 2020-January 1, 2021.

20.    Documents referring or relating to protocol changes and reduced in-person scheduling for the TTPD during the period of January 1, 2020 through December 31, 2020.Documents indicating all changes which were made with respect to arrest, booking, detention, searching of individuals, as a result of the incident with Plaintiff, ERIC C. MARTIN.

21.    Documents referring or relating to calls, complaints, responses, or visits to the Speedway located at 535 Kenmore Avenue, Tonawanda, New York 14223 from the period of July 30, 2017 through July 30, 2020. Documents referring or relating to police calls or activity of the TTPD for the period of July 7 through July 9, 2020.

# COLUCCI & GALLAHER, P.C.

Direct Dial:      (716) 853-6509
Email:            pjoyce@colucci-gallaher.com

November 2, 2021

RECEIVED

NOV 0 2 2021

_via hand delivery_

<u>Via Hand Delivery</u>
John Feroleto, Esq.
Feroleto Law
438 Main Street, Suite 910
Buffalo, New York 14201

Re:    *Martin v. The Town of Tonawanda Police Department, et al.*
       Index No. 808523/2021

Dear Mr. Feroleto:

On behalf of Defendant, Town of Tonawanda Police Department o/b/o The Town of Tonawanda, we have enclosed the following:

1.   Response to Request for Documents and Discovery;

2.   Response to Plaintiff's Omnibus Discovery Demands; and

3.   Verified Bill of Particulars.

Should you have any questions, please do not hesitate to contact me at (716) 853-6509.

Very truly yours,

Paul G. Joyce
for COLUCCI & GALLAHER, P.C.

PGJ:bu
Enclosures
copy w/encs.:  Brittany L. Hannah, Esq.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

ERIC C. MARTIN,

*Plaintiff,*

vs.

TOWN OF TONAWANDA POLICE DEPARTMENT
o/b/o THE TOWN OF TONAWANDA, SPEEDWAY LLC,
MARATHON PETROLEUM CORPORATION, and
JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8,

*Defendants.*

**RESPONSE TO REQUEST
FOR DOCUMENTS AND
DISCOVERY**

Index No.: 808523/2021

Defendant the TOWN OF TONAWANDA ("the Town"), by and through its attorneys,

Colucci & Gallaher, P.C., hereby responds to plaintiff's Request for Documents and

Discovery, states as follows:

GENERAL OBJECTIONS

1.    The Town objects to the Demands to the extent that they call for the production

of documents or information protected by the attorney-client privilege, the work-product

immunity, or any other privilege or immunity.  Should the Town inadvertently produce any

documents or information protected by any such privileges or immunities, such production

shall in no way be intended, nor shall it be construed, as a waiver of those privileges or

immunities.

2.    The Town continues to investigate the facts at issue in this matter and awaits

discovery responses from the plaintiff.  The Town will supplement the responses to the

Demands as appropriate.

3.      The Town's response that it will produce the documents sought by a particular demand does not constitute an admission that the subject matter of such documents is in fact relevant to any claim or defense, or that such documents should be admissible at trial.

4.      The Town objects to the Demands to the extent that they seek production of any documents containing confidential business information of the Town.

5.      The Town objects to the Demands to the extent any of them seek production of documents that are publicly available, or are in the possession, custody, or control of the plaintiff or co-defendants, or are otherwise equally accessible to the parties.

6.      The following specific responses are expressly subject to, do not constitute a waiver of, and incorporate fully all of the above general objections.

<center>RESPONSES</center>

<u>Demand 2</u>.      Documents identifying the name, badge number, and rank of each Town of Tonawanda Police Department (TTPD) personnel who was at the Speedway location of 535 Kenmore Avenue, Tonawanda, New York 14223 on July 9, 2020 or were involved in the arrest, detention, search, booking, processing, searching of ERIC C. MARTIN. Documents indicating chain of command, organizational schematic, or any other documents indicating chain of command, departments, and supervisory capacity of the TTPD in effect at that time.

<u>Response to Demand 2</u>:      The Town objects to this demand on the grounds that it is overbroad in its scope, as it is not limited to documents relating to the arrest of Eric Martin. Subject to, and without waiver of the foregoing objection, attached as Exhibit A is a copy of the Town of Tonawanda Police Department Complaint No. 20-225084, dated July 9, 2020, along with supporting documents regarding the investigation that lead to the arrest of plaintiff Eric C. Martin.  Included in Exhibit A is a chart outlining the chain of command of the Town of Tonawanda Police Department.

<center>2</center>

Demand 3.    Documents referring or relating to what instructions and/or orders, if any, the TTPD gave with respect to the arrest, detention and search of ERIC C. MARTIN, including those given to TTPD personnel JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5, personnel at 535 Kenmore Avenue, before, and after the arrest, detention and search of Plaintiff, ERIC C. MARTIN.

Response to Demand 3:    The Town objects to this demand as vague in its failure to identify what "instructions and/or orders" are the subject of the request. Furthermore, the Town cannot ascertain if documents were provided to individuals whose identities are unknown and not specified. Subject to, and without waiver of the foregoing, see the documents attached as Exhibit A.

Demand 4.    All documents referring to or relating to ERIC C. MARTIN or his father, Eric Martin, from the period of July 1, 2019 through June 29, 2021 including investigations, notations, calendars, scheduling or other, whether physical documents, other media such as computer stored data, etc.

Response to Demand 4:    The Town objects to this demand as vague, overbroad, and demands for documents that are not relevant to or reasonably related to the causes of action or defenses raised in the instant action. Subject to, and without waiver of the foregoing, see the documents attached as Exhibit A.

Demand 5.    Documents referring or relating to any contact between the TTPD and any representative, employee, or individual of Speedway LLC or individuals associated with or representing Speedway with respect to ERIC C. MARTIN and any incident involving ERIC C. MARTIN. All documents, emails, notations, records or other means of correspondence exchanged between the TTPD, Speedway LLC, New York State Lottery, or any other entity with respect to ERIC C. MARTIN. Documents referring or relating to any contact between the TTPD and any representative employee or individual from New York State Lottery with respect to determining the meaning of an error, or validating a New York State lottery ticket for the period January 1, 2020 through December 31, 2020.

Response to Demand 5:    See the documents attached as Exhibit A.

Demand 6.    Documents referring or relating to audio calls, documents, or computer-stored information referring or relating to calls or communications to or from the employees or agents of the Speedway located at 535 Kenmore Avenue, Tonawanda, NY 14223 along with dispatches for complaints, reports, incidents or matters within 200 feet of said address for the period of July 7, 2020 through August 30, 2020.

3

**Response to Demand 6**: The Town objects to this demand as vague, overbroad and seeks documents that are not relevant to or reasonably related to the causes of action or defenses raised in the instant action. In addition, the scope of the request seeks documents from a different municipality. Subject to, and without waiver of the foregoing objections, see the documents attached as Exhibit A.

**Demand 7.**    Documents referring or relating to any statements made by the Plaintiff, ERIC C. MARTIN, or statements made by any member of Plaintiff's family or relatives with respect to the incident involving ERIC C. MARTIN, the TTPD, or Speedway, whether written, audio, video, motion picture, police camera, photograph, or any other recording or media during the period of July 2020 through December 2020.

**Response to Demand 7:**    See documents attached as Exhibit A.

**Demand 8.**    All documents, including reports audio, video, records, investigation referring or relating to a break-in, burglary, or police response involving the Speedway located at 535 Kenmore Avenue, Tonawanda, New York on or about July 8, 2020.

**Response to Demand 8:**    See documents attached as Exhibit A.

**Demand 9.**    Documents, including protocols, orders, suggestions, policies, or procedures referring or relating to the booking of individuals potentially involving violations, misdemeanors, or crimes in the Town of Tonawanda. Documents referring to booking, charging, or providing appearance tickets for nonviolent misdemeanors along with all protocols for issuing appearance tickets. Documents referring or relating to instances when appearance tickets may be provided instead of arrest in effect in the calendar year 2020.

**Response to Demand 9:**    The Town objects to this demand as vague, overbroad and seeks documents that are not relevant to or reasonably related to the causes of action or defenses raised in the instant action.

**Demand 10.**    Documents referring or relating to the use of force in effectuating an arrest in effect for the period of January 1, 2020 through December 31, 2020, along with each iteration of said policies, including COVID protocols, policies, memos, notations or suggestions, and each copy of said documents with marks or notations on them.

**Response to Demand 10**: The Town objects to Demand No. 10 on the grounds it is vague, overbroad, seeks documents that are not approved policies or procedures of the Town, and it

does not clarify with enough specificity what documents are being requested. Subject to, and without waiver of the foregoing, see documents attached as Exhibit A.

Demand 11.  Documents referring or relating to and including training materials written materials, slideshows, videos, or other media discussing the use of force or use of violence as to the arrest of individuals, when appropriate, how to decelerate encounters, and how to investigate crimes and misdemeanors used to train TTP personnel JOHN DOEs 1 – 5.

Response to Demand 11:  The Town objects to this demand as vague, as the training documents for unknown individuals cannot be determined.

Demand 12.  Documents referring or relating to disciplinary actions resulting from the engagement, interaction, or other contact or actions with ERIC C. MARTIN. Documents indicating violations of procedures, protocols, rules, and suggestions in the arrest, detention, and booking of Eric Martin on or about July 9, 2020. Documents, files, transcripts, audio recordings or media otherwise stored referring or relating to disciplinary measures taken against the officers involved in the arrest, detention, or search of Plaintiff, ERIC C. MARTIN.

Response to Demand 12:   The Town objects to each of the three demands included in Demand No. 12 on the grounds that they seek documents that are not relevant to or reasonably related to the causes of action or defenses raised in the instant action and it seeks documents that would constitute an unwarranted invasion of personal privacy under Public Officers Law §87(2)(b).

Demand 13.  The personal and disciplinary files, including documents, audio recording, computer stored information, or other media, including every iteration thereof of each hearing, transcript, communication, report, preliminary report, final report in each version thereof, of disciplinary matters, hearings, files of police personnel Brian Ienco, Mark Muscoreil and Brian Valient.

Response to Demand 13: The Town objects to Demand No. 13 on the grounds that it seeks documents that would constitute an unwarranted invasion of personal privacy under Public Officers Law §87(2)(b).  Subject to, and without waiver of the foregoing, see the documents attached as Exhibit A.

Demand 14.   Documents referring or relating to each and every option available to the TTP personnel other than arresting and handcuffing, generally for nonviolent misdemeanors, and specifically Plaintiff, ERIC C. MARTIN, in July, 2020.

Response to Demand 14: The Town objects to this demand as vague and overbroad as it does

not clarify with specificity what documents are being requested.

Demand 15.   Documents referring or relating to all procedures, memos, correspondence, e-mails, notes, and written conversations pertaining to the strip search of Plaintiff, ERIC C. MARTIN. Documents referring or relating to the procedural steps that the TTPD may take or is required to take prior to the commencement of a strip search, and under what circumstances the TTPD may conduct strip searches.

Response to Demand 15: As for the first demand in Demand No. 15, see the documents

attached as Exhibit A; as for the second demand in Demand No. 15, the Town objects as

vague, as it does not define the term "strip search."  Subject to, and without waiver of the

foregoing, see documents attached as Exhibit A.

Demand 16.   Documents referring or relating to actions which may be taken by the TTPD or its employees in an attempt to resolve a dispute of potentially stolen property before placing an individual in handcuffs and arresting him or her.

Response to Demand 16: The Town objects to this demand as vague and overbroad as it does

not clarify with specificity what documents are being requested.

Demand 17.   Documents indicating all actions taken, investigations performed, or procedures followed before the arrest and detainment of Eric Martin on July 9, 2020. Documents indicating all means taken by the TTPD to determine whether the matter involving ERIC C. MARTIN was a civil dispute or an error by Speedway.

Response to Demand 17:    The Town objects to this demand as vague and overbroad as it

does not clarify with specificity what documents are being requested. Subject to, and without

waiver of the foregoing, see documents attached as Exhibit A.

Demand 18.   Documents indicating the date of hire of each TTPD personnel involved in the arrest and detainment of Plaintiff, ERIC C. MARTIN; a chronological listing of all ranks and positions held by said personnel; a description of duties for each rank and position held; a list of all police and criminal justice training that they have attended; the dates they attended said training; the address of the facilities that they have attended; and a list of assignments

or each Defendant officer from their respective start date with the Defendant, TTPD to present.

Response to Demand 18: The Town objects to this seven individual demands included in Demand No. 18 as overbroad, vague in its failure to identify specific individuals, unduly burdensome, unlimited in scope, seeks documents that are not relevant to or reasonably related to the causes of action or defenses raised in the instant action, and seeks documents that would constitute an unwarranted invasion of personal privacy under Public Officers Law §87(2)(b).

Demand 19.   Each TTPD document and instruction to police personnel involving the use of force along with each version or iteration of said document in effect from January 1, 2020-January 1, 2021.

Response to Demand 19:    The Town objects to this demand on the grounds it is duplicative, overbroad in its request for "each TTPD document" instead of just the use of force policy, and seeks documents that would constitute an unwarranted invasion of personal privacy under Public Officers Law §87(2)(b). Subject to, and without waiver of, the foregoing objections, see the documents attached as Exhibit A.

Demand 20.   Documents referring or relating to protocol changes and reduced in-person scheduling for the TTPD during the period of January 1, 2020 through December 31, 2020. Documents indicating all changes which were made with respect to arrest, booking, detention, searching of individuals, as a result of the incident with Plaintiff, ERIC C. MARTIN.

Response to Demand 20:    The Town objects to first demand in Demand No. 20 on the grounds that this demand is overbroad and seeks documents that are not relevant to or reasonably related to the causes of action or defenses raised in the instant action.  As for the second demand under Demand No. 20, it also seeks documents that are not relevant to or reasonably related to the causes of action or defenses raised in the instant action.  Subject to

the foregoing objections, to the extent responsive documents exist, see documents attached as Exhibit A.

<u>Demand 21</u>.   Documents referring or relating to calls, complaints, responses, or visits to the Speedway located at 535 Kenmore Avenue, Tonawanda, New York 14223 from the period of July 30, 2017 through July 30, 2020. Documents referring or relating to police calls or activity of the TTPD for the period of July 7 through July 9, 2020.

<u>Response to Demand 21</u>:   The Town objects to first this demand as overbroad, unduly burdensome and documents that are not relevant to or reasonably related to the causes of action or defenses raised in the instant action, is duplicative of prior requests and overbroad in the three year date range.  Subject to, and without waiver of the foregoing objections, see the documents attached as Exhibit A.

DATED:     November 2, 2021          COLUCCI & GALLAHER, P.C.
           Buffalo, New York

                                      _____
                                      Paul G. Joyce
                                      Marc Smith
                                      2000 Liberty Building
                                      424 Main Street
                                      Buffalo, New York 14202
                                      (716) 853-4080
                                      pjoyce@colucci-gallaher.com
                                      Attorneys for the Town of Tonawanda

TO:    JOHN FEROLETO, ESQ.
       FEROLETO LAW
       Attorneys for Plaintiff
       438 Main Street, Suite 910
       Buffalo, New York 14202
       Telephone: (716) 854-0700

CC:    BRITTANY L. HANNAH, ESQ.
       SUGARMAN LAW FIRM, LLP
       Attorneys for Speedway LLC
       211 West Jefferson Street, Suite 20
       Syracuse, New York 13202
       Telephone: (315) 474-2943



RECEIVED
NOV 0 2 2021

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

---

ERIC C. MARTIN,

*Plaintiff,*

vs.

TOWN OF TONAWANDA POLICE DEPARTMENT
o/b/o THE TOWN OF TONAWANDA, SPEEDWAY LLC,
MARATHON PETROLEUM CORPORATION, and
JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8,

*Defendants.*

---

RESPONSE TO
PLAINTIFF'S OMNIBUS
<u>DISCOVERY DEMANDS</u>

Index No.: 808523/2021

Defendant TOWN OF TONAWANDA, hereinafter "the Town," by and through its attorneys, Colucci & Gallaher, P.C., hereby responds to plaintiff's Omnibus Discovery Demands as follows:

## **STATEMENTS**

Any statements of the plaintiff in the possession of the Town Police are included in the response to plaintiff's request for documents and discovery.

## **WITNESSES**

In addition to the plaintiff in this action, the Town is aware of the following potential witnesses:

Officer Nuchereno
Town of Tonawanda Police Department
1835 Sheridan Drive
Buffalo, New York 14223

Officer Shell
Town of Tonawanda Police Department
1835 Sheridan Drive
Buffalo, New York 14223

Officer Walsh Steines
Town of Tonawanda Police Department
1835 Sheridan Drive
Buffalo, New York 14223

Officer Klyczek
Town of Tonawanda Police Department
1835 Sheridan Drive
Buffalo, New York 14223

Officer Partyka
Town of Tonawanda Police Department
1835 Sheridan Drive
Buffalo, New York 14223

Officer Brian Ienco
Town of Tonawanda Police Department
1835 Sheridan Drive
Buffalo, New York 14223

Officer Brian Valint
Town of Tonawanda Police Department
1835 Sheridan Drive
Buffalo, New York 14223

Officer William Laugeman
Town of Tonawanda Police Department
1835 Sheridan Drive
Buffalo, New York 14223

Officer Heft
Town of Tonawanda Police Department
1835 Sheridan Drive
Buffalo, New York 14223

Detective Mark Scranton
Town of Tonawanda Police Department
1835 Sheridan Drive
Buffalo, New York 14223

Detective Mark Muscoreil
Town of Tonawanda Police Department
1835 Sheridan Drive
Buffalo, New York 14223

Officer Jason Arlington
Town of Tonawanda Police Department
1835 Sheridan Drive
Buffalo, New York 14223

Officer Thomas Moore
Town of Tonawanda Police Department
1835 Sheridan Drive
Buffalo, New York 14223

Captain William Krier
Town of Tonawanda Police Department
1835 Sheridan Drive
Buffalo, New York 14223

Assistant Chief Joseph Fennell
Town of Tonawanda Police Department
1835 Sheridan Drive
Buffalo, New York 14223

Chief James P. Stauffiger
Town of Tonawanda Police Department
1835 Sheridan Drive
Buffalo, New York 14223

Detective Folts
Buffalo Police Department
Address unknown

Detective Zanghi
Address unknown

Detective Mulla
Address unknown

Detective Falsone
Address unknown

Debra Kruder
Speedway Store Manager
535 Kenmore Avenue
Buffalo, New York 14223

Elizabeth Marvel
Speedway District Manager
Address Unknown

Peter Smith
Speedway District Manager
535 Kenmore Avenue
Buffalo, New York 14223

Kim Cavalieri
264 Hartwell Road
Buffalo, New York 14216

Hillarie Henry
Assistant District Attorney

## PHOTOGRAPHS/FILMS

Any photographs or films of the plaintiff in the possession of the Town Police are included in the response to plaintiff's request for documents and discovery.

## REPORTS

Any written reports concerning the incident which is the subject of this litigation is included in the response to plaintiff's request for documents and discovery.

## EXPERT WITNESSES

Defendants have not yet retained the services of an expert to testify at the trial of this action but will supplement this response in accordance with the New York State Civil Practice Law and Rules and any applicable order of the Court. Defendants may also rely upon Town employees to provide expert opinions in their respective fields.

## MEDICAL RECORDS

Copies of any of plaintiff's medical records obtained will be disclosed and supplemented pursuant to Article 3100 of the New York State Civil Practice Law and Rules.

## INSURANCE

Defendant Town of Tonawanda is self-insured up to one million dollars for this claim.

## ADDITIONAL CLAIMS

Defendant Town of Tonawanda objects to this demand as overbroad, unduly burdensome and not calculated to lead to discoverable evidence. The Town objects to this demand as it calls for a legal analysis or conclusion and is outside the proper scope of a bill of particulars. Subject to, and without waiver of the foregoing, see response to insurance information above.

DATED:    November 2, 2021
             Buffalo, New York

COLUCCI & GALLAHER, P.C.

Paul G. Joyce
Marc Smith
2000 Liberty Building
424 Main Street
Buffalo, New York 14202
(716) 853-4080
pjoyce@colucci-gallaher.com
*Attorneys for Defendant Town of Tonawanda*

TO:    JOHN FEROLETO, ESQ.
        FEROLETO LAW
        *Attorneys for Plaintiff*
        438 Main Street, Suite 910
        Buffalo, New York 14202
        Telephone: (716) 854-0700

CC:    BRITTANY L. HANNAH, ESQ.
        SUGARMAN LAW FIRM, LLP
        *Attorneys for Speedway LLC*
        211 West Jefferson Street, Suite 20
        Syracuse, New York 13202
        Telephone: (315) 474-2943

Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 157 of 271



Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 158 of 271

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

**ERIC C. MARTIN,**

                              *Plaintiff,*

                                                          **VERIFIED BILL OF**
                                                          **PARTICULARS**

**vs.**                                                   **Index No.:  808523/2021**

**TOWN OF TONAWANDA POLICE DEPARTMENT**
**o/b/o THE TOWN OF TONAWANDA, SPEEDWAY LLC,**
**MARATHON PETROLEUM CORPORATION, and**
**JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8,**

                              *Defendants.*

Defendant the TOWN OF TONAWANDA, by and through its attorneys, Colucci &

Gallaher, P.C., hereby responds to plaintiff's Demand for a Verified Bill of Particulars as

follows:

1.      The Town objects to this demand as it calls for a legal analysis or conclusion

and is outside the proper scope of a bill of particulars. Subject to, and without wavier of the

foregoing, the Town maintains that the Complaint fails to state a proper cause of action, and

intends to supplement and/or amend this response upon completion of discovery.

2.      The Town objects to this demand as it is outside the proper scope of a bill of

particulars.  Subject to, and without waiver of the foregoing, the Town acted upon the

criminal reporting of individuals, including a sworn statement, of individuals who are not

under the Town's control.  Plaintiff is directed to his own allegations against co-defendants

in this action. In addition, upon information and belief, the conduct of the Plaintiff led in

part to his arrest and detainment.

3.     The Town objects to this demand as it is premature and outside the proper scope of a bill of particulars. Subject to, and without waiver of the foregoing, the Plaintiff acted in an aggressive manner, refused to answer questions asked of him by Town of Tonawanda Police officers, refused to cooperate with an ongoing police investigation and resisted arrest. Upon information and belief, if the Plaintiff suffered any compensable injuries or damage, such are in whole or in part the result of his own actions and culpable conduct.

4.     The Town objects to this demand as it is premature and outside the proper scope of a bill of particulars. Subject to, and without waiver of the foregoing, The Town maintains that Plaintiff failed to exhaust his administrative remedies, and intends to supplement this response with material and information gained during the course of discovery.

5.     The Town objects to this demand as it is premature and outside the proper scope of a bill of particulars. Subject to, and without waiver of the foregoing, the complaint names the Town of Tonawanda Police Department as a defendant; the Police Department is not an entity that can be sued in its own right, as it is an administrative arm of a municipal corporation. The police department does not exist separate and apart from the municipality and does not have its own legal identity.

6.     The Town objects to this demand as it calls for a legal analysis or conclusion and is outside the proper scope of a bill of particulars. Subject to, and without waiver of the foregoing, The Town maintains that this action has been improperly filed in excluding persons who should be parties to the action, including those individuals the Plaintiff

acknowledges should be named as defendants but has not named yet, and intends to supplement this response with material and information gained during the court of discovery.

7.      The Town objects to this demand as it calls for a legal analysis or conclusion and is outside the proper scope of a bill of particulars. Subject to, and without waiver of the foregoing, the Town of Tonawanda Police, through their agents and/or employees are responsible for responding to and investigating claims of criminal activity made by individuals and entities within the Town. The Town of Tonawanda Police and their agents and employees were acting within their judicial duties to investigate the criminal claims made against Plaintiff at the time of his arrest and have qualified immunity against the allegations made in the complaint.

8.      The Town objects to this demand as it calls for a legal analysis or conclusion and is outside the proper scope of a bill of particulars. Subject to, and without waiver of the foregoing, The Town of Tonawanda's agents and employees were acting within their sworn duties to investigate the criminal claims made against plaintiff at the time of his arrest, including being provided with a sworn statement of the alleged crime. The Town reserves the right to supplement and/or amend this response upon completion of discovery.

DATED:      November 2, 2021          COLUCCI & GALLAHER, P.C.
            Buffalo, New York


                                     _____
                                     Paul G. Joyce
                                     Mark Smith
                                     2000 Liberty Building
                                     424 Main Street
                                     Buffalo, New York 14202
                                     (716) 853-4080
                                     pjoyce@colucci-gallaher.com
                                     *Attorneys for Defendant Town of
                                     Tonawanda Police Department o/b/o
                                     The Town of Tonawanda*

3

TO:    JOHN FEROLETO, ESQ.
         FEROLETO LAW
         *Attorneys for Plaintiff*
         438 Main Street, Suite 910
         Buffalo, New York 14202
         Telephone: (716) 854-0700

CC:    BRITTANY L. HANNAH, ESQ.
         SUGARMAN LAW FIRM, LLP
         *Attorneys for Speedway LLC*
         211 West Jefferson Street, Suite 20
         Syracuse, New York 13202
         Telephone: (315) 474-2943

## VERIFICATION

STATE OF NEW YORK     )
                             ) ss:
COUNTY OF ERIE        )

      James P. Stauffiger, being duly sworn, deposes and says that he is the Chief of Police for the Town of Tonawanda Police Department; that deponent has read the foregoing Bill of Particulars and knows the contents thereof and that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters, deponent believes them to be true.

                                     _____
                                         James P. Stauffiger

Sworn to before me this
2nd day of November, 2021.

_____
Notary Public

> MARY A ANDERSON
> Notary Public, State of New York
> Registration #01AN6392546
> Qualified in Erie County
> My Commission Expires May 28, 2023

5

FILED: ERIE COUNTY CLERK 04/20/2022 03:41 PM INDEX NO. 808523/2021

NYSCEF DOC. NO. 17 RECEIVED NYSCEF: 04/20/2022

RECEIVED

NOV 0 2 2021

**TOWN OF TONAWANDA POLICE DEPARTMENT**
Chain of Command

**CHIEF OF POLICE**
JAMES P. STAUFFIGER

CHIEF'S ADMINISTRATIVE AIDE
MARY ANDERSON

**ASSISTANT POLICE CHIEF**
JOSEPH S. FENNELL



**TRAINING BUREAU / RANGE**
CAPT. C. FLATAU

**EC POLICE ACADEMY**
R. DOHERTY
C. FARRELL
J. OKUN
D. PIATEK

**NC POLICE ACADEMY**

**COMMUNITY SERVICES BUREAU**
CAPT. J. MILOSICH **(PIO)***

**PARAMEDIC UNIT**
VACANT   SUPERVISOR

**PARAMEDIC CREW CHIEF
A OPERATIONS**
C. ST. PETER   P.C.C. A Operations

**PARAMEDICS F/T**
D. BAUMGARTNER **(ICO)*** A
M. BOTHAM   AA
M. DeROSE   A
B. EDWARDS   B
R. KELLEY   B
J. LATTER   B
S. MCDONALD   AA
D. MONROE   B
J. NAPIERALSKI   B
D. RICE   AA
R. RODRIGUEZ BARONE   B
J. RUTECKI   B
K. RUTENKROGER   A

**PARAMEDICS P/T**
A. DOLL   B
J. EMERY   B
W. FOLCKEMER   B
C. GORDON   B
T. LOUCKS   B
W. MAJOR   B
S. MALLEY   B
A. MIRANTO   B

*Public Information Officer   **Infection Control Officer

**PLANNING BUREAU**
CAPT. M. SHOEMAKER

**ANIMAL CONTROL
OFFICER**
M. ANSEL   (DCO-C)

**MAINTENANCE /
TRAFFIC SIGNALS**
V. DIMARCO   (SMW-A)
T. SHIELDS   (SMW-B)
R. THOMAS   (Lab A)
Z. MCFADDEN   (Lab B)
E. ARNOW   (Lab D)

**MAINTENANCE P/T**
D. MORRISSEY (Lab A)

**SERVICE BUREAU**
LT. A. COLANGELO

**ACCOUNT CLERK TYPIST**
M. SPERANDEO   (AA)

**MECHANIC**
M. DIMARCO   Auto. Mech.-A

**P/T GUARDS & MATRONS**
POLICE ATTENDANTS   6
CROSSING GUARDS   37
S.C.G. / P.A.   3

**RECORDS &
COMMUNICATIONS
BUREAU**
CAPT. J. HAUG

**SENIOR CLERK**
VACANT

**CLERK TYPISTS**
C. MANCINO   (B)
M. SKORUPSKI   (B)

**TELEPHONE OPERATOR**
B. HAZELET

**CLERK TYPISTS P/T**
C. BURR   (D)
B. HENRY   (G)

**EMERGENCY SERVICES**
J. CHATHAM   (P/T ESC)
R. LUTZ   (P/T ESC)

**COMPUTER PROGRAMMER**
A. MALTBIE

**PATROL BUREAU**
CAPT. D. PRICE

**1st PLATOON**
LT. K. ENGLERT
LT. T. PARTYKA
LT. D. SCOTT

**POLICE OFFICERS**
1 J. CAVALLERI
2 M. COCHRAN
3 M. HUDSON
4 B. KEEFE
5 D. KELTING
6 J. KLYCZEK
7 R. KOSTIW
8 J. LEATHERBARROW
9 A. RAGUSA
10 P. REMING
11 M. SHELL
12 K. SHEROD
13 G. SOKOLOWSKI
14 M. STARICH
15 S. STOLL
16 E. TRAUTWEIN
17 J. WALSH-STEINES

**2nd PLATOON**
LT. P. DAY
LT. K. STRAND
LT. B. VALINT

**POLICE OFFICERS**
1 J. GIOELE
2 S. HEFT
3 E. HICKEY
4 R. KUBUS
5 E. LATTUCA
6 W. LAUGEMAN
7 J. MCCORMICK
8 D. MURPHY
9 P. NUCHERENO
10 T. RODRIGUEZ
11 C. RYAN
12 M. SEELBACH
13 B. SINGH
14 A. THOMPSON
15 D. WILLIAMS
16 J. WYSE
17
18

**3rd PLATOON**
LT. J. CAPUTY
LT. T. FALSONE
LT. G. REINHART

**POLICE OFFICERS**
1 M. AGUGLIARO
2 M. BELLUZ
3 Z. FIERLE
4 C. HOFFMAN
5 D. HUMPHREY
6 K. KLAUK
7 Z. LEATHERBARROW
8 N. LUND
9 P. MCDONALD
10 T. MELBER
11 L. OSWALD
12 A. PASQUALE
13 A. RAYMOND
14 M. SCHULTZ
15 A. SCOLLA
16 J. TAYLOR
17 D. VANDEMORTEL
18 M. WLODARCZYK
19 K. WRIGHT

**K9**
R. TABER
DIEHL

**CRIMINAL
INVESTIGATION BUREAU**
CAPT. W. KRIER
DET. LT. T. MOORE
DET. LT. N. SALONIKIS

**DETECTIVES**
1 J. ARLINGTON
2 D. COFFEY
3 D. HEARITT
4 B. IENCO
5 K. JAXMARK
6 T. MARCIANO
7 M. MULLA
8 M. MUSCOREIL
9 E. SCHMIDT
10 M. SCRANTON
11 M. SWANICK
12 M. WASICK
13 VACANT
14 VACANT
15 S. SPRAGUE (DEA TASK FORCE)

**CLERK TYPIST A**
P. NISBET

**FAMILY OFFENSES**
1 DET. LT. A. TABER
2 DET. C. KAISER

**JUVENILE BUREAU**
1 DET. A. CAVARELLO
2 DET. T. CIEHOMSKI
3 DET. F. BARTOLOTTA

**SRO/2ND PLATOON**
PO V. CHRISTIANO   KW
PO S. ZENOSKY   KE

**JUVENILE AID
ASSISTANT B P/T**
D. ALBERT

**CLERKS P/T**
V. HICKOK   (C)
B. IENCO-SHIELDS   (C)
T. OSWALD   (H)

**P. S. DISPATCHERS**
D. MANZELLA (SR. PSD A)
T. CLARK   (B)
M. MANZELLA   (B)
M. POWERS   (B)
L. REUMAN   (B)

**P. S. DISPATCHERS**
S. CZUBAJ   (SR. PSD A)
J. BIENIEK   (B)
D. FELL   (B)
P. HOAR   (B)
A. VANDERMEER   (B)
C. WESTERMEYER   (B)

**P. S. DISPATCHERS**
L. CHASE   (SR. PSD A)
N. CZERWINSKI   (B)
J. MARSHALL   (B)
M. OLSEN   (B)
J. PHILLIPS   (B)
A. REMING   (B)

**PUBLIC SAFETY
DISPATCHERS P/T**
K. BUTKOWSKI   C
W. DRENKO   B
A. GROAT   B
J. HENGEL   C
H. LEWANDOWSKI   C
V. MALPICA   B
K. NOLAN   B
N. RAUCH   B

| EMPLOYEE COUNT | Authorized | Actual |
|---|---|---|
| F/T Police Officers | 101 | 99 |
| F/T Paramedics | 15 | 14 |
| F/T P.S.D. | 17 | 17 |
| F/T Civilians | 15 | 13 |
| P/T Employees | 23 | 25 |
| P/T Police Attendants | 12 | 6 |
| P/T School Crossing Guards | 40 | 37 |
| **NOTE 3 of the "Actual" P/T Crossing Guards are also Police Attendants | | (3) |
| **TOTALS:** | **223** | **208** |

| | |
|---|---|
| TEMPORARY ASSIGNMENT | |
| LONG-TERM ILLNESS/INJURY | |
| VACANT POSITION | |
| PART-TIME POSITION | |
| RECRUITS | |

TTPD00001

Revised and Effective 9/23/21



# Town of Tonawanda
# POLICE REPORT
# BURGLARY 3RD

**Complaint**
**20-224888**

*Report Date & Time*
**07/08/2020 02:26**

## INCIDENT

| Address of Occurrence | District | Tract | Occ. Date & Time | Day of Week | Type of Premise |
|---|---|---|---|---|---|
| 535 KENMORE AV | | 03 | 07/08/2020 02:26 | Wednesday | Gas Station |

| Status | Follow Up By | Supl | TT Mess# | TT Entry Date | TT Cancel# | TT Cancel Date |
|---|---|---|---|---|---|---|
| Investigation Pending | Detective | N | | | | |

| Officers: | 142 - NUCHERENO | 135 - WALSH STEINES | Rep. Off.: 142 - NUCHERENO | Assigned. Off.: 204 - MUSCOREIL |
|---|---|---|---|---|
| | 130 - SHELL | 113 - KLYCZEK | Supervisor: 414 - PARTYKA | |

## VICTIM - 1

| Last Name | First Name | MI | Ext | Birth Date | Race | Sex | Age | Juvenile | Arrested | Report |
|---|---|---|---|---|---|---|---|---|---|---|
| SPEEDWAY | | | | | | | | N | N | PR |

| Address | City | State | Zip | Home Phone | Work Phone |
|---|---|---|---|---|---|
| 535 KENMORE AV | TONAWANDA | NY | 14225 | (716) 836-7167 | |

| Height | Weight | Hair | Eyes | Build | Complexion | Glasses | Scars/Marks/Tattoos | CellPhone |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

Victim DID receive information on Victim's Rights and Services pursuant to New York State Law    **No**

## OTHER - 1

| Last Name | First Name | MI | Ext | Birth Date | Race | Sex | Age | Juvenile | Arrested | Report |
|---|---|---|---|---|---|---|---|---|---|---|
| KRUDER | DEBRA | J | | 12/26/1963 | White | F | 56 | N | N | PR |

| Address | City | State | Zip | Home Phone | Work Phone |
|---|---|---|---|---|---|
| 118 COLONIAL AV | TONAWANDA | NY | 14217 | (716) 398-9048 | (716) 836-7167 |

| Height | Weight | Hair | Eyes | Build | Complexion | Glasses | Scars/Marks/Tattoos | CellPhone |
|---|---|---|---|---|---|---|---|---|
| 5' 3" | 120 | BRO | | S | FAR | Glasses | | |

## OTHER - 2

| Last Name | First Name | MI | Ext | Birth Date | Race | Sex | Age | Juvenile | Arrested | Report |
|---|---|---|---|---|---|---|---|---|---|---|
| SMITH | PETER | A | | 11/24/1966 | White | M | 53 | N | N | PR |

| Address | City | State | Zip | Home Phone | Work Phone |
|---|---|---|---|---|---|
| 535 KENMORE AV | BUFFALO | NY | 14223 | (315) 409-5761 | (716) 836-7167 |

| Height | Weight | Hair | Eyes | Build | Complexion | Glasses | Scars/Marks/Tattoos | CellPhone |
|---|---|---|---|---|---|---|---|---|
| 5' 6" | | BRO | BRO | M | | | | |

## OTHER - 3

| Last Name | First Name | MI | Ext | Birth Date | Race | Sex | Age | Juvenile | Arrested | Report |
|---|---|---|---|---|---|---|---|---|---|---|
| CAVALIERI | KIM | A | | 01/14/1974 | White | F | 46 | N | N | PR |

| Address | City | State | Zip | Home Phone | Work Phone |
|---|---|---|---|---|---|
| 264 HARTWELL RD | BUFFALO | NY | 14216 | (716) 200-6366 | |

| Height | Weight | Hair | Eyes | Build | Complexion | Glasses | Scars/Marks/Tattoos | CellPhone |
|---|---|---|---|---|---|---|---|---|
| 5' 4" | 140 | BLN | | M | | | | |

## SUSPECT - 1

| Last Name | First Name | MI | Ext | Birth Date | Race | Sex | Age | Juvenile | Arrested | Report |
|---|---|---|---|---|---|---|---|---|---|---|
| 224888A | UNKNOWN | | | | Black | M | | N | N | PR |

| Address | City | State | Zip | Home Phone | Work Phone |
|---|---|---|---|---|---|
| | | | | | |

| Height | Weight | Hair | Eyes | Build | Complexion | Glasses | Scars/Marks/Tattoos | CellPhone |
|---|---|---|---|---|---|---|---|---|
| | | | | M | DBR | | | |

## SUSPECT - 2

| Last Name | First Name | MI | Ext | Birth Date | Race | Sex | Age | Juvenile | Arrested | Report |
|---|---|---|---|---|---|---|---|---|---|---|
| 224888B | UNKNOWN | | | | Black | M | | N | N | PR |

| Address | City | State | Zip | Home Phone | Work Phone |
|---|---|---|---|---|---|
| | | | | | |

| Height | Weight | Hair | Eyes | Build | Complexion | Glasses | Scars/Marks/Tattoos | CellPhone |
|---|---|---|---|---|---|---|---|---|
| | | | | L | MBR | | | |

## OFFENSES

| Law | Section | CA | CL | DG | Description | Report |
|---|---|---|---|---|---|---|
| PL | 140.20 | F | D | 3 | BURGLARY-3RD DEG:ILLEGAL ENTRY WITH INTENT TO COMMIT A CRIME | PR |
| PL | 155.30-01 | F | E | 4 | GR LAR 4-VALUE PROPERTY GREATER THAN $1000 | PR |
| PL | 145.05-02 | F | E | 3 | CRIMINAL MISCHIEF 3RD:DAMAGE ANOTHERS PROPERTY-AMOUNT> $250 | PR |

## PROPERTY

| Qty | Type | Description | Status | Make | Color | Model | Total Value | Report |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| Printed Date: | 07/14/2021 01:03 PM | Page: 1 |
|---|---|---|

TTPD00002

FILED: ERIE COUNTY CLERK 04/20/2022 03:41 PM INDEX NO. 808523/2021
NYSCEF DOC. NO. 14 RECEIVED NYSCEF: 04/20/2022



# Town of Tonawanda
# POLICE REPORT
# BURGLARY 3RD

**Complaint**

**20-224888**

*Report Date & Time*

**07/08/2020 02:26**

| 1 | Recordings--Audi | IN STORE VIDEO | 01 - None/Not Applic | $1.00 | SP |
| 1 | Merchandise | Cigarettes | 07 - Stolen/etc. | $500.00 | PR |
| 1 | Merchandise | Lotto Tickets | 07 - Stolen/etc. | $500.00 | PR |
| 1 | Merchandise | Cigar wraps | 07 - Stolen/etc. | $50.00 | PR |
| 1 | Merchandise | Lighters | 07 - Stolen/etc. | $50.00 | PR |

**Stolen Property Grand Total: $1,100.00**

## NARRATIVE

| POLICE REPORT | *Date Entered:* **07/08/2020 03:09** | *Typist:* **PAUL NUCHERENO** | *Officer:* **142-NUCHERENO** |

On 07/08/20 at 0226 hours, I responded to 535 Kenmore Ave (Speedway) for a report of a burglar alarm activated. Upon arrival, I noticed shattered glass on both the inside and outside of one of the stores front entrance doors. Along with the shattered glass, various items including cigarettes and phone chargers appeared disturbed inside of the store. The cigarette shelves were also pulled out.

