STATE OF NEW YORK
SUPREME COURT:    COUNTY OF ERIE

---

ERIC C. MARTIN,

                                    *Plaintiff,*          **NOTICE OF MOTION**

**v.**                                                    Index No: 808523/2021

**TOWN OF TONAWANDA
POLICE DEPARTMENT**
o/b/o the **TOWN OF TONAWANDA,**

**SPEEDWAY, LLC,**

**JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8
as employees of Defendant,
TOWN OF TONAWANDA
POLICE DEPARTMENT,**

                                    *Defendants.*

---

| | |
|---|---|
| **MOTION MADE BY**: | John Feroleto, Esq., attorney for Plaintiff. |
| **DATE, TIME AND OF MOTION:** | On _____, 2022 before the Hon. Catherine Nugent-Panepinto, J.S.C., 92 Franklin Steet, Part 3, Buffalo, New York 14202. |
| **SUPPORTING PAPERS**: | Affirmation of John Feroleto, Esq., dated June 30, 2022 with attached exhibits 1-8. |
| **RELIEF REQUESTED**: | An Order compelling Defendant to provide full and complete responses to all of Plaintiff's discovery demands pursuant to CPLR §§ 3101, 3124, and 3126, including Plaintiffs' Omnibus Demands and Request for Documents and Discovery dated September 7, 2021, and Second Request for Documents and Discovery dated March 15, 2022, within 30 days or Defendant's Answer be stricken and such other and further relief as this Court deems just and proper. |

Pursuant to CPLR §2214(b), answering affidavits, if any, are required to be served upon the undersigned at least seven days before the return date of this motion.

DATED:     June 30, 2022
           Buffalo, New York

                                        **JOHN P. FEROLETO, ESQ.**
                                        **FEROLETO LAW**
                                        *Attorneys for Plaintiffs*
                                        438 Main Street, Suite 910
                                        Buffalo, New York 14202
                                        Telephone: (716) 854-0700

TO:     **BRITTANY L. HANNAH, ESQ.**
        **SUGARMAN LAW FIRM, LLP**
        *Attorneys for Speedway LLC*
        211 West Jefferson Street, Suite 20
        Syracuse, New York 13202
        Telephone: (315) 474-2943

CC:     **PAUL G. JOYCE, ESQ.**
        **MARC S. SMITH, ESQ.**
        **COLUCCI & GALLAHER, P.C.**
        *Attorneys for Defendant The Town of Tonawanda*
        *Police Department o/b/o The Town of Tonawanda*
        2000 Liberty Building
        424 Main Street
        Buffalo, New York 14202
        Telephone: (716) 853-4080

STATE OF NEW YORK
SUPREME COURT:    COUNTY OF ERIE
_____

**ERIC C. MARTIN,**

                              *Plaintiff,*          **AFFIRMATION IN
                                                    SUPPORT OF MOTION TO
                                                    COMPEL DEFENDANT
                                                    SPEEDWAY**

**v.**                                              Index No: 808523/2021

**TOWN OF TONAWANDA
POLICE DEPARTMENT
o/b/o the TOWN OF TONAWANDA,**

**SPEEDWAY, LLC,**

**JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8
as employees of Defendant,
TOWN OF TONAWANDA
POLICE DEPARTMENT,**

                              *Defendants.*
_____

JOHN P. FEROLETO, ESQ., hereby states and affirms under the penalties of

perjury as follows:

1.      Your Affiant is an attorney duly licensed in the State of New York and

represents the Plaintiff, ERIC MARTIN, in the above-captioned matter.  As such, I

am fully familiar with the facts and circumstances herein.

2.      This Affirmation is submitted in support of Plaintiff, Eric Martin's

motion to compel discovery from Defendant Speedway, LLC (Speedway) pursuant to

CPLR §§ 3101, 3124 and 3126.

1

Case 1:23-cv-00419-WMS-MJR   Document 1-19   Filed 05/11/23   Page 4 of 96

## BACKGROUND

3.      This action arises out of a July 9, 2020 incident where Plaintiff, Eric C. Martin, went to the Speedway convenient store located at 535 Kenmore Avenue, Tonawanda, New York ("Speedway") to redeem two New York State lottery tickets he purchased at the same Speedway.

4.      Mr. Martin's last lottery ticket purchase at the Speedway location was July 7, 2020. The tickets were $30 "Colossal Cash" lottery tickets which provided a $50 payout each.

5.      On **July 9, 2020**, Mr. Martin returned to the Speedway store with his wife, son, and daughter to redeem his two winning tickets on their way to Mr. Martin's father's house. Dkt. No. 15 – Pg. 17-18.

6.      Mr. Martin gave the two tickets to the cashier. When scanned, one ticket went off with the winning sound, the other didn't. *Id.* at 19:2-16. An error code came up.

7.      The Speedway store manager, Debra Kruder, told Mr. Martin she was calling the New York State Lottery. Instead, she called the Tonawanda Police Department (hereinafter "TPD") and stated, "Hi, my name is Deb Kruder and I was at the convenience store that got robbed, uh, I want to say the night before… last Tuesday morning 2:30. I have a lottery ticket here that says claim at lottery and I do believe that this is a stolen ticket and somebody's trying to cash it." She recognized the ticket as from the batch that was stolen yesterday. Dkt No. 18 *see*

2

*also* Dkt. No. 17 at p. 39, Supporting Deposition of Debra Kruder (marked TTPD00017).

8.     There had been a smash and grab burglary at approximately 2:00 a.m., **July 8, 2020**, the night before. Dkt. 17 at p. 24-26.

9.     In response to Speedway store manager Debra Kruder's call, numerous officers from the Town of Tonawanda Police Department arrived at the scene. Mr. Martin explained to the police officers that he purchased the ticket at the same Speedway, frequently buys lottery tickets at the location, and that this could be shown by checking the store video. Dkt. 19 at 1:00 – 1:11 seconds.

10.     Following numerous attempts at negotiating with the police officers, four TPD police personnel surrounded Mr. Martin, wrestled him to the ground, handcuffed him, and took him to TPD headquarters at 1835 Sheridan Drive, Tonawanda, NY. Dkt No. 19 at 6:20 – 7:40 seconds. While at TPD headquarters, Mr. Martin was strip-searched. Dkt No. 15 at p. 36:13-15.

11.     At the TPD headquarters, Mr. Martin was given an appearance ticket and released with charges of violating New York Penal Law 165.40, Criminal Possession of Stolen Property in the 5th degree, and Penal Law 205.30 Resisting Arrest, both class A misdemeanors. Dkt No. 17 at p. 36-37 (marked as TPD00014-00015).

12.     Five days after Mr. Martin was taken down, arrested, and strip-searched, on **July 14, 2020**, Speedway District Manager Elizabeth Marvel,

3

Case 1:23-cv-00419-WMS-MJR   Document 1-19   Filed 05/11/23   Page 6 of 96

contacted TPD Detective Lieutenant Thomas Moore requesting that Detective

Moore scan the lottery ticket and email images to Elizabeth Marvel so Ms. Marvel

could contact the New York State Lottery to determine which $30 Colossal Cash

scratch-off lottery tickets were stolen on July 8, 2020. *Id.* at p. 32 (marked as

TPD00010).

13.     Later, on **July 14, 2020**, Ms. Marvel, after checking with the New

York State lottery, contacted TPD Lt. Moore advising that Eric Martin **legally**

**purchased the ticket in question at 14:18 hours on July 7, 2020** at the

Speedway store, 535 Kenmore Avenue. *Id.*

14.     **On July 21, 2020**, Speedway Manager Deb Kruder provided a

statement. As to the ticket in question, Ms. Kruder reported as to the lottery ticket:

"**the ticket came up to go to the lottery office to cash the ticket.**" Instead,

she called the TPD, who came and the above described events occurred. Dkt No. 20.

## **PROCEDURAL HISTORY**

15.     Mr. Martin testified **December 7, 2020** pursuant to 50 H of the

General Municipal Law and Rules. *See* Martin 50-H Hr. Tr. December 7, 2020 as

Dkt No. 15.

16.     Action was commenced **June 29, 2021** by way of filing a Summons and

Complaint within the New York State Courts Dkt No. 1.  Issue was joined by

Defendant, SPEEDWAY, LLC, **July 21, 2021**, Dkt No. 7.  Issue was joined by

4

Defendant, TOWN OF TONAWANDA, o/b/o the TOWN OF TONAWANDA POLICE

DEPARMTENT (TPD) **August 2, 2021**, <u>Dkt No. 8.</u>

17.    Plaintiff's **September 7, 2021** First Request for Documents and

Discovery to Speedway is annexed hereto as "**Exhibit 1**"; **Speedway's November**

**3, 2021** response to Plaintiffs first request is annexed as "**Exhibit 2**"; Plaintiff's

Second Request for Documents and Discovery dated **March 15, 2022** is annexed as

**"Exhibit 3";** Speedway's **May 6, 2022** response to Plaintiffs Second Request is

annexed hereto as **"Exhibit 4."**

## DISCOVERY REQUESTS

18.    Plaintiff served discovery demands in this action on Defendant

Speedway on September 7, 2021. **"Exhibit 1."**

19.    Since Plaintiff's initial demand, Speedway has provided some—but not

all—discovery responses. Speedway's attorney, Brittany Hannah, Esq. and

Plaintiff's counsel have had extensive discussions in a good faith effort to resolve

certain discovery disputes. However, Speedway has failed to produce various

requests for discovery as set forth below.

20.    Specific discovery responses not provided by Speedway include its store

manual, lottery and operations manual, training items, and documents relating to

the investigation of the incident involving Eric Martin on July 9, 2020.

21.    Defendant Speedway refuses to provide its store manual and lottery

manual given to employees, demanding Plaintiff, Plaintiff's counsel, and Plaintiff's

<div align="center">5</div>

experts file a confidentiality agreement, contrary to well-established New York

State law.

22.     Additionally, Defendant refuses to produce materials related to the

incident involving Eric Martin on the basis of attorney-work product, or deemed as

being materials prepared in anticipation of litigation. **Exhibit 2 at p. 3; Exhibit 2**

**at p. 7.** However, the materials are multifaceted in nature, discoverable, and

necessary for the proper prosecution of this action.

23.     The portions of the Speedway operations manual Speedway deems

responsive are listed in the November 15, 2021 correspondence of Attorney Brittany

Hanna, annexed as **"Exhibit 5."**

## SPEEDWAY HAS NOT MET ITS BURDEN IN ASSERTING THAT THE DISCOVERY WITHHELD IS PRIVILEGED

24.     The party refusing to produce discovery bears the burden of

establishing the information sought qualifies as confidential.  *Mann v. Copper Tire*

*Co.*, 33 A.D.3d at 30.  The objectant party must demonstrate good cause for

protection of the information sought.  *Cippillone v. Liggett Group, Inc.*, 785 F.2d

1108, 1121 (3d Cir. 1986). Mere conclusory statements of confidentiality are

insufficient to demonstrate good cause. *Id*.

25.     22 NYCRR § 216.1(a) provides:

*"... a Court shall not enter an order in any action or proceeding*
*sealing the court records, whether in whole or in part, except*
*upon a written finding of good cause, which shall specify the*

6

*grounds thereof. . . the court must consider the interest of the public as well as the parties."*

26.     Moreover, a trade secret exists where there is a "formula, pattern, device or compilation of information . . . used in one's business . . . which gives [one] an opportunity to obtain an advantage over competitors who do not know or use it." *Mann v. Cooper Tire Co.*, 33 A.D.3d 24, 31 (1st Dept. 2006); *see also Ashland Mgt Inc. v. Janien*, 82 N.Y.2d 395, 407 (1993).

## ORDERING CONFIDENTIALITY IS UNWARRANTED AND WOULD BE IMPROPER IN THIS MATTER

27.     Speedway was a large LLC which operated more than 3800 stores in 2020. It was owned by Marathon Oil, which sold its approximately 3800 stores in 36 states to a Tokyo-based holding company for 21 billion dollars. *See: "Fox News Article, p. 2"; annexed hereto as* **"Exhibit 6".** Combined together, both Speedway and 7-eleven had over 40,000 employment positions in April of 2022. *See: "7-Eleven, Speedway, Stripes Looking to Fill 60,000 Jobs"; annexed hereto as* **"Exhibit 7."**

28.     The convenience store industry has a high turnover rate of employees. Turnover in the convenience or industry has been reported at approximately 54%. *See: "Convenience Store News Article," p. 1"; annexed hereto as* **"Exhibit 8."** As such, there are tens of thousands of Speedway employees, and past employees.

29.     In this case, the information requested contains routine information on store procedures, what to do in the event of accidents/incidents such as the one at

7

issue, customer satisfaction, lottery procedures, etc. The information is widely distributed and is not a trade secret such as the formula for Coca-Cola.

## PUBLIC POLICY STRONGLY FAVORS OPEN COURT PROCEEDINGS

30.    There are strong public policy reasons for the free disclosure of such records, including the prevention of continued incidents and promoting the exchange of information among plaintiffs' counsel. All parties are well-served and litigation is shortened if there is a free exchange of information among plaintiff's counsel. Numerous articles have decried the use of confidentiality as presenting dissemination of knowledge regarding hazards. *E.g.,* Bonati, et al., *The Message of the Firestone Ford Tragedy*, 37 APR Trial 52 (April 2001); Hendricks and Moch, *Protective Orders: The Industry's Silencer on the Smoking Gun*, 73 Mich. B.J. 424 (1994).

31.    Where the material is not a trade secret or otherwise confidential, requiring each individual plaintiff to obtain discovery from a large defendant without sharing information adds to the cost of litigation, serves no useful purpose, and can actually serve as an injustice if information is exchanged in one case and not in another.

32.    Furthermore, free exchange serves as a check on discovery abuses; when plaintiffs can share discovery materials, an individual plaintiff can more easily determine when a defendant has withheld information in a particular case. *Garcia v. Peeples*, 734 S.W.2d 343, 347.

8

Case 1:23-cv-00419-WMS-MJR Document 1-19 Filed 05/11/23 Page 11 of 96

33.    Speedway's demand that Plaintiff, Plaintiff's attorney, and Plaintiff's experts be subject to a confidentiality order is contrary to public policy, and inconsistent with well-established New York law. The store manuals, procedures and requested items are not the type of information which constitutes the definition of a trade secret for the purpose of a confidentiality.

34.    Plaintiff is willing to keep certain information confidential, such as financial information or the amount of lottery sales. The remainder of the requested must be disclosed without a confidentiality or gag order.

## OUTSTANDING DISCOVERY

### *Investigation Materials:*

35.    Request #2 of Plaintiffs **September 7, 2021** Request for Documents and Discovery seeks *"[a]ll documents, notations, emails, reports, incident reports, statements, summaries, computer entries, computer stored information or data referring or relating to Eric C. Martin from the dates July 1, 2020 through June 29, 2021, including those between or among employees of Speedway, the New York State lottery, police agencies, or other third parties."* **Exhibit 1 at p. 32.**

36.    Speedway provided video recordings previously disclosed by the TPD in response to a FOIL request. It provided the September 21, 2020 statement of Deborah Kruder, undated statement of District manager Pete Smith, and an August 27 2020 email exchange to and from Ashley Rowe of WKBW News and Marna E. Berlkamp of Marathon Petroleum.

9

Case 1:23-cv-00419-WMS-MJR   Document 1-19   Filed 05/11/23   Page 12 of 96

37.     However, Speedway claims that such material is protected from disclosure by the attorney/client privilege and/or work product doctrine. **Exhibit 2 at p. 3.**

### *Job Descriptions, Duties, and Hierarchy:*

38.     Request #3 of Plaintiffs **September 7, 2021** Request for Documents and Discovery seeks "*[d]ocuments indicating the hierarchical structure of Speedway, including memoranda, schematics or flow charts for Western New York, and job descriptions for Speedway personnel in Western New York in effect during July, 2020.*" **Exhibit 1 at p. 32.**

39.     Speedway represents there are none. **Exhibit 2 at p. 3.**

40.     It is a stretch of the imagination that a corporation the size and sophistication of Speedway has no documents relating to job descriptions, assigned duties, responsibilities, hierarchy of authority from entry-level clerk, security, store manager, risk management or security duties, etc.  The discovery as to job descriptions, responsibilities and line of the authority are relevant and must be produced.

### *Information or Communications with the New York State Lottery or Lottery Vendor:*

41.     Request #7 of Plaintiffs **September 7, 2021** Request for Documents and Discovery includes requests for "*instructions for employees to follow with respect to lottery tickets, lottery machines, the use of lottery machines codes and lottery*

10

Case 1:23-cv-00419-WMS-MJR   Document 1-19   Filed 05/11/23   Page 13 of 96

*machines*" along with "*policies and procedures as to when to refer individuals to the New York State Lottery if there is a question regarding a lottery ticket, in effect during the period June 7, 2019 through July 31, 2020.*" **Exhibit 1 at p. 32.**

42.     Speedway has not provided information from the New York State lottery or lottery vendor such as the lottery operations manual, procedures, reconciliation of lottery sales procedures, i.e. how to keep track of lottery tickets on a daily basis and documents, emails, and reports regarding its communication with the New York State Lottery or vendor regarding the theft in question and Eric Martin.

43.     Speedway alleges that the requested information is "irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence." **Exhibit 2 at p. 5-6.**

44.     The requested information is relevant to the prosecution of this action, as it lists the standards and relevant procedures employees of Speedway are required to follow involving lottery ticket sales and procedures to be followed, how to deal with questions, customers and the New York State Lottery.

45.     The withholding of evidence precludes Plaintiff's counsel from being able to make accurate assessments regarding the events that led to the incident and injuries. The discovery must be provided pursuant to CPLR 3101.

## *Information Relating to Martin Arrest Protests:*

46.     Request #11 of Plaintiffs **September 7, 2021** Request for Documents and Discovery seeks "… *documents, videos, pictures, and depictions of protests in the vicinity of Speedway, 535 Kenmore Avenue, or within 200 feet of Speedway for the period July 7, 2020 through August 30, 2020.*" **Exhibit 1 at p. 34.**

47.     Speedway again represents the information as being "irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence." **Exhibit 2; at p. 7-8.**

48.     A minority customer returns to the Speedway with his family to redeem two lottery tickets he purchased at the store. Speedway is directed by the New York State Lottery to have the customer contact the lottery. The Speedway manager told Mr. Martin she is calling the lottery, but instead called the TPD, resulting in the arrest and harms to Mr. Martin.

49.     From the time Speedway failed to direct Mr. Martin to the New York State Lottery and following the arrest of Eric C. Martin, Speedway's actions and lack of actions are relevant to the harms and continued harms to Mr. Martin, and to Speedways actions relating to constitutional claims. The discovery is relevant and also may lead to relevant information.