P/O Shell and P/O Walsh-Steines cleared the inside of the building rendering it safe for entry. I taped off the perimeter of the building, started a crime scene log (see crime scene log), and coordinated with Dispatch to contact a keyholder to respond.

APS Kubus and Lt. Englert arrived on scene and it was determined that a detective would be called in to process the scene for evidence. Detective Muscoreil responded to process the crime scene.

After viewing store video footage, it appears that two black males broke the glass on the front door of the store at 0224 hours and entered the premise. Suspect 1 was wearing black pants, a black tee-shirt, a black hat, black sneakers, and a black face-mask. Suspect 2 was wearing cargo shorts, a white/grey tee-shirt, a light blue baseball cap, and a white face-mask. Both suspects proceeded behind the counter and began to fill up a white trash can and black garbage bag with various items including cigarettes, lotto tickets, lighters, and cigar wraps. The two suspects can then be seen leaving the store at 0227 hours in an unknown direction.

At this time District Manager Peter Smith could not provide me with the exact value or amount of items taken. However, Smith did state that the value is greater than $1,000. Smith will contact Detective Muscoreil when he and his staff are able to get a more accurate inventory. Smith burned and provided Detective Muscoreil with a copy of the camera footage.

BWC on scene #122, 130, 135, 138, 142, 145

-142

| SUPPLEMENT # 1 | *Date Entered:* **07/08/2020 03:24** | *Typist:* **PAUL NUCHERENO** | *Officer:* **142-NUCHERENO** |

Crime Scene Log

| | IN | OUT |
|---|---|---|
| P/O Shell | 0239 | 0422 |
| P/O Walsh | 0239 | 0250 |
| P/O Nuchereno | 0239 | 0520 |
| P/O Schultz | 0239 | 0250 |
| P/O Leatherbarrow | 0239 | 0250 |
| APS Kubus | 0239 | 0424 |
| LT. Englert | 0245 | 0515 |
| Detective Muscoreil | 0415 | 0520 |
| Cavalieri | 0435 | 0520 |
| Smith | 0435 | 0520 |
| Kruder | 0435 | 0520 |

-142

| *Printed Date:* | 07/14/2021 01:03 PM | Page: 2 |

TTPD00003



**Town of Tonawanda**
**POLICE REPORT**
**BURGLARY 3RD**

*Complaint*
## 20-224888

*Report Date & Time*
07/08/2020 02:26

| SUPPLEMENT # 2 | Date Entered: 07/08/2020 04:13 | Typist: MARK SHELL | Officer: 130-SHELL |
|---|---|---|---|

On the above date and time I responded to 535 Kenmore Ave (Speedway) for an alarm with interior motion. Upon arrival, I observed the right front door to be be shattered, and it appeared entry to be made. Myself and Officer Walsh-Steines cleared the building with negative results. While clearing the building, I did observe multiple charging cords knocked off the shelves and on the ground. Behind the counter I observed multiple shelves of cigarettes pulled out, and multiple packs of cigarettes, of different brands, strewn about the floor.

-130-

| SUPPLEMENT # 3 | Date Entered: 07/08/2020 07:36 | Typist: MARK MUSCOREIL | Officer: 204-MUSCOREIL |
|---|---|---|---|

I was notified on 7/8/20 at 0330 hours to respond to the scene of a smash and grab burglary at the Speedway at 535 Kenmore Ave. Upon arrival I was briefed by LT Englert and APS Kubus. I photographed the scene, and then watched the security footage with the managers, who burned the footage onto a DVD. Pictures were entered into Veripic and the DVD was logged into CHARMS and submitted to the video drop box. While canvassing the area I located an exterior security camera across the street at Arthur's Cleaners. I spoke to staff over the phone and they are going to access the camera system and let me know if they caught any footage of the incident.

The suspects in this incident appear to match the description in two Buffalo smash and grabs from 7/6/20 and 7/7/20 (X REF BPD #'s 20-1880080 and 20-1890113) I left a message with BPD Det Folts to follow up with him on those cases. Smith called at 09:40 and after an inventory it appears $3090.17 worth of merchandise was stolen.

Investigation to continue.

| SUPPLEMENT # 4 | Date Entered: 07/29/2020 10:57 | Typist: MARK MUSCOREIL | Officer: 204-MUSCOREIL |
|---|---|---|---|

On 7/9/20 Jen from Arthur's Laundry called and stated the video system was offline at the time of the incident, so there is no footage. Patrols were dispatched to the Speedway for a subject trying to cash in a stolen lotto ticket. (X REF #20-225084) Eric Martin would not speak with me regarding the incident, or how he obtained the ticket.

On 7/10/20 I spoke with Det. Folts from BPD "D" District who is working multiple cases involving the same suspects.

On 7/14/20 Det LT Moore informed me that the lotto ticket in Martin's possession had been incorrectly entered as stolen by Speedway. At this time Martin is no longer being considered as a suspect or having any involvement what-so-ever in this incident.

On 7/26/20 I spoke with Det. Folts who stated Kevin Spell (6/24/80) was arrested fleeing the scene of a smash and grab at 0400 hrs. Spell refused to speak with Detectives, and appears to be the smaller of the two suspects involved in these cases. I spoke with Det Zanghi who is also working multiple cases involving these two. She forwarded an email from Alison Stark at ECAC, which identifies the getaway vehicle and a possible second suspect. The gray Impala seen on multiple incidents is NY REG: FSR2091, and is registered to Steven McLaurin (12/26/59)

Investigation to Continue

| SUPPLEMENT # 5 | Date Entered: 11/10/2020 12:38 | Typist: MARK MUSCOREIL | Officer: 204-MUSCOREIL |
|---|---|---|---|

I spoke with ADA Mohun who is working the 20+ smash and grab burglaries involving Kevin Spell. Spell is being charged in 7 of the cases, this case is not one of them. This case will be filed at this time.

I/P

| SUPPLEMENT # 6 | Date Entered: 11/22/2020 14:46 | Typist: MARK MUSCOREIL | Officer: 204-MUSCOREIL |
|---|---|---|---|

I spoke with Det Mulla and Det Falsone regarding the Impala that has been tied to several of these cases. They are working with ADA Mohun to interview the R/O who lends the vehicle out regularly and will do so at a time that is beneficial to all involved cases. Should any evidence become available that can tie any suspects to this case it will be reopened at that time.

TTPD00004

FILED: ERIE COUNTY CLERK 04/20/2022 03:41 PM INDEX NO. 808523/2021
NYSCEF DOC. NO. 17 Case 1:23-cv-00419-WMS-MJR Document 1-15 Filed 05/11/23 Page 168 of 271 RECEIVED NYSCEF: 04/20/2022

**Town of Tonawanda**
**POLICE REPORT**
**BURGLARY 3RD**

*Complaint*
**20-224888**

*Report Date & Time*
**07/08/2020 02:26**

-204

Officer: **142 - NUCHERENO** _____ Supervisor: **414 - PARTYKA** _____

Printed Date: 07/14/2021 01:03 PM

Page: 4

TTPD00005

## Town of Tonawanda
### 1835 Sheridan Dr.
### Tonawanda Town, NY. 14223

| | | |
|---|---|---|
| **Remarks for Case: 20-224888** | **BURGLARY 3RD** | **11/10/2020** |

---

**Officer: MUSCOREIL, MARK-204**                      **Last Modified:**   **07/08/20 06:00**

BURGLARY 3RD
535 KENMORE TONAWANDA TOWN

Called in for smash and grab

Photographed scene, watched in-store video

Pics entered into Veripic, video entered into CHARMS

Called Arthur's Laundry for their exterior camera footage, Jen will call me back if they have footage

Suspects match description from two BPD cases from 7/6 and 7/7.  Left message for Det Folts to follow up

4 hrs

---

**Officer: MUSCOREIL, MARK-204**                      **Last Modified:**   **07/09/20 11:00**

BURGLARY 3RD
535 KENMORE TONAWANDA TOWN

Jen from Arthur's called back, Nest camera system appears to have been off-line at the time of the incident.  She will follow up with Nest to see if they can pull anything on their end but it appears those cameras will be of no use

1/4 hour

---

**Officer: MUSCOREIL, MARK-204**                      **Last Modified:**   **07/09/20 14:00**

BURGLARY 3RD
535 KENMORE TONAWANDA TOWN

Patrol responded to Speedway for subject in possession of stolen lotto ticket from this incident

Eric Martin matched the description of the younger suspect and couldn't explain how he obtained the ticket

Fought with us as we took him into custody on CPSP charge, and lawyered up at HQ.

Father, Eric D Martin showed up on scene and had a similar look to the older suspect in the video.  I couldn't interview him, he was causing a scene at the front desk, and wouldn't talk after his son was released

2.5 hours

---

**Officer: MUSCOREIL, MARK-204**                      **Last Modified:**   **07/10/20 15:00**

BURGLARY 3RD
535 KENMORE TONAWANDA TOWN

Spoke to Det Folts from BPD, exchanged information on cases.  No new suspects at this time.

1/2 hour

---

Page 1

| Officer: **MUSCOREIL, MARK-204** | Last Modified: **07/26/20 18:00** |

BURGLARY 3RD
535 KENMORE TONAWANDA TOWN

I spoke to Det. Folts from BPD today, he's working at least 5 burglaries involving our suspects.  Kevin Spell (6/24/1980) was arrested fleeing the scene of a smash and grab in Buffalo at 0400 this morning (20-2080221) and Folts will be charging him with at least 3 more.  Spell appears to be the smaller of the two suspects who's face is somewhat visible in the video from Mike's case.

I found a subject that Spell was arrested with in 2007 in Cheektowaga that has a similar look/build to the other suspect. Leon W. Wells 10/26/67, has a lengthy history including Burg, CPSP, and Larcenies.  Folts sent an email to Alison from ECAC to try and link Spell to the Impala from Mike's video, and I gave him Wells information to give to her also.  He'll call me with any updates.

Det Zanghi from D District called me, they're up to almost 20 burglaries they can tie Spell to in their district so far.  She forwarded this email from Alison at ECAC which identifies the vehicle from Mike's video, it was also spotted in some of their burglaries as the getaway vehicle.  NY Reg FSR2091 registered to Steven McLaurin, LKA is 12 Richlawn Ave. Leon Wells LKA is 70 Richlawn Ave.


1.5 hrs.

| Officer: **MUSCOREIL, MARK-204** | Last Modified: **11/10/20 12:00** |

BURGLARY 3RD
535 KENMORE TONAWANDA TOWN

I spoke with ADA Mohun who is prosecuting all the Kevin Spell smash and grabs.  Spell has been offered a plea on 7 of the cases they can charge him on, this case is not one of them.

I/P

1/2 hr

Total Time: 9 1/4 hrs

Page 2

TTPD00007

## Town of Tonawanda
## POLICE REPORT
## CRIM POSS STOLEN PROPERTY 5TH

**Complaint**
**20-225084**

Report Date & Time
**07/09/2020 13:31**

### INCIDENT

| Address of Occurrence | District | Tract | Occ. Date & Time | Day of Week | Type of Premise |
|---|---|---|---|---|---|
| 535 KENMORE AV | | 03 | 07/09/2020 00:00 | Thursday | Variety/Convenience Store |

| Status | Follow Up By | Supl | TT Mess# | TT Entry Date | TT Cancel# | TT Cancel Date |
|---|---|---|---|---|---|---|
| Cleared By Arrest | Records | N | | | | |

| Officers: | 087 - IENCO | 119 - LAUGEMAN | Rep. Off.: 087 - IENCO | Assigned. Off.: |
|---|---|---|---|---|
| | 477 - VALINT | 104 - HEFT | Supervisor: 503 - KRIER | |

### VICTIM - 1

| Last Name | First Name | MI | Ext | Birth Date | Race | Sex | Age | Juvenile | Arrested | Report |
|---|---|---|---|---|---|---|---|---|---|---|
| SPEEDWAY | | | | | | | | N | N | PR |

| Address | City | State | Zip | Home Phone | Work Phone |
|---|---|---|---|---|---|
| 535 KENMORE AV | TONAWANDA | NY | 14225 | (716) 836-7167 | |

| Height | Weight | Hair | Eyes | Build | Complexion | Glasses | Scars/Marks/Tattoos | CellPhone |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

Victim DID receive information on Victim's Rights and Services pursuant to New York State Law    **Yes**

### OFFENDER - 1

| Last Name | First Name | MI | Ext | Birth Date | Race | Sex | Age | Juvenile | Arrested | Report |
|---|---|---|---|---|---|---|---|---|---|---|
| SEALED | | | | | Black | M | 30 | N | Y | PR |

### REPORTING PERSON - 1

| Last Name | First Name | MI | Ext | Birth Date | Race | Sex | Age | Juvenile | Arrested | Report |
|---|---|---|---|---|---|---|---|---|---|---|
| KRUDER | DEBRA | J | | 12/26/1963 | White | F | 56 | N | N | PR |

| Address | City | State | Zip | Home Phone | Work Phone |
|---|---|---|---|---|---|
| 118 COLONIAL AV | TONAWANDA | NY | 14217 | (716) 398-9048 C | (716) 836-7167 |

| Height | Weight | Hair | Eyes | Build | Complexion | Glasses | Scars/Marks/Tattoos | CellPhone |
|---|---|---|---|---|---|---|---|---|
| 4' 11" | | BRO | BLU | M | LGT | Unknown | | |

### OFFENSES

| Law | Section | CA | CL | DG | Description | Report |
|---|---|---|---|---|---|---|
| PL | 165.40 | M | A | 5 | CRIM POSSESSION STOLN PROP 5TH | PR |
| PL | 205.30 | M | A | 0 | RESISTING ARREST | PR |

### PROPERTY

| Qty | Type | Description | Status | Make | Color | Model | Total Value | Report |
|---|---|---|---|---|---|---|---|---|
| 1 | Non-Negotiable I | LOTTO TICKET | 06 - Seized | | | | $0.00 | SP |
| 2 | Recordings--Audi | VIDEOS | 01 - None/Not Applic | | | | $2.00 | SP |

### NARRATIVE

| POLICE REPORT | Date Entered: 07/09/2020 15:30 | Typist: BRIAN IENCO | Officer: 087-IENCO |
|---|---|---|---|

    I responded to Speedway located at 535 Kenmore Av. for the report of a male customer trying to cash a stolen lottery ticket.  Upon arrival, Detectives Muscoreil and Scranton were inside the store speaking to the male party.

    The male party was identified as Eric C. Martin.  The situation was explained to Martin and he was asked to return to the station to give a statement and be processed.  Martin refused to cooperate and at this point was informed he was under arrest.  Martin was asked to place his hands behind his back, at which point he tensed up, started flailing his arms, yelling get off me, and refused to place his hands behind his back.  I grabbed his right arm/shoulder and assisted in taking Martin to the ground.  Once on the ground Martin was handcuffed, he was then immediately sat up, and assisted back to his feet.  Use of force (TTP47) completed.  (see supplements)  Martin was then searched for weapons and placed in the rear of my patrol vehicle #6 by myself and Lt. Valint without incident.  Martin was then transported to the station without incident.  I was followed by patrol 52, Ofc. Heft.  Once at the station, Martin was brought to the men's cell block area.  Martin was searched, his belongings inventoried and placed in locker #8 (seal # 62066770).  Martin was placed in cell #8 upon card #20-0117 briefly until the west interview room was available/ready.  Suicide screening completed.

    Once the west interview room was ready, I brought Martin from the cell block area and turned him over to Det. Muscoreil and Lt. Moore.

    Informations were completed/signed for the above charges.  All paperwork was completed and forwarded accordingly.

BWC : 087, 477

| Printed Date: 07/14/2021 01:02 PM | Page: 1 |
|---|---|

TTPD00008

| | Town of Tonawanda | Complaint |
|---|---|---|
| | POLICE REPORT | **20-225084** |
| | CRIM POSS STOLEN PROPERTY 5TH | Report Date & Time |
| | | 07/09/2020  13:31 |

087

---

| SUPPLEMENT # 1 | Date Entered: 07/09/2020 15:30 | Typist: **WILLIAM LAUGEMAN** | Officer: **119-LAUGEMAN** |

On 7/9/20 I responded to 535 Kenmore Ave, Speedway, to assist patrols with the investigation of stolen property. The clerk, Debra Kruder, provided a supporting deposition which I turned over to Det. Scranton. $50 cash was turned over by Kruder that belonged to subject Eric Martin. The money was returned to him at 1835 Sheridan Dr.

BWC 119

119

---

| SUPPLEMENT # 2 | Date Entered: 07/09/2020 15:32 | Typist: **BRIAN VALINT** | Officer: **477-VALINT** |

I attempted to take Eric Martin into custody for the purpose of processing by the C.I.B. on the charge of Criminal Possession of Stolen Property 5th. Martin was in possession of a lottery ticket that had been stolen at a recent burglary at 535 Kenmore Ave., Speedway. I reached for Martin's arm and he began to back away from me. At this time Det. Muscoreil approached Martin from behind and attempted to place Martin's hands behind his back. Martin began to tense his arms and refused to put his hands behind his back. I grabbed Martin's left arm and I placed a handcuff on his left wrist. Martin continued to resist by clenching his fists and by not putting his hands behind his back. I was able to connect my cuffs to Det. Muscoreil's cuffs as Martin was being lowered to the ground. Martin was placed on the ground at which time he stopped resisting arrest.

477

---

| SUPPLEMENT # 3 | Date Entered: 07/09/2020 15:36 | Typist: **MARK SCRANTON** | Officer: **260-SCRANTON** |

I responded to assist with an investigation into a possession of stolen property and burglary at 535 Kenmore Ave. While on scene, the suspect, Eric Martin, was advised he was under arrest. Martin stated he was not going to jail, and not going into a police car. He was told again he was under arrest, and began to back up. Martin pulled his left arm away from Lt. Valint, and his momentum moved him in my direction. I grabbed Martin's left wrist, and he began to struggle, pulling his arm in front of him and bending himself. Martin was repeatedly told to stop resisting, and that he was under arrest. As he was leaning forward, I struck Martin twice with my knee in the mid thigh, attempting to hit his common paroneal nerve. After I struck him in the thigh, his left arm, which was already in a handcuff, loosened. I was then able to pull his arm behind his back. During the struggle, Martin was taken to the ground, and I was then able to successfully connect the left handcuff with another cuff that was on his right wrist. After he was cuffed, I asked Martin if he was ok, but he didn't respond. A TTP-47 use of force report completed. I then completed two charges for Ofc. Ienco, which was forwarded to records along with the appearance ticket.

While at the store, I recovered the stolen lottery ticket a $10,000,000 colossal cash lottery ticket. The ticket was entered into CHARMS as evidence, and placed in locker 10.

260

---

| SUPPLEMENT # 4 | Date Entered: 07/09/2020 15:40 | Typist: **MARK MUSCOREIL** | Officer: **204-MUSCOREIL** |

Det Scranton and I responded to the radio call of a subject inside the Speedway at 535 Kenmore Ave. in possession of a stolen lottery ticket from a burglary I'm investigating (20-224888) from 7/8/20. Upon arrival I spoke with LT Valint and Store Manager Kruder who confirmed that the ticket was from the batch stolen yesterday. I then tried speaking with the offender, Eric Martin, who claimed he bought the ticket at the store yesterday but wouldn't say what time, when I told him that it was impossible for him to buy that ticket he became argumentative. I asked him to return to TTPD HQ to speak with me about the lotto ticket and he refused. I advised him that he was under arrest and at that time LT Valint attempted to take him into custody. Martin refused to put his hands behind his back, and was advised multiple times he was under arrest. I took control of his right arm and he continued to pull his arms forward refusing to comply with our commands. I was able to cuff his right arm, and get it behind his back, at which time LT Valint and I were able to take Martin into custody. Martin was returned to TTPD HQ West Interview Room by Patrol, where I read him his Miranda Rights and Martin immediately lawyered up. Det LT Moore and I then processed Martin and released him on an Appearance Ticket. Use of Force completed.

---

| Printed Date: | 07/14/2021 01:02 PM | | Page: 2 |

FILED: ERIE COUNTY CLERK 04/20/2022 03:41 PM          INDEX NO. 808523/2021
NYSCEF DOC. NO.    Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 173 of 271   RECEIVED NYSCEF: 04/20/2022

## Town of Tonawanda
## POLICE REPORT
### CRIM POSS STOLEN PROPERTY 5TH

*Complaint*
**20-225084**

Report Date & Time
**07/09/2020  13:31**

| SUPPLEMENT # 5 | Date Entered: **07/10/2020  12:55** | Typist: **JASON ARLINGTON** | Officer: **218-ARLINGTON** |
|---|---|---|---|

I responded to 535 Kenmore Ave, Speedway, to pick up videos stemming from this incident.  I brought the video back to 1835, logged them into CHARMS, and turned them over to Detective Coffey.  Complaint number of service was 20-225231.

008

| SUPPLEMENT # 6 | Date Entered: **07/22/2020  10:28** | Typist: **THOMAS MOORE** | Officer: **411-MOORE** |
|---|---|---|---|

On 07/14/2020, at the bequest of Speedway District Manager Elizabeth Marvel, I scanned and emailed images of both the front and back of the scratch off lottery ticket Mr. Eric C. Martin attempted to cash on 07/09/2020. Ms. Marvel informed me she was going to contact NYS Lottery and conduct a day by day analysis of register sales to determine exactly which $30 - Colossal Cash scratch off tickets were stolen in the burglary, on 07/08/2020.

Later in the day, Ms. Marvel reached out to me and informed me that Mr. Eric C. Marvel actually bought the ticket in question at 535 Kenmore Ave., on 07/07/2020. She stated she was able to confirm Mr. Eric C. Martin purchased the ticket at 14:18 hrs.. Ms. Marvel stated she would provide me the transaction record and store video.

On 07/16/2020, I did obtain the video and transaction record confirming Mr. Eric C. Martin's lawful purchase of the scratch off lottery ticket in question.

I called Assistant District Attorney Hilarie Henry regarding the process required to have both charges against Mr. Eric C. Martin fully dismissed. Ms. Henry informed me she would initiate the process with the Town of Tonawanda Court and full dismissal should not be an issue.

I called Mr. Eric C. Martin to inform him of the plan to have both charges fully dismissed. Mr. Eric C. Martin did not wish to speak to me but would rather I speak to his father Mr. Eric D. Martin. I fully explained the circumstances to Eric D. Martin and stated I would reach out to him in the near future to update him on the progress with the court.

#411

| Officer: **087 - IENCO** | _____ | Supervisor: **503 - KRIER** | _____ |
|---|---|---|---|

Printed Date:    07/14/2021 01:02 PM                                                          Page: 3

TTPD00010

# Town of Tonawanda
# Complaint Information



## Complaint# 20-225084    Date Received: 07/09/2020    Source: PHONE

| | | |
|---|---|---|
| **Dispatch Code:** 1500 | **Description:** FRAUD | **Call Type:** POLICE |
| **Final Dispatch Code:** 1500 | **Description:** FRAUD | |

**Street:** 535 KENMORE AV          **Tract:**          **Street Code:**

**Cross Street:**          **Municipality:** TONAWANDA TOWN

**Business:** SPEEDWAY          (AT KLAUDER)          **Call Back:**

**Times:**          **Received:** 13:32:27          **Dispatched:** 13:33:53          **Arrived:** 13:39:38          **Completed:** 15:53:06

**Officers:** 087-IENCO          477-VALINT          119-LAUGEMAN          104-HEFT

**Received By:** 829-BIENIEK          **Dispatcher:** 851-MANZELLA

**Report (follow up):** YES          **Notified:**

**Action Codes**   **1.** Police Report Filed          **2.**
**3.**          **4.**

**Associated Persons:** CMP - KRUDER, DEBRA  J.  DOB: 12/26/1963
118 COLONIAL AV  TONAWANDA  Phone: (716) 398-9048 C

| | | |
|---|---|---|
| 07/09/20 13:32:40 | 829 | B/M IN 20'S WEARING A WHITE TEE SHIRT |
| 07/09/20 13:33:13 | 829 | IN THE STORE TRYING TO CASH IN A LOTTO TICKET BELIEVED TO HAVE BEEN STOLEN FROM PREVIOUS ROBBERY |
| 07/09/20 13:33:48 | 829 | LARCENY HAPPENED WED AM AROUND 226 HRS |
| 07/09/20 13:34:07 | 829 | MALE STILL IN THE STORE, TICKET IS WORTH $50 |
| 07/09/20 13:36:26 | 829 | COMPL IS IN THE BACK ROOM CALLING, ANOTHER MANAGER IS AT THE COUNTER STALLING THE PARTY |
| 07/09/20 13:37:51 | 851 | 56 AND 58 19 |
| 07/09/20 13:44:30 | 851 | ONE IN CUSTODY |

TTPD00011

## CONSTITUTIONAL RIGHTS (MIRANDA)

I, _ERIC C. MARTIN_, have been told by Detective/~~Officer~~ _MUSCOREIL_ of the Town of Tonawanda Police Department, that I have the following rights, and that before I am asked any questions I must understand these rights:

1. You have the right to remain silent and refuse to answer any questions.

2. Anything you do say can and will be used against you in a court of law.

3. As we discuss this matter, you have the right to stop answering my questions at any time that you desire.

4. You have the right to a lawyer before speaking to me, to remain silent until you can talk to a lawyer, and to have that lawyer present with you when you are being questioned.

5. If you do desire a lawyer, but you cannot afford one, one will be provided to you before questioning without cost to you.

6. Do you understand each of these rights I have explained to you?

7. Now that I have advised you of your rights, are you willing to answer my questions?

These rights have been explained to me and I fully understand these rights.

Signature _X REFUSED_

Investigator _____ 244     Date _7/9/20_

Witness _____     Time _14:35_

TTP 75 (3/19)



# Town of Tonawanda

## Property Receipt

**Complaint: 20-225084**

Print Date: 7/29/2020

Receipt No. **12533**

| Owner | Property ID | Description | Make | Model | Officer |
|-------|-------------|-------------|------|-------|---------|
| **MARTIN ERIC C** | **90636** | **LOTTO TICKET** | | | **MARK SCRANTON** |

Property Received By: **Owner** x _Eric Martin_    **Officer** _Lt. Moon #418_

Date/Time_____    Date/Time _7/29/20 10:06 AM_

TTPD00013

## JUSTICE COURT
## TOWN OF TONAWANDA, NEW YORK

State of New York                County of Erie                Town of Tonawanda

## THE PEOPLE OF THE STATE OF NEW YORK

-vs-

Eric C. Martin                   **Complaint Number:** 20-225084
191 Briton St.                   **Date of Birth:** 01/14/1990
Buffalo, NY 14216                **Phone Number:** (716) 837-0173

### INFORMATION/COMPLAINT

I, Ofc. B. Ienco, the complainant herein, accuses the above named defendant with having on or about, 07/09/20 at, 535 Kenmore Ave, in the Town of Tonawanda, County of Erie, New York at about, 1:32 PM with having committed the offense of **Criminal Possession of Stolen Property in the 5th Degree** in violation of section **165.40** of the Penal Law in the State of New York, the same being a **Class "A" Misdemeanor.**

**FACTS:** A person is guilty of criminal possession of stolen property in the fifth degree when he knowingly possesses stolen property, with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof, to wit: At the aforementioned date, time and place, **said defendant did knowingly possess a stolen "$10,000,000 Colossal Cash" lottery ticket wtih the intent to benefit himself by claiming the $50 prize.** All contrary to the provisions of the statute in such case made and provided.

THE AFORESAID ALLEGATIONS OF FACT ARE MADE BY THE COMPLAINANT HEREIN ON DIRECT KNOWLEDGE AND UPON INFORMATION AND BELIEF, WITH THE SOURCE BEING: Supporting deposition of Debra Kruder, which has been attached to and made part of this information.

Affirmed under penalty of perjury, Thursday, July 09, 2020

Ofc. B. Ienco, Complainant

*NOTE: FALSE STATEMENTS MADE HEREIN ARE
PUNISHABLE AS A CLASS "A" MISDEMEANOR
PURSUANT TO SECTION 210.45 OF THE REVISED
PENAL LAW OF NEW YORK STATE.*

1835 Sheridan Dr.
ADDRESS

Kenmore, NY 14223
CITY, TOWN or VILLAGE

(716) 876-5300
PHONE NUMBER

Prepared By: Scranton 260

TTP-84 (04/03)

TTPD00014

## JUSTICE COURT
## TOWN OF TONAWANDA, NEW YORK

| State of New York | County of Erie | Town of Tonawanda |
|---|---|---|

### THE PEOPLE OF THE STATE OF NEW YORK

-vs-

**Eric C. Martin**
**191 Briton St.**
**Buffalo, NY 14216**

**Complaint Number:** 20-225084
**Date of Birth:** 01/14/1990
**Phone Number:** (716) 837-0173

## INFORMATION/COMPLAINT

I, Ofc. B. Ienco, the complainant herein, accuses the above named defendant with having on or about, 07/09/2020 at, 535 Kenmore Ave, in the Town of Tonawanda, County of Erie, New York at about, 1:32 PM with having committed the offense of **Resisting Arrest** in violation of section **205.30** of the Penal Law in the State of New York, the same being a **Class "A" Misdemeanor**.

**FACTS:** A person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a police officer or peace officer from effecting an authorized arrest of himself or another person, to wit: At the aforementioned date, time and place, **said defendant did attempt to prevent Ofc. B. Ienco, a uniformed Town of Tonawanda Police Officer, from effecting an authorized arrest of himself or another person, after being advised several times he was under arrest for possession of stolen property, and to put his hands behind his back, did pull away from officers and resist being handcuffed, and stating "I'm not getting arrested**. All contrary to the provisions of the statute in such case made and provided.

THE AFORESAID ALLEGATIONS OF FACT ARE MADE BY THE COMPLAINANT HEREIN ON DIRECT KNOWLEDGE

Affirmed under penalty of perjury, Thursday, July 09, 2020

Ofc. B. Ienco, Complainant

*NOTE: FALSE STATEMENTS MADE HEREIN ARE PUNISHABLE AS A CLASS "A" MISDEMEANOR PURSUANT TO SECTION 210.45 OF THE REVISED PENAL LAW OF NEW YORK STATE.*

1835 Sheridan Dr.
ADDRESS

Kenmore, NY 14223
CITY, TOWN or VILLAGE

(716) 876-5300
PHONE NUMBER

Prepared By: Scranton 260

TTP-84 (04/03)

**Moore, Thomas**

| | |
|---|---|
| **From:** | SSA-Clny, 408 (Speedway) <ssaclny408@speedway.com> |
| **Sent:** | Thursday, July 16, 2020 2:06 PM |
| **To:** | Moore, Thomas |
| **Subject:** | statement- Eric Martin |

On 7/14 I reached out to NY lottery to find out when the book was activated, and then I traced the inventory from each day through the day of the break in. On 7/7 we had 15 tickets in our inventory and 3 tickets were sold during the day on 7/7.  These tickets were sold to the man that was detained at our location.



Beth Marvel  District Manager
Speedway LLC | Colony Division| Buffalo, NY
C: 484-919-0418 |  Fax: 419-421-5723
E: ssaclny408@speedway,com

1

Department of Police
Town of Tonawanda, New York

State of New York
County of Erie
Town of Tonawanda

Complaint # 20-225824

### SUPPORTING DEPOSITION

I, DEBRA KRODER, being duly affirmed, depose and say that I am 56 years of age. Further I say

ON 7/9/20 A MALE TRIED TO CASH A $20 SCRATCH OFF THAT WAS FROM A STOLEN BATCH. A BLACK MALE WEARING A WHITE T-SHIRT CAME INTO THE SPEEDWAY, 535 KENMORE AVE. MY CO-WORKER SABRE LEWIS TRIED SCANNING THE SCRATCH OFFS. THE MALE BOUGHT INF ONE OF THE SCRATCH OFFS CAME UP WITH AN ERROR. HAD TO CALL LOTTERY OFFICE. DOWNTOWN. I RECOGNIZED THE TICKET AS FROM THE BATCH THAT WAS STOLEN YESTERDAY. I CHECKED THE NUMBER FROM THE TICKET TO THE ONES THAT WERE STOLEN AND IT WAS A MATCH SO I CALLED POLICE.

### Notice (Penal Law, Section 210.45)

It is a crime, punishable as a class "A" Misdemeanor under the laws of the State of New York, for a person, in and by a written instrument, to knowingly make a false statement, or to make a statement which such person does not believe to be true.

Affirmed under penalty of perjury on this date : 7 / 9 / 2020

Mo.   Day   Year

_____  114
OFFICER / DETECTIVE

_____
DEPONENT

TTP-87 (7/15)

TTPD00017

# Tonawanda Town Court
# 1835 Sheridan Drive
# Buffalo, New York  14223

Daniel T. Cavarello
Town Justice

(716) 876-5536

## CERTIFICATE OF DISPOSITION

**STATE OF NEW YORK**
**ERIE COUNTY**

**TONAWANDA TOWN COURT**
**CRIMINAL PART**

PEOPLE OF THE STATE OF NEW YORK

     VS.

ERIC C. MARTIN;  Defendant

CASE NO: 20070231

| | | |
|---|---|---|
| Date of Birth: | 01/14/1990 | JC501 no: 69394689K |
| Date of Arrest: | 07/09/2020 | NYSID no: 10622113M |
| Disposition Date: | 07/22/2020 | |

| Section Charged | Section Disposed | Ticket No & Description | Disposition | Fine | Civil-Fee | Surchg |
|---|---|---|---|---|---|---|
| PL 165.40 | PL 165.40 | CPSP 5 | Dismissed | 0.00 | 0.00 | 0.00 |
| PL 205.30 | PL 205.30 | RESIST ARREST | Dismissed | 0.00 | 0.00 | 0.00 |

Upon a proper request for an official statement of disposition, I certify that the above named defendant having appeared before this court was charged as shown above.  Each of the charges was disposed of as indicated.

Dated: The 23rd day of July 2020

Hon. Daniel T. Cavarello

NOTE: A copy of the request will be filed with this certificate in the case records.

CAUTION: This information must not be divulged if the case is sealed or where the defendant has been adjudicated a youthful offender.

Copies: _____ Court, _____ Defendant, _____ Agency, _____ DA

## DEPARTMENT OF POLICE
### TOWN OF TONAWANDA, NEW YORK

## INTRA-DEPARTMENTAL COMMUNICATION

TO: Captain Fennell                                          DATE: 7/15/2020

SUBJECT: Arrest of Eric C. Martin Complaint # 20-225084

Upon reviewing all pertinent paperwork and video, as well as speaking to several persons, including the store manager Debra Gruder, Speedway District Manager Beth Marvel, and Eric C.Martin's father, Eric D. Martin, I am preparing the following summary of my findings:

On 07/09/2020, at 13:32:27 hrs., a call was received from Debra Kruder, the store manager of Speedway Express at 535 Kenmore Ave., regarding an individual trying to cash in a possible stolen lottery ticket.

At 13:36:07 hrs., Patrol Lieutenant Brian Valint arrived on scene. Lt. Valint entered the Speedway and proceeded to verbally engage the customer in question, Eric C. Martin. Mr. Martin was at the front counter of the store. Lt. Valint informed Mr. Martin of the complaint. Mr. Martin stated to Lt. Valint that he had purchased the winning ticket in question, on a previous day. Mr. Martin also mentioned it should be able to be confirmed on store video. At this point, the store manager, Debra Kruder, interrupted and stated to Mr. Martin, "What time?" and "Morning? Noon? Evening?". Mr. Martin said he did not know what time he had purchased the ticket. Lt. Valint then walked over to Ms. Kruder. Ms. Kruder had Mr. Martin's winning scratch off ticket in her hand. Lt. Valint followed Ms. Kruder to a scratch off lottery ticket vending machine at the front of the store. Detectives 56 and 58 (Detective Muscoreil and Detective Scranton) called 19 on the scene. Ms. Kruder opened the vending machine and stated to Lt. Valint, ".....need this. I'm going to verify.". She was referring to the scratch off ticket in her hand. At 13:38:04 hrs., Detectives Muscoreil and Scranton entered the store.

Ultimately, Lt. Valint informed Detective Scranton (13:39:30 hrs.) that "it's stolen" and it's "possession of stolen property at the least.". At 13:39:46 hrs., Debra Kruder stated to Detective Muscoreil, "I don't know if he did it. He has a stolen ticket.".

At 13:40:48 hrs., Detectives Muscoreil and Scranton verbally engaged Mr. Martin at the front counter of the store. Mr. Martin informed the two detectives that he bought the ticket. Detective Muscoreil told Mr. Martin the ticket was stolen. At 13:41:35 hrs., Mr. Martin stated, "I didn't steal it. I paid for it.". Detective Muscoreil then informed Mr. Martin that it would be best to return to 1835 Sheridan Dr. to discuss the matter. Mr. Martin balked at the suggestion. When Detective Muscoreil reiterated his previous statement, Martin said, "like I meet you there?". Detective Muscoreil then told Martin, "We're going to transport you there.". Martin said, "I'm not going in the cop car.". Muscoreil stated, "Well you're going to regardless because you're in possession of stolen property. Ok? So no matter what you're coming back.". Martin countered with, "I'm not riding in the cop car. I definitely didn't do…". Muscoreil answered, "You definitely are because you're under arrest right now.". Mr. Martin then shook his head and said, "Well arrest (unintelligible)". Muscoreil stated, "You definitely are because you're under arrest.".