## *Work Schedule for the Period of June 20, 2022 to July 11, 2020:*

50.     Request #12 of Plaintiffs **September 7, 2021** Request for Documents and Discovery seeks "*Documents indicating the work schedule and identity of*

12

*employees working at the Speedway location 535 Kenmore Avenue, Tonawanda, NY for the period June 20, 2020 through July 11, 2020.*" **Exhibit 1 at p. 34.**

51.     Work schedule information is routinely provided in negligence matters involving retail establishments such as fall down cases, injuries, etc. Speedway claims this request is vague, overly broad, not relevant, insincere, and in disregard of the CPLR. Scheduling information must be provided.

## THE WITHHELD ITEMS ARE MULTIFACETED AND DISCOVERABLE

52.     To be deemed material prepared in anticipation the material sought by a party must be prepared solely and exclusively in anticipation of litigation and not of mixed use in any way. Mixed purpose reports are not exempt from disclosure under CPLR 3101. *Hawley v. Travelers Indem. Co.,* 90 A.D.2d 684 (1982). Further, materials prepared in the investigation of a claim within the regular course of business are not exempt from disclosure and are therefore discoverable. *Landmark Ins. Co. v. Beau Rivage Restaurant, Inc.*, 121 A.D.2d 98, 102 (1986); *Zimmerman v. Jurek Bldrs., Inc.*, 2020 NY Slip Op 34459(U)** (Erie Cty. Sup. Court March 3, 2020).

53.     Request #10 of Plaintiffs **September 7, 2021** Request for Documents and Discovery seeks "*items to or from employees of Speedway, or third parties, including emails, statements, renditions, reports, memoranda, reports to risk management, claims individuals, employees of speedway with respect to Eric Martin*

13

Case 1:23-cv-00419-WMS-MJR   Document 1-19   Filed 05/11/23   Page 16 of 96

*regarding the incident involving Eric Martin for the period July 1, 2020 through June 29, 2021.*" **Exhibit 2 at p. 7.**

54.     Upon information and belief, as a regular course of its business, Speedway investigates thefts, burglaries, and incidents where individuals are charged with crimes at its locations, along with risk assessments such as accident or incident material such as when one is injured in one of its stores. The requested material is multifaceted in nature and discoverable.

**WHEREFORE**, the Plaintiff respectfully requests an Order of this Court compelling the Defendant to provide responses to Plaintiff's outstanding discovery demands within 30 days of the date of this motion.

DATED:     June 30, 2022
           Buffalo, New York

**JOHN P. FEROLETO, ESQ.**
**FEROLETO LAW**
*Attorneys for Plaintiffs*
438 Main Street, Suite 910
Buffalo, New York 14202
Telephone: (716) 854-0700

TO:   **BRITTANY L. HANNAH, ESQ.**
      **SUGARMAN LAW FIRM, LLP**
      *Attorneys for Speedway LLC*
      211 West Jefferson Street, Suite 20
      Syracuse, New York 13202
      Telephone: (315) 474-2943

14

CC:     **PAUL G. JOYCE, ESQ.**
        **MARC S. SMITH, ESQ.**
        **COLUCCI & GALLAHER, P.C.**
        *Attorneys for Defendant The Town of Tonawanda*
        *Police Department o/b/o The Town of Tonawanda*
        2000 Liberty Building
        424 Main Street
        Buffalo, New York 14202
        Telephone: (716) 853-4080

15

# EXHIBIT 1

# FEROLETO LAW

JOHN P. FEROLETO
CARRIE A. ZIMBARDI
JILL WNEK

**INJURY ATTORNEYS**

PARALEGALS
MEGAN COMMAROTO
MOLLY VERA
NICOLE DALTON

JOEL FEROLETO
*of Counsel*

*clients first.*

September 7, 2021

Brittany L. Hannah, Esq.
Sugarman Law Firm, LLP
211 W. Jefferson St.
Syracuse, NY 13202

     **RE:**    **Martin v. Town of Tonawanda Police Department, et al.**
             **Index No.: 808523/2021**

Dear Ms. Hannah:

     Enclosed please find Plaintiff's Omnibus Discovery Demands, Demand for Bill of Particulars, Cross-Notice to Depose, Plaintiff's Request for Documents and Discovery and Plaintiff's Bill of Particulars.

     In response to Defendant **Speedway, LLC**'s Omnibus Discovery Demands, please be advised of the following:

     A video of the incident and copy of the Police Report are attached hereto. All statements made by the agents, servants, employees, or former employees of Defendant, SPEEDWAY LLC, are included in the video that depicts the incident that occurred on July 9, 2020 or in police records which are public records, or police records provided herein. Plaintiff is unaware of the identities of witnesses to the incident, however there were Speedway customers and Town of Tonawanda Police Department personnel present, and Mr. Martin's wife, Ashley Martin, 191 Brinton Street, Buffalo, New York 14216 was outside of the Speedway store.

     Enclosed are authorizations for Trinity Medical, Buffalo MRI, Optimal Therapy Associates, and Buffalo Spine and Sports Medicine, Dr. Michael Cicchetti. Authorizations are provided upon the express condition that no accompanying correspondence/communication to any provider attempts to broaden the express records authorized for release, and that we are simultaneously copied with any such correspondence, as well as provided copies of records received by use of said authorizations within thirty (30) days of your receipt of the same. If these conditions are not agreeable, we are not authorizing release of any records and you should refrain from attempted usage of the authorizations.

     Upon information and belief, Plaintiff's medical bills have been paid by Blue Cross Blue

Shield of Western New York, Group Number: 10197775. Plaintiff is not a Medicare recipient or a Medicaid recipient.

Plaintiff has not made a lost wage claim. Plaintiff objects to the demand for tax records and employment records as overly broad and beyond the scope of discovery in this matter. Regarding the incident in question, Plaintiff has not received or applied for workers' compensation benefits nor has he received or applied for Social Security and/or Social Security Disability benefits.

Plaintiff objects to the demand for social media as overly broad, unduly burdensome, and beyond the scope of discovery, however, understands the continuing nature of this demand. Plaintiff is not in possession of any diaries/logs or other documentation of that nature.

Plaintiff has not yet retained an expert for the purposes of trial testimony.

Defendants dispute liability and claim Plaintiff assumed the risks which contributed to his injuries; At this point, further discovery is needed, and a response to the demand for specific relief will be provided in a supplemental response.

Please advise if you have any questions, and thank you for your cooperation.

Very truly yours,

JOHN FEROLETO

JPF/mbc
Enclosures

cc:     Paul G. Joyce, Esq.
        COLUCCI & GALLAHER, P.C.
        2000 Liberty Building
        424 Main Street
        Buffalo, New York 14202



VIA Regular
mail only

## Town of Tonawanda
## POLICE REPORT
## CRIM POSS STOLEN PROPERTY 5TH

**Complaint**
## 20-225084

*Report Date & Time*
07/09/2020 13:31

### INCIDENT

| *Address of Occurrence* 535 KENMORE AV | *District* | *Tract* 03 | *Occ. Date & Time* 07/09/2020  00:00 | *Day of Week* Thursday | *Type of Premise* Variety/Convenience Store |
|---|---|---|---|---|---|
| *Status* Cleared By Arrest | | *Follow Up By* Records | *Supl* N | *TT Mess#* | *TT Entry Date* | *TT Cancel#* | *TT Cancel Date* |

*Officers:* 087 - IENCO    119 - LAUGEMAN    *Rep. Off.:* 087 - IENCO    *Assigned. Off.:*
477 - VALINT    104 - HEFT    *Supervisor:* 403 - KRIER

### VICTIM - 1

| *Last Name* SPEEDWAY | *First Name* | *MI* | *Ext* | *Birth Date* | *Race* Unknown | *Sex* U | *Age* | *Juvenile* N | *Arrested* N | *Report* PR |
|---|---|---|---|---|---|---|---|---|---|---|
| *Address* 535 KENMORE AV | | *City* TONAWANDA | | *State* NY | *Zip* 14225 | *Home Phone* (716) 836-7167 | | *Work Phone* | | |
| *Height* | *Weight* | *Hair* | *Eyes* | *Build* | *Complexion* | *Glasses* | *Scars/Marks/Tattoos* | | *CellPhone* | |

*Victim DID receive information on Victim's Rights and Services pursuant to New York State Law*    Yes

### OFFENDER - 1

| *Last Name* MARTIN | *First Name* ERIC | *MI* C | *Ext* | *Birth Date* 01/14/1990 | *Race* Black | *Sex* M | *Age* 30 | *Juvenile* N | *Arrested* Y | *Report* PR |
|---|---|---|---|---|---|---|---|---|---|---|
| *Address* 191 BRITON ST | | *City* BUFFALO | | *State* NY | *Zip* 14216 | *Home Phone* | | *Work Phone* | | |
| *Height* 5' 09" | *Weight* 180 | *Hair* BLK | *Eyes* BRO | *Build* M | *Complexion* MBR | *Glasses* Unknown | *Scars/Marks/Tattoos* | | *CellPhone* | |

### REPORTING PERSON - 1

| *Last Name* | *First Name* | *MI* | *Ext* | *Birth Date* | *Race* | *Sex* | *Age* | *Juvenile* | *Arrested* | *Report* |
|---|---|---|---|---|---|---|---|---|---|---|
| *Address* | | *City* | | *State* | *Zip* | *Home Phone* | | *Work Phone* | | |
| *Height* | *Weight* | *Hair* | *Eyes* | *Build* | *Complexion* | *Glasses* | *Scars/Marks/Tattoos* | | *CellPhone* | |

### OFFENSES

| Law | Section | CA | CL | DG | Description | Report |
|---|---|---|---|---|---|---|
| PL | 165.40 | M | A | 5 | CRIM POSSESSION STOLN PROP 5TH | PR |
| PL | 205.30 | M | A | 0 | RESISTING ARREST | PR |

### ARREST

| *Arrest #* 23941 | *Name* MARTIN, ERIC C.  1/14/1990 | *Date* 07-09-2020 | *Address* 535 KENMORE AV  TONAWANDA TOWN |
|---|---|---|---|

*Status* Appearance Tick Crime in Progress    *Arrest Type*    *Arresting Officers* 204-MUSCOREIL

| Law | Section | CA | CL | DG | Description | Counts |
|---|---|---|---|---|---|---|
| PL | 165.40 | M | A | 5 | CRIM POSSESSION STOLN PROP 5TH | 1 |
| PL | 205.30 | M | A | 0 | RESISTING ARREST | 1 |

### PROPERTY

| Qty | Type | Description | Status | Make | Color | Model | Total Value | Report |
|---|---|---|---|---|---|---|---|---|
| 1 | Non-Negotiable I | LOTTO TICKET | 05 - Recovered | | | | $0.00 | SP |
| 2 | Recordings--Audi | VIDEOS | 01 - None/Not Applic | | | | $2.00 | SP |

### NARRATIVE

**POLICE REPORT**    *Date Entered:* 07/09/2020 15:30    *Typist* BRIAN IENCO    *Officer:* 087-IENCO

I responded to Speedway located at 535 Kenmore Av. for the report of a male customer trying to cash a stolen lottery ticket.  Upon arrival, Detectives Muscoreil and Scranton were inside the store speaking to the male party.
The male party was identified as Eric C. Martin.  The situation was explained to Martin and he was asked to return to the station to give a statement and be processed.  Martin refused to cooperate and at this point was informed he was under arrest.  Martin was asked to place his hands behind his back, at which point he tensed up, started flailing his arms, yelling get off me, and refused to place his hands behind his back.  I grabbed his right arm/shoulder and



## Town of Tonawanda
## POLICE REPORT
## CRIM POSS STOLEN PROPERTY 5TH

*Complaint*
**20-225084**

*Report Date & Time*
**07/09/2020 13:31**

assisted in taking Martin to the ground. Once on the ground Martin was handcuffed, he was then immediately sat up, and assisted back to his feet. Use of force (TTP47) completed. (see supplements)  Martin was then searched for weapons and placed in the rear of my patrol vehicle #6 by myself and Lt. Valint without incident.  Martin was then transported to the station without incident. I was followed by patrol 52, Ofc. Heft. Once at the station, Martin was brought to the men's cell block area.  Martin was searched, his belongings inventoried and placed in locker #8 (seal # 62066770).  Martin was placed in cell #8 upon card #20-0117 briefly until the west interview room was available/ready. Suicide screening completed.

Once the west interview room was ready, I brought Martin from the cell block area and turned him over to Det. Muscoreil and Lt. Moore.

Informations were completed/signed for the above charges.  All paperwork was completed and forwarded accordingly.

BWC : 087, 477

087

| SUPPLEMENT # 1 | *Date Entered:* 07/09/2020 15:30 | *Typist:* WILLIAM LAUGEMAN | *Officer:* 119-LAUGEMAN |
| --- | --- | --- | --- |

On 7/9/20 I responded to 535 Kenmore Ave, Speedway, to assist patrols with the investigation of stolen property.  The clerk, ███████████ provided a supporting deposition which I turned over to Det. Scranton.  $50 cash was turned over by ████ that belonged to subject Eric Martin.  The money was returned to him at 1835 Sheridan Dr.

BWC 119

119

| SUPPLEMENT # 2 | *Date Entered:* 07/09/2020 15:32 | *Typist:* BRIAN VALINT | *Officer:* 477-VALINT |
| --- | --- | --- | --- |

I attempted to take Eric Martin into custody for the purpose of processing by the C.I.B. on the charge of Criminal Possession of Stolen Property 5th.  Martin was in possession of a lottery ticket that had been stolen at a recent burglary at 535 Kenmore Ave., Speedway.  I reached for Martin's arm and he began to back away from me.  At this time Det. Muscoreil approached Martin from behind and attempted to place Martin's hands behind his back.  Martin began to tense his arms and refused to put his hands behind his back.  I grabbed Martin's left arm and I placed a handcuff on his left wrist.  Martin continued to resist by clenching his fists and by not putting his hands behind his back.  I was able to connect my cuffs to Det. Muscoreil's cuffs as Martin was being lowered to the ground.  Martin was placed on the ground at which time he stopped resisting arrest.

477

| SUPPLEMENT # 3 | *Date Entered:* 07/09/2020 15:36 | *Typist:* MARK SCRANTON | *Officer:* 260-SCRANTON |
| --- | --- | --- | --- |

I responded to assist with an investigation into a possession of stolen property and burglary at 535 Kenmore Ave.  While on scene, the suspect, Eric Martin, was advised he was under arrest.  Martin stated he was not going to jail, and not going into a police car.  He was told again he was under arrest, and began to back up.  Martin pulled his left arm away from Lt. Valint, and his momentum moved him in my direction.  I grabbed Martin's left wrist, and he began to struggle, pulling his arm in front of him and bending forward.  Martin was repeatedly told to stop resisting, and that he was under arrest.  As he was leaning forward, I struck Martin twice with my knee in the mid thigh, attempting to hit his common paroneal nerve.  After I struck him in the thigh, his left arm, which was already in a handcuff, loosened.  I was then able to pull his arm behind his back.  During the struggle, Martin was taken to the ground, and I was then able to successfully connect the left handcuff with another cuff that was on his right wrist.  After he was cuffed, I asked Martin if he was ok, but he didn't respond.  A TTP-47 use of force report completed.  I then completed two charges for Ofc. Ienco, which was forwarded to records along with the appearance ticket.

While at the store, I recovered the stolen lottery ticket a $10,000,000 colossal cash lottery ticket.  The ticket was entered into CHARMS as evidence, and placed in locker 10.

260



## Town of Tonawanda
## POLICE REPORT
### CRIM POSS STOLEN PROPERTY 5TH

Complaint
**20-225084**

*Report Date & Time*
07/09/2020  13:31

---

**SUPPLEMENT # 4**    *Date Entered:* 07/09/2020  15:40    *Typist:* MARK MUSCOREIL    *Officer:* 204-MUSCOREIL

Det Scranton and I responded to the radio call of a subject inside the Speedway at 535 Kenmore Ave. in possession of a stolen lottery ticket from a burglary I'm investigating (20-224888) from 7/8/20. Upon arrival I spoke with LT Valint and ▓▓▓▓▓▓▓▓▓▓ who confirmed that the ticket was from the batch stolen yesterday. I then tried speaking with the offender, Eric Martin, who claimed he bought the ticket at the store yesterday but wouldn't say what time, when I told him that it was impossible for him to buy that ticket he became argumentative. I asked him to return to TTPD HQ to speak with me about the lotto ticket and he refused. I advised him that he was under arrest and at that time LT Valint attempted to take him into custody. Martin refused to put his hands behind his back, and was advised multiple times he was under arrest. I took control of his left arm and he continued to pull his arms forward refusing to comply with our commands. I was able to cuff his right arm, and get it behind his back, at which time LT Valint and I were able to take Martin into custody. Martin was returned to TTPD HQ West Interview Room by Patrol, where I read him his Miranda Rights and Martin immediately lawyered up. Det LT Moore and I then processed Martin and released him on an Appearance Ticket. Use of Force completed.

---

**SUPPLEMENT # 5**    *Date Entered:* 07/10/2020  12:55    *Typist:* JASON ARLINGTON    *Officer:* 008-ARLINGTON

I responded to 535 Kenmore Ave, Speedway, to pick up videos stemming from this incident. I brought the video back to 1835, logged them into CHARMS, and turned them over to Detective Coffey. Complaint number of service was 20-225231.

008

---

*Officer:* **087 - IENCO**    _____    *Supervisor:* **403 - KRIER**    _____



OCA Official Form No.: 960

## AUTHORIZATION FOR RELEASE OF HEALTH INFORMATION PURSUANT TO HIPAA
### [This form has been approved by the New York State Department of Health]

| Patient Name | Date of Birth | Social Security Number |
|---|---|---|
| Eric Martin, Jr. | 01/14/1990 | |

| Patient Address |
|---|
| 191 Brinton St., Buffalo, NY 14216 |

I, or my authorized representative, request that health information regarding my care and treatment be released as set forth on this form:

In accordance with New York State Law and the Privacy Rule of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), I understand that:

1. This authorization may include disclosure of information relating to **ALCOHOL** and **DRUG ABUSE, MENTAL HEALTH TREATMENT,** except psychotherapy notes, and **CONFIDENTIAL HIV\* RELATED INFORMATION** only if I place my initials on the appropriate line in Item 9(a). In the event the health information described below includes any of these types of information, and I initial the line on the box in Item 9(a), I specifically authorize release of such information to the person(s) indicated in Item 8.

2. If I am authorizing the release of HIV-related, alcohol or drug treatment, or mental health treatment information, the recipient is prohibited from redisclosing such information without my authorization unless permitted to do so under federal or state law. I understand that I have the right to request a list of people who may receive or use my HIV-related information without authorization. If I experience discrimination because of the release or disclosure of HIV-related information, I may contact the New York State Division of Human Rights at (212) 480-2493 or the New York City Commission of Human Rights at (212) 306-7450. These agencies are responsible for protecting my rights.