## DEPARTMENT OF POLICE
### TOWN OF TONAWANDA, NEW YORK

## INTRA-DEPARTMENTAL COMMUNICATION

At 13:42:36 hrs., Lt. Valint approached Eric Martin, placed his left hand on Mr. Martin's right upper arm and told Martin, "...behind your back. Put your hands behind your back." Martin replied, "I'm not going.". Lt. Valint stated, "Come on. Sir.". At this point, Mr. Martin pulled away, turned 90 degrees (now facing Lt. Valint) and exclaimed, "I'm not going!". Lt. Valint informed Mr. Martin that he was in possession of stolen property and he had a choice how things would go at this point. Detective Muscoreil then stepped behind Mr. Martin and took hold of his right wrist. Detective Scranton and Lt. Valint took hold of his left lower arm and wrist in an attempt to get a handcuff on him. Mr. Martin began resisiting the attempt to be handcuffed by tensing up his arms. Lt. Valint stated, "Sir. You're going to catch more charges. You don't want to catch more charges.". Martin continued to actively resist being handcuffed by continuing to tense both arms and twisting his body. After Lt. Valint was able to get a cuff on his left wrist, Mr. Martin bent over, twisted and pulled his hands to the front of his body. Lt. Valint informed Mr. Martin he was making a big mistake and to put his hands behind his back. As Mr. Martin continued to struggle to not be handcuffed, Detectives Scranton, Muscoreil, Lt. Valint and P.O. B. Ienco grappled with Mr. Martin, in an attempt to get the second handcuff on his right wrist. At 13:43:33 hrs. (57 seconds after Lt. Valint intitially attempted to handcuff Mr. Martin), Mr. Martin was taken relatively slowly to the floor by the four officers. Approximately 12 seconds later, Mr. Martin's right wrist was handcuffed. Shortly after his right wrist was cuffed, Mr. Martin was assisted up by Detective Scranton and P.O. Ienco.

After being assisted up off the floor, Mr. Martin was escorted to the rear seat of patrol car #6 by Lt. Valint and P.O. B. Ienco.

Mr. Martin was returned to 1835 Sheridan Dr.. He was processed for Criminal Possession of Stolen Property 5th and Resisting Arrest. He was subsequently released on an appearance ticket.

At 1108 hrs., on 07/14/2020, I spoke to Speedway District Manager Elizabeth Marvel regarding the scratch off lottery ticket Mr. Martin possessed on 07/09/2020. Ms. Marvel asked for some of the identifying information from the ticket. I retrieved said ticket from evidence, scanned the front and back of the ticket, returned the ticket to evidence, and e-mailed the front and back images to Ms. Marvel. Ms. Marvel stated she was going to attempt to verify whether the ticket was stolen in the burglary on 07/08/2020.

At 1612 hrs., on 07/14/2020, I again spoke to Ms. Marvel. Ms. Marvel stated she located both the register transaction and video of Mr. Martin purchasing three (3), $30 Colossal Cash scratch off lottery tickets, including the ticket in question, on 07/07/2020, at 14:18:39 hrs.. Mr. Martin paid for all three tickets with ninety (90) dollars cash. I asked Ms. Marvel to provide an e-mail stating the aforementioned and additionally asked her to provide video for both 07/07/2020 and 07/09/2020. She stated she would like to do so but would have to first speak to Speedway's legal department.

At 0852 hrs., on 07/15/2020, I spoke to Assistant District Attorney Chief of Town Justice Courts Brian McNamara regarding the process for having both charges against Eric C. Martin fully dismissed. ADA McNamara instructed me to contact Ms. Hilarie Henry, the Assistant District Attorney assigned to the Town of Tonawanda Court. At 16:33 hrs., I spoke to ADA Hilarie

Make endorsements, if necessary, on back

TTP-40

**DEPARTMENT OF POLICE**
**TOWN OF TONAWANDA, NEW YORK**

## INTRA-DEPARTMENTAL COMMUNICATION

Henry. Ms. Henry informed me she would reach out to the court tomorrow (07/16/2020) to begin the process of having both charges against Eric C. Martin fully dismissed.

At 16:57 hrs., on 07/15/2020, I called Mr. Eric C. Martin to explain the aforementioned. Eric's father (Eric D. Martin) informed me that his son did not wish to speak to us but would prefer our department to communicate with him (Eric D.). I informed Eric's father that the ticket in question has now been confirmed to have been lawfully sold to his son and the charges against his son were going to be fully dismissed. Eric D. Martin stated he understood and would await my call when I had the full dismissal paperwork to pass on.

On 07/16/2020, Ms. Elizabeth Marvel informed me store video from both 07/07/2020 and 07/09/2020 was available for pickup at 535 Kenmore Ave. I reponded to the Speedway to pickup the video. I also spoke at length to the store manager Debra Kruder regarding the process of how lottery tickets are sold and how they are reported stolen.

I compiled all pertinent video, audio, and paperwork for full review. I specifically focused on two particular issues. Probable cause pertaining to Mr. Martin's arrest on 07/09/2020 and the use of force in effecting the custodial arrest of Mr. Martin on the same date.

Probable Cause - Shortly after Detective Muscoreil and Scranton walked through the front doors of the Speedway, Detective Scranton was informed by Lt. Valint, "...it's stolen" and "It's possession of stolen property at the least.". Lt. Valint was holding the scratch off ticket Mr. Eric C. Martin originally tried to cash in. Less than twenty (20) seconds later, the store manager, Ms. Debra Kruder, stated to Detective Muscoreil, "I don't know if he did it. He has a stolen ticket.". This is the information Detectives Scranton and Muscoreil had when they approached Eric C. Martin. Detective Muscoreil ultimately made the decision to arrest Mr. Eric C. Martin. Detective Muscoreil was fully aware of Ms. Kruder's standing and position at the store. Detective Muscoreil acted on information provided by a legitimate representative of the store. Ms. Kruder sign a supporting deposition prepared by P.O. W. Laugeman attesting to Mr. Martin possessing and attempting to cash a stolen lottery ticket.

Use of Force - Detective Muscoreil informed Mr. Eric C. Martin twice that he was "under arrest". On both occasions, Mr. Martin appeared to acknowledge what Detective Muscoreil stated. After Mr. Martin was told twice he was under arrest, Lt. Valint placed his hand on Mr. Martin's right arm and told him to put his hands behind his back, Eric Martin pulled his arm away, turned 90 degrees to face Lt. Valint and took two steps back. Mr. Martin also loudly exclaimed, "I'm not going!". At this point, it appeared Mr. Eric Martin was not willing to fully comply with the attempt to take him into custody. Detective Muscoreil stepped behind Mr. Martin to take hold of his right arm while Detective Scranton took hold of his left arm. Lt. Valint approached with his handcuffs and tried to cuff Mr. Martin's left wrist. Eric Martin tensed up and would not allow his arms to be brought fully behind his back for handcuffing. P.O. Ienco positioned himself in front of Mr. Martin in an attempt to assist Valint, Muscoreil and Scranton. Within eight (8) seconds of attempting to cuff a tensed up, squirming Mr. Martin, Lt. Valint did

Make endorsements, if necessary, on back

TTP-40

**DEPARTMENT OF POLICE**
**TOWN OF TONAWANDA, NEW YORK**

## INTRA-DEPARTMENTAL COMMUNICATION

get his left wrist handcuffed. Martin was able to pull his left arm to the front of his body, bending over at the waist in the process. Mr. Martin appeared to be attempting to pull both arms in front of his body to keep from being cuffed. Twelve to thirteen (13) seconds after Mr. Martin's left wrist was cuffed, Detective Scranton purposely used his right knee to quickly strike Mr. Martin in the upper left leg. This appeared consistent with an attempt to strike the common peroneal nerve in the mid thigh area. This action did appear to affect Mr. Martin. His left and right arms were then brought behind his back with relative ease. Once both hands were behind his back, they were pushed up his back. This in turn caused Mr. Martin's upper body to bend forward at the waist. Mr. Martin was then pushed down to the floor in a somewhat guided manner. Approximately fourteen (14) seconds after being taken to the floor, Mr. Martin's right wrist was cuffed. In actuality, Eric Martin was handcuffed with two (2) pairs of handcuffs linked together. This was apparently done due to Mr. Martin's muscalature and lack of flexibility. Eight (8) seconds after the handcuffing was complete, Detective Scranton and P.O. Ienco began assisting Mr. Martin off the floor. The video did not depict any apparent physical injury to any involved parties. Mr. Martin did not verbally state anything regarding injury. Based on Eric Martin's active resistance to being handcuffed, it would appear the amount of force utilized to effect the custodial arrest was exercised in a manner wholly consistent with controlling and handcuffing Mr. Martin. The four officers involved appeared to be fully in control of their faculties and focused solely on gaining control of Mr. Martin. Aside from Detective Scranton's knee strike to Mr. Martin's thigh area, Lt. Valint's body worn camera footage depicted no other blows thrown by officers.

DEPARTMENT OF POLICE
TOWN OF TONAWANDA, NEW YORK

# SPECIAL ORDER

TO: All Personnel                                      DATE: 03/31/2020

SUBJECT: Arrests during Covid-19 Pandemic

I.      **Purpose:**

The purpose of this Departmental Directive is to provide guidelines to officers in relation to arrests during the period in which COVID-19 is deemed a serious health issue. This Special Order shall be kept in place until further notice.

II.     **Policy:**

It is the policy of the Town of Tonawanda Police Department that all sworn personnel shall recognize that alternatives to in-custody arrests and pre-arraignment confinement are available and shall be used, absent specific circumstances outlined below.

III.    **Adult Misdemeanor - On-site Arrest Procedures:**

Except for the circumstances outlined as (1.), (2.), officers effecting the arrest of any adult person without a warrant for the commission of a misdemeanor, shall advise of the pending issuance of a criminal summons.

1.  Any mandatory arrest misdemeanor offense involving domestic violence;

2.  Any misdemeanor offense of operating a motor vehicle while under the influence of alcohol or drugs;

IV.     **Felony – On-site Arrest Procedures:**

Felony arrests shall be handled in accordance with pre-established protocols and New York State Statutes.

V.      **Juvenile Arrest Procedures:**

Juvenile offenses shall be handled in accordance with pre-established protocols.

1

DEPARTMENT OF POLICE
TOWN OF TONAWANDA, NEW YORK

# SPECIAL ORDER

VI.   **Violations, Traffic Infractions, and Parking Violations:**

Enforcement action should only be conducted in extreme circumstances when no other recourse is suitable.

VII.   **Warrant Arrests:**

As determined by the Patrol Commander or his designee.

James P. Stauffiger
Chief of Police

2

TTPD00024

**Fennell, Joseph**

| | |
|---|---|
| **From:** | Stauffiger, James P. |
| **Sent:** | Tuesday, March 31, 2020 2:24 PM |
| **To:** | Bado, Nicholas; Fennell, Joseph; Flatau, Corey; Haug, Jesse; Milosich, Christine; Milosich, Joseph; Price, David; Shoemaker, Mark |
| **Cc:** | Missana, Sabina; Anderson, Mary |
| **Subject:** | Special Order - Arrests during COVID-19 |
| **Attachments:** | Special Order - Arrests During COVID-19.pdf |
| | |
| **Importance:** | High |



**James P. Stauffiger**
**Chief of Police**
Town of Tonawanda Police Department
1835 Sheridan Drive
Kenmore, New York 14223
(716) 879-6607

TTPD00025

## Hark,Tim

| | |
|---|---|
| **From:** | Fennell, Joseph |
| **Sent:** | Tuesday, March 31, 2020 2:36 PM |
| **To:** | Campanella, Jeffrey; Card, Charles; Cavarello, Adam; Ciechomski, Todd; Coffey, David; Dirienzo, Frank; Englert, Kenneth; Falsone, Thomas; Fennell, Joseph; Hark,Tim; Hearitt, Darren; Kaiser, Christopher; Krier, William; Moore, Thomas; Mulla, Michael; Muscoreil, Mark; Oswald, Thomas; Reinhart, Gary; Schmidt, Eric; Scranton, Mark; Smith, William; Sprague, Scott |
| **Subject:** | FW: Special Order - Arrests during COVID-19 |
| **Attachments:** | Special Order - Arrests During COVID-19.pdf |
| | |
| **Importance:** | High |



*Detective Captain Joseph Fennell*
*Criminal Investigation Bureau Commander*
*Town of Tonawanda Police Department*
Phone (716) 879-6630   Fax (716) 879-6665
    jfennell@tonawanda.ny.us

**From:** Stauffiger, James P.
**Sent:** Tuesday, March 31, 2020 2:24 PM
**Subject:** Special Order - Arrests during COVID-19
**Importance:** High



**James P. Stauffiger**
**Chief of Police**
Town of Tonawanda Police Department
1835 Sheridan Drive
Kenmore, New York 14223
(716) 879-6607

1

TTPD00026

**Fennell, Joseph**

| | |
|---|---|
| **From:** | Fennell, Joseph |
| **Sent:** | Friday, July 24, 2020 11:22 AM |
| **To:** | Bado, Nicholas; Flatau, Corey; Haug, Jesse; Milosich, Christine; Milosich, Joseph; Shoemaker, Mark; Stauffiger, James P.; Bartolotta, Frank; Campanella, Jeffrey; Card, Charles; Cavarello, Adam; Ciehomski, Todd; Coffey, David; Dirienzo, Frank; Falsone, Thomas; Fennell, Joseph; Hark,Tim; Hearitt, Darren; Kaiser, Christopher; Kazmark, Joseph; Krier, William; Moore, Thomas; Mulla, Michael; Muscoreil, Mark; Reinhart, Gary; Schmidt, Eric; Scranton, Mark; Sprague, Scott; Caputy, Joseph; Colangelo, Anthony; Day, Patrick; Englert, Kenneth; Partyka, Timothy; Price, David; Salonikis, Nikolaos; Scott, Derek; Taber, Amanda; Valint, Brian |
| **Cc:** | Henry,  Barbara; Nisbet, Patricia; Anderson, Mary |
| **Subject:** | Appearance Tickets |

Effective immediately, all personnel will return to issuing appearance tickets in accordance with our policies, procedures, and state law, as we did prior to the COVID-19 pandemic.

Criminal summons should only be requested in situations where they were used before the pandemic, or in situations where the issuance of an appearance ticket is not possible and/or practicable.

Officers/Detectives must list a court date within the time period required by law (20 days), but should notify the recipient of the appearance ticket that they may receive correspondence from the court changing their court date and time. This is due to restrictions still being applied to the court system due to the COVID-19 pandemic. It is essential that Officers/Detectives secure a valid preferred method of contact to facilitate this correspondence from the court.

If you have any questions, please contact me.



*Detective Captain Joseph Fennell*
*Criminal Investigation Bureau Commander*
*Town of Tonawanda Police Department*
Phone (716) 879-6630   Fax (716) 879-6665
jfennell@tonawanda.ny.us

1

## O-35   PRISONER CUSTODY   (10/19/16)   Rev.

I.   **PROCEDURES FOR TRANSPORTING PRISONERS:**

A.   *Search Incident to Lawful Arrest:*

   1.   Every arrestee will be searched for weapons and contraband by an officer prior to being transported.  This search will include, but is not limited to:
      a.   Prior to a search the officer shall ask, "Do you have any needles, contraband or weapons on your person and where?"
      b.   A pat-down of all body and clothing surfaces, and
      c.   A search of all clothing pockets, shoes, etc., where a weapon or contraband could be readily accessible or concealed. Any person arrested shall be searched immediately upon being taken into custody, or, if tactically unsound to do so, at the first practical opportunity.
      d.   An arrestee's cell phone or any other electronic device in his/her possession at the time of arrest may be visually examined to ensure it does not conceal a weapon. The electronic contents will not be searched without a search warrant unless articulable exigent circumstances exist.

      Any weapon, dangerous article, or contraband found will be immediately secured, and subsequently either logged and secured in the evidence locker or accompany all other property with the prisoner to the booking area and appropriate reports filed.

   2.   Officers will search their vehicles at the beginning and end of each shift, as well before and after transporting any person.

B.   *Procedures:*
   1.   Prisoners will generally be transported in a marked patrol vehicle equipped with a protective cage unless:

      a.   Injuries necessitate immediate transport to a medical facility by an ambulance, or
      b.   The prisoner is physically disabled to the extent other arrangements would be appropriate.

   2.   Unless injuries or physical deformities interfere, all prisoners will be handcuffed before being transported.  Handcuffs will be applied behind the prisoner's back with palms of hands outward and will be double locked.

   3.   Prisoners will not be left unattended and will be transported directly to the jail without unnecessary delay.

   4.   Smoking by prisoners during transport is prohibited.

   5.   Officers will not engage in any type of pursuit or emergency driving while transporting a prisoner.  They will not respond to any other calls for service unless there is a clear risk of grave injury to another person <u>and</u> the safety of the prisoner will not be put at risk.

   6.   If a subject has been sprayed with a Chemical Agent Projector and is transported in a departmental vehicle, the vehicle shall be decontaminated by thoroughly airing out the vehicle.

   7.   *Body Belt:*
      The body belt allows the officer to handcuff the prisoner in the front yet restricts the movement of the prisoner's arms and hands.  This device will be used when prisoners cannot be handcuffed behind their back.

   8.   Male officers transporting a female and female officer transporting a male prisoner will:

TTPD00028

## O-35    PRISONER CUSTODY    Cont.    (3/26/19)   Rev.

      a.    Always have another officer accompany them during the transport and handling of prisoner.

      b.    Notify Communications of the transport, destination, starting and ending location and mileage.

      c.    Proceed without delay and by the most direct route to their destination. The dispatcher will be notified immediately of any delay encountered while en route.

9.    Female prisoners will be transported separately from male prisoners unless:

      a.    They are members of the same immediate family and not a threat to each other.

      b.    Insufficient manpower makes it unfeasible _AND_ sufficient measures can be taken to protect the female from the male prisoners.

10.    Any prisoner with apparent injuries, who complains of injury, is unconscious or semi-conscious due to drug or alcohol consumption, or who complains of or exhibits any symptoms of anything that may have the potential to be life threatening (e.g., breathing difficulties, chest pain, severe lethargy, head injury) will immediately receive medical attention prior to being transported, and if non-life threatening will immediately receive medical attention upon arrival at the police station.

11.    <u>Positioning of Prisoners in Transport Vehicle:</u>

      a.    When one officer is transporting one prisoner; the prisoner will be positioned on the rear seat on the side opposite the officer driving. The officer may use seatbelts to better secure the prisoner.

      b.    When one officer is transporting more than one prisoner, the prisoners will be located on the rear seat and, if circumstances warrant, the officer may use seat belts to better secure the prisoners.

12.    <u>Observation of Prisoners While Transporting:</u>

      a.    While transporting a prisoner, the officer will remain alert to the prisoner's presence. A second officer will accompany transporting officers in all cases involving prisoner transport of a person of the opposite gender of the transporting officer, violent prisoners, and other extenuating circumstances as deemed appropriate by a patrol supervisor or patrol commander.

      b.    The transporting officer will not allow prisoners to communicate with other people while in transit unless the situation requires it. The officer shall use his good judgment when deciding whether to allow a conversation to take place between the transported prisoner and another party.

II.    <u>**CELLBLOCK SECURITY AND PRISONER PROCESSING PROCEDURES:**</u>

A.    For the purpose of these rules, the cellblock areas shall mean the areas beyond the doors leading to the male cell block, female cell and holding tank.

B.    No firearms will be taken into cellblock areas. All firearms will be secured in the weapons lockers provided in the cellblock hallway. No firearms will be stored in the cellblock area itself. If prisoners are present no firearms or weapons are allowed in the Identification Room or the Breathalyzer Room.

C.    No Tasers, chemical spray, knifes and batons shall be taken into the cellblock area unless authorized by a Supervisor. These items will be secured in the weapons locker.

TTPD00029

## O-35    PRISONER CUSTODY    Cont.    *(05/11/21)    Rev.*

D.   The inner cellblock door will be kept closed and locked at all times. This measure is to guarantee that no prisoner will have unauthorized access to the weapons locker or prisoner process area.

E.   Any weapons confiscated from a prisoner's person will be appropriately tagged and placed into evidence.  Items such as pocket knives will be made safe then inventoried and secured with the prisoner's personal property.

F.   No officer from another jurisdiction will be allowed access to the cellblock area unless accompanied by a member of this department. It will be the responsibility of such member to see that visiting officers are advised of and comply with these rules.

G.   Prisoner will be escorted to the cellblock area through the security garage and there should be a minimum of two officers present.

H.   Prisoner will be searched prior to handcuffs being removed.

I.   Prisoner's property will be inventoried and a Prisoner Property Inventory (TTP-57) will be completed in accordance with the following guidelines:

  1.   An inventory is not a search. An inventory is conducted to:

    a. Preserve his/her property while they are incarcerated, held or detained;

    b. Prevent escape, self-injury, or harm to others;

    c. Protect the Town of Tonawanda Police Department from disputes over lost or    stolen property, or whether property was returned;

    d. Keep any dangerous items out of the cellblock or secured areas of the Town of Tonawanda Police Station

  2.   Items that will be inventoried are to include, but are not limited to; unlocked bags/containers, purses, or other items found on the prisoner or in his/her possession at the time of their arrest. Locked bags/containers and other items secured in such a way as to prevent ready access will not have their contents inventoried unless consent is given by the owner, or a key/code is present to open it or if it poses an imminent danger to the Police or public. The electronic content of an arrestee's cell phone or electronic device may not be inventoried.

  3.   An inventory of property shall not be used to subvert the preferred methods of Search and Seizure in accordance with NYS Laws. If there is probable cause to believe the secured item contains evidence or the fruits or instrumentalities of a crime and it has not been inventoried in accordance with this policy, a search warrant should be obtained.

  4.   Any evidence, contraband or unlawfully possessed items discovered during the prisoner property inventory shall be seized and is admissible in court as evidence of a crime.

  5.   Inventories will also be conducted in situations where a person is confined or detained within the Town of Tonawanda Police Department. This includes runaways, PINS warrants or any other type of detainer or legal process that requires a person be held or detained at the Town of Tonawanda Police Department building.

J.   Strip Searches

DEFINITION

The process of having an arrested person remove or arrange some or all of his or her clothing; or, if an arrested person refuses to remove or arrange his or her clothing, having a police officer or employee of the police department remove or arrange the clothing of the arrested person so as to permit a visual inspection of the genitals, buttocks, anus, female breasts, or undergarments used to clothe said anatomical parts of the body.

  1.   Strip searches may, under certain circumstances, be necessary to protect the safety of Officers, civilians and other personnel and to detect and secure evidence of criminal activity. Such searches must be founded on reasonable suspicion that the arrestee is concealing evidence underneath clothing and must be conducted in a reasonable manner, with due recognition and deference for the human dignity of those being searched.

TTPD00030

## O-35    PRISONER CUSTODY    Cont.    (10/19/16)   Rev.

    2.    *Strip searches should be performed by Officers of the same sex as the person on whom the strip search is being performed.*

K.    *Visual Cavity Inspections*

    1.    *Visual Cavity Inspections will be conducted if an Officer has an articulable factual basis supporting a reasonable suspicion the arrestee has secreted evidence inside a body cavity.*

    2.    *Visual Cavity Inspections must be conducted reasonably, with due recognition and deference for the human dignity of those being searched. Visual Cavity Inspections should be performed by Officers of the same sex as the person on whom the inspection is being performed unless the cavity to be searched is the mouth.*

    3.    *If an object is visually detected, or other information provides probable cause that an object is hidden within an arrestee's body, then a warrant must be obtained for a Body Cavity Search to facilitate the removal of the object unless exigent circumstances reasonably prevent prior judicial authorization.*

L.    *Body Cavity Searches*

    1.    *A body cavity search shall be conducted only under the authority of a search warrant specifically authorizing a body cavity search.*

    2.    *Only a licensed physician or registered nurse shall conduct a body cavity search.*

    3.    *Officers may be present during the search, but only those of the same sex as the person on whom a body cavity search is being conducted.*

M.    *Officers will complete the Prisoner Property Inventory (TTP-57 form) and will ask the prisoner the following medical screening questions contained on the back of the Prisoner Property Log (TTP-57 form):*

### PRISONER QUESTIONS

    1.    *Are there any physician prescribed medications that you take daily?* _____

    2.    *Have you had any ALCOHOLIC BEVERAGES or ILLICIT DRUGS in the last 8 hours?* _____

    3.    *Have you sustained any injury within the last 8 hours?* _____

*A "YES"response to any above question may prompt an evaluation by the paramedics.*

N.    *Officer will have prisoner sign Prisoner Property Inventory (TTP-57 form) then log seal number on the form and place prisoner's property into prisoner locker along with the Prisoner Property Inventory (TTP-57 form) and seal it.*

O.    *Suicide Prevention Screening Form (Male & Female Prisoners)*

    1.    *All Department members will use the "Suicide Prevention Screening Guidelines" form for prisoners being housed in our lockup. Blank copies will be available in the cell block. You will need to make 2 copies of the completed form. The original will go with the arrest folder, or if there is no arrest folder, with the original police report which will be forwarded to the Records Bureau. One copy will go with the prisoner's property, brought to the Holding Center, and given to the deputy. If the prisoner is taken elsewhere (i.e. ECMC, another jurisdiction), the copy will be turned over there.  One copy will be forwarded to the Service Bureau.*

P.    *Officer will mark on the prisoner boards located in the cellblock and at the front desk the prisoners name, charges, bail amount and any other important information.*

## O-35   PRISONER CUSTODY   Cont.   (10/19/16)   Rev.

Q.      If requested by the prisoner a blanket will be given.

R.      Officer will complete Prisoner Check Card (TTP-91 form).

S.      Officer will notify Public Safety Dispatch, Front Desk Officer, and his/her immediate supervisor that a prisoner has been locked up.

T.      Officer will also notify a CIB Supervisor or Detective that a prisoner has been locked up and may require further booking/processing. If CIB personnel are unavailable, the prisoner's paperwork will be placed in the proper cubicle that corresponds to the prisoner's cell at the front desk.

U.      *Female Prisoners:*
   1.      Female prisoners will remain in the Datamaster room with audio and video being recorded, until a female officer or matron arrives and escorts the female prisoner to the female cellblock.

   2.      Female prisoner will not be placed or removed from the cellblock area unless a female officer or matron is present.

   3.      Female officer or matron will supervise female prisoner in cellblock.

   4.      Female officer or matron will retain the key to the female cellblock at all times.

   5.      The recording media of the female prisoner in the Datamaster room  will  be logged into Charms then forwarded to the Service Bureau.

### III.   PARAMEDIC CHECKS OF PRISONERS:

A.      As employees of the Town of Tonawanda Police Department and being authorized by the Town of Tonawanda Police Medical Director, the Town of Tonawanda EMT Paramedics may upon the request of a Police Officer evaluate prisoners to determine the need for medical intervention. The Paramedics will follow the below procedure when checking prisoners:

   1.      History of present illness/complaint

   2.      Physical examination

   3.      Procedures authorized by the Medical Director

   4.      Administration of the prisoner's own medication:

      a.      Determine when the last dose was taken and ensure that the medication is properly delivered as prescribed.

      b.      Medication must be positively identified prior to delivering such medication.

      c.      No medication shall be given to a prisoner unless authorized or prescribed by a physician.

      d.      Medications have to be in the original dispensing container.

   5.      Disposition:
      a.      Remain in custody
      b.      Referral to Healthcare facility

   6.      Obtain online medical direction from the Emergency Medical Unit

B.      The Town of Tonawanda Prisoner Check Encounter form will be used for documentation purposes.

## O-35    PRISONER CUSTODY    Cont.    (10/19/16)    Rev.

IV.    **RECORDING ARRESTS:**

    A.    **POLICY:**

        1.    It shall be the policy of the Town of Tonawanda Police Department to record all subjects arrested and brought to the Datamaster room at headquarters according to the following procedure:

    B.    **PROCEDURE:**

        1.    Complete the label on the media with the information requested and insert it in the recorder. If it is a felony arrest, put an "F" on the label and circle it.

        2.    All recordings have to be entered into Charms.

        3.    Upon completion of a DWI arrest and/or testing procedures remove the media from the recorder and forward it to the Service Bureau.

        4.    DWI and felony recordings will be kept until disposition of the case. Non-DWI/felony recordings will be kept for 100 days. If an officer wishes to have a non-DWI/felony recording held until disposition of the case, write "SAVE" and your badge number in red on the label.

V.    **PRISONER CHECKS:**

    A.    Public Safety Dispatch personnel will physically check on the prisoner every 30 minutes or less.

    B.    When the prisoner is checked, the Public Safety Dispatcher will sign the Prisoner Check Card (TTP-91 form), date and time the check was completed and the status of the prisoner.

    C.    In situations where a prisoner's physical or mental condition obviously warrants it, constant observation and supervision shall be provided.

VI.    **PRISONER MEALS:**

    A.    When possible prisoners will be fed at the following times:

        0900-1000 hours    (Breakfast orders will be called in to Public Safety Dispatch Center by the Criminal Investigation Bureau)
        1300-1400 hours    (Lunch)
        1800-1900 hours    (Dinner)

    B.    Public Safety Dispatch will place the order for the prisoner meal and if the Animal Control Officer is working, he will pick the meal up and deliver it to the prisoner. If the Animal Control Officer is not working, an officer will pick the meal up and deliver it to the prisoner. If Patrol has manpower issues, they can request staff officers or the CIB to deliver the meal from the Front Desk after patrol drops it off. Only under emergency circumstances will dispatchers be used for delivering the meals to the prisoners.

    C.    After the prisoner has been given their meal, the Prisoner Check Card (TTP-91 form), will be signed and will indicate the date and time that the prisoner was fed. File the menu receipt in the Planning Captain's mail drawer.

    D.    When special circumstances arise and a prisoner has special dietary needs, example prisoner requires food immediately for medical reasons, prisoner has dietary laws established by their religion, or medical diet ordered by a physician contact a Patrol Supervisor for arrangements for the prisoner to be fed.

TTPD00033

# O-35    PRISONER CUSTODY    Cont.    (04/03/17)   Rev.

**VII.**   *VISITATION:*

    **A.**   *Prisoners are allowed a visit by the following persons only as per 9 CRR-NY 7510.1NY-CRR*
       1.   *Legal Counsel*
       2.   *Clergy*
       3.   *Immediate family*

    B.   *Explain to the visitor that our visitation facilities are limited to the Datamaster Room and the visit will need to be brief and under two officer's observation.  Before escorting the citizen upstairs, the following procedure shall be followed:*

       1.   *Two officers are required to be present for the visit.*
       2.   *The visitor will leave personal belongings with someone that has accompanied them or they will be secured in a gun lockup in the cell block.  No purses, bags, or other items shall be taken into the Datamaster room.*
       3.   *The visitor must be patted down prior to seeing prisoner. If the visitor has an outer garment such as a coat it shall be removed.  The officers shall be alert to anything that may be secreted on the visitor's person.  The visitor shall also be advised that no weapon or contraband will be allowed on their person.*
       4.   *The dispatch personnel shall be advised of the visit so it can be recorded on the prisoner card.*
       5.   *The visitor can be escorted to the Datamaster room.*
       6.   *Both the cellblock and hallway door must be locked prior to removing the prisoner and remain locked during the visit.*
       7.   *The officers must secure their weapons in the gun locker.*
       8.   *Remove the prisoner from the cellblock and take him to the Datamaster room.  Advise both parties at this time that no physical contact will be tolerated.*
       9.   *The officers can close the door so the visit can be in private.  However, visual contact must be maintained through the window.*
      10.   *When the visit is completed the prisoner will be thoroughly searched and returned to his or her cell.  The visitor will now be escorted back to the front desk.*

**VIII.**   *RELEASE OF PRISONERS:*

    A.   PRISONER PROPERTY INVENTORY:
       1.   *When releasing a prisoner, ensure the prisoner checks his property, counts his money and signs the TTP-57 form. The releasing officer countersigns with date and time. The empty TTP-57 form will be filed in the file drawer at front desk.*
    B.   PRISONER CARDS:
       1.   *When a prisoner is released on bail or personal recognizance, etc., the releasing officer shall see that the prisoner check card (TTP- 91) is brought downstairs from the cellblock area and filed numerically in order, in the file box at the Front Desk, and time of release are noted as well as any follow-up information, such as: "Taken to #10 Delaware, picked up by another Police Department, bailed, etc." Yellow female cards are filed behind male prisoner cards.*

    C.   *Have prisoner clean out the cell and have them place all items in the appropriate can provided.*

    D.   *After the prisoner is released mark the status board under the appropriate space that the cell is dirty, so that the cell can be cleaned.*

    E.   *The person releasing the prisoner will notify the Public Safety Dispatch Center and the Criminal Investigation Bureau.*

**IX.**   *PERSONAL PROPERTY OF PRISONERS BEING TRANSPORTED:*

    A.   *To assist officers in transporting prisoner's personal property to the Erie County Holding Center or any other detention facility, a supply of approved clear plastic bag has been placed in the cell block for that purpose. Any property not fitting into this bag will be forwarded to the Service Bureau along with a CHARMS sticker, signed copy of the Prisoner Property Log and a copy of the police report.*

    B.   *The officer sealing the property bag, and the prisoner, will initial it in the customary place over the sealed flap. The officer will present the bag to the jailer at the Erie County Holding Center, or other detention facility.*

    C.   *Prisoner property turned over to the Service Bureau will be held for a minimum of 30 days. After 30 days, reasonable effort will be made to contact the property owner for retrieval. If attempts to contact the property owner are unsuccessful, or more than 6 months has passed, the property will be disposed of.*

## O-35   PRISONER CUSTODY   Cont.   (06/08/07)   Rev.

**X.**   _SPECIAL CONSIDERATIONS:_

**A.**   _Chemical Agent Projector:_

Any prisoner who has been sprayed with a Chemical Agent Projector shall be evaluated by the paramedics. Anyone that may come in contact with the subject will be notified of the subject's exposure to the Chemical Agent Projector. The officers should make every reasonable effort to relieve the discomfort of the subject. If conditions permit, flush eyes and the sprayed areas with clear water. Do not rub the eyes. Symptoms should disappear after 45 minutes. If they persist, medical attention should be provided.

**B.**   _Suicide Prevention:_

1. Police department personnel involved in the lockup and supervision of arrested persons must be aware that the police lockup setting may have significant emotional consequences for these arrested persons. Viewed from the perspective of the inmate, the lockup setting can promote feelings of helplessness, hopelessness, isolation, fear and shame. These feelings when combined with other factors may make an individual more inclined toward thoughts or actions of suicide.

   Because of this, department personnel must be alert for signs or indicators of increased suicide risk when dealing with incarcerated persons.

2. Arresting officers, booking personnel, processing personnel, and monitoring personnel must be aware of behavior that represents or indicates suicide potential. In general personnel must be aware that:

   Intoxication
   Depression
   Agitation or aggressiveness
   Statements about suicide
   are all signs and symptoms of potential suicide.

3. When preparing to place arrested persons into confinement and during all other contacts with such people during confinement, department personnel should look for evidence or signs of the following behaviors or circumstances:

   a.   Intoxication or alcohol consumption by the prisoner

   b.   Under the influence of other drugs or known drug abuse history of the prisoner

   c.   Apparent despondency by the prisoner indicated by statements or apparent emotional condition

   d.   Statements or actions by prisoner indicating an intent or inclination toward self harm.

   e.   The arrest is the result of some act of violence by the prisoner, especially one emanating from a domestic or personal conflict.

## O-35    PRISONER CUSTODY    Cont.    (06/08/07)    *Rev.*

    f.    Recent loss by the prisoner of a stabilizing relationship such as the loss of a loved one, job, home, business, financial stability, personal relationship, school expulsion, etc.

4.    When any of these behaviors or circumstances exists, special care must be taken as follows:

    a.    Remember that the first 24 hours of incarceration is the most crucial period for suicide by an inmate, which in most cases covers the entire length of time we incarcerate a person.

    b.    Make a note on the prisoner card, in the original police report and on the cell # board that the prisoner requires special monitoring attention.

    c.    Have the prisoner examined by paramedics to eliminate the existence of serious, immediate medical problems.

    e.  Place the prisoner in a cell that is monitored in public safety dispatch by video camera.

5.    When any of these behaviors exist in combination sufficient to create the impression of a high risk that a prisoner might attempt to harm himself, then the following precautions will also be taken:

    a.    Remove any potential instrument of suicide from the prisoner to include clothing and blankets.

    b.    Public Safety Dispatch personnel will make in person checks of the prisoner at least as often as every 15 minutes.

    c.    Make arrangements for any necessary judicial proceedings as soon as possible so that the person can be released or transferred to the holding center as soon as possible.

6.    If at any time it is determined that the prisoner represents a danger to himself beyond this department's ability to protect the prisoner, then a police supervisor and a paramedic will be notified to provide for the transfer of the prisoner to an appropriate mental health facility under Section 9.41 of the Mental Health Law of New York State. During the entire time that these arrangements are being made, the prisoner will be monitored in person and continuously by department personnel. As part of this procedure, the supervisor may arrange for any judicial proceedings or appearance tickets necessary to release the prisoner from custodial confinement. If under these circumstances it is not possible to make arrangements with the court to secure transfer to the holding center or release from custodial confinement, then we are responsible for guarding the prisoner at the mental health facility until such arrangements can be made. In any instance where a prisoner at risk is transferred to the holding center, the transferring officers will communicate the prisoner's condition to the holding center personnel.

## O-35   PRISONER CUSTODY   Cont.   (06/08/07)   Rev.

C.   Incapacitated Prisoners Due to Alcohol or Drugs:

1.   If at any time a prisoner appears to be physically incapacitated due to drug or alcohol intoxication a police supervisor and a paramedic will be notified to provide for the transfer of the prisoner to an appropriate mental health facility under Section 22.09 of the Mental Health Law of New York State.  During the entire time that these arrangements are being made, the prisoner will be monitored in person and continuously by department personnel.  As part of this procedure, the supervisor may arrange for any judicial proceedings or appearance tickets necessary to release the prisoner from custodial confinement.  If under these circumstances it is not possible to make arrangements with the court to secure transfer to the holding center or release from custodial confinement, then we are responsible for guarding the prisoner at the mental health facility until such arrangements can be made.  In any instance where a prisoner at risk is transferred to the holding center, the transferring officers will communicate the prisoner's condition to the holding center personnel.

D.   Medical Facilities:

1.   When a prisoner is transported to a medical facility and is admitted by the attending physician, the officer will immediately notify the supervisor.  The supervisor will, in turn, use the following procedure to ensure control of the prisoner.

a.   Have the prisoner released from police custody, if appropriate.

b.   If the prisoner has to remain in custody, arrangements will be made for the arraignment of the prisoner and then to have prisoner secured at the Sheriff's lockup in the Erie County Medical Center.

c.   The prisoner shall be kept under observation at all times and, normally, restraining devices shall be used. Officers shall consult with medical personnel concerning use of restraining devices until transferred to the Sheriff's custody.

d.   If necessary the supervisor will provide for guarding of the prisoner and will ensure that guards are checked periodically and relieved as necessary.

E.   Violent Prisoners:

1.   If a prisoner is being transported by ambulance and is violent, an officer will ride in the ambulance patient compartment, if necessary. If not, the officer will closely follow the ambulance to the hospital.  Such prisoners will be handcuffed during transport and as necessary at the hospital.

2.   Violent prisoners will remain restrained during all medical and mental health evaluations.  If a medical supervisor or treating physician requires the removal of restraints, the officer will do so only after advising the requesting person of the potential for injury to others.