3. I have the right to revoke this authorization at any time by writing to the health care provider listed below. I understand that I may revoke this authorization except to the extent that action has already been taken based on this authorization.

4. I understand that signing this authorization is voluntary. My treatment, payment, enrollment in a health plan, or eligibility for benefits will not be conditioned upon my authorization of this disclosure.

5. Information disclosed under this authorization might be redisclosed by the recipient (except as noted above in Item 2), and this redisclosure may no longer be protected by federal or state law.

6. **THIS AUTHORIZATION DOES NOT AUTHORIZE YOU TO DISCUSS MY HEALTH INFORMATION OR MEDICAL CARE WITH ANYONE OTHER THAN THE ATTORNEY OR GOVERNMENTAL AGENCY SPECIFIED IN ITEM 9 (b).**

| 7. Name and address of health provider or entity to release this information: |
|---|
| Buffalo MRI  4925 Main St.  Amherst, NY 14226 |

| 8. Name and address of person(s) or category of person to whom this information will be sent: |
|---|
| Sugarman Law Firm, LLP, 211 West Jefferson Street, Suite 20, Syracuse, New York 13202 |

9(a).  Specific information to be released:

☐ Medical Record from (insert date) _____ to (insert date) _____

☐ Entire Medical Record, including patient histories, office notes (except psychotherapy notes), test results, radiology studies, films, referrals, consults, billing records, insurance records, and records sent to you by other health care providers.

☒ Other: Medical records limited to:

head, neck, back, left knee, ribs, and bilateral wrists

Include: (*Indicate by Initialing*)

_____ Alcohol/Drug Treatment

_____ Mental Health Information

_____ HIV-Related Information

**Authorization to Discuss Health Information**

(b) ☐ By initialing here _____ I authorize _____
                            Initials                          Name of individual health care provider

to discuss my health information with my attorney, or a governmental agency, listed here:

_____
(Attorney/Firm Name or Governmental Agency Name)

| 10. Reason for release of information:<br>☒ At request of individual<br>☐ Other: | 11. Date or event on which this authorization will expire:<br>1 (One) Year From Date of Signature |
|---|---|
| 12. If not the patient, name of person signing form: | 13. Authority to sign on behalf of patient: |

All items on this form have been completed and my questions about this form have been answered. In addition, I have been provided a copy of the form.

X _____    Date: September 1, 2021

Signature of patient or representative authorized by law.

\*  **Human Immunodeficiency** Virus that causes AIDS. The New York State Public Health Law protects information which reasonably could identify someone as having HIV symptoms or infection and information regarding a person's contacts.

OCA Official Form No.: 960

**AUTHORIZATION FOR RELEASE OF HEALTH INFORMATION PURSUANT TO HIPAA**
[This form has been approved by the New York State Department of Health]

| Patient Name | Date of Birth | Social Security Number |
|---|---|---|
| Eric Martin, Jr. | 01/14/1990 | |

| Patient Address |
|---|
| 191 Brinton St., Buffalo, NY 14216 |

I, or my authorized representative, request that health information regarding my care and treatment be released as set forth on this form:

In accordance with New York State Law and the Privacy Rule of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), I understand that:

1. THIS authorization may include disclosure of information relating to **ALCOHOL** and **DRUG ABUSE, MENTAL HEALTH TREATMENT**, except psychotherapy notes, and **CONFIDENTIAL HIV\* RELATED INFORMATION** only if I place my initials on the appropriate line in Item 9(a). In the event the health information described below includes any of these types of information, and I initial the line on the box in Item 9(a), I specifically authorize release of such information to the person(s) indicated in Item 8.

2. If I am authorizing the release of HIV-related, alcohol or drug treatment, or mental health treatment information, the recipient is prohibited from redisclosing such information without my authorization unless permitted to do so under federal or state law. I understand that I have the right to request a list of people who may receive or use my HIV-related information without authorization. If I experience discrimination because of the release or disclosure of HIV-related information, I may contact the New York State Division of Human Rights at (212) 480-2493 or the New York City Commission of Human Rights at (212) 306-7450. These agencies are responsible for protecting my rights.

3. I have the right to revoke this authorization at any time by writing to the health care provider listed below. I understand that I may revoke this authorization except to the extent that action has already been taken based on this authorization.

4. I understand that signing this authorization is voluntary. My treatment, payment, enrollment in a health plan, or eligibility for benefits will not be conditioned upon my authorization of this disclosure.

5. Information disclosed under this authorization might be redisclosed by the recipient (except as noted above in Item 2), and this redisclosure may no longer be protected by federal or state law.

6. **THIS AUTHORIZATION DOES NOT AUTHORIZE YOU TO DISCUSS MY HEALTH INFORMATION OR MEDICAL CARE WITH ANYONE OTHER THAN THE ATTORNEY OR GOVERNMENTAL AGENCY SPECIFIED IN ITEM 9 (b).**

7. Name and address of health provider or entity to release this information:
BlueCross BlueShield of Western New York, P.O. Box 80, Buffalo, NY 14240-0080

8. Name and address of person(s) or category of person to whom this information will be sent:
Sugarman Law Firm, LLP, 211 West Jefferson Street, Suite 20, Syracuse, New York 13202

9(a). Specific information to be released:
☐ Medical Record from (insert date) _____ to (insert date) _____
☐ Entire Medical Record, including patient histories, office notes (except psychotherapy notes), test results, radiology studies, films, referrals, consults, billing records, insurance records, and records sent to you by other health care providers.
☒ Other: File regarding Eric Martin, DOB: 01/14/1990      Include: (Indicate by Initialing)
Group No.: 10197775 from July 9, 2020 to Present          _____ Alcohol/Drug Treatment
                                                           _____ Mental Health Information
**Authorization to Discuss Health Information**                _____ HIV-Related Information

(b) ☐ By initialing here _____ I authorize _____
                    Initials                          Name of individual health care provider
to discuss my health information with my attorney, or a governmental agency, listed here:
_____
(Attorney/Firm Name or Governmental Agency Name)

| 10. Reason for release of information: ☒ At request of individual ☐ Other: | 11. Date or event on which this authorization will expire: 1 (One) Year From Date of Signature |
|---|---|
| 12. If not the patient, name of person signing form: | 13. Authority to sign on behalf of patient: |

All items on this form have been completed and my questions about this form have been answered. In addition, I have been provided a copy of the form.

Signature of patient or representative authorized by law.          Date: September 1, 2021

\* **Human Immunodeficiency Virus that causes AIDS. The New York State Public Health Law protects information which reasonably could identify someone as having HIV symptoms or infection and information regarding a person's contacts.**



OCA Official Form No.: 960

### AUTHORIZATION FOR RELEASE OF HEALTH INFORMATION PURSUANT TO HIPAA
[This form has been approved by the New York State Department of Health]

| Patient Name Eric Martin, Jr. | Date of Birth 01/14/1990 | Social Security Number |
|---|---|---|

| Patient Address 191 Brinton St., Buffalo, NY 14216 | | |

I, or my authorized representative, request that health information regarding my care and treatment be released as set forth on this form:
In accordance with New York State Law and the Privacy Rule of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), I understand that:

1. This authorization may include disclosure of information relating to **ALCOHOL** and **DRUG ABUSE, MENTAL HEALTH TREATMENT**, except psychotherapy notes, and **CONFIDENTIAL HIV\* RELATED INFORMATION** only if I place my initials on the appropriate line in Item 9(a). In the event the health information described below includes any of these types of information, and I initial the line on the box in Item 9(a), I specifically authorize release of such information to the person(s) indicated in Item 8.

2. If I am authorizing the release of HIV-related, alcohol or drug treatment, or mental health treatment information, the recipient is prohibited from redisclosing such information without my authorization unless permitted to do so under federal or state law. I understand that I have the right to request a list of people who may receive or use my HIV-related information without authorization. If I experience discrimination because of the release or disclosure of HIV-related information, I may contact the New York State Division of Human Rights at (212) 480-2493 or the New York City Commission of Human Rights at (212) 306-7450. These agencies are responsible for protecting my rights.

3. I have the right to revoke this authorization at any time by writing to the health care provider listed below. I understand that I may revoke this authorization except to the extent that action has already been taken based on this authorization.

4. I understand that signing this authorization is voluntary. My treatment, payment, enrollment in a health plan, or eligibility for benefits will not be conditioned upon my authorization of this disclosure.

5. Information disclosed under this authorization might be redisclosed by the recipient (except as noted above in Item 2), and this redisclosure may no longer be protected by federal or state law.

6. **THIS AUTHORIZATION DOES NOT AUTHORIZE YOU TO DISCUSS MY HEALTH INFORMATION OR MEDICAL CARE WITH ANYONE OTHER THAN THE ATTORNEY OR GOVERNMENTAL AGENCY SPECIFIED IN ITEM 9 (b).**

7. Name and address of health provider or entity to release this information:
Buffalo Spine and Sports Medicine  Dr. Michael Cicchetti  100 College Pkwy, # 100  Williamsville, NY 14221

8. Name and address of person(s) or category of person to whom this information will be sent:
Sugarman Law Firm, LLP, 211 West Jefferson Street, Suite 20, Syracuse, New York 13202

9(a).  Specific information to be released:
☐ Medical Record from (insert date) _____ to (insert date) _____
☐ Entire Medical Record, including patient histories, office notes (except psychotherapy notes), test results, radiology studies, films, referrals, consults, billing records, insurance records, and records sent to you by other health care providers.
☒ Other:  Medical records limited to:                                    Include: (Indicate by Initialing)
head, neck, back, left knee, ribs, and bilateral wrists          _____ **Alcohol/Drug Treatment**
                                                                 _____ **Mental Health Information**
**Authorization to Discuss Health Information**                  _____ **HIV-Related Information**

(b) ☐ By initialing here _____ I authorize _____
                Initials                          Name of individual health care provider
to discuss my health information with my attorney, or a governmental agency, listed here:
_____
(Attorney/Firm Name or Governmental Agency Name)

| 10. Reason for release of information: ☒ At request of individual ☐ Other: | 11. Date or event on which this authorization will expire: 1 (One) Year From Date of Signature |
|---|---|
| 12. If not the patient, name of person signing form: | 13. Authority to sign on behalf of patient: |

All items on this form have been completed and my questions about this form have been answered. In addition, I have been provided a copy of the form.

_Signature of patient or representative authorized by law._     Date: September 1, 2021

\*  **Human Immunodeficiency Virus that causes AIDS. The New York State Public Health Law protects information which reasonably could identify someone as having HIV symptoms or infection and information regarding a person's contacts.**

OCA Official Form No.: 960

**AUTHORIZATION FOR RELEASE OF HEALTH INFORMATION PURSUANT TO HIPAA**
[This form has been approved by the New York State Department of Health]

| Patient Name | Date of Birth | Social Security Number |
|---|---|---|
| Eric Martin, Jr. | 01/14/1990 | |

| Patient Address |
|---|
| 191 Brinton St., Buffalo, NY 14216 |

I, or my authorized representative, request that health information regarding my care and treatment be released as set forth on this form:

**In accordance with New York State Law and the Privacy Rule of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), I understand that:**

1. This authorization may include disclosure of information relating to **ALCOHOL and DRUG ABUSE, MENTAL HEALTH TREATMENT**, except psychotherapy notes, and **CONFIDENTIAL HIV\* RELATED INFORMATION** only if I place my initials on the appropriate line in Item 9(a). In the event the health information described below includes any of these types of information, and I initial the line on the box in Item 9(a), I specifically authorize release of such information to the person(s) indicated in Item 8.

2. If I am authorizing the release of HIV-related, alcohol or drug treatment, or mental health treatment information, the recipient is prohibited from redisclosing such information without my authorization unless permitted to do so under federal or state law. I understand that I have the right to request a list of people who may receive or use my HIV-related information without authorization. If I experience discrimination because of the release or disclosure of HIV-related information, I may contact the New York State Division of Human Rights at (212) 480-2493 or the New York City Commission of Human Rights at (212) 306-7450. These agencies are responsible for protecting my rights.

3. I have the right to revoke this authorization at any time by writing to the health care provider listed below. I understand that I may revoke this authorization except to the extent that action has already been taken based on this authorization.

4. I understand that signing this authorization is voluntary. My treatment, payment, enrollment in a health plan, or eligibility for benefits will not be conditioned upon my authorization of this disclosure.

5. Information disclosed under this authorization might be redisclosed by the recipient (except as noted above in Item 2), and this redisclosure may no longer be protected by federal or state law.

6. **THIS AUTHORIZATION DOES NOT AUTHORIZE YOU TO DISCUSS MY HEALTH INFORMATION OR MEDICAL CARE WITH ANYONE OTHER THAN THE ATTORNEY OR GOVERNMENTAL AGENCY SPECIFIED IN ITEM 9 (b).**

| 7. Name and address of health provider or entity to release this information: |
|---|
| Trinity Medical WNY, Paul L. LaPoint, D.O., 192 Park Club Ln. Williamsville, NY |

| 8. Name and address of person(s) or category of person to whom this information will be sent: |
|---|
| Sugarman Law Firm, LLP, 211 West Jefferson Street, Suite 20, Syracuse, New York 13202 |

9(a). Specific information to be released:
- ☐ Medical Record from (insert date) _____ to (insert date) _____
- ☐ Entire Medical Record, including patient histories, office notes (except psychotherapy notes), test results, radiology studies, films, referrals, consults, billing records, insurance records, and records sent to you by other health care providers.
- ☒ Other: Medical records limited to:

head, neck, back, left knee, ribs, and bilateral wrists

Include: (Indicate by Initialing)

_____ Alcohol/Drug Treatment

_____ Mental Health Information

_____ HIV-Related Information

**Authorization to Discuss Health Information**

(b) ☐ By initialing here _____ I authorize _____
 Initials      Name of individual health care provider
to discuss my health information with my attorney, or a governmental agency, listed here:

_____
(Attorney/Firm Name or Governmental Agency Name)

| 10. Reason for release of information: <br> ☒ At request of individual <br> ☐ Other: | 11. Date or event on which this authorization will expire: <br> 1 (One) Year From Date of Signature |
|---|---|
| 12. If not the patient, name of person signing form: | 13. Authority to sign on behalf of patient: |

All items on this form have been completed and my questions about this form have been answered. In addition, I have been provided a copy of the form.

Signature of patient or representative authorized by law.

Date: September 1, 2021

\* **Human Immunodeficiency Virus that causes AIDS. The New York State Public Health Law protects information which reasonably could identify someone as having HIV symptoms or infection and information regarding a person's contacts.**



OCA Official Form No.: 960

## AUTHORIZATION FOR RELEASE OF HEALTH INFORMATION PURSUANT TO HIPAA
**[This form has been approved by the New York State Department of Health]**

| Patient Name | Date of Birth | Social Security Number |
|---|---|---|
| Eric Martin, Jr. | 01/14/1990 | |

| Patient Address |
|---|
| 191 Brinton St., Buffalo, NY 14216 |

I, or my authorized representative, request that health information regarding my care and treatment be released as set forth on this form:

In accordance with New York State Law and the Privacy Rule of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), I understand that:

1. This authorization may include disclosure of information relating to **ALCOHOL** and **DRUG ABUSE, MENTAL HEALTH TREATMENT**, except psychotherapy notes, and **CONFIDENTIAL HIV\* RELATED INFORMATION** only if I place my initials on the appropriate line in Item 9(a). In the event the health information described below includes any of these types of information, and I initial the line on the box in Item 9(a), I specifically authorize release of such information to the person(s) indicated in Item 8.

2. If I am authorizing the release of HIV-related, alcohol or drug treatment, or mental health treatment information, the recipient is prohibited from redisclosing such information without my authorization unless permitted to do so under federal or state law. I understand that I have the right to request a list of people who may receive or use my HIV-related information without authorization. If I experience discrimination because of the release or disclosure of HIV-related information, I may contact the New York State Division of Human Rights at (212) 480-2493 or the New York City Commission of Human Rights at (212) 306-7450. These agencies are responsible for protecting my rights.

3. I have the right to revoke this authorization at any time by writing to the health care provider listed below. I understand that I may revoke this authorization except to the extent that action has already been taken based on this authorization.

4. I understand that signing this authorization is voluntary. My treatment, payment, enrollment in a health plan, or eligibility for benefits will not be conditioned upon my authorization of this disclosure.

5. Information disclosed under this authorization might be redisclosed by the recipient (except as noted above in Item 2), and this redisclosure may no longer be protected by federal or state law.

6. **THIS AUTHORIZATION DOES NOT AUTHORIZE YOU TO DISCUSS MY HEALTH INFORMATION OR MEDICAL CARE WITH ANYONE OTHER THAN THE ATTORNEY OR GOVERNMENTAL AGENCY SPECIFIED IN ITEM 9 (b).**

| 7. Name and address of health provider or entity to release this information: |
|---|
| Optimal Therapy Associates Services  2495 Main St., Ste. 234  Buffalo, NY 14214 |

| 8. Name and address of person(s) or category of person to whom this information will be sent: |
|---|
| Sugarman Law Firm, LLP, 211 West Jefferson Street, Suite 20, Syracuse, New York 13202 |

9(a).  Specific information to be released:

☐ Medical Record from (insert date) _____ to (insert date) _____

☐ Entire Medical Record, including patient histories, office notes (except psychotherapy notes), test results, radiology studies, films, referrals, consults, billing records, insurance records, and records sent to you by other health care providers.

☒ Other:  Medical records limited to: _____

head, neck, back, left knee, ribs, and bilateral wrists

Include: *(Indicate by Initialing)*

_____  Alcohol/Drug Treatment

_____  Mental Health Information

_____  HIV-Related Information

**Authorization to Discuss Health Information**

(b) ☐ By initialing here _____ I authorize _____

Initials                                    Name of individual health care provider

to discuss my health information with my attorney, or a governmental agency, listed here:

_____

(Attorney/Firm Name or Governmental Agency Name)

| 10. Reason for release of information: | 11. Date or event on which this authorization will expire: |
|---|---|
| ☒ At request of individual<br>☐ Other: | 1 (One) Year From Date of Signature |

| 12. If not the patient, name of person signing form: | 13. Authority to sign on behalf of patient: |
|---|---|

All items on this form have been completed and my questions about this form have been answered. In addition, I have been provided a copy of the form.

X _~signature~_  Martin

Date:  September 1, 2021

Signature of patient or representative authorized by law.

\*  Human Immunodeficiency Virus that causes AIDS. The New York State Public Health Law protects information which reasonably could identify someone as having HIV symptoms or infection and information regarding a person's contacts.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

---

ERIC C. MARTIN,

<div style="text-align:center">*Plaintiff,*</div>

vs.