## O-35   PRISONER CUSTODY   Cont.   (06/08/07)   *Rev.*

F.    *Juvenile Prisoners:*

1.    *Juvenile prisoners will be brought to the Juvenile Bureau through the designated entrance for any questioning.*

G.    *Communicable Diseases:*

1.    *When coming in contact with prisoners known to be, or suspected of being infected with AIDS, Hepatitis B, or any other communicable disease, precautions shall be taken to avoid exposure to the disease. Isolation masks and latex surgical gloves are provided and shall be utilized.*

2.    *If a prisoner is going to spend the night or will be incarcerated for a long period of time a disposable blanket will be issued upon request of the prisoner.*

3.    *If a prisoner's clothing has to be removed, disposable clothing is available in the cell block.*

4.    *Whenever turning a prisoner known or suspected to have a communicable disease over to another agency, this information shall be relayed to the appropriate personnel, following existing legal guidelines, in order to avoid unnecessary exposure to others.*

5.    *Upon release of a prisoner, the cell in which said prisoner was housed will be sealed and remain unused until such time as appropriate decontamination procedures can be carried out.*

## XII.  ESCAPE OF PRISONERS:

A.    *In the event of a prisoner escaping, the transporting officer will:*

1.    *Immediately notify the dispatcher of the description of the escapee and any other pertinent information which will aid in recapture.*

2.    *Notify the Shift Commander*

3.    *File a police report and appropriate criminal charges.*

B.    *The Shift Commander or his designee will:*

1.    *Coordinate a thorough search of the area of escape.*

2.    *Request any necessary additional assistance from other units or outside agencies.*

3.    *Conduct an investigation into the circumstances of the escape.*

C.    *If the escape occurs in another jurisdiction, the transporting officer will immediately notify the law enforcement agency of that jurisdiction and notify his commanding officer as soon as possible. Upon returning to the Town of Tonawanda, the officer will complete the necessary police report documenting the details of the incident.*

## OPERATIONS   200D

# O-35   PRISONER CUSTODY   Cont.   (08/12/2016)   Rev.

## XII. CELLBLOCK PROBLEMS:

A.   Any problems arising with prisoners in the cellblock shall be brought to a supervisor's attention via the Public Safety Dispatcher. These would include such incidents as first aid, damage to cell, flooding the toilets and basin, or throwing food and waste.

B.   There are options available to help alleviate some immediate problems such as separating prisoners, using the holding tank and using the empty female cellblock, turning off the water supply, removal of all prisoners clothing, etc. Police reports shall be made where necessary, especially first aid and criminal mischief.

C.   Any inmate death, injury or illness which requires hospitalization; civil or natural emergency; or disturbance must be reported to the New York State Commission of Correction. The following procedure must be followed. In the event of a death the procedure requires a completed Part I of form "M-187" to be telefaxed to the Commission at (518) 485-2467 within six hours of pronouncement of death. The Commission receives faxed messages 24 hours a day, seven days a week. If an injury or illness which requires hospitalization; civil or natural emergency; or disturbance occurs involving prisoners, a completed form "SCOC-501" must be mailed to the NYS Commission of Correction, 80 Wolf Rd., 4th Floor, Albany, NY 12205 within 24 hours of the incidents occurrence. It will be the responsibility of the duty commander to see that this notification is accomplished.

## XIII. EMERGENCY RESTRAINT CHAIR (ERC)

A.   The ERC is to be used for prisoners who are exhibiting violent, combative or self destructive behavior. A prisoner damaging or tampering with utilities or monitoring equipment within a cell in such a way that it compromises their safety, or our ability to properly monitor them would also justify the use of the ERC.

B.   The ERC is not to be used as a form of punishment.

C.   If a prisoner meets any of the aforementioned criteria and the ERC is put into use, it must be used in the manner that was instructed during training. Consideration should be given to enacting a 9.41 MHL commitment at this point if appropriate.

D.   Upon placing a prisoner into or removing a prisoner from the ERC, notifications are to be made to Communications and a Patrol Supervisor. Notations should also be made on the prisoner card to indicate that the person was placed into/removed from the chair and at what time. If there is no police report written, one is to be completed and include the above information. If a report already exists, a supplement is to be completed.

E.   Prisoners will be under constant observation when placed into the ERC.

F.   A prisoner cannot be held in the ERC for a period longer than two hours without being removed and allowed to move around. This is to avoid complications related to circulation and cramping. If the prisoner continues to meet the criteria listed in paragraph "A" after a two hour period has expired, consideration should again be given to enacting a 9.41 MHL commitment.

G.   If a prisoner placed in the ERC no longer exhibits the behavior listed in paragraph "A", he/she may be released from the ERC and placed into a cell.

H.   Use of the ERC would qualify as a disturbance and is therefore a reportable incident under Correction Law. The shift commander or other designated personnel should complete the Reportable Incident form (SCOC-501).

I.   A copy of the Reportable Incident Form, Police Report, Use of Force Report, and Prisoner Card should be forwarded to the Assistant Chief, Commander of the Records Bureau, and the Commander of the Service Bureau. One of the aforementioned persons will fax, or submit via the ejustice portal, all necessary paperwork/information to the Commission of Corrections (1-518-485-2467).

*Revised*

## O-37   USE OF FORCE – Cont.   (06/25/20)   *Rev.*

B.   Deadly physical force may be used to stop a fleeing suspect where:

1.   The officer has probable cause to believe the suspect has committed a felony involving the infliction or threat of serious physical injury or death; and,

2.   The officer reasonably believes that the suspect poses an imminent threat of serious physical injury to the officer or others.

3.   Where feasible, some warning should be given prior to the use of deadly physical force.

VIII.   Prohibited Use of Force

A.   Force shall not be used by an officer for the following reasons:

1.   To extract an item from the body or a cavity of a subject without a warrant, except where exigent circumstances are present;

2.   To coerce a confession from a subject in custody;

3.   To obtain blood, saliva, urine, or other bodily fluid or cells, from an individual for the purposes of scientific testing in lieu of a court order where required;

4.   Against persons who are handcuffed or restrained unless it is used to prevent injury, escape, or otherwise overcome active or passive resistance posed by the subject.

B.   Deadly force shall not be used against persons whose actions are a threat only to themselves or property.

C.   Firearms shall not be discharged at a moving vehicle except in the following exigent circumstances:

1.   A person in the vehicle is threatening the officer or another person with deadly force other than the vehicle; or

2.   The vehicle is operated in a manner deliberately intended to strike an officer or another person, and all other reasonable means of defense have been exhausted (or are not present or practical), which includes moving out of the path of the vehicle.

D.   Firearms shall not be discharged from a moving vehicle except in exigent circumstances. In these situations, an officer must have an articulable reason for this use of deadly force.

E.   A police officer is not permitted to carry or use authorized weapons unless qualified in their use as per department standard unless exigent circumstance exists.

*New "F"*

F.   The use of a chokehold or similar restraint that applies pressure to the throat or windpipe of a person in a manner that may hinder breathing or reduce intake of air is prohibited, except in those situations where the use of deadly physical force is authorized.

*renumbered*

G.   If an exigent circumstance exists that poses an imminent threat to the safety of the officers or the public requiring the immediate use of an improvised weapon of opportunity, the officer may use the weapon. In such circumstances, the use of an improvised device or method must be objectively reasonable and utilized only to the degree reasonably necessary to accomplish a legitimate law enforcement purpose.

H.   Warning shots are prohibited.

TTPD00040

*Revised*

## O-37    USE OF FORCE – Cont.    (06/25/20)   Rev.

IX.    *Reporting and Reviewing the Use of Force*

*Revised*

Any member of this department who discharges his or her weapon while on or off duty under circumstances wherein a person could be struck by a bullet from the weapon, including situations wherein such officer discharges his or her weapon in the direction of a person, shall verbally report the incident to a supervisor within six (6) hours of the occurrence of the incident and shall prepare and file a written report of the incident within forty-eight (48) hours of the occurrence of the incident. Nothing contained in this section shall prevent any officer from invoking his or her constitutional right to avoid self-incrimination.

Any use of force by a member of this department other than the discharge of a weapon shall be reported as soon as practicable to their supervisor.

All uses of force will be documented promptly on a standardized use of force report form (TTP 47).

A.    Any injuries resulting from a use of force incident shall result in the appropriate and timely medical attention being provided to the injured party.

B.    The officer should articulate the factors perceived and why he/she believed the use of force was objectively reasonable under the circumstances. To collect data for purposes of training, resource allocation, analysis and related purposes, the Department may require the completion of additional report forms, as specified in department policy, procedure or law.

C.    The officer will report anything of evidentiary value pertaining to the use of force.

X.    *Procedures for Investigating Use of Force Incidents*

A.    A supervisor should respond to the scene to begin the preliminary force investigation.

B.    A supervisor that is made aware of a force incident shall ensure the completion of a use of force report by all officers engaging in the use of force and should document all officers present at the time the      force or alleged force was used.

C.    Photographs should be taken which sufficiently document any injuries or lack thereof to officers or suspects.

D.    Any and all reports related to the use of force shall be forwarded through the proper chain of command. The Captain of the platoon or bureau that the officer using force reports to will review the supervisor's report and conduct an investigation if appropriate. Officers using force that does not adhere to the use of force guidelines will have their actions addressed in accordance with the protocols set forth in the Town of Tonawanda Policies and Procedures manual.

E.    The Chief of Police, or his designee, will ensure ALL use of force incidents are recorded on the agency's use of force tracking spreadsheet.

F.    The Chief of Police, or his designee, will ensure use of force incidents, which meet the parameters, are reported to the Department of Criminal Justice Services (DCJS) through the method of reporting established by DCJS.

G.    For purposes of this section, a supervisor shall be defined as an officer holding the official rank of Lieutenant or above.

XI.    *Training*

A.    All officers will receive training and demonstrate their understanding on the proper application of force.

B.    Training topics will include use of force, conflict prevention, conflict resolution and negotiation and de-escalation techniques and strategies to include interacting with persons presenting in an agitated condition as well as duty to intervene and prohibited conduct.

XII.    *Policy Accessible By The Public*

A.    This policy will be conspicuously displayed on the Town of Tonawanda Police Department's website.

TTPD00041

# TOWN OF TONAWANDA
# POLICE DEPARTMENT

*Original*



**GENERAL**        **ORDER**

---

*O-37*     *USE OF FORCE – Cont.*     (10/29/19)    *Rev.*

    B.     *Deadly physical force may be used to stop a fleeing suspect where:*

          1.    *The officer has probable cause to believe the suspect has committed a felony involving the infliction or threat of serious physical injury or death; and,*

          2.    *The officer reasonably believes that the suspect poses an imminent threat of serious physical injury to the officer or others.*

          3.    *Where feasible, some warning should be given prior to the use of deadly physical force.*

VIII.   *Prohibited Use of Force*

    A.     *Force shall not be used by an officer for the following reasons:*

          1.    *To extract an item from the body or a cavity of a subject without a warrant, except where exigent circumstances are present;*

          2.    *To coerce a confession from a subject in custody;*

          3.    *To obtain blood, saliva, urine, or other bodily fluid or cells, from an individual for the purposes of scientific testing in lieu of a court order where required;*

          4.    *Against persons who are handcuffed or restrained unless it is used to prevent injury, escape, or otherwise overcome active or passive resistance posed by the subject.*

    B.     *Deadly force shall not be used against persons whose actions are a threat only to themselves or property.*

    C.     *Firearms shall not be discharged at a moving vehicle except in the following exigent circumstances:*

          1.    *A person in the vehicle is threatening the officer or another person with deadly force other than the vehicle; or*

          2.    *The vehicle is operated in a manner deliberately intended to strike an officer or another person, and all other reasonable means of defense have been exhausted (or are not present or practical), which includes moving out of the path of the vehicle.*

    D.     *Firearms shall not be discharged from a moving vehicle except in exigent circumstances. In these situations, an officer must have an articulable reason for this use of deadly force.*

    E.     *A police officer is not permitted to carry or use authorized weapons unless qualified in their use as per department standard unless exigent circumstance exists.*

    F.     *If an exigent circumstance exists that poses an imminent threat to the safety of the officers or the public requiring the immediate use of an improvised weapon of opportunity, the officer may use the weapon. In such circumstances, the use of an improvised device or method must be objectively reasonable and utilized only to the degree reasonably necessary to accomplish a legitimate law enforcement purpose.*

    G.     *Warning shots are prohibited.*

TTPD00042

# TOWN OF TONAWANDA
# POLICE DEPARTMENT

**GENERAL**  **ORDER** *Original*

---

## O-37   USE OF FORCE – Cont.   (10/29/19)   *Rev.*

**IX.**   *Reporting and Reviewing the Use of Force*
Any use of force by a member of this department shall be reported as soon as practicable to their supervisor and documented promptly on a standardized Use of Force Form (TTP 47).

    **A.**   Any injuries resulting from a use of force incident shall result in the appropriate and timely medical attention being provided to the injured party.

    **B.**   The officer should articulate the factors perceived and why he/she believed the use of force was objectively reasonable under the circumstances. To collect data for purposes of training, resource allocation, analysis and related purposes, the Department may require the completion of additional report forms, as specified in department policy, procedure or law.

    **C.**   The officer will report anything of evidentiary value pertaining to the use of force.

**X.**   *Procedures for Investigating Use of Force Incidents*

    **A.**   A supervisor should respond to the scene to begin the preliminary force investigation.

    **B.**   A supervisor that is made aware of a force incident shall ensure the completion of a use of force report by all officers engaging in the use of force and should document all officers present at the time the force or alleged force was used.

    **C.**   Photographs should be taken which sufficiently document any injuries or lack thereof to officers or suspects.

    **D.**   Any and all reports related to the use of force shall be forwarded through the proper chain of command. The Captain of the platoon or bureau that the officer using force reports to will review the supervisor's report and conduct an investigation if appropriate. Officers using force that does not adhere to the use of force guidelines will have their actions addressed in accordance with the protocols set forth in the Town of Tonawanda Policies and Procedures manual.

    **E.**   The Chief of Police, or his designee, will ensure ALL use of force incidents are recorded on the agency's use of force tracking spreadsheet.

    **F.**   The Chief of Police, or his designee, will ensure use of force incidents, which meet the parameters, are reported to the Department of Criminal Justice Services (DCJS) through the method of reporting established by DCJS.

    **G.**   For purposes of this section, a supervisor shall be defined as an officer holding the official rank of Lieutenant or above.

**XI.**   *Training*

    **A.**   All officers will receive training and demonstrate their understanding on the proper application of force.

    **B.**   Training topics will include use of force, conflict prevention, conflict resolution and negotiation and de-escalation techniques and strategies to include interacting with persons presenting in an agitated condition as well as duty to intervene and prohibited conduct.

**XII.**   *Policy Accessible By The Public*

    **A.**   This policy will be conspicuously displayed on the Town of Tonawanda Police Department's website.

TTPD00043

*1sec  F(  l*
*Rew  te,*

## O-37    USE OF FORCE    (10/01/20)   Rev.

I.    **Purpose**
The purpose of this policy is to provide Town of Tonawanda Law Enforcement Officers with guidelines for the use of physical and deadly physical force.

This policy is not intended to endorse or prohibit any particular tactic, technique, or method of employing force. Separate policy guidance and training should be provided for each of the available force instrumentalities made available to officers.

II.    **Policy**
It is the policy of the Town of Tonawanda Police Department to value and preserve human life. Officers shall use only the force that is objectively reasonable to effectively bring an incident under control, while protecting the safety of the officers and others. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer at the scene, rather than with the 20/20 vision of hindsight… the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting them." (Graham v. Connor, 490 U.S. 386 (1989))

This policy is written in recognition of the value of all human life and dignity without prejudice to anyone. Vesting officers with the authority to use reasonable force and to protect the public welfare requires a careful balancing of all interests.

III.    **Definitions**

A. *Objectively Reasonable* - An objective standard used to judge an officer's actions. Under this standard, a particular application of force must be judged through the perspective of a reasonable officer facing the same set of circumstances, without the benefit of 20/20 hindsight, and be based on the totality of the facts that are known to that officer at the time that the force was used.

B. *Physical Force* - Any use of force other than that which is considered deadly force that involves physical effort to control, restrain, or overcome the resistance of another, prevent the escape of a person from custody, or in defense of one's self or another.

C. *Deadly Physical Force* - Physical force which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury.

D. *Physical Injury* - Impairment of physical condition or substantial pain.

E. *Serious Physical Injury* - Physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ.

F. *De-escalation* - Taking action or communicating verbally or non-verbally during a potential force encounter in an attempt to stabilize the situation and reduce the immediacy of the threat so that more time, options, and resources can be called upon to resolve the situation without the use of force or with a reduction in the force necessary. De-escalation may include the use of such techniques as command presence, advisements, warnings, verbal persuasion and tactical repositioning.

G. *Exigent Circumstance* - Those circumstances that would cause a reasonable person to believe that a particular action is necessary to prevent physical harm to an individual, the destruction of relevant evidence, the escape of a suspect, or some other consequence improperly frustrating legitimate law enforcement efforts.

TTPD00044

## O-37   USE OF FORCE - Cont.   (10/01/20)   Rev.

**IV.   Use of Force**

    A.    *In general terms, force is authorized to be used when necessary to effect a lawful arrest or detention, prevent the escape of a person from custody, or in defense of one's self or another.*

    B.    *Under the 4th Amendment, a police officer may only use such force as is "objectively reasonable" under the circumstances. The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene.*

**V.   Determining the Objective Reasonableness of Force**

    A.    *When used, force should be only that which is reasonable and necessary given the circumstances perceived by the officer at the time of the event.*

    B.    *Factors that should be used in determining the reasonableness of force include, but are not limited to:*

        1.  *The severity of the crime or circumstance;*

        2.  *The level and immediacy of threat or resistance posed by the suspect;*

        3.  *The potential for injury to citizens, officers and suspects;*

        4.  *The risk or attempt of the suspect to escape;*

        5.  *The knowledge, training and experience of the officer;*

        6.  *Officer/Subject considerations such as age, size, relative strength, skill level, injury or exhaustion, and the number of officers or subjects present;*

        7.  *The effects of drugs and/or alcohol on a subject;*

        8.  *The mental state or capacity of a subject;*

        9.  *Other environmental conditions or exigent circumstances.*

**VI.   Duty to Intervene**

    A.    *Any officer present and observing another officer using force that he/she reasonably believes to be clearly beyond that which is objectively reasonable under the circumstances shall intercede to prevent the use of unreasonable force, if and when the officer has a realistic opportunity to prevent harm.*

    B.    *An officer who observes another officer use force that exceeds the degree of force as described in subdivision A of this section should promptly report these observations to a supervisor.*

**VII.   Use of Deadly Physical Force**

    A.    *Deadly physical force may be used by an officer to protect themselves or another person from what the officer reasonably believes is an imminent threat of serious physical injury or death.*

TTPD00045

*O-37*   *USE OF FORCE – Cont.*   *(10/01/20)*   **Rev.**

B.   *Deadly physical force may be used to stop a fleeing suspect where:*

1.   *The officer has probable cause to believe the suspect has committed a felony involving the infliction or threat of serious physical injury or death; and,*

2.   *The officer reasonably believes that the suspect poses an imminent threat of serious physical injury to the officer or others.*

3.   *Where feasible, some warning should be given prior to the use of deadly physical force.*

VIII.   **Prohibited Use of Force**

A.   *Force shall not be used by an officer for the following reasons:*

1.   *To extract an item from the body or a cavity of a subject without a warrant, except where exigent circumstances are present;*

2.   *To coerce a confession from a subject in custody;*

3.   *To obtain blood, saliva, urine, or other bodily fluid or cells, from an individual for the purposes of scientific testing in lieu of a court order where required;*

4.   *Against persons who are handcuffed or restrained unless it is used to prevent injury, escape, or otherwise overcome active or passive resistance posed by the subject.*

B.   *Deadly force shall not be used against persons whose actions are a threat only to themselves or property.*

C.   *Firearms shall not be discharged at a moving vehicle except in the following exigent circumstances:*

1.   *A person in the vehicle is threatening the officer or another person with deadly force other than the vehicle; or*

2.   *The vehicle is operated in a manner deliberately intended to strike an officer or another person, and all other reasonable means of defense have been exhausted (or are not present or practical), which includes moving out of the path of the vehicle.*

D.   *Firearms shall not be discharged from a moving vehicle except in exigent circumstances. In these situations, an officer must have an articulable reason for this use of deadly force.*

E.   *A police officer is not permitted to carry or use authorized weapons unless qualified in their use as per department standard unless exigent circumstance exists.*

F.   *The use of a chokehold or similar restraint that applies pressure to the throat, windpipe, neck or blocking the mouth or nose of a person in a manner that may hinder breathing or reduce intake of air or obstruct blood circulation is prohibited, except in those situations where the use of deadly physical force is authorized.*

G.   *If an exigent circumstance exists that poses an imminent threat to the safety of the officers or the public requiring the immediate use of an improvised weapon of opportunity, the officer may use the weapon. In such circumstances, the use of an improvised device or method must be objectively reasonable and utilized only to the degree reasonably necessary to accomplish a legitimate law enforcement purpose.*

H.   *Warning shots are prohibited.*

TTPD00046

## O-37   USE OF FORCE - Cont.   (10/01/20)   Rev.

IX.   **Reporting and Reviewing the Use of Force**

Any member of this department who discharges his or her weapon while on or off duty under circumstances wherein a person could be struck by a bullet from the weapon, including situations wherein such officer discharges his or her weapon in the direction of a person, shall verbally report the incident to a supervisor within six (6) hours of the occurrence of the incident and shall prepare and file a written report of the incident within forty-eight (48) hours of the occurrence of the incident. Nothing contained in this section shall prevent any officer from invoking his or her constitutional right to avoid self-incrimination.

Any use of force by a member of this department other than the discharge of a weapon shall be reported as soon as practicable to their supervisor.

All uses of force will be documented promptly on a standardized use of force report form (TTP 47).

A.   A police officer who has custody of a person must provide attention to the medical and mental health needs of that person and obtain assistance and treatment of such needs, which are reasonable and provided in good faith.

1.   Any injuries resulting from a use of force incident shall result in the appropriate and timely medical attention being provided to the injured party.

2.   The immediate mental health needs of a person shall be based upon the reasonable cause to believe that a person, who appears to be mentally ill, is conducting themselves in a manner which is likely to result in a serious harm to themselves or others.

B.   The officer should articulate the factors perceived and why he/she believed the use of force was objectively reasonable under the circumstances. To collect data for purposes of training, resource allocation, analysis and related purposes, the Department may require the completion of additional report forms, as specified in department policy, procedure, or law.

C.   The officer will report anything of evidentiary value pertaining to the use of force. Officers should document any requests for necessary medical or mental health treatment as well as efforts of police to arrange for such treatment.

D.   For purposes of the section, a supervisor shall be defined as an officer holding the official rank of Lieutenant or above.

X.   **Procedures for Investigating Use of Force Incidents**

A.   A supervisor should respond to the scene to begin the preliminary force investigation.

B.   A supervisor that is made aware of a force incident shall ensure the completion of a use of force report by all officers engaging in the use of force and should document all officers present at the time the force or alleged force was used.

C.   Photographs should be taken which sufficiently document any injuries or lack thereof to officers or suspects.

D.   Any and all reports related to the use of force shall be forwarded through the proper chain of command. The Captain of the bureau that the officer using force reports to will review the supervisor's report and conduct an investigation if appropriate. Officers using force that does not adhere to the use of force guidelines will have their actions addressed in accordance with the protocols set forth in the Town of Tonawanda Policies and Procedures manual.

E.   The Chief of Police, or his designee, will ensure ALL use of force incidents are recorded on the agency's use of force tracking spreadsheet.

F.   The Chief of Police, or his designee, will ensure use of force incidents, which meet the parameters, are reported to the Department of Criminal Justice Services (DCJS) through the method of reporting established by DCJS.

TTPD00047

## _O-37   USE OF FORCE - Cont._   *(10/01/20)*   **Rev.**

    G.    *For purposes of this section, a supervisor shall be defined as an officer holding the official rank of Lieutenant or above.*

XI.    **_Training_**

    A.    *All officers will receive training and demonstrate their understanding on the proper application of force.*

    B.    *Training topics will include use of force, conflict prevention, conflict resolution and negotiation and de-escalation techniques and strategies to include interacting with persons presenting in an agitated condition as well as duty to intervene and prohibited conduct.*

XII.    **_Policy Accessible By The Public_**

    A.    *This policy will be conspicuously displayed on the Town of Tonawanda Police Department's website.*

TTPD00048

**FILED: ERIE COUNTY CLERK 04/20/2022 03:41 PM**

NYSCEF DOC. NO. 17

INDEX NO. 808523/2021

RECEIVED NYSCEF: 04/20/2022

Case 1:23-cv-00419-WMS-MJR    Document 1-15    Filed 05/11/23    Page 212 of 271

# TOWN OF TONAWANDA
# POLICE DEPARTMENT

*Original*



## GENERAL          ORDER

---

### O-37    USE OF FORCE    *(10/29/19)*    Rev.

I. <u>Purpose</u>
The purpose of this policy is to provide Town of Tonawanda Law Enforcement Officers with guidelines for the use of physical and deadly physical force.

This policy is not intended to endorse or prohibit any particular tactic, technique, or method of employing force. Separate policy guidance and training should be provided for each of the available force instrumentalities made available to officers.

II. <u>Policy</u>
It is the policy of the Town of Tonawanda Police Department to value and preserve human life. Officers shall use only the force that is objectively reasonable to effectively bring an incident under control, while protecting the safety of the officer and others: "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer at the scene, rather than with the 20/20 vision of hindsight…the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." (Graham v. Connor, 490 U.S. 386 (1989))

This policy is written in recognition of the value of all human life and dignity without prejudice to anyone. Vesting officers with the authority to use reasonable force and to protect the public welfare requires a careful balancing of all interests.

III. <u>Definitions</u>

A. <u>Objectively Reasonable</u> - An objective standard used to judge an officer's actions. Under this standard a particular application of force must be judged through the perspective of a reasonable officer facing the same set of circumstances, without the benefit of 20/20 hindsight, and be based on the totality of the facts that are known to that officer at the time that the force was used.

B. <u>Physical Force</u> - Any use of force other than that which is considered deadly force that involves physical effort to control, restrain, or overcome the resistance of another, prevent the escape of a person from custody, or in defense of one's self or another.

C. <u>Deadly Physical Force</u> - Physical force which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury.

D. <u>Physical Injury</u> - Impairment of physical condition or substantial pain.

E. <u>Serious Physical Injury</u> - Physical Injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ.

F. <u>De-escalation</u> - Taking action or communicating verbally or non-verbally during a potential force encounter in an attempt to stabilize the situation and reduce the immediacy of the threat so that more time, options, and resources can be called upon to resolve the situation without the use of force or with a reduction in the force necessary. De-escalation may include the use of such techniques as command presence; advisements, warnings, verbal persuasion, and tactical repositioning.

G. <u>Exigent Circumstances</u> - Those circumstances that would cause a reasonable person to believe that a particular action is necessary to prevent physical harm to an individual, the destruction of relevant evidence, the escape of a suspect, or some other consequence improperly frustrating legitimate law enforcement efforts.

TTPD00049

# TOWN OF TONAWANDA
# POLICE DEPARTMENT

**GENERAL**  **ORDER**

---

### *O-37    USE OF FORCE - Cont.*    (10/29/19)    Rev.

IV.  *Use of Force*

    A.  *In general terms, force is authorized to be used when necessary to effect a lawful arrest or detention, prevent the escape of a person from custody, or in defense of one's self or another.*

    B.  *Under the 4th Amendment, a police officer may only use such force as is "objectively reasonable" under the circumstances. The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene.*

V.  *Determining the Objective Reasonableness of Force*

    A.  *When used, force should be only that which is reasonable and necessary given the circumstances perceived by the officer at the time of the event.*

    B.  *Factors that should be used in determining the reasonableness of force include, but are not limited to:*

        1.  *The severity of the crime or circumstance;*

        2.  *The level and immediacy of threat or resistance posed by the suspect;*

        3.  *The potential for injury to citizens, officers and suspects;*

        4.  *The risk or attempt of the suspect to escape;*

        5.  *The knowledge, training, and experience of the officer;*

        6.  *Officer/subject considerations such as age, size, relative strength, skill level, injury or exhaustion, and the number of officers or subjects present;*

        7.  *The effects of drugs and/or alcohol on a subject;*

        8.  *The mental state or capacity of a subject;*

        9.  *Other environmental conditions or exigent circumstances.*

VI.  *Duty to Intervene*

    A.  *Any officer present and observing another officer using force that he/she reasonably believes to be clearly beyond that which is objectively reasonable under the circumstances shall intercede to prevent the use of unreasonable force, if and when the officer has a realistic opportunity to prevent harm.*

    B.  *An officer who observes another officer use force that exceeds the degree of force as described in subdivision A of this section should promptly report these observations to a supervisor.*

VII.  *Use of Deadly Physical Force*

    A.  *Deadly physical force may be used by an officer to protect themselves or another person from what the officer reasonably believes is an imminent threat of serious physical injury or death.*

TTPD00050

# TOWN OF TONAWANDA
# POLICE DEPARTMENT



## O-37   USE OF FORCE - Cont.   *(06/25/20)   Rev.*

**B.**   *Deadly physical force may be used to stop a fleeing suspect where:*

    *1.*   *The officer has probable cause to believe the suspect has committed a felony involving the infliction or threat of serious physical injury or death; and,*

    *2.*   *The officer reasonably believes that the suspect poses an imminent threat of serious physical injury to the officer or others.*

    *3.*   *Where feasible, some warning should be given prior to the use of deadly physical force.*

**VIII.   *Prohibited Use of Force***

**A.**   *Force shall not be used by an officer for the following reasons:*

    *1.*   *To extract an item from the body or a cavity of a subject without a warrant, except where exigent circumstances are present;*

    *2.*   *To coerce a confession from a subject in custody;*

    *3.*   *To obtain blood, saliva, urine, or other bodily fluid or cells, from an individual for the purposes of scientific testing in lieu of a court order where required;*

    *4.*   *Against persons who are handcuffed or restrained unless it is used to prevent injury, escape, or otherwise overcome active or passive resistance posed by the subject.*

**B.**   *Deadly force shall not be used against persons whose actions are a threat only to themselves or property.*

**C.**   *Firearms shall not be discharged at a moving vehicle except in the following exigent circumstances:*

    *1.*   *A person in the vehicle is threatening the officer or another person with deadly force other than the vehicle; or*

    *2.*   *The vehicle is operated in a manner deliberately intended to strike an officer or another person, and all other reasonable means of defense have been exhausted (or are not present or practical), which includes moving out of the path of the vehicle.*

**D.**   *Firearms shall not be discharged from a moving vehicle except in exigent circumstances. In these situations, an officer must have an articulable reason for this use of deadly force.*

**E.**   *A police officer is not permitted to carry or use authorized weapons unless qualified in their use as per department standard unless exigent circumstance exists.*

**F.**   *The use of a chokehold or similar restraint that applies pressure to the throat or windpipe of a person in a manner that may hinder breathing or reduce intake of air is prohibited, except in those situations where the use of deadly physical force is authorized.*

**G.**   *If an exigent circumstance exists that poses an imminent threat to the safety of the officers or the public requiring the immediate use of an improvised weapon of opportunity, the officer may use the weapon. In such circumstances, the use of an improvised device or method must be objectively reasonable and utilized only to the degree reasonably necessary to accomplish a legitimate law enforcement purpose.*

**H.**   *Warning shots are prohibited.*

TTPD00051

# TOWN OF TONAWANDA
# POLICE DEPARTMENT



---

## O-37   USE OF FORCE - Cont.   *(06/25/20)*   *Rev.*

IX.   *Reporting and Reviewing the Use of Force*
*Any member of this department who discharges his or her weapon while on or off duty under circumstances wherein a person could be struck by a bullet from the weapon, including situations wherein such officer discharges his or her weapon in the direction of a person, shall verbally report the incident to a supervisor within six (6) hours of the occurrence of the incident and shall prepare and file a written report of the incident within forty-eight (48) hours of the occurrence of the incident. Nothing contained in this section shall prevent any officer from invoking his or her constitutional right to avoid self-incrimination.*

*Any use of force by a member of this department other than the discharge of a weapon shall be reported as soon as practicable to their supervisor.*

*All uses of force will be documented promptly on a standardized use of force report form (TTP 47).*

A.   *Any injuries resulting from a use of force incident shall result in the appropriate and timely medical attention being provided to the injured party.*

B.   *The officer should articulate the factors perceived and why he/she believed the use of force was objectively reasonable under the circumstances. To collect data for purposes of training, resource allocation, analysis and related purposes, the Department may require the completion of additional report forms, as specified in department policy, procedure or law.*

C.   *The officer will report anything of evidentiary value pertaining to the use of force.*

X.   *Procedures for Investigating Use of Force Incidents*
A.   *A supervisor should respond to the scene to begin the preliminary force investigation.*

B.   *A supervisor that is made aware of a force incident shall ensure the completion of a use of force report by all officers engaging in the use of force and should document all officers present at the time the      force or alleged force was used.*

C.   *Photographs should be taken which sufficiently document any injuries or lack thereof to officers or suspects.*

D.   *Any and all reports related to the use of force shall be forwarded through the proper chain of command. The Captain of the platoon or bureau that the officer using force reports to will review the supervisor's report and conduct an investigation if appropriate. Officers using force that does not adhere to the use of force guidelines will have their actions addressed in accordance with the protocols set forth in the Town of Tonawanda Policies and Procedures manual.*

E.   *The Chief of Police, or his designee, will ensure ALL use of force incidents are recorded on the agency's use of force tracking spreadsheet.*

F.   *The Chief of Police, or his designee, will ensure use of force incidents, which meet the parameters, are reported to the Department of Criminal Justice Services (DCJS) through the method of reporting established by DCJS.*

G.   *For purposes of this section, a supervisor shall be defined as an officer holding the official rank of Lieutenant or above.*

XI.   *Training*
A.   *All officers will receive training and demonstrate their understanding on the proper application of force.*

B.   *Training topics will include use of force, conflict prevention, conflict resolution and negotiation and de-escalation techniques and strategies to include interacting with persons presenting in an agitated condition as well as duty to intervene and prohibited conduct.*

XII.   *Policy Accessible By The Public*
A.   *This policy will be conspicuously displayed on the Town of Tonawanda Police Department's website.*

TTPD00052

FILED: ERIE COUNTY CLERK 04/20/2022 03:41 PM
NYSCEF DOC. NO. 17

INDEX NO. 808523/2021
RECEIVED NYSCEF: 04/20/2022

# Town of Tonawanda
## Complaint List



**Date Range: 07/30/2017 - 08/30/2020**

**Report Date:  9/29/2021**

| Complaint | Date | | Call Type | Address |
|---|---|---|---|---|
| 17-730322 | 07/30/2017 | 02:57:15 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-730441 | 07/31/2017 | 01:40:20 | 5099 - DISTURBANCE OTHER | 535 KENMORE AV |
| 17-730462 | 07/31/2017 | 03:29:34 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-730470 | 07/31/2017 | 04:43:05 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-730756 | 08/02/2017 | 01:58:45 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-730773 | 08/02/2017 | 04:06:41 | 3464 - SUSPICIOUS PERSON | 535 KENMORE AV |
| 17-730885 | 08/03/2017 | 01:24:02 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-731044 | 08/04/2017 | 01:12:02 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-731206 | 08/05/2017 | 03:21:26 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-731342 | 08/06/2017 | 01:38:20 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-731462 | 08/07/2017 | 01:18:01 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-731480 | 08/07/2017 | 02:58:15 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-731555 | 08/07/2017 | 16:28:28 | 3099 - TRAFFIC INFRACTION - OTHER | 447 KENMORE AV |
| 17-731790 | 08/09/2017 | 08:33:51 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-731850 | 08/09/2017 | 17:09:43 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-731862 | 08/09/2017 | 18:42:18 | 3002 - RECKLESS OPERATION | 535 KENMORE AV |
| 17-731868 | 08/09/2017 | 19:28:43 | 2708 - FALSE ALARM - BUSINESS - HUMAN ERR | 447 KENMORE AV |
| 17-731892 | 08/09/2017 | 23:15:26 | 1201 - UNWELCOME GUEST | 535 KENMORE AV |
| 17-731902 | 08/10/2017 | 02:22:23 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-732065 | 08/11/2017 | 02:49:23 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-732114 | 08/11/2017 | 11:51:41 | 3099 - TRAFFIC INFRACTION - OTHER | 487 KENMORE AV |
| 17-732214 | 08/12/2017 | 03:10:17 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-732274 | 08/12/2017 | 16:25:56 | 3099 - TRAFFIC INFRACTION - OTHER | 559 KENMORE AV |
| 17-732306 | 08/12/2017 | 21:47:26 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-732347 | 08/13/2017 | 04:49:12 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-732477 | 08/14/2017 | 06:54:48 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-732611 | 08/15/2017 | 02:40:00 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-732787 | 08/16/2017 | 04:13:21 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-732953 | 08/17/2017 | 08:14:09 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-733052 | 08/18/2017 | 00:41:57 | 1606 - LARCENY-BICYCLES | 535 KENMORE AV |
| 17-733230 | 08/19/2017 | 04:44:57 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-733246 | 08/19/2017 | 08:48:04 | 4504 - EMS | 535 KENMORE AV |
| 17-733260 | 08/19/2017 | 10:27:43 | 3099 - TRAFFIC INFRACTION - OTHER | 429 KENMORE AV |
| 17-733343 | 08/20/2017 | 01:23:55 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-733391 | 08/20/2017 | 11:13:37 | 4902 - ACCIDENT INJURY | 535 KENMORE AV |
| 17-733477 | 08/21/2017 | 01:18:43 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-733488 | 08/21/2017 | 02:40:58 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-733630 | 08/22/2017 | 01:12:43 | 4803 - PREMISES CHECK | 535 KENMORE AV |