TOWN OF TONAWANDA POLICE DEPARTMENT
o/b/o THE TOWN OF TONAWANDA, SPEEDWAY LLC,
MARATHON PETROLEUM CORPORATION, and
JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8,

<div style="text-align:center">*Defendants.*</div>

**PLAINTIFF'S VERIFIED BILL
OF PARTICULARS**

**Index No.: 808523/2021**

---

**PLEASE TAKE NOTICE** that Plaintiff, ERIC C. MARTIN, by his attorneys, Feroleto

Law, in response to Defendant's, SPEEDWAY LLC's, Demand for Bill of Particulars alleges

upon information and belief:

1.      Eric C. Martin; born January 14,1990; he resides at 191 Brinton Street, Buffalo,

New York, with his wife is Ashley Martin. Defendant's request for plaintiff's Social Security

number is improper and beyond the scope of CPLR §3043.

2.      The incident occurred in Defendant's store, SPEEDWAY, LLC, located at 535

Kenmore Avenue, Tonawanda, New York 14223 on July 9, 2020 at approximately 1:30 p.m.

3.      Mr. Martin was at Defendant Speedway's store redeeming his New York State

lottery ticket, which he purchased the day before, July 8, 2021 at the same Speedway store.

4.      Defendant, SPEEDWAY, LLC, was negligent, careless, reckless, wantonly

negligent in  in it  training, supervision, management, as to the sale and redemption of New York

State lottery tickets, the management of said facilities, dealing with customers, confirming and

verifying lottery ticket information, forthrightness, deception with respect to dealing with the

public, and Eric Martin and with wanton negligence, and disregard, recklessly, and intentionally

harming individuals with lack of care or consideration, and arrogance, in failing to properly

determine its own actions, or omissions, before acting deceptively with customer Eric Martin, in needlessly contacting the Town of Tonawanda the police department, when it should have confirmed its own actions, contacted the New York State lottery system, counted its own lottery tickets before making false claims against an innocent customer, and furthering the arrest, humiliation, degradation of a customer, without due care, regard or consideration of his basic fundamental rights, including constitutional rights, negligently recklessly or with malice and intent to have Mr. Martin arrested, and confined against his will. Further, Defendant, SPEEDWAY, LLC, acted negligently, carelessly, wantonly negligently, intentionally and failing to determine that it in fact was negligent and it, in fact did sell Mr. Martin's lottery ticket to him the day before, allowing him to be charged as a criminal and in unnecessary and for an extended period of time allowed him to be deemed and charged with criminal behavior, all, arrogantly, without care, intentionally and or negligently, when it could have readily confirmed the same, which proximately caused and contributed to the injuries and harms to Plaintiff, ERIC C. MARTIN.

5-11    See paragraph 4 above, the requests are evidentiary in nature and beyond the scope of a bill of particulars, however, Mr. Martin will testify at deposition and the paragraphs may be supplemented upon further discovery.

12.    Plaintiff does not allege any specific violation at this time, however will rely upon any ordinance, rule, or regulation the trial court deems applicable at the time of trial. Plaintiff reserves the right to supplement this response upon further discovery.

13.    Plaintiff suffered injuries to his head, neck, spine, left arm, upper back, trapezius, scapulae, left cervical articular pillars from C3 – C6, sprain of ligaments of the cervical spine, cervical radiculitis and to the left upper extremity, left knee, left ribs, bilateral wrists, including cervical disc injury with radiculopathy and diffused paravertebral tenderness; injury to the cervical and thoracic areas including C5-C6 subligamentous annular bulge, C5-C7 anular bulge, thoracic spine injury and sprain with associated muscle imbalances; internal derangements of left

knee; left side rib injury, bilateral wrist injury, head pain, and the natural sequence and sequela

of said injuries. All of these injuries are permanent, except those of a superficial nature. Plaintiff

reserves the right to supplement this response.

14.    Please see the medical date and cost chart attached hereto. Plaintiff reserves the right to

supplement this response.

15.    Please see response to paragraph "14" above.

16.    Plaintiff was not confined to hospital; healthcare providers' dates of treatment and cost are

annexed hereto. Mr. Martin continued to work and was confined to home intermittently for approximately

2 to 3 weeks after the incident. Plaintiff reserves the right to supplement this response.

17.    Mr. Martin continued to work while receiving medical care and is not making a claim for

lost wages.

18.    This demand is improper and beyond the scope of the Bill of Particulars under CPLR

§3043. Notwithstanding, Plaintiff was not a student at the time of the incident.

19.    Not applicable.

20.    Plaintiff will claim and unliquidated sum for pain, suffering, permissive injuries,

humiliation, degradation, and those injuries set forth in paragraph 13.

21.    This demand is improper and beyond the scope of the Bill of Particulars under CPLR

§3043.

Plaintiff reserves the right to supplement each of the foregoing responses up to and including the

conclusion of trial.

DATED:        September 7, 2021
              Buffalo, New York

**JOHN FEROLETO, ESQ.**
**FEROLETO LAW**
*Attorneys for Plaintiff*
438 Main Street, Suite 910
Buffalo, New York 14202
Telephone: (716) 854-0700

TO:     **BRITTANY L. HANNAH, ESQ.**
        **SUGARMAN LAW FIRM, LLP**
        *Attorneys for Speedway LLC*
        211 West Jefferson Street, Suite 20
        Syracuse, New York 13202
        Telephone: (315) 474-2943


        **PAUL G. JOYCE, ESQ.**
        **MARC S. SMITH, ESQ.**
        **COLUCCI & GALLAHER, P.C.**
        *Attorneys for Defendant The Town of Tonawanda*
        *Police Department o/b/o The Town of Tonawanda*
        2000 Liberty Building
        424 Main Street
        Buffalo, New York 14202
        Telephone: (716) 853-4080

## ERIC MARTIN
### DOL: 07/09/20

| | | |
|---|---|---|
| **Trinity Medical WNY**<br>**Paul L. LaPoint, D.O.**<br>192 Park Club Ln.<br>Williamsville, NY 14221 | 07/10/20 | |
| | 07/24/20 | |
| | 08/12/20 | |
| | 08/24/20 | |
| | | |
| **Buffalo MRI**<br>4925 Main St.<br>Amherst, NY 14226 | 08/20/20 | |
| | | |
| **Optimal Therapy Associates Services**<br>2495 Main St., Ste. 234<br>Buffalo, NY 14214 | 09/04/20 | |
| | 09/08/20 | |
| | 09/10/20 | |
| | 09/15/20 | |
| | 09/17/20 | |
| | 09/22/20 | |
| | 09/24/20 | |
| | 09/28/20 | |
| | 10/26/20 | |
| | 10/29/20 | |
| | 11/02/20 | |
| | 11/05/20 | |
| | 11/09/20 | |
| | 11/12/20 | |
| | 11/16/20 | |
| | 11/19/20 | |
| | | |
| **Buffalo Spine and Sports Medicine**<br>**Dr. Michael Cicchetti**<br>100 College Pkwy, Suite 100<br>Williamsville, NY 14221 | 11/18/20 | |
| | 11/24/20 | |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

---

**ERIC C. MARTIN,**

*Plaintiff,*

**PLAINTIFF'S OMNIBUS
DISCOVERY DEMANDS**

**vs.**

**Index No.: 808523/2021**

**TOWN OF TONAWANDA POLICE DEPARTMENT
o/b/o THE TOWN OF TONAWANDA, SPEEDWAY LLC,
MARATHON PETROLEUM CORPORATION, and
JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8,**

*Defendants.*

---

**PLEASE TAKE NOTICE** that the Plaintiff hereby demands that Defendant, SPEEDWAY LLC (hereinafter "SPEEDWAY"), serve upon the undersigned attorney with TWENTY (20) days after the date of service hereof the following information and documentation:

**PLEASE TAKE NOTICE** that pursuant to CPLR § 3101(e), the Plaintiff, hereby demands that you furnish the attorneys for the Plaintiff, within twenty (20) days of the service of this notice, copies of all statements of the Plaintiff, the agents, servants or employees of said Plaintiff including any oral, stenographic or written statements, whether signed or unsigned, or a notice of letter stating that you have no such statements.

**PLEASE TAKE FURTHER NOTICE** that pursuant to CPLR § 3101, the Plaintiff hereby demands that you provide the attorneys for the Plaintiff, within twenty (20) days of the service of this notice, the names and addresses of each and every party you represent to be a witness, to the following:

(a)     the occurrence alleged in the complaint;

(b)     the scene of the occurrence alleged in the complaint;

(c)     any condition which it is alleged caused or contributed to the occurrence alleged in the complaint.

**PLEASE TAKE NOTICE** that pursuant to CPLR § 3101 and 3120, Plaintiff demands that you furnish to the attorneys for the Plaintiff, within twenty (20) days of the service of this notice, photographs, moving pictures, slides and/or films, any and all surveillance materials, materials depicting or alleging to depict the Plaintiff which you intend to use at the time of the trial of this action, now in your possession, custody or control, or in the possession, custody or control of any party you represent in this action and photographs, moving pictures, slides and/or films which depict the scene of the occurrence alleged in the complaint, the instrumentality or instrumentalities involved in the occurrence and the Plaintiff. This demand is continuing in nature and demand is hereby made that you produce such materials at the undersigned's office for inspection and copying within twenty (20) days of the date of this notice or within twenty (20) days after you, or said party, obtain possession, custody or control of same, whichever is later.

**PLEASE TAKE FURTHER NOTICE** that pursuant to CPLR § 3101(a), the Plaintiff hereby demands that you provide the attorneys for the Plaintiff, within twenty (20) days of the service of this notice, any and all written reports concerning the incident which is the subject of this litigation (i.e., MV-104 forms of any participant in the incident, report to law enforcement agency of fire department, Worker's Compensation forms C-2 and C-3, reports or statements arising from or conducted in connection with internal investigations or inquiries, reports to or from any governmental agency or official, reports of investigations conducted by third parties (excepting those investigations conducted exclusively in preparation for this litigation), reports to liability insurance carriers and/or other similar memoranda).

**PLEASE TAKE FURTHER NOTICE** that pursuant to CPLR § 3101(d), the answering Plaintiff hereby demands that you furnish to the attorneys for the Plaintiff, within twenty (20) days of the receipt of this notice, the identity of each person whom you expect to call as an expert witness at the trial of this above captioned action. As to each person identified, specify:

(a)    the name and qualification of the expert;

(b)    the subject matter upon which the expert is expected to testify;

(c)    the substance of the facts and opinion is expected to testify;

(d)    the grounds for each expert's opinion.

**PLEASE TAKE FURTHER NOTICE** that the Plaintiff hereby demand that you furnish to the attorneys for the Plaintiff any hospital or medical records of the Plaintiff obtained pursuant to Article 3100 of the CPLR.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to § 3101(f) of the CPLR, the Plaintiff hereby demands that you furnish to the attorneys for the Plaintiff within twenty (20) days of the receipt of this notice, proof of the policy limits of any and all insurance including primary, secondary and excess coverage which may be liable to satisfy all or any part of a judgment which may be entered in the above-entitled action or to indemnify or reimburse for payments made to satisfy said judgment.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to <u>Folgate vs. Brookhaven Memorial Hospital</u>, 86 Misc.2d 191, 381 N.Y.S.2d 384, the Plaintiff hereby demands the number and amount of other claims filed against your client and any amounts paid with respect to those claims, which would be applicable to the maximum amount of coverage provided during the policy term.

**PLEASE TAKE FURTHER NOTICE** that unless the aforesaid information and items are furnished within the specified time or a statement in writing indicating that such information and items are not in your possession is supplied within the specified time, appropriate penalties will be sought.

**PLEASE TAKE FURTHER NOTICE** that the Defendants have a continuous duty to inform the Plaintiff of any changes in the Defendants' responses as demanded above.

DATED:    September 7, 2021
          Buffalo, New York

                                        _____
                                        **JOHN FEROLETO, ESQ.**
                                        **FEROLETO LAW**
                                        *Attorneys for Plaintiff*
                                        438 Main Street, Suite 910
                                        Buffalo, New York 14202
                                        Telephone: (716) 854-0700


TO:    **BRITTANY L. HANNAH, ESQ.**
       **SUGARMAN LAW FIRM, LLP**
       *Attorneys for Speedway LLC*
       211 West Jefferson Street, Suite 20
       Syracuse, New York 13202
       Telephone: (315) 474-2943

       **PAUL G. JOYCE, ESQ.**
       **MARC S. SMITH, ESQ.**
       **COLUCCI & GALLAHER, P.C.**
       *Attorneys for Defendant The Town of Tonawanda*
       *Police Department o/b/o The Town of Tonawanda*
       2000 Liberty Building
       424 Main Street
       Buffalo, New York 14202
       Telephone: (716) 853-4080

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

---

**ERIC C. MARTIN,**

                              *Plaintiff*

**v.**

**TOWN OF TONAWANDA POLICE DEPARTMENT
o/b/o THE TOWN OF TONAWANDA, SPEEDWAY LLC,
MARATHON PETROLEUM CORPORATION, and
JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8,**

                              *Defendants.*

**NOTICE DECLINING SERVICE
BY MEANS OF ELECTRONIC
OR FACSIMILE TRANSMITTAL**

**Index No.: 803299/2021**

---

SIRS:

        **PLEASE TAKE NOTICE,** that pursuant to CPLR § 2103(5), the undersigned will not accept service of papers, notices, motions, etc., by facsimile transmittal or by any other electronic means.

DATED:      September 7, 2021
              Buffalo, New York

                                       **JOHN FEROLETO, ESQ.**
                                       **FEROLETO LAW**
                                       *Attorneys for Plaintiff*
                                       438 Main Street, Suite 910
                                       Buffalo, New York 14202
                                       Telephone: (716) 854-0700

TO: **BRITTANY L. HANNAH, ESQ.**
**SUGARMAN LAW FIRM, LLP**
*Attorneys for Speedway LLC*
211 West Jefferson Street, Suite 20
Syracuse, New York 13202
Telephone: (315) 474-2943


**PAUL G. JOYCE, ESQ.**
**MARC S. SMITH, ESQ.**
**COLUCCI & GALLAHER, P.C.**
*Attorneys for Defendant The Town of Tonawanda*
*Police Department o/b/o The Town of Tonawanda*
2000 Liberty Building
424 Main Street
Buffalo, New York 14202
Telephone: (716) 853-4080

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

---

**ERIC C. MARTIN,**

*Plaintiff,*

**PLAINTIFF'S DEMAND FOR
VERIFIED BILL OF
PARTICULARS**

**vs.**

**Index No.: 808523/2021**

**TOWN OF TONAWANDA POLICE DEPARTMENT
o/b/o THE TOWN OF TONAWANDA, SPEEDWAY LLC,
MARATHON PETROLEUM CORPORATION, and
JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8,**

*Defendants.*

---

**PLEASE TAKE NOTICE** that the Plaintiff hereby demands that Defendant, SPEEDWAY LLC, serve upon the undersigned attorney with TWENTY (20) days after the date of service hereof a Verified Bill of Particulars of the claims of the Defendants specifying and stating the following:

1.     State the facts which form the basis of your first affirmative defense that whatever injuries and damages plaintiff sustained were caused or were contributed to by the culpable conduct of plaintiff.

2.     State the facts which form the basis for your second affirmative defense that plaintiff assumed risks and each risk assumed.

3.     State the facts which form the basis for your third affirmative defense that the accident and injuries complained of in plaintiff's Complaint were caused or brought about by the negligence of a third person or persons over whom the answering defendant herein had no control

4.      State the facts which form the he basis for your sixth affirmative defense that the answering defendant and its employees at all times acted in reasonably, in good faith, and without malice.

5.      State the facts which form the basis for your twelfth affirmative defense that the Court has no subject matter jurisdiction of the matters set forth in the Complaint.

DATED:      September 7, 2021
            Buffalo, New York

**JOHN FEROLETO, ESQ.**
**FEROLETO LAW**
*Attorneys for Plaintiff*
438 Main Street, Suite 910
Buffalo, New York 14202
Telephone: (716) 854-0700

TO:   **BRITTANY L. HANNAH, ESQ.**
      **SUGARMAN LAW FIRM, LLP**
      *Attorneys for Speedway LLC*
      211 West Jefferson Street, Suite 20
      Syracuse, New York 13202
      Telephone: (315) 474-2943

      **PAUL G. JOYCE, ESQ.**
      **MARC S. SMITH, ESQ.**
      **COLUCCI & GALLAHER, P.C.**
      *Attorneys for Defendant The Town of Tonawanda*
      *Police Department o/b/o The Town of Tonawanda*
      2000 Liberty Building
      424 Main Street
      Buffalo, New York 14202
      Telephone: (716) 853-4080

Case 1:23-cv-00419-WMS-MJR   Document 1-19   Filed 05/11/23   Page 43 of 96

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

ERIC C. MARTIN,

                    *Plaintiff,*

                                                    **NOTICE TO TAKE**
                                                    **DEPOSITION**

vs.                                                 **INDEX NO.: 808523/2021**

**TOWN OF TONAWANDA POLICE DEPARTMENT**
**o/b/o THE TOWN OF TONAWANDA, SPEEDWAY LLC,**
**MARATHON PETROLEUM CORPORATION, and**
**JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8,**

                    *Defendants.*

        **PLEASE TAKE NOTICE** that, pursuant to CPLR Article 31, the video testimony of
*Speedway Employee* BETH MARVEL shall be taken by Jack W. Hunt & Associates, Inc.
relative to this matter before a notary public on ***October 19, 2021 at 2:00 p.m. at Feroleto Law,***
***438 Main Street, Suite 910, Buffalo, New York 14202,*** upon all the relevant facts and
circumstances in connection with the accident alleged in plaintiff's complaint, including
negligence, contributory negligence, liability and damages.

        **PLEASE TAKE FURTHER NOTICE** that the parties to be examined are requested to
produce upon said examination any and all records, memoranda and data relating to the matters
upon which examination is sought herein for the purpose of refreshing the witnesses'
recollection.

        **PLEASE TAKE FURTHER NOTICE** that the deposition of the individual in charge of
safety for the above-named parties is to be recorded on videotape. The videotape system will be
operated by Feroleto Law, 438 Main Street, Suite 910, Buffalo, New York 14202.