**1**

INDEX NO. 808523/2021
RECEIVED NYSCEF: 04/20/2022

| Complaint | Date | | Call Type | Address |
|-----------|------|---|-----------|---------|
| 17-733664 | 08/22/2017 | 05:37:52 | 3464 - SUSPICIOUS PERSON | 535 KENMORE AV |
| 17-733689 | 08/22/2017 | 10:40:19 | 3099 - TRAFFIC INFRACTION - OTHER | 583 KENMORE AV |
| 17-733808 | 08/23/2017 | 04:52:50 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-733931 | 08/24/2017 | 02:06:02 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-734078 | 08/25/2017 | 06:18:25 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-734119 | 08/25/2017 | 12:42:16 | 1010 - REPOSSESSED AUTO | 487 KENMORE AV |
| 17-734211 | 08/26/2017 | 03:18:24 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-734248 | 08/26/2017 | 10:46:23 | 1000 - UUV | 535 KENMORE AV |
| 17-734363 | 08/27/2017 | 05:06:29 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-734372 | 08/27/2017 | 07:00:29 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-734497 | 08/28/2017 | 04:13:08 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-734517 | 08/28/2017 | 08:47:52 | 1902 - CRIMINAL MISCHIEF | 487 KENMORE AV |
| 17-734564 | 08/28/2017 | 15:34:57 | 5099 - DISTURBANCE OTHER | 535 KENMORE AV |
| 17-734610 | 08/28/2017 | 23:18:39 | 5007 - CUSTOMER TROUBLE | 535 KENMORE AV |
| 17-734633 | 08/29/2017 | 03:04:48 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-734645 | 08/29/2017 | 04:06:50 | 4803 - PREMISES CHECK | 487 KENMORE AV |
| 17-734756 | 08/30/2017 | 00:57:30 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-734764 | 08/30/2017 | 01:28:03 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-734941 | 08/31/2017 | 06:56:02 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-735036 | 08/31/2017 | 19:03:03 | 3099 - TRAFFIC INFRACTION - OTHER | 501 KENMORE AV |
| 17-735174 | 09/01/2017 | 16:43:35 | 3099 - TRAFFIC INFRACTION - OTHER | 401 KENMORE AV |
| 17-735193 | 09/01/2017 | 19:12:01 | 3099 - TRAFFIC INFRACTION - OTHER | 401 KENMORE AV |
| 17-735222 | 09/02/2017 | 02:10:37 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-735237 | 09/02/2017 | 04:06:11 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-735290 | 09/02/2017 | 14:40:22 | 2708 - FALSE ALARM - BUSINESS - HUMAN ERR | 447 KENMORE AV |
| 17-735369 | 09/03/2017 | 04:06:02 | 4508 - ASSIST PERSON | 535 KENMORE AV |
| 17-735494 | 09/04/2017 | 03:51:56 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-735501 | 09/04/2017 | 04:16:15 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-735559 | 09/04/2017 | 14:17:04 | 4803 - PREMISES CHECK | 447 KENMORE AV |
| 17-735583 | 09/04/2017 | 17:51:02 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 17-735587 | 09/04/2017 | 18:49:20 | 3099 - TRAFFIC INFRACTION - OTHER | 563 KENMORE AV |
| 17-735591 | 09/04/2017 | 19:05:37 | 3099 - TRAFFIC INFRACTION - OTHER | 465 KENMORE AV |
| 17-735620 | 09/05/2017 | 00:42:15 | 4803 - PREMISES CHECK | 447 KENMORE AV |
| 17-735787 | 09/06/2017 | 01:20:51 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-735885 | 09/06/2017 | 17:08:38 | 3099 - TRAFFIC INFRACTION - OTHER | 589 KENMORE AV |
| 17-735931 | 09/07/2017 | 01:12:55 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-735939 | 09/07/2017 | 02:34:49 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-736046 | 09/07/2017 | 18:16:13 | 3099 - TRAFFIC INFRACTION - OTHER | 583 KENMORE AV |
| 17-736107 | 09/08/2017 | 03:06:05 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-736272 | 09/09/2017 | 04:10:28 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-736333 | 09/09/2017 | 18:44:16 | 3099 - TRAFFIC INFRACTION - OTHER | 501 KENMORE AV |
| 17-736399 | 09/10/2017 | 03:44:11 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-736433 | 09/10/2017 | 14:39:44 | 3438 - HARASSMENT | 535 KENMORE AV |
| 17-736490 | 09/11/2017 | 00:37:40 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-736652 | 09/12/2017 | 00:59:23 | 4803 - PREMISES CHECK | 535 KENMORE AV |

TTPD00054

| Complaint | Date | | Call Type | Address |
|-----------|------|---|-----------|---------|
| 17-736795 | 09/13/2017 | 01:12:39 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-736967 | 09/14/2017 | 03:06:17 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-737041 | 09/14/2017 | 17:29:14 | 3099 - TRAFFIC INFRACTION - OTHER | 429 KENMORE AV |
| 17-737053 | 09/14/2017 | 18:13:35 | 4514 - CHECK WELFARE | 535 KENMORE AV |
| 17-737121 | 09/15/2017 | 04:50:55 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-737239 | 09/16/2017 | 00:14:20 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-737271 | 09/16/2017 | 03:24:30 | 1902 - CRIMINAL MISCHIEF | 535 KENMORE AV |
| 17-737303 | 09/16/2017 | 09:34:56 | 3099 - TRAFFIC INFRACTION - OTHER | 487 KENMORE AV |
| 17-737404 | 09/17/2017 | 02:49:42 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-737415 | 09/17/2017 | 05:34:56 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-737525 | 09/18/2017 | 03:56:27 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-737536 | 09/18/2017 | 06:48:50 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-737650 | 09/19/2017 | 01:34:53 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-737663 | 09/19/2017 | 02:56:21 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-737788 | 09/20/2017 | 00:08:17 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-738150 | 09/22/2017 | 02:14:41 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-738166 | 09/22/2017 | 04:00:02 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-738466 | 09/24/2017 | 03:56:58 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-738588 | 09/25/2017 | 02:06:18 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-738721 | 09/26/2017 | 00:12:22 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-738744 | 09/26/2017 | 03:23:13 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-738839 | 09/26/2017 | 17:53:25 | 3107 - DRUGS-OTHER | 535 KENMORE AV |
| 17-738907 | 09/27/2017 | 02:48:09 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-739018 | 09/27/2017 | 22:22:14 | 3099 - TRAFFIC INFRACTION - OTHER | 429 KENMORE AV |
| 17-739048 | 09/28/2017 | 01:35:26 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-739050 | 09/28/2017 | 01:40:29 | 3004 - SPEEDING | 487 KENMORE AV |
| 17-739253 | 09/29/2017 | 11:54:28 | 4508 - ASSIST PERSON | 487 KENMORE AV |
| 17-739305 | 09/29/2017 | 22:37:59 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-739317 | 09/30/2017 | 00:49:54 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-739320 | 09/30/2017 | 01:01:51 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-739570 | 10/02/2017 | 01:42:38 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-739581 | 10/02/2017 | 02:29:07 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-739615 | 10/02/2017 | 08:05:48 | 2700 - FALSE ALARM (NOT FIRE) | 535 KENMORE AV |
| 17-739880 | 10/04/2017 | 00:37:01 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-739917 | 10/04/2017 | 07:01:08 | 5007 - CUSTOMER TROUBLE | 535 KENMORE AV |
| 17-740027 | 10/05/2017 | 01:14:15 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-740088 | 10/05/2017 | 12:25:54 | 2708 - FALSE ALARM - BUSINESS - HUMAN ERR | 447 KENMORE AV |
| 17-740252 | 10/06/2017 | 17:07:09 | 4514 - CHECK WELFARE | 447 KENMORE AV |
| 17-740323 | 10/07/2017 | 02:52:54 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-740417 | 10/07/2017 | 21:49:29 | 3099 - TRAFFIC INFRACTION - OTHER | 559 KENMORE AV |
| 17-740443 | 10/08/2017 | 01:59:50 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-740574 | 10/09/2017 | 03:32:39 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-740667 | 10/09/2017 | 18:18:22 | 3009 - PARKING VIOLATION / COMPLAINT | 535 KENMORE AV |
| 17-740717 | 10/10/2017 | 01:39:45 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-740733 | 10/10/2017 | 02:56:42 | 4803 - PREMISES CHECK | 535 KENMORE AV |

**3**

| Complaint | Date | | Call Type | Address |
|---|---|---|---|---|
| 17-740823 | 10/10/2017 | 17:02:55 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 17-740895 | 10/11/2017 | 05:01:48 | 4000 - MENTAL / COMMITMENT | 535 KENMORE AV |
| 17-741027 | 10/12/2017 | 03:30:07 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-741130 | 10/13/2017 | 00:57:40 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-741271 | 10/14/2017 | 01:45:03 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-741431 | 10/15/2017 | 04:28:42 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-741556 | 10/16/2017 | 02:00:20 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-741558 | 10/16/2017 | 02:16:30 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-741571 | 10/16/2017 | 03:49:22 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-741714 | 10/17/2017 | 01:36:09 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-741892 | 10/18/2017 | 02:06:23 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-742006 | 10/18/2017 | 20:06:47 | 3099 - TRAFFIC INFRACTION - OTHER | 447 KENMORE AV |
| 17-742029 | 10/19/2017 | 01:14:14 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-742045 | 10/19/2017 | 02:12:36 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-742141 | 10/19/2017 | 19:54:10 | 2706 - FALSE ALARM - UNINTENTIONAL | 401 KENMORE AV |
| 17-742170 | 10/20/2017 | 02:25:33 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-742346 | 10/21/2017 | 04:11:59 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-742407 | 10/21/2017 | 13:40:00 | 1200 - TRESPASS | 535 KENMORE AV |
| 17-742472 | 10/22/2017 | 00:38:16 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-742611 | 10/23/2017 | 02:48:03 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-742704 | 10/23/2017 | 18:53:02 | 2705 - FALSE ALARM - MALFUNCTION | 501 KENMORE AV |
| 17-742760 | 10/24/2017 | 04:40:19 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-742861 | 10/25/2017 | 00:54:09 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-743007 | 10/26/2017 | 03:30:42 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-743117 | 10/26/2017 | 19:52:23 | 3099 - TRAFFIC INFRACTION - OTHER | 487 KENMORE AV |
| 17-743275 | 10/28/2017 | 00:33:04 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-743348 | 10/28/2017 | 16:22:35 | 2708 - FALSE ALARM - BUSINESS - HUMAN ERR | 465 KENMORE AV |
| 17-743519 | 10/30/2017 | 01:34:31 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-743561 | 10/30/2017 | 11:22:52 | 3099 - TRAFFIC INFRACTION - OTHER | 417 KENMORE AV |
| 17-743625 | 10/31/2017 | 02:06:31 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-743741 | 11/01/2017 | 00:22:39 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-743749 | 11/01/2017 | 00:58:53 | 5007 - CUSTOMER TROUBLE | 535 KENMORE AV |
| 17-743908 | 11/02/2017 | 01:21:02 | 3099 - TRAFFIC INFRACTION - OTHER | 417 KENMORE AV |
| 17-743915 | 11/02/2017 | 02:00:08 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-743964 | 11/02/2017 | 10:54:34 | 3099 - TRAFFIC INFRACTION - OTHER | 447 KENMORE AV |
| 17-744045 | 11/03/2017 | 01:14:42 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-744186 | 11/04/2017 | 01:18:56 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-744309 | 11/05/2017 | 00:15:15 | 5007 - CUSTOMER TROUBLE | 535 KENMORE AV |
| 17-744382 | 11/05/2017 | 16:29:15 | 4501 - ASSIST OTHER POLICE | 535 KENMORE AV |
| 17-744431 | 11/06/2017 | 01:15:35 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-744540 | 11/06/2017 | 17:17:15 | 4504 - EMS | 535 KENMORE AV |
| 17-744557 | 11/06/2017 | 19:39:21 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-744596 | 11/07/2017 | 01:24:51 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-744602 | 11/07/2017 | 01:47:09 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-744741 | 11/08/2017 | 00:31:12 | 4803 - PREMISES CHECK | 535 KENMORE AV |

TTPD00056

| Complaint | Date | | Call Type | Address |
|---|---|---|---|---|
| 17-744763 | 11/08/2017 | 02:59:50 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-744896 | 11/09/2017 | 00:26:52 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-745022 | 11/09/2017 | 22:43:42 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-745063 | 11/10/2017 | 03:38:19 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-745181 | 11/11/2017 | 01:33:16 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-745419 | 11/13/2017 | 00:49:05 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-745584 | 11/14/2017 | 02:23:23 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-745722 | 11/15/2017 | 00:56:05 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-745851 | 11/15/2017 | 22:35:49 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-745888 | 11/16/2017 | 03:36:31 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-746006 | 11/16/2017 | 22:17:27 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-746020 | 11/17/2017 | 00:53:16 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-746033 | 11/17/2017 | 01:29:32 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-746230 | 11/18/2017 | 11:19:53 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-746247 | 11/18/2017 | 14:48:40 | 5007 - CUSTOMER TROUBLE | 535 KENMORE AV |
| 17-746269 | 11/18/2017 | 19:04:01 | 4802 - ALARM ACTIVATED / ALARM RINGING | 447 KENMORE AV |
| 17-746314 | 11/19/2017 | 01:47:43 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-746323 | 11/19/2017 | 02:18:45 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-746450 | 11/20/2017 | 02:47:42 | 3099 - TRAFFIC INFRACTION - OTHER | 465 KENMORE AV |
| 17-746454 | 11/20/2017 | 03:06:38 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-746595 | 11/20/2017 | 22:36:35 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-746629 | 11/21/2017 | 02:49:04 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-746643 | 11/21/2017 | 04:04:09 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-746778 | 11/22/2017 | 01:18:24 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-746886 | 11/23/2017 | 01:21:00 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-746964 | 11/24/2017 | 01:29:03 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-746985 | 11/24/2017 | 03:48:00 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-747016 | 11/24/2017 | 13:15:42 | 3099 - TRAFFIC INFRACTION - OTHER | 447 KENMORE AV |
| 17-747082 | 11/25/2017 | 00:19:10 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-747186 | 11/25/2017 | 19:07:47 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-747230 | 11/26/2017 | 02:16:07 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-747242 | 11/26/2017 | 04:40:24 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-747323 | 11/26/2017 | 21:38:20 | 3099 - TRAFFIC INFRACTION - OTHER | 429 KENMORE AV |
| 17-747364 | 11/27/2017 | 02:27:20 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-747519 | 11/28/2017 | 05:10:02 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-747622 | 11/28/2017 | 20:30:54 | 5007 - CUSTOMER TROUBLE | 535 KENMORE AV |
| 17-747658 | 11/29/2017 | 03:22:52 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-747787 | 11/30/2017 | 02:12:02 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-747795 | 11/30/2017 | 03:48:59 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-747897 | 12/01/2017 | 01:46:17 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-747909 | 12/01/2017 | 02:52:15 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-748073 | 12/02/2017 | 02:40:03 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-748112 | 12/02/2017 | 10:48:11 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 17-748223 | 12/03/2017 | 04:06:46 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-748369 | 12/04/2017 | 05:12:43 | 4803 - PREMISES CHECK | 535 KENMORE AV |

TTPD00057

| Complaint | Date | | Call Type | Address |
|-----------|------|-----|-----------|---------|
| 17-748473 | 12/04/2017 | 21:59:00 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-748503 | 12/05/2017 | 01:36:56 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-748560 | 12/05/2017 | 15:14:28 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-748579 | 12/05/2017 | 17:52:15 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-748625 | 12/06/2017 | 01:45:03 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-748744 | 12/07/2017 | 01:38:03 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-748762 | 12/07/2017 | 03:37:13 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-748794 | 12/07/2017 | 09:54:30 | 3099 - TRAFFIC INFRACTION - OTHER | 447 KENMORE AV |
| 17-748812 | 12/07/2017 | 12:04:30 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-748832 | 12/07/2017 | 15:36:02 | 3099 - TRAFFIC INFRACTION - OTHER | 487 KENMORE AV |
| 17-748840 | 12/07/2017 | 16:31:13 | 4504 - EMS | 535 KENMORE AV |
| 17-748848 | 12/07/2017 | 19:05:58 | 3099 - TRAFFIC INFRACTION - OTHER | 417 KENMORE AV |
| 17-748875 | 12/08/2017 | 00:46:49 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-748979 | 12/08/2017 | 20:11:47 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-749036 | 12/09/2017 | 03:52:37 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-749108 | 12/09/2017 | 16:42:39 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 17-749183 | 12/10/2017 | 03:36:03 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-749285 | 12/11/2017 | 01:41:06 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-749336 | 12/11/2017 | 11:45:55 | 4901 - ACCIDENT PDO | 401 KENMORE AV |
| 17-749404 | 12/12/2017 | 00:50:18 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 17-749547 | 12/13/2017 | 02:07:45 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-749566 | 12/13/2017 | 04:46:04 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-749712 | 12/14/2017 | 03:25:37 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-749851 | 12/15/2017 | 03:40:05 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-749860 | 12/15/2017 | 05:25:11 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-749992 | 12/16/2017 | 01:56:33 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-750161 | 12/17/2017 | 01:32:01 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-750257 | 12/18/2017 | 01:08:57 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-750281 | 12/18/2017 | 04:56:08 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-750596 | 12/20/2017 | 03:14:46 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-750619 | 12/20/2017 | 07:14:12 | 2708 - FALSE ALARM - BUSINESS - HUMAN ERR | 465 KENMORE AV |
| 17-750731 | 12/21/2017 | 00:59:36 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-750875 | 12/22/2017 | 00:45:54 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-750895 | 12/22/2017 | 03:11:41 | 4508 - ASSIST PERSON | 535 KENMORE AV |
| 17-751030 | 12/23/2017 | 04:58:59 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-751131 | 12/24/2017 | 01:40:01 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-751248 | 12/25/2017 | 04:42:39 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-751333 | 12/26/2017 | 00:40:29 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-751335 | 12/26/2017 | 01:37:31 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-751507 | 12/27/2017 | 04:03:25 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-751793 | 12/29/2017 | 01:58:56 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-752055 | 12/31/2017 | 02:09:31 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-752071 | 12/31/2017 | 04:55:07 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 17-752094 | 12/31/2017 | 09:36:55 | 3099 - TRAFFIC INFRACTION - OTHER | 487 KENMORE AV |
| 17-752108 | 12/31/2017 | 11:43:15 | 3099 - TRAFFIC INFRACTION - OTHER | 583 KENMORE AV |

TTPD00058

| Complaint | Date | | Call Type | Address |
|-----------|------|---|-----------|---------|
| 18-800287 | 01/02/2018 | 22:06:43 | 3099 - TRAFFIC INFRACTION - OTHER | 447 KENMORE AV |
| 18-800310 | 01/03/2018 | 01:21:58 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-800332 | 01/03/2018 | 03:44:36 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-800362 | 01/03/2018 | 11:25:32 | 1701 - ROBBERY ARMED | 447 KENMORE AV |
| 18-800410 | 01/03/2018 | 17:43:16 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-800490 | 01/04/2018 | 03:35:26 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-800633 | 01/05/2018 | 00:12:54 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-800667 | 01/05/2018 | 03:20:40 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-800816 | 01/06/2018 | 02:30:37 | 5102 - PROPERTY FOUND | 535 KENMORE AV |
| 18-800856 | 01/06/2018 | 09:57:01 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-801069 | 01/07/2018 | 21:42:21 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-801076 | 01/07/2018 | 22:29:47 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-801083 | 01/08/2018 | 00:09:12 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-801118 | 01/08/2018 | 02:05:19 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-801133 | 01/08/2018 | 03:22:27 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-801271 | 01/08/2018 | 23:12:31 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-801275 | 01/09/2018 | 00:35:52 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-801287 | 01/09/2018 | 01:30:51 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-801320 | 01/09/2018 | 03:54:22 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-801361 | 01/09/2018 | 09:44:20 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-801371 | 01/09/2018 | 10:32:56 | 4803 - PREMISES CHECK | 447 KENMORE AV |
| 18-801480 | 01/10/2018 | 00:58:28 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-801482 | 01/10/2018 | 01:09:01 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-801543 | 01/10/2018 | 09:20:44 | 3099 - TRAFFIC INFRACTION - OTHER | 559 KENMORE AV |
| 18-801646 | 01/10/2018 | 23:30:35 | 4508 - ASSIST PERSON | 535 KENMORE AV |
| 18-801662 | 01/11/2018 | 01:12:22 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-801669 | 01/11/2018 | 01:49:38 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-801820 | 01/12/2018 | 00:57:26 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-802096 | 01/14/2018 | 01:39:47 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-802118 | 01/14/2018 | 04:14:03 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-802147 | 01/14/2018 | 09:15:14 | 4508 - ASSIST PERSON | 535 KENMORE AV |
| 18-802269 | 01/15/2018 | 03:22:06 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-802274 | 01/15/2018 | 03:48:20 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-802424 | 01/16/2018 | 01:46:24 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-802427 | 01/16/2018 | 02:03:59 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-802429 | 01/16/2018 | 02:13:21 | 3099 - TRAFFIC INFRACTION - OTHER | 417 KENMORE AV |
| 18-802444 | 01/16/2018 | 05:25:20 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-802499 | 01/16/2018 | 13:12:14 | 4504 - EMS | 535 KENMORE AV |
| 18-802570 | 01/17/2018 | 01:36:28 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-802922 | 01/19/2018 | 04:25:16 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-803235 | 01/21/2018 | 02:10:14 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-803269 | 01/21/2018 | 10:50:09 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-803336 | 01/21/2018 | 23:05:40 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-803352 | 01/22/2018 | 00:36:25 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-803361 | 01/22/2018 | 01:02:44 | 4803 - PREMISES CHECK | 535 KENMORE AV |

**7**

| Complaint | Date | | Call Type | Address |
|-----------|------|-|-----------|---------|
| 18-803392 | 01/22/2018 | 04:08:34 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-803398 | 01/22/2018 | 05:15:18 | 3099 - TRAFFIC INFRACTION - OTHER | 465 KENMORE AV |
| 18-803697 | 01/24/2018 | 00:53:19 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-803831 | 01/25/2018 | 01:47:35 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-803845 | 01/25/2018 | 03:14:12 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-803977 | 01/26/2018 | 00:55:48 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-803981 | 01/26/2018 | 01:07:16 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-804126 | 01/27/2018 | 01:33:57 | 3099 - TRAFFIC INFRACTION - OTHER | 447 KENMORE AV |
| 18-804128 | 01/27/2018 | 01:43:58 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-804157 | 01/27/2018 | 04:23:24 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-804276 | 01/28/2018 | 00:52:31 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-804409 | 01/29/2018 | 00:52:41 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-804424 | 01/29/2018 | 01:58:58 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-804524 | 01/29/2018 | 16:20:33 | 3099 - TRAFFIC INFRACTION - OTHER | 487 KENMORE AV |
| 18-804582 | 01/30/2018 | 02:08:40 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-804609 | 01/30/2018 | 04:34:03 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-804713 | 01/30/2018 | 22:24:18 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-804738 | 01/31/2018 | 00:48:02 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-804888 | 02/01/2018 | 00:11:29 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-804912 | 02/01/2018 | 02:39:43 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-805007 | 02/01/2018 | 21:45:08 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-805027 | 02/02/2018 | 00:58:29 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-805065 | 02/02/2018 | 04:59:15 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-805090 | 02/02/2018 | 09:58:15 | 3099 - TRAFFIC INFRACTION - OTHER | 447 KENMORE AV |
| 18-805216 | 02/03/2018 | 06:49:52 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-805305 | 02/04/2018 | 00:26:40 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-805340 | 02/04/2018 | 02:39:31 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-805445 | 02/05/2018 | 01:59:01 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-805591 | 02/06/2018 | 01:41:48 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-805885 | 02/08/2018 | 00:21:34 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-805894 | 02/08/2018 | 00:57:24 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-806104 | 02/09/2018 | 04:59:30 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-806505 | 02/12/2018 | 04:24:30 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-806619 | 02/12/2018 | 20:47:31 | 2708 - FALSE ALARM - BUSINESS - HUMAN ERR | 465 KENMORE AV |
| 18-806650 | 02/13/2018 | 01:35:52 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-806792 | 02/13/2018 | 22:09:03 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-806804 | 02/14/2018 | 00:22:20 | 3464 - SUSPICIOUS PERSON | 535 KENMORE AV |
| 18-806806 | 02/14/2018 | 00:25:17 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-806812 | 02/14/2018 | 01:05:16 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-806820 | 02/14/2018 | 01:49:44 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-807140 | 02/16/2018 | 00:23:27 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-807153 | 02/16/2018 | 00:56:16 | 3099 - TRAFFIC INFRACTION - OTHER | 593 KENMORE AV |
| 18-807215 | 02/16/2018 | 10:55:02 | 4803 - PREMISES CHECK | 447 KENMORE AV |
| 18-807337 | 02/17/2018 | 06:21:16 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-807516 | 02/18/2018 | 10:21:18 | 3099 - TRAFFIC INFRACTION - OTHER | 435 KENMORE AV |

TTPD00060

| Complaint | Date | | Call Type | Address |
|-----------|------|--|-----------|---------|
| 18-807586 | 02/18/2018 | 23:03:27 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-807638 | 02/19/2018 | 02:57:52 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-807649 | 02/19/2018 | 05:17:25 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-807700 | 02/19/2018 | 13:46:29 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-807767 | 02/20/2018 | 00:40:03 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-807868 | 02/20/2018 | 15:18:34 | 3099 - TRAFFIC INFRACTION - OTHER | 593 KENMORE AV |
| 18-807891 | 02/20/2018 | 17:55:30 | 3099 - TRAFFIC INFRACTION - OTHER | 583 KENMORE AV |
| 18-807928 | 02/21/2018 | 00:21:48 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-808064 | 02/22/2018 | 02:09:04 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-808078 | 02/22/2018 | 03:01:05 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-808234 | 02/23/2018 | 09:06:48 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 18-808253 | 02/23/2018 | 11:43:59 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 18-808301 | 02/23/2018 | 19:50:56 | 2703 - FALSE ALARM - ROBBERY | 535 KENMORE AV |
| 18-808362 | 02/24/2018 | 03:48:56 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-808477 | 02/24/2018 | 22:34:26 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-808495 | 02/25/2018 | 01:08:56 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-808627 | 02/25/2018 | 22:23:23 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-808662 | 02/26/2018 | 02:36:25 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-808663 | 02/26/2018 | 02:36:46 | 4814 - COMMUNITY POLICING | 535 KENMORE AV |
| 18-808801 | 02/27/2018 | 00:50:48 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-808836 | 02/27/2018 | 06:35:51 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-808867 | 02/27/2018 | 11:05:41 | 3099 - TRAFFIC INFRACTION - OTHER | 465 KENMORE AV |
| 18-808880 | 02/27/2018 | 12:56:50 | 2702 - FALSE ALARM - BURGLARY | 535 KENMORE AV |
| 18-809092 | 03/01/2018 | 00:42:56 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-809215 | 03/01/2018 | 21:28:05 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-809285 | 03/02/2018 | 10:39:34 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-809352 | 03/02/2018 | 21:54:39 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-809378 | 03/03/2018 | 01:30:04 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-809400 | 03/03/2018 | 03:34:01 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-809435 | 03/03/2018 | 10:40:03 | 3468 - UNKNOWN TROUBLE | 571 KENMORE AV |
| 18-809520 | 03/04/2018 | 01:38:08 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 18-809521 | 03/04/2018 | 01:38:22 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-809531 | 03/04/2018 | 02:06:13 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-809652 | 03/05/2018 | 03:10:45 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-809791 | 03/06/2018 | 01:44:35 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-809946 | 03/07/2018 | 01:11:46 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-809977 | 03/07/2018 | 04:33:12 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-810022 | 03/07/2018 | 12:03:53 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-810109 | 03/08/2018 | 00:37:09 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-810223 | 03/08/2018 | 17:52:11 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-810302 | 03/09/2018 | 06:14:20 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-810396 | 03/10/2018 | 01:18:35 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-810522 | 03/11/2018 | 00:33:58 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-810644 | 03/11/2018 | 22:21:49 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-810687 | 03/12/2018 | 02:27:52 | 4803 - PREMISES CHECK | 535 KENMORE AV |

TTPD00061

| Complaint | Date | | Call Type | Address |
|-----------|------|------|-----------|---------|
| 18-810819 | 03/13/2018 | 02:28:17 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-810868 | 03/13/2018 | 10:49:08 | 4803 - PREMISES CHECK | 447 KENMORE AV |
| 18-810960 | 03/14/2018 | 01:57:39 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-810986 | 03/14/2018 | 08:15:14 | 2702 - FALSE ALARM - BURGLARY | 465 KENMORE AV |
| 18-811086 | 03/15/2018 | 00:52:39 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-811116 | 03/15/2018 | 03:49:15 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-811134 | 03/15/2018 | 06:04:19 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-811260 | 03/16/2018 | 03:30:40 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-811276 | 03/16/2018 | 05:03:30 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-811384 | 03/17/2018 | 02:20:47 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-811514 | 03/18/2018 | 00:58:29 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-811648 | 03/19/2018 | 03:16:21 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-811755 | 03/20/2018 | 00:26:29 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-811912 | 03/21/2018 | 00:57:52 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-811947 | 03/21/2018 | 04:15:48 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-812104 | 03/22/2018 | 04:11:54 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-812224 | 03/23/2018 | 00:50:47 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-812252 | 03/23/2018 | 04:41:18 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-812360 | 03/24/2018 | 00:49:02 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-812404 | 03/24/2018 | 10:05:07 | 3099 - TRAFFIC INFRACTION - OTHER | 583 KENMORE AV |
| 18-812513 | 03/25/2018 | 03:36:47 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-812643 | 03/26/2018 | 01:51:28 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-812663 | 03/26/2018 | 02:57:32 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-812740 | 03/26/2018 | 15:14:23 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-812769 | 03/26/2018 | 18:55:26 | 3099 - TRAFFIC INFRACTION - OTHER | 501 KENMORE AV |
| 18-812775 | 03/26/2018 | 20:32:03 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-812810 | 03/27/2018 | 01:46:11 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-812953 | 03/28/2018 | 01:02:39 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-812975 | 03/28/2018 | 03:01:39 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-812983 | 03/28/2018 | 03:24:34 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-812990 | 03/28/2018 | 03:54:14 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-813120 | 03/29/2018 | 01:47:46 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-813134 | 03/29/2018 | 03:47:58 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-813282 | 03/30/2018 | 01:39:55 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-813289 | 03/30/2018 | 01:59:35 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-813364 | 03/30/2018 | 14:48:55 | 1611 - LARCENY - SHOPLIFTING | 535 KENMORE AV |
| 18-813436 | 03/31/2018 | 02:43:07 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-813462 | 03/31/2018 | 05:16:35 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-813465 | 03/31/2018 | 05:44:25 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-813469 | 03/31/2018 | 06:34:55 | 2705 - FALSE ALARM - MALFUNCTION | 447 KENMORE AV |
| 18-813519 | 03/31/2018 | 18:47:25 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-813542 | 04/01/2018 | 00:39:38 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-813556 | 04/01/2018 | 01:42:42 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-813580 | 04/01/2018 | 03:44:12 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-813675 | 04/02/2018 | 00:38:21 | 4803 - PREMISES CHECK | 535 KENMORE AV |

TTPD00062

| Complaint | Date | | Call Type | Address |
|-----------|------|---|-----------|---------|
| 18-813696 | 04/02/2018 | 02:09:19 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-813808 | 04/02/2018 | 19:21:18 | 3099 - TRAFFIC INFRACTION - OTHER | 501 KENMORE AV |
| 18-813855 | 04/03/2018 | 01:20:42 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-813898 | 04/03/2018 | 05:53:00 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-813948 | 04/03/2018 | 15:19:05 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-814006 | 04/04/2018 | 00:39:16 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-814027 | 04/04/2018 | 02:10:09 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-814204 | 04/05/2018 | 00:52:29 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-814226 | 04/05/2018 | 03:24:56 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-814259 | 04/05/2018 | 11:18:48 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-814260 | 04/05/2018 | 11:51:07 | 3099 - TRAFFIC INFRACTION - OTHER | 563 KENMORE AV |
| 18-814292 | 04/05/2018 | 17:01:41 | 3099 - TRAFFIC INFRACTION - OTHER | 465 KENMORE AV |
| 18-814307 | 04/05/2018 | 19:18:13 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 18-814348 | 04/06/2018 | 01:38:25 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-814359 | 04/06/2018 | 02:52:17 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-814508 | 04/07/2018 | 02:56:33 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-814531 | 04/07/2018 | 08:51:14 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-814643 | 04/08/2018 | 03:28:38 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-814767 | 04/09/2018 | 03:12:02 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-814828 | 04/09/2018 | 13:07:59 | 4504 - EMS | 501 KENMORE AV |
| 18-814891 | 04/10/2018 | 01:01:51 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-815117 | 04/11/2018 | 12:42:04 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-815188 | 04/12/2018 | 01:44:22 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-815199 | 04/12/2018 | 03:20:18 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-815325 | 04/13/2018 | 00:50:20 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-815357 | 04/13/2018 | 04:02:28 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-815506 | 04/14/2018 | 05:13:46 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-815628 | 04/15/2018 | 02:30:01 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-815725 | 04/16/2018 | 00:53:10 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-815748 | 04/16/2018 | 01:40:36 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-815883 | 04/17/2018 | 01:15:45 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-816009 | 04/18/2018 | 00:47:05 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-816102 | 04/18/2018 | 11:52:53 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-816176 | 04/18/2018 | 22:16:03 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 18-816216 | 04/19/2018 | 03:57:54 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-816227 | 04/19/2018 | 04:38:23 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-816255 | 04/19/2018 | 09:25:16 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-816356 | 04/20/2018 | 02:38:45 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-816389 | 04/20/2018 | 06:22:46 | 5099 - DISTURBANCE OTHER | 535 KENMORE AV |
| 18-816505 | 04/21/2018 | 00:23:02 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-816669 | 04/22/2018 | 02:54:59 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-816676 | 04/22/2018 | 03:19:12 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-816765 | 04/22/2018 | 21:32:16 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-816769 | 04/22/2018 | 21:39:14 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-816827 | 04/23/2018 | 03:03:48 | 4803 - PREMISES CHECK | 535 KENMORE AV |

TTPD00063

| Complaint | Date | | Call Type | Address |
|-----------|------|---|-----------|---------|
| 18-816851 | 04/23/2018 | 08:44:28 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-816914 | 04/23/2018 | 16:22:09 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 18-816983 | 04/24/2018 | 01:34:17 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-817042 | 04/24/2018 | 11:00:31 | 4514 - CHECK WELFARE | 465 KENMORE AV |
| 18-817066 | 04/24/2018 | 14:22:34 | 3799 - ANIMAL COMPLAINT-OTHER | 417 KENMORE AV |
| 18-817181 | 04/25/2018 | 02:23:26 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-817459 | 04/27/2018 | 00:59:37 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-817483 | 04/27/2018 | 02:22:05 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-817629 | 04/28/2018 | 03:03:44 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-817663 | 04/28/2018 | 09:15:18 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-817748 | 04/28/2018 | 22:49:22 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-817762 | 04/29/2018 | 00:44:20 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-817777 | 04/29/2018 | 02:48:11 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-818072 | 05/01/2018 | 04:12:05 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-818104 | 05/01/2018 | 09:49:22 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-818225 | 05/02/2018 | 01:57:16 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-818240 | 05/02/2018 | 03:21:33 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-818406 | 05/03/2018 | 03:31:10 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-818569 | 05/04/2018 | 03:02:05 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-818610 | 05/04/2018 | 11:18:40 | 4508 - ASSIST PERSON | 535 KENMORE AV |
| 18-818679 | 05/04/2018 | 20:26:09 | 3099 - TRAFFIC INFRACTION - OTHER | 465 KENMORE AV |
| 18-818885 | 05/06/2018 | 02:31:00 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-818917 | 05/06/2018 | 09:26:44 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-818922 | 05/06/2018 | 10:34:23 | 3099 - TRAFFIC INFRACTION - OTHER | 501 KENMORE AV |
| 18-818941 | 05/06/2018 | 14:38:33 | 3099 - TRAFFIC INFRACTION - OTHER | 429 KENMORE AV |
| 18-818971 | 05/06/2018 | 21:37:38 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-819000 | 05/07/2018 | 00:44:05 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-819152 | 05/07/2018 | 23:07:04 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-819161 | 05/08/2018 | 01:02:21 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-819192 | 05/08/2018 | 03:05:40 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-819527 | 05/10/2018 | 02:12:53 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-819630 | 05/10/2018 | 18:50:06 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 18-819669 | 05/11/2018 | 00:19:26 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-819820 | 05/11/2018 | 22:34:24 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-819832 | 05/12/2018 | 00:27:48 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-819960 | 05/12/2018 | 22:38:51 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-820014 | 05/13/2018 | 04:34:45 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-820073 | 05/13/2018 | 14:21:02 | 3099 - TRAFFIC INFRACTION - OTHER | 447 KENMORE AV |
| 18-820129 | 05/14/2018 | 00:19:40 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-820342 | 05/15/2018 | 09:03:57 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-820444 | 05/15/2018 | 23:23:50 | 5007 - CUSTOMER TROUBLE | 535 KENMORE AV |
| 18-820491 | 05/16/2018 | 04:10:12 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-820826 | 05/18/2018 | 03:11:54 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-820837 | 05/18/2018 | 04:27:33 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-820878 | 05/18/2018 | 11:04:34 | 4803 - PREMISES CHECK | 535 KENMORE AV |

TTPD00064

| Complaint | Date | | Call Type | Address |
|-----------|------|---|-----------|---------|
| 18-821116 | 05/20/2018 | 01:22:14 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-821272 | 05/21/2018 | 01:45:29 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-821422 | 05/22/2018 | 01:14:52 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-821494 | 05/22/2018 | 13:56:06 | 3463 - FIGHT | 535 KENMORE AV |
| 18-821501 | 05/22/2018 | 14:32:17 | 4508 - ASSIST PERSON | 447 KENMORE AV |
| 18-821605 | 05/23/2018 | 05:23:46 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-821704 | 05/23/2018 | 18:57:59 | 3099 - TRAFFIC INFRACTION - OTHER | 447 KENMORE AV |
| 18-821771 | 05/24/2018 | 03:40:27 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-821813 | 05/24/2018 | 10:16:14 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-821925 | 05/25/2018 | 01:57:43 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-822113 | 05/26/2018 | 03:09:40 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-822234 | 05/27/2018 | 01:05:36 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-822247 | 05/27/2018 | 01:53:04 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-822413 | 05/28/2018 | 03:09:58 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-822533 | 05/28/2018 | 23:27:29 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-822556 | 05/29/2018 | 01:44:51 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-822601 | 05/29/2018 | 09:06:44 | 4414 - FIRE CO-DETECTOR | 501 KENMORE AV |
| 18-822721 | 05/30/2018 | 01:10:53 | 3099 - TRAFFIC INFRACTION - OTHER | 417 KENMORE AV |
| 18-822768 | 05/30/2018 | 03:59:45 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-822939 | 05/31/2018 | 01:25:38 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-823125 | 06/01/2018 | 01:56:19 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-823294 | 06/02/2018 | 04:37:17 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-823424 | 06/03/2018 | 01:40:52 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-823431 | 06/03/2018 | 01:53:16 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-823434 | 06/03/2018 | 02:04:09 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-823599 | 06/04/2018 | 02:24:34 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-823724 | 06/04/2018 | 20:40:36 | 2412 - FIREWORKS-USE | 593 KENMORE AV |
| 18-823753 | 06/05/2018 | 01:17:04 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-823825 | 06/05/2018 | 11:39:07 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 18-823963 | 06/06/2018 | 03:04:17 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-824118 | 06/07/2018 | 01:50:04 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-824123 | 06/07/2018 | 02:05:39 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 18-824125 | 06/07/2018 | 02:07:39 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-824158 | 06/07/2018 | 04:21:24 | 3099 - TRAFFIC INFRACTION - OTHER | 401 KENMORE AV |
| 18-824286 | 06/08/2018 | 01:27:41 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-824488 | 06/09/2018 | 02:51:53 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-824638 | 06/10/2018 | 03:09:56 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-824641 | 06/10/2018 | 03:17:30 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 18-824675 | 06/10/2018 | 07:16:41 | 4803 - PREMISES CHECK | 447 KENMORE AV |
| 18-824769 | 06/11/2018 | 02:00:16 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-824961 | 06/12/2018 | 01:54:55 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-825054 | 06/12/2018 | 13:56:55 | 3099 - TRAFFIC INFRACTION - OTHER | 563 KENMORE AV |
| 18-825144 | 06/13/2018 | 02:05:58 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-825320 | 06/14/2018 | 01:17:11 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-825486 | 06/15/2018 | 00:37:05 | 4803 - PREMISES CHECK | 535 KENMORE AV |