DATED:    September 7, 2021
              Buffalo, New York

                                       **JOHN FEROLETO, ESQ.**
                                       **FEROLETO LAW**
                                       *Attorneys for Plaintiff*
                                       **438 Main Street, Suite 910**
                                       **Buffalo, New York 14202**
                                       **Telephone: 716-854-0700**

TO:    **BRITTANY L. HANNAH, ESQ.**
        **SUGARMAN LAW FIRM, LLP**
        *Attorneys for Speedway LLC*
        211 West Jefferson Street, Suite 20
        Syracuse, New York 13202
        Telephone: 315-474-2943

CC:    **PAUL G. JOYCE, ESQ.**
        **MARC S. SMITH, ESQ.**
        **COLUCCI & GALLAHER, P.C.**
        *Attorneys for Defendant The Town of Tonawanda*
        *Police Department o/b/o The Town of Tonawanda*
        2000 Liberty Building
        424 Main Street
        Buffalo, New York 14202
        Telephone: 716-853-4080

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

———————————————————————

ERIC C. MARTIN,

                                  Plaintiff,

vs.

TOWN OF TONAWANDA POLICE DEPARTMENT
o/b/o THE TOWN OF TONAWANDA, SPEEDWAY LLC,
MARATHON PETROLEUM CORPORATION, and
JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8,

                                  Defendants.

———————————————————————

**NOTICE TO TAKE
DEPOSITION**

**INDEX NO.:  808523/2021**

        **PLEASE TAKE NOTICE** that, pursuant to CPLR Article 31, the video testimony of *Speedway Employee* DEBORAH KRUEGER shall be taken by Jack W. Hunt & Associates, Inc. relative to this matter before a notary public on *October 19, 2021 at 12:00 p.m. at Feroleto Law, 438 Main Street, Suite 910, Buffalo, New York 14202*, upon all the relevant facts and circumstances in connection with the accident alleged in plaintiff's complaint, including negligence, contributory negligence, liability and damages.

        **PLEASE TAKE FURTHER NOTICE** that the parties to be examined are requested to produce upon said examination any and all records, memoranda and data relating to the matters upon which examination is sought herein for the purpose of refreshing the witnesses' recollection.

        **PLEASE TAKE FURTHER NOTICE** that the deposition of the individual in charge of safety for the above-named parties is to be recorded on videotape. The videotape system will be operated by Feroleto Law, 438 Main Street, Suite 910, Buffalo, New York 14202.

DATED:      September 7, 2021
            Buffalo, New York

            _____
            **JOHN FEROLETO, ESQ.**
            **FEROLETO LAW**
            *Attorneys for Plaintiff*
            **438 Main Street, Suite 910**
            **Buffalo, New York 14202**
            **Telephone: 716-854-0700**

TO:    **BRITTANY L. HANNAH, ESQ.**
       **SUGARMAN LAW FIRM, LLP**
       *Attorneys for Speedway LLC*
       211 West Jefferson Street, Suite 20
       Syracuse, New York 13202
       Telephone: 315-474-2943

CC:    **PAUL G. JOYCE, ESQ.**
       **MARC S. SMITH, ESQ.**
       **COLUCCI & GALLAHER, P.C.**
       *Attorneys for Defendant The Town of Tonawanda*
       *Police Department o/b/o The Town of Tonawanda*
       2000 Liberty Building
       424 Main Street
       Buffalo, New York 14202
       Telephone: 716-853-4080

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

---

**ERIC C. MARTIN,**

<div align="center">*Plaintiff,*</div>

**REQUEST FOR
DOCUMENTS AND
DISCOVERY**

**vs.**

**Index No.: 808523/2021**

**TOWN OF TONAWANDA POLICE DEPARTMENT
o/b/o THE TOWN OF TONAWANDA, SPEEDWAY LLC,
MARATHON PETROLEUM CORPORATION, and
JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8,**

<div align="center">*Defendants.*</div>

---

Pursuant to Civil Practice Law and Rules, the Plaintiff hereby demands that
SPEEDWAY, LLC produce the following documents for copying and inspection, within
TWENTY (20) DAYS of service of this demand.

## DEFINITIONS

As used herein, the terms listed below are defined as follows:

The term "Document" as used herein shall be given a very broad definition to include
every type of paper, writing, data, record, graphic, drawing, photograph, audio recording and
video recording. The term includes material in all forms, including printed, written, recorded, or
other. The term includes all files, records and data contained in any computer system, computer
component and/or computer storage (e.g., hard drive, disc, magnetic tape, backup system, etc.).
This term includes, but is not limited to, correspondence, reports, meeting minutes, memoranda,
stenographic or handwritten notes, diaries, notebooks, account books, orders, invoices,
statements, bills, checks, vouchers, purchase orders, studies, surveys, charts, maps, analyses,
publications, books, pamphlets, periodicals, catalogues, brochures, schedules, circulars, bulletins,

notices, instructions, manuals, journals, e-mails, e-mail attachments, data sheets, work sheets, statistical compilations, data processing cards, microfilms, computer records (including printouts, disks or other magnetic storage media), tapes, photographs (positive or negative prints), drawings, films, videotapes, hard drive recordings, pictures, and voice recordings. Plaintiff expressly intends for the term "Document" to include every copy of such writing, etc. when such copy contains any commentary or notation whatsoever that does not appear on the original and any attachments or exhibits to the requested document or any other documents referred to in the requested document or incorporated by reference.

With regard to any term used herein that is deemed by the responding party as being ambiguous or vague, a term shall be construed in its broadest sense to encompass all reasonable definitions of that term.

**IF YOU BELIEVE ANY DOCUMENTS ARE PRIVILEGED**, as required by CPLR RULE 3122(b) state with reasonable particularity the reasons for each objection: (1) the type of document; (2) the general subject matter of the document; (3) the date of the document; and (4) such other information as is sufficient to identify the document.

1.    Please see list of requests attached hereto as "**Exhibit 1**".

DATED:    September 7, 2021
          Buffalo, New York

JOHN FEROLETO, ESQ.
FEROLETO LAW
*Attorneys for Plaintiff*
438 Main Street, Suite 910
Buffalo, New York 14202
Telephone: (716) 854-0700

TO:   **BRITTANY L. HANNAH, ESQ.**
**SUGARMAN LAW FIRM, LLP**
*Attorneys for Speedway LLC*
211 West Jefferson Street, Suite 20
Syracuse, New York 13202
Telephone: (315) 474-2943

**PAUL G. JOYCE, ESQ.**
**MARC S. SMITH, ESQ.**
**COLUCCI & GALLAHER, P.C.**
*Attorneys for Defendant The Town of Tonawanda*
*Police Department o/b/o The Town of Tonawanda*
2000 Liberty Building
424 Main Street
Buffalo, New York 14202
Telephone: (716) 853-4080

## Exhibit 1

## Request to SPEEDWAY, LLC

2.     All documents, notations, emails, reports, incident reports, statements, summaries, computer entries, computer stored information or data referring or relating to Eric C. Martin from the dates July 1, 2020 through June 29, 2021, including those between or among employees of Speedway, the New York State lottery, police agencies, or other third parties.

3.     Documents indicating the hierarchical structure of Speedway, including memoranda, schematics or flow charts for Western New York, job descriptions for Speedway personnel in Western New York, in effect during July, 2020.

4.     Documents, training materials, video audio or other media used for the purpose of training individuals working in Speedway locations in Western New York, for the period July 1, 2017 through July 30, 2020. Documents referring or relating to risk retention, theft, shoplifting, procedures for dealing with risk retention, shoplifting, theft, unruly behavior, resolving questions with customers, conflicts, customer service, dealing with customers, including memoranda, procedures, training items referring relating to said matters.

5.     All documents referring or relating to burglaries, thefts, shoplifting, or disturbances at Speedway, 525 Kenmore Avenue, Tonawanda, NY for the period July 1, 2020 through July 10, 2020.

6.     All documents referring relating to Eric C. Martin's father, Eric D. Martin for the period July 1, 2020 through June 29, 2021.

7.     Documents referring or relating, the sale of lottery tickets, promotion of lottery items, instruction to employees as to the sale of lottery items, training materials, audio, video materials, instructions for employees to follow with respect to lottery tickets, lottery machines, the use of lottery machines codes and lottery machines, error codes, how to cancel lottery tickets,

Case 1:23-cv-00419-WMS-MJR   Document 1-19   Filed 05/11/23   Page 51 of 96

how to report lottery ticket stolen, procedures in place in determining if lottery tickets were stolen, misplaced, miscounted, recorded, procedures, policies on how to contact your chief lottery, when to contact the lottery, when or how to contact management with respect to questions or issues with lottery tickets, procedures for calling or communicating with police agencies, circumstances in which calling or contacting police agencies is authorized, documents referring or relating to procedures to follow when there is a question of redemption of a lottery ticket at the store, policies procedures as to when to refer individuals to the New York State Lottery if there is a question regarding a lottery ticket, in effect during the period June 7, 2019 through July 31, 2020.

8.      Documents referring or relating to calls from Speedway employees or individuals to police enforcement or Town of Tonawanda personnel for reports, incidents or matters at Speedway, 535 Kenmore Avenue or within 200 feet of Speedway 535 Kenmore Avenue, Tonawanda, including phone records, incident reports, logs of reports, for the period July 1, 2017 through July 30, 2020.

9.      Documents referring to customer relations, dealing with customers, investigation procedures, dealing with problems with customers, how to treat customers, including company policies, training materials, or other documents whether audio, video, or other media addressing the same, effect for the period July 7, 2017 through July 7, 2020.

10.     All items to or from employees of Speedway, or third parties, including emails, statements, renditions, reports, memoranda, reports to risk management, claims individuals, employees of Speedway with respect to Eric Martin regarding the incident involving Eric Martin for the period July 1, 2020 through June 29, 2021.

Case 1:23-cv-00419-WMS-MJR   Document 1-19   Filed 05/11/23   Page 52 of 96

11.     All documents, videos, pictures, and depictions of protests in the vicinity of Speedway, 535 Kenmore Avenue, or within 200 feet of Speedway for the period July 7, 2020 through August 30, 2020.

12.     Documents indicating the work schedule and identity of employees working at the Speedway location 535, Kenmore Avenue, Tonawanda, NY for the period June 20, 2020 through July 11, 2020

13.     Documents referring or relating to the layout, dimensions, and measurements of the premises in question including photographs, schematics, drawings, and blueprints.

# EXHIBIT 2

Case 1:23-cv-00419-WMS-MJR   Document 1-19   Filed 05/11/23   Page 54 of 96

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

---

ERIC C. MARTIN,

                                    Plaintiff,

           vs.

TOWN OF TONAWANDA POLICE DEPARTMENT
o/b/o TOWN OF TONAWANDA, SPEEDWAY, LLC,
MARATHON PETROLEUM CORPORATION and
JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8 as employees of
TOWN OF TONAWANDA POLICE DEPARTMENT,

                                    Defendants.

**SPEEDWAY LLC'S
RESPONSE TO REQUEST FOR
DOCUMENTS AND
DISCOVERY
INDEX NO. 808523/2021**

---

Defendant, Speedway LLC, by and through its attorneys, Sugarman Law Firm, LLP,

hereby respond to plaintiff Eric C. Martin's Request for Documents and Discovery, dated

September 7, 2021, as follows:

### **General Objections**

By responding to these demands, Speedway does not concede the materiality of the subject

of the subject to which it refers. Speedway's responses are made expressly subject to, and without

waiving or intending to waive any questions or objections as to the competency, relevance,

materiality, privilege, or admissibility as evidence or for any other purpose, of any of the

documents or information produced, or the subject matter thereof, in any proceeding including the

trial or any subsequent proceeding.

Speedway objects to the extent that plaintiff demands information and/or documents which

are protected by the attorney-client privilege or work-product privilege or which constitute

material prepared for litigation purposes.

Inadvertent production of any document or information which is privileged, was prepared in anticipation of litigation, or is otherwise immune from discovery, shall not constitute waiver of any privilege or of another ground for objecting to discovery, with respect to such document or information or the information contained in any document or of Speedway's right to object to the use of any such document or the information contained therein during any proceeding in this litigation or otherwise. Speedway also objects in the entirety to any request for documents that is not limited in time.

Speedway objects in the entirety to any request for information which is not in its possession, custody, or control.

Speedway is continuing to search for information responsive to plaintiff's demands and, therefore, reserves the right to supplement its response to each demand with additional information, if and when such information becomes available to Speedway's counsel. Speedway also reserves the right to object to the future disclosure of such information.

Speedway objects to these demands to the extent they exceed the scope of the Federal Rules of Civil Procedure or seek to impose obligations on Speedway beyond the requirements of those rules.

Speedway reserves the right to make any further applicable objection whether or not said objection is delineated above. The above objections in no way waive Speedway's right to make applicable objections as the course of the matter progresses.

## **Responses**

1.     Please see list of requests attached hereto as "Exhibit 1".

**RESPONSE:** This Demand does not require a response.

2.      All documents, notations, emails, reports, incident reports, statements, summaries, computer entries, computer stored information or data referring or relating to Eric C. Martin from the dates July 1, 2020 through June 29, 2021, including those between or among employees of Speedway, the New York State lottery, police agencies, or other third parties.

**RESPONSE:** Objection.  Speedway objects to this Demand because it is overly broad and unduly burdensome because it is not limited to the relevant time period and because it is not limited to the issues in this case.  Speedway further objects to the extent it seeks information that is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence.  Speedway additionally objects to the extent it seeks information and documentation that is protected from disclosure by the attorney/client privilege and/or work product doctrine.   Subject to and without waiving said objections, in addition to the documents produced with Speedway LLC's Response to Plaintiff's Omnibus Discovery Demands and those provided by plaintiff's counsel pre-suit or by plaintiff's counsel or co-defendant's counsel through discovery, the documentation which may be responsive in Speedway's possession is attached as **Exhibit 1**.

3.      Documents indicating the hierarchical structure of Speedway, including memoranda, schematics or flow charts for Western New York, job descriptions for Speedway personnel in Western New York, in effect during July, 2020.

**RESPONSE:** Objection.  Speedway objects to this Demand because it is overly broad and unduly burdensome because it is not limited to the issues in this case.  Speedway further objects to the extent it seeks information that is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving said objections, Speedway does not have any materials responsive to this Demand.

4.      Documents, training materials, video audio or other media used for the purpose of training individuals working in Speedway locations in Western New York, for the period July 1, 2017 through July 30, 2020. Documents referring or relating to risk retention, theft, shoplifting, procedures for dealing with risk retention, shoplifting, theft, unruly behavior, resolving questions with customers, conflicts, customer service, dealing with customers, including memoranda, procedures, training items referring relating to said matters.

**RESPONSE:** Objection.  Speedway objects to this Demand because it is overly broad and unduly burdensome because it is not limited to the relevant time period and because it is not limited to the issues in this case.  Speedway further objects to the extent it seeks information that is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving said objections, subject to a fully executed and So Ordered Confidentiality and Protective Order, Speedway will produce relevant and responsive documents  and training video relating to the subject areas requested that was in effect in July 2020.

5.      All documents referring or relating to burglaries, thefts, shoplifting, or disturbances at Speedway, 525 Kenmore Avenue, Tonawanda, NY for the period July 1, 2020 through July 10, 2020.

**RESPONSE:**  Objection.  Speedway objects to this Demand because it is overly broad and unduly burdensome.  Speedway further objects to the extent it seeks information that is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence.  Speedway additionally objects to the extent it seeks information and documentation that is protected from disclosure by the attorney/client privilege and/or work product doctrine.  Subject to and without waiving said objections, any documents which may be responsive in Speedway's possession were provided with Speedway LLC's Response to Plaintiff's Omnibus Discovery

Demands or will be provided subject to a fully executed and So Ordered Confidentiality and Protective Order.

6.      All documents referring relating to Eric C. Martin's father, Eric D. Martin for the period July 1, 2020 through June 29, 2021.

**RESPONSE:** Objection.  Speedway objects to this Demand because it is overly broad and unduly burdensome because it is not limited to the issues in this case.  Speedway further objects to the extent it seeks information that is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving said objections, Speedway does not have any materials responsive to this Demand.

7.      Documents referring or relating, the sale of lottery tickets, promotion of lottery items, instruction to employees as to the sale of lottery items, training materials, audio, video materials, instructions for employees to follow with respect to lottery tickets, lottery machines, the use of lottery machines codes and lottery machines, error codes, how to cancel lottery tickets, how to report lottery ticket stolen, procedures in place in determining if lottery tickets were stolen, misplaced, miscounted, recorded, procedures, policies on how to contact your chief lottery, when to contact the lottery, when or how to contact management with respect to questions or issues with lottery tickets, procedures for calling or communicating with police agencies, circumstances in which calling or contacting police agencies is authorized, documents referring or relating to procedures to follow when there is a question of redemption of a lottery ticket at the store, policies procedures as to when to refer individuals to the New York State Lottery if there is a question regarding a lottery ticket, in effect during the period June 7, 2019 through July 31, 2020.

**RESPONSE:** Objection.  Speedway objects to this Demand because it is overly broad and unduly burdensome because it is not limited to the relevant time period and because it is not limited to the

issues in this case. Speedway further objects to the extent it seeks information that is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving said objections, subject to a fully executed and So Ordered Confidentiality and Protective Order, Speedway will produce relevant and responsive materials and training video relating to the subject areas requested.

8.      Documents referring or relating to calls from Speedway employees or individuals to police enforcement or Town of Tonawanda personnel for reports, incidents or matters at Speedway, 535 Kenmore Avenue or within 200 feet of Speedway 535 Kenmore Avenue, Tonawanda, including phone records, incident reports, logs of reports, for the period July 1, 2017 through July 30, 2020.

**RESPONSE:** Objection. Speedway objects to this Demand because it is overly broad and unduly burdensome because it is not limited to the relevant time period and because it is not limited to the issues in this case. Speedway further objects to the extent it seeks information that is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving said objections, Speedway is not in possession of any documents that are responsive to this demand, other than those that were produced with Speedway LLC's Response to Plaintiff's Omnibus Discovery Demands.

9.      Documents referring to customer relations, dealing with customers, investigation procedures, dealing with problems with customers, how to treat customers, including company policies, training materials, or other documents whether audio, video, or other media addressing the same, effect for the period July 7, 2017 through July 7, 2020.

**RESPONSE:** Objection. Speedway objects to this Demand because it is overly broad and unduly burdensome because it is not limited to the relevant time period and because it is not limited to the

issues in this case. Speedway further objects to the extent it seeks information that is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving said objections, please see the response to paragraph 4 above.

10.     All items to or from employees of Speedway, or third parties, including emails, statements, renditions, reports, memoranda, reports to risk management, claims individuals, employees of Speedway with respect to Eric Martin regarding the incident involving Eric Martin for the period July 1, 2020 through June 29, 2021.

**RESPONSE:** Objection. Speedway objects to this Demand because it is overly broad and unduly burdensome because it is not limited to the relevant time period and because it is not limited to the issues in this case. Speedway further objects to the extent it seeks information that is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence. Speedway additionally objects to the extent it seeks information and documentation that is protected from disclosure by the attorney/client privilege and/or work product doctrine. Subject to and without waiving said objections, Speedway is self-insured. Further responding, any responsive documentation that may exist is privileged, having been prepared in anticipation of litigation.