TTPD00065

| Complaint | Date | | Call Type | Address |
|---|---|---|---|---|
| 18-825656 | 06/16/2018 | 00:48:37 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-825658 | 06/16/2018 | 00:56:44 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-825753 | 06/16/2018 | 15:29:21 | 5001 - DISTURBANCE-PUBLIC PLACE | 535 KENMORE AV |
| 18-825820 | 06/17/2018 | 01:31:51 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-825975 | 06/18/2018 | 01:44:12 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-826013 | 06/18/2018 | 10:00:57 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-826129 | 06/19/2018 | 03:49:46 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-826259 | 06/20/2018 | 00:38:04 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-826470 | 06/21/2018 | 04:02:55 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-826622 | 06/22/2018 | 03:28:33 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-826783 | 06/23/2018 | 02:58:56 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-826829 | 06/23/2018 | 14:37:48 | 3099 - TRAFFIC INFRACTION - OTHER | 563 KENMORE AV |
| 18-826892 | 06/24/2018 | 01:08:35 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-827033 | 06/25/2018 | 01:06:19 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-827061 | 06/25/2018 | 03:29:08 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-827210 | 06/26/2018 | 01:47:59 | 4803 - PREMISES CHECK | 447 KENMORE AV |
| 18-827220 | 06/26/2018 | 02:50:13 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-827402 | 06/27/2018 | 02:36:47 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-827446 | 06/27/2018 | 11:05:06 | 3099 - TRAFFIC INFRACTION - OTHER | 447 KENMORE AV |
| 18-827497 | 06/27/2018 | 18:09:20 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 18-827687 | 06/28/2018 | 22:47:40 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-827717 | 06/29/2018 | 02:02:51 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-827877 | 06/30/2018 | 03:50:07 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-828107 | 07/01/2018 | 17:26:03 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 18-828162 | 07/02/2018 | 01:36:10 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-828176 | 07/02/2018 | 02:37:13 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-828235 | 07/02/2018 | 10:30:42 | 3464 - SUSPICIOUS PERSON | 535 KENMORE AV |
| 18-828370 | 07/03/2018 | 04:21:47 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-828532 | 07/04/2018 | 02:44:00 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-828616 | 07/04/2018 | 18:30:21 | 4504 - EMS | 535 KENMORE AV |
| 18-828617 | 07/04/2018 | 18:46:55 | 4504 - EMS | 535 KENMORE AV |
| 18-828680 | 07/05/2018 | 01:20:02 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-828851 | 07/06/2018 | 00:33:46 | 2705 - FALSE ALARM - MALFUNCTION | 535 KENMORE AV |
| 18-829056 | 07/07/2018 | 03:03:30 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-829177 | 07/07/2018 | 22:38:08 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-829217 | 07/08/2018 | 03:18:52 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-829371 | 07/09/2018 | 05:04:14 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-829394 | 07/09/2018 | 10:10:02 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-829445 | 07/09/2018 | 18:16:38 | 3099 - TRAFFIC INFRACTION - OTHER | 593 KENMORE AV |
| 18-829485 | 07/10/2018 | 00:50:06 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-829628 | 07/10/2018 | 19:41:47 | 4501 - ASSIST OTHER POLICE | 535 KENMORE AV |
| 18-829833 | 07/12/2018 | 02:10:40 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-829871 | 07/12/2018 | 08:46:42 | 4901 - ACCIDENT PDO | 535 KENMORE AV |
| 18-829874 | 07/12/2018 | 09:09:38 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-829910 | 07/12/2018 | 12:32:29 | 2705 - FALSE ALARM - MALFUNCTION | 535 KENMORE AV |

**14**

TTPD00066

| Complaint | Date | | Call Type | Address |
|---|---|---|---|---|
| 18-829986 | 07/12/2018 | 23:11:04 | 2705 - FALSE ALARM - MALFUNCTION | 535 KENMORE AV |
| 18-830025 | 07/13/2018 | 03:39:06 | 4803 - PREMISES CHECK | 401 KENMORE AV |
| 18-830092 | 07/13/2018 | 14:14:44 | 3099 - TRAFFIC INFRACTION - OTHER | 559 KENMORE AV |
| 18-830321 | 07/15/2018 | 01:56:41 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-830465 | 07/16/2018 | 02:05:04 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-830498 | 07/16/2018 | 05:35:41 | 2705 - FALSE ALARM - MALFUNCTION | 535 KENMORE AV |
| 18-830499 | 07/16/2018 | 05:53:34 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-830780 | 07/18/2018 | 00:09:55 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-830947 | 07/18/2018 | 21:25:35 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-830991 | 07/19/2018 | 02:15:59 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-831026 | 07/19/2018 | 06:12:45 | 4803 - PREMISES CHECK | 447 KENMORE AV |
| 18-831150 | 07/20/2018 | 00:27:38 | 1611 - LARCENY - SHOPLIFTING | 535 KENMORE AV |
| 18-831317 | 07/21/2018 | 01:08:41 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-831494 | 07/22/2018 | 01:28:39 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-831543 | 07/22/2018 | 10:53:35 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 18-831638 | 07/23/2018 | 01:31:30 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-831687 | 07/23/2018 | 08:20:10 | 3099 - TRAFFIC INFRACTION - OTHER | 465 KENMORE AV |
| 18-831810 | 07/24/2018 | 00:47:49 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-831839 | 07/24/2018 | 02:42:09 | 4517 - ATTEMPT TO LOCATE | 535 KENMORE AV |
| 18-831989 | 07/25/2018 | 01:07:21 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-832050 | 07/25/2018 | 05:52:10 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-832187 | 07/26/2018 | 01:41:34 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-832189 | 07/26/2018 | 01:47:15 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-832289 | 07/26/2018 | 16:52:43 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 18-832356 | 07/27/2018 | 02:20:50 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-832371 | 07/27/2018 | 03:33:04 | 3498 - SUSPICIOUS VEHICLE | 535 KENMORE AV |
| 18-832528 | 07/28/2018 | 01:57:28 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-832570 | 07/28/2018 | 08:59:57 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-832681 | 07/29/2018 | 01:28:39 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-832721 | 07/29/2018 | 06:00:15 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-832729 | 07/29/2018 | 08:42:01 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-832852 | 07/30/2018 | 01:47:36 | 1706 - ROBBERY-ATTEMPT | 535 KENMORE AV |
| 18-832916 | 07/30/2018 | 13:25:36 | 3099 - TRAFFIC INFRACTION - OTHER | 465 KENMORE AV |
| 18-832968 | 07/30/2018 | 20:34:10 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-832974 | 07/30/2018 | 20:49:25 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-832987 | 07/30/2018 | 22:36:18 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-832994 | 07/30/2018 | 23:35:04 | 5007 - CUSTOMER TROUBLE | 535 KENMORE AV |
| 18-833054 | 07/31/2018 | 04:31:17 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-833167 | 08/01/2018 | 00:24:04 | 3099 - TRAFFIC INFRACTION - OTHER | 583 KENMORE AV |
| 18-833178 | 08/01/2018 | 01:07:02 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-833197 | 08/01/2018 | 02:15:43 | 5501 - SHAG YOUTHS / JUV COMPLAINT (NOT R | 535 KENMORE AV |
| 18-833211 | 08/01/2018 | 03:26:48 | 4803 - PREMISES CHECK | 501 KENMORE AV |
| 18-833272 | 08/01/2018 | 12:19:37 | 3477 - POLICE INFO | 447 KENMORE AV |
| 18-833350 | 08/01/2018 | 23:26:24 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-833371 | 08/02/2018 | 01:41:21 | 4803 - PREMISES CHECK | 535 KENMORE AV |

**15**

TTPD00067

Case 1:23-cv-00419-WMS-MJR  Document 1-15  Filed 05/11/23  Page 231 of 271

| Complaint | Date | | Call Type | Address |
|-----------|------|--|-----------|---------|
| 18-833384 | 08/02/2018 | 02:32:36 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-833401 | 08/02/2018 | 04:40:01 | 4514 - CHECK WELFARE | 535 KENMORE AV |
| 18-833555 | 08/03/2018 | 04:46:24 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-833565 | 08/03/2018 | 08:28:22 | 3099 - TRAFFIC INFRACTION - OTHER | 447 KENMORE AV |
| 18-833615 | 08/03/2018 | 16:34:15 | 3099 - TRAFFIC INFRACTION - OTHER | 559 KENMORE AV |
| 18-833687 | 08/04/2018 | 02:39:54 | 4517 - ATTEMPT TO LOCATE | 535 KENMORE AV |
| 18-833730 | 08/04/2018 | 10:33:17 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-833828 | 08/05/2018 | 02:08:05 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-833948 | 08/05/2018 | 22:34:35 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-833992 | 08/06/2018 | 03:03:50 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-834131 | 08/06/2018 | 21:00:29 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-834308 | 08/07/2018 | 22:10:17 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-834337 | 08/08/2018 | 01:39:48 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-834344 | 08/08/2018 | 01:57:14 | 3099 - TRAFFIC INFRACTION - OTHER | 559 KENMORE AV |
| 18-834347 | 08/08/2018 | 02:18:04 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-834500 | 08/09/2018 | 01:30:25 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-834542 | 08/09/2018 | 08:58:10 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-834557 | 08/09/2018 | 11:36:19 | 3099 - TRAFFIC INFRACTION - OTHER | 447 KENMORE AV |
| 18-834675 | 08/10/2018 | 04:53:33 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-834702 | 08/10/2018 | 08:48:44 | 3099 - TRAFFIC INFRACTION - OTHER | 447 KENMORE AV |
| 18-834721 | 08/10/2018 | 11:30:22 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 18-834865 | 08/11/2018 | 05:31:44 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-835004 | 08/12/2018 | 02:39:28 | 3099 - TRAFFIC INFRACTION - OTHER | 487 KENMORE AV |
| 18-835065 | 08/12/2018 | 14:01:47 | 3099 - TRAFFIC INFRACTION - OTHER | 593 KENMORE AV |
| 18-835132 | 08/13/2018 | 00:56:15 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-835152 | 08/13/2018 | 02:45:06 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-835246 | 08/13/2018 | 16:21:08 | 3464 - SUSPICIOUS PERSON | 535 KENMORE AV |
| 18-835308 | 08/14/2018 | 01:28:26 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-835484 | 08/15/2018 | 02:35:42 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-835631 | 08/16/2018 | 03:16:56 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-835819 | 08/17/2018 | 03:13:01 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-835929 | 08/18/2018 | 00:32:18 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-835973 | 08/18/2018 | 05:18:21 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-835977 | 08/18/2018 | 05:32:26 | 2705 - FALSE ALARM - MALFUNCTION | 401 KENMORE AV |
| 18-836047 | 08/18/2018 | 17:09:41 | 4501 - ASSIST OTHER POLICE | 535 KENMORE AV |
| 18-836181 | 08/19/2018 | 19:05:16 | 3099 - TRAFFIC INFRACTION - OTHER | 447 KENMORE AV |
| 18-836219 | 08/20/2018 | 01:23:35 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-836245 | 08/20/2018 | 02:55:57 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-836367 | 08/20/2018 | 22:23:22 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 18-836408 | 08/21/2018 | 03:50:59 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-836537 | 08/22/2018 | 02:14:49 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-836546 | 08/22/2018 | 03:34:57 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-836673 | 08/22/2018 | 23:07:05 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-836716 | 08/23/2018 | 04:47:39 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-836857 | 08/24/2018 | 02:18:19 | 3002 - RECKLESS OPERATION | 535 KENMORE AV |

**16**

| Complaint | Date | | Call Type | Address |
|---|---|---|---|---|
| 18-836977 | 08/25/2018 | 00:37:15 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-836998 | 08/25/2018 | 02:46:01 | 3099 - TRAFFIC INFRACTION - OTHER | 563 KENMORE AV |
| 18-837140 | 08/26/2018 | 01:52:04 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-837258 | 08/27/2018 | 01:32:27 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-837327 | 08/27/2018 | 10:27:02 | 3099 - TRAFFIC INFRACTION - OTHER | 447 KENMORE AV |
| 18-837423 | 08/28/2018 | 02:40:15 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-837441 | 08/28/2018 | 04:00:37 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-837543 | 08/28/2018 | 21:18:17 | 3099 - TRAFFIC INFRACTION - OTHER | 429 KENMORE AV |
| 18-837579 | 08/29/2018 | 01:58:50 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-837725 | 08/30/2018 | 01:09:55 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-837822 | 08/30/2018 | 17:25:04 | 3099 - TRAFFIC INFRACTION - OTHER | 447 KENMORE AV |
| 18-837857 | 08/30/2018 | 23:11:43 | 4508 - ASSIST PERSON | 535 KENMORE AV |
| 18-837903 | 08/31/2018 | 03:55:34 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-837968 | 08/31/2018 | 15:22:32 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 18-838164 | 09/02/2018 | 01:47:57 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-838233 | 09/02/2018 | 14:56:30 | 4508 - ASSIST PERSON | 535 KENMORE AV |
| 18-838306 | 09/03/2018 | 01:58:42 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-838361 | 09/03/2018 | 10:43:20 | 3099 - TRAFFIC INFRACTION - OTHER | 487 KENMORE AV |
| 18-838440 | 09/04/2018 | 01:05:38 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-838453 | 09/04/2018 | 01:48:33 | 3001 - DRUNK DRIVING | 583 KENMORE AV |
| 18-838723 | 09/05/2018 | 14:44:23 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-838790 | 09/06/2018 | 01:45:15 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-838854 | 09/06/2018 | 10:37:28 | 3464 - SUSPICIOUS PERSON | 535 KENMORE AV |
| 18-839058 | 09/07/2018 | 15:01:01 | 3464 - SUSPICIOUS PERSON | 535 KENMORE AV |
| 18-839186 | 09/08/2018 | 11:01:46 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-839254 | 09/08/2018 | 22:14:44 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 18-839284 | 09/09/2018 | 02:29:53 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-839378 | 09/09/2018 | 22:02:10 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-839725 | 09/11/2018 | 23:04:37 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-839923 | 09/13/2018 | 04:41:50 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-840058 | 09/14/2018 | 02:44:21 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-840092 | 09/14/2018 | 09:08:07 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-840165 | 09/14/2018 | 22:56:32 | 3001 - DRUNK DRIVING | 535 KENMORE AV |
| 18-840252 | 09/15/2018 | 13:44:54 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-840325 | 09/16/2018 | 01:49:16 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-840636 | 09/18/2018 | 01:54:47 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-840883 | 09/19/2018 | 14:00:16 | 3099 - TRAFFIC INFRACTION - OTHER | 429 KENMORE AV |
| 18-840904 | 09/19/2018 | 16:34:36 | 4617 - REFERRAL- JUVENILE REFERRAL | 535 KENMORE AV |
| 18-840915 | 09/19/2018 | 18:23:59 | 3099 - TRAFFIC INFRACTION - OTHER | 487 KENMORE AV |
| 18-841156 | 09/21/2018 | 03:39:25 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-841216 | 09/21/2018 | 10:54:13 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-841446 | 09/22/2018 | 21:58:03 | 5007 - CUSTOMER TROUBLE | 535 KENMORE AV |
| 18-841478 | 09/23/2018 | 02:04:56 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-841495 | 09/23/2018 | 03:35:16 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-841651 | 09/24/2018 | 04:15:31 | 4803 - PREMISES CHECK | 535 KENMORE AV |

TTPD00069

Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 233 of 271

| Complaint | Date | | Call Type | Address |
|---|---|---|---|---|
| 18-841860 | 09/25/2018 | 08:46:26 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-841920 | 09/25/2018 | 20:58:09 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-842012 | 09/26/2018 | 09:31:28 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-842264 | 09/27/2018 | 22:40:39 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-842467 | 09/29/2018 | 03:38:38 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-842795 | 10/01/2018 | 09:21:30 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-842930 | 10/02/2018 | 04:15:04 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-843104 | 10/03/2018 | 02:50:00 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-843153 | 10/03/2018 | 10:30:52 | 3099 - TRAFFIC INFRACTION - OTHER | 417 KENMORE AV |
| 18-843265 | 10/04/2018 | 01:44:36 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-843437 | 10/05/2018 | 01:16:34 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-843588 | 10/05/2018 | 23:22:29 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-843654 | 10/06/2018 | 08:24:58 | 3001 - DRUNK DRIVING | 535 KENMORE AV |
| 18-843780 | 10/07/2018 | 05:35:43 | 4514 - CHECK WELFARE | 535 KENMORE AV |
| 18-843786 | 10/07/2018 | 07:03:19 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-843941 | 10/08/2018 | 10:22:17 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-844059 | 10/09/2018 | 02:53:06 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-844105 | 10/09/2018 | 08:53:52 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-844199 | 10/09/2018 | 22:31:35 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-844217 | 10/10/2018 | 01:09:29 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-844308 | 10/10/2018 | 11:35:45 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-844413 | 10/11/2018 | 03:37:41 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-844628 | 10/12/2018 | 10:25:23 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-844994 | 10/15/2018 | 00:10:17 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-845047 | 10/15/2018 | 04:28:45 | 4803 - PREMISES CHECK | 447 KENMORE AV |
| 18-845080 | 10/15/2018 | 10:15:13 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-845183 | 10/16/2018 | 01:05:04 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-845347 | 10/17/2018 | 02:38:10 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-845592 | 10/18/2018 | 16:37:49 | 5501 - SHAG YOUTHS / JUV COMPLAINT (NOT F | 535 KENMORE AV |
| 18-845621 | 10/18/2018 | 20:38:38 | 3099 - TRAFFIC INFRACTION - OTHER | 563 KENMORE AV |
| 18-845650 | 10/19/2018 | 04:17:38 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-845769 | 10/19/2018 | 22:09:42 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-845774 | 10/19/2018 | 22:50:33 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-845793 | 10/20/2018 | 02:31:00 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-846003 | 10/21/2018 | 15:50:07 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 18-846064 | 10/22/2018 | 05:30:29 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-846234 | 10/23/2018 | 05:04:23 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-846559 | 10/25/2018 | 02:48:01 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-846723 | 10/26/2018 | 06:09:08 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-846865 | 10/27/2018 | 04:53:01 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-846900 | 10/27/2018 | 14:08:20 | 2708 - FALSE ALARM - BUSINESS - HUMAN ERR | 535 KENMORE AV |
| 18-846921 | 10/27/2018 | 17:25:41 | 2705 - FALSE ALARM - MALFUNCTION | 487 KENMORE AV |
| 18-847089 | 10/29/2018 | 01:34:00 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-847275 | 10/30/2018 | 03:22:27 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-847440 | 10/31/2018 | 04:36:21 | 4803 - PREMISES CHECK | 401 KENMORE AV |

**18**

TTPD00070

| Complaint | Date | | Call Type | Address |
|-----------|------|--|-----------|---------|
| 18-847586 | 11/01/2018 | 04:02:34 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-847732 | 11/02/2018 | 05:20:15 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-847785 | 11/02/2018 | 14:06:25 | 1611 - LARCENY - SHOPLIFTING | 535 KENMORE AV |
| 18-848003 | 11/04/2018 | 01:02:48 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-848035 | 11/04/2018 | 03:44:01 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-848232 | 11/05/2018 | 14:02:57 | 3477 - POLICE INFO | 535 KENMORE AV |
| 18-848364 | 11/06/2018 | 08:25:36 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-848373 | 11/06/2018 | 09:59:21 | 3099 - TRAFFIC INFRACTION - OTHER | 401 KENMORE AV |
| 18-848405 | 11/06/2018 | 14:16:09 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-848985 | 11/10/2018 | 03:07:49 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 18-849137 | 11/11/2018 | 03:58:39 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-849199 | 11/11/2018 | 15:58:39 | 4508 - ASSIST PERSON | 535 KENMORE AV |
| 18-849599 | 11/14/2018 | 03:02:38 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-849689 | 11/14/2018 | 18:02:47 | 3099 - TRAFFIC INFRACTION - OTHER | 559 KENMORE AV |
| 18-849897 | 11/16/2018 | 03:26:20 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-849958 | 11/16/2018 | 11:24:01 | 1201 - UNWELCOME GUEST | 535 KENMORE AV |
| 18-850147 | 11/18/2018 | 01:10:40 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-850253 | 11/18/2018 | 21:15:58 | 3099 - TRAFFIC INFRACTION - OTHER | 487 KENMORE AV |
| 18-850348 | 11/19/2018 | 10:36:28 | 1699 - LARCENY-OTHER | 535 KENMORE AV |
| 18-850483 | 11/20/2018 | 09:14:14 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-850741 | 11/22/2018 | 01:32:51 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-850871 | 11/23/2018 | 06:54:35 | 2708 - FALSE ALARM - BUSINESS - HUMAN ERR | 487 KENMORE AV |
| 18-851384 | 11/26/2018 | 17:12:43 | 3099 - TRAFFIC INFRACTION - OTHER | 402 VULCAN ST  @  KENMORE AV |
| 18-851449 | 11/27/2018 | 06:11:27 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-851471 | 11/27/2018 | 09:15:15 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-851495 | 11/27/2018 | 11:49:36 | 4901 - ACCIDENT PDO | 447 KENMORE AV |
| 18-851571 | 11/28/2018 | 01:41:07 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-852065 | 12/01/2018 | 02:46:07 | 4504 - EMS | 593 KENMORE AV |
| 18-852081 | 12/01/2018 | 04:31:19 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-852109 | 12/01/2018 | 09:34:35 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-852248 | 12/02/2018 | 11:18:53 | 2700 - FALSE ALARM (NOT FIRE) | 447 KENMORE AV |
| 18-852522 | 12/04/2018 | 05:36:00 | 4803 - PREMISES CHECK | 447 KENMORE AV |
| 18-852640 | 12/05/2018 | 01:33:51 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-853119 | 12/08/2018 | 00:54:44 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-853217 | 12/08/2018 | 16:54:30 | 4508 - ASSIST PERSON | 535 KENMORE AV |
| 18-853568 | 12/11/2018 | 05:02:37 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-853899 | 12/13/2018 | 10:46:35 | 3464 - SUSPICIOUS PERSON | 583 KENMORE AV |
| 18-854225 | 12/15/2018 | 12:12:35 | 2708 - FALSE ALARM - BUSINESS - HUMAN ERR | 535 KENMORE AV |
| 18-854325 | 12/16/2018 | 05:05:24 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-854435 | 12/17/2018 | 01:50:28 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-854444 | 12/17/2018 | 02:44:08 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-854538 | 12/17/2018 | 20:08:58 | 2708 - FALSE ALARM - BUSINESS - HUMAN ERR | 447 KENMORE AV |
| 18-854565 | 12/18/2018 | 01:20:34 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-854813 | 12/19/2018 | 16:56:08 | 3099 - TRAFFIC INFRACTION - OTHER | 567 KENMORE AV |
| 18-854880 | 12/20/2018 | 01:42:47 | 4803 - PREMISES CHECK | 535 KENMORE AV |

**19**

| Complaint | Date | | Call Type | Address |
|-----------|------|--|-----------|---------|
| 18-855086 | 12/21/2018 | 09:15:54 | 3039 - V&T COMMERCIAL VEHICLE  MISC | 535 KENMORE AV |
| 18-855520 | 12/24/2018 | 06:20:17 | 4504 - EMS | 535 KENMORE AV |
| 18-855605 | 12/25/2018 | 00:47:19 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-855720 | 12/26/2018 | 01:21:43 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-855791 | 12/26/2018 | 13:37:24 | 3099 - TRAFFIC INFRACTION - OTHER | 401 KENMORE AV |
| 18-855995 | 12/27/2018 | 23:35:27 | 4802 - ALARM ACTIVATED / ALARM RINGING | 447 KENMORE AV |
| 18-856028 | 12/28/2018 | 01:48:36 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-856195 | 12/29/2018 | 05:52:49 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-856350 | 12/30/2018 | 10:29:22 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 18-856413 | 12/31/2018 | 00:10:55 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-900110 | 01/01/2019 | 21:56:38 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-900198 | 01/02/2019 | 09:53:36 | 3099 - TRAFFIC INFRACTION - OTHER | 501 KENMORE AV |
| 19-900278 | 01/02/2019 | 22:37:49 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-900449 | 01/04/2019 | 01:05:53 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-900591 | 01/04/2019 | 21:11:10 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-900704 | 01/05/2019 | 16:44:08 | 3099 - TRAFFIC INFRACTION - OTHER | 501 KENMORE AV |
| 19-900728 | 01/05/2019 | 21:52:12 | 3099 - TRAFFIC INFRACTION - OTHER | 487 KENMORE AV |
| 19-900876 | 01/07/2019 | 01:04:22 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 19-900879 | 01/07/2019 | 01:14:22 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-901237 | 01/09/2019 | 04:09:23 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-901240 | 01/09/2019 | 04:25:29 | 4802 - ALARM ACTIVATED / ALARM RINGING | 447 KENMORE AV |
| 19-901303 | 01/09/2019 | 14:16:00 | 3099 - TRAFFIC INFRACTION - OTHER | 447 KENMORE AV |
| 19-901304 | 01/09/2019 | 14:25:31 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-901506 | 01/10/2019 | 18:08:01 | 4901 - ACCIDENT PDO | 535 KENMORE AV |
| 19-901553 | 01/11/2019 | 01:58:29 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-901669 | 01/11/2019 | 20:42:38 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-901681 | 01/11/2019 | 22:46:15 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-901836 | 01/13/2019 | 00:47:46 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-902154 | 01/15/2019 | 02:33:44 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-902369 | 01/16/2019 | 10:04:40 | 2708 - FALSE ALARM - BUSINESS - HUMAN ERR | 447 KENMORE AV |
| 19-902577 | 01/17/2019 | 18:06:09 | 2705 - FALSE ALARM - MALFUNCTION | 487 KENMORE AV |
| 19-902632 | 01/18/2019 | 01:53:32 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-902757 | 01/18/2019 | 23:08:04 | 3002 - RECKLESS OPERATION | 535 KENMORE AV |
| 19-903011 | 01/20/2019 | 19:32:41 | 5101 - PROPERTY LOST | 535 KENMORE AV |
| 19-903033 | 01/20/2019 | 23:50:56 | 4508 - ASSIST PERSON | 535 KENMORE AV |
| 19-903207 | 01/22/2019 | 02:17:11 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-903358 | 01/23/2019 | 01:31:33 | 3099 - TRAFFIC INFRACTION - OTHER | 583 KENMORE AV |
| 19-903382 | 01/23/2019 | 03:25:50 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-903443 | 01/23/2019 | 10:59:11 | 3099 - TRAFFIC INFRACTION - OTHER | 501 KENMORE AV |
| 19-903496 | 01/23/2019 | 20:36:19 | 2708 - FALSE ALARM - BUSINESS - HUMAN ERR | 465 KENMORE AV |
| 19-903501 | 01/23/2019 | 21:28:32 | 2708 - FALSE ALARM - BUSINESS - HUMAN ERR | 487 KENMORE AV |
| 19-903600 | 01/24/2019 | 11:42:36 | 3099 - TRAFFIC INFRACTION - OTHER | 429 KENMORE AV |
| 19-903615 | 01/24/2019 | 13:00:19 | 2708 - FALSE ALARM - BUSINESS - HUMAN ERR | 447 KENMORE AV |
| 19-903729 | 01/25/2019 | 03:35:55 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-904470 | 01/30/2019 | 02:42:35 | 4803 - PREMISES CHECK | 535 KENMORE AV |

**20**

| Complaint | Date | | Call Type | Address |
|-----------|------|---|-----------|---------|
| 19-904749 | 02/01/2019 | 01:04:08 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-904801 | 02/01/2019 | 09:25:54 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 19-904820 | 02/01/2019 | 12:15:32 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-904922 | 02/02/2019 | 02:14:35 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-904954 | 02/02/2019 | 06:26:08 | 4803 - PREMISES CHECK | 447 KENMORE AV |
| 19-904977 | 02/02/2019 | 11:11:12 | 4504 - EMS | 535 KENMORE AV |
| 19-905292 | 02/04/2019 | 16:44:16 | 3099 - TRAFFIC INFRACTION - OTHER | 429 KENMORE AV |
| 19-905339 | 02/05/2019 | 00:42:27 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-905354 | 02/05/2019 | 02:31:03 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-905409 | 02/05/2019 | 09:55:11 | 3099 - TRAFFIC INFRACTION - OTHER | 401 KENMORE AV |
| 19-905455 | 02/05/2019 | 17:13:38 | 3099 - TRAFFIC INFRACTION - OTHER | 583 KENMORE AV |
| 19-905551 | 02/06/2019 | 06:30:19 | 3099 - TRAFFIC INFRACTION - OTHER | 597 KENMORE AV |
| 19-905651 | 02/06/2019 | 21:10:47 | 2708 - FALSE ALARM - BUSINESS - HUMAN ERR | 465 KENMORE AV |
| 19-905688 | 02/07/2019 | 02:44:01 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-905863 | 02/08/2019 | 03:57:49 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-905971 | 02/08/2019 | 17:01:13 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 19-905973 | 02/08/2019 | 17:02:45 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 19-906074 | 02/09/2019 | 11:56:56 | 2708 - FALSE ALARM - BUSINESS - HUMAN ERR | 487 KENMORE AV |
| 19-906222 | 02/10/2019 | 11:09:38 | 3099 - TRAFFIC INFRACTION - OTHER | 417 KENMORE AV |
| 19-906302 | 02/11/2019 | 01:19:54 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-906368 | 02/11/2019 | 11:13:55 | 3099 - TRAFFIC INFRACTION - OTHER | 417 KENMORE AV |
| 19-906378 | 02/11/2019 | 12:34:38 | 2708 - FALSE ALARM - BUSINESS - HUMAN ERR | 501 KENMORE AV |
| 19-906459 | 02/12/2019 | 01:20:46 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-906465 | 02/12/2019 | 01:58:23 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-906582 | 02/13/2019 | 00:15:36 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-906734 | 02/14/2019 | 00:55:25 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 19-906856 | 02/14/2019 | 22:06:30 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-906989 | 02/15/2019 | 18:05:10 | 2708 - FALSE ALARM - BUSINESS - HUMAN ERR | 487 KENMORE AV |
| 19-907105 | 02/16/2019 | 10:24:57 | 3099 - TRAFFIC INFRACTION - OTHER | 429 KENMORE AV |
| 19-907135 | 02/16/2019 | 15:03:43 | 3099 - TRAFFIC INFRACTION - OTHER | 447 KENMORE AV |
| 19-907190 | 02/17/2019 | 01:14:38 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-907310 | 02/17/2019 | 22:16:07 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-907484 | 02/19/2019 | 00:55:19 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-907780 | 02/21/2019 | 01:23:42 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 19-907873 | 02/21/2019 | 16:55:13 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 19-907917 | 02/21/2019 | 22:40:26 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-907972 | 02/22/2019 | 09:42:15 | 3015 - PARKING VIOLATION - HANDICAPPED | 535 KENMORE AV |
| 19-908005 | 02/22/2019 | 13:07:34 | 4508 - ASSIST PERSON | 535 KENMORE AV |
| 19-908043 | 02/22/2019 | 19:52:59 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-908092 | 02/23/2019 | 02:33:21 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-908094 | 02/23/2019 | 02:44:53 | 3099 - TRAFFIC INFRACTION - OTHER | 583 KENMORE AV |
| 19-908445 | 02/24/2019 | 22:22:07 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-908487 | 02/25/2019 | 03:20:07 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-908532 | 02/25/2019 | 11:40:25 | 2705 - FALSE ALARM - MALFUNCTION | 487 KENMORE AV |
| 19-908635 | 02/26/2019 | 01:37:29 | 4803 - PREMISES CHECK | 535 KENMORE AV |

TTPD00073

| Complaint | Date | | Call Type | Address |
|---|---|---|---|---|
| 19-908917 | 02/27/2019 | 23:33:56 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-908972 | 02/28/2019 | 05:14:24 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-908998 | 02/28/2019 | 09:53:00 | 3099 - TRAFFIC INFRACTION - OTHER | 417 KENMORE AV |
| 19-909012 | 02/28/2019 | 12:15:49 | 3799 - ANIMAL COMPLAINT-OTHER | 535 KENMORE AV |
| 19-909195 | 03/01/2019 | 20:25:27 | 2708 - FALSE ALARM - BUSINESS - HUMAN ERR | 465 KENMORE AV |
| 19-909464 | 03/04/2019 | 01:56:44 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-909475 | 03/04/2019 | 03:47:00 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-909542 | 03/04/2019 | 15:11:03 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-909837 | 03/06/2019 | 21:22:22 | 2705 - FALSE ALARM - MALFUNCTION | 487 KENMORE AV |
| 19-909854 | 03/07/2019 | 01:09:11 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-910009 | 03/08/2019 | 01:11:38 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-910140 | 03/08/2019 | 19:46:31 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-910148 | 03/08/2019 | 21:00:53 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-910172 | 03/09/2019 | 00:36:55 | 2705 - FALSE ALARM - MALFUNCTION | 487 KENMORE AV |
| 19-910181 | 03/09/2019 | 01:12:52 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-910329 | 03/10/2019 | 01:20:11 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-910447 | 03/10/2019 | 22:07:08 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-910457 | 03/10/2019 | 22:53:03 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 19-910459 | 03/10/2019 | 23:02:52 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-910501 | 03/11/2019 | 04:06:03 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-910554 | 03/11/2019 | 13:27:46 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-910570 | 03/11/2019 | 16:42:42 | 4901 - ACCIDENT PDO | 535 KENMORE AV |
| 19-910603 | 03/11/2019 | 22:09:20 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-910636 | 03/12/2019 | 01:31:24 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-910657 | 03/12/2019 | 03:33:29 | 3099 - TRAFFIC INFRACTION - OTHER | 417 KENMORE AV |
| 19-910672 | 03/12/2019 | 05:07:57 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-910708 | 03/12/2019 | 10:20:13 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-910737 | 03/12/2019 | 14:33:15 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 19-910773 | 03/12/2019 | 21:13:17 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-910801 | 03/13/2019 | 01:02:43 | 3099 - TRAFFIC INFRACTION - OTHER | 571 KENMORE AV 1 |
| 19-910837 | 03/13/2019 | 05:41:56 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-910911 | 03/13/2019 | 17:37:41 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 19-911263 | 03/16/2019 | 02:15:19 | 4803 - PREMISES CHECK | 447 KENMORE AV |
| 19-911265 | 03/16/2019 | 02:17:08 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-911511 | 03/18/2019 | 00:51:34 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-911608 | 03/18/2019 | 13:47:00 | 3099 - TRAFFIC INFRACTION - OTHER | 429 KENMORE AV |
| 19-911851 | 03/20/2019 | 00:57:33 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-911863 | 03/20/2019 | 01:38:13 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-911924 | 03/20/2019 | 12:27:38 | 4803 - PREMISES CHECK | 447 KENMORE AV |
| 19-912007 | 03/21/2019 | 00:52:07 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-912140 | 03/21/2019 | 20:03:53 | 5007 - CUSTOMER TROUBLE | 535 KENMORE AV |
| 19-912350 | 03/23/2019 | 02:46:16 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-912445 | 03/23/2019 | 20:57:38 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-912487 | 03/24/2019 | 03:25:46 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-912523 | 03/24/2019 | 10:29:02 | 1902 - CRIMINAL MISCHIEF | 567 KENMORE AV LOWER |

TTPD00074

| Complaint | Date | | Call Type | Address |
|---|---|---|---|---|
| 19-912581 | 03/24/2019 | 22:48:53 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-912607 | 03/25/2019 | 02:45:24 | 3099 - TRAFFIC INFRACTION - OTHER | 447 KENMORE AV |
| 19-912744 | 03/26/2019 | 00:25:57 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-912746 | 03/26/2019 | 00:38:34 | 3464 - SUSPICIOUS PERSON | 535 KENMORE AV |
| 19-912903 | 03/27/2019 | 02:19:40 | 3465 - SUSPICIOUS PERSON W/VEHICLE | 535 KENMORE AV |
| 19-912905 | 03/27/2019 | 02:25:34 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-913169 | 03/28/2019 | 18:12:07 | 3099 - TRAFFIC INFRACTION - OTHER | 571 KENMORE AV |
| 19-913237 | 03/29/2019 | 04:03:14 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-913427 | 03/30/2019 | 16:07:24 | 5007 - CUSTOMER TROUBLE | 535 KENMORE AV |
| 19-913455 | 03/31/2019 | 00:34:14 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-913654 | 04/01/2019 | 10:51:45 | 3099 - TRAFFIC INFRACTION - OTHER | 447 KENMORE AV |
| 19-913946 | 04/03/2019 | 12:35:38 | 5008 - LOUD MUSIC | 535 KENMORE AV |
| 19-914032 | 04/04/2019 | 01:33:12 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-914047 | 04/04/2019 | 03:11:13 | 4803 - PREMISES CHECK | 447 KENMORE AV |
| 19-914154 | 04/05/2019 | 00:21:22 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-914424 | 04/06/2019 | 21:46:40 | 3099 - TRAFFIC INFRACTION - OTHER | 567 KENMORE AV |
| 19-914642 | 04/08/2019 | 10:18:52 | 3099 - TRAFFIC INFRACTION - OTHER | 583 KENMORE AV |
| 19-914643 | 04/08/2019 | 10:19:47 | 3099 - TRAFFIC INFRACTION - OTHER | 583 KENMORE AV |
| 19-914762 | 04/09/2019 | 01:37:16 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-914784 | 04/09/2019 | 03:15:49 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-914932 | 04/10/2019 | 03:07:02 | 4508 - ASSIST PERSON | 559 KENMORE AV LOWER |
| 19-915043 | 04/11/2019 | 00:30:28 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-915332 | 04/12/2019 | 17:52:28 | 2500 - DRUNK | 535 KENMORE AV |
| 19-915493 | 04/13/2019 | 20:07:33 | 5007 - CUSTOMER TROUBLE | 535 KENMORE AV |
| 19-915525 | 04/14/2019 | 01:15:32 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-915828 | 04/16/2019 | 06:04:38 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-915942 | 04/17/2019 | 03:05:01 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-915978 | 04/17/2019 | 10:01:33 | 3099 - TRAFFIC INFRACTION - OTHER | 417 KENMORE AV |
| 19-916182 | 04/18/2019 | 18:56:21 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 19-916221 | 04/19/2019 | 01:04:26 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-916284 | 04/19/2019 | 13:03:01 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-916329 | 04/19/2019 | 22:41:12 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-916496 | 04/21/2019 | 03:48:01 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-916671 | 04/22/2019 | 15:09:55 | 4902 - ACCIDENT INJURY | 501 KENMORE AV |
| 19-916674 | 04/22/2019 | 15:21:31 | 4601 - REFERRAL - OTHER POLICE | 501 KENMORE AV |
| 19-916746 | 04/23/2019 | 01:57:15 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-916974 | 04/24/2019 | 17:37:44 | 3099 - TRAFFIC INFRACTION - OTHER | 447 KENMORE AV |
| 19-917019 | 04/25/2019 | 00:57:03 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-917133 | 04/25/2019 | 15:30:38 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 19-917153 | 04/25/2019 | 18:15:20 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 19-917183 | 04/26/2019 | 00:52:49 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-917238 | 04/26/2019 | 07:13:39 | 2500 - DRUNK | 535 KENMORE AV |
| 19-917372 | 04/27/2019 | 05:14:20 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-917418 | 04/27/2019 | 13:53:31 | 4504 - EMS | 417 KENMORE AV |
| 19-917512 | 04/28/2019 | 03:31:39 | 4803 - PREMISES CHECK | 535 KENMORE AV |