11.     All documents, videos, pictures, and depictions of protests in the vicinity of Speedway, 535 Kenmore Avenue, or within 200 feet of Speedway for the period July 7, 2020 through August 30, 2020.

**RESPONSE:** Objection. Speedway objects to this Demand because it is overly broad and unduly burdensome and because it is not limited to the issues in this case. Speedway further objects to the extent it seeks information that is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence.

Case 1:23-cv-00419-WMS-MJR   Document 1-19   Filed 05/11/23   Page 61 of 96

12.    Documents indicating the work schedule and identity of employees working at the Speedway location 535, Kenmore Avenue, Tonawanda, NY for the period June 20, 2020 through July 11, 2020.

**RESPONSE:** Objection.  Speedway objects to this Demand on the grounds that it is vague, overly broad, is not relevant to any party's claim or defense or proportional to the needs of the case, is not limited to the relevant time period, and seeks information about employees who were not on duty at the time of the alleged incident. Speedway further objects since *ex parte* communications with such individuals are restricted.  Subject to and without waiving said objections, the following employees were on duty or at Speedway Convenience Store No. 9895 on July 9, 2020:  1) Debra Kruder, c/o Brittany L. Hannah, Esq., former General Manager of Speedway Convenience Store No. 9895 and current General Manager of another Speedway Convenience Store; 2) Sabre Lewis, former Customer Service Representative, whose last known address is 27 Wendover Avenue, Tonawanda, New York 14223; 3) David Group, c/o Brittany L. Hannah, Esq., current Customer Service Representative; and 4) Sonya Arnold, former General Manager of Speedway Convenience Store No. 9873 and who was at Speedway Convenience Store No. 9895 on July 9, 2020, whose last known address is 3883 Lockport Avenue, North Tonawanda, New York 14120.

13.    Documents referring or relating to the layout, dimensions, and measurements of the premises in question including photographs, schematics, drawings, and blueprints.

**RESPONSE:** Objection.  Speedway objects to this Demand because it is overly broad and unduly burdensome and it seeks information that is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving said objections, a copy of the site plan for Speedway Convenience Store No. 9895 is attached as **Exhibit 2**.

**DEFENDANT RESERVES THE RIGHT TO SUPPLEMENT AND/OR
AMEND THE RESPONSES ABOVE AFTER THE COMPLETION OF
DISCOVERY OR WITHIN A REASONABLE TIME PRIOR TO TRIAL**

Dated: November 3, 2021

_Brittany L Ha_

Brittany L. Hannah, Esq.
**SUGARMAN LAW FIRM, LLP**
*Attorneys for Speedway LLC*
Office and Post Office Address
211 West Jefferson Street
Syracuse, New York 13202
Telephone: 315-362-8942
bhannah@sugarmanlaw.com

TO:

John Feroleto, Esq.
**FEROLETO LAW**
*Attorneys for Plaintiff*
Office and Post Office Address
438 Main Street, Suite 910
Buffalo, New York 14202
Telephone: 716-854-0700
John.feroleto@feroletolaw.com

CC:

Paul G. Joyce, Esq. and Marc S. Smith, Esq.
**COLUCCI & GALLAHER, P.C.**
*Attorneys for the Town of Tonawanda Police Department
o/b/o The Town of Tonawanda*
Office and Post Office Address
2000 Liberty Building
424 Main Street
Buffalo, New York 14202
(716) 853-4080
pjoyce@colucci-gallaher.com
msmith@colucci-gallaher.com

# EXHIBIT 1

**From:** Berlekamp, Marna E. <meberlekamp@marathonpetroleum.com>
**Sent:** Thursday, August 27, 2020 9:00 PM
**To:** Rowe, Ashley <Ashley.Rowe@WKBW.com>
**Cc:** Francis, Adam <adam.francis@wkbw.com>; Fayerverger, Heather
<Heather.Fayerverger@WKBW.com>; Mason, Aaron <aaron.mason@wkbw.com>
**Subject:** Re: [EXTERNAL] Media Question - 7ABC Buffalo (WKBW)
Hi Ashley,
In response to your email, here is our statement:
Speedway LLC is an inclusive company, and we do not tolerate expressions and acts of racism,
discrimination, and bigotry. We sincerely regret Mr. Martin's experience and are engaged in ongoing
discussions with his legal representative to explain what happened and why. Our employee was
acting upon the information that was available at the time and according to our procedures. While
we understand the concerns expressed by members of the community, we believe that this is best
resolved directly with Mr. Martin himself and his representatives.
Thank you,
Marna
Marna Berlekamp
Get Outlook for iOS

---

**From:** Rowe, Ashley <Ashley.Rowe@WKBW.com>
**Sent:** Thursday, August 27, 2020 8:42:33 PM
**To:** Berlekamp, Marna E. <meberlekamp@marathonpetroleum.com>
**Cc:** Francis, Adam <adam.francis@wkbw.com>; Fayerverger, Heather
<Heather.Fayerverger@WKBW.com>; Mason, Aaron <aaron.mason@wkbw.com>
**Subject:** [EXTERNAL] Media Question - 7ABC Buffalo (WKBW)
Hi Marna,
I'm contacting you regarding an incident that happened at a Speedway located at 535 Kenmore
Avenue in the Town of Tonawanda. Police have now confirmed that a customer who was arrested
after a Speedway employee accused him of trying to cash in a stolen ticket. Charges against the
wrongfully-accused customer have since been dropped.
What is the company's reaction about what happened? What, if any, disciplinary action has been
taken on the employee who accused this customer of cashing in a stolen ticket?
Working on a 10pm EST deadline.

Thank you,

Ashley Rowe

7 Eyewitness News

716-840-7777

@ashleyroweWKBW

Scripps Media, Inc., certifies that its advertising sales agreements do not discriminate on the basis of race or ethnicity. All advertising sales agreements contain nondiscrimination clauses.

# EXHIBIT 2



BEARING SHOWN ON THIS MAP WERE BASED ON: N.Y. STATE PLANE INFORMATION - WEST ZONE
0 20 40 60
KLAUDER ROAD (50' WIDE) (FORMERLY TELLER AVENUE) (PUBLIC ROAD)
KENMORE (WIDTHS VARIES) AVENUE (PUBLIC ROAD)
N PARKER AVENUE
1 STORY BLOCK BUILDING NO. 535
NOCO EXPRESS PROPERTIES LLC LIBER 11153 DEEDS PAGE 7890 SBL NO. 78.36-4-22.1
TOTAL LOT AREA= 28707.3 Sq. Feet ± 0.659 Acres ±
NOTE: AREA HAS NO ADA SPACES (NO SIDEWALK & NO RAMPS)
S 88°29'44" E 156.24'
N 01°30'16" E 148.16'
N 88°08'24" W 217.33'
S 21°55'10" E 166.24'
7.09' N 43°19'04" W
POINT OF BEGINNING SCHEDULE "A"
2 1/2 STORY BRICK BUILDING
BRICK HOUSE NO. 17
FRAME GARAGE
(FORMERLY CONRAIL) (FORMERLY ERIE-LACKAWANNA RAILROAD)
NORTH LINE OF KENMORE AVENUE AS A 80' WIDE RIGHT OF WAY
APPROPRIATION BY LIBER 11267 DEEDS PAGE 6984 (MAP 10, PARCEL 10) (AFFIDAVIT OF SERVICE IN LIBER 11279 DEEDS PAGE 838)
DETAIL (SPOT ELEVATION AREA)
Scale: 1" = 20'

## UTILITIES

The underground utilities shown have been located from field survey information & existing drawings. The surveyor makes no guarantee that the underground utilities shown comprise all such utilities in the area, either in service or abandoned. The surveyor further does not warrant that the underground utilities shown are in the exact location indicated although he does certify that they are located as accurately as possible from the information available. This surveyor has not physically located the underground utilities.

National Fuel, Attn: Ed Kulpa, (716) 857-7967
Time Warner Cable, Attn: Chris Smith, (800) 262-8600
Verizon, Attn: Mark Granschow, (716) 840-8656
Erie County Water Dept., Attn: Steve Denzler, (716) 685-8289
N.Y.S. Electric & Gas, Attn: Sam Coppoglia, (716) 651-5256
National Grid, Attn: Roy Schultz, (315) 428-6319

## ZONING & SETBACK INFORMATION

TOWN OF TOWN OF TONAWANDA–
PARCEL ZONE IN C–GENERAL BUSINESS DISTRICT
https://ecode360.com/10935160
FOR ALL PLATES SEE https://ecode360.com/10934678

Front yards.
A. In the case of any business lots fronting on Delaware Avenue, Niagara Falls Boulevard, Sheridan Drive or Grand Island Boulevard, the front yard depth shall not be less than 65 feet. This provision may be modified by the Zoning Board of Appeals. See Plate L for an exception regarding Niagara Falls Boulevard as per conditions noted
B. The front yard depth of any lot facing that part of Sheridan Drive between Grand Island Boulevard and Kenmore Avenue shall not be less than 35 feet. This provision may be modified by the Zoning Board of Appeals.
C. The front yard in any business district not covered by Subsections A or B of this section or § 215–79 shall be as established by adjoining business buildings or adjoining residential buildings which front on the business street, whichever is the greater, the front yards of which have not been diminished in depth in any manner.
D. In all other cases, the front yard shall be a variable depth according to the street widths on which located and as shown by B on Plate G.[2]

* PER PLATE "L" The building line is hereby established as being 43 feet north of the center line of Kenmore Avenue

Side yards.
A. For interior lots in a C General Business District, no side yard shall be required, provided that the walls for such buildings are constructed in accordance with the New York State Uniform Fire Prevention and Building Code for zero clearance; provided, however, that side yards adjoining side yards of a residential or restricted business property shall be eight feet.
B. For corner lots, a side yard of variable width shall be required as shown on Plate G;[1] except, however, that where the building is set back from the front street line 65 feet or more, the minimum side yard shall be three feet and shall comply with Plate I.[2]
C. The side yards for accessory structures on a corner lot in a C General Business District shall be all on the street side; that is, the accessory structures shall be built on the lot line away from the street, as shown on Plate F.[3] The side yard for an interior lot abutting the ends of lots facing another street shall be as shown on Plate G under Column D.[4]

Projections into yards.
A. In a C General Business District, steps may project into a front or side yard on a corner lot or into the front yard of an interior lot.
B. A vestibule may project into a required front yard only. A vestibule may project ahead of the front building line six feet, provided that the total width of such shall not exceed 25% of the total frontage of the building.
C. A canopy or cornice, constructed of noncombustible material, may project into a required front yard and may also project into a required side yard of a corner lot on the intersecting street side where there is a minimum eight–foot side yard.
D. A canopy or cornice, constructed of noncombustible material, may project ahead of the building line six feet, provided that there is a height of not less than eight feet from the grade.
E. Canopies over fuel–dispensing islands may project into the required setback to within six feet of the property, provided that the edge of the fuel–dispensing island is located a minimum of 20 feet from the property line; the minimum height clearance under the canopy is 11 feet; and the canopy face depth does not exceed three feet.

Rear yards.
The rear yard depths shall be governed by the following conditions:
A. When abutting the side yard in a C General Business District, the depth shall be as shown under Column C of Plate G.[1]
B. When abutting the rear end of lots also in a C General Business District, this depth in each case shall be as shown under Column E of Plate G.[2]
C. When abutting on an alley running along the rear of lots in a C General Business District, this depth shall be as shown under Column D of Plate H.[3]
D. The rear yard of a C General Business District whose lots abut the side lot lines of a residential district shall have a depth of 15 feet for buildings 30 feet or less in height. For buildings higher than 30 feet, this distance shall be increased one foot for each additional five feet in height. This condition is shown on Plate E.[4] Said rear yard shall be maintained free from storage of any merchandise, containerized or not, or any empty containers, supplies and/or maintenance items.
E. The rear yard in a C General Business District whose lots abut the rear lot lines of a residential district shall have a depth of eight feet. Said rear yard shall be maintained free from storage of any merchandise, containerized or not, or any empty containers, supplies and/or maintenance items.

## FLOOD HAZARD DATA

TOWN OF TONAWANDA –

PREMISES IS LOCATED IN FLOOD ZONE "C" DESIGNATED AS AREAS OF MINIMAL FLOODING.

INFORMATION PER FLOOD INSURANCE RATE MAP PUT OUT BY THE FEDERAL EMERGENCY MANAGEMENT AGENCY – NATIONAL FLOOD INSURANCE PROGRAM.

COMMUNITY PANEL NUMBER 360260 0009 B (PANEL NOT PRINTED)
EFFECTIVE DATE: NOVEMBER 12, 1982

## ELEVATION DATUM

ELEVATIONS ON THIS MAP WERE DETERMINED UTILIZING GPS DATUM: NAD83 (2011) EPOCH 2010.0 DATUM (NAVD 88)

SITE
MILTON AVENUE
KENILWORTH
NORTH PARK
UNIVERSITY
STARIN CENTRAL

## NOTES

THERE WAS NO OBSERVABLE EVIDENCE IN FIELD OF RECENT STREET OR SIDEWALK CONSTRUCTION OR REPAIRS.

THERE WAS NO VISIBLE OBSERVED EVIDENCE IN FIELD OF MINE SHAFTS, PUBLIC OR PRIVATE WATER WELLS, CHURCHES, CEMETERIES, BURIAL GROUNDS, WATER FEATURES OR PLACES OF PUBLIC ASSEMBLY WITHIN 300 FEET OF PREMISES.

THE LATITUDE AND LONGITUDE FOR THE APPROXIMATE CENTER POINT OF PREMISES IS 42.958827, –78.837710 (INFORMATION OBTAINED FROM GOOGLE MAPS)

PROPERTY MAILING ADDRESS: 535 Kenmore Ave, Buffalo, NY 14223

## LEGAL DESCRIPTION

PER FIRST AMERICAN TITLE INSURANCE COMPANY, TITLE NO. NCS–946968–19–COL, EFFECTIVE DATE: 02–27–2019
SCHEDULE "A"

ALL THAT TRACT OR PARCEL OF LAND, SITUATE IN THE TOWN OF TONAWANDA, COUNTY OF ERIE AND STATE OF NEW YORK, BEING PART OF LOT NUMBER 22, TOWNSHIP 12, RANGE 8 OF THE HOLLAND LAND COMPANY'S SURVEY, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE NORTH LINE OF KENMORE AVENUE (80.00 FEET WIDE) AND THE EAST LINE OF KLAUDER ROAD, (50 FEET WIDE); THENCE NORTH, ALONG THE EAST LINE OF KLAUDER ROAD, A DISTANCE OF 151.16 FEET TO A POINT; THENCE EAST AT RIGHT ANGLES, A DISTANCE OF 156.24 FEET TO A POINT IN THE WEST LINE OF THE CONRAIL RAILROAD (THE FORMER ERIE RAILROAD); THENCE SOUTHEASTERLY, ALONG SAID RAILROAD LANDS, A DISTANCE OF 166.24 FEET TO A POINT IN THE NORTH LINE OF KENMORE AVENUE; THENCE WEST, ALONG THE NORTH LINE OF KENMORE AVENUE A DISTANCE OF 222.33 FEET TO THE POINT OR PLACE OF BEGINNING.

EXCEPTING THEREFROM THAT PORTION OF PROPERTY WHICH WAS APPROPRIATED BY THE NEW YORK STATE DEPARTMENT OF TRANSPORTATION BY NOTICE OF APPROPRIATION DATED 5/8/2014 AND RECORDED 8/11/2014 IN LIBER 11267 OF DEEDS, PAGE 6984 AND AS SHOWN ON MAP NO. 10 AS PARCEL NO. 10 FILED 8/11/2014 IN K355/163.

## SURVEYORS DESCRIPTION

ALL THAT TRACT OR PARCEL OF LAND, SITUATE IN THE TOWN OF TONAWANDA, COUNTY OF ERIE AND STATE OF NEW YORK, BEING PART OF LOT NUMBER 22, TOWNSHIP 12, RANGE 8 OF THE HOLLAND LAND COMPANY'S SURVEY, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE NORTH LINE OF KENMORE AVENUE (80.00 FEET WIDE) AND THE WEST LINE OF THE CONRAIL RAILROAD (THE FORMER ERIE RAILROAD); THENCE N 88°08'24" W, ALONG THE NORTH LINE OF KENMORE AVENUE A DISTANCE OF 217.33 FEET TO THE POINT; THENCE N 43°19'04" W, A DISTANCE OF 7.09 FEET TO A POINT IN THE EAST LINE OF KLAUDER ROAD, (50 FEET WIDE); THENCE N 01°30'16" E, ALONG THE EAST LINE OF KLAUDER ROAD, A DISTANCE OF 148.16 FEET TO A POINT; THENCE S 88°29'44" E, A DISTANCE OF 156.24 FEET TO A POINT IN THE WEST LINE OF THE CONRAIL RAILROAD (THE FORMER ERIE RAILROAD); THENCE S 21°55'10" E, ALONG SAID RAILROAD LANDS, A DISTANCE OF 166.24 FEET TO THE POINT OR PLACE OF BEGINNING.

## EASEMENTS

PER FIRST AMERICAN TITLE INSURANCE COMPANY, TITLE NO. NCS–946968–19–COL, EFFECTIVE DATE: 02–27–2019
SCHEDULE "B"

5. Easement to New York Telephone Company and Buffalo General Electric Company by instrument recorded in 5/5/1930 in Liber 2083 of Deeds, page 596 (Blanket Easement)

6. Indenture for right of way made by Patrick C. Dwyer and Annie Lanning Dwyer to Dwyer Building Corporation by instrument recorded 7/17/1940 in Liber 3011 of Deeds, page 329. (Plotted On Drawing)

7. Easement to Niagara Mohawk Power Corporation by instrument recorded 10/5/1998 in Liber 10939 of Deeds, page 7980. (Plotted On Drawing)

8. Notice of Appropriation recorded 8/11/2014 in Liber 11267 of Deeds, page 6984 and as shown on Map No. 10 as Parcel No. 10 filed 8/11/2014 in K355/163 (Affidavit of Service recorded 5/1/2015 in Liber 11279 of Deeds, page 838.). (Plotted On Drawing)

## CERTIFICATION

To: Speedway LLC, NOCO Express Properties, LLC, First American Title Insurance Company,

This is to certify that this map or plat and the survey on which it is based were made in accordance with the 2016 Minimum Standard Detail Requirements for ALTA/NSPS Land Title Surveys, jointly established and adopted by ALTA and NSPS, and includes Items 1,2,3,4,7(a),8,9,11,17 & 21 of Table A thereof The field work was completed on 5–23–19.

Date of Plat or Map: 6–2–19 .