TTPD00075

| Complaint | Date | | Call Type | Address |
|---|---|---|---|---|
| 19-917581 | 04/28/2019 | 18:09:25 | 3099 - TRAFFIC INFRACTION - OTHER | 487 KENMORE AV |
| 19-917588 | 04/28/2019 | 19:54:37 | 5099 - DISTURBANCE OTHER | 535 KENMORE AV |
| 19-917755 | 04/30/2019 | 00:48:03 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-918218 | 05/03/2019 | 00:40:37 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-918412 | 05/04/2019 | 02:53:40 | 4803 - PREMISES CHECK | 447 KENMORE AV |
| 19-918625 | 05/05/2019 | 20:07:56 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 19-918712 | 05/06/2019 | 10:14:37 | 3099 - TRAFFIC INFRACTION - OTHER | 401 KENMORE AV |
| 19-918805 | 05/07/2019 | 02:25:53 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-918822 | 05/07/2019 | 03:44:04 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-919368 | 05/10/2019 | 11:46:42 | 3465 - SUSPICIOUS PERSON W/VEHICLE | 535 KENMORE AV |
| 19-919412 | 05/10/2019 | 18:04:54 | 2708 - FALSE ALARM - BUSINESS - HUMAN ERR | 487 KENMORE AV |
| 19-919537 | 05/11/2019 | 16:16:28 | 5007 - CUSTOMER TROUBLE | 535 KENMORE AV |
| 19-919851 | 05/13/2019 | 23:14:09 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-920028 | 05/15/2019 | 02:25:28 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-920031 | 05/15/2019 | 02:46:55 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-920107 | 05/15/2019 | 14:47:54 | 3099 - TRAFFIC INFRACTION - OTHER | 487 KENMORE AV |
| 19-920133 | 05/15/2019 | 18:34:15 | 3002 - RECKLESS OPERATION | 535 KENMORE AV |
| 19-920238 | 05/16/2019 | 10:38:28 | 2708 - FALSE ALARM - BUSINESS - HUMAN ERR | 535 KENMORE AV |
| 19-920310 | 05/16/2019 | 22:56:38 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-920329 | 05/17/2019 | 01:14:43 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-920449 | 05/17/2019 | 20:13:06 | 3002 - RECKLESS OPERATION | 535 KENMORE AV |
| 19-920460 | 05/17/2019 | 22:04:41 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-920622 | 05/19/2019 | 01:25:23 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-920700 | 05/19/2019 | 13:08:32 | 3099 - TRAFFIC INFRACTION - OTHER | 447 KENMORE AV |
| 19-920702 | 05/19/2019 | 13:16:36 | 3099 - TRAFFIC INFRACTION - OTHER | 401 KENMORE AV |
| 19-920792 | 05/20/2019 | 02:37:39 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-920909 | 05/20/2019 | 18:08:53 | 4802 - ALARM ACTIVATED / ALARM RINGING | 487 KENMORE AV |
| 19-921410 | 05/24/2019 | 01:00:13 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-921465 | 05/24/2019 | 09:16:24 | 4504 - EMS | 559 KENMORE AV |
| 19-921559 | 05/24/2019 | 20:06:29 | 4508 - ASSIST PERSON | 535 KENMORE AV |
| 19-921735 | 05/26/2019 | 00:17:34 | 4802 - ALARM ACTIVATED / ALARM RINGING | 535 KENMORE AV |
| 19-921806 | 05/26/2019 | 13:45:52 | 3099 - TRAFFIC INFRACTION - OTHER | 417 KENMORE AV |
| 19-921889 | 05/27/2019 | 03:12:58 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-921955 | 05/27/2019 | 15:09:38 | 4508 - ASSIST PERSON | 535 KENMORE AV |
| 19-922048 | 05/28/2019 | 05:25:11 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-922072 | 05/28/2019 | 12:30:36 | 3463 - FIGHT | 535 KENMORE AV |
| 19-922122 | 05/28/2019 | 20:40:19 | 5007 - CUSTOMER TROUBLE | 535 KENMORE AV |
| 19-922144 | 05/29/2019 | 00:17:26 | 3099 - TRAFFIC INFRACTION - OTHER | 447 KENMORE AV |
| 19-922145 | 05/29/2019 | 00:20:45 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-922255 | 05/29/2019 | 16:51:17 | 3438 - HARASSMENT | 535 KENMORE AV |
| 19-922318 | 05/30/2019 | 01:49:23 | 3099 - TRAFFIC INFRACTION - OTHER | 583 KENMORE AV |
| 19-922455 | 05/31/2019 | 01:10:57 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-922513 | 05/31/2019 | 09:28:10 | 5001 - DISTURBANCE-PUBLIC PLACE | 535 KENMORE AV |
| 19-922522 | 05/31/2019 | 10:20:18 | 1201 - UNWELCOME GUEST | 535 KENMORE AV |
| 19-922688 | 06/01/2019 | 09:05:07 | 3099 - TRAFFIC INFRACTION - OTHER | 487 KENMORE AV |

TTPD00076

| Complaint | Date | | Call Type | Address |
|---|---|---|---|---|
| 19-922809 | 06/02/2019 | 02:17:29 | 4803 - PREMISES CHECK | 447 KENMORE AV |
| 19-923033 | 06/03/2019 | 20:17:31 | 1201 - UNWELCOME GUEST | 535 KENMORE AV |
| 19-923063 | 06/04/2019 | 01:02:42 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-923473 | 06/06/2019 | 15:20:57 | 4504 - EMS | 535 KENMORE AV |
| 19-923539 | 06/07/2019 | 00:52:08 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-923705 | 06/08/2019 | 02:11:05 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 19-923926 | 06/09/2019 | 18:47:16 | 4508 - ASSIST PERSON | 567 KENMORE AV |
| 19-923967 | 06/10/2019 | 01:30:27 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-924104 | 06/11/2019 | 01:19:27 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-924147 | 06/11/2019 | 09:37:19 | 3099 - TRAFFIC INFRACTION - OTHER | 583 KENMORE AV |
| 19-924167 | 06/11/2019 | 12:28:54 | 3099 - TRAFFIC INFRACTION - OTHER | 583 KENMORE AV |
| 19-924234 | 06/11/2019 | 23:08:07 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-924264 | 06/12/2019 | 03:55:25 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-924392 | 06/12/2019 | 22:17:39 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-924543 | 06/13/2019 | 22:19:39 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-924566 | 06/14/2019 | 02:13:11 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-924603 | 06/14/2019 | 08:21:06 | 4508 - ASSIST PERSON | 559 KENMORE AV |
| 19-924706 | 06/15/2019 | 01:23:20 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 19-924834 | 06/15/2019 | 22:26:35 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-925007 | 06/17/2019 | 03:05:21 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-925136 | 06/17/2019 | 23:12:03 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-925274 | 06/18/2019 | 18:56:38 | 3099 - TRAFFIC INFRACTION - OTHER | 447 KENMORE AV |
| 19-925277 | 06/18/2019 | 19:06:59 | 3099 - TRAFFIC INFRACTION - OTHER | 571 KENMORE AV |
| 19-925361 | 06/19/2019 | 06:55:07 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-925452 | 06/19/2019 | 20:01:20 | 5001 - DISTURBANCE-PUBLIC PLACE | 535 KENMORE AV |
| 19-925474 | 06/19/2019 | 22:48:01 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-925758 | 06/21/2019 | 20:26:59 | 2412 - FIREWORKS-USE | 535 KENMORE AV |
| 19-925792 | 06/22/2019 | 01:10:15 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-925935 | 06/23/2019 | 00:43:02 | 4517 - ATTEMPT TO LOCATE | 535 KENMORE AV |
| 19-926199 | 06/24/2019 | 23:13:30 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-926217 | 06/25/2019 | 01:22:39 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-926400 | 06/26/2019 | 03:13:21 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-926436 | 06/26/2019 | 09:17:50 | 5002 - DOMESTIC TROUBLE | 567 KENMORE AV LOWER |
| 19-926636 | 06/27/2019 | 16:13:27 | 5007 - CUSTOMER TROUBLE | 535 KENMORE AV |
| 19-926870 | 06/29/2019 | 03:47:16 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-926958 | 06/29/2019 | 19:40:52 | 3099 - TRAFFIC INFRACTION - OTHER | 583 KENMORE AV  @  PARKER BD |
| 19-927107 | 06/30/2019 | 19:55:18 | 5002 - DOMESTIC TROUBLE | 559 KENMORE AV LOWER |
| 19-927268 | 07/01/2019 | 19:56:34 | 1201 - UNWELCOME GUEST | 535 KENMORE AV |
| 19-927323 | 07/02/2019 | 03:22:31 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-927690 | 07/04/2019 | 15:29:39 | 4504 - EMS | 535 KENMORE AV |
| 19-927780 | 07/05/2019 | 02:17:51 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-927935 | 07/06/2019 | 03:29:38 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-927988 | 07/06/2019 | 11:32:48 | 3099 - TRAFFIC INFRACTION - OTHER | 593 KENMORE AV |
| 19-927992 | 07/06/2019 | 11:46:43 | 3464 - SUSPICIOUS PERSON | 535 KENMORE AV |
| 19-928385 | 07/08/2019 | 22:57:36 | 3464 - SUSPICIOUS PERSON | 535 KENMORE AV |

TTPD00077

| Complaint | Date | | Call Type | Address |
|---|---|---|---|---|
| 19-928577 | 07/10/2019 | 09:55:02 | 3099 - TRAFFIC INFRACTION - OTHER | 447 KENMORE AV |
| 19-928578 | 07/10/2019 | 10:07:55 | 4803 - PREMISES CHECK | 447 KENMORE AV |
| 19-928841 | 07/12/2019 | 03:38:39 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-928961 | 07/12/2019 | 20:23:29 | 2708 - FALSE ALARM - BUSINESS - HUMAN ERR | 465 KENMORE AV |
| 19-929042 | 07/13/2019 | 10:30:54 | 5007 - CUSTOMER TROUBLE | 535 KENMORE AV |
| 19-929250 | 07/14/2019 | 21:54:45 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-929473 | 07/16/2019 | 09:34:57 | 3099 - TRAFFIC INFRACTION - OTHER | 429 KENMORE AV |
| 19-929707 | 07/17/2019 | 22:16:15 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-929733 | 07/18/2019 | 01:31:26 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-929937 | 07/19/2019 | 07:18:36 | 2705 - FALSE ALARM - MALFUNCTION | 535 KENMORE AV |
| 19-930009 | 07/19/2019 | 16:53:54 | 3009 - PARKING VIOLATION / COMPLAINT | 589 KENMORE AV |
| 19-930208 | 07/21/2019 | 00:59:39 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-930270 | 07/21/2019 | 11:10:39 | 3099 - TRAFFIC INFRACTION - OTHER | 559 KENMORE AV |
| 19-930368 | 07/22/2019 | 02:46:54 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-930519 | 07/23/2019 | 05:14:52 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-930558 | 07/23/2019 | 11:05:53 | 3099 - TRAFFIC INFRACTION - OTHER | 401 KENMORE AV |
| 19-930657 | 07/23/2019 | 22:38:01 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-930679 | 07/24/2019 | 02:27:13 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-930850 | 07/25/2019 | 02:55:28 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-931014 | 07/26/2019 | 02:33:56 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-931138 | 07/27/2019 | 02:53:32 | 3464 - SUSPICIOUS PERSON | 535 KENMORE AV |
| 19-931281 | 07/28/2019 | 05:57:46 | 4514 - CHECK WELFARE | 535 KENMORE AV |
| 19-931294 | 07/28/2019 | 08:45:00 | 1201 - UNWELCOME GUEST | 535 KENMORE AV |
| 19-931299 | 07/28/2019 | 09:30:13 | 1201 - UNWELCOME GUEST | 535 KENMORE AV |
| 19-931701 | 07/31/2019 | 02:26:15 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-932152 | 08/03/2019 | 04:59:09 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-932897 | 08/08/2019 | 13:11:08 | 3099 - TRAFFIC INFRACTION - OTHER | 571 KENMORE AV |
| 19-933136 | 08/10/2019 | 09:32:04 | 3099 - TRAFFIC INFRACTION - OTHER | 487 KENMORE AV |
| 19-933420 | 08/12/2019 | 17:01:42 | 3468 - UNKNOWN TROUBLE | 567 KENMORE AV 1 |
| 19-933427 | 08/12/2019 | 18:21:06 | 4501 - ASSIST OTHER POLICE | 567 KENMORE AV 1 |
| 19-933503 | 08/13/2019 | 06:27:29 | 1611 - LARCENY - SHOPLIFTING | 535 KENMORE AV |
| 19-933568 | 08/13/2019 | 18:02:23 | 4508 - ASSIST PERSON | 567 KENMORE AV 1 |
| 19-933588 | 08/13/2019 | 21:49:47 | 1000 - UUV | 535 KENMORE AV |
| 19-933632 | 08/14/2019 | 05:28:18 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-933741 | 08/15/2019 | 02:33:27 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-933855 | 08/15/2019 | 22:18:05 | 3799 - ANIMAL COMPLAINT-OTHER | 571 KENMORE AV UPPER |
| 19-934052 | 08/17/2019 | 05:16:23 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-934123 | 08/17/2019 | 20:22:33 | 1611 - LARCENY - SHOPLIFTING | 535 KENMORE AV |
| 19-934397 | 08/19/2019 | 21:22:23 | 3464 - SUSPICIOUS PERSON | 535 KENMORE AV |
| 19-934540 | 08/21/2019 | 01:36:49 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-934695 | 08/21/2019 | 23:04:25 | 3707 - ANIMAL LOOSE | 535 KENMORE AV |
| 19-935156 | 08/25/2019 | 04:48:44 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-935210 | 08/25/2019 | 16:11:20 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-935658 | 08/29/2019 | 02:52:36 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-935712 | 08/29/2019 | 11:34:58 | 4507 - LOCK IN/OUT | 535 KENMORE AV |

TTPD00078

| Complaint | Date | | Call Type | Address |
|---|---|---|---|---|
| 19-936177 | 09/01/2019 | 12:56:42 | 4901 - ACCIDENT PDO | 401 KENMORE AV |
| 19-936233 | 09/01/2019 | 21:44:19 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-936254 | 09/02/2019 | 01:27:05 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-936334 | 09/02/2019 | 13:53:33 | 4517 - ATTEMPT TO LOCATE | 559 KENMORE AV LOWER |
| 19-936360 | 09/02/2019 | 17:20:32 | 3099 - TRAFFIC INFRACTION - OTHER | 571 KENMORE AV |
| 19-936748 | 09/05/2019 | 03:12:34 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-936834 | 09/05/2019 | 16:48:27 | 3099 - TRAFFIC INFRACTION - OTHER | 487 KENMORE AV |
| 19-937016 | 09/06/2019 | 21:38:38 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-937181 | 09/08/2019 | 01:59:44 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-937352 | 09/09/2019 | 12:29:39 | 3099 - TRAFFIC INFRACTION - OTHER | 593 KENMORE AV |
| 19-937462 | 09/10/2019 | 04:02:51 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-937591 | 09/11/2019 | 02:30:53 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-937634 | 09/11/2019 | 10:31:56 | 3099 - TRAFFIC INFRACTION - OTHER | 401 KENMORE AV |
| 19-937813 | 09/12/2019 | 14:46:51 | 3099 - TRAFFIC INFRACTION - OTHER | 429 KENMORE AV |
| 19-937863 | 09/13/2019 | 00:08:06 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-938061 | 09/14/2019 | 09:50:06 | 4504 - EMS | 447 KENMORE AV |
| 19-938065 | 09/14/2019 | 10:14:54 | 3099 - TRAFFIC INFRACTION - OTHER | 487 KENMORE AV |
| 19-938182 | 09/15/2019 | 06:01:52 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-938384 | 09/16/2019 | 13:44:46 | 4504 - EMS | 406 VULCAN ST UPPER @ KENMORE AV |
| 19-938407 | 09/16/2019 | 16:55:47 | 3099 - TRAFFIC INFRACTION - OTHER | 401 KENMORE AV |
| 19-938441 | 09/16/2019 | 20:27:37 | 4508 - ASSIST PERSON | 535 KENMORE AV |
| 19-938517 | 09/17/2019 | 06:01:04 | 4508 - ASSIST PERSON | 535 KENMORE AV |
| 19-938823 | 09/19/2019 | 01:25:02 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-938935 | 09/19/2019 | 19:07:59 | 2705 - FALSE ALARM - MALFUNCTION | 465 KENMORE AV |
| 19-939132 | 09/21/2019 | 00:20:09 | 4803 - PREMISES CHECK | 501 KENMORE AV |
| 19-939145 | 09/21/2019 | 04:00:12 | 5102 - PROPERTY FOUND | 501 KENMORE AV |
| 19-939312 | 09/22/2019 | 11:24:20 | 3099 - TRAFFIC INFRACTION - OTHER | 401 KENMORE AV |
| 19-939386 | 09/23/2019 | 00:59:18 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-939525 | 09/23/2019 | 21:55:31 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-939550 | 09/24/2019 | 01:06:10 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-939625 | 09/24/2019 | 12:35:06 | 1699 - LARCENY-OTHER | 535 KENMORE AV |
| 19-939810 | 09/25/2019 | 17:19:27 | 3099 - TRAFFIC INFRACTION - OTHER | 501 KENMORE AV |
| 19-939965 | 09/26/2019 | 17:36:34 | 3099 - TRAFFIC INFRACTION - OTHER | 501 KENMORE AV |
| 19-940129 | 09/27/2019 | 17:09:10 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 19-940135 | 09/27/2019 | 17:23:03 | 3099 - TRAFFIC INFRACTION - OTHER | 567 KENMORE AV |
| 19-940191 | 09/28/2019 | 01:43:26 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-940247 | 09/28/2019 | 11:08:54 | 3099 - TRAFFIC INFRACTION - OTHER | 417 KENMORE AV |
| 19-940292 | 09/28/2019 | 19:33:58 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-940356 | 09/29/2019 | 03:47:50 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-940612 | 09/30/2019 | 22:35:37 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-940662 | 10/01/2019 | 06:10:40 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-940798 | 10/02/2019 | 03:27:23 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-940872 | 10/02/2019 | 16:32:14 | 3099 - TRAFFIC INFRACTION - OTHER | 417 KENMORE AV |
| 19-940902 | 10/02/2019 | 20:46:25 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-940965 | 10/03/2019 | 06:21:40 | 4504 - EMS | 535 KENMORE AV |

**27**

| Complaint | Date | | Call Type | Address |
|---|---|---|---|---|
| 19-941150 | 10/04/2019 | 11:41:35 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 19-941224 | 10/04/2019 | 22:14:32 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-941421 | 10/06/2019 | 04:56:33 | 5099 - DISTURBANCE OTHER | 501 KENMORE AV |
| 19-941568 | 10/07/2019 | 06:43:29 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-941906 | 10/09/2019 | 11:10:04 | 3099 - TRAFFIC INFRACTION - OTHER | 593 KENMORE AV |
| 19-941953 | 10/09/2019 | 17:52:50 | 3099 - TRAFFIC INFRACTION - OTHER | 571 KENMORE AV |
| 19-942015 | 10/10/2019 | 01:18:08 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-942112 | 10/10/2019 | 13:26:20 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 19-942641 | 10/14/2019 | 02:08:07 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-942691 | 10/14/2019 | 09:43:02 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 19-942704 | 10/14/2019 | 11:01:06 | 3099 - TRAFFIC INFRACTION - OTHER | 559 KENMORE AV |
| 19-942758 | 10/14/2019 | 22:29:42 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-942884 | 10/15/2019 | 17:14:12 | 1200 - TRESPASS | 535 KENMORE AV |
| 19-942899 | 10/15/2019 | 18:41:21 | 3099 - TRAFFIC INFRACTION - OTHER | 571 KENMORE AV |
| 19-943266 | 10/18/2019 | 03:47:29 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-943404 | 10/19/2019 | 02:26:40 | 3004 - SPEEDING | 563 KENMORE AV |
| 19-943630 | 10/20/2019 | 19:48:37 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-943656 | 10/21/2019 | 00:26:46 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-943728 | 10/21/2019 | 10:07:10 | 3099 - TRAFFIC INFRACTION - OTHER | 447 KENMORE AV |
| 19-943729 | 10/21/2019 | 10:11:48 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 19-943877 | 10/22/2019 | 09:07:19 | 4499 - FIRE ALARM / FIRE OTHER | 501 KENMORE AV |
| 19-943948 | 10/22/2019 | 19:52:28 | 3099 - TRAFFIC INFRACTION - OTHER | 401 KENMORE AV |
| 19-943970 | 10/22/2019 | 23:16:19 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-943987 | 10/23/2019 | 01:43:52 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-944030 | 10/23/2019 | 07:05:23 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-944070 | 10/23/2019 | 12:01:13 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-944171 | 10/24/2019 | 01:41:45 | 4514 - CHECK WELFARE | 535 KENMORE AV |
| 19-944609 | 10/26/2019 | 22:24:07 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-944656 | 10/27/2019 | 04:42:32 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-944910 | 10/28/2019 | 16:34:54 | 5007 - CUSTOMER TROUBLE | 447 KENMORE AV |
| 19-944955 | 10/28/2019 | 22:16:59 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-945115 | 10/29/2019 | 19:06:51 | 3099 - TRAFFIC INFRACTION - OTHER | 429 KENMORE AV |
| 19-945280 | 10/30/2019 | 19:07:51 | 1200 - TRESPASS | 535 KENMORE AV |
| 19-945427 | 10/31/2019 | 17:41:14 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-945673 | 11/01/2019 | 20:59:41 | 4508 - ASSIST PERSON | 535 KENMORE AV |
| 19-945707 | 11/02/2019 | 02:39:57 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-945757 | 11/02/2019 | 10:48:47 | 3099 - TRAFFIC INFRACTION - OTHER | 417 KENMORE AV |
| 19-945807 | 11/02/2019 | 18:32:14 | 4508 - ASSIST PERSON | 535 KENMORE AV |
| 19-945822 | 11/02/2019 | 20:11:25 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-945906 | 11/03/2019 | 10:35:57 | 3099 - TRAFFIC INFRACTION - OTHER | 417 KENMORE AV |
| 19-946485 | 11/07/2019 | 01:44:20 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-946567 | 11/07/2019 | 14:42:49 | 3099 - TRAFFIC INFRACTION - OTHER | 447 KENMORE AV |
| 19-946570 | 11/07/2019 | 14:58:40 | 3099 - TRAFFIC INFRACTION - OTHER | 487 KENMORE AV |
| 19-946706 | 11/08/2019 | 11:36:02 | 3099 - TRAFFIC INFRACTION - OTHER | 583 KENMORE AV |
| 19-946722 | 11/08/2019 | 14:24:28 | 4504 - EMS | 535 KENMORE AV |

TTPD00080

| Complaint | Date | | Call Type | Address |
|---|---|---|---|---|
| 19-946724 | 11/08/2019 | 14:44:54 | 3099 - TRAFFIC INFRACTION - OTHER | 593 KENMORE AV |
| 19-946815 | 11/09/2019 | 06:24:51 | 4614 - REFERRAL-PUBLIC UTILITIES | 583 KENMORE AV @ PARKER BD |
| 19-946850 | 11/09/2019 | 10:24:14 | 3099 - TRAFFIC INFRACTION - OTHER | 429 KENMORE AV |
| 19-946903 | 11/09/2019 | 22:23:47 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-946925 | 11/10/2019 | 01:02:09 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-947050 | 11/10/2019 | 22:39:14 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-947114 | 11/11/2019 | 08:51:25 | 3099 - TRAFFIC INFRACTION - OTHER | 571 KENMORE AV |
| 19-947210 | 11/11/2019 | 22:21:54 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-947364 | 11/12/2019 | 20:04:26 | 5007 - CUSTOMER TROUBLE | 535 KENMORE AV |
| 19-947455 | 11/13/2019 | 11:38:51 | 1699 - LARCENY-OTHER | 417 KENMORE AV |
| 19-947539 | 11/14/2019 | 01:14:44 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-947621 | 11/14/2019 | 11:56:23 | 5006 - SNOWBALL COMPLAINT | 501 KENMORE AV |
| 19-947784 | 11/15/2019 | 11:31:27 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-947869 | 11/16/2019 | 00:45:46 | 3099 - TRAFFIC INFRACTION - OTHER | 429 KENMORE AV |
| 19-947916 | 11/16/2019 | 10:02:20 | 3099 - TRAFFIC INFRACTION - OTHER | 465 KENMORE AV |
| 19-948043 | 11/17/2019 | 08:10:55 | 2700 - FALSE ALARM (NOT FIRE) | 447 KENMORE AV |
| 19-948315 | 11/19/2019 | 08:47:28 | 3099 - TRAFFIC INFRACTION - OTHER | 401 KENMORE AV |
| 19-948423 | 11/20/2019 | 00:43:06 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-948476 | 11/20/2019 | 08:49:29 | 3099 - TRAFFIC INFRACTION - OTHER | 501 KENMORE AV |
| 19-948551 | 11/20/2019 | 21:30:40 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-948908 | 11/22/2019 | 22:18:45 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-948912 | 11/22/2019 | 22:34:33 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-948963 | 11/23/2019 | 05:30:00 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-948989 | 11/23/2019 | 11:02:59 | 2708 - FALSE ALARM - BUSINESS - HUMAN ERR | 447 KENMORE AV |
| 19-949054 | 11/23/2019 | 23:38:19 | 5008 - LOUD MUSIC | 567 KENMORE AV 2 |
| 19-949601 | 11/27/2019 | 22:48:36 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-949629 | 11/28/2019 | 02:10:25 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-949652 | 11/28/2019 | 06:06:03 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-949744 | 11/29/2019 | 03:26:13 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-949957 | 11/30/2019 | 23:14:24 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-950267 | 12/03/2019 | 03:42:27 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-950422 | 12/04/2019 | 01:05:09 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-950439 | 12/04/2019 | 02:07:00 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-950617 | 12/05/2019 | 04:10:32 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-950770 | 12/06/2019 | 05:36:14 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-951075 | 12/08/2019 | 20:06:49 | 5007 - CUSTOMER TROUBLE | 535 KENMORE AV |
| 19-951087 | 12/08/2019 | 22:35:50 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-951302 | 12/10/2019 | 09:19:27 | 3099 - TRAFFIC INFRACTION - OTHER | 593 KENMORE AV |
| 19-951567 | 12/12/2019 | 06:04:40 | 2708 - FALSE ALARM - BUSINESS - HUMAN ERR | 447 KENMORE AV |
| 19-951962 | 12/15/2019 | 02:02:52 | 4802 - ALARM ACTIVATED / ALARM RINGING | 447 KENMORE AV |
| 19-952117 | 12/16/2019 | 03:33:54 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-952280 | 12/17/2019 | 02:53:33 | 4802 - ALARM ACTIVATED / ALARM RINGING | 447 KENMORE AV |
| 19-952291 | 12/17/2019 | 04:12:50 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-952375 | 12/17/2019 | 18:36:27 | 2708 - FALSE ALARM - BUSINESS - HUMAN ERR | 501 KENMORE AV |
| 19-952393 | 12/17/2019 | 23:09:53 | 4803 - PREMISES CHECK | 535 KENMORE AV |

**29**

| Complaint | Date | | Call Type | Address |
|-----------|------|--|-----------|---------|
| 19-952526 | 12/18/2019 | 21:48:40 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-952568 | 12/19/2019 | 03:29:28 | 4802 - ALARM ACTIVATED / ALARM RINGING | 447 KENMORE AV |
| 19-952598 | 12/19/2019 | 10:02:04 | 3004 - SPEEDING | 501 KENMORE AV |
| 19-952703 | 12/20/2019 | 03:12:34 | 2705 - FALSE ALARM - MALFUNCTION | 447 KENMORE AV |
| 19-952840 | 12/21/2019 | 01:13:45 | 4802 - ALARM ACTIVATED / ALARM RINGING | 447 KENMORE AV |
| 19-952968 | 12/21/2019 | 20:55:38 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-953081 | 12/22/2019 | 19:05:45 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-953201 | 12/23/2019 | 15:28:42 | 5002 - DOMESTIC TROUBLE | 593 KENMORE AV |
| 19-953328 | 12/24/2019 | 12:43:20 | 4802 - ALARM ACTIVATED / ALARM RINGING | 465 KENMORE AV |
| 19-953333 | 12/24/2019 | 13:04:42 | 1604 - LARCENY- VEHICLE ENTRY | 571 KENMORE AV |
| 19-953423 | 12/25/2019 | 20:56:45 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-953568 | 12/27/2019 | 01:33:39 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-953837 | 12/28/2019 | 23:11:34 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-953839 | 12/28/2019 | 23:42:59 | 2705 - FALSE ALARM - MALFUNCTION | 447 KENMORE AV |
| 19-953877 | 12/29/2019 | 04:13:09 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-953987 | 12/30/2019 | 02:23:51 | 4802 - ALARM ACTIVATED / ALARM RINGING | 447 KENMORE AV |
| 19-954003 | 12/30/2019 | 04:09:21 | 3465 - SUSPICIOUS PERSON W/VEHICLE | 535 KENMORE AV |
| 19-954098 | 12/30/2019 | 21:06:00 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 19-954162 | 12/31/2019 | 08:34:58 | 4901 - ACCIDENT PDO | 535 KENMORE AV |
| 20-200032 | 01/01/2020 | 04:02:52 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-200185 | 01/02/2020 | 09:29:24 | 3099 - TRAFFIC INFRACTION - OTHER | 401 KENMORE AV |
| 20-200246 | 01/02/2020 | 18:09:18 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 20-200271 | 01/02/2020 | 22:42:49 | 2500 - DRUNK | 535 KENMORE AV |
| 20-200316 | 01/03/2020 | 04:48:27 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-200583 | 01/05/2020 | 01:49:43 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-200785 | 01/06/2020 | 14:57:00 | 3039 - V&T COMMERCIAL VEHICLE  MISC | 487 KENMORE AV |
| 20-200810 | 01/06/2020 | 18:14:52 | 5007 - CUSTOMER TROUBLE | 535 KENMORE AV |
| 20-200829 | 01/06/2020 | 21:36:18 | 4514 - CHECK WELFARE | 447 KENMORE AV |
| 20-200892 | 01/07/2020 | 06:15:26 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-200913 | 01/07/2020 | 09:30:10 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 20-200942 | 01/07/2020 | 13:49:23 | 3099 - TRAFFIC INFRACTION - OTHER | 571 KENMORE AV 1 |
| 20-200968 | 01/07/2020 | 17:38:01 | 5099 - DISTURBANCE OTHER | 535 KENMORE AV |
| 20-201015 | 01/08/2020 | 01:05:45 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-201307 | 01/09/2020 | 20:41:29 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-201654 | 01/12/2020 | 03:04:13 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-201792 | 01/13/2020 | 01:15:06 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-201823 | 01/13/2020 | 03:56:46 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-201848 | 01/13/2020 | 08:26:36 | 1201 - UNWELCOME GUEST | 567 KENMORE AV LOWER |
| 20-201940 | 01/14/2020 | 00:22:45 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-201987 | 01/14/2020 | 04:10:54 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-201996 | 01/14/2020 | 05:51:09 | 5001 - DISTURBANCE-PUBLIC PLACE | 535 KENMORE AV |
| 20-201999 | 01/14/2020 | 06:26:06 | 4501 - ASSIST OTHER POLICE | 535 KENMORE AV |
| 20-202122 | 01/15/2020 | 00:50:45 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-202426 | 01/17/2020 | 01:48:14 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-202534 | 01/17/2020 | 19:40:49 | 4803 - PREMISES CHECK | 535 KENMORE AV |

TTPD00082

| Complaint | Date | | Call Type | Address |
|---|---|---|---|---|
| 20-202556 | 01/18/2020 | 01:00:59 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-202592 | 01/18/2020 | 06:31:57 | 3099 - TRAFFIC INFRACTION - OTHER | 583 KENMORE AV |
| 20-202831 | 01/19/2020 | 22:39:12 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-202867 | 01/20/2020 | 01:12:49 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-202933 | 01/20/2020 | 13:36:11 | 4504 - EMS | 535 KENMORE AV |
| 20-202939 | 01/20/2020 | 14:26:58 | 3001 - DRUNK DRIVING | 535 KENMORE AV |
| 20-203030 | 01/21/2020 | 02:08:24 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-203167 | 01/21/2020 | 22:24:14 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-203316 | 01/22/2020 | 22:55:00 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-203336 | 01/23/2020 | 01:26:58 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-203495 | 01/24/2020 | 01:54:25 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-203612 | 01/24/2020 | 19:15:33 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-203687 | 01/25/2020 | 06:16:58 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-203816 | 01/26/2020 | 06:06:08 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-203981 | 01/27/2020 | 06:48:20 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-203999 | 01/27/2020 | 10:02:26 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-204074 | 01/27/2020 | 21:19:08 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-204110 | 01/28/2020 | 01:29:44 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-204234 | 01/28/2020 | 22:44:54 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-204322 | 01/29/2020 | 10:58:43 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 20-204608 | 01/31/2020 | 09:23:35 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 20-204620 | 01/31/2020 | 10:33:11 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 20-204866 | 02/01/2020 | 23:15:47 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-204909 | 02/02/2020 | 06:50:18 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-205146 | 02/04/2020 | 00:37:09 | 3465 - SUSPICIOUS PERSON W/VEHICLE | 535 KENMORE AV |
| 20-205485 | 02/06/2020 | 01:28:50 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-206014 | 02/09/2020 | 20:37:26 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-206244 | 02/11/2020 | 07:08:04 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-206247 | 02/11/2020 | 07:30:38 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-207084 | 02/17/2020 | 01:19:02 | 5008 - LOUD MUSIC | 567 KENMORE AV UPPER |
| 20-207191 | 02/17/2020 | 20:27:23 | 1201 - UNWELCOME GUEST | 535 KENMORE AV |
| 20-207239 | 02/18/2020 | 02:26:25 | 3099 - TRAFFIC INFRACTION - OTHER | 535 KENMORE AV |
| 20-207240 | 02/18/2020 | 02:29:13 | 5002 - DOMESTIC TROUBLE | 567 KENMORE AV LOWER |
| 20-207996 | 02/23/2020 | 12:18:37 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-208362 | 02/25/2020 | 22:26:56 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-208398 | 02/26/2020 | 01:57:04 | 3099 - TRAFFIC INFRACTION - OTHER | 487 KENMORE AV |
| 20-208426 | 02/26/2020 | 06:53:43 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-208936 | 03/01/2020 | 07:03:19 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-209213 | 03/03/2020 | 05:21:44 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-209324 | 03/03/2020 | 22:47:23 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-209680 | 03/06/2020 | 10:42:22 | 2708 - FALSE ALARM - BUSINESS - HUMAN ERR | 501 KENMORE AV |
| 20-211067 | 03/16/2020 | 04:40:55 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-211138 | 03/16/2020 | 21:54:04 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-211178 | 03/17/2020 | 03:16:27 | 4803 - PREMISES CHECK | 447 KENMORE AV |
| 20-211414 | 03/19/2020 | 10:04:46 | 4803 - PREMISES CHECK | 535 KENMORE AV |

TTPD00083

| Complaint | Date | | Call Type | Address |
|---|---|---|---|---|
| 20-211819 | 03/22/2020 | 19:05:01 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-212364 | 03/27/2020 | 17:44:38 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-212531 | 03/29/2020 | 13:16:52 | 2705 - FALSE ALARM - MALFUNCTION | 535 KENMORE AV |
| 20-212655 | 03/30/2020 | 13:49:21 | 4802 - ALARM ACTIVATED / ALARM RINGING | 501 KENMORE AV |
| 20-212838 | 03/31/2020 | 21:08:07 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-213295 | 04/05/2020 | 00:39:53 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-213547 | 04/06/2020 | 19:37:21 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-213616 | 04/07/2020 | 11:21:19 | 5102 - PROPERTY FOUND | 401 KENMORE AV |
| 20-214495 | 04/15/2020 | 01:41:29 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-215352 | 04/23/2020 | 03:19:44 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-215461 | 04/24/2020 | 00:04:48 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-215595 | 04/25/2020 | 00:10:49 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-215787 | 04/26/2020 | 21:19:30 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-216000 | 04/29/2020 | 00:17:24 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-216011 | 04/29/2020 | 02:02:59 | 2705 - FALSE ALARM - MALFUNCTION | 487 KENMORE AV |
| 20-216207 | 04/30/2020 | 17:35:41 | 4508 - ASSIST PERSON | 535 KENMORE AV |
| 20-216254 | 05/01/2020 | 00:04:08 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-216359 | 05/01/2020 | 19:00:59 | 3438 - HARASSMENT | 535 KENMORE AV |
| 20-216620 | 05/04/2020 | 03:08:21 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-216641 | 05/04/2020 | 12:46:06 | 3477 - POLICE INFO | 535 KENMORE AV |
| 20-216788 | 05/05/2020 | 20:32:07 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-216870 | 05/06/2020 | 17:19:18 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-217018 | 05/08/2020 | 00:06:05 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-217442 | 05/12/2020 | 11:26:46 | 3002 - RECKLESS OPERATION | 401 KENMORE AV |
| 20-217520 | 05/13/2020 | 01:20:51 | 1108 - BURGLARY NON-RESIDENCE | 535 KENMORE AV |
| 20-217600 | 05/13/2020 | 18:22:35 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-217629 | 05/13/2020 | 22:53:30 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-217651 | 05/14/2020 | 01:42:55 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-217951 | 05/17/2020 | 01:50:39 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-218084 | 05/18/2020 | 02:01:59 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-218207 | 05/19/2020 | 00:18:02 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-218246 | 05/19/2020 | 04:23:22 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-218275 | 05/19/2020 | 12:39:07 | 1699 - LARCENY-OTHER | 487 KENMORE AV |
| 20-218349 | 05/20/2020 | 00:29:33 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-218371 | 05/20/2020 | 04:10:49 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-218456 | 05/20/2020 | 19:14:25 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-218475 | 05/20/2020 | 21:17:49 | 4508 - ASSIST PERSON | 535 KENMORE AV |
| 20-218877 | 05/24/2020 | 00:16:44 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-218902 | 05/24/2020 | 08:06:15 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-218999 | 05/25/2020 | 00:11:07 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-219209 | 05/26/2020 | 14:45:42 | 5007 - CUSTOMER TROUBLE | 535 KENMORE AV |
| 20-219230 | 05/26/2020 | 17:04:30 | 4802 - ALARM ACTIVATED / ALARM RINGING | 487 KENMORE AV |
| 20-219248 | 05/26/2020 | 18:54:38 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-219286 | 05/27/2020 | 01:37:15 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-219519 | 05/29/2020 | 00:17:02 | 4803 - PREMISES CHECK | 535 KENMORE AV |