Francis C. Delles    Registration No. 050477

STATE OF NEW YORK · FRANCIS C. DELLES · No. 050477 · LICENSED LAND SURVEYOR

## LEGEND

| | | |
|---|---|---|
| UTILITY / SERVICE POLE | GASLINE MARKER | GAS LINE |
| WATER LINE VALVE | GAS LINE VALVE | WATER LINE |
| FIRE HYDRANT | LIGHT STANDARD | TELEPHONE LINE |
| D.I. (DROP INLET – STORM) | SIGN | ELECTRIC LINE |
| MANHOLE (STORM) | H.C. HANDICAP | UTILITY LINES (Electric, Cable & Telephone) |
| MANHOLE (ELECTRIC) | R.O.W. RIGHT OF WAY | CABLE LINES |
| MANHOLE (TRAFFIC) | CONC. CONCRETE | D. DEED |
| MANHOLE (SANITARY) | INV. INVERT | M. MEASURED |
| MANHOLE (TELEPHONE) | M.H. MANHOLE | L. LIBER |
| | | P. PAGE |

# ALTA/NSPS LAND TITLE SURVEY

INSTRUMENT(S) UTILIZED IN DETERMINING LOCATION OF BOUNDARY LINES: Liber 11153 Deeds Page 7890

| | | |
|---|---|---|
| THIS SURVEY WAS MADE IN ACCORDANCE WITH THE MINIMUM STANDARD REQUIREMENTS FOR LAND SURVEYS IN THE STATE OF NEW YORK AND MEETS ALL REQUIREMENTS WITH REGARDS TO MINIMUM ANGLE, DISTANCE AND CLOSURE FOR THIS CLASS OF SURVEY | ©COPYRIGHT 2019 BY: Millard, MacKay & Delles LAND SURVEYORS, LLP 150 AERO DRIVE BUFFALO, NEW YORK 14225 PHONE (716) 631–5140 ~ FAX 631–3811 | AMEND: "C"<br>SURVEY DATE: 5–23–19<br>DRAWING DATE: 6–2–19<br>SCALE: 1" = 20'<br>"ALL RIGHTS RESERVED" |
| PART OF LOT 22 SECTION ___ TOWNSHIP 12 RANGE 8 OF THE: Holland Land Company's SURVEY– Erie COUNTY, N.Y. | | THIS MAP VOID UNLESS EMBOSSED WITH NEW YORK STATE LICENSED LAND SURVEYOR'S SEAL. ALTERING ANY ITEM ON THIS MAP IS A VIOLATION OF THE LAW EXCEPT AS PROVIDED IN SECTION 7209, PART 2, OF THE NEW YORK STATE EDUCATION LAW. |
| SURVEY OF: 535 Kenmore Avenue, Town of Tonawanda | | SBL No. 78.36–4–22.1 |
| SPEEDWAY LLC DRAWING NO.: | | UNIT NO.: (NOCO–005) SPEEDWAY 9895 |

# EXHIBIT 3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

_____

**ERIC C. MARTIN,**

<div align="center">

*Plaintiff,*
</div>

**SECOND REQUEST FOR
DOCUMENTS AND
DISCOVERY**

**vs.**

**Index No.: 808523/2021**

**TOWN OF TONAWANDA POLICE DEPARTMENT
o/b/o THE TOWN OF TONAWANDA, SPEEDWAY LLC,
MARATHON PETROLEUM CORPORATION, and
JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8,**

<div align="center">

*Defendants.*
</div>

_____

Pursuant to Civil Practice Law and Rules, the Plaintiff hereby demands that SPEEDWAY, LLC produce the following documents for copying and inspection, within TWENTY (20) DAYS of service of this demand.

For the term document, please refer to the definition in our September 7, 2021 Request for Documents and Discovery. With regard to any term deemed by the responding party as being ambiguous or vague, a term shall be construed in its broadest sense to encompass all reasonable definitions of that term.

1.      Video of Tonawanda Personnel and Speedway Employees viewing surveillance video of the July 8, burglary on or about July 8, 2020, including the period July 6, 2020 – July 18, 2020.

2.      Video of Eric Martin's father, Eric Martin, taken at the time he was at the Kenmore Avenue Speedway with a lottery ticket on or about July 10, 2020 and documents referring or relating thereto.

3.      Documents and video referring or relating to Eric Martin, or Eric Martin's father, Eric Martin, and protestors in the vicinity of the Speedway store Kenmore Ave., Tonawanda, New York for the period July 8, 2020 to July 31, 2020.

4.      Documents referring or relating to the July 8, 2020 burglary including documents referring to the relative resolution, communication for court appearances, files, photographs, statements or other items,

Some or all of these items may have been requested in the September 7, 2021 Request for Documents and Discovery, however, please provide all items referring or relating to, the investigation of the sale, redemption, and arrest of Eric Martin, including recommended procedures, documents, emails, notations of Beth Marvel, Jessica Kimes, Sherry Sowrey, Mary Birdman, individuals employed involving security and risk management for the period July 8, 2020 to June 11, 2021.

Please identify with sufficient specificity those items deemed privileged or protected pursuant to CPLR 3122(b) along with a privilege log.

DATED:      March 15, 2022
            Buffalo, New York

**JOHN FEROLETO, ESQ.**
**FEROLETO LAW**
*Attorneys for Plaintiff*
438 Main Street, Suite 910
Buffalo, New York 14202
Telephone: (716) 854-0700

TO:   **BRITTANY L. HANNAH, ESQ.**
      **SUGARMAN LAW FIRM, LLP**
      *Attorneys for Speedway LLC*
      211 West Jefferson Street, Suite 20
      Syracuse, New York 13202
      Telephone: (315) 474-2943

CC.   **PAUL G. JOYCE, ESQ.**
      **MARC S. SMITH, ESQ.**
      **COLUCCI & GALLAHER, P.C.**
      *Attorneys for Defendant The Town of Tonawanda*
      *Police Department o/b/o The Town of Tonawanda*
      2000 Liberty Building
      424 Main Street
      Buffalo, New York 14202
      Telephone: (716) 853-4080

# EXHIBIT 4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

ERIC C. MARTIN,

                       Plaintiff,

       vs.

TOWN OF TONAWANDA POLICE DEPARTMENT
o/b/o TOWN OF TONAWANDA, SPEEDWAY, LLC,
MARATHON PETROLEUM CORPORATION and
JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8 as employees of
TOWN OF TONAWANDA POLICE DEPARTMENT,

                     Defendants.

**SPEEDWAY LLC'S RESPONSE
TO PLAINTIFF'S SECOND
REQUEST FOR DOCUMENTS
AND DISCOVERY
INDEX NO. 808523/2021**

Defendant, Speedway LLC, by and through its attorneys, Sugarman Law Firm, LLP,

hereby responds Plaintiff's Second Request for Documents and Discovery, dated March 15, 2022,

as follows:

## **General Objections**

By responding to these demands, Speedway does not concede the materiality of the subject

to which it refers. Speedway's responses are made expressly subject to, and without waiving or

intending to waive any questions or objections as to the competency, relevance, materiality,

privilege, or admissibility as evidence or for any other purpose, of any of the documents or

information produced, or the subject matter thereof, in any proceeding including the trial or any

subsequent proceeding.

Speedway objects to the extent that plaintiff demands information and/or documents which

are protected by the attorney-client privilege or work-product privilege or which constitute

material prepared for litigation purposes.

Inadvertent production of any document or information which is privileged, was prepared in anticipation of litigation, or is otherwise immune from discovery, shall not constitute waiver of any privilege or of another ground for objecting to discovery, with respect to such document or information or the information contained in any document or of Speedway's right to object to the use of any such document or the information contained therein during any proceeding in this litigation or otherwise. Speedway also objects in the entirety to any request for documents that is not limited in time.

Speedway objects in the entirety to any request for information which is not in its possession, custody, or control.

Speedway is continuing to search for information responsive to plaintiff's demands and, therefore, reserves the right to supplement its response to each demand with additional information, if and when such information becomes available to Speedway's counsel. Speedway also reserves the right to object to the future disclosure of such information.

Speedway objects to these demands to the extent they exceed the scope of the CPLR or seek to impose obligations on Speedway beyond the requirements of those rules.

Speedway reserves the right to make any further applicable objection whether or not said objection is delineated above. The above objections in no way waive Speedway's right to make applicable objections as the course of the matter progresses.

### **Responses**

1.      Video of Tonawanda Personnel and Speedway Employees viewing surveillance video of the July 8, burglary on or about July 8, 2020, including the period July 6, 2020 – July 18, 2020.

**RESPONSE:** Objection. Speedway objects to this Demand because it is overly broad and unduly burdensome because it is not limited to the issues in this case. Speedway further objects to the extent it seeks information that is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving said objections, Speedway does not have any materials responsive to this Demand.

2.     Video of Eric Martin's father, Eric Martin, taken at the time he was at the Kenmore Avenue Speedway with a lottery ticket on or about July 10, 2020 and documents referring or relating thereto.

**RESPONSE:** Objection. Speedway objects to this Demand because it is overly broad and unduly burdensome because it is not limited to the issues in this case. Speedway further objects to the extent it seeks information that is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence.   Subject to and without waiving said objections, this Demand is nearly identical to Demand 6 in plaintiff's Request for Documents and Discovery, dated September 7, 2021, which Speedway responded to in Speedway LLC's Response to Request for Documents and Discovery, dated November 3, 2021. Further responding, Speedway does not have any materials responsive to this Demand.

3.     Documents and video referring or relating to Eric Martin, or Eric Martin's father, Eric Martin, and protesters in the vicinity of the Speedway store Kenmore Ave., Tonawanda, New York for the period July 8, 2020 to July 31, 2020.

**RESPONSE:** Objection. Speedway objects to this Demand because it is overly broad and unduly burdensome and because it is not limited to the issues in this case. Speedway further objects to the extent it seeks information that is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving said objections, this

Demand is nearly identical to Demands 2, 6, and 11 in plaintiff's Request for Documents and Discovery, dated September 7, 2021, which Speedway responded to in Speedway LLC's Response to Request for Documents and Discovery, dated November 3, 2021. Further responding, Speedway does not have any additional materials responsive to this Demand.

4.      Documents referring or relating to the July 8, 2020 burglary including documents referring to the relative resolution, communication for court appearances, files, photographs, statements or other items.

**RESPONSE:** Objection. Speedway objects to this Demand because it is overly broad and unduly burdensome. Speedway further objects to the extent it seeks information that is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence. Speedway additionally objects to the extent it seeks information and documentation that is protected from disclosure by the attorney/client privilege and/or work product doctrine. Subject to and without waiving said objections, this Demand is nearly identical to Demand 5 in plaintiff's Request for Documents and Discovery, dated September 7, 2021, which Speedway responded to in Speedway LLC's Response to Request for Documents and Discovery, dated November 3, 2021. Further responding, any documents which may be responsive in Speedway's possession were provided with Speedway LLC's Response to Plaintiff's Omnibus Discovery Demands or will be provided subject to a fully executed and So Ordered Confidentiality and Protective Order, as discussed in Speedway LLC's Response to Request for Documents and Discovery, dated November 3, 2021, which has not been executed by plaintiff's counsel to date.

5.      Some or all of these items may have been requested in the September 7, 2021 Request for Documents and Discovery, however, please provide all items referring or relating to, the investigation of the sale, redemption, and arrest of Eric Martin, including recommended

procedures, documents, emails, notations of Beth Marvel, Jessica Kimes, Sherry Sawrey, Mary Birdman, individuals employed involving security and risk management for the period July 8, 2020 to June 11, 2021.

**RESPONSE:** Objection. To the extent that this unnumbered paragraph is to be construed as a demand, Speedway objects to this Demand because it is overly broad and unduly burdensome. Speedway further objects to the extent it seeks information that is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence. Speedway also objects because it is not limited to the relevant time period. Speedway additionally objects to the extent it seeks information and documentation that is protected from disclosure by the attorney/client privilege and/or work product doctrine. Subject to and without waiving said objections, as an initial response, Speedway did not employ individuals named Sherry Sowrey or Mary Birdman. Speedway assumes that you are referring to its former employees, Sherry Sowry and Mary Bergman. Further responding, Speedway's former employees Jessica Kimes and Mary Bergman were in Speedway's Law Department and any additional responsive documentation beyond what has been produced to date is protected from disclosure by the attorney/client privilege. Pursuant to CPLR 3122(b), Speedway asserts that the divulgence of a privilege log in response to this improper and highly objectional demand would cause disclosure of privileged information, especially because litigation was immediately anticipated. Therefore, Speedway will reconsider this position and provide a privilege log in response to a proper, specific, and reasonably tailored demand.

**DEFENDANT RESERVES THE RIGHT TO SUPPLEMENT AND/OR AMEND
THE RESPONSES ABOVE AFTER THE COMPLETION OF
DISCOVERY OR WITHIN A REASONABLE TIME PRIOR TO TRIAL**

Dated: May 6, 2022

Sugarman Law Firm, LLP • 211 West Jefferson Street • Syracuse, New York 13202



Brittany L. Hannah, Esq.
**SUGARMAN LAW FIRM, LLP**
*Attorneys for Speedway LLC*
Office and Post Office Address
211 West Jefferson Street
Syracuse, New York  13202
Telephone: 315-362-8942
bhannah@sugarmanlaw.com

TO:    John Feroleto, Esq.
        **FEROLETO LAW**
        *Attorneys for Plaintiff*
        Office and Post Office Address
        438 Main Street, Suite 910
        Buffalo, New York  14202
        Telephone: 716-854-0700
        John.feroleto@feroletolaw.com

CC:
        Paul G. Joyce, Esq., and
        Marc S. Smith, Esq.
        **COLUCCI & GALLAHER, P.C.**
        *Attorneys for the Town of Tonawanda Police Department*
        *o/b/o The Town of Tonawanda*
        Office and Post Office Address
        2000 Liberty Building
        424 Main Street
        Buffalo, New York 14202
        Telephone:  (716) 853-4080
        pjoyce@colucci-gallaher.com

# EXHIBIT 5



211 West Jefferson Street, Suite 20
Syracuse, NY 13202-2680
Phone: (315) 474-2943
Fax: (315) 474-0235
www.sugarmanlaw.com

November 15, 2021

**VIA EMAIL ONLY @ john.feroleto@feroletolaw.com; megan.bechard@feroletolaw.com; jill.wnek@ Feroletolaw.com**
**John Feroleto, Esq.**
Feroleto Law
438 Main Street, Suite 910
Buffalo, New York  14202

        Re:        *Martin, Eric v. Speedway LLC, et al*
        Our File:    W08009

Dear Mr. Feroleto:

I am serving this letter pursuant to our telephone conversation on November 4, 2021 regarding the documentation that Speedway LLC has withheld in Speedway LLC's Response to Request for Documents and Discovery pending a Confidentiality and Protective Order. I have discussed your refusal to execute a Confidentiality and Protective Order with Speedway LLC's in-house counsel. We are providing the following list of documentation that will be produced once a So Ordered Confidentiality and Protective Order is in place. Speedway LLC will not produce any of the documentation discussed herein without a Confidentiality and Protective Order due to the nature of the materials and the associated risk of non-protected production. Further, the publicity around this case is atypical, which heightens the need for a Confidentiality and Protective Order to mitigate the risk of non-protected production.

In response to paragraph 4 of plaintiff's Request for Documents and Discovery, dated September 7, 2021, Speedway LLC has withheld the production of the following relevant and responsive documents and training video relating to the subject areas requested that was in effect in July 2020, pending a Confidentiality and Protective Order:

- Operations Manual Policy: Accidents/Incidents, Injuries, etc.
- Operations Manual Policy: Anti-Money Laundering Compliance
- Operations Manual Policy: Customer Satisfaction/Service
- Operations Manual Policy: Division Emergency Reporting Procedure
- Operations Manual Policy: Drive-offs
- Operations Manual Policy: Lottery
- Operations Manual Policy: Prosecution/Criminal Proceedings
- Operations Manual Policy: Robbery
- Operations Manual Policy: Security Incident Reporting
- Operations Manual Policy: Shoplifting
- Operations Manual Policy: "Stay Out" Letter
- Operations Manual Policy: Training
- Operations Manual Policy: Violent Crime
- Use Services Web Based Training (video)

SERVICE BY FAX NOT ACCEPTED

In response to paragraph 7 of plaintiff's Request for Documents and Discovery, dated September 7, 2021, Speedway LLC has withheld the production of the following relevant and responsive materials and training video relating to the subject areas requested, pending a Confidentiality and Protective Order:

- Lottery Operations Manual Policy: 24 Hour Store Lottery Reconciliation with Cashless Instant Ticket Vending Machine (ITVM)
- Lottery Operations Manual Policy: 24 Hour Store Lottery Reconciliation
- Operations Manual Policy: Lottery
- Lottery Operations Manual Policy: 18 Hour Store Lottery Reconciliation with ITVM
- Lottery Operations Manual Policy: 18 Hour Store Lottery Reconciliation
- Lottery Operations Manual Policy: 24 Hour Store Lottery Reconciliation with ITVM
- Use Services Web Based Training (video)

Please contact me if you would like to discuss this further. We will produce the above-discussed materials upon receipt of the previously provided Confidentiality and Protective Order or a mutually agreeable one if that is not sufficient and the same being So Ordered by the Court. If you are unwilling to sign a Confidentiality and Protective Order and are pursuing production of the above-described materials, then please seek (unnecessary) judicial intervention. Thank you.

Very truly yours,

Brittany L. Hannah, Esq.
Direct Dial No.: (315) 362-8942
bhannah@sugarmanlaw.com

BLH/dmr
cc:

**EMAIL ONLY @ pjoyce@colucci-gallaher.com and msmith@colucci-gallaher.com**
Paul G. Joyce, Esq.
Marc S. Smith, Esq.
COLUCCI & GALLAHER, P.C.
2000 Liberty Building
424 Main Street
Buffalo, New York 14202

FILED: ERIE COUNTY CLERK 06/30/2022 04:49 PM

NYSCEF DOC. NO. 40
INDEX NO. 808523/2021

RECEIVED NYSCEF: 06/30/2022

# EXHIBIT 6

5/14/2021 7-Eleven purchase of Speedway chain likely illegal as regulators disagree over deal | Fox Business

☰

**RETAIL** · **Published** May 14, 2021

# 7-Eleven purchase of Speedway chain likely illegal as regulators disagree over deal

In dueling statements, Federal Trade Commission officials expressed concerns

| The Wall Street Journal



**Fox Business Flash top headlines for May 13**

Check out what's clicking on FoxBusiness.com.