**32**

| Complaint | Date | | Call Type | Address |
|---|---|---|---|---|
| 20-219549 | 05/29/2020 | 06:30:52 | 3464 - SUSPICIOUS PERSON | 597 KENMORE AV |
| 20-219550 | 05/29/2020 | 07:09:54 | 2708 - FALSE ALARM - BUSINESS - HUMAN ERR | 465 KENMORE AV |
| 20-219644 | 05/30/2020 | 00:35:38 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-219706 | 05/30/2020 | 16:14:50 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-219772 | 05/31/2020 | 03:06:11 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-219808 | 05/31/2020 | 13:21:13 | 2700 - FALSE ALARM (NOT FIRE) | 487 KENMORE AV |
| 20-219875 | 05/31/2020 | 23:02:09 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-219893 | 06/01/2020 | 00:41:47 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-219897 | 06/01/2020 | 01:21:51 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-219966 | 06/01/2020 | 14:06:12 | 4508 - ASSIST PERSON | 487 KENMORE AV |
| 20-220019 | 06/01/2020 | 20:21:55 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-220049 | 06/02/2020 | 02:08:57 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-220059 | 06/02/2020 | 03:17:22 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-220360 | 06/04/2020 | 01:33:47 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-220375 | 06/04/2020 | 03:42:12 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-220484 | 06/05/2020 | 02:12:10 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-220597 | 06/05/2020 | 21:54:14 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-220629 | 06/06/2020 | 01:30:51 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-220639 | 06/06/2020 | 02:52:27 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-220644 | 06/06/2020 | 03:13:15 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-220711 | 06/06/2020 | 18:46:13 | 4508 - ASSIST PERSON | 535 KENMORE AV |
| 20-220724 | 06/06/2020 | 20:43:44 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-220854 | 06/08/2020 | 00:40:36 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-221096 | 06/10/2020 | 02:27:03 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-221179 | 06/10/2020 | 21:51:27 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-221209 | 06/11/2020 | 03:30:26 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-221253 | 06/11/2020 | 16:54:54 | 4901 - ACCIDENT PDO | 535 KENMORE AV  @  KLAUDER RD |
| 20-221421 | 06/13/2020 | 00:29:53 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-221565 | 06/14/2020 | 00:34:20 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-221782 | 06/16/2020 | 00:59:00 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-221998 | 06/17/2020 | 17:23:59 | 4404 - FIRE GRASS | 487 KENMORE AV  @  FAIRFIELD AV |
| 20-222003 | 06/17/2020 | 18:05:52 | 3099 - TRAFFIC INFRACTION - OTHER | 563 KENMORE AV |
| 20-222044 | 06/18/2020 | 01:10:52 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-222555 | 06/22/2020 | 00:41:03 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-222681 | 06/22/2020 | 21:51:48 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-222704 | 06/23/2020 | 01:19:58 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-222836 | 06/24/2020 | 01:03:39 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-223390 | 06/28/2020 | 04:52:01 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-223445 | 06/28/2020 | 17:36:12 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-223504 | 06/29/2020 | 00:55:25 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-223758 | 06/30/2020 | 21:57:00 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-223768 | 06/30/2020 | 23:59:49 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-223793 | 07/01/2020 | 01:55:32 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-223887 | 07/01/2020 | 17:18:34 | 2702 - FALSE ALARM - BURGLARY | 487 KENMORE AV |
| 20-224247 | 07/04/2020 | 01:10:24 | 4803 - PREMISES CHECK | 535 KENMORE AV |

TTPD00085

| Complaint | Date | | Call Type | Address |
|---|---|---|---|---|
| 20-224254 | 07/04/2020 | 01:36:18 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-224597 | 07/06/2020 | 04:07:55 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-224730 | 07/07/2020 | 00:45:37 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-224846 | 07/07/2020 | 21:19:19 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-224888 | 07/08/2020 | 02:26:29 | 1108 - BURGLARY NON-RESIDENCE | 535 KENMORE AV |
| 20-224997 | 07/08/2020 | 22:21:27 | 5007 - CUSTOMER TROUBLE | 535 KENMORE AV |
| 20-225001 | 07/08/2020 | 23:51:38 | 4508 - ASSIST PERSON | 535 KENMORE AV |
| 20-225024 | 07/09/2020 | 04:08:25 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-225084 | 07/09/2020 | 13:32:27 | 1500 - FRAUD | 535 KENMORE AV |
| 20-225151 | 07/10/2020 | 01:00:07 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-225183 | 07/10/2020 | 04:59:43 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-225188 | 07/10/2020 | 05:30:44 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-225231 | 07/10/2020 | 11:28:09 | 4508 - ASSIST PERSON | 535 KENMORE AV |
| 20-225335 | 07/11/2020 | 03:38:49 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-225370 | 07/11/2020 | 09:13:47 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-225469 | 07/12/2020 | 03:00:23 | 4803 - PREMISES CHECK | 487 KENMORE AV |
| 20-225478 | 07/12/2020 | 03:44:59 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-225486 | 07/12/2020 | 04:51:52 | 1199 - BURGLARY-OTHER | 535 KENMORE AV |
| 20-225514 | 07/12/2020 | 09:40:24 | 5102 - PROPERTY FOUND | 535 KENMORE AV |
| 20-225560 | 07/12/2020 | 18:52:33 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-225620 | 07/13/2020 | 02:34:38 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-225623 | 07/13/2020 | 02:50:50 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-225680 | 07/13/2020 | 11:22:29 | 4508 - ASSIST PERSON | 535 KENMORE AV |
| 20-225733 | 07/13/2020 | 20:28:35 | 5007 - CUSTOMER TROUBLE | 535 KENMORE AV |
| 20-225770 | 07/14/2020 | 03:58:13 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-225778 | 07/14/2020 | 06:21:48 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-225873 | 07/14/2020 | 22:11:18 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-225899 | 07/15/2020 | 01:38:37 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-225913 | 07/15/2020 | 04:21:25 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-225988 | 07/15/2020 | 18:27:38 | 3099 - TRAFFIC INFRACTION - OTHER | 563 KENMORE AV |
| 20-226003 | 07/15/2020 | 20:56:24 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-226028 | 07/16/2020 | 00:25:17 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-226051 | 07/16/2020 | 02:29:44 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-226064 | 07/16/2020 | 04:41:47 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-226189 | 07/17/2020 | 00:47:19 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-226204 | 07/17/2020 | 02:14:32 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-226351 | 07/18/2020 | 00:48:37 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-226361 | 07/18/2020 | 01:23:29 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-226385 | 07/18/2020 | 03:27:18 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-226399 | 07/18/2020 | 04:41:53 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-226532 | 07/19/2020 | 03:00:14 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-226803 | 07/20/2020 | 23:20:40 | 4504 - EMS | 535 KENMORE AV |
| 20-226920 | 07/22/2020 | 00:50:59 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-226936 | 07/22/2020 | 02:41:24 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-227071 | 07/23/2020 | 02:10:14 | 4803 - PREMISES CHECK | 535 KENMORE AV |

**34**

| Complaint | Date | | Call Type | Address |
|---|---|---|---|---|
| 20-227097 | 07/23/2020 | 04:15:44 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-227229 | 07/24/2020 | 03:28:46 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-227247 | 07/24/2020 | 04:48:10 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-227272 | 07/24/2020 | 09:08:13 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-227324 | 07/24/2020 | 17:24:48 | 2705 - FALSE ALARM - MALFUNCTION | 487 KENMORE AV |
| 20-227401 | 07/25/2020 | 03:56:57 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-227519 | 07/25/2020 | 22:32:21 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-227791 | 07/28/2020 | 00:55:08 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-227802 | 07/28/2020 | 01:12:13 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-227811 | 07/28/2020 | 02:25:38 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-227966 | 07/29/2020 | 01:10:17 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-227991 | 07/29/2020 | 04:31:47 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-228280 | 07/31/2020 | 01:05:21 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-228313 | 07/31/2020 | 05:48:43 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-228344 | 07/31/2020 | 13:00:19 | 4901 - ACCIDENT PDO | 447 KENMORE AV |
| 20-228372 | 07/31/2020 | 17:53:05 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-228429 | 08/01/2020 | 01:46:15 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-228433 | 08/01/2020 | 02:25:11 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-228605 | 08/02/2020 | 18:04:40 | 4901 - ACCIDENT PDO | 535 KENMORE AV |
| 20-228669 | 08/03/2020 | 03:01:51 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-228774 | 08/03/2020 | 21:35:25 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-228785 | 08/03/2020 | 23:03:48 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-228803 | 08/04/2020 | 00:24:44 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-228910 | 08/04/2020 | 17:50:26 | 5007 - CUSTOMER TROUBLE | 535 KENMORE AV |
| 20-228937 | 08/04/2020 | 23:30:11 | 1902 - CRIMINAL MISCHIEF | 535 KENMORE AV |
| 20-228999 | 08/05/2020 | 05:06:57 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-229014 | 08/05/2020 | 07:13:47 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-229152 | 08/06/2020 | 02:06:59 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-229156 | 08/06/2020 | 02:21:22 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-229207 | 08/06/2020 | 10:59:03 | 3464 - SUSPICIOUS PERSON | 535 KENMORE AV |
| 20-229342 | 08/07/2020 | 04:04:04 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-229527 | 08/08/2020 | 14:16:33 | 3003 - ACCIDENT HIT & RUN | 597 KENMORE AV |
| 20-229587 | 08/09/2020 | 00:22:17 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-229688 | 08/09/2020 | 17:54:09 | 4514 - CHECK WELFARE | 487 KENMORE AV |
| 20-229721 | 08/10/2020 | 00:22:14 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-229902 | 08/11/2020 | 01:05:26 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-229908 | 08/11/2020 | 01:42:37 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-229929 | 08/11/2020 | 03:27:17 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-230062 | 08/12/2020 | 00:16:29 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-230066 | 08/12/2020 | 00:32:39 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-230115 | 08/12/2020 | 03:41:26 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-230189 | 08/12/2020 | 15:10:51 | 1699 - LARCENY-OTHER | 535 KENMORE AV |
| 20-230200 | 08/12/2020 | 16:27:52 | 5099 - DISTURBANCE OTHER | 535 KENMORE AV |
| 20-230236 | 08/12/2020 | 22:48:31 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-230243 | 08/13/2020 | 00:26:10 | 4803 - PREMISES CHECK | 535 KENMORE AV |

**35**

| Complaint | Date | | Call Type | Address |
|-----------|------|--|-----------|---------|
| 20-230263 | 08/13/2020 | 03:27:33 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-230396 | 08/14/2020 | 04:47:17 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-230523 | 08/15/2020 | 01:26:40 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-230529 | 08/15/2020 | 02:54:06 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-230561 | 08/15/2020 | 09:53:16 | 3099 - TRAFFIC INFRACTION - OTHER | 447 KENMORE AV |
| 20-230652 | 08/16/2020 | 00:21:51 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-230793 | 08/17/2020 | 00:37:02 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-230814 | 08/17/2020 | 02:02:36 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-230916 | 08/17/2020 | 16:38:12 | 5003 - DISTURBANCE-UNFOUNDED | 535 KENMORE AV |
| 20-230969 | 08/18/2020 | 00:13:53 | 4508 - ASSIST PERSON | 487 KENMORE AV |
| 20-230977 | 08/18/2020 | 00:30:50 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-230978 | 08/18/2020 | 00:31:29 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-231065 | 08/18/2020 | 17:02:01 | 5003 - DISTURBANCE-UNFOUNDED | 535 KENMORE AV |
| 20-231105 | 08/19/2020 | 00:40:47 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-231126 | 08/19/2020 | 02:46:54 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-231612 | 08/22/2020 | 04:49:08 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-231691 | 08/22/2020 | 18:58:19 | 5007 - CUSTOMER TROUBLE | 535 KENMORE AV |
| 20-231768 | 08/23/2020 | 02:28:29 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-231908 | 08/24/2020 | 02:38:17 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-231929 | 08/24/2020 | 04:44:31 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-231995 | 08/24/2020 | 15:55:26 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-232011 | 08/24/2020 | 17:31:47 | 4811 - TRAFFIC HAZARD | 535 KENMORE AV |
| 20-232145 | 08/25/2020 | 15:16:39 | 4501 - ASSIST OTHER POLICE | 535 KENMORE AV |
| 20-232323 | 08/27/2020 | 00:59:53 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-232368 | 08/27/2020 | 09:26:37 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-232517 | 08/28/2020 | 07:42:22 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-232553 | 08/28/2020 | 14:09:22 | 4504 - EMS | 501 KENMORE AV |
| 20-232554 | 08/28/2020 | 14:36:35 | 4508 - ASSIST PERSON | 535 KENMORE AV |
| 20-232604 | 08/29/2020 | 00:15:48 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-232628 | 08/29/2020 | 01:26:41 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-232760 | 08/29/2020 | 21:31:49 | 4803 - PREMISES CHECK | 535 KENMORE AV |
| 20-232794 | 08/30/2020 | 01:22:41 | 4803 - PREMISES CHECK | 535 KENMORE AV |

**Total Complaints:1600**

TTPD00088

## REPORT OF VIOLATION

**To: Chief Palombo**          **Report #**          **Date: July 16th, 2013**

| **NAME:** Mark Muscoreil | **RANK:** Police Officer 004 | **ASSIGNMENT:** Patrol Bureau #3 |
|---|---|---|
| **REPORT BY:** Thomas Haynes | **RANK:** Lieutenant 409 | |

**SECTION VIOLATED:** Section O-10   **DATE:** July 6, 2013   **TIME:** 1610 hours   **LOCATION:** 1311 Sheridan Drive

**SPECIFICATIONS OF VIOLATION:** Police Officer Mark Muscoreil did violate Section O-10 of the Operations Section of the Town of Tonawanda Police Department's Procedures Manual, being that during emergency operation of patrol vehicle #51, while responding to a call of larceny in-progress, he failed to operate said vehicle with due regard to all persons resulting in a personal injury and property damage accident. Police Officer Muscoreil previously received counseling for a personal injury and property damage accident that occurred on December 24, 2011, and was advised that any deviation from the established emergency response driving policy may result in disciplinary action against him.

LT. _____ 409
Signature of Reporting Officer

_____ #4
Signature of Named Officer/Civilian

**COMMANDING OFFICER'S ENDORSEMENT:**                **DATE:**

I ___JAMES STAUFFIGER_____ have investigated the above report and find the facts to be / ~~not to be~~ as stated. I therefore recommend that this report be / ~~not be~~ attached to, and become a permanent part of this individual's Service Record.

(If the facts are not as presented above, use the reverse side to properly present them)

_James Stauffer_ CAPT 501
Signature of Commanding Officer

------------------------------------------------------------

**CHIEF'S ENDORSEMENT:**

☑ Approved
☐ Disapproved
☐ Recommend other action as stated on the reverse

_Anthony Palombo_
Signature of Chief

## REPORT OF VIOLATION

**To: Chief Palombo**          **Report #**          **Date:  July 16th, 2013**

| | | |
|---|---|---|
| **NAME:** Mark Muscoreil | **RANK:** Police Officer 004 | **ASSIGNMENT:**  Patrol Bureau #3 |
| **REPORT BY:** Thomas Haynes | **RANK:** Lieutenant 409 | |

**SECTION VIOLATED:** Section O-10     **DATE:** July 6, 2013 **TIME:** 1610 hours  **LOCATION:** 1311 Sheridan Drive

SPECIFICATIONS OF VIOLATION:  Police Officer Mark Muscoreil did violate Section O-10 of the Operations Section of the Town of Tonawanda Police Department's Procedures Manual, being that during emergency operation of patrol vehicle #51, while responding to a call of larceny in-progress, he failed to operate said vehicle with due regard to all persons resulting in a personal injury and property damage accident.  Police Officer Muscoreil previously received counseling for a personal injury and property damage accident that occurred on December 24, 2011, and was advised that any deviation from the established emergency response driving policy may result in disciplinary action against him.

LT. _____ 409
Signature of Reporting Officer

M.R. _____ #4
Signature of Named Officer/Civilian

**COMMANDING OFFICER'S ENDORSEMENT:**                              **DATE:**

I  _JAMES STAUFFIGER_____  have investigated the above report and find the facts to be / ~~not to be~~ as stated. I therefore recommend that this report be  / ~~not be~~ attached to, and become a permanent part of this individual's Service Record.
     (If the facts are not as presented above, use the reverse side to properly present them)

_James Stauffiger_  CAPT 501
Signature of Commanding Officer

----------------------------------------------------------------------------------------

**CHIEF'S ENDORSEMENT:**

☑ Approved
☐ Disapproved
☐ Recommend other action as stated on the reverse

_Anty Palombo_
Signature of Chief

**Date:**          *August 14, 2013 at 4:23 pm*

**Present Were:**  *Chief Anthony J. Palombo*
                   *Assistant Chief Jerome C. Uschold III*
                   *Captain James Stauffiger*
                   *Lieutenant Thomas Haynes*

                   *Police Club President Christopher Kaiser*
                   *Shift Representative Joseph LoBrutto*
                   *Police Officer Mark Muscoreil*

*Hearing was recorded.*

*For violation of Section O-10, Police Officer Mark Muscoreil was suspended without pay or benefits for four (4) hours or, with permission of the Union, can forfeit (4) hours of compensatory time off.*

*Officer Muscoreil will turn in his badge, issued firearm, and police department I.D. prior to this suspension date.  Captain Stauffiger will schedule the suspension date(s) at his discretion.*

   **Date(s) served:**   *Wednesday, August 14, 2013 – Officer Muscoreil submitted request for time-off card for four (4) comp. hours and time removed from his time off bank by Capt. Stauffiger accordingly.*

*Police Officer Mark Muscoreil was advised that any future violation of departmental rules and regulations will result in more severe disciplinary action up to and including possible termination of employment.*

*This report of violation will be permanently placed in Officer Muscoreil's personnel file.*

**Anthony J. Palombo**
**Chief of Police**

*AJP/sm*

TTPD00091

### Notice of Impending Disciplinary Action

This form will officially notify you, **MARK MUSCOREIL**, a permanent employee of the Town of Tonawanda and a member of the Town of Tonawanda Police Club, Inc., of impending disciplinary action.

A.    A police officer under investigation by this department must have counsel or a representative of the Police Club with him during any interrogation unless waived in writing by the Police Officer and co-signed by Club Officer:  I hereby waive my right to have counsel or a Police Club representative present during these proceedings.

_____                    _____
Police Officer                                                            Club Officer

B.    Any interrogation of a Police Officer for a disciplinary violation, must be recorded either mechanically or by stenographer, and there will be no, "off the record" questions put to him unless waived in writing by the Police Officer and co-signed by a Club Officer:  I hereby waive my right to recording of the proceedings, and any, "off the record" questions that may be put to me.

_____                    _____
Police Officer                                                            Club Officer

C.    You have the right to opt for disciplinary proceeding in one of the following ways.

    1.    In accordance with the provisions of Section 75 of the Civil Service Law and all other laws, ordinances, rules and regulations applicable to the State of New York.

    2.    In accordance with Article IX, paragraph 9.04 of the collective bargaining agreement between the Town and the Town of Tonawanda Police Club, Inc. which allows the Police Officer to appeal discipline issued through the Grievance Procedure as per Article IV, section 4.01 of the agreement.

        Selection of either of the above procedures by the Police Officer forecloses the use of the other by either party.

    3.    Acceptance of Departmental discipline as administered by the Chief of Police.

I, **MARK MUSCOREIL**, have carefully read the above stated options.  At this time in response to the impending disciplinary action relating to Report of Violation **#06-2013**, dated **July 16, 2013** , I have selected the following procedure:

_____ Section 75, Civil Service Law.

_____ Grievance Procedure.

___X___ Departmental Discipline as administered by Chief of Police.

_____         _____
Employee Signature                                    Date

_____         _____
Chief of Police                                             Date

Rev. 01/12

TTPD00092

For 4 Hrs
Suspension c/Palml

**REQUEST FOR TIME OFF**

DATE(S) _8/14/13_ SHIFT _AFT._

SERV. (1) _____ VACATION DAY _____

G.P.L. _____ P.L. _____ COMP. _4 HRS_ HOL. _____

NAME _MUSCORELL_ BADGE # _004_

DATE SUBMITTED: _8/14/13_ WILL GO TO: _____

DATE _8/14/13_ APPROVED BY: _501_

DATE _____ DISAPPROVED BY: _____

ENTERED FLSA: _____ ENTERED P & T: _____

ENTERED T.OFF/PAYROLL: _____ ENTERED ON SCHEDULE: _____

*TTP-65 (REV. 12/09)* CALL IN:  Y     N

TTPD00093

**DEPARTMENT OF POLICE**
**TOWN OF TONAWANDA, NEW YORK**

## INTRA-DEPARTMENTAL COMMUNICATION

TO: Capt Baumgartner

DATE: 10/1/13

Town of Tonawanda
Police Department

SUBJECT: Focused Training: Officer Muscoreil

OCT – 7 2013

Chief of Police

Capt,

On October 1, 2013, I completed focused training for Officer Muscoreil. This training included going over the Police Manual as it relates to Emergency Operation (O-10) and Defensive Driving (O-10.1). Officer Muscoreil also completed practical exercises in Evasive Steering.

An Evasive Steering exercise rating sheet was completed to be placed in his training record.

Paul Yaeono #　 470

CC: A/C Uschold

Capt Stauffiger

Make endorsements, if necessary, on back

TTP-40

**TTPD00094**

## REPORT OF VIOLATION

**To: Chief Uschold**               **Report # 15-540954**               **Date: 09/19/2015**

| EMPLOYEE NAME:<br>Brian M. Valint | RANK:<br>Police Officer | ASSIGNMENT:<br>SWAT |
|---|---|---|
| SECTION VIOLATED:<br>4.01.31 | DATE & TIME of VIOLATION:<br>09/14/2015   0730 | LOCATION:<br>327 Hampshire St.  Buffalo |

**SPECIFICATIONS OF VIOLATION:**
**4.01.31: Failing to utilize department equipment for its intended purpose, in accordance with established departmental procedures, and wrongfully abusing, damaging, or losing department equipment.  All department equipment issued to members shall be maintained in proper order.**

On 9/14/2015, Officer Valint, as a member of the SWAT team, was detailed to assist Buffalo Police with the execution of a search warrant.  Officer Valint was assigned to the perimeter and was issued an AR-15 and a Taser.  Officer Valint upon arriving at the raid location and at his post unclipped the nylon strap holding his Taser in place within the holster.  Officer Valint then failed to properly re-secure the Taser with the nylon strap.  Officer Valint at the completion of the raid was getting back into the vehicle and heard something fall.  He physically checked the Taser holster, but did not visually confirm that he had the Taser.  Upon arrival back at the Town of Tonawanda Police Department, he went to return the Taser and noticed it was missing from the holster.  I was immediately notified.  Officer Valint and Lieutenant Flatau were sent back to the raid scene in attempt to locate the Taser.  Officer Valint was only able to locate the damaged cartridge.  The missing Taser was located a short time later by Buffalo Police and turned over to our Department.  The Taser was damaged beyond repair as it appears that it was run over by a vehicle.

Officer Valint's actions as a member the Department and SWAT team are unsatisfactory. His carelessness with the Taser resulted in its' destruction, exposed the community to an otherwise illegal weapon and liability to this police department.

Officer Valint is hereby advised that failing to utilize department equipment for its intended purpose, in accordance with established departmental procedures, and wrongfully abusing, damaging, or losing department equipment is a violation of the Town of Tonawanda Police Department's Rules of Conduct, §4.01.31.

*B Valt #107*
**Signature of Employee**               *10/7/15*
**Date**

| REPORT BY:<br>Mark E. Shoemaker | RANK:<br>Lieutenant | SIGNATURE/DATE:<br>*Mark Shoemaker   10-7-15* |
|---|---|---|

**COMMANDING OFFICER'S ENDORSEMENT:**

I _____ have investigated the above report and find the facts to be / ~~not to be~~ as stated. I therefore recommend that this report be / ~~not be~~ attached to, and become a permanent part of this individual's Service Record. (If the facts are not as presented above, use the reverse side to properly present them)

_____ 521
**Signature of Commanding Officer**               *10/8/15*
**Date**

-------------------------------------------------------------------------------

**CHIEF'S ENDORSEMENT:**

☒ Approved
☐ Disapproved
☐ Recommend other action as stated on the reverse

_____
**Signature of Chief**               *10-8-15*
**Date**

Rev. 02/2014

TTPD00095

**Hearing Date/Time:**          April 5, 2016

**Present Were:**               Chief J. Uschold
                                Assistant Chief J. Stauffiger
                                Lieutenant M. Shoemaker

                                Police Club President PO C. Kaiser
                                Police Officer B. Valint

Hearing **was** recorded.

For **Violation of Section <u>4.01.31</u>**, **Police Officer <u>Brian Valint</u>** was suspended without pay or benefits for one (1) day(s). **Officer <u>Valint</u>** was also granted permission to forfeit one (1) vacation day(s) in lieu of suspension.

**Officer <u>Brian Valint</u>** will turn in his badge, issued firearm, and police department I.D.

    **Date(s) served:**          **Officer Valint forfeited one (1) vacation day in lieu of suspension, and his payroll will reflect accordingly.**

**Police Officer <u>Brian Valint</u>** was advised that any future violation of departmental rules and regulations will result in more severe disciplinary action up to and including possible termination of employment.

This report of violation will be permanently placed in **Officer <u>Brian Valint's</u>** personnel file.

_____          4-6-16
**Jerome C. Uschold, III**                          **Date**
**Chief of Police**

JCU/sm

Rev. 01/2014

Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 260 of 271

## Notice of Impending Disciplinary Action

This form will officially notify you, **BRIAN VALINT**, a permanent employee of the Town of Tonawanda and a member of the Town of Tonawanda Police Club, Inc., of impending disciplinary action.

A.   A police officer under investigation by this department must have counsel or a representative of the Police Club with him during any interrogation unless waived in writing by the Police Officer and co-signed by Club Officer:   I hereby waive my right to have counsel or a Police Club representative present during these proceedings.

_____          _____
Police Officer                                                    Club Officer

B.   Any interrogation of a Police Officer for a disciplinary violation, must be recorded either mechanically or by stenographer, and there will be no, "off the record" questions put to him unless waived in writing by the Police Officer and co-signed by a Club Officer:   I hereby waive my right to recording of the proceedings, and any, "off the record" questions that may be put to me.

_____          _____
Police Officer                                                    Club Officer

C.   You have the right to opt for disciplinary proceeding in one of the following ways.

   1.   In accordance with the provisions of Section 75 of the Civil Service Law and all other laws, ordinances, rules and regulations applicable to the State of New York.

   2.   In accordance with Article IX, paragraph 9.04 of the collective bargaining agreement between the Town and the Town of Tonawanda Police Club, Inc. which allows the Police Officer to appeal discipline issued through the Grievance Procedure as per Article IV, section 4.01 of the agreement.

      Selection of either of the above procedures by the Police Officer forecloses the use of the other by either party.

   3.   Acceptance of Departmental discipline as administered by the Chief of Police.

I, **BRIAN VALINT**, have carefully read the above stated options.   At this time in response to the impending disciplinary action relating to Report of Violation **#10-2015**, dated **September 19, 2015,** I have selected the following procedure:

_____   Section 75, Civil Service Law.

_____   Grievance Procedure.

___✓___   Departmental Discipline as administered by Chief of Police.

_____          ___4/5/16___
Employee Signature                                  Date

_____          ___4-5-16___
Chief of Police                                         Date

Rev. 01/12

TTPD00097

# Exhibit 5

# Deb Kruder Audio - complainant call in

# Exhibit 6

# Officer Brian Valint Body Cam Video

*Stacy 9895*
*C50118691*

**07/21/2020**

On July 9th 2020 a gentlemen came in with a ticket from a batch of tickets that had been stolen the morning before (Wednesday). I had all the books of the that had been stolen deactivated through the lottery office.  The ticket came up to go to the lottery office to cash the ticket.  I called my District Manager and he told me to call the police. I called police and told them that I had a person with a ticket that came out of the book that I had deactivated the day before. Dispatch had me stay on phone with them until a police officer showed up.  I explained to him what had happened the previous day and went over to the vending machine and showed him how I knew it came from that book.  I told him the ticket came from that book but that I didnt know if it was a stolen ticket.

Deb Kruder

*Kruder 279,425*

RECEIVED
SEP 01 2020

Case 1:23-cv-00419-WMS-MJR Document 1-15 Filed 05/11/23 Page 264 of 271

# FEROLETOLAW

**JOHN P. FEROLETO**
**CARRIE A. ZIMBARDI**
**JILL WNEK**

**JOEL FEROLETO**
*of Counsel*

**INJURY ATTORNEYS**

*clients first.*

PARALEGALS
MEGAN COMMAROTO
MOLLY VERA
NICOLE DALTON

August 5, 2020

**VIA REGULAR MAIL & FACSIMILE: 716-879-6646**
Town of Tonawanda Police Department
Attn: Barbara Henry, Records Review Bureau
1835 Sheridan Dr.
Buffalo, NY 14223

|  |  |  |
|---|---|---|
| Re: | Our Client: | **Eric Martin** |
|  | Complaint No.: | **20-225084** |
|  | Date of Incident: | **July 9, 2020, Approximately 2:00pm** |
|  | Location of Incident: | **Speedway, 535 Kenmore Avenue, Tonawanda NY** |

Dear Ms. Henry:

Kindly allow this to serve as our formal FOIL request for all 911 calls, including calls to or Town of Tonawanda Police Department 911 from Speedway, Eric Martin, calls including dispatch calls referring or relating to Eric Martin, relative to the claims made against Eric Martin on or about July 9, 2020, both audio recordings and their respective transcriptions, referring or relating to stolen lottery tickets, lottery tickets, missing lottery tickets, misappropriation of lottery tickets at 535 Kenmore Avenue, Tonawanda, New York 14223 for July 9, 2020.

Enclosed is an executed Application for Public Access to Records for the Town of Tonawanda.

Please contact the undersigned if you have any questions and thank you for your cooperation.

Very truly yours,

JOHN FEROLETO

JPF/mbc
Enclosure

**438 MAIN STREET**
**SUITE 910**
**BUFFALO, NEW YORK 14202**

PHONE (716) 854-0700 *V-FAX (716) 229-4613
*not for service



# TOWN OF TONAWANDA
# DEPARTMENT OF POLICE



## APPLICATION FOR PUBLIC ACCESS TO RECORDS

To: Town of Tonawanda Police Records Access Officer          **DATE:** 08/04/2020

I wish to inspect and/or receive a copy of the following record(s) 911 calls including calls to or Town of Tonawanda Police Department 911 from Speedway, Eric Martin, calls including dispatch calls referring or relating to Eric Martin, relative to the claims made against Eric Martin on or about July 9, 2020, both audio recordings and their respective transcriptions, referring or relating to stolen lottery tickets, lottery tickets, missing lottery tickets, misappropriation of lottery tickets at 535 Kenmore Avenue, Tonawanda, New York 14223 for July 9, 2020

**Complaint #:** 20-22508          **Date of Incident:** 07/09/2020          **Police Report:** X          **MV104-A:** ____

**Location of Incident:** Speedway, Store# 9895, 535 Kenmore Avenue, Tonawanda, New York

**Other:** (Identify as clearly as possible i.e. dates, names, addresses) Eric Martin, Jr.

_____

**SIGNATURE**

John Feroleto
**PRINTED NAME**

438 Main Street, #910
**ADDRESS**

Buffalo, New York 14202
**CITY, STATE, ZIP CODE**

716-854-0700
**PHONE**

megan.commaroto@feroletolaw.com
**EMAIL ADDRESS**

Type of copy in which records are preferred if approved: (circle one)

**Hard Copy     Email**

Any person denied access to records may appeal the denial within 30 days of the denial. Such appeals should be addressed to the Town of Tonawanda Appeals Officer, Mario Giacobbe, 2919 Delaware Ave., Room 2, Kenmore, New York 14217.

### FOR AGENCY USE ONLY

_____          _____
**REQUEST ACCEPTED BY** (Please Print Name / Badge #)          **DATE**

____**APPROVED: Date**_____ **# of Photocopies**: _____ **AMOUNT (OWED) (PAID)**: (.25¢/page $1.00/CD-DVD) $_____

____**EMAILED** (No Charge) – Attach Copy of printed sent email for verification

____**RECORD/DOCUMENT DOES NOT EXIST** (Freedom of Information Law pertains to existing records. Section 89(3) of that Statute provides in part that an agency is not required to prepare a record that is not maintained by the agency in response to a request. In short, if the record in question does not exist, the Freedom of Information Law would not apply.)

____**DENIED** (for the reason(s) checked below)

    ____ Exempted by statute other than Freedom of Information

    ____ Unwarranted invasion of personal privacy

    ____ Would impair contract awards or collective bargaining agreements

    ____ Trade secret; confidential commercial information

    ____ Law enforcement records

    ____ Would endanger the life or safety of any person

    ____ Interagency or intra-agency materials

    ____ Record is not maintained by this agency

    ____ Record of which this agency is legal custodian cannot be found

    ____ Other (specify) _____

_____          _____
**SIGNATURE OF EMPLOYEE RELEASING INFORMATION**          **DATE INFORMATION RELEASED**

TTP 162 06/2017

# TTPD Case File 20-225084

1. Foil request
2. Police report (redacted)
3. CFS (redacted)
4. Cell block video in
5. Cell block video out
6. Cell #8
7. Security garage
8. West interview room
9. TTPD Non-emergency audio of complaint coming in
10. TTPD radio traffic recording of incident
11. Body camera recording of incident from LT Brian Valint
12. Speedway, 535 Kenmore Ave store video (2)
13. TTPD interview room video
14. (2) misdemeanor complaints
15. Supporting deposition from (redacted)
16. Miranda Rights
17. E-mail between Det LT Moore and Speedway
18. T/T Court certificate of disposition
19. Property receipt

**JOHN P. FEROLETO**
**CARRIE A. ZIMBARDI**
**JILL WNEK**

**JOEL FEROLETO**
*of Counsel*

# FEROLETO LAW

## INJURY ATTORNEYS

*clients first.*

PARALEGALS
MEGAN COMMAROTO
MOLLY VERA
NICOLE DALTON

January 27, 2022

**VIA REGULAR MAIL & E-MAIL: PJoyce@colucci-gallaher.com**
Paul G. Joyce, Esq.
COLUCCI & GALLAHER, P.C.
2000 Liberty Building
424 Main Street
Buffalo, New York 14202

       **RE:**    **Martin v. Town of Tonawanda Police Department, et al.**
                   **Index No.: 808523/2021**

Dear Paul,

    It was good talking with you yesterday.

    If you believe any requested items are privileged, or otherwise non-discoverable, please specifically identify the item, and the basis of your objection. This will help us ferret out and resolve any potential discovery disputes.

    Please comply with the requirements of CPLR Rule 3122(2)(b) which requires you to identify items objected to with specificity Please provide a privilege log of any items you deem non-discoverable.

    At this time, please forward documents, and audio regarding disciplinary hearings which occurred as a result of the incident with Eric Martin, Jr.

    Please forward body cam video or documents referring or relating to the incident or incidents involving Eric Martin's father, Eric Martin, which occurred at the Speedway on or about July 10, 2020.

    Please provide documents referring or relating to personnel training on the use of force, probable cause, bias, implicit bias, including requirements or references to courses required or taken by the TPD personnel involved in the matter with Eric Martin.

    Please forward internal or computer saved items, emails, etc. which may have been overlooked. Please understand it is not my job to guess what the Town has and then ask for it. The Town is required to provide full disclosure.

You object to certain items including "confidential business information of the Town". For any item you feel is privileged or otherwise not discoverable, please comply with the requirements of CPLR Rule 3122(2)(b).

There are other items which I will follow up on, but please provide the above. If there is any item requested which you have a question on, kindly advise and I will attempt to clarify.

Please advise of any questions. I look forward to your cooperation.

Very truly yours,

JOHN FEROLETO

JPF/mbc

cc:    **VIA REGULAR MAIL & E-MAIL: bhannah@sugarmanlaw.com**
Brittany L. Hannah, Esq.
Sugarman Law Firm, LLP
211 W. Jefferson St.
Syracuse, NY 13202

# COLUCCI & GALLAHER, P.C.

Direct Dial:     (716) 853-6509
Email:           pjoyce@colucci-gallaher.com

RECEIVED
FEB 2 5 2022

February 23, 2022

**Via U.S. Mail and Email**
John Feroleto, Esq.
Feroleto Law
438 Main Street, Suite 910
Buffalo, New York 14201

Re:     *Martin v. The Town of Tonawanda Police Department, et al.*
        Index No. 808523/2021

Dear Mr. Feroleto:

Allow this to respond to your additional discovery demands outlined in your January 27, 2022 correspondence.

The Town of Tonawanda has fully complied with the requirements of CPLR 3122(2)(b). The objections made to Plaintiff's demands were provided with specificity in the Town's original responses to the discovery demands. Responses to the additional demands raised in your correspondence are addressed below.

Pursuant to the Public Officer's Law §87(2)(b), disciplinary records are exempt if disclosure of the record would constitute an unwarranted invasion of personal privacy. Unsubstantiated and disputed complaints have long been considered exempt as an invasion of personal privacy, and the change in the Civil Rights Law did not alter the previously existing privacy considerations. As such, the Plaintiff is not entitled to any documents and/or audio of disciplinary hearings regarding the incident at issue in this matter. Should any disciplinary proceeding be sustained, the Town will produce those documents, as it already has done.

In response to your request for documents referring or relating to an incident involving Eric Martin's father, Eric Martin that occurred at the Speedway on or about July 10, 2020, enclosed is a copy of the Town of Tonawanda Police complaint information form referenced as complaint number 20-225231. The Town is not in possession of body camera footage relating to this complaint form.

The Town replied to your demand for training documents in its prior response to Plaintiff's request for documents. The Town refers to its original objection, as the training documents for unknown individuals cannot be determined.

Case 1:23-cv-00419-WMS-MJR   Document 1-15   Filed 05/11/23   Page 270 of 271

# COLUCCI & GALLAHER, P.C.

February 23, 2022
Page 2

 The Town has provided full disclosure in response to the demands raised by Plaintiff. If you have further objections to the Town's responses please feel free to contact me.

Very truly yours,

Paul G. Joyce
for COLUCCI & GALLAHER, P.C.

PGJ
Enclosure
copy w/encs.:  Brittany L. Hannah, Esq.

# Town of Tonawanda
# Complaint Information



## Complaint# 20-225231   Date Received: 07/10/2020  Source: PHONE

| | | | |
|---|---|---|---|
| **Dispatch Code:** | 4508 | **Description:** ASSIST PERSON | **Call Type:** POLICE |
| **Final Dispatch Code:** | 4508 | **Description:** ASSIST PERSON | |

**Street:**   535 KENMORE AV       **Tract:**     **Street Code:**

**Cross Street:**              **Municipality:** TONAWANDA TOWN

**Business:**   SPEEDWAY   (AT KLAUDER)   **Call Back:**

**Times:**   **Received:** 11:28:09  **Dispatched:** 12:23:01  **Arrived:** 12:30:33  **Completed:** 13:06:34

**Officers:**   218-ARLINGTON

**Received By:**   851-MANZELLA    **Dispatcher:** T828-RIDER

**Report (follow up):**  NO          **Notified:**

**Action Codes**   1. Party Advised       2. PARTY ASSISTED
                3. Supplemental Report    4.

**Associated Persons:**

| | | |
|---|---|---|
| 07/10/20 11:28:20 | 851 | REFER TO 20-225084 |
| 07/10/20 11:28:31 | 851 | HAS VIDEO FOOTAGE TO PICK UP |
| 07/10/20 13:06:33 | 008 | Supplemental report completed for original complaint number. |