INDEX NO. 808523/2021
RECEIVED NYSCEF: 06/30/2022



WASHINGTON—The 7-Eleven convenience store chain said Friday it had completed a $21 billion acquisition of Marathon Petroleum Corp.'s Speedway convenience stores, amid disarray from U.S. antitrust enforcers who hadn't agreed on what to do about a transaction they all said they believed was anticompetitive.

7-Eleven, a subsidiary of Tokyo-based Seven & I Holdings Co. reached the deal with Marathon last August, which adds roughly 3,800 Speedway stores in 36 states to its business. 7-Eleven said the transaction allowed it to expand its footprint and diversify its presence in 47 of the 50 most populated U.S. metro areas.

**7-ELEVEN SEEKING 20,000 WORKERS ACROSS US LOCATIONS**

The timing of the acquisition's consummation was unusual because Democrats and Republicans at the Federal Trade Commission each said they had reasons to believe the transaction was unlawful, though the two camps, in dueling statements, signaled there wasn't consensus, at least not yet, on how to address those concerns.

7-Eleven in a statement said it had negotiated a settlement with FTC staffers and thought it had a deal in place to address competitive concerns by divesting 293 stores, whose buyers were vetted and blessed by FTC investigators.

7-Eleven purchase of Speedway chain likely illegal as regulators disagree over deal | Fox Business
Case 1:23-cv-00419-WMS-MJR   Document 1-19   Filed 05/11/23   Page 84 of 96



Such agreements still need formal approval by the commission.

"7-Eleven will continue to work with them to ensure that 7-Eleven meets its obligations under the negotiated settlement," the company said. "We are hopeful that the Commission will approve the negotiated settlement agreement in the near term."

| Stock Symbol | SVNDY |
| --- | --- |
| Stock Name | SEVEN & I HOLDINGS CO. LTD. |
| Stock Price | 21.82 |
| Stock Change | -0.25 |
| Change % | -1.13% |
| Stock Symbol | MPC |
| Stock Name | MARATHON PETROLEUM CORP. |
| Stock Price | 96.47 |
| Stock Change | +0.59 |
| Change % | +0.62% |

Acting Chairwoman Rebecca Kelly Slaughter and Commissioner Rohit Chopra, both Democrats, said they thought the transaction "is illegal" and raises "significant competitive concerns in hundreds of local retail gasoline and diesel fuel markets across the country."

**GET FOX BUSINESS ON THE GO BY CLICKING HERE**

The FTC, they said, "has spent significant resources investigating this transaction but hasn't yet come to an agreement with the parties and a majority of the commission that would fully resolve the competitive concerns. Seven and Marathon's decision to close under these circumstances is highly unusual, and we are extremely troubled by it."

The commission's two Republicans, Commissioners Noah Phillips and Christine Wilson, likewise said they believed the companies had hundreds of overlapping gasoline and convenience stores and combining them in certain markets would "violate the antitrust laws."

"There is no good reason for the commission to be in this mess," they said in a joint statement, referring to the FTC's inability to finalize a decision. The Republicans said they "have been given no information suggesting the parties failed to work constructively with staff to negotiate a timely and effective resolution."

Neither statement made clear what exactly had prevented the FTC from making a decision on how to proceed.

**CLICK HERE TO READ MORE ON FOX BUSINESS**

The FTC is a five-member body, with one seat currently vacant. President Biden has nominated Lina Khan, a big-tech critic who favors aggressive antitrust enforcement, to fill it. The commission needs majority support for any course of action.

Companies normally wait for resolution with U.S. antitrust authorities before completing their transactions, but the government doesn't have unlimited time to make up its mind.

Even though the transaction has closed, the companies and the FTC still potentially could reach a settlement. The commission also still has the option to challenge the acquisition if it chooses, though the government generally challenges mergers before they are finalized.

7-Eleven, Speedway, Stripes Looking to Fill 60,000 Jobs

Case 1:23-cv-00419-WMS-MJR   Document 1-19   Filed 05/11/23   Page 86 of 96

**(https://www.cspdailynews.com/article/independent)** Tobies as a teenager, returned to the business permanently.

Tobies Station is home to a legendary caramel and cinnamon roll. People have been known to come from near, far and wide to indulge in the item that's sold for $3.75 per unit.

Read forward to learn more about Hickle's full-circle journey from retail to commercial piloting and back to the retail sector again.

**Q: Every retailer has a different narrative to tell about life during COVID-19—what was yours?**

**A:** I refer to it as a lot of mental gymnastics that had to be dealt with. At the end of the day, we always found a way to stay afloat and retain all employees (120 on the restaurant side, about 35 at the c-store). We were blessed to not have any positive COVID cases, and people stayed on board through it all.

**Q: What have you been doing to add power to your forecourt and fueling offer?**

**A:** On the branded side, we converted a while ago from Marathon to MINNOCO, (a Minnesota brand known as Minnesota Independent Oil Co.). Its gasoline is developed for the members of the MSSA (Minnesota Service Station & Convenience Store Association) by members of MSSA. It allows members to own and control their own brand of fuel while offering renewable fuels grown and refined in the Midwest, such as biodiesel, E85, E30, E15, 87, 89 and 91 octane fuels.
But, we have brought Unleaded 88 (Unleaded 87 has 10% ethanol and Unleaded 88 15%, which increases the octane rating to 88). The decision was all done as part of an MSSA program called "Prime The Pump" in conjunction with Growth Energy, [which represents producers and supporters of ethanol]. My sister and I feel that E88 gives us a competitive advantage with nearby chains such as Holiday, Kwik Trip and Minute Mart that sell Unleaded 87.

**Q: What initiatives have you embarked upon inside Tobies Store?**

**A:** We reimaged the c-store completely inside and out about five years ago. We remodeled our store because we know how important it is to have a clean and new updated look. Customers don't want to go to old, rundown c-stores. On the branded side, we became a Caribou Coffee franchise (footprint 200 square feet) a while back and have watched it flourish. The brand's motif and vibe really fit us well—plus it's a premium coffeehouse featuring high-quality, handcrafted beverages and food. We serve expertly roasted coffee blends and espressos and handcrafted beverages such as mochas and lattes.

Case 1:23-cv-00419-WMS-MJR   Document 1-19   Filed 05/11/23   Page 87 of 96

We also receive ongoing counsel from our Farner-Bocken (Carroll, Iowa) wholesale distributor on making sure our category mixes always stay relevant, reflecting seasonal and permanent efforts across price, promotion and display.

**Q: How would you describe the clientele at your store—from locals and vacationers to other type of folks passing through the region?**

**A:** Mainly we appeal to those traveling up and down I-35. Everyone who travels this corridor knows who we are. Most of our customers come from other states, but also from Minneapolis, Duluth and the Iron Range to vacation at the many lakes. Locally, we bring in business to both stores from the Hinckley Grand Casino. And the fact that there's no big-box chains close by means we have an acute competitive advantage.

**Q: Talk a bit about your iconic bakery business. What are some of the specifics that make it thrive?**

**A:** For starters, we sell oodles of baked goods. Our folks come in at 2 a.m. and start baking, as everything is baked fresh daily. On a busy day, we sell 130 pans of rolls, which computes to 3,900 units a day. In addition, we sell glazed doughnuts, long Johns and apple fritters—all displayed from attractive bakery cases.

**Q: Have you been able to establish a synergy between the restaurant and c-store?**

**A:** Yes, people will eat lunch at the restaurant, which is connected to the store, and head to the c-store for fuel and to-go snacks and drinks. On Easter Sunday, we generated 950 restaurant checks, and the day before about 1,000. On a busy day we'll generate a range of 1,500 to 2,000 checks. The restaurant is noted for prime rib: We used to schedule prime rib buffets prior to the pandemic but those days are over. As you can imagine, we also offer walleye sandwiches and entrees.

**Q: Have you experienced product supply chain/distribution issues during the post-COVID-19 era?**

**A:** It's been a rotating string of items or categories that have been hard to achieve fulfillment for—all at different times—from bakery bags, cups, lids and more.

*Members help make our journalism possible. Become a CSP member today and unlock exclusive benefits, including unlimited access to all of our content. **Sign up here (/membership/?utm_source=website&utm_medium=CSPDN-content&utm_campaign=membership)**.*

# EXHIBIT 7

Case 1:23-cv-00419-WMS-MJR   Document 1-19   Filed 05/11/23   Page 89 of 96

COMPANY NEWS (/COMPANY-NEWS)

# 7-Eleven, Speedway, Stripes Looking to Fill 60,000 Jobs

## National Hiring Day event includes franchisees, family of brands

*By **Greg Lindenberg** (/profile/greg-lindenberg) on Apr. 28, 2022*



Image courtesy of 7-Eleven

**IRVING, Texas** — 7-Eleven Inc., Speedway and Stripes, along with participating independent franchise convenience-store owners and operators, are hosting a National Hiring Event on May 3 across more than 13,000 U.S. locations. The 7-Eleven-owned brands are collectively hiring people to fill **60,000 jobs (https://www.cspdailynews.com/company-news/7-eleven-speedway-have-40000-jobs-available)**, the company said.

**Hiring events (https://www.cspdailynews.com/company-news/another-round-hiring-c-store-industry)**, as well as ongoing employment opportunities, are occurring industrywide and across all retail channels amid labor issues created or exacerbated by the pandemic.

Career opportunities include both entry-level and management positions inside the store as well as support roles and IT positions and maintenance technicians who will help the retailer execute its technological initiatives. Store associate positions also will

Case 1:23-cv-00419-WMS-MJR   Document 1-19   Filed 05/11/23   Page 90 of 96

typically help continue to meet the surge in summer traffic, both in stores and through mobile orders, made through the 7Now delivery app, said the company.

Same-day interviews and on-the-spot job offers are available for in-person applicants, although applicants may also apply online.

"Two thousand twenty-two is presenting our family of brands with more exciting growth opportunities than ever across the country," said Doug Rosencrans, 7-Eleven's executive vice president and COO. "We pride ourselves in providing associates with career advancement, flexible work schedules and competitive pay, and we welcome you to come learn and grow with 7-Eleven, Speedway and Stripes."

- *7-Eleven is **No. 1** (https://www.cspdailynews.com/company-news/ranking-top-40-c-store-chains-2022-update#page=1) on CSP's **2022 Top 40 Update** (https://www.cspdailynews.com/company-news/ranking-top-40-c-store-chains-2022-update) to the **2021 Top 202 (https://www.cspdailynews.com/top-202-convenience-stores-2021)** ranking of U.S. c-store chains by store count. Watch for the full 2022 Top 202 ranking in the June issue of CSP magazine and in CSP Daily News.*

7–Eleven, Irving, Texas, operates, franchises or licenses more than 77,700 stores in 19 countries and regions, including about 9,500 in the United States under the 7-**Eleven (https://www.cspdailynews.com/mergers-acquisitions/7-eleven-completes-acquisition-3800-speedway-stores)** banner, about 3,800 under the **Speedway (https://www.cspdailynews.com/mergers-acquisitions/7-eleven-completes-acquisition-3800-speedway-stores)** banner and about 500 under the **Stripes (https://www.cspdailynews.com/mergers-acquisitions/7-eleven-gains-stores-sunoco-changes-its-stripes)** flag, as well as the **Laredo Taco Company (https://www.cspdailynews.com/foodservice/laredo-taco-company-debuts-colorado)** and **Raise the Roost Chicken and Biscuits (https://www.cspdailynews.com/foodservice/7-eleven-opens-fried-chicken-concept)** foodservice brands.

*Members help make our journalism possible. Become a CSP member today and unlock exclusive benefits, including unlimited access to all of our content. **Sign up here (/membership/?utm_source=website&utm_medium=CSPDN-content&utm_campaign=membership)**.*

**human resources (/article/human-resources-0)**

Case 1:23-cv-00419-WMS-MJR   Document 1-19   Filed 05/11/23   Page 91 of 96

# Newsletter

## The latest from *CSP*, sent straight to your inbox.

Sign Up

## RELATED CONTENT

(/company-news/caseys-seeks-hire-5000-new...

**Casey's Seeks to Hire 5,000 New Team Members** (/company-news/caseys-seeks-hire-5000-new-team-members)

(/company-news/another-round-hiring-c-store...

**Another Round of Hiring for the C-Store Industry** (/company-news/another-round-hiring-c-store-industry)

(/company-news/7-eleven-speedway...

**7-Eleven, Speedway Have 40,000 Jobs Available** (/company-news/7-eleven-speedway-have-40000-jobs-available)

(/company-news/7-eleven-add-20000-jobs-...

**7-Eleven to Add Up to 20,000 Jobs in Face of Coronavirus** (/company-news/7-eleven-add-20000-jobs-face-coronavirus)

## COMPANY NEWS (/COMPANY-NEWS)

Case 1:23-cv-00419-WMS-MJR   Document 1-19   Filed 05/11/23   Page 92 of 96

# Indie Closeup: Tobies Operates on Autopilot

## Tobies Station and its sister restaurant have been noted as a 'traveler's tradition' since 1947

*By **Steve Dwyer** (/profile/steve-dwyer) on May 16, 2022*



Photograph courtesy of Tobies Station

Chris Hickle came back down to earth to discover a new high-altitude career path awaiting him. The former commercial pilot realized that opportunity years ago with convenience and restaurant operation.

Hickle and his sister Pam Zabrock—along with their mother, Sue —have worked to make Tobies Station and Tobies Restaurant a formidable one-two juggernaut for travelers and local residents alike. Located in Hinckley, Minn., population 1,800 off Interstate 35 halfway between the Twin Cities and Duluth, Tobies Station and its sister restaurant have been noted as a "traveler's tradition" since 1947.

Once more familiar with aviation fuel than unleaded and diesel sold at retail, Hickle attended the University of North Dakota to become a pilot and proceeded to earn his pilot's license. "I worked for 2 ½ years flying twin-engine commercial turbo prop planes for a charter company," says Hickle, who traveled often from the Twin Cities to New Orleans, Boston-Logan, Chicago-Midway and other regional airports.

After leaving commercial aviation in the early 1990s when a recession affected corporate travel frequency, Hickle, who worked at the **family-run**

# EXHIBIT 8



ADVERTISEMENT
**07/12/2017**

# C-stores Tackle Turnover Through Employee Engagement

**Tammy Mastroberte, Convenience Store News**

NATIONAL REPORT — Attracting top-quality employees who are looking to stay with a company for the long haul is the ultimate goal for any retailer, but many continue to struggle with turnover — especially when it comes to entry-level positions.

According to the *Convenience Store News 2016 HR & Labor Study*, the turnover rate for store associates in the convenience store industry stands around 54 percent, with many reporting this number increased over the previous year.

Also, in the past year, a number of c-store chains have announced hiring sprees, including some of the biggest and well-known names in the industry: Speedway LLC, Wawa Inc., Sheetz Inc., Love's Travel Stops & Country Stores Inc., and more. Sheetz also invested $15 million to increase employee wages in an effort to remain competitive and attract top talent.

The majority of convenience store industry turnover comes from entry-level store associates. Length of employment increases as people move up the ladder. Store associates stay for an average of 2.2 years, assistant managers for 3.2 years, and store managers for 6.4 years, according to the *CSNews HR & Labor Study*, which also found turnover was attributed to competing businesses, wages, benefits, and dismissal for cause.

Turnover costs companies time and money. Retailers incur the additional cost of recruiting and replacing that employee, and they lose the training dollars they invested in that person, said Bruce Tulgan, founder of RainmakerThinking Inc., a management research, training and consulting firm.

Still, he acknowledged, not all turnover is bad. "Your goal should not be to eliminate turnover among potential employees. That's never going to happen. Your goal should be to take control of the turnover among potential employees. You want the high performers to stay and the low performers to go," he said.

At Sheetz, the retailer's data showed the chain was losing people because employees couldn't make a living on part-time hours. Sheetz invested heavily in increasing its wages for hourly employees, but also took into consideration the number of hours given to employees, which is just as important, Stephanie Doliveira, vice president of human resources at Sheetz, told *Convenience Store News*. The thinking was that if they could get more people working full-time hours, they could hopefully retain them.

"You could pay $20 an hour, but if you only give someone five hours a week, they can't make ends meet," Doliveira explained. "It's about paying a better wage and giving enough hours to attract and ultimately retain."

Sheetz announced plans last year to hire 8,000 new people for its growing company, which opens approximately 30 new stores each year. This hiring push was not only to address company growth, but also to fill turnover, Doliveira said. The chain's investment in wages has helped them attract a "great applicant flow."

Sheetz also believes in promoting from within and is always looking to identify internal candidates who have the potential to grow into management roles. More than 95 percent of Sheetz's store managers are promoted from within.

"We also invest a lot in culture and engagement to ensure we have a great work environment for our employees, and we recognize them for tenure in several different ways," Doliveira said. For example, Sheetz offers an employee stock ownership program for those who have been with the company for one year. When they meet certain requirements, employees have the opportunity to gain ownership. And every team member is eligible for a bonus, which is aimed at retention.

"The bonus is related to company profitability and key operational metrics, such as food safety and customer service," said Doliveira.

One of the best ways to learn what employees want and what needs to be changed in order to increase job satisfaction is to listen to current and former employees, she advised. This is done at Sheetz through engagement surveys, asking how everything is going so far, what they like, and if they intend to stay.

For those who leave the company, it's also important to find out why — wages, training, their boss, etc.

"You also need to act on what your employees tell you," she noted. "Diagnosing the causes is critical, and then making the improvements."

Employees should be asked what is needed from the organization on the first day of employment and then throughout their employment, Tulgan said. They need to know there is someone who knows what they want and need, and that someone cares.

"Start talking with potential employees about retention on day one, and keep talking about it. If you are talking with them about how to meet their needs and wants on an ongoing basis, they are much more likely to talk with you at those key points when they are trying to decide whether to leave or stay," he said.

"If you are willing to work with them, you can be flexible and generous. That's how you make them want to stay and work harder, at least for a little while longer," Tulgan continued. "Years from now, the potential employees who turn out to be long-term employees will be the ones who decided over and over again that they wanted to stay a little while longer."

Employee engagement can have a significant impact on retention, and can help create brand advocates who will recruit for the company, according to Steven Kramer, CEO of WorkJam, which offers an employee engagement mobile app for hourly workforces that includes communication and training components. The WorkJam solution is used by Shell.

"A more engaged employee will service customers better," he explained. "Gartner came out with a report on the main contributors to employee happiness and engagement, and it was when the employee understood what was expected of them, had tools to do their best every day, and felt as though they had a voice in providing feedback to the organization."

Sheetz, too, is well aware of the importance of employee engagement.

"We talk a lot about engagement here and have a strategic focus on it because happy employees stay, deliver better customer service, and produce and perform better," Doliveira said. "Also, keeping a great culture and a fun work environment [is crucial]. People tend to stay in a job that is fun and rewarding."

**For more on how to attract, train and retain top-quality talent, look in the July issue of *Convenience Store News*.**