Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 1 of 256

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

_____

ERIC C. MARTIN,

                              Plaintiff,

       vs.

TOWN OF TONAWANDA POLICE DEPARTMENT
o/b/o TOWN OF TONAWANDA, SPEEDWAY, LLC,
MARATHON PETROLEUM CORPORATION and
JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8 as employees of
TOWN OF TONAWANDA POLICE DEPARTMENT,

                              Defendants.

_____

**NOTICE OF CROSS-MOTION**
**INDEX NO. 808523/2021**
**JUDGE:  NUGENT-PANEPINTO**

Motion By:

        Sugarman Law Firm, LLP, attorneys for Defendant, Speedway LLC

Motion Returnable:

| | | |
|---|---|---|
| Date: | September 1, 2022 | |
| Time: | 11:00 A.M. | |
| Place: | Erie County Court Building | |
| | 92 Franklin Street, Part 5 | |
| | Buffalo, NY  14202 | |

Supporting Papers:

        The Affirmation of Cory J. Schoonmaker, Esq., dated August 25, 2022, with attached exhibits; Affidavit of Beth Marvel, sworn to August 24, 2022; Memorandum of Law, dated August 25, 2022; and all the pleadings previously served.

Relief Demanded:

        An Order granting Defendant's cross-motion and either ordering Plaintiff to execute a confidentiality agreement with Speedway LLC or directly ordering Plaintiff to keep confidential those documents thus far withheld on the basis of a confidentiality objection.

Grounds for Relief
Demanded:                    CPLR 3103(a)


Demand is made that answering papers, if any, be served pursuant to CPLR § 2214.

Dated: August 25, 2022

_____
Cory J. Schoonmaker, Esq.
**SUGARMAN LAW FIRM, LLP**
*Attorneys for Speedway LLC*
Office and Post Office Address
211 West Jefferson Street
Syracuse, New York  13202
Telephone: 315-362-8941
cschoonmaker@sugarmanlaw.com

TO:
John Feroleto, Esq.
**FEROLETO LAW**
*Attorneys for Eric C. Martin*
Office and Post Office Address
438 Main Street, Suite 910
Buffalo, New York  14202
Telephone: 716-854-0700
John.feroleto@feroletolaw.com

CC:
Paul G. Joyce, Esq., and
Marc S. Smith, Esq.
**COLUCCI & GALLAHER, P.C.**
*Attorneys for the Town of Tonawanda Police Department
o/b/o The Town of Tonawanda*
Office and Post Office Address
2000 Liberty Building
424 Main Street
Buffalo, New York 14202
Telephone:  (716) 853-4080
pjoyce@colucci-gallaher.com

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 3 of 256

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

_____

ERIC C. MARTIN,

                              Plaintiff,

               vs.

TOWN OF TONAWANDA POLICE DEPARTMENT
o/b/o TOWN OF TONAWANDA, SPEEDWAY, LLC,
MARATHON PETROLEUM CORPORATION and
JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8 as employees of
TOWN OF TONAWANDA POLICE DEPARTMENT,

                            Defendants.

_____

**ATTORNEY AFFIRMATION**
**INDEX NO. 808523/2021**
**JUDGE:  NUGENT-PANEPINTO**

       Cory J. Schoonmaker, Esq., pursuant to CPLR 2106, hereby affirms under penalty of perjury:

       1.      I am an attorney duly licensed to practice law in New York and an associate with Sugarman Law Firm, LLP, counsel for Defendant, Speedway LLC ("Speedway").  As such, I am fully familiar with the facts and proceedings set forth herein.

       2.      I submit this Affirmation in opposition to the motion of Plaintiff, Eric C. Martin ("Plaintiff"), to compel disclosure, and in support of Speedway's cross-motion seeking that Plaintiff either be ordered to execute a confidentiality agreement with Speedway LLC or Plaintiff be ordered to keep confidential those documents thus far withheld on the basis of a confidentiality objection.

       3.      Plaintiff seeks, among other things, an order compelling Speedway to disclose certain documents that Speedway asserts are trade secrets and/or documents that present security concerns, without a confidentiality agreement/order.  Although the confidentiality agreement issue

1

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 4 of 256

has been a topic of negotiation, Plaintiff also asserts a number of other objections to Speedway's disclosure that he has not previously attempted to resolve in good faith. Plaintiff's motion concerns items numbered 2, 3, 7, 10, 11, and 12 of its Request for Documents and Discovery. *See* Affirmation of John P. Feroleto, Esq., dated June 30, 2022 ("Feroleto Affirmation"), at ¶¶ 35-54.

4.      For the reasons set forth below, Plaintiff's motion should be denied and Speedway's cross-motion should be granted.

## **BACKGROUND**

5.      Plaintiff commenced this action on June 29, 2021, alleging claims arising out of his arrest on July 9, 2020. According to Plaintiff, Speedway played a role in that arrest when its employee allegedly called the police after Plaintiff attempted to redeem a lottery ticket that the Speedway employee believed had been stolen during a robbery that occurred on July 8, 2020. A true and correct copy of Plaintiff's Summons and Complaint is attached as **Exhibit A**.

### Plaintiff's Initial Demands and Responses/Objections

6.      On or about September 7, 2021, Plaintiff served discovery demands upon Speedway. *See* Feroleto Affirmation, Exhibit 1.

7.      Speedway provided responses to those demands on or about November 3, 2021, pursuant to extensions granted by Plaintiff's counsel. *See* Feroleto Affirmation, Exhibit 2.

8.      Demand No. 2 from Plaintiff's Request for Documents and Discovery sought "[a]ll documents, notations, emails, reports, incident reports, statements, summaries, computer entries, computer stored information or data referring to or relating to Eric C. Martin from the dates of July 1, 2020 through June 29, 2021, including those between or among employees of Speedway, the

2

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 5 of 256

New York State lottery, police agencies, or other third parties." *See* Feroleto Affirmation, Exhibit 1, at p. 33 (at ¶ 2).[1]

9. In response to Demand No. 2, Speedway produced non-privileged documents while simultaneously objecting to this demand on several grounds, including that it was "overly broad and unduly burdensome because it is not limited to the relevant time period and because it is not limited to the issues in this case" and that it was not reasonably calculated to lead to the discovery of admissible evidence. Speedway further objected "to the extent" that the demand sought disclosure of items protected by attorney-client privilege and/or the work product doctrine. *See* Feroleto Affirmation, Exhibit 2, at p. 4 (at ¶ 2).

10. Demand No. 3 from Plaintiff's Request for Documents and Discovery sought "[d]ocuments indicating the hierarchical structure of Speedway, including memoranda, schematics or flow charts for Western New York, job descriptions for Speedway personnel in Western New York, in effect during July, 2020." *See* Feroleto Affirmation, Exhibit 1, p. 33 (at ¶ 3).

11. Speedway stated several objections in response, but more importantly, indicated that it did not possess any materials responsive to the demand. *See* Feroleto Affirmation, Exhibit 2, p. 4 (at ¶ 3).

12. Demand No. 7 from Plaintiff's Request for Documents and Discovery sought:

Documents referring or relating [to], the sale of lottery tickets, promotion of lottery items, instruction to employees as to the sale of lottery items, training materials, audio, video materials, instructions for employees to follow with respect to lottery tickets, lottery machines, the use of lottery machines codes and lottery machines, error codes, how to cancel lottery tickets, how to report lottery ticket stolen, procedures in place in determining if lottery tickets were stolen, misplaced, miscounted, recorded, procedures, policies on how to contact your chief lottery, when to contact the lottery, when or how to contact management with respect to questions or issues with lottery tickets, procedures for calling or communicating with police agencies, circumstances in which calling or contacting police agencies is authorized, documents referring or relating to procedures to follow when

---

[1] Several of Plaintiff's exhibits in support of his motion are not consecutively paginated documents. Thus, this page notation refers to the overall page number within the PDF version of the document retrieved from NYSCEF.

there is a question of redemption of a lottery ticket at the store, policies procedures as to when to refer individuals to the New York State Lottery if there is a question regarding a lottery ticket, in effect during the period June 7, 2019 through July 31, 2020.

Feroleto Affirmation, Exhibit 1, pp. 33-34 (at ¶ 7).

13.     In response, Speedway objected to the demand as overly broad and unduly burdensome "because it is not limited to the relevant time period and because it is not limited to the issues in this case," and further objected that it sought irrelevant information and was not reasonably calculated to lead to the discovery of admissible evidence.   Notwithstanding those objections, Speedway stated that it would produce the documents in its possession that were relevant and responsive subject to a to-be-negotiated confidentiality and protective order ("CPO"). *See* Feroleto Affirmation, Exhibit 2, pp. 6-7 (at ¶ 7).

14.     Demand No. 10 from Plaintiff's Request for Documents and Discovery sought "[a]ll items to or from employees of Speedway, or third parties, including emails, statements, renditions, reports, memoranda, reports to risk management, claims individuals, employees of Speedway with respect to Eric Martin regarding the incident involving Eric Martin for the period July 1, 2020 through June 29, 2021."  *See* Feroleto Affirmation, Exhibit 1, p. 34 (at ¶ 10).

15.     In response, Speedway objected because the demand was "overly broad and unduly burdensome because it is not limited to the relevant time period and because it is not limited to the issues in this case" and because it sought irrelevant information and was not reasonably calculated to lead to the discovery of admissible evidence.   Speedway further objected "to the extent" that the demand sought privileged information.   Speedway indicated that it was self-insured and any possibly responsive documents would be internal documents prepared in anticipation of litigation. *See* Feroleto Affirmation, Exhibit 2, p. 8 (at ¶ 10).

16.     Demand No. 11 from Plaintiff's Request for Documents and Discovery sought "[a]ll documents, videos, pictures, and depictions of protests" in the vicinity of the Speedway

4

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 7 of 256

where Plaintiff was arrested, from July 7, 2020, through August 30, 2020. *See* Feroleto Affirmation, Exhibit 1, p. 35 (at ¶ 11).

17.     In response, Speedway objected that this demand was overly broad and unduly burdensome because it was not limited to the issues in this case, and that the demand sought irrelevant information and was not reasonably calculated to lead to the discovery of admissible evidence. *See* Feroleto Affirmation, Exhibit 2, p. 8 (at ¶ 11).

18.     Demand No. 12 from Plaintiff's Request for Documents and Discovery sought "[d]ocuments indicating the work schedule and identity of employees working at the Speedway location 535, Kenmore Avenue, Tonawanda, NY for the period June 20, 2020 through July 11, 2020". *See* Feroleto Affirmation, Exhibit 1, p. 35 (at ¶ 12).

19.     Speedway objected to Demand No. 12 on the bases that it was vague, overly broad, not relevant to any claim or defense or proportional to the needs of the case, not limited to the relevant time period, and sought information about employees not on duty at the time of the alleged incident.  Speedway further objected on the basis that any *ex parte* communications with Speedway employees would be restricted.  Nevertheless, Speedway identified all employees on-duty on July 9, 2020 at the Speedway location at issue.  *See* Feroleto Affirmation, Exhibit 2, p. 9 (at ¶ 12).

<u>Post-Response Discussions</u>

20.     Before serving the responses described above, Speedway's outside counsel at Sugarman Law Firm, LLP, Brittany L. Hannah, Esq., had reached out to the other attorneys and placed them on notice of the possibility that Speedway would require a CPO to produce some documents.  A true and correct copy of that email is attached as **Exhibit B**.  At the time, Plaintiff's counsel appeared to have no objection to such an arrangement.  A true and correct copy of Attorney Feroleto's response to Exhibit B is attached as **Exhibit C**.

5

21.     Once Speedway approved its discovery responses, Attorney Hannah advised all parties that a proposed CPO would be forthcoming.  A true and correct copy of the email to that effect is attached as **Exhibit D**.  After serving the responses discussed above, Attorney Hannah circulated a proposed CPO.  A true and correct copy of that email with its attachment, the proposed CPO, is attached as **Exhibit E**.

22.     After the CPO was circulated, Attorney Feroleto began voicing an objection to the CPO.  Following a telephone conversation on November 4, 2021, Attorney Hannah served correspondence stating Speedway's position with regard to the CPO and listing the documents that Speedway was withholding pending a So Ordered CPO.  A true and correct copy of that letter is attached as **Exhibit F**.

23.      Negotiations continued with Attorney Feroleto refusing to execute any CPO and Speedway declining to reverse its position that a CPO is required.

24.     On May 20, 2022, in response to an indication from Plaintiff's counsel that they would file a motion to compel over the CPO issue, Attorney Hannah emailed Attorney Feroleto and requested that he discuss any other issues with Speedway's disclosure in good faith before bringing the motion.  A true and correct copy of that email is attached as **Exhibit G**.

25.     On May 23, 2022, Attorney Feroleto replied via email and objected to the confidentiality of training materials because he believed that information was "widely disseminated among thousands of individuals."  He also expressed concern that the proposed CPO could create a cause of action where there is none. Finally, he objected to confidentiality for any manuals received from the lottery vendor.  In response, Attorney Hannah advised that these objections would be considered.  A true and correct copy of that email exchange is attached as **Exhibit H**.

6

26.     On May 27, 2022, Attorney Hannah advised that the lottery materials at issue were not provided by outside vendors or by any State agency, but were developed by Speedway and were confidential, specifically noting that there were very obvious security reasons why the manner in which Speedway instructed its employees to handle lottery tickets should not be disseminated to the public.  Contrary to Plaintiff's counsel's prior assertion, Attorney Hannah further advised that Speedway employees were never provided with their own copies of these materials.  A true and correct copy of this email is attached as **Exhibit I**.

27.     In response, Plaintiff's counsel continued to object to executing a CPO, and expressed concern that the CPO could create a new cause of action against him personally, as well as against any expert he retained, despite the fact that he claimed to have no intention to disseminate the materials.  A true and correct copy of this email is attached as **Exhibit J**.

28.     In order to assuage Plaintiff's counsel's concerns regarding a cause of action against him and to move forward, Speedway offered to incorporate additional language into the CPO to protect against that possibility or alternatively, enter into a side agreement in which Speedway agreed not to bring a cause of action for liability against Plaintiff's counsel or any expert he may retain for any inadvertent violation of the confidentiality order.  A true and correct copy of the email to this effect is attached as **Exhibit K**.

29.     Unfortunately, this arrangement was not agreeable to Plaintiff's counsel either, and thus, this motion has ensued.

30.     The CPO issue is the only issue that has been the subject of good faith discussions between the parties prior to the filing of this motion.

31.     On or about March 15, 2022, Plaintiff served a Second Request for Documents and Discovery, a true and correct copy of which is attached as **Exhibit L**.

7

32. Plaintiff's Second Request contained two demands that were substantially similar to demands contained in Plaintiff's First Request for Documents and Discovery. *See* Exhibit L, pp. 1-2.

33. As part of Plaintiff's Second Request, Plaintiff included an unnumbered final paragraph that sought disclosure of "all items referring to or relating to, the investigation of the sale, redemption, and arrest of Eric Martin." *Id.*, p. 2.

34. Speedway served its Response on or about May 6, 2022, a true and correct copy of which is attached as **Exhibit M**.

35. In response to Plaintiff's un-numbered (fifth) paragraph, Speedway asserted that said documents were privileged and that a privilege log would itself cause disclosure of privileged information, especially because litigation was immediately anticipated. *Id.*, p. 5.

36. There has been no "meet and confer" conversation between the parties on the subject of the Second Request for Documents and Discovery or Speedway's objections to it.

## **LEGAL ARGUMENT**

37. The primary issue before this Court is whether Plaintiff is entitled to the documents Speedway has withheld (as described in Exhibit F), without a confidentiality agreement or a confidentiality order.

38. There are two alternative reasons why confidentiality is necessary for these documents to be disclosed.

39. First, a confidentiality agreement or order is necessary to disclose these documents because the withheld documents represent security-related policies and procedures, and unfettered disclosure and dissemination of these documents could very easily cause an increase in crime that endangers Speedway's employees and customers.

8

40.     As set forth in the accompanying affidavit of Beth Marvel, Lead Area Leader for

7-Eleven, Inc./Speedway, the documents include information about the use of alarms and panic

buttons, when to call the authorities, and which criminal activities to react or not react to.  *See*

Affidavit of Beth Marvel, sworn to on August 24, 2022 ("Marvel Affidavit"), at ¶ 8.

41.     It is not difficult to understand how revealing these details to the public could cause

individuals to target Speedway in an attempt to use these policies to maximize their gain or

minimize their detection or consequences.  Such criminal attempts are highly likely to place

Speedway's employees and customers in harm's way.

42.     In fact, as recently as the beginning of August 2022, unknown individuals were

continuing to re-post video footage of Plaintiff's arrest and making disparaging comments about

Speedway and its employees in connection with this incident.  Evidence of such social media

postings can be provided to the Court *in camera* upon request.  Clearly, this incident is still a matter

of public ire.

43.     Such security concerns are a sufficient basis for a court to order confidentiality.  *See*

Memorandum of Law.

44.     Second, a confidentiality agreement or order is necessary because the withheld

documents contain or constitute trade secrets.  Trade secrets are not limited to product designs or

formulae, but include any compilation of information that is used in one's business and which

gives an advantage over competitors.  *See* Memorandum of Law.

45.     Speedway's burden to establish that the documents at issue contain trade secrets is

minimal, and requires only an affidavit of a Speedway employee stating that the documents contain

information not known to those outside of the specific business, are kept under lock and key, are

9

Case 1:23-cv-00419-WMS-MJR Document 1-25 Filed 05/11/23 Page 12 of 256

the product of substantial effort and expense, and cannot be easily acquired or duplicated. *See* Memorandum of Law.

46. Once that minimal burden is met, the only way the documents can be discoverable is if there is a confidentiality agreement or order, and even that outcome only occurs when the party seeking disclosure can establish that the documents are "indispensable" and the information they contain is not otherwise available. *See* Memorandum of Law.

47. As explained by Beth Marvel, the withheld documents constitute proprietary documents developed after significant worker hours (and the related wages), that those documents are among the best in the industry, and that Speedway's competitors could not duplicate them without significant time and expense equivalent to the efforts used by Speedway to create them. Furthermore, the specific documents Plaintiff seeks are not disclosed by Speedway to outsiders without a confidentiality agreement or order in place. *See* Marvel Affidavit, at ¶¶ 4-6.

48. If Speedway's current or future competitors were to obtain these documents as a result of unfettered disclosure and dissemination (which unfettered disclosure and dissemination appears likely in this matter given the conduct to date), they would experience substantial cost savings because they would not need to develop such policies on their own. This would represent an unfair competitive advantage against Speedway. *See* Marvel Affidavit, at ¶ 10.

49. Plaintiff's argument that these documents are seen by Speedway employees is irrelevant and does defeat their designation as trade secrets. The focus on trade secrets is whether these documents are shared with people *outside* the business. Even though the materials are used to train employees, those employees are not given copies of the documents, and all employees agree to comply with Speedway's Code of Business Conduct, which requires them not to disclose the information contained in those documents with individuals outside of the company. *See*

10

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 13 of 256

Marvel Affidavit, at ¶ 7.  A copy of the code of Business Conduct can be provided to the Court for *in camera* review if desired.

50.      Beth Marvel's affidavit is sufficient to meet Speedway's burden to establish that the documents contain trade secrets.  *See* Memorandum of Law.

51.      Although Plaintiff's counsel has expressed a fear that executing a confidentiality agreement will somehow expose him and his expert consultants to liability even if they do not violate the order, such a concern is without basis and is irrelevant to the legal principles set forth above.  Moreover, the courts have recognized that a confidentiality agreement or order is a "minimal burden."  *See* Memorandum of Law.

52.      Thus, if Plaintiff can establish that the withheld documents are essential in opposition to this cross-motion, then Speedway is entitled to an order either compelling Plaintiff to execute a confidentiality agreement with Speedway to obtain these documents or imposing a confidentiality order directly.  If he cannot meet this burden, then he is not entitled to disclosure of these documents at all.  *See* Memorandum of Law.

53.      Plaintiff's remaining arguments in support of his motion, each of which involve the demands made in his "Request for Documents and Discovery," should be rejected without consideration.  Plaintiff was required to undertake a diligent effort to at least attempt to meet and confer with Speedway's attorneys on each of his objections to Speedway's discovery responses, pursuant to the Uniform Rules of the Supreme Court.  *See* Memorandum of Law.

54.      He then was required to explain in his moving papers "the time, place and nature of the consultation and the issues discussed and any resolutions, or shall indicate good cause why no such conferral with counsel for opposing parties was held."  22 NYCRR 202.7(c).

11

Case 1:23-cv-00419-WMS-MJR    Document 1-25    Filed 05/11/23    Page 14 of 256

55.     Plaintiff has not included any language pursuant to 22 NYCRR 202.7(c) in his motion papers.  More importantly, he has not even attempted to resolve any of his current objections with Speedway other than the CPO issue.  Thus, any of his other objections are not procedurally appropriate because he has not met the condition precedent to raising such arguments in this motion.  *See* Memorandum of Law.

56.     If this Court does choose to address Plaintiff's arguments on the merits, however, they should still be denied, for the reasons set forth below.

57.     Plaintiff first references Speedway's response to Demand No. 2, in which Speedway asserted attorney/client and work product privileges, among other objections.  *See* Feroleto Affirmation, at ¶¶ 35-37.  He does not actually articulate any arguments in discussing Demand No. 2, although his inclusion of Speedway's privilege objections in the area of his affirmation dedicated to "Outstanding Discovery" does seem to indicate he has some kind of objection to Speedway's invocation of privilege.  This section of the Feroleto Affirmation should be disregarded, primarily because it does not actually assert any arguments or request any relief.

58.     Assuming that Plaintiff was attempting to argue that Speedway's invocation of privilege in response to Demand No. 2 was somehow improper, that argument would not entitle Plaintiff to any relief because Plaintiff has not objected to Speedway's other objections to Demand No. 2.  *See* Feroleto Affirmation, at ¶¶ 35-37.

59.     Speedway asserted several objections, including that the demand was overly broad and unduly burdensome, which is an objection that entitles Speedway not to respond to the demand at all.  *See* Memorandum of Law.

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 15 of 256

60.     Since those other objections are unopposed, it does not matter if Speedway's invocation of privilege was erroneous, due to the presence of the other objections with which Plaintiff apparently takes no issue.  *See* Memorandum of Law.

61.     In any event, Speedway's invocation of privilege was entirely appropriate given the context of the demand.  Plaintiff's overly broad demand facially sought categories of documents that would contain Speedway's communications with its own attorneys.  Speedway then narrowly objected to the demand "to the extent" that it facially sought clearly privileged documents. Plaintiff has failed to make any arguments that such an invocation was in any way inappropriate. As such, that prong of Plaintiff's motion should be denied.

62.     Should Plaintiff argue in response to this cross-motion that he is entitled to a privilege log, Speedway notes that no privilege log was required because Speedway has asserted that "divulgence of such information would cause disclosure of the allegedly privileged information."  *See* CPLR 3122(b); *see also* Exhibit M, ¶ 5.

63.     Plaintiff next disagrees with Speedway's assertion that it possesses no documents responsive to Demand No. 3 and speculates that Speedway must be withholding some documents responsive to that demand.  Feroleto Affirmation, at ¶¶ 38-40.  He also objects to Speedway's response to Demand No. 7 on the bases that Speedway has not provided any documents it allegedly received from the New York State Lottery or lottery vendor and disagrees with Speedway's objection to that demand as seeking irrelevant information.  Feroleto Affirmation, at ¶¶ 41-45.

64.     These two arguments by Plaintiff are without merit for the same reason: they seek documents that either do not exist or are not within Speedway's possession.  It is well-settled that a party is only entitled to discovery of documents that already exist and are within the possession and control of the party from whom discovery is sought.  Plaintiff similarly cannot use a discovery

13

demand to compel Speedway to create documents simply because the underlying information might be known. *See* Memorandum of Law.

65.     These arguments are based only upon Plaintiff's subjective belief that Speedway was not telling the truth when it represented that such documents did not exist. However, baseless distrust is not a basis for a motion to compel disclosure. If there is any remedy at all in this situation, it would arise if, and only if, Speedway attempted to utilize documents that it had previously indicated did not exist, at which point Plaintiff could then move to preclude the use of those documents as a discovery sanction.

66.     Plaintiff also disagrees with Speedway's relevance objection to Demand No. 11, which seeks documents about protests that occurred in the vicinity of the Speedway location where Plaintiff was arrested in connection with the events alleged in the Complaint. Feroleto Affirmation, at ¶¶ 46-49.

67.     In making this argument, however, Plaintiff has failed to explain how any protests are relevant to his claims in this lawsuit. Instead, he makes only a vague argument that "Speedway's actions and lack of actions are relevant," without explaining how the protests (which occurred after the date in question) relate to Speedway's alleged actions or lack of actions. *See* Feroleto Affirmation, ¶ 49.

68.     Speedway's objections to this demand were entirely proper. Evidence is relevant only if it renders a material fact more or less likely to be true. *See* Memorandum of Law.

69.     Assuming that Plaintiff was seeking documents pertaining to particular protests about his treatment that occurred in the vicinity of that Speedway location after his arrest, those protests are nevertheless entirely unrelated to what did or did not happen in connection with this case. All that a protest indicates is that the protestors *believed* something happened a certain way

14

and had certain feelings about it.  Such belief does not make anything more or less likely to be true.

70.     Alternatively, this demand was also overly broad because it was not limited to protests about Plaintiff.  The demand, as written, would include documents and information about any protest, not just protests related to the events in this lawsuit.  Since an overly broad demand should be vacated rather than pruned, Speedway had no obligation to offer any response to this demand in its current form.  *See* Memorandum of Law.

71.     Plaintiff also disagrees with Speedway's objection that Demand No. 12 is vague, overbroad, and seeks irrelevant information.  Feroleto Affirmation, at ¶¶ 50-51.  This demand sought "[d]ocuments indicating the work schedule and identity of employees working at the Speedway location 535, Kenmore Avenue, Tonawanda, NY for the period June 20, 2020 through July 11, 2020."  Feroleto Affirmation, Exhibit 1, p. 35 (at ¶ 12).

72.     This demand was overly broad and thus, Speedway had no obligation to respond to it.  *See* Memorandum of Law.

73.     More precisely, this lawsuit involves allegations of interactions between Plaintiff and Speedway on July 8th and 9th of 2020.  *See* Exhibit A, at ¶¶ 9-10.  Plaintiff's demand, however, seeks both the work schedule and any documents indicating the identity of any employees who happened to work at that Speedway location for approximately three weeks.  Feroleto Affirmation, Exhibit 1, p. 35 (at ¶ 12).  Thus, about 90% of the dates for which Plaintiff seeks discovery in this demand are dates entirely irrelevant to the events in this lawsuit.  The employees who worked on those irrelevant dates do not deserve to have their private information divulged to Plaintiff simply because they work for Speedway.  The proper remedy for such an overly broad demand would be

15

to vacate it without prejudice to Plaintiff serving a more appropriate demand. *See* Memorandum of Law.

74.    Finally, Plaintiff disagrees with Speedway's assertion that all documents potentially responsive to Demand No. 10 are documents prepared solely in anticipation of litigation. *See* Feroleto Affirmation, at ¶¶ 52-54. Plaintiff's argument is based upon Plaintiff's speculation that Speedway performs investigations of crimes and accidents on other occasions, so Plaintiff concludes Speedway must have also done so on this occasion. *See id.*

75.    It is irrelevant what Speedway does for other incidents. The only relevant consideration here is whether Speedway's actions in this case in particular were taken in anticipation of litigation, and they were. As such, Plaintiff is only entitled to disclosure if he can establish substantial need and undue hardship, which he has not even attempted to do in support of his motion. *See* Memorandum of Law.

76.    To the contrary, the events alleged in Plaintiff's Complaint occurred during the summer of 2020, a period during which there were national protests about police interactions with arrested suspects. Consequently, as averred by Beth Marvel, Speedway had the immediate impression that litigation would be forthcoming in connection with Plaintiff's arrest, and Speedway immediately took all actions in connection with *this* arrest with potential litigation in mind. *See* Marvel Affidavit, at ¶¶ 11-12.

77.    Plaintiff's cases discussing "mixed purpose" reports are distinguishable, as those cases are related to the entirely different context of an insurance company's pre-disclaimer investigation of a coverage issue. At no time was Speedway in a position analogous to an insurer trying to decide whether to disclaim coverage for a loss. *See* Memorandum of Law.

16

78.     Alternatively, Plaintiff has failed to address or oppose Speedway's other objections to this Demand, including objections that the demand was overly broad and unduly burdensome. Thus, even if Plaintiff were to receive a favorable ruling on Speedway's "anticipation of litigation" objection to Demand No. 10, disclosure would still not be required because he has not opposed Speedway's other objections.

WHEREFORE, Speedway respectfully requests an Order (1) denying Plaintiff's motion to compel disclosure; and (2) granting Speedway's cross-motion seeking that Plaintiff either be ordered to execute a confidentiality agreement with Speedway LLC or Plaintiff be ordered to keep confidential those documents thus far withheld on the basis of a confidentiality objection, as well as any further relief that as to this Court should seem just and proper.

Dated: August 25, 2022

_____

Cory J. Schoonmaker, Esq.

17

## WORD COUNT CERTIFICATION

### Pursuant to 22 NYCRR § 202.8-b

I hereby certify that the total number of words in the Attorney Affirmation, inclusive of point headings and footnotes, and exclusive of the caption, the table of contents, table of authorities, and signature block, is 4785 words, which complies with the word count limit.

Dated: August 25, 2022

_____
Cory J. Schoonmaker, Esq.
**SUGARMAN LAW FIRM, LLP**
*Attorneys for Speedway LLC*
Office and Post Office Address
211 West Jefferson Street
Syracuse, New York 13202
Telephone: 315-362-8941
cschoonmaker@sugarmanlaw.com

TO:

John Feroleto, Esq.
**FEROLETO LAW**
*Attorneys for Eric C. Martin*
Office and Post Office Address
438 Main Street, Suite 910
Buffalo, New York 14202
Telephone: 716-854-0700
John.feroleto@feroletolaw.com

CC:

Paul G. Joyce, Esq., and
Marc S. Smith, Esq.
**COLUCCI & GALLAHER, P.C.**
*Attorneys for the Town of Tonawanda Police Department
o/b/o The Town of Tonawanda*
Office and Post Office Address
2000 Liberty Building
424 Main Street
Buffalo, New York 14202
Telephone: (716) 853-4080
pjoyce@colucci-gallaher.com

18

# EXHIBIT A

**STATE OF NEW YORK**
**SUPREME COURT: COUNTY OF ERIE** _____

**ERIC C. MARTIN**                                  **SUMMONS**
191 Brinton Street                                  **Served with Complaint**
Buffalo, New York 14216

                                                    Index No.: _____

                              Plaintiff

  v**.**


**TOWN OF TONAWANDA**
**POLICE DEPARTMENT**
o/b/o the **TOWN OF TONAWANDA**
1835 Sheridan Drive
Tonawanda, New York 14223
2919 Delaware Road
Kenmore, New York 14217

**SPEEDWAY, LLC**
535 Kenmore Avenue
Tonawanda, New York 14223

**MARATHON PETROLEUM CORPORATION**
4400 Easton Commons Way, Suite 125
Columbus, Ohio 43219

**JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8**
as employees of Defendant,
**TOWN OF TONAWANDA**
**POLICE DEPARTMENT**

                              Defendants _____

**TO THE ABOVE-NAMED DEFENDANTS:**

          **YOU ARE HEREBY SUMMONED AND REQUIRED** to serve upon the Plaintiff's
attorney, at the address stated below, a written Answer to the attached Complaint.

          If this Summons is served upon you within the State of New York by personal service you
must respond within TWENTY (20) days after service, not counting the day of service. If this
Summons is not personally delivered to you within the State of New York you must respond within
THIRTY (30) days after service is completed, as provided by law.

If you do not respond to the attached Complaint within the applicable time limitation stated above, a judgment will be entered against you, by default, for the relief demanded in the Complaint, without further notice to you.

This action is brought in the County of Erie because of Plaintiff's residence and the location of the incident.

DATED:        Buffalo, New York
              June 29, 2021

                                                        **JOHN FEROLETO, ESQ.**
                                                        **FEROLETO LAW**
                                                        *Attorneys for Plaintiff*
                                                        438 Main Street, Suite 910
                                                        Buffalo, New York 14202
                                                        Telephone: (716) 854-0700

**STATE OF NEW YORK**
**SUPREME COURT: COUNTY OF ERIE**

**ERIC C. MARTIN**
191 Brinton Street
Buffalo, New York 14216

<u>**COMPLAINT**</u>

                      Plaintiff

Index No. _____

  v.

**TOWN OF TONAWANDA**
**POLICE DEPARTMENT**
o/b/o the **TOWN OF TONAWANDA**
1835 Sheridan Drive
Tonawanda, New York 14223
2919 Delaware Road
Kenmore, New York 14217

**SPEEDWAY, LLC**
535 Kenmore Avenue
Tonawanda, New York 14223

**MARATHON PETROLEUM CORPORATION**
4400 Easton Commons Way, Suite 125
Columbus, Ohio 43219

**JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8**
as employees of Defendant,
**TOWN OF TONAWANDA**
**POLICE DEPARTMENT**

                      Defendants

      The Plaintiff above named, through his attorneys, for his cause of action against the

Defendants herein, alleges upon information and/or knowledge and/or belief:

1.      That at all relevant times, the Plaintiff, ERIC C. MARTIN was and still is a resident of Erie County, New York and at all times relevant to the allegations of this complaint was a citizen of the United States.

2.      That at all relevant times, Defendant, TOWN of TONAWANDA POLICE DEPARTMENT, hereinafter referred to as "TTPD," was and is a Department or unit of the TOWN OF TONAWANDA, a municipal corporation as defined in Section 119-n of the General Municipal Law, organized and existing pursuant to the laws of the State of New York, with its police headquarters located at 1835 Sheridan Drive, Tonawanda, New York 14223.

3.      That at all relevant times, Defendant, SPEEDWAY, LLC, was and is a foreign limited liability company organized and existing under the laws of the State of New York authorized to do business at 535 Kenmore Avenue, Tonawanda, New York 14223 with its principal place of business located at 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43219.

4.      That at all relevant times, Defendant, MARATHON PETROLEUM CORPORATION, was and is a foreign corporation with its principal place of business located at 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43219.

5.      That at all times hereinafter mentioned, on or about July 9, 2020, Defendants, SPEEDWAY, LLC and Defendant, MARATHON PETROLEUM CORPORATION, hereinafter together referred to as "SPEEDWAY," were authorized to and conducted business in Erie County and the State of New York and operated a

retail outlet, sold gasoline, and New York State lottery items at 535 Kenmore Avenue, Tonawanda, New York 14223.

6.    That upon information and belief, Defendants, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, JOHN DOE #5, JOHN DOE #6, JOHN DOE #7, and JOHN DOE #8 are residents of the State of New York.

7.    That upon information and belief, the Defendants, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, JOHN DOE #5, JOHN DOE #6, and JOHN DOE #8 were employees or agents acting within the scope of their employment for Defendant, TTPD.

8.    That Plaintiff, ERIC C. MARTIN, was a customer of the SPEEDWAY retail store/gas station at 535 Kenmore Avenue, Tonawanda, New York 14223, and on various occasions purchased lottery tickets at the SPEEDWAY store.

9.    That on July 8, 2020, Plaintiff, ERIC C. MARTIN, visited the SPEEDWAY store, made a cash withdrawal at the SPEEDWAY store, and purchased a New York State lottery ticket.

10.    That on July 9, 2020 at approximately 1:30 p.m., Plaintiff, ERIC C. MARTIN, left his home at 191 Brinton Street, Buffalo, New York 14216 and went to the SPEEDWAY store at 535 Kenmore Avenue, Tonawanda, New York 14223 to redeem his winning $50.00 New York State lottery ticket he purchased the day before, July 8, 2020 at the same SPEEDWAY store for $30.00.

11.     That on July 9, 2020, while Plaintiff, ERIC C. MARTIN, was redeeming
his winning New York State lottery ticket at the SPEEDWAY store, employees,
agents, or servants of Defendant, SPEEDWAY, with negligence and wanton
recklessness and without due care or procedure called the TTPD, claiming that
Plaintiff, MR. MARTIN, was trying to cash a stolen New York State lottery ticket.

12.     That on July 9, 2020, while the Plaintiff was at the SPEEDWAY store,
one or more of Defendant police personnel JOHN DOE #1, JOHN DOE #2, JOHN
DOE #3, JOHN DOE #4 and JOHN DOE #5, while acting within the course and scope
of their employment with Defendant, TTPD, if they chose, could have determined that
Plaintiff, MR. MARTIN, was lawfully at the SPEEDWAY store to properly redeem
his winning New York State lottery ticket.

13.     That Plaintiff, MR. MARTIN, was an African-American citizen of the
United States of America who owns a home approximately 3/10 of a mile from the
SPEEDWAY store located at 535 Kenmore Avenue, Tonawanda, New York 14223.
That on July 9, 2020, Plaintiff ERIC C. MARTIN went to the SPEEDWAY store with
his wife and infant daughter.

14.     That on July 9, 2020, at approximately 1:30 p.m., one or more of
Defendant, TTPD, personnel willfully, intentionally, and with malice exaggerated and
misstated facts to make Plaintiff, MR. MARTIN, appear to be a criminal, although he
was not.

15.    That both SPEEDWAY and the TTPD engaged in racial profiling in an objectively unreasonable manner in light of facts and circumstances readily available to them.

16.    That the acts or omissions of one or more of the Defendant, TTPD, personnel were with wanton recklessness and intent, all under the color of law, and within the capacity of their positions with the Defendants, TTPD and TOWN of TONAWANDA.

17.    That employees of Defendant, TTPD, could have readily ascertained that Plaintiff, ERIC C. MARTIN was a lawful patron at the SPEEDWAY store on July 9, 2020.

18.    That the personnel of Defendant, TTPD, could have readily issued an appearance ticket at the SPEEDWAY store at 535 Kenmore Avenue, Tonawanda, New York 14223 to Plaintiff, MR. MARTIN, for the claim against him that the lottery ticket he purchased was purportedly stolen.

19.    That the personnel of the Defendant, TTPD, could have readily met with Plaintiff, MR. MARTIN, at the TTPD police headquarters to obtain information or discuss questions of MR. MARTIN's $50 dollar lottery ticket whereas instead, personnel of the Defendant, TTPD, chose to, under the color of law, demean him and humiliate him, and perform a "perp walk" in front of SPEEDWAY employees, members of the public and in front of Plaintiff's wife, ASHLEY MARTIN, and their infant child.

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 29 of 256

20.     That at no time did one or more personnel of the Defendant, TTPD, attempt to comply with objectively reasonable rules or guidelines in issuing a desk appearance ticket and acted with wanton recklessness and intent, and that one or more of Defendants, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3,  JOHN DOE #4, and JOHN DOE #5, refused to investigate or inquire, refused to deescalate and used unnecessary force in restraining Plaintiff, deprived him of his liberty, caused him bodily harm, and caused him to be arrested and be detained at Defendant, TTPD, headquarters, at 1835 Sheridan Drive, Tonawanda, New York 14223.

21.     That while detained at Defendant, TTPD, police headquarters, in violation of fundamental rights afforded by the United States Constitution and the New York Constitution, policies and procedures, ERIC C. MARTIN was taken to a jail cell and strip searched by Defendant, TTPD, personnel, JOHN DOE #6, JOHN DOE #7, and JOHN DOE #8, before Mr. MARTIN was given his freedom.

22.     That the imprisonment and strip search resulted in humiliation, degradation, and emotional distress to the Plaintiff and were caused solely and wholly by reason of the intentional act or omissions, wanton recklessness, and disregard of the fundamental rights afforded to all Americans, including MR. MARTIN.

23.     Heretofore, and on or about September 30, 2020, a Notice of Claim was served on behalf of the Plaintiff upon the Defendant, TTPD, and TOWN OF TONAWANDA, New York, which Notice of Claim sets forth the name and post office address of MR. MARTIN, claimant, the name and post office address of his attorneys,

the nature of the claim the time when, the place where, and the manner in which the claim arose, together with the items of damages and injuries then known to exist, and the said Notice of Claim was served upon the Defendant, TTPD, and TOWN OF TONAWANDA, New York, within ninety (90) days of the date upon which the claim arose, and that Plaintiff, MR. MARTIN, came forth on December 7, 2020 and provided testimony to the attorneys representing the Defendant, TTPD, and TOWN OF TONAWANDA. At least thirty (30) days have elapsed since the service of the Notice of Claim, as aforesaid, and the Defendant, TTPD, and TOWN OF TONAWANDA, New York, has failed and neglected to adjust or pay said claim.

24.    That by reason of the above, Plaintiff, ERIC C. MARTIN, has been injured and compelled to seek medical attention in an effort to alleviate his injuries and has been damaged in a sum that exceeds jurisdictional limits of all lower courts that would otherwise have jurisdiction.

### AS AND FOR A FIRST CAUSE OF ACTION

25.    That the Plaintiff, MR. MARTIN, hereby restates and realleges paragraphs numbered 1-24 with the same force and effect as if they were separately restated, renumbered, and realleged at length herein.

26.    That on or about July 9, 2020 at approximately 1:30 p.m., Defendants, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5, were operating within the scope of their employment for the Defendant, TTPD.

27.     That beginning on or about July 9, 2020 at approximately 1:30 p.m. in the County of Erie and State of New York, one or more of said Defendants, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5, intentionally and with wanton recklessness and negligence handcuffed and imprisoned Plaintiff to harm him, degrade him, humiliate him, and held him against his will under full force of arms until he was released on his own recognizance.

28.     That this imprisonment of Plaintiff, ERIC C. MARTIN, caused by personnel of the Defendant, TTPD, was without authority of the law and without just cause.

29.     That Plaintiff, ERIC C. MARTIN, was wholly innocent of any crime and was willing to meet Defendant's, TTPD, personnel at Defendant's, TTPD, headquarters, but was forced to submit to the arrest, imprisonment, and confinement by one or more of the Defendants, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5, entirely against his will.

30.     That one or more of Defendants, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5, while working within the scope of their employment for Defendant, TTPD, intended to confine plaintiff; plaintiff was conscious of the confinement; plaintiff did not consent to the confinement; and the confinement was not otherwise privileged.

31.     That by reason of the above-described false imprisonment and detention, Plaintiff was subjected to great indignity, humiliation, pain, and great distress of mind and body and Plaintiff has been otherwise damaged.

32.     That by reason of the above, Plaintiff has been damaged in a sum exceeding the jurisdictional limits of the lower courts.

## AS AND FOR A SECOND CAUSE OF ACTION

33.     That the Plaintiff, ERIC C. MARTIN, hereby restates and realleges paragraphs numbered 1-32 with the same force and effect as if they were separately restated, renumbered, and realleged at length herein.

34.     That on July 9, 2020 at approximately 1:30 p.m. at 535 Kenmore Avenue, Tonawanda, New York 14223, Plaintiff was arrested by Defendants, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5, while working within the scope of their employment for Defendant, TTPD.

35.     That the arrest was caused by the actions or omissions of one or more of Defendants, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5 while working within the scope of their positions for Defendant, TTPD, with wanton recklessness and intent and in violation of rules, objective reasonableness, protocols, and refusal to consider basic information, which would have readily shown that Plaintiff, ERIC C. MARTIN, while at the SPEEDWAY store with his wife and infant daughter, was lawfully redeeming the New York State lottery ticket he purchased the day before and that Defendants did not have just cause to arrest MR. MARTIN.

36.    That ERIC C. MARTIN was wholly innocent of any crime and at all times acted reasonably. However, Defendants, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5, did not, and chose to disregard, accelerate, and exacerbate the situation so as to arrest, imprison, and confine Plaintiff entirely against his will.

37.    That the Defendants intended to arrest and confine ERIC C. MARTIN; he was conscious of the arrest and confinement; did not consent to the arrest; and the arrest and his subsequent confinement was not otherwise privileged.

38.    That by reason of the above-described false arrest and detention, ERIC C. MARTIN, was subjected to great indignity, humiliation, pain, and great distress of mind and body and has otherwise been damaged.

39.    That by reason of the above, Plaintiff, ERIC C. MARTIN, has been damaged in a sum exceeding the jurisdictional limits of the lower courts.

**AS AND FOR A THIRD CAUSE OF ACTION**

40.    That the Plaintiff, ERIC C. MARTIN, hereby restates and realleges paragraphs numbered 1-39 with the same force and effect as if they were separately restated, renumbered, and realleged at length herein.

41.    That upon information and belief, at all times hereinafter mentioned, the Defendants, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, and JOHN DOE #5, were personnel of Defendant, TTPD, and were acting within the scope of their employment.

42.     That on or about July 9, 2020 at Speedway located at 535 Kenmore Avenue, Tonawanda, New York 14223, the Defendants, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5, caused injury to the Plaintiff, MR. MARTIN, as hereinafter stated.

43.     That Plaintiff ERIC C. MARTIN, had a constitutional right guaranteed by the Fourth Amendment to be free from unreasonable and excessive use of force and that the unnecessary force placed upon Plaintiff, MR. MARTIN, who had committed no crime and was lawfully at the SPEEDWAY store was without legal justification and that Defendants' method of arresting and searching Plaintiff, while handcuffed, was wanton, reckless, and exposed him to serious physical injury including his left shoulder, body, head, the areas around the said body parts, and the natural sequence and sequalae of said injuries.

44.     That the use of force, search, and injury to Plaintiff by one or more of Defendants, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5 was excessive, unreasonable, and unjustifiable under the circumstance and subjected Plaintiff to a deprivation of rights and privileges secured to him by the Constitution and law of the United States, including the Fourth and Fourteenth Amendments of the United States Constitution within the meaning of 42 U.S.C. §1983.

45.     That as a direct and proximate result of the unconstitutional acts of Defendants herein, the Plaintiff suffered physical injury, mental anguish, humiliation, and emotional distress.

## AS AND FOR A FOURTH CAUSE OF ACTION

46.     That the Plaintiff, MR. MARTIN, hereby restates and realleges paragraphs numbered 1-45 with the same force and effect as if they were separately restated, renumbered, and realleged at length herein.

47.     That this action arises under the United States Constitution, particularly under the provisions of the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and under Federal law, including Title 42 of the United States Code, §1983.

48.     That each and all of the acts of the Defendants, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5, were done by the Defendants, each of them, not as individuals, but under the color and pretense of the statutes, ordinances, regulations, customs, and usages of the Defendant, TTPD, and under the authority of their office as police officers for such town.

49.     That Plaintiff, MR. MARTIN, had a constitutional right to due process of law and to be free of punishment prior to adjudication of guilt as guaranteed by the Fourteenth Amendment.

50.     That the acts and conduct described above further deprived Plaintiff of his rights:

      (a)     To be free from false arrest and imprisonment by police officers acting under the color of law;

(b)    To be free from malicious prosecution by police officers acting under the color of law;

(c)    To be free from abuse of process by police officers acting under the color of law;

(d)    To the free exercise of due process without wrongful restraint by police officers acting under the color of law;

(e)    To be free of unreasonable seizure by police officers acting under the color of law;

(f)    To not have excessive force used against him by police officers acting under the color of law; and

(g)    To not have summary punishment imposed upon him by police officers acting under the color of law;

all in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983.

51.    That the acts, conduct, and behavior of these Defendants were performed knowingly, intentionally, and maliciously.

52.    That as a direct and proximate result of the unconstitutional acts of Defendants herein, the Plaintiff suffered physical injury, humiliation, mental anguish, and emotional distress.

**AS AND FOR A FIFTH CAUSE OF ACTION**

53.    That the Plaintiff ERIC C. MARTIN, hereby restates and realleges paragraphs numbered 1-52 with the same force as if they were separately restated, renumbered, and realleged herein.

54.    That Plaintiff was arrested, held in custody, and restrained of his liberty.

55.     That this arrest and detention was unlawful, wrongful, malicious.

56.     That by acting in the manner described above, Defendants, JOHN DOE #6, JOHN DOE #7, and JOHN DOE #8, acted willfully, maliciously, and without right, reason, or probable cause.

57.     That Defendants, JOHN DOE #6, JOHN DOE #7, and JOHN DOE #8, while acting within the scope of their employment for Defendant, TTPD, wrongfully caused Plaintiff to be detained, confined and strip searched at Defendant's police headquarters, 1835 Sheridan Drive, Tonawanda, New York 14223.

58.     That the imprisonment and strip search of Plaintiff, MR. MARTIN, and the ensuing restraint of his liberty was wrong, improper, and caused him great humiliation, in violation of fundamental rights afforded to all Americans under the United Stated and New York Constitutions, as a result of which he has been damaged.

59.     That prior to the arrest, Plaintiff, ERIC C. MARTIN, had enjoyed a good reputation in the City of Buffalo, Western New York Community and the State of New York.

60.     That the charges against Plaintiff were wholly dismissed.

61.     That as a direct and proximate result of the unconstitutional acts of Defendants, JOHN DOE #6, JOHN DOE #7 and JOHN DOE #8, Plaintiff, ERIC C. MARTIN, suffered physical injury, mental anguish, humiliation, and emotional distress.

62.     That by reason of the foregoing detention and violative strip search, Plaintiff's health was impaired; Plaintiff suffered great mental distress, indignity, and humiliation; and his reputation and character were injured.

## AS AND FOR A SIXTH CAUSE OF ACTION

63.     That Plaintiff, ERIC C. MARTIN, hereby restates and realleges paragraphs numbered 1-62 with the same force and effect as if they were separately restated, renumbered, and realleged at length herein.

64.     That on or about July 9, 2020 at approximately 1:30 p.m., that SPEEDWAY personnel, acting within the scope of their employment, with gross negligence, recklessness, and wanton disregard, falsely accused MR. MARTIN of possession of stolen property.

65.     That the agents, servants or employees of said Defendant, SPEEDWAY, had a duty to and could have easily verified that Plaintiff, MR. MARTIN, had purchased the ticket the day before but instead, in a wantonly reckless, deceitful, intentional, and grossly negligent manner contacted the Defendant, TTPD, causing Plaintiff to be arrested, detained, humiliated, deprived of his rights afforded to him as a United States citizen, and that said employees, agents or servants of said Defendants did so while acting within the scope of their employment for Defendant, SPEEDWAY, and took an active role in the arrest of the Plaintiff, ERIC C. MARTIN, including giving encouragement, and/or importuning the authorities to act.

66.     That the Defendant, SPEEDWAY, is vicariously and jointly liable for the wrongful acts taken by its employees against its customers.

67.     That the employees, agents or servants of said Defendants, instigated, caused, and/or initiated the arrest of Plaintiff, ERIC C. MARTIN, which resulted in his false imprisonment, arrest, and injury where no crime had been committed.

68.     Further, that the employees, agents or servants of Defendants engaged in racial profiling and wrongfully acted, instigated, caused, and/or initiated the arrest of Plaintiff, ERIC C. MARTIN, which resulted in his false imprisonment and arrest where no crime had been committed.

69.     That as a direct and proximate result of the unconstitutional acts of Defendant, SPEEDWAY, herein, the Plaintiff suffered physical injury, mental anguish, humiliation, and emotional distress.

## AS AND FOR A SEVENTH CAUSE OF ACTION

70.     That the Plaintiff, ERIC C. MARTIN, hereby restates and realleges paragraphs numbered 1-69 with the same force and effect as if they were separately restated, renumbered, and realleged at length herein.

71.     That Defendant, SPEEDWAY, along with its employees, agents, or servants, had a duty to refrain from negligent and wantonly reckless behavior.

72.     That on or about July 9, 2020, prior to and subsequent to, Defendant, SPEEDWAY, failed to use reasonable care and was reckless, negligent, and wantonly

negligent in failing to follow reasonable procedures in confirming whether MR.

MARTIN had a valid New York State lottery ticket which he purchased the day before,

and falsely represented to the Defendant, TTPD, that ERIC C. MARTIN's, winning

lottery ticket was stolen, when it wasn't, all without requisite care and with wanton

disregard concerning its accusations against customer ERIC C. MARTIN.

73.    That said Defendant, SPEEDWAY, their employees, agents or servants

further harmed customer and Plaintiff, MR. MARTIN, by allowing the false statements

of their employees, and false charges against Plaintiff to continue through and including

July 16, 2020, without bothering to confirm whether Plaintiff, ERIC C. MARTIN,

purchased the New York State lottery ticket that SPEEDWAY represented was stolen.

Further, by allowing or causing Plaintiff, ERIC C. MARTIN, to continue to be charged

with possession of stolen property through July 16, 2020, Defendant, SPEEDWAY,

was negligent, reckless, and wantonly disregarded the rights, liberties, and dignity of its

customers, including Plaintiff, MR. MARTIN, and warrants exemplary damages.

74.    That Plaintiff, ERIC C. MARTIN's, injuries were caused in whole or in

part by the carelessness, wanton recklessness, gross negligence, and negligence of the

Defendant, SPEEDWAY.

75.    That on or about July 9, 2020, Defendant, SPEEDWAY's, ownership,

operation, maintenance, management, control, operation of its stores and training with

respect to its New York State Lottery operation and procedures demonstrated a

wantonly reckless and negligent disregard for the health, safety, and rights of its customers, including Plaintiff, ERIC C. MARTIN.

76.      That as a result of the foregoing, the Plaintiff, ERIC C. MARTIN, was caused to be humiliated and sustained serious, painful, and physical bodily injuries and was caused to seek medical care and treatment and will in the future.

### AS AND FOR AN EIGHTH CAUSE OF ACTION

77.      That the Plaintiff, ERIC C. MARTIN, hereby restates and realleges paragraphs numbered 1-76 with the same force and effect as if they were separately restated, renumbered, and realleged at length herein.

78.      That by reason of the Defendant, SPEEDWAY, their employees, agents, or servants' intentional acts, gross negligence, and wantonly reckless behavior to Plaintiff, ERIC C. MARTIN, conscious disregard for rights of others, and to the public as alleged herein and by reason of the Defendants' wanton, malicious, and intentional conduct, the Defendants, SPEEDWAY, are liable for general, exemplary, and/or punitive damages.

79.      That by reason of the above-named Defendants' actions and omissions, the Plaintiff, MR. MARTIN, suffered certain severe, permanent, and painful injuries and certain economic damages, exemplary, and punitive damages in an amount that exceeds the jurisdictional limits of all lower courts pursuant to CPLR §3017.

WHEREFORE, the Plaintiff, ERIC C. MARTIN, does hereby demand judgment against the Defendants for each cause of action herein jointly and severally in an amount which would otherwise exceed the jurisdictional limit of all lower courts together with the costs and disbursements of this action and for such other and further relief as this Court may deem just and proper.

DATED:     Buffalo, New York
           June 29, 2021

**JOHN FEROLETO, ESQ.**
**FEROLETO LAW**
*Attorneys for Plaintiff*
438 Main Street, Suite 910
Buffalo, New York 14202
Telephone: (716) 854-0700

# EXHIBIT B

From : bhannah@sugarmanlaw.com

To : john.feroleto@feroletolaw.com; PJoyce@colucci-gallaher.com

Sent : 10/12/2021 12:39PM

Subject : Martin v. Speedway LLC - Discovery Update

Hello John and Paul,

I hope you have been well.  I wanted to let you know that I expect to serve our discovery responses on or around 10/25.  Speedway is self-insured and their in-house counsel must provide approval before service of discovery responses.  John's demands are quite voluminous and broad, and it is taking them far longer than they (and I) expected to determine and pull what they have that may be responsive, as it involves coordination amongst multiple individuals/departments.  My contact has advised that they will have everything pulled together and to me by 10/22, which will allow me to finalize the responses and the documents for production and get them to you.  We appreciate your patience.

Also, there is a possibility that we may need to enter into a confidentiality and protective order in order to produce some of what John has demanded.  I do not have a definitive answer on that yet because they do not know the extent of what may exist that has been requested, but some of the demands pertain to confidential and security topics that could need to be shielded, if the documents exists.  If that is the case, I intend to produce what I can without the CPO and then circulate a CPO and supplement the production.

Thank you again for your courtesies and patience.

Regards,
Brittany

  Sug

211 W. Jefferson St.  Syracuse, NY 13202   sugarmanlaw.com

**BRITTANY L HANNAH, ESQ.**   **Direct Dial**: (315) 362-8942   **Fax**: (315) 474-0235

E-MAIL CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

# EXHIBIT C

From : john.feroleto@feroletolaw.com

To : bhannah@sugarmanlaw.com

Sent : 10/12/2021 2:18PM

Subject : Re: Martin v. Speedway LLC - Discovery Update

Brittany, no problem.

Paul how are you doing in terms of discovery responses? Thanks, John

**John Feroleto**
438 Main Street, Suite 910
Buffalo, NY 14202
716-854-0700
AAJ Trucking Litigation Group, Past Chair | www.yourbuffalolawyer.com





On Tue, Oct 12, 2021 at 12:39 PM Brittany Hannah <bhannah@sugarmanlaw.com> wrote:

Hello John and Paul,


I hope you have been well.  I wanted to let you know that I expect to serve our discovery responses on or around 10/25.  Speedway is self-insured and their in-house counsel must provide approval before service of discovery responses.  John's demands are quite voluminous and broad, and it is taking them far longer than they (and I) expected to determine and pull what they have that may be responsive, as it involves coordination amongst multiple individuals/departments.  My contact has advised that they will have everything pulled together and to me by 10/22, which will allow me to finalize the responses and the documents for production and get them to you.  We appreciate your patience.


Also, there is a possibility that we may need to enter into a confidentiality and protective order in order to produce some of what John has demanded.  I do not have a definitive answer on that yet because they do not know the extent of what may exist that has been requested, but some of the demands pertain to confidential and security topics that could need to be shielded, if the documents exists.  If that is the case, I intend to produce what I can without the CPO and then circulate a CPO and supplement the production.


Thank you again for your courtesies and patience.

Regards,
Brittany

 image003

 Sug          211 W. Jefferson St.  Syracuse, NY 13202   **sugarmanlaw.com**

**BRITTANY L HANNAH, ESQ.**     **Direct Dial**: (315) 362-8942      **Fax**: (315) 474-0235

E-MAIL CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

# EXHIBIT D

FILED: ERIE COUNTY CLERK 08/25/2022 03:31 PM
INDEX NO. 810423/2021
Page 1 of 4
NYSCEF DOC. NO: 56
RECEIVED NYSCEF: 08/25/2022

Case 1:23-cv-00419-WMS-MJR Document 1-25 Filed 05/11/23 Page 49 of 256

From : bhannah@sugarmanlaw.com

To : john.feroleto@feroletolaw.com; PJoyce@colucci-gallaher.com

Sent : 11/02/2021 5:29PM

Subject : RE: Martin v. Speedway LLC - Discovery Update

Hello John and Paul,

I received approval from Speedway this afternoon on the responses to your demands.  I will finalize everything tomorrow.  I will also circulate the proposed CPO in the near future (as soon as I receive approval from Speedway) so that we can get that in place and I can get the remaining confidential materials to you.

Thank you for your patience.

Regards,
Brittany

Brittany L. Hannah, Esq.
Sugarman Law Firm, LLP
Direct Dial: (315) 362-8942

---

**From:** John Feroleto <john.feroleto@feroletolaw.com>
**Sent:** Tuesday, November 2, 2021 2:50 PM
**To:** Paul G. Joyce <PJoyce@colucci-gallaher.com>; Brittany Hannah <bhannah@sugarmanlaw.com>
**Subject:** Re: Martin v. Speedway LLC - Discovery Update

Paul, thanks, we just received your responses, have a good afternoon, John
**John Feroleto**
438 Main Street, Suite 910
Buffalo, NY 14202
716-854-0700
 AAJ Trucking Litigation Group, Past Chair | www.yourbuffalolawyer.com



On Tue, Nov 2, 2021 at 2:27 PM Paul G. Joyce <PJoyce@colucci-gallaher.com> wrote:

> John – we received the verification today; the responses and a disc will be delivered to your office today.
>
> Brittany – they will be mailed to your office.
>
> Thanks,
>
> Paul

**From:** John Feroleto <john.feroleto@feroletolaw.com>
**Sent:** Tuesday, November 2, 2021 12:00 PM
**To:** Brittany Hannah <bhannah@sugarmanlaw.com>

**Cc:** Paul G. Joyce <PJoyce@colucci-gallaher.com>; Megan Commaroto <megan.commaroto@feroletolaw.com>; Diane Rockdashil <drockdashil@sugarmanlaw.com>; Jennifer Albrecht <jalbrecht@colucci-gallaher.com>; Marc Smith <msmith@colucci-gallaher.com>
**Subject:** Re: Martin v. Speedway LLC - Discovery Update

Paul, I hadn't received a response to my last two emails inquiring as to the status of your production of outstanding discovery our Request for Documents and Discovery dated September 7, 2021, and left a voice message at your office today.

Please advise and let me know if you have any questions . Thank you,
**John Feroleto**
438 Main Street, Suite 910
Buffalo, NY 14202
716-854-0700
 AAJ Trucking Litigation Group, Past Chair | www.yourbuffalolawyer.com



On Tue, Oct 26, 2021 at 8:41 AM John Feroleto <john.feroleto@feroletolaw.com> wrote:

Brittany, okay.

Paul, what is the status of your responses?

Thank you, John
**John Feroleto**
438 Main Street, Suite 910
Buffalo, NY 14202
716-854-0700
 AAJ Trucking Litigation Group, Past Chair | www.yourbuffalolawyer.com



On Mon, Oct 25, 2021 at 5:38 PM Brittany Hannah <bhannah@sugarmanlaw.com> wrote:

Hello John and Paul,

I hope you had a great weekend!  I am waiting for Speedway's in-house counsel to approve the final version of the responses.  I will serve them as soon as I have them.  I apologize for the delay.

Regards,
Brittany

Brittany L. Hannah, Esq.
Sugarman Law Firm, LLP
Direct Dial: (315) 362-8942

**From:** John Feroleto <john.feroleto@feroletolaw.com>
**Sent:** Tuesday, October 12, 2021 2:18 PM
**To:** Brittany Hannah <bhannah@sugarmanlaw.com>
**Cc:** Paul G. Joyce <PJoyce@colucci-gallaher.com>; Megan Commarato <megan.commarato@feroletolaw.com>; Diane Rockdashil <drockdashil@sugarmanlaw.com>; Jennifer Albrecht <jalbrecht@colucci-gallaher.com>; Marc Smith <msmith@colucci-gallaher.com>; John Feroleto <john.feroleto@feroletolaw.com>
**Subject:** Re: Martin v. Speedway LLC - Discovery Update

Brittany, no problem.

Paul how are you doing in terms of discovery responses? Thanks, John
**John Feroleto**
438 Main Street, Suite 910
Buffalo, NY 14202
716-854-0700
AAJ Trucking Litigation Group, Past Chair | www.yourbuffalolawyer.com

  

On Tue, Oct 12, 2021 at 12:39 PM Brittany Hannah <bhannah@sugarmanlaw.com> wrote:

Hello John and Paul,

I hope you have been well.  I wanted to let you know that I expect to serve our discovery responses on or around 10/25.  Speedway is self-insured and their in-house counsel must provide approval before service of discovery responses.  John's demands are quite voluminous and broad, and it is taking them far longer than they (and I) expected to determine and pull what they have that may be responsive, as it involves coordination amongst multiple individuals/departments.  My contact has advised that they will have everything pulled together and to me by 10/22, which will allow me to finalize the responses and the documents for production and get them to you.  We appreciate your patience.

Also, there is a possibility that we may need to enter into a confidentiality and protective order in order to produce some of what John has demanded.  I do not have a definitive answer on that yet because they do not know the extent of what may exist that has been requested, but some of the demands pertain to confidential and security topics that could need to be shielded, if the documents exists.  If that is the case, I intend to produce what I can without the CPO and then circulate a CPO and supplement the production.

Thank you again for your courtesies and patience.

Regards,
Brittany

Sug         211 W. Jefferson St.   Syracuse, NY 13202    sugarmanlaw.com

FILED: ERIE COUNTY CLERK 08/25/2022 03:31 PM
INDEX NO. 804123/2021
Page 48 of 84
NYSCEF DOC. NO. 56
RECEIVED NYSCEF: 08/25/2022

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 52 of 256

im
ag
e0
03

**BRITTANY L HANNAH, ESQ.**      Direct Dial: (315) 362-8942      Fax: (315) 474-0235

E-MAIL CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

**Paul G. Joyce**
PJoyce@colucci-gallaher.com

COLUCCI & GALLAHER P.C.
ADVISORS AND ADVOCATES
424 Main Street, Suite 2000
Buffalo, NY 14202
(716) 853-6509  Direct
(716) 854-4070  Fax
(716) 853-4080  Main
http://www.colucci-gallaher.com

**p r a c t i c e G R E E N**
Save a tree. Read, don't print, emails.

The information contained in this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, distribution or use of this information by persons or entities other than the intended recipient is prohibited. If you receive this email in error, please contact the sender and delete the material from your computer.

# EXHIBIT E

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 54 of 256

From : bhannah@sugarmanlaw.com

To : john.feroleto@feroletolaw.com; PJoyce@colucci-gallaher.com; msmith@colucci-gallaher.com

Sent : 11/03/2021 4:12PM

Subject : Martin v. Speedway LLC, et al - Proposed Confidentiality and Protective Order

Hello John, Paul, and Marc,

I have attached the proposed Confidentiality and Protective Order for your review and execution.  As you will note in the Responses that were served this afternoon, we have withheld responsive materials until a So Ordered CPO is in place due to the confidential and sensitive nature of the materials requested.  Please let me know if you have any proposed revisions to the CPO and I will take them to Speedway for consideration.  Once we have a fully executed CPO, I will file it with an RJI.  We will make prompt disclosure of the materials once the CPO is in place.

Thank you.


Regards,
Brittany

  Sug

211 W. Jefferson St.   Syracuse, NY 13202    **sugarmanlaw.com**

**BRITTANY L HANNAH, ESQ.**      **Direct Dial**: (315) 362-8942        **Fax**: (315) 474-0235

E-MAIL CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

---

ERIC C. MARTIN,

                                        Plaintiff,

            vs.

TOWN OF TONAWANDA POLICE DEPARTMENT
o/b/o TOWN OF TONAWANDA, SPEEDWAY, LLC,
MARATHON PETROLEUM CORPORATION and
JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8 as employees of
TOWN OF TONAWANDA POLICE DEPARTMENT,

                                        Defendants.

**CONFIDENTIALITY AND
PROTECTIVE ORDER**

**INDEX NO. 808523/2021**

---

        WHEREAS Plaintiff, Eric C. Martin, Defendant, Speedway LLC, and Defendant, Town of

Tonawanda Police Department o/b/o Town of Tonawanda[1] are parties ("Parties") to the above-

captioned action (the "Action");

        WHEREAS the Parties are engaged in discovery and have requested and will produce

confidential information within the scope of the Civil Practice Law and Rules;

        WHEREAS one or more of the Parties could be jeopardized if non-public financial data,

business strategies, operational information, and other highly sensitive confidential information or

documents are disclosed publicly;

        WHEREAS the scope and breadth of sensitive personal, commercial, financial, business

or private information involved in this case justifies additional precautions to protect against

disclosure, and discovery necessarily involves the production of certain information that the Parties

---

[1] This action has been discontinued against Defendant, Marathon Petroleum Corporation. Counsel has not appeared
for Defendant, John Doe # 1, 2, 3, 4, 5, 6, 7, 8 as employees of Town of Tonawanda Police Department.

believe to be confidential, sensitive, personal, commercial, financial, business, and private information;

WHEREAS good cause exists for entry of this Confidentiality and Protective Order (the "Protective Order");

WHEREAS the protection of confidential information disclosed in the course of the Action will have no adverse effect upon the general public health or safety;

WHEREAS no less restrictive means than those set forth in this Protective Order will adequately and effectively protect the interests of the Parties; and

WHEREAS the entry of this Protective Order will promote the fair and expeditious resolution of the Action;

IT IS HEREBY STIPULATED AND AGREED that this Protective Order shall govern the handling of documents, materials, disclosures, and any other information produced, given, or exchanged by and among the Parties in connection with discovery in the Action (hereinafter referred to as "Discovery Material");

1.      Any Party or any non-party subject to Paragraph 24 below may designate any Discovery Material as "Confidential" under the terms of this Protective Order if such party (the "Designating Party") in good faith believes that such Material contains non-public, confidential, proprietary or commercially sensitive information of the Designating Party that requires the protections provided in this Protective Order.

2.      The designation by any Party of any Discovery Material as Confidential shall constitute a representation that such Discovery Material has been reviewed by an attorney for the Designating Party and that there is a good faith belief that such designation is valid.

3.      Discovery Material, or information derived therefrom, shall be used solely for

purposes of the Action and shall not be used for any other purpose, including, without limitation, any business or commercial purpose, or any communications with any third-party not involved in the Action.

4. The designation of Discovery Material as Confidential for purposes of this Protective Order shall be made in the following manner:

(a) In the case of documents or other materials (apart from depositions, other pretrial testimony, written discovery responses, or electronic data and information): by affixing the legend "Confidential" to each page containing any Confidential Discovery Material. In the case of multi-page documents bound together by staple or other permanent binding, the "Confidential" designation need only be stamped on the first page of the document in order for the entire document to be treated as Confidential Discovery Material;

(b) In the case of depositions or other pretrial testimony: (i) by a statement on the record, by counsel, at the time of such disclosure; or (ii) by written notice, sent by such counsel to all other counsel within ten (10) business days after the complete and final transcript of the testimony has been provided to the deponent or counsel for the deponent; and in both of the foregoing instances, by directing the court reporter that the appropriate confidential legend be affixed to the first page and all portions of the original and all copies or the transcript containing any Confidential Discovery Material. All depositions and other pretrial testimony shall be treated as "Confidential" until the expiration of ten (10) business days after the final transcript of the testimony is received, after which time only such portions of the transcript as have been designated as set forth above shall be deemed Confidential Discovery Material, as the case may be. The Parties may modify this procedure for any particular deposition through agreement on the record at such deposition without further order of the Court. A deponent or counsel for the deponent shall

designate the provisions of the deponent's deposition transcript that qualify as Confidential by line and page number;

      (c)    In the case of electronic information, electronic mail, electronically stored documents or other electronic media produced in native format, by affixing the legend "Confidential" to the exterior label of the storage media on which such electronic information, data or documents are produced or within the relevant transmittal letter(s) if the Discovery Material is exchanged electronically.

    5.    Discovery Material designated "Confidential" may be disclosed, summarized, described, characterized, or otherwise communicated or made available in whole or in part only to the following persons:

      (a)    the Parties, counsel who represent such Parties and members of their firms, and regular and temporary employees of such counsel (including outside copying services and outside litigation support services) necessary to assist in the conduct of the Action, for use in accordance with this Protective Order and for purposes of the Action only;

      (b)    experts or consultants necessary to assist counsel for the Parties to the extent necessary for such expert or consultant to prepare a written opinion, to prepare to testify, or to assist counsel in connection with the Action, *provided that* such expert signs an undertaking in the form attached as Exhibit A hereto, agreeing in writing to be bound by the terms and conditions of this Protective Order, consenting to the jurisdiction of the Court for purposes of the enforcement of this Protective Order, and agreeing not to disclose or use any Confidential Discovery Material for purposes other than those permitted hereunder. Such undertakings shall be retained in the files of the counsel for the Party who has engaged such consultant or expert;

      (c)    any person indicated on the face of a document or accompanying

correspondence to be the author, addressee or a copy-recipient of the document; or as to whom there has been deposition or trial testimony or documentary evidence that the person was the author or a recipient of the document;

(d)     witnesses or deponents (other than witnesses and deponents covered by Subparagraph (e) below) whom a Party believes in good faith will be aided by reviewing the document and their counsel, during the course of, or, to the extent necessary, in preparation for depositions or testimony in the Action, *provided that* no copies or notes relating to the Confidential information shall be made by such person;

(e)     the officers, employees (including, but not limited to, inside counsel) and general or limited partners of the Parties, who are assisting the Parties in the Action or who appear as witnesses or deponents;

(f)     the Court and its employees;

(g)     court reporters employed in connection with the Action;

(h)     any mediator engaged by the Parties, provided such mediator agrees to be bound by this Protective Order or is subject to a substantially similar mediation Protective Order entered by a court of competent jurisdiction; and

(i)     any other person only upon order of the Court or upon stipulation of the Designating Party.

6.     To the extent that any Discovery Material contains any of the information set forth below in subparts a. through i. of this paragraph, and such Discovery Material is not otherwise designated as Confidential under the terms of this Protective Order, it shall nevertheless be treated as Confidential Discovery Material, and will be filed with the Court or disclosed to any person or entity not described in Paragraph 5 above only with the following information redacted or omitted:

a.  Social Security numbers;

b.  names of minor children;

c.  names of family members of Parties to the Litigation;

d.  dates of birth;

e.  financial account numbers (including bank account numbers) or pass codes;

f.  federal and state income tax filings;

g.  home addresses;

h.  home or private phone numbers or pass codes; and/or

i.  information concerning an individual's medical condition.

Any document that has not been specifically designated as "Confidential" but, pursuant to the terms of this Paragraph 6, would be treated as Confidential because it contains any of the information set forth in subparts a.-i. above, does not have to be treated as Confidential if the Party seeking to use the document has redacted all of the information in the document that is set forth above.

7.      Every person given access to Confidential Discovery Material shall be advised that the information contained therein is being disclosed pursuant and subject to the terms of this Protective Order and may not be disclosed other than pursuant to the terms of the Protective Order. Accordingly, all persons who have received Confidential Discovery Material shall safeguard the same therein so as to avoid its disclosure to persons who are not eligible to receive that information pursuant to this Protective Order.

8.      All documents of any nature, including any brief, memorandum, motion, letter or other document, all or part or which have been designated as "Confidential" (or treated as such pursuant to the terms or this Protective Order) that a Party seeks to file with the Court will be

submitted in accordance with the Civil Practice Laws and Rules and all other applicable rules and regulations.

9.      In using Confidential Discovery Material in any court proceeding, the Parties shall work together to maintain protection of the confidential nature of the material, subject to the limitation set out in Paragraph 11(d) below.

10.      All materials filed under seal pursuant to this Protective Order shall be unsealed in accordance with the Civil Practice Laws and Rules and all other applicable rules and regulations.

11.      Entering into or agreeing to the Protective Order and/or producing or receiving Confidential Discovery Material, or otherwise complying with the terms of this Protective Order shall not:

(a)      operate as or constitute an admission by any non-producing Party that any particular Confidential Discovery Material contains or reflects trade secrets, proprietary or commercially sensitive information or any other type or confidential information;

(b)      prejudice in any way the rights of the Parties to object to the production of documents or other oral or written information they consider not subject to discovery, or operate as or constitute an admission by any Party that the restrictions and procedures set forth herein constitute adequate protection for any particular information deemed by any Party to be Confidential or Highly Confidential Discovery Material;

(c)      prejudice in any way the rights of any Party to object to the authenticity or admissibility into evidence of any document, testimony or other evidence subject to this Protective Order;

(d)      prejudice in any way the rights or any Party to seek a determination from the Court whether any Discovery Material, Confidential, or otherwise, should be subject to the

term of this Protective Order;

(e)     prejudice in any way the right of a Party to petition the Court for a modification of the terms of this Protective Order to allow Discovery Material produced in this Action, or information derived therefrom, to be used by any Party in connection with any government investigation or proceeding;

(f)     prejudice in any way the rights of a Party to petition the Court for a further protective order relating to any purportedly confidential information;

(g)     prevent the Parties to this Protective Order from agreeing to alter or waive the provisions or protections provided for herein with respect to any particular Discovery Material; or

(h)     operate as or constitute a waiver of any attorney client, work product, trade secret, common interest, or other privilege.

12.     This Protective Order has no effect upon, and shall not apply to, the Parties' use of their own Confidential Discovery Material for any purpose.

13.     If information or Discovery Material subject to a claim of attorney-client privilege, attorney work product, trade secret privilege, common interest privilege, or any other ground on which production of such information should not be made to any Party is nevertheless inadvertently produced to such Party or Parties, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of privilege, work product or other ground for withholding production to which the Designating Party would otherwise be entitled. The Party claiming inadvertent production shall amend its discovery response within ten (10) days after discovering that such production was made, identifying the material or information produced and stating the privilege asserted.  The Party receiving the inadvertent production must then

promptly return the specified material or information and any copies in any form (paper or electronic) to the Party claiming inadvertent production, and must certify in writing the destruction of any copies maintained or created in connection with the Litigation.  The Party returning such material may then move the Court for an order compelling production of the material, but said motion shall not assert as a ground for entering such an order the fact or circumstance of the inadvertent production.

14.     Each of the Parties hereto shall be entitled to seek modification of this Protective Order, or relief therefrom, by application to the Court on notice to the other Parties hereto for good cause.

15.     In the event of disclosure of any Confidential Discovery Material, or the information therein, to any person or other entity not authorized under the terms of this Protective Order to have access to that information, the Party responsible for having made, and any Party having knowledge of, that disclosure shall inform counsel for the Designating Party, within a reasonable time not to exceed ten (10) days, of all information concerning the nature and circumstances of that disclosure.  The responsible Party also shall promptly take all reasonable measures to ensure that no further or greater unauthorized disclosure of such information or materials is made by anyone, and each Party shall cooperate in good faith in that effort.  Nothing in this paragraph shall limit any Party's right to seek sanctions from the Court for violation of this Protective Order.

16.     The provisions of this Protective Order shall, absent written permission of the Designating Party or further order of the Court, continue to be binding throughout and after the conclusion of the Action, including, without limitation, any appeals therefrom.  Within thirty (30) days after receiving notice of the entry of an order, judgment or decree finally disposing of all litigation in which Confidential Discovery Material is permitted to be used, including the

exhaustion of all permissible appeals, all persons who have received Confidential Discovery Material shall, upon written request of the Designating Party, either make a good faith effort to return such material and all copies thereof (including summaries, excerpts, and derivative works) to counsel for the Designating Party or destroy all such Confidential or Highly Confidential Discovery Material, and certify that fact to counsel for the Designating Party. Notwithstanding the prior sentence, counsel for the Parties shall be entitled to retain their own court papers, deposition and trial transcripts, and attorney work product (including discovery material containing Confidential Discovery Material) *provided that* such counsel, and employees of such counsel, shall not disclose such court papers or attorney work product to any person except pursuant to court order or agreement of the Designating Party. All materials returned to the Parties or their counsel by the Court likewise shall be disposed of in accordance with this paragraph.

17.     After the termination of the Action, this Protective Order shall continue to be binding upon the Parties hereto and upon all persons to whom Confidential Discovery Material has been disclosed or communicated. This Court shall retain jurisdiction over all such Parties and persons for enforcement of its provisions. After the termination of the Action, the Parties may seek to have the Court return to the Parties any papers containing Confidential Discovery Material that were submitted in chambers.

18.     In the event that any Confidential Discovery Material is used in any proceeding in the Action or any appeal therefrom, such information shall not lose its protected status through such use. Counsel shall confer on such procedures that are necessary to protect the confidentiality of any documents, information and transcripts used in the course of any court proceedings.

19.     If any Party objects to the designation of information as Confidential, the Party shall state the objection in writing to counsel for the Party making the designation, and all Parties shall

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 65 of 256

make good faith efforts to resolve the dispute on an expedited basis without intervention of the Court.  In the event that the Parties are unable to resolve the dispute, the Designating Party must request appropriate relief from this Court.  If the Designating Party fails to request appropriate relief from this Court within ten (10) days following the parties' good faith efforts to resolve the dispute, the subject document(s) will no longer be deemed as Confidential Discovery Material.  In the event the Designating Party applies to the Court for such relief, the Designating Party shall have the burden of establishing that the information has not been properly designated as Confidential.  The challenged designation shall remain in effect until changed by order of the Court or agreement of the Designating Party.

20.     If any person possessing or controlling documents covered by this Protective Order (the "Recipient") (a) is subpoenaed in another action or proceeding, (b) is served with a demand in another action or proceeding to which she, he or it is a party, or (c) is served with any other legal process by one not a Party to the Action, seeking Discovery Material which was designated as Confidential in the action by someone other than the Recipient (the "Subpoenaed Information"), such person shall (i) give prompt actual written notice by hand, facsimile transmission, or email within three (3) business days of receipt of such subpoena, demand or legal process to the Designating Party; and (ii) object to the production and shall not produce the Subpoenaed Information unless compelled by legal process, or otherwise ordered by a court, or by agreement with the Designating Party.  The Designating Party shall be solely responsible for defending any objection to the requested production.  Nothing herein shall be construed as requiring the Recipient or anyone else covered by this Protective Order to challenge or appeal any order requiring production of Confidential Discovery Material covered by this Protective Order, or to subject himself, herself or itself to any penalties for non-compliance with any legal process or order, or to

seek any relief from this Court.  Compliance by such person with any court order directing production pursuant to subpoena, demand, or legal process of any Confidential Discovery Material shall not constitute a violation of this Protective Order.

21.    A Party may designate as Confidential any information contained in documents that are in the possession of a non-party if the documents contain the Party's Confidential information.

22.    If, in the course of the Action, discovery is sought from non-parties that would require such non-parties to produce and/or disclose Confidential Discovery Material or the information therein, such non-parties may gain the protections of this Protective Order by agreeing in writing to produce documents pursuant to this Protective Order and to be bound by it.

23.    Nothing in this Protective Order shall be deemed or construed to restrict or prejudice the right of any Party or non-party to assert that certain information is so confidential as not to be subject to discovery or to seek additional protective relief with respect to any documents, tangible thing or information sought in the course of discovery.

24.    Any Party seeking discovery from a non-party shall provide a copy of this Protective Order to the non-party and notify the non-party that the protections of this Protective Order are available to such non-party.  Any non-party from whom discovery is sought in the Action may obtain the protection of this Protective Order by signing and providing to outside counsel for the Party seeking the discovery a certification and agreement, substantially in the form attached hereto as Exhibit B, stating that the non-party has read the Protective Order, understands the terms of the Protective Order, agrees to be fully bound by the Protective Order, submits to the jurisdiction of the Court for purposes of enforcement of the Protective Order, and understands that any violation or the terms or the Protective Order shall be punishable by relief deemed appropriate by the Court.

Dated: November _____, 2021

_____          _____

John Feroleto, Esq.                        Brittany L. Hannah, Esq.
**FEROLETO LAW**                           **SUGARMAN LAW FIRM, LLP**
*Attorneys for Eric C. Martin*             *Attorneys for Speedway LLC*
Office and Post Office Address             Office and Post Office Address
438 Main Street, Suite 910                 211 West Jefferson Street
Buffalo, New York  14202                   Syracuse, New York  13202
Telephone: (716) 854-0700                  Telephone:  (315) 474-2943
*John.feroleto@feroletolaw.com*            *bhannah@sugarmanlaw.com*

_____

Paul G. Joyce, Esq., and Marc S. Smith, Esq.
**COLUCCI & GALLAHER, P.C.**
*Attorneys for the Town of Tonawanda Police Department*
*o/b/o The Town of Tonawanda*
Office and Post Office Address
2000 Liberty Building
424 Main Street
Buffalo, New York 14202
(716) 853-4080
*pjoyce@colucci-gallaher.com*
*msmith@colucci-gallaher.com*

SO ORDERED this ___ day of November, 2021

_____
Honorable

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

_____

ERIC C. MARTIN,

Plaintiff,

vs.                                                    **INDEX NO. 808523/2021**

TOWN OF TONAWANDA POLICE DEPARTMENT
o/b/o TOWN OF TONAWANDA, SPEEDWAY, LLC,
MARATHON PETROLEUM CORPORATION and
JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8 as employees of
TOWN OF TONAWANDA POLICE DEPARTMENT,

Defendants.

_____

**EXHIBIT A**

**CERTIFICATION REGARDING**
**CONFIDENTIAL AND HIGHLY CONFIDENTIAL DISCOVERY MATERIAL**

I.        I hereby certify (i) my understanding that Discovery Material and/or Confidential Discovery Material is being provided to me pursuant to the terms and restrictions of the Confidentiality Stipulation and Protective Order (the "Protective Order") entered by the New York State Supreme Court (the "Court"), in the above-captioned litigation, and (ii) that I have read the Protective Order. I understand the terms of the Protective Order, agree to be fully bound by the terms and conditions thereof, and hereby submit to the jurisdiction of the Court for purposes or enforcement of the Protective Order. I understand that any violation of the terms of this Protective Order shall be punishable by relief deemed appropriate by the Court. I have had the opportunity to consult with counsel prior to signing this certification.

II.      Signature: _____   Dated: _____

Name (Print): _____

Sugarman Law Firm, LLP ● 211 West Jefferson Street ● Syracuse, New York 13202

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

———————————————————————

ERIC C. MARTIN,

                              Plaintiff,

        vs.                                                    **INDEX NO. 808523/2021**

TOWN OF TONAWANDA POLICE DEPARTMENT
o/b/o TOWN OF TONAWANDA, SPEEDWAY, LLC,
MARATHON PETROLEUM CORPORATION and
JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8 as employees of
TOWN OF TONAWANDA POLICE DEPARTMENT,

                              Defendants.

———————————————————————

## EXHIBIT B

### CERTIFICATION REGARDING
### <u>EXCHANGE OF CONFIDENTIAL INFORMATION</u>

I, _____, hereby certify on behalf of _____

(i) that _____, is producing Confidential Discovery Material in the

above-captioned action; (ii) that _____ seeks to obtain the protections

provided by the Confidentiality Stipulation and Protective Order (the "Protective Order") entered

by New York State Supreme Court (the "Court"), in the above-captioned action; and (iii) that I am

authorized to execute this certification on _____'s behalf.

I further certify (i) that I have read and understood the Protective Order, and agree to be

fully bound by the terms and conditions thereof; and (ii) that I hereby submit to the jurisdiction of

the Court for the purposes of enforcement of the Protective Order.

On behalf of _____, I further certify my

understanding that any violation of the terms of the Protective Order shall be punishable by relief

deemed appropriate by the Court.

I have had the opportunity to consult with counsel prior to signing this certification.

Signature: _____     Dated: _____

Name (Print): _____

Title and Affiliation: _____

Company: _____

Address: _____

Telephone: _____

# EXHIBIT F



211 West Jefferson Street, Suite 20
Syracuse, NY 13202-2680
Phone: (315) 474-2943
Fax: (315) 474-0235
www.sugarmanlaw.com

November 15, 2021

**VIA EMAIL ONLY @ john.feroleto@feroletolaw.com; megan.bechard@feroletolaw.com;
jill.wnek@ Feroletolaw.com**
**John Feroleto, Esq.**
Feroleto Law
438 Main Street, Suite 910
Buffalo, New York 14202

      Re:      *Martin, Eric v. Speedway LLC, et al*
      Our File:    W08009

Dear Mr. Feroleto:

I am serving this letter pursuant to our telephone conversation on November 4, 2021 regarding the documentation that Speedway LLC has withheld in Speedway LLC's Response to Request for Documents and Discovery pending a Confidentiality and Protective Order. I have discussed your refusal to execute a Confidentiality and Protective Order with Speedway LLC's in-house counsel. We are providing the following list of documentation that will be produced once a So Ordered Confidentiality and Protective Order is in place. Speedway LLC will not produce any of the documentation discussed herein without a Confidentiality and Protective Order due to the nature of the materials and the associated risk of non-protected production. Further, the publicity around this case is atypical, which heightens the need for a Confidentiality and Protective Order to mitigate the risk of non-protected production.

In response to paragraph 4 of plaintiff's Request for Documents and Discovery, dated September 7, 2021, Speedway LLC has withheld the production of the following relevant and responsive documents and training video relating to the subject areas requested that was in effect in July 2020, pending a Confidentiality and Protective Order:

- Operations Manual Policy: Accidents/Incidents, Injuries, etc.
- Operations Manual Policy: Anti-Money Laundering Compliance
- Operations Manual Policy: Customer Satisfaction/Service
- Operations Manual Policy: Division Emergency Reporting Procedure
- Operations Manual Policy: Drive-offs
- Operations Manual Policy: Lottery
- Operations Manual Policy: Prosecution/Criminal Proceedings
- Operations Manual Policy: Robbery
- Operations Manual Policy: Security Incident Reporting
- Operations Manual Policy: Shoplifting
- Operations Manual Policy: "Stay Out" Letter
- Operations Manual Policy: Training
- Operations Manual Policy: Violent Crime
- Use Services Web Based Training (video)

SERVICE BY FAX NOT ACCEPTED

In response to paragraph 7 of plaintiff's Request for Documents and Discovery, dated September 7, 2021, Speedway LLC has withheld the production of the following relevant and responsive materials and training video relating to the subject areas requested, pending a Confidentiality and Protective Order:

- Lottery Operations Manual Policy: 24 Hour Store Lottery Reconciliation with Cashless Instant Ticket Vending Machine (ITVM)
- Lottery Operations Manual Policy: 24 Hour Store Lottery Reconciliation
- Operations Manual Policy: Lottery
- Lottery Operations Manual Policy: 18 Hour Store Lottery Reconciliation with ITVM
- Lottery Operations Manual Policy: 18 Hour Store Lottery Reconciliation
- Lottery Operations Manual Policy: 24 Hour Store Lottery Reconciliation with ITVM
- Use Services Web Based Training (video)

Please contact me if you would like to discuss this further.  We will produce the above-discussed materials upon receipt of the previously provided Confidentiality and Protective  Order or a mutually agreeable one if that is not sufficient and the same being So Ordered by the Court. If you are unwilling to sign a Confidentiality and Protective Order and are pursuing production of the above-described materials, then please seek (unnecessary) judicial intervention.  Thank you.

Very truly yours,

*Brittany L Ha*

Brittany L. Hannah, Esq.
Direct Dial No.:  (315) 362-8942
bhannah@sugarmanlaw.com

BLH/dmr
cc:

**EMAIL ONLY @ pjoyce@colucci-gallaher.com and msmith@colucci-gallaher.com**
Paul G. Joyce, Esq.
Marc S. Smith, Esq.
**COLUCCI & GALLAHER, P.C.**
2000 Liberty Building
424 Main Street
Buffalo, New York 14202

SERVICE BY FAX NOT ACCEPTED

# EXHIBIT G

From : bhannah@sugarmanlaw.com

To : john.feroleto@feroletolaw.com

Sent : 5/20/2022 4:51PM

Subject : Martin

Hello John,

I got your message and just called back, but I received a voicemail for Megan. I have no issue with you bringing a motion, although I do not understand why you are so resistant to confidentiality on the materials you have requested. Regardless, I respect your right to make the motion. If you have any other bases for the motion, I request that you address them in good faith with me prior to bringing the motion and allow us an opportunity to work them out. Additionally, I would appreciate it if you would make the motion returnable for a later date than 6/9. I will be out of the office from 5/26-6/6 and will not be able to respond to you motion sooner than my return based on my schedule next week. It would save me the trouble of having to adjourn the motion.

I will be available off and on Monday-Wednesday next week, so please give me a call to discuss this and the video and if I am in a conference or deposition, I will give you a call back after. Thank you. Have a great weekend!

Regards,
Brittany

     211 W. Jefferson St.   Syracuse, NY 13202   **sugarmanlaw.com**

**BRITTANY L HANNAH, ESQ.**     **Direct Dial**: (315) 362-8942     **Fax**: (315) 474-0235

E-MAIL CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

# EXHIBIT H

From : bhannah@sugarmanlaw.com
To : john.feroleto@feroletolaw.com
Sent : 5/23/2022 2:03PM
Subject : Re: Martin

Hello John,

Thank you! I appreciate your consideration. Please allow me the opportunity to discuss with Speedway's in-house counsel first before you file it.  They may reconsider and allow me to produce some of all of what has been withheld without a confidentiality order to avoid the motion or they may stick to their position and have you file the motion to allow the Court to decide.  I will get back to you ASAP with an answer this week.  I would rather work this out if we can.  Thank you.

Regards,
Brittany


Brittany L. Hannah, Esq.
Sugarman Law Firm, LLP
(315) 362-8942

On May 23, 2022, at 8:19 AM, John Feroleto <john.feroleto@feroletolaw.com> wrote:


Good morning Brittany, I hope you had a good weekend.

I should be in my office after 10:30 AM today, this morning I am working remotely.

I will agree to keep confidential financial information, if any. As far as training manuals or information on how to deal with lottery matters, I believe that information is widely disseminated among thousands of individuals. Also, secrecy agreements are generally contrary to public policy, create causes of action when there are none, gives me or the potential expert, and other reasons.

Over the years I've seen plenty of policy manuals, and frankly they are pretty much the same. I don't know that there's anything that would harm your client financially. If you have manuals from the lottery vendor, I don't see how those could be confidential.

I look forward to working with you to resolving the discovery questions and yes, we can  schedule motion on a different day, thanks, John

**John Feroleto**
438 Main Street, Suite 910
Buffalo, NY 14202
716-854-0700
 AAJ Trucking Litigation Group, Past Chair | www.yourbuffalolawyer.com



On Fri, May 20, 2022 at 4:51 PM Brittany Hannah <bhannah@sugarmanlaw.com> wrote:

Hello John,

I got your message and just called back, but I received a voicemail for Megan.  I have no issue with you bringing a motion, although I do not understand why you are so resistant to confidentiality on the materials you have requested.  Regardless, I respect your right to make the motion.  If you have any other bases for the motion, I request that you address them in good faith with me prior to bringing the motion and allow us an opportunity to work them out. Additionally, I would appreciate it if you would make the motion returnable for a later date than 6/9.  I will be out of the office from 5/26-6/6 and will not be able to respond to you motion sooner than my return based on my schedule next week.  It would save me the trouble of having to adjourn the motion.

I will be available off and on Monday-Wednesday next week, so please give me a call to discuss this and the video and if I am in a conference or deposition, I will give you a call back after.  Thank you.  Have a great weekend!

Regards,
Brittany

<image001.jpg>

<image002.png>
211 W. Jefferson St.   Syracuse, NY 13202    sugarmanlaw.com

**BRITTANY L HANNAH, ESQ.**    Direct Dial: (315) 362-8942        Fax: (315) 474-0235

E-MAIL CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

# EXHIBIT I

From : bhannah@sugarmanlaw.com

To : john.feroleto@feroletolaw.com

Sent : 5/27/2022 1:54PM

Subject : FW: Martin

Hello John,

I hope you have been well.  I have discussed this matter with Speedway's in-house counsel.  If we were talking about a lottery manual provided by the State or an agency, they would not have any concerns about production.  However, the lottery materials at issue were developed internally by Speedway and have been kept confidential to company employees.  They do not provide copies of this to employees and do not produce it without a protective order limiting the use to litigation purposes for very obvious security reasons.  Speedway has no issue producing the materials you have requested with a confidentiality order.  You can see from what was previously provided to you to execute that it includes provisions allowing any experts to use them, etc..  It prevents, however, their dissemination to the general public.  We have no idea why you would want to do that here.  Further, if you have issues with the language of the CPO, we are open to alternative one or revision of the existing one.   We frequently have CPOs put into place in our cases and have them signed off on by Supreme Court, District Court, and Magistrate Judges.

Ultimately, before their in-house counsel makes a final decision on the issue as to whether to standby the need for the CPO, she asked me to obtain clarification from you as to why limiting the use and disclosure of the materials for use in this litigation is unsatisfactory?  She also asked about the portion of your e-mail that says "gives me or the potential expert".  What does that mean?  Speedway will reconsider production without a confidentiality order, but they need to understand the rationale behind your refusal to sign the confidentiality order to make an informed decision.  Please let me know between now and when I get back on 6/6 so that we can work this out in good faith.   Thank you!

Have a great weekend!

Regards,
Brittany

Brittany L. Hannah, Esq.
Sugarman Law Firm, LLP
Direct Dial: (315) 362-8942

---

**From:** Brittany Hannah
**Sent:** Monday, May 23, 2022 2:04 PM
**To:** John Feroleto <john.feroletolaw.com>
**Cc:** Megan Commaroto <megan.commaroto@feroletolaw.com>; Diane Rockdashil <drockdashil@sugarmanlaw.com>
**Subject:** Re: Martin

Hello John,

Thank you! I appreciate your consideration. Please allow me the opportunity to discuss with Speedway's in-house counsel first before you file it.  They may reconsider and allow me to produce some of all of what has been withheld without a confidentiality order to avoid the motion or they may stick to their position and have you file the motion to allow the Court to decide.  I will get back to you ASAP with an answer this week.  I would rather work this out if we can.  Thank you.

Regards,
Brittany

Brittany L. Hannah, Esq.
Sugarman Law Firm, LLP
(315) 362-8942

On May 23, 2022, at 8:19 AM, John Feroleto <john.feroleto@feroletolaw.com> wrote:

Good morning Brittany, I hope you had a good weekend.

I should be in my office after 10:30 AM today, this morning I am working remotely.

I will agree to keep confidential financial information, if any. As far as training manuals or information on how to deal with lottery matters, I believe that information is widely disseminated among thousands of individuals. Also, secrecy agreements are generally contrary to public policy, create causes of action when there are none, gives me or the potential expert, and other reasons.

Over the years I've seen plenty of policy manuals, and frankly they are pretty much the same. I don't know that there's anything that would harm your client financially. If you have manuals from the lottery vendor, I don't see how those could be confidential.

I look forward to working with you to resolving the discovery questions and yes, we can schedule motion on a different day, thanks, John

**John Feroleto**
438 Main Street, Suite 910
Buffalo, NY 14202
716-854-0700
AAJ Trucking Litigation Group, Past Chair | www.yourbuffalolawyer.com



On Fri, May 20, 2022 at 4:51 PM Brittany Hannah <bhannah@sugarmanlaw.com> wrote:

Hello John,

I got your message and just called back, but I received a voicemail for Megan. I have no issue with you bringing a motion, although I do not understand why you are so resistant to confidentiality on the materials you have requested. Regardless, I respect your right to make the motion. If you have any other bases for the motion, I request that you address them in good faith with me prior to bringing the motion and allow us an opportunity to work them out. Additionally, I would appreciate it if you would make the motion returnable for a later date than 6/9. I will be out of the office from 5/26-6/6 and will not be able to respond to you motion sooner than my return based on my schedule next week. It would save me the trouble of having to adjourn the motion.

I will be available off and on Monday-Wednesday next week, so please give me a call to discuss this and the video and if I am in a conference or deposition, I will give you a call back after. Thank you. Have a great weekend!

Regards,
Brittany

<image001.jpg>
<image002.png>

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 82 of 256

> 211 W. Jefferson St.   Syracuse, NY 13202   **sugarmanlaw.com**

**BRITTANY L HANNAH, ESQ.**   **Direct Dial**: (315) 362-8942   **Fax**: (315) 474-0235

E-MAIL CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

# EXHIBIT J

From : john.feroleto@feroletolaw.com

To : bhannah@sugarmanlaw.com

Sent : 6/02/2022 2:49PM

Subject : Re: FW: Martin

Brittany, I hope you are not reading this email until you return to your office.

As to the material in question, Speedway has the burden to show that it would somehow be harmed.

As to the question of why I would want to disseminate this to the public, I never indicated that. That was not my intent.

The confidentiality agreement could create a new cause of action of liability against me. I do not wish to do that.

The confidentiality agreement can also potentially create a cause of action against an expert, If Speedway accused an expert of discussing lottery, security procedures or any other matters. This could have a chilling effect on how I deem best to handle my case.

Secrecy agreements are frowned upon. See the Court Rules.

I expect the lottery procedures for Speedway include scanning and counting the tickets on a daily basis, possibly a physical count and basic daily or weekly audits. I don't see why I would need to sign a confidentiality agreement/order. I don't see how this could harm Speedway financially.

Thanks, and regards, John

**John Feroleto**
438 Main Street, Suite 910
Buffalo, NY 14202
716-854-0700
AAJ Trucking Litigation Group, Past Chair | www.yourbuffalolawyer.com

  

On Fri, May 27, 2022 at 1:54 PM Brittany Hannah <bhannah@sugarmanlaw.com> wrote:

Hello John,

I hope you have been well. I have discussed this matter with Speedway's in-house counsel. If we were talking about a lottery manual provided by the State or an agency, they would not have any concerns about production. However, the lottery materials at issue were developed internally by Speedway and have been kept confidential to company employees. They do not provide copies of this to employees and do not produce it without a protective order limiting the use to litigation purposes for very obvious security reasons. Speedway has no issue producing the materials you have requested with a confidentiality order. You can see from what was previously provided to you to execute that it includes provisions allowing any experts to use them, etc.. It prevents, however, their dissemination to the general public. We have no idea why you would want to do that here. Further, if you have issues with the language of the CPO, we are open to alternative one or revision of the existing one. We frequently have CPOs put into place in our cases and have them signed off on by Supreme Court, District Court, and Magistrate Judges.

Ultimately, before their in-house counsel makes a final decision on the issue as to whether to standby the need for the CPO, she asked me to obtain clarification from you as to why limiting the use and disclosure of the materials for use in this litigation is unsatisfactory? She also asked about the portion of your e-mail that says "gives me or the potential expert". What does that mean? Speedway will reconsider production without a confidentiality order, but

FILED: ERIE COUNTY CLERK 08/25/2022 03:31 PM

NYSCEF DOC. NO. 62

INDEX NO. 808423/2021

RECEIVED NYSCEF: 08/25/2022

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 85 of 256

Page 2 of 4

they need to understand the rationale behind your refusal to sign the confidentiality order to make an informed decision.  Please let me know between now and when I get back on 6/6 so that we can work this out in good faith.   Thank you!


Have a great weekend!


Regards,
Brittany


Brittany L. Hannah, Esq.
Sugarman Law Firm, LLP

Direct Dial: (315) 362-8942

---

**From:** Brittany Hannah
**Sent:** Monday, May 23, 2022 2:04 PM
**To:** John Feroleto <john.feroleto@feroletolaw.com>
**Cc:** Megan Commaroto <megan.commaroto@feroletolaw.com>; Diane Rockdashil <drockdashil@sugarmanlaw.com>
**Subject:** Re: Martin


Hello John,


Thank you! I appreciate your consideration. Please allow me the opportunity to discuss with Speedway's in-house counsel first before you file it.  They may reconsider and allow me to produce some of all of what has been withheld without a confidentiality order to avoid the motion or they may stick to their position and have you file the motion to allow the Court to decide.  I will get back to you ASAP with an answer this week.  I would rather work this out if we can.  Thank you.


Regards,

Brittany


Brittany L. Hannah, Esq.

Sugarman Law Firm, LLP

(315) 362-8942

FILED: ERIE COUNTY CLERK 08/25/2022 03:31 PM INDEX NO. 803423/2021 Page 3 of 4
NYSCEF DOC. NO. 62 RECEIVED NYSCEF: 08/25/2022

Case 1:23-cv-00419-WMS-MJR Document 1-25 Filed 05/11/23 Page 86 of 256

On May 23, 2022, at 8:19 AM, John Feroleto <john.feroleto@feroletolaw.com> wrote:

Good morning Brittany, I hope you had a good weekend.

I should be in my office after 10:30 AM today, this morning I am working remotely.

I will agree to keep confidential financial information, if any. As far as training manuals or information on how to deal with lottery matters, I believe that information is widely disseminated among thousands of individuals. Also, secrecy agreements are generally contrary to public policy, create causes of action when there are none, gives me or the potential expert, and other reasons.

Over the years I've seen plenty of policy manuals, and frankly they are pretty much the same. I don't know that there's anything that would harm your client financially. If you have manuals from the lottery vendor, I don't see how those could be confidential.

I look forward to working with you to resolving the discovery questions and yes, we can schedule motion on a different day, thanks, John

**John Feroleto**

438 Main Street, Suite 910

Buffalo, NY 14202

716-854-0700

AAJ Trucking Litigation Group, Past Chair | www.yourbuffalolawyer.com



On Fri, May 20, 2022 at 4:51 PM Brittany Hannah <bhannah@sugarmanlaw.com> wrote:

Hello John,

I got your message and just called back, but I received a voicemail for Megan.  I have no issue with you bringing a motion, although I do not understand why you are so resistant to confidentiality on the materials you have requested.  Regardless, I respect your right to make the motion.  If you have any other bases for the motion, I request that you address them in good faith with me prior to bringing the motion and allow us an opportunity to work them out. Additionally, I would appreciate it if you would make the motion returnable for a later date than 6/9.  I will be out of the office from 5/26-6/6 and will not be able to respond to you motion sooner than my return based on my schedule next week.  It would save me the trouble of having to adjourn the motion.

I will be available off and on Monday-Wednesday next week, so please give me a call to discuss this and the video and if I am in a conference or deposition, I will give you a call back after.  Thank you. Have a great weekend!

Regards,
Brittany

<image001.jpg>

<image002.png>

211 W. Jefferson St.   Syracuse, NY 13202   **sugarmanlaw.com**

**BRITTANY L HANNAH, ESQ.**    **Direct Dial**: (315) 362-8942    Fax: (315) 474-0235

E-MAIL CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

# EXHIBIT K

From : bhannah@sugarmanlaw.com

To : john.feroleto@feroletolaw.com

Sent : 6/10/2022 8:16PM

Subject : FW: Martin

Hello John,

I have discussed this further with Speedway's in-house counsel. We have articulated our reasoning for withholding the materials in our response and correspondence to date. Further, Speedway's in-house counsel advised that they consider the materials that have been withheld, including the internal operations manuals, to be confidential business information. It is Speedway's routine practice to only produce excerpts only under a confidentiality order. They have not encountered a situation where any cause of action for liability was created against a plaintiff's counsel or a plaintiff's expert. If that is your concern, Speedway is willing to add additional language to the confidentiality order to protect against that that will satisfy you and/or enter into a side agreement that Speedway agrees not to bring a cause of action for liability against you or any expert you may retain for any inadvertent violation of the confidentiality order.

Have a great weekend!

Regards,
Brittany

Brittany L. Hannah, Esq.
Sugarman Law Firm, LLP
Direct Dial: (315) 362-8942

---

**From:** Brittany Hannah
**Sent:** Wednesday, June 8, 2022 4:48 PM
**To:** john.feroleto@feroletolaw.com
**Subject:** FW: Martin

Hello John,

I have not heard back yet, but I expect to hear back by the end of the day tomorrow. I will let you know as soon as I do. Also, my appearance was excused for tomorrow's oral argument, so I will not be there.

Thank you.

Regards,
Brittany

Brittany L. Hannah, Esq.
Sugarman Law Firm, LLP
Direct Dial: (315) 362-8942

---

**From:** Brittany Hannah
**Sent:** Monday, June 6, 2022 3:19 PM
**To:** John Feroleto <john.feroleto@feroletolaw.com>
**Subject:** Re: Martin

Hello John,

Thank you! I will send this along to Speedway's in-house counsel and let you know their decision. I should hear back by Wednesday. Thank you!

Regards,
Brittany

Brittany L. Hannah, Esq.
Sugarman Law Firm, LLP
(315) 362-8942

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 90 of 256

On Jun 2, 2022, at 2:49 PM, John Feroleto <john.feroleto@feroletolaw.com> wrote:

Brittany, I hope you are not reading this email until you return to your office.

As to the material in question, Speedway has the burden to show that it would somehow be harmed.

As to the question of why I would want to disseminate this to the public, I never indicated that. That was not my intent.

The confidentiality agreement could create a new cause of action of liability against me. I do not wish to do that.

The confidentiality agreement can also potentially create a cause of action against an expert, If Speedway accused an expert of discussing lottery, security procedures or any other matters. This could have a chilling effect on how I deem best to handle my case.

Secrecy agreements are frowned upon. See the Court Rules.

I expect the lottery procedures for Speedway include scanning and counting the tickets on a daily basis, possibly a physical count and basic daily or weekly audits. I don't see why I would need to sign a confidentiality agreement/order. I don't see how this could harm Speedway financially.

Thanks, and regards, John

**John Feroleto**
438 Main Street, Suite 910
Buffalo, NY 14202
716-854-0700
 AAJ Trucking Litigation Group, Past Chair | www.yourbuffalolawyer.com



On Fri, May 27, 2022 at 1:54 PM Brittany Hannah <bhannah@sugarmanlaw.com> wrote:

Hello John,

I hope you have been well.  I have discussed this matter with Speedway's in-house counsel.  If we were talking about a lottery manual provided by the State or an agency, they would not have any concerns about production.  However, the lottery materials at issue were developed internally by Speedway and have been kept confidential to company employees.  They do not provide copies of this to employees and do not produce it without a protective order limiting the use to litigation purposes for very obvious security reasons.  Speedway has no issue producing the materials you have requested with a confidentiality order.  You can see from what was previously provided to you to execute that it includes provisions allowing any experts to use them, etc..  It prevents, however, their dissemination to the general public.  We have no idea why you would want to do that here.  Further, if you have issues with the language of the CPO, we are open to alternative one or revision of the existing one.   We frequently have CPOs put into place in our cases and have them signed off on by Supreme Court, District Court, and Magistrate Judges.

Ultimately, before their in-house counsel makes a final decision on the issue as to whether to standby the need for the CPO, she asked me to obtain clarification from you as to why limiting the use and disclosure of the materials for use in this litigation is unsatisfactory?  She also asked about the portion of your e-mail that says "gives me or the potential expert".  What does that mean?  Speedway will reconsider production without a confidentiality order, but they need to understand the rationale behind your refusal to sign the confidentiality order to make an informed decision.  Please let me know between now and when I get back on 6/6 so that we can work this out in good faith.   Thank you!

Have a great weekend!

Regards,

Brittany

Brittany L. Hannah, Esq.
Sugarman Law Firm, LLP
Direct Dial: (315) 362-8942

---

**From:** Brittany Hannah
**Sent:** Monday, May 23, 2022 2:04 PM
**To:** John Feroleto <john.feroleto@feroletolaw.com>
**Cc:** Megan Commaroto <megan.commaroto@feroletolaw.com>; Diane Rockdashil <drockdashil@sugarmanlaw.com>
**Subject:** Re: Martin

Hello John,

Thank you! I appreciate your consideration. Please allow me the opportunity to discuss with Speedway's in-house counsel first before you file it. They may reconsider and allow me to produce some of all of what has been withheld without a confidentiality order to avoid the motion or they may stick to their position and have you file the motion to allow the Court to decide. I will get back to you ASAP with an answer this week. I would rather work this out if we can. Thank you.

Regards,
Brittany


Brittany L. Hannah, Esq.
Sugarman Law Firm, LLP
(315) 362-8942


> On May 23, 2022, at 8:19 AM, John Feroleto <john.feroleto@feroletolaw.com> wrote:
>
> Good morning Brittany, I hope you had a good weekend.
>
> I should be in my office after 10:30 AM today, this morning I am working remotely.
>
> I will agree to keep confidential financial information, if any. As far as training manuals or information on how to deal with lottery matters, I believe that information is widely disseminated among thousands of individuals. Also, secrecy agreements are generally contrary to public policy, create causes of action when there are none, gives me or the potential expert, and other reasons.
>
> Over the years I've seen plenty of policy manuals, and frankly they are pretty much the same. I don't know that there's anything that would harm your client financially. If you have manuals from the lottery vendor, I don't see how those could be confidential.
>
> I look forward to working with you to resolving the discovery questions and yes, we can schedule motion on a different day, thanks, John
> **John Feroleto**
> 438 Main Street, Suite 910
> Buffalo, NY 14202
> 716-854-0700
> AAJ Trucking Litigation Group, Past Chair | www.yourbuffalolawyer.com





> On Fri, May 20, 2022 at 4:51 PM Brittany Hannah <bhannah@sugarmanlaw.com> wrote:
>> Hello John,

I got your message and just called back, but I received a voicemail for Megan.  I have no issue with you bringing a motion, although I do not understand why you are so resistant to confidentiality on the materials you have requested.  Regardless, I respect your right to make the motion.  If you have any other bases for the motion, I request that you address them in good faith with me prior to bringing the motion and allow us an opportunity to work them out. Additionally, I would appreciate it if you would make the motion returnable for a later date than 6/9.  I will be out of the office from 5/26-6/6 and will not be able to respond to you motion sooner than my return based on my schedule next week.  It would save me the trouble of having to adjourn the motion.

I will be available off and on Monday-Wednesday next week, so please give me a call to discuss this and the video and if I am in a conference or deposition, I will give you a call back after.  Thank you.  Have a great weekend!

Regards,
Brittany

<image001.jpg
>
        <image002.png>
        211 W. Jefferson St.   Syracuse, NY 13202     **sugarmanlaw.com**

**BRITTANY L HANNAH, ESQ.**     **Direct Dial**: (315) 362-8942          **Fax**: (315) 474-0235

E-MAIL CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

# EXHIBIT L

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

**ERIC C. MARTIN,**

<em>Plaintiff,</em>

<strong><u>SECOND REQUEST FOR<br>DOCUMENTS AND<br>DISCOVERY</u></strong>

**vs.**

<strong>Index No.: 808523/2021</strong>

**TOWN OF TONAWANDA POLICE DEPARTMENT
o/b/o THE TOWN OF TONAWANDA, SPEEDWAY LLC,
MARATHON PETROLEUM CORPORATION, and
JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8,**

<em>Defendants.</em>

Pursuant to Civil Practice Law and Rules, the Plaintiff hereby demands that SPEEDWAY, LLC produce the following documents for copying and inspection, within TWENTY (20) DAYS of service of this demand.

For the term document, please refer to the definition in our September 7, 2021 Request for Documents and Discovery. With regard to any term deemed by the responding party as being ambiguous or vague, a term shall be construed in its broadest sense to encompass all reasonable definitions of that term.

1.      Video of Tonawanda Personnel and Speedway Employees viewing surveillance video of the July 8, burglary on or about July 8, 2020, including the period July 6, 2020 – July 18, 2020.

2.      Video of Eric Martin's father, Eric Martin, taken at the time he was at the Kenmore Avenue Speedway with a lottery ticket on or about July 10, 2020 and documents referring or relating thereto.

3.      Documents and video referring or relating to Eric Martin, or Eric Martin's father, Eric Martin, and protestors in the vicinity of the Speedway store Kenmore Ave., Tonawanda, New York for the period July 8, 2020 to July 31, 2020.

4.    Documents referring or relating to the July 8, 2020 burglary including documents referring to the relative resolution, communication for court appearances, files, photographs, statements or other items.

Some or all of these items may have been requested in the September 7, 2021 Request for Documents and Discovery, however, please provide all items referring or relating to, the investigation of the sale, redemption, and arrest of Eric Martin, including recommended procedures, documents, emails, notations of Beth Marvel, Jessica Kimes, Sherry Sowrey, Mary Birdman, individuals employed involving security and risk management for the period July 8, 2020 to June 11, 2021.

Please identify with sufficient specificity those items deemed privileged or protected pursuant to CPLR 3122(b) along with a privilege log.

DATED:    March 15, 2022
            Buffalo, New York

**JOHN FEROLETO, ESQ.**
**FEROLETO LAW**
*Attorneys for Plaintiff*
438 Main Street, Suite 910
Buffalo, New York 14202
Telephone: (716) 854-0700

TO:    **BRITTANY L. HANNAH, ESQ.**
       **SUGARMAN LAW FIRM, LLP**
       *Attorneys for Speedway LLC*
       211 West Jefferson Street, Suite 20
       Syracuse, New York 13202
       Telephone: (315) 474-2943

CC.    **PAUL G. JOYCE, ESQ.**
       **MARC S. SMITH, ESQ.**
       **COLUCCI & GALLAHER, P.C.**
       *Attorneys for Defendant The Town of Tonawanda*
       *Police Department o/b/o The Town of Tonawanda*
       2000 Liberty Building
       424 Main Street
       Buffalo, New York 14202
       Telephone: (716) 853-4080

# EXHIBIT M

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 97 of 256

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

---

ERIC C. MARTIN,

                              Plaintiff,

             vs.

TOWN OF TONAWANDA POLICE DEPARTMENT
o/b/o TOWN OF TONAWANDA, SPEEDWAY, LLC,
MARATHON PETROLEUM CORPORATION and
JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8 as employees of
TOWN OF TONAWANDA POLICE DEPARTMENT,

                              Defendants.

---

**SPEEDWAY LLC'S RESPONSE
TO PLAINTIFF'S SECOND
REQUEST FOR DOCUMENTS
AND DISCOVERY**
**INDEX NO. 808523/2021**

Defendant, Speedway LLC, by and through its attorneys, Sugarman Law Firm, LLP,

hereby responds Plaintiff's Second Request for Documents and Discovery, dated March 15, 2022,

as follows:

**<u>General Objections</u>**

By responding to these demands, Speedway does not concede the materiality of the subject

to which it refers.  Speedway's responses are made expressly subject to, and without waiving or

intending to waive any questions or objections as to the competency, relevance, materiality,

privilege, or admissibility as evidence or for any other purpose, of any of the documents or

information produced, or the subject matter thereof, in any proceeding including the trial or any

subsequent proceeding.

Speedway objects to the extent that plaintiff demands information and/or documents which

are protected by the attorney-client privilege or work-product privilege or which constitute

material prepared for litigation purposes.

Inadvertent production of any document or information which is privileged, was prepared in anticipation of litigation, or is otherwise immune from discovery, shall not constitute waiver of any privilege or of another ground for objecting to discovery, with respect to such document or information or the information contained in any document or of Speedway's right to object to the use of any such document or the information contained therein during any proceeding in this litigation or otherwise. Speedway also objects in the entirety to any request for documents that is not limited in time.

Speedway objects in the entirety to any request for information which is not in its possession, custody, or control.

Speedway is continuing to search for information responsive to plaintiff's demands and, therefore, reserves the right to supplement its response to each demand with additional information, if and when such information becomes available to Speedway's counsel. Speedway also reserves the right to object to the future disclosure of such information.

Speedway objects to these demands to the extent they exceed the scope of the CPLR or seek to impose obligations on Speedway beyond the requirements of those rules.

Speedway reserves the right to make any further applicable objection whether or not said objection is delineated above. The above objections in no way waive Speedway's right to make applicable objections as the course of the matter progresses.

### **Responses**

1. Video of Tonawanda Personnel and Speedway Employees viewing surveillance video of the July 8, burglary on or about July 8, 2020, including the period July 6, 2020 – July 18, 2020.

**RESPONSE:** Objection. Speedway objects to this Demand because it is overly broad and unduly burdensome because it is not limited to the issues in this case. Speedway further objects to the extent it seeks information that is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving said objections, Speedway does not have any materials responsive to this Demand.

2.  Video of Eric Martin's father, Eric Martin, taken at the time he was at the Kenmore Avenue Speedway with a lottery ticket on or about July 10, 2020 and documents referring or relating thereto.

**RESPONSE:** Objection. Speedway objects to this Demand because it is overly broad and unduly burdensome because it is not limited to the issues in this case. Speedway further objects to the extent it seeks information that is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving said objections, this Demand is nearly identical to Demand 6 in plaintiff's Request for Documents and Discovery, dated September 7, 2021, which Speedway responded to in Speedway LLC's Response to Request for Documents and Discovery, dated November 3, 2021. Further responding, Speedway does not have any materials responsive to this Demand.

3.  Documents and video referring or relating to Eric Martin, or Eric Martin's father, Eric Martin, and protesters in the vicinity of the Speedway store Kenmore Ave., Tonawanda, New York for the period July 8, 2020 to July 31, 2020.

**RESPONSE:** Objection. Speedway objects to this Demand because it is overly broad and unduly burdensome and because it is not limited to the issues in this case. Speedway further objects to the extent it seeks information that is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving said objections, this

Demand is nearly identical to Demands 2, 6, and 11 in plaintiff's Request for Documents and Discovery, dated September 7, 2021, which Speedway responded to in Speedway LLC's Response to Request for Documents and Discovery, dated November 3, 2021.  Further responding, Speedway does not have any additional materials responsive to this Demand.

4.       Documents referring or relating to the July 8, 2020 burglary including documents referring to the relative resolution, communication for court appearances, files, photographs, statements or other items.

**RESPONSE:**  Objection.  Speedway objects to this Demand because it is overly broad and unduly burdensome.  Speedway further objects to the extent it seeks information that is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence. Speedway additionally objects to the extent it seeks information and documentation that is protected from disclosure by the attorney/client privilege and/or work product doctrine.  Subject to and without waiving said objections, this Demand is nearly identical to Demand 5 in plaintiff's Request for Documents and Discovery, dated September 7, 2021, which Speedway responded to in Speedway LLC's Response to Request for Documents and Discovery, dated November 3, 2021. Further responding, any documents which may be responsive in Speedway's possession were provided with Speedway LLC's Response to Plaintiff's Omnibus Discovery Demands or will be provided subject to a fully executed and So Ordered Confidentiality and Protective Order, as discussed in Speedway LLC's Response to Request for Documents and Discovery, dated November 3, 2021, which has not been executed by plaintiff's counsel to date.

5.       Some or all of these items may have been requested in the September 7, 2021 Request for Documents and Discovery, however, please provide all items referring or relating to, the investigation of the sale, redemption, and arrest of Eric Martin, including recommended

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 101 of 256

procedures, documents, emails, notations of Beth Marvel, Jessica Kimes, Sherry Sawrey, Mary Birdman, individuals employed involving security and risk management for the period July 8, 2020 to June 11, 2021.

**RESPONSE:** Objection.  To the extent that this unnumbered paragraph is to be construed as a demand, Speedway objects to this Demand because it is overly broad and unduly burdensome. Speedway further objects to the extent it seeks information that is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence.  Speedway also objects because it is not limited to the relevant time period.  Speedway additionally objects to the extent it seeks information and documentation that is protected from disclosure by the attorney/client privilege and/or work product doctrine.  Subject to and without waiving said objections, as an initial response, Speedway did not employ individuals named Sherry Sowrey or Mary Birdman. Speedway assumes that you are referring to its former employees, Sherry Sowry and Mary Bergman.  Further responding, Speedway's former employees Jessica Kimes and Mary Bergman were in Speedway's Law Department and any additional responsive documentation beyond what has been produced to date is protected from disclosure by the attorney/client privilege.  Pursuant to CPLR 3122(b), Speedway asserts that the divulgence of a privilege log in response to this improper and highly objectional demand would cause disclosure of privileged information, especially because litigation was immediately anticipated.  Therefore, Speedway will reconsider this position and provide a privilege log in response to a  proper, specific, and reasonably tailored demand.

### DEFENDANT RESERVES THE RIGHT TO SUPPLEMENT AND/OR AMEND THE RESPONSES ABOVE AFTER THE COMPLETION OF DISCOVERY OR WITHIN A REASONABLE TIME PRIOR TO TRIAL

Dated:  May 6, 2022

Sugarman Law Firm, LLP • 211 West Jefferson Street • Syracuse, New York 13202



Brittany L. Hannah, Esq.
**SUGARMAN LAW FIRM, LLP**
*Attorneys for Speedway LLC*
Office and Post Office Address
211 West Jefferson Street
Syracuse, New York  13202
Telephone: 315-362-8942
bhannah@sugarmanlaw.com

TO:   John Feroleto, Esq.
        **FEROLETO LAW**
        *Attorneys for Plaintiff*
        Office and Post Office Address
        438 Main Street, Suite 910
        Buffalo, New York  14202
        Telephone: 716-854-0700
        John.feroleto@feroletolaw.com

CC:
        Paul G. Joyce, Esq., and
        Marc S. Smith, Esq.
        **COLUCCI & GALLAHER, P.C.**
        *Attorneys for the Town of Tonawanda Police Department*
        *o/b/o The Town of Tonawanda*
        Office and Post Office Address
        2000 Liberty Building
        424 Main Street
        Buffalo, New York 14202
        Telephone:  (716) 853-4080
        pjoyce@colucci-gallaher.com

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 103 of 256

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

_____

ERIC C. MARTIN,

                                        Plaintiff,

vs.

TOWN OF TONAWANDA POLICE DEPARTMENT
o/b/o TOWN OF TONAWANDA, SPEEDWAY, LLC,
MARATHON PETROLEUM CORPORATION and
JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8 as employees of
TOWN OF TONAWANDA POLICE DEPARTMENT,

                                        Defendants.

_____

**AFFIDAVIT OF**
**BETH MARVEL**
**INDEX NO. 808523/2021**

STATE OF NEW YORK  )

COUNTY OF ERIE  )  ss:

        Beth Marvel, being duly sworn, deposes and says:

        1.      My name is Beth Marvel and I am a Lead Area Leader for 7-Eleven, Inc. and

Speedway LLC ("Speedway"). I have worked for Speedway since July 2019, when Speedway

acquired my former employer, NOCO. Before working at Speedway, I was a District Manager for

NOCO from August 2015 until July 2019. I had previously worked for NOCO in other positions

from September 2009 until August 2015.

        2.      At the time of the incident that is the subject of this lawsuit, I was a District Manager

for Speedway, and I worked with the Speedway Law Department in their investigation of this

incident.

        3.      The following information is based upon my personal knowledge unless otherwise

stated.

1

4.      Speedway has created an internal, proprietary Operations Manual and an internal, proprietary Lottery Operations Manual (collectively "Manuals") for use in its convenience store business. These Manuals have been drafted and routinely updated over many years. These Manuals are the result of the expenditure of significant worker hours and related wages. As such, Speedway's competitors could not duplicate these manuals without a similarly significant time and expense. Speedway considers its policies and procedures, along with the related web-based training, to be among the best in the convenience store industry.

5.      I am informed that Speedway has six Operations Manual policies that are routinely requested and produced in litigation *without* a confidentiality agreement: (i) Cleaning; (ii) Opening/Closing; (iii) Winterizing; (iv) Snow Shoveling; (v) Wet Floors/Slips, Trips and Falls; and (vi) General Safety Guidelines. Other than these six specific policies, Speedway considers the remaining portions of its Operations Manual and all of its Lottery Operations Manual to be confidential and proprietary business information.

6.      Speedway has taken steps to protect this information from dissemination to the public, including requiring a confidentiality agreement or protective order before producing such materials in litigation and in subpoena responses. Further, Speedway does not disclose these documents to non-employees in circumstances other than litigation and subpoena responses.

7.      Although Speedway employees receive training on and have online access to these policies during their employment, they are not provided with their own copies of the Manuals to keep. In addition, all new employees must agree to Speedway's Code of Business Conduct at the time of their hire. The Code of Business Conduct prohibits employees from disclosing non-public business information to anyone outside of Speedway unless the disclosure is specifically authorized.

2

8. I have been made aware of the specific documents that are currently being withheld in connection with this litigation until a confidentiality agreement is in place. Many of the Operations Manual policies that Plaintiff seeks are directly intended to discover how Speedway employees are instructed to react to criminal activities, including when and under what circumstances to contact the authorities. Indeed, several of the requested policies specify how employees are supposed to react (or not react) to various criminal activities, including drive-offs, robbery, shoplifting, and violent crime. The requested policies also provide details about the use of alarms and panic buttons. If such policies were made public, it could subject Speedway to increased criminal activity and could also endanger both employees and customers.

9. Similarly, Speedway's Lottery Operations Manual addresses issues such as the timing for lottery counts, including back stock and where tickets are stored, and is kept confidential for security reasons, one of which is because lottery tickets and the proceeds of their sale are targets of theft.

10. Furthermore, allowing Speedway's internal policies and procedures, and related training videos, to be used and shared outside of litigation could also result in an unfair advantage to Speedway's business competitors by allowing them to utilize knowledge of these policies to create or modify their own policies and training, instead of expending the required time and money as Speedway has done.

11. Finally, I am aware that Plaintiff is also seeking "emails, statements, renditions, reports, memoranda, reports to risk management, claims individuals, [and] employees of Speedway with respect to Eric Martin" regarding the incident.

12. Given the political climate in the summer of 2020 and the recurring violence and theft occurring at retailers across the country, including Speedway convenience stores, Speedway

3

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 106 of 256

immediately considered this incident one that would result in litigation. All internal investigative

documents and communications were specially prepared solely for that anticipated litigation. Such

documents were not and would not have been prepared in the ordinary course of business.

BETH MARVEL

Sworn to before me this
24 day of August, 2022.

Notary Public

SHERYL A SANDERSON
NOTARY PUBLIC-STATE OF NEW YORK
No. 01SA6376120
Qualified in Niagara County
My Commission Expires 06-04- 2026

4

## WORD COUNT CERTIFICATION

### Pursuant to 22 NYCRR § 202.8-b

I hereby certify that the total number of words in the Affidavit inclusive of point headings

and footnotes, and exclusive of the caption, the table of contents, table of authorities, and

signature block, is 737 words, which complies with the word count limit.

Dated: August 25, 2022

_____
Cory J. Schoonmaker, Esq.
**SUGARMAN LAW FIRM, LLP**
*Attorneys for Speedway LLC*
Office and Post Office Address
211 West Jefferson Street
Syracuse, New York  13202
Telephone: 315-362-8941
cschoonmaker@sugarmanlaw.com

TO:
    John Feroleto, Esq.
    **FEROLETO LAW**
    *Attorneys for Plaintiff*
    Office and Post Office Address
    438 Main Street, Suite 910
    Buffalo, New York  14202
    Telephone: 716-854-0700
    John.feroleto@feroletolaw.com

CC:
    Paul G. Joyce, Esq., and
    Marc S. Smith, Esq.
    **COLUCCI & GALLAHER, P.C.**
    *Attorneys for the Town of Tonawanda Police Department*
    *o/b/o The Town of Tonawanda*
    Office and Post Office Address
    2000 Liberty Building
    424 Main Street
    Buffalo, New York 14202
    Telephone:  (716) 853-4080
    pjoyce@colucci-gallaher.com

6

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

---

ERIC C. MARTIN,

                                Plaintiff,

          vs.

TOWN OF TONAWANDA POLICE DEPARTMENT
o/b/o TOWN OF TONAWANDA, SPEEDWAY, LLC,
MARATHON PETROLEUM CORPORATION and
JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8 as employees of
TOWN OF TONAWANDA POLICE DEPARTMENT,

                             Defendants.

**MEMORANDUM OF LAW**
**INDEX NO. 808523/2021**
**JUDGE:  NUGENT-PANEPINTO**

---

       Defendant, Speedway LLC ("Speedway"), respectfully submits the following Memorandum of Law in opposition to the motion of Plaintiff, Eric C. Martin ("Plaintiff"), to compel disclosure and in support of Speedway's cross-motion for a protective order and/or an order of confidentiality.  The relevant facts are set forth in the accompanying Attorney Affirmation of Cory J. Schoonmaker, Esq., dated August 25, 2022 ("Schoonmaker Affirmation"), and its exhibits, as well as in the accompanying Affidavit of Beth Marvel, sworn to on August 24, 2022 ("Marvel Affidavit").  For the reasons set forth below, Plaintiff is not entitled to an order compelling disclosure, and Speedway is entitled to a protective order, either conditioning the disclosure of such materials on Plaintiff executing a reasonable confidentiality agreement or directly ordering Plaintiff to keep such documents confidential.

## LEGAL ARGUMENT

I.  **SPEEDWAY IS ENTITLED TO A CONFIDENTIALITY AND PROTECTIVE ORDER BEFORE DISCLOSING ITS TRAINING AND POLICY MATERIALS, BOTH BECAUSE THEY CONSTITUTE TRADE SECRETS AND BECAUSE DISCLOSURE POSES A SECURITY RISK.**

Plaintiff argues that Speedway cannot insist on a confidentiality agreement. *See* Attorney Affirmation of John P. Feroleto, Esq., dated June 30, 2022 ("Feroleto Affirmation"), at ¶¶ 24-33. This argument is based almost entirely on generalized statements of public policy, precedent from other states, and hearsay periodical articles with no relevance to the actual issues in this case. *See id.* Contrary to Plaintiff's arguments, the documents Speedway has withheld, as described in Speedway's counsel's letter, dated November 15, 2021 (*see* Schoonmaker Affirmation, Exhibit F) constitute confidential trade secrets and unrestricted disclosure thereof also poses security risks to Speedway's personnel and customers.

CPLR 3103(a) authorizes a court, "at any time on its own initiative, or on motion of any party," to issue a "protective order denying, limiting, conditioning or regulating the use of any disclosure device . . . to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts." This power authorizes a court to impose confidentiality restrictions on disclosed documents. *Finch, Pruyn & Co. Inc. v Niagara Paper Co., Inc.*, 228 AD2d 834, 837 (3d Dept 1996).

Importantly, confidentiality orders are not limited to trade secrets. To the contrary, courts have imposed confidentiality restrictions on the public dissemination of disclosed documents based solely on the ground that disclosure posed a security risk. *See Blum v New York Stock Exch., Inc.*, 263 AD2d 522 (2d Dept 1999). In *Blum*, the plaintiff sought documents about security and evacuation routes of New York Stock Exchange, Inc., a private entity. *Id.* at 523. The Second Department held that the Supreme Court had improperly exercised its discretion in refusing to

order the plaintiff to execute a confidentiality agreement, because the documentation sought could jeopardize the safety of the entity's employees if it was publicly disclosed. *Id.*

Here, the situation is similar to *Blum*. The thrust of Plaintiff's case is that Speedway's employee allegedly called the police when they should not have done so. *See* Schoonmaker Affirmation, Exhibit A, at ¶¶ 63-69. The documents Plaintiff seeks from Speedway directly relate to how Speedway trains its employees to respond to actual or supposed criminal activity, including when and under what circumstances they should call the police, and how Speedway handles stolen lottery tickets. *See* Feroleto Affirmation, Exhibit 1, at pp. 33-34 (at ¶ 7); *see* Feroleto Affirmation, Exhibit F. It is very easy to see how this information could pose a security risk if disseminated publicly. It is not a secret that convenience stores in general, and this Speedway location in particular, are targets of criminal activity, particularly with regard to lottery tickets. Indeed, this entire incident was precipitated by a burglary that resulted in the theft of lottery tickets the day before the incident that culminated in Plaintiff's arrest. *See* Feroleto Affirmation, Exhibit 1, p. 7 (Police Report, Supplement # 4). If the public were to discover when and under what circumstances Speedway employees are trained to call the police, there is a clear and substantial risk that individuals who come into possession of this information would be emboldened to commit crimes that would endanger Speedway's employees and customers.

Beth Marvel, a Lead Area Leader for 7-Eleven, Inc. and Speedway LLC, avers that there are very significant security concerns with permitting public dissemination of the information contained within those documents. *Id.* at ¶¶ 8-9. For example, the policies sought by Plaintiff discuss the use of alarms and panic buttons, when to call the authorities, and how to react (or not react) to criminal activities. *Id.* at ¶ 9. Allowing dissemination of this information to the public would likely place Speedway employees and customers in harm's way. This is a sufficient ground

3

to order a plaintiff not to disseminate certain documents disclosed in civil litigation. *See generally Blum*, 263 AD2d at 523.

Alternatively, confidentiality is appropriate in this case because the documents sought constitute trade secrets. Trade secrets under New York law are not limited to formulae and designs, but also include any "compilation of information . . . used in one's business, . . . which gives [one] an opportunity to obtain an advantage over competitors who do not know or use it." *Mann ex rel. Akst v Cooper Tire Co.*, 33 AD3d 24, 31 (1st Dept 2006). In order to establish that something is a trade secret, a party only needs to show that the documents contain information "not known by those outside the business, [and that the documents] were kept under lock and key, were the product of substantial effort and expense, and could not easily be acquired or duplicated." *Conley & Son Excavating Co., Ltd. v Delta Alliance, LLC*, 120 AD3d 1604, 1605 (4th Dept 2014). "The initial showing required to support an assertion that trade secrets would be revealed through discovery is minimal." *Jackson v Dow Chem. Co. Inc.*, 214 AD2d 827, 828 (3d Dept 1995). An affidavit from an employee or officer with personal knowledge is sufficient to meet this minimal burden. *Id.*; *see also Terwilliger v Max Co., Ltd.*, 64 AD3d 1232 (4th Dept 2009).

Once that burden is met, the party seeking disclosure must establish that the documents are "indispensable" to their case and are otherwise unavailable. *Id.* If the party seeking disclosure meets this burden, then they are entitled to disclosure, but that disclosure is still conditioned on a confidentiality agreement. *See Conley & Son Excavating Co., Ltd.* at 1605. In other words, once the documents are established to contain trade secrets, there is no outcome in which they are subject to disclosure without a confidentiality agreement or order in place.

The Affidavit of Beth Marvel, submitted herewith, is sufficient to meet Speedway's burden. She avers that Speedway's Operations Manual and Lottery Operations Manual are

4

INDEX NO. 808523/2021
RECEIVED NYSCEF: 08/25/2022

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 112 of 256

proprietary documents that have taken many years to develop, at the expense of significant worker hours and the wages that accompanied those hours.  Marvel Affidavit, at ¶ 4.  She further avers that these documents, which in Speedway's opinion are among the best training materials in the industry, are not shared with the public, and Speedway's competitors could not duplicate them without a similarly significant time and expense.  *Id.* at ¶¶ 4-6.  Although Speedway employees are trained using these materials, the employees do not retain copies of the materials, and all employees agree when they are hired to keep that information confidential.  *Id.* at ¶ 7.

Consequently, Plaintiff's argument that the information contained in these documents is disseminated to Speedway's own employees is irrelevant.  As discussed above, Speedway must establish that the documents contain information "not known by those *outside the business*." *Conley & Son Excavating Co., Ltd.*, 120 AD3d at 1605.  It is not necessary for Speedway to show that it keeps this information secret from its own employees.  Certainly, Speedway is entitled to utilize and benefit from its own trade secrets.

Although some parts of Speedway's Operations Manual policies are not kept confidential, none of those non-confidential portions are at issue in this case.  *See* Marvel Affidavit, at ¶ 5.  Speedway considers the portions of the Operations Manual that Plaintiff seeks and the entire Lottery Operations Manual confidential information, and they historically have not disclosed such documents without a confidentiality agreement in place.  *Id.* at ¶ 6.  In addition, Speedway's current and future competitors in the convenience store industry would gain an unfair financial advantage against Speedway if these documents were disclosed to the public.  This is because such competitors would be able to save the significant time and expense that would have been needed to duplicate such manuals or develop their own.  *Id.* at ¶ 10.

5

These statements are sufficient to establish Speedway's minimal burden to show that the documents it has withheld are trade secrets, because they contain information not known by those outside the business, were kept under lock and key, were the product of substantial effort and expense, and could not be easily acquired or duplicated. *See generally Conley & Son Excavating Co., Ltd.*, 120 AD3d at 1605. Thus, the documents withheld by Speedway constitute trade secrets and are not subject to disclosure absent a confidentiality agreement. *See generally id.*

Contrary to Plaintiff's assertions, the courts recognize that a confidentiality order is only a "minimal burden" to a plaintiff. *Blum*, 263 AD2d at 523. Plaintiff's attorney's concerns that such an agreement could create a cause of action against him or his experts is an unreasonable fear, particularly in light of Speedway's offer to execute a side agreement not to pursue a cause of action against Plaintiff's counsel or an expert for inadvertent violation of the confidentiality order. *See* Schoonmaker Affirmation, Exhibit K.

Under the circumstances set forth above, unrestricted disclosure of these documents would present a significant risk of "unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person." *See* CPLR 3103(a). Thus, if Plaintiff can establish that these documents are essential to his case, this Court should grant Speedway a protective order either compelling Plaintiff to execute a confidentiality agreement with Speedway to obtain these documents or imposing a confidentiality order directly. *See generally Finch, Pruyn & Co. Inc.*, 228 AD2d at 837.

## II. PLAINTIFF'S REMAINING OBJECTIONS ARE IMPROPERLY RAISED BECAUSE THEY WERE NOT SUBJECT TO ANY GOOD FAITH ATTEMPTS TO AVOID MOTION PRACTICE.

Motions to compel disclosure are not intended to be casually filed as a matter of course, particularly under the current version of the Uniform Civil Rules for the Supreme Court and the

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 114 of 256

County Court. Pursuant to 22 NYCRR 202.7(a), a motion relating to disclosure requires that the moving party's attorney has conferred with counsel for the opposing party in a good faith effort to resolve "the issues raised by the motion." The motion papers must reference and describe "the time, place and nature of the consultation and the issues discussed and any resolutions, or shall indicate good cause why no such conferral with counsel for opposing parties was held." 22 NYCRR 202.7(c). Even before the enactment of the current form of these Uniform Rules, the failure of a movant to establish that they made a diligent effort to resolve a particular discovery dispute before moving to compel was a ground to deny a motion to compel. *See Amherst Synagogue v Schuele Paint Co., Inc.*, 30 AD3d 1055, 1057 (4th Dept 2006).

Plaintiff's motion papers are devoid of the recitation required by 22 NYCRR 202.7(c) or any equivalent language. The only dispute that Plaintiff has attempted to resolve before bringing this motion is the issue of whether the parties will agree to a confidentiality and protective order ("CPO") protecting Speedway's confidential documents. If Plaintiff's motion was limited to this issue, then perhaps Plaintiff's failure to comply with 22 NYCRR 202.7 would only be a technical defect and not a material one. However, Plaintiff's motion is not limited to this issue. Instead, he raises several objections to Speedway's responses to Plaintiff's Request for Documents and Discovery that he has never attempted to resolve before.

First, he references Speedway's response to Demand No. 2, in which Speedway asserted attorney/client and work product privileges, among other objections (although he does not actually make any arguments about this response). *See* Feroleto Affirmation, at ¶¶ 35-37. Second, Plaintiff disagrees with Speedway's assertion that it possesses no documents responsive to Demand No. 3 and speculates that Speedway must be withholding some documents responsive to that demand. *Id.* at ¶¶ 38-40. Third, Plaintiff objects to Speedway's response to Demand No. 7 on the bases that

7

Speedway has not provided any documents it allegedly received from the New York State Lottery
or lottery vendors and disagrees with Speedway's objection to that demand as seeking irrelevant
information. *Id.* at ¶¶ 41-45. Fourth, Plaintiff disagrees with Speedway's relevance objection to
Demand No. 11, which seeks documents about protests that occurred after the events alleged in
the Complaint. *Id.* at ¶¶ 46-49. Fifth, Plaintiff disagrees with Speedway's objection that Demand
No. 12 is vague, overbroad, and seeks irrelevant information. *Id.* at ¶¶ 50-51. Sixth, Plaintiff
disagrees with Speedway's assertion that all documents potentially responsive to Demand No. 10
are documents prepared solely in anticipation of litigation. *Id.* at ¶¶ 52-54.

Plaintiff's counsel has not provided any statement of his attempts to resolve these other
disagreements in good faith before bringing this motion or good cause why he failed to attempt
such a resolution, as required by 22 NYCRR 202.7(c). More importantly, except with regard to
the CPO dispute, Plaintiff's counsel has made no effort to resolve these discovery disputes prior
to bringing this motion. As such, Plaintiff has failed to meet a condition precedent to bringing this
motion in regard to these objections, and these prongs of Plaintiff's motion should be denied
without consideration. If this Court instead chooses to address these prongs of Plaintiff's motion
on the merits, Speedway offers the arguments set forth below in opposition.

### III. PLAINTIFF'S ARGUMENTS REGARDING DEMAND NO. 2 DO NOT ARTICULATE ANY GROUNDS TO COMPEL DISCLOSURE, AND IN ANY EVENT, THAT DEMAND WAS OVERLY BROAD AND UNDULY BURDENSOME.

In Plaintiff's Demand No. 2, Plaintiff sought "[a]ll documents, notations, emails, reports,
incident reports, statements, summaries, computer entries, computer stored information or data
referring or relating to Eric C. Martin from the dates July 1, 2020 through June 29, 2021, including
those between or among employees of Speedway, the New York State lottery, police agencies, or
other third parties." Feroleto Affirmation, Exhibit 1, p. 33 (at ¶ 2). In response to this demand,

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 116 of 256

Speedway made several objections, including that it was "overly broad and unduly burdensome because it is not limited to the relevant time period and because it is not limited to the issues in this case," and that it sought irrelevant information.  Feroleto Affirmation, Exhibit 2, p. 4 (at ¶ 2).  Speedway further objected "to the extent" that the demand facially sought documents protected by the attorney-client communication privilege and/or the work product doctrine.  *Id.*  Notwithstanding these objections, Speedway still disclosed some documentation and referenced other documents previously disclosed that might be considered responsive.  *Id.*

Plaintiff now includes a recitation of this demand and response under the heading "Outstanding Discovery" in his affirmation, although he inaccurately frames Speedway's response as solely an objection based on privilege.  Feroleto Affirmation, at ¶¶ 35-37.  To be clear, though, Plaintiff does not actually assert any arguments in connection with this demand and response.  *See id.*  As such, there are no arguments for Speedway to respond to in connection with Demand No. 2.

Given that Plaintiff notes only one of Speedway's objections to Demand No. 2, specifically Speedway's partial reliance on attorney-client privilege and work product protection, it seems as though Plaintiff may be arguing that Speedway improperly invoked those privileges.  However, such an argument is insufficient to establish Plaintiff's entitlement to an order compelling disclosure because Speedway also made a number of other objections to Demand No. 2 that are currently unopposed by Plaintiff.

Speedway notes that it properly objected to this demand as overly broad and unduly burdensome, because on its face, the demand had no limitation restricting it to the issues in this case, and because Plaintiff sought documents from a week before the incident described in the Complaint through one year afterward.  Feroleto Affirmation, Exhibit 2, p. 4 (at ¶ 2).  As written,

9

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 117 of 256

this demand encompasses everything in Speedway's possession relating to Plaintiff, even if it had no relation to the issues in this case, and it extended almost a year beyond any events relevant to Plaintiff's claims. *See id.*

Although CPLR 3101(a) provides that "[t]here shall be full disclosure of all matters material and necessary in the prosecution or defense of an action, regardless of the burden of proof," "[a] party seeking discovery must satisfy the threshold requirement that the request is reasonably calculated to yield information that is 'material and necessary' - i.e., relevant ...". *See Forman v Henkin*, 30 NY3d 656, 661 (2018); *see also Matter of Kapon v Koch*, 23 NY3d 32 (2014). The right to disclosure is not unlimited. *See id.*

According to the Court of Appeals, "litigants are not without protection against unnecessarily onerous application of the discovery statutes . . . competing interests must always be balanced, [and] the need for discovery must be weighed against any special burden to be borne by the opposing party." *See Forman*, 30 NY3d at 662, quoting *Kavanagh v Ogden Allied Maintenance Corp.*, 92 NY2d 952, 954 (1998). In fact, "it is well settled that a party need not respond to discovery demands that are overbroad." *See Kregg v Maldonado*, 98 AD3d 1289, 1290 (4th Dept 2012). "Where discovery demands are overbroad, 'the appropriate remedy is to vacate the entire demand rather than to prune it.'" *See id.*, quoting *Board of Mgrs. of the Park Regent Condominium v Park Regent Assoc.*, 78 AD3d 752, 753 (2d Dept 2010). In light of the breadth and generality of Plaintiff's demand, Speedway was not required to respond to it at all. *See id.*

If Plaintiff's objection is indeed with Speedway's assertion of privilege, Plaintiff's lack of an articulated basis for this argument makes the nature of Plaintiff's objection with Speedway's response unclear. There is no reasonable dispute that the demand itself explicitly sought a category of documents that would necessarily contain indisputably privileged documents, such as all

communications with both in-house and outside counsel, and their attorney work product. The demand on its face sought all post-incident communications between Speedway employees and any third parties. Without any qualifying language limiting this demand to non-privileged documents, it was entirely reasonable and proper that Speedway would object "to the extent" that the demand directly sought such privileged materials. Plaintiff has made no argument that he did not seek these clearly privileged categories of document, and as such, he has asserted no basis to compel disclosure around this partial invocation of privilege.

Incidentally, should Plaintiff contend in reply that he is entitled to a privilege log listing each of the communications between Speedway and its in-house and outside attorneys, such an argument would be erroneous. No privilege log is required where "the party withholding the document states that divulgence of such information would cause disclosure of the allegedly privileged information." *See* CPLR 3122(b). Speedway made such a declaration in its response to Plaintiff's Second Request for Documents and Discovery. *See* Schoonmaker Affirmation, Exhibit M, p. 5.

For these reasons, Plaintiff's motion in this regard should be denied.[1]

### IV. PLAINTIFF IS NOT ENTITLED TO AN ORDER COMPELLING PRODUCTION OF DOCUMENTS THAT DO NOT EXIST.

Two of the grounds for Plaintiff's motion involve improper demands for documents that *do not exist*. Specifically, Plaintiff first objects to Speedway's response to his demand seeking "[d]ocuments indicating the hierarchical structure of Speedway, including memoranda, schematics or flow charts for Western New York, job descriptions for Speedway personnel in Western New York, in effect during July, 2020." *See* Feroleto Affirmation, at ¶¶ 38-40 (discussing Demand No.

---

[1] Ultimately, should this Court reach this issue despite the absence of any prior effort by Plaintiff to resolve it, and should this Court disagree with Speedway's position herein, the proper remedy is not to order disclosure, but is instead merely to order the *in camera* production of the documents. *See Stephen v State*, 117 AD3d 820, 821 (2d Dept 2014).

11

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 119 of 256

3). Plaintiff similarly objects to Speedway's alleged failure to provide "information from the New

York State lottery or lottery vendor" in connection with his demand for "instructions for employees

to follow with respect to lottery tickets, lottery machines, the use of lottery machines codes and

lottery machines" and "policies and procedures as to when to refer individuals to the New York

State Lottery if there is a question regarding a lottery ticket." Feroleto Affirmation, at ¶¶ 41-45

(discussing a portion of Demand No. 7).

For both of these demands, however, Plaintiff has already been informed that no such

documents exist. Speedway has no existing documents of the nature sought by Plaintiff in his

Demand No. 3. Feroleto Affirmation, Exhibit 2, p. 4 (at ¶ 3). Furthermore, all of the instructions,

policies, and procedures that Speedway has in its possession regarding the topics demanded by

Plaintiff are Speedway-created documents. Schoonmaker Affirmation, Exhibit I, p. 1.

It is well-settled that "[a]lthough CPLR 3101(a) is to be interpreted liberally in favor of

disclosure ..., a party may not be compelled to produce information that does not exist or that he

or she does not control or possess, nor may a party be compelled to create new documents."

*Hawley v Hasgo Power Equip. Sales, Inc.*, 269 AD2d 804, 804 (4th Dept 2000). The right to

document disclosure is limited to documents that are "preexisting and tangible." *Orzech v Smith*,

12 AD3d 1150, 1151 (4th Dept 2004), citing *Durham Med. Search, Inc. v Physicians Intl. Search,*

*Inc.*, 122 AD2d 529, 529 (4th Dept 1986).

Since the items sought by Plaintiff do not exist and/or are not in Speedway's possession,

that should be the end of the inquiry and Plaintiff's motion in this respect should be denied.

With regard to the documents described in Plaintiff's Demand No. 3 in particular, Plaintiff

expresses skepticism that Speedway was telling the truth when it represented, through counsel,

that such documents do not exist. Feroleto Affirmation, at ¶ 40. Plaintiff's baseless skepticism is

not a basis to compel disclosure.  Moreover, even if the *information* sought is known to employees of Speedway, that does not give Plaintiff a ground to compel Speedway to compile the information into documents.  *See generally Hawley*, 269 AD2d at 804.

With regard to documents allegedly created by the New York State Lottery and/or lottery vendors that Plaintiff seeks in Demand No. 7, Speedway is not in possession of any such documents, and thus, cannot be compelled to produce what it does not possess.  *Sagiv v Gamache*, 26 AD3d 368, 369 (2d Dept 2006).  If such documents even exist, they would be properly obtained through Plaintiff's use of a subpoena on the nonparty entity who actually does possess them.  *See generally Seddon v Postigo*, 195 AD3d 1588, 1589 (4th Dept 2021).

## V.    PLAINTIFF'S DEMAND FOR PROTEST-RELATED MATERIALS IS ENTIRELY IRRELEVANT TO THE ISSUES IN THIS CASE.

Plaintiff also seeks "documents, videos, pictures, and depictions of protests in the vicinity of Speedway, 535 Kenmore Avenue, or within 200 feet of Speedway for the period July 7, 2020 through August 30, 2020."  *See* Feroleto Affirmation, Exhibit 1, p. 35 (at ¶ 11).  Speedway objected to this demand on the bases that it was overly broad, unduly burdensome, seeking irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence.  Feroleto Affirmation, Exhibit 2, p. 8 (at ¶ 11).  Plaintiff now argues that this Court should compel Speedway to disclose such materials without articulating how those materials are at all relevant to Plaintiff's claims or damages.

Setting aside the fact that this demand is overly broad (discussed in greater detail below), upon information and belief, the evidence that Plaintiff is seeking via this demand is evidence related to protests that occurred supporting him after his arrest.  Those protests, however, have nothing to do with the issues or damages in this case.  The legal standard of relevance is simple - "'evidence is relevant when it logically renders the existence of a material fact more likely or

probable than it would be without the evidence.'"  *Matter of Rockland County Dept. of Social Servs.  v Brian McM.*, 193 AD2d 121, 124 (2d Dept 1993), quoting Richardson, Evidence § 4, at 3 (Prince 10th ed).

Plaintiff's Complaint alleges negligence and intentional conduct on the part of Defendants that culminated in his arrest on July 9, 2020 and subsequent confinement.  *See* Schoonmaker Affirmation, Exhibit A.  He also alleges some negligence "subsequent to" his arrest, apparently referring to the period of time between his arrest and release, where he alleges that Speedway allegedly "allowed" false charges to be maintained by the authorities.  *See id.* at ¶¶ 72-74.  He has made no allegations related to any protests that occurred, has not alleged that they increased his damages in any way, and has not asserted any facts from which such a connection could be inferred.  *See generally* Schoonmaker Affirmation, Exhibit A.  There is no logical connection between post-arrest protests  and any facts material to this lawsuit.  After-the-fact protests could not have caused the Defendants to be more or less culpable, and they could not have increased or decreased Plaintiff's damages.

Plaintiff attempts to assert the relevance of these protests to this litigation in a single paragraph.  He argues,

> From the time Speedway failed to direct Mr. Martin to the New York State Lottery and following the arrest of Eric C. Martin, Speedway's actions and lack of actions are relevant to the harms and continued harms to Mr. Martin, and to Speedways [*sic.*] actions relating to constitutional claims. The discovery is relevant and also may lead to relevant information.

Feroleto Affirmation, ¶ 49.  Notably, Plaintiff does not even refer to the protests in this argument, nor does he explain how the protests are relevant.  He simply provides a conclusory and vague statement that "Speedway's actions and lack of actions" are relevant.  He then fails to articulate how the protests are in any way relevant to Speedway's actions and lack of actions.  He does not

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 122 of 256

identify any material fact that these protests would render more or less likely. In short, he has failed to show that any protest-related materials are relevant or would lead to relevant evidence. *See generally Matter of Rockland County Dept. of Social Servs.*, 193 AD2d at 124. It should go without saying that, just because members of the public attended a protest, that fact does not actually make Plaintiff's claims more likely to be true. This demand appears to be nothing more than an improper "fishing expedition."

In addition to the relevance objection, this demand is also overly broad on its face, and the proper remedy for such breadth is that Speedway need not offer any response to it. *See generally Kregg*, 98 AD3d at 1289. This demand is overly broad because it is not limited to protests relating to Plaintiff's arrest or the other events underlying this case. Instead, this demand is so broad that any protest that could be seen on Speedway's security cameras for almost two months in the summer of 2020 would fall within its terms. The demand is also not limited to images and videos. Thus, any email or other reference to any protest on any topic that passed by the store during these months would be encompassed by this demand. Because this demand is overly broad in scope, Plaintiff's motion in this regard should be denied. *See generally id.*

## VI. PLAINTIFF'S DEMAND FOR WORK SCHEDULES AND WORKER IDENTITY INFORMATION WAS IMPROPER.

Plaintiff also challenges Speedway's response to Demand No. 12, which sought "[d]ocuments indicating the work schedule and identity of employees working at the Speedway location 535, Kenmore Avenue, Tonawanda, NY for the period June 20, 2020 through July 11, 2020." Feroleto Affirmation, Exhibit 1, p. 35 (at ¶ 12). Speedway responded by identifying the name and last known address of the Speedway employees who were on-duty on July 9, 2020, the date of Plaintiff's arrest. Feroleto Affirmation, Exhibit 2, p. 9 (at ¶ 12). Speedway otherwise objected on the bases that the demand was vague, overly broad, unduly burdensome, that it sought

15

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 123 of 256

irrelevant information, and that it was not proportional to the needs of the case. *Id.* Specifically, Speedway's objection was based on the fact that the demand was not limited to dates relevant to this lawsuit, and thus, it sought information about employees who were not even on duty at the time of the events described in the Complaint. *Id.* Now, Plaintiff argues for the first time that Speedway's response is inadequate, based solely on the conclusory assertion that "[w]ork schedule information is routinely provided in negligence matters involving retail establishments." Feroleto Affirmation, at ¶ 51. Such a generality has no bearing on whether the demands *in this case* were proper.

As discussed above, a party need not respond at all to a demand that is overly broad. *See Kregg*, 98 AD3d at 1290. The proper remedy is not to compel disclosure, but to vacate the demand without prejudice to serve a more narrowly-tailored demand seeking only relevant information. *See Battease v State*, 129 AD3d 1579, 1580 (4th Dept 2015).

The events that are described in Plaintiff's Complaint involving Speedway occurred on July 8th and 9th of 2020. *See* Schoonmaker Affirmation, Exhibit A, at ¶¶ 9-10. Plaintiff has demanded all documents that indicate either the work schedule *or the identity* of those employees who worked at that location for a period of three weeks surrounding those dates. There is no reason, articulated by Plaintiff or otherwise, that he should be entitled to the identifying information and work schedule of all Speedway employees at that location for any days other than the dates which he alleges in his Complaint. Moreover, although he now paints his request as merely for work schedules (*see* Feroleto Affirmation, at ¶ 51), his demand is broader than that. He has also demanded any documents indicating the identity of those employees. That would arguably include internal emails, security camera footage for a period of three weeks, employee files, pay stubs or other financial information, and any number of other types of miscellaneous

16

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 124 of 256

documents, revealing personal and identifying information for employees who are not at all connected to this case.  Those employees, in particular, should not have to have their private information revealed simply because they work for Speedway.  If all Plaintiff actually seeks is a work schedule for those dates that are actually relevant to this litigation, then his demand should have so stated.  Plaintiff's motion should be denied in this regard, without prejudice to him serving more narrowly tailored, appropriate demands for relevant information.  *See generally Battease*, 129 AD3d at 1580.

### VII.  PLAINTIFF'S ARGUMENT THAT INVESTIGATIVE DOCUMENTS REGARDING HIS ARREST ARE MIXED PURPOSE REPORTS IS WITHOUT MERIT.

Plaintiff further demanded "[a]ll items to or from employees of Speedway, or third parties, including emails, statements, renditions, reports, memoranda, reports to risk management, claims individuals, employees of Speedway with respect to Eric Martin regarding the incident involving Eric Martin for the period July 1, 2020, through June 29, 2021." Feroleto Affirmation, Exhibit 1, p. 34 (at ¶ 10).  In response, Speedway objected on several grounds, including that the demand was overly broad and unduly burdensome (because it is not limited to the relevant time period and because it is not limited to the issues in this case), that it sought irrelevant information, and that any responsive documentation that may exist was prepared in anticipation of litigation.  Feroleto Affirmation, Exhibit 2, p. 8 (at ¶ 10).  Now, Plaintiff for the first time argues that whatever documents Speedway is withholding must be mixed purpose documents, based only upon Plaintiff's counsel's speculation.  Feroleto Affirmation, at ¶ 54.

Materials that were prepared in anticipation of litigation "may be obtained only upon a showing that the party seeking discovery has 'substantial need' for the materials and is unable to obtain the information through other means without 'undue hardship.'" *See Peralta v New York*

*City Hous. Auth.*, 169 AD3d 1071, 1074 (2d Dept 2019), quoting CPLR 3101(d)(2).  The party opposing disclosure must first establish that the documents requested were prepared solely in anticipation of litigation, at which time the burden shifts to the party seeking disclosure to establish the elements of substantial need and undue hardship.  *See Color Dynamics, Inc. v Kemper Sys. Am., Inc.*, 186 AD3d 1024, 1025 (4th Dept 2020).

Here, the investigation Speedway performed into Plaintiff's incident was entirely performed with the anticipated goal of defending against an immediately expected litigation. Contrary to Plaintiff's argument, it is irrelevant whether Speedway might prepare reports and documents in the regular course of business for *other* incidents.  The events at issue here were immediately anticipated to result in litigation.  The events alleged in the Complaint involved a police response during the summer of 2020, in which the United States was experiencing a national spike in protests about police conduct.  Under the particular circumstances of this case, therefore, Speedway had the immediate (and correct) impression that litigation would be forthcoming, and immediately adopted a litigation footing with respect to Plaintiff's arrest.  Marvel Affidavit, at ¶ 12.  According to Beth Marvel, all investigations and documents pertaining to the events described in Plaintiff's Complaint were specially prepared in anticipation of litigation.  *Id.* at ¶ 12.

The "mixed purpose" case that Plaintiff relies upon, *Hawley v Travelers Indem. Co.*, 90 AD2d 684 (4th Dept 1982), is easily distinguishable.  That case involved the report of a fire expert hired by a fire insurance company.  *Id.* at 684.  The Court held that the report was not prepared solely in anticipation of litigation because it was created before the insurance company determined that it would disclaim coverage.  *Id.*  That case stands solely for the proposition that an insurance company's initial coverage investigation is not performed in anticipation of litigation because it might not disclaim coverage.  *See id.*  This is the same general fact pattern in Plaintiff's other cited

18

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 126 of 256

cases, *Landmark Ins. Co. v Beau Rivage Rest., Inc.*, 121 AD2d 98, 99 (2d Dept 1986); *New England Seafood of Amherst, Inc. v Travelers Cos.*, 84 AD2d 676, 677 (4th Dept 1981).

This case, however, is not about an insurance coverage dispute, and at no point in time was Speedway in the same position as an insurance company trying to decide whether to disclaim coverage. The cases Plaintiff relies upon are thus distinguishable. From the outset, the circumstances of the incident, as later described in the Complaint, caused Speedway to reasonably anticipate that it would be sued, and all actions taken in connection with this event were performed with an eye toward that litigation. Plaintiff's argument is based entirely upon the speculation that Speedway certainly must investigate crimes and prepare crime and injury reports in the regular course of business. It does not follow from that speculation, however, that Speedway did anything in the regular course of business in connection with this case in particular. There is certainly nothing unusual or improper about a party who prepares incident reports and performs investigations solely in anticipation of litigation. *See Matos v Akram & Jamal Meat Corp.*, 99 AD2d 527, 527 (2d Dept 1984).[2]

In any event, Plaintiff's arguments with regard to Demand No. 10 are academic because they focus on only one of Speedway's objections to this Demand and Plaintiff has failed to challenge Speedway's other objections, including that the demand is overly broad and unduly burdensome. That uncontested objection is a basis for Speedway not to respond to this Demand at all, because Speedway "need not respond to discovery demands that are overbroad" and "the appropriate remedy is to vacate the entire demand rather than to prune it." *Kregg*, 98 AD3d at 1290 (quotation marks omitted). Even if Plaintiff received a favorable ruling on whether the documents

---

[2] Furthermore, as with the discussion of other privileged documents, if this Court reaches this issue and disagrees with Speedway's position, the proper remedy is not to order disclosure but instead to conduct an *in camera* review. *See John Mezzalingua Assoc., LLC v Travelers Indem. Co.*, 178 AD3d 1413, 1416 (4th Dept 2019).

19

responsive to Demand No. 10 were prepared in anticipation of litigation, Speedway's other objections would be left unopposed.

## **CONCLUSION**

For the reasons set forth above, Plaintiff's motion to compel should be denied. With regard to those documents that have been withheld pending a confidentiality agreement and protective order, Speedway has established its entitlement to an order of confidentiality on the bases of security and trade secrets. With regard to all other objections raised in Plaintiff's motion, Plaintiff has not made an attempt to resolve those other disputes with Speedway prior to bringing this motion, and as such, those prongs of his motion should be denied. Should this Court reach those other objections, however, each of the arguments Plaintiff raises with respect to them is without merit and Plaintiff's motion should still be denied. Further, for the reasons set forth above, Speedway's cross-motion should be granted.

Dated: August 25, 2022

Cory J. Schoonmaker, Esq.
**SUGARMAN LAW FIRM, LLP**
*Attorneys for Speedway LLC*
Office and Post Office Address
211 West Jefferson Street
Syracuse, New York 13202
Telephone: 315-362-8941
cschoonmaker@sugarmanlaw.com

TO:

John Feroleto, Esq.
**FEROLETO LAW**
*Attorneys for Plaintiff*
Office and Post Office Address
438 Main Street, Suite 910
Buffalo, New York 14202
Telephone: 716-854-0700
John.feroleto@feroletolaw.com

20

CC:

Paul G. Joyce, Esq., and
Marc S. Smith, Esq.
**COLUCCI & GALLAHER, P.C.**
*Attorneys for the Town of Tonawanda Police Department*
*o/b/o The Town of Tonawanda*
Office and Post Office Address
2000 Liberty Building
424 Main Street
Buffalo, New York 14202
Telephone:  (716) 853-4080
pjoyce@colucci-gallaher.com

21

## WORD COUNT CERTIFICATION

### Pursuant to 22 NYCRR § 202.8-b

I hereby certify that the total number of words in the Memorandum of Law, inclusive of point headings and footnotes, and exclusive of the caption, the table of contents, table of authorities, and signature block, is 6173 words, which complies with the word count limit.

Dated:  August 25, 2022

_____
Cory J. Schoonmaker, Esq.
**SUGARMAN LAW FIRM, LLP**
*Attorneys for Speedway LLC*
Office and Post Office Address
211 West Jefferson Street
Syracuse, New York  13202
Telephone: 315-362-8941
cschoonmaker@sugarmanlaw.com

TO:
    John Feroleto, Esq.
    **FEROLETO LAW**
    *Attorneys for Plaintiff*
    Office and Post Office Address
    438 Main Street, Suite 910
    Buffalo, New York  14202
    Telephone: 716-854-0700
    John.feroleto@feroletolaw.com

CC:
    Paul G. Joyce, Esq., and
    Marc S. Smith, Esq.
    **COLUCCI & GALLAHER, P.C.**
    *Attorneys for the Town of Tonawanda Police Department*
    *o/b/o The Town of Tonawanda*
    Office and Post Office Address
    2000 Liberty Building
    424 Main Street
    Buffalo, New York 14202
    Telephone:  (716) 853-4080
    pjoyce@colucci-gallaher.com

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 130 of 256

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

---

ERIC C. MARTIN,

Plaintiff,

vs.

TOWN OF TONAWANDA POLICE DEPARTMENT
o/b/o TOWN OF TONAWANDA, SPEEDWAY, LLC,
MARATHON PETROLEUM CORPORATION and
JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8 as employees of
TOWN OF TONAWANDA POLICE DEPARTMENT,

Defendants.

**ATTORNEY AFFIRMATION**
**INDEX NO. 808523/2021**
**JUDGE: NUGENT-PANEPINTO**

---

Cory J. Schoonmaker, Esq., pursuant to CPLR 2106, hereby affirms under penalty of perjury:

1.      I am an attorney duly licensed to practice law in New York and an associate with Sugarman Law Firm, LLP, counsel for Defendant, Speedway LLC ("Speedway"). As such, I am fully familiar with the facts and proceedings set forth herein.

2.      I submit this Affirmation in opposition to the motion of Plaintiff, Eric C. Martin ("Plaintiff"), to compel disclosure, and in support of Speedway's cross-motion seeking that Plaintiff either be ordered to execute a confidentiality agreement with Speedway LLC or Plaintiff be ordered to keep confidential those documents thus far withheld on the basis of a confidentiality objection.

3.      Plaintiff seeks, among other things, an order compelling Speedway to disclose certain documents that Speedway asserts are trade secrets and/or documents that present security concerns, without a confidentiality agreement/order. Although the confidentiality agreement issue

1

has been a topic of negotiation, Plaintiff also asserts a number of other objections to Speedway's disclosure that he has not previously attempted to resolve in good faith. Plaintiff's motion concerns items numbered 2, 3, 7, 10, 11, and 12 of its Request for Documents and Discovery. *See* Affirmation of John P. Feroleto, Esq., dated June 30, 2022 ("Feroleto Affirmation"), at ¶¶ 35-54.

4.      For the reasons set forth below, Plaintiff's motion should be denied and Speedway's cross-motion should be granted.

## **BACKGROUND**

5.      Plaintiff commenced this action on June 29, 2021, alleging claims arising out of his arrest on July 9, 2020. According to Plaintiff, Speedway played a role in that arrest when its employee allegedly called the police after Plaintiff attempted to redeem a lottery ticket that the Speedway employee believed had been stolen during a robbery that occurred on July 8, 2020. A true and correct copy of Plaintiff's Summons and Complaint is attached as **Exhibit A**.

### Plaintiff's Initial Demands and Responses/Objections

6.      On or about September 7, 2021, Plaintiff served discovery demands upon Speedway. *See* Feroleto Affirmation, Exhibit 1.

7.      Speedway provided responses to those demands on or about November 3, 2021, pursuant to extensions granted by Plaintiff's counsel. *See* Feroleto Affirmation, Exhibit 2.

8.      Demand No. 2 from Plaintiff's Request for Documents and Discovery sought "[a]ll documents, notations, emails, reports, incident reports, statements, summaries, computer entries, computer stored information or data referring to or relating to Eric C. Martin from the dates of July 1, 2020 through June 29, 2021, including those between or among employees of Speedway, the

New York State lottery, police agencies, or other third parties." *See* Feroleto Affirmation, Exhibit 1, at p. 33 (at ¶ 2).[1]

9. In response to Demand No. 2, Speedway produced non-privileged documents while simultaneously objecting to this demand on several grounds, including that it was "overly broad and unduly burdensome because it is not limited to the relevant time period and because it is not limited to the issues in this case" and that it was not reasonably calculated to lead to the discovery of admissible evidence. Speedway further objected "to the extent" that the demand sought disclosure of items protected by attorney-client privilege and/or the work product doctrine. *See* Feroleto Affirmation, Exhibit 2, at p. 4 (at ¶ 2).

10. Demand No. 3 from Plaintiff's Request for Documents and Discovery sought "[d]ocuments indicating the hierarchical structure of Speedway, including memoranda, schematics or flow charts for Western New York, job descriptions for Speedway personnel in Western New York, in effect during July, 2020." *See* Feroleto Affirmation, Exhibit 1, p. 33 (at ¶ 3).

11. Speedway stated several objections in response, but more importantly, indicated that it did not possess any materials responsive to the demand. *See* Feroleto Affirmation, Exhibit 2, p. 4 (at ¶ 3).

12. Demand No. 7 from Plaintiff's Request for Documents and Discovery sought:

Documents referring or relating [to], the sale of lottery tickets, promotion of lottery items, instruction to employees as to the sale of lottery items, training materials, audio, video materials, instructions for employees to follow with respect to lottery tickets, lottery machines, the use of lottery machines codes and lottery machines, error codes, how to cancel lottery tickets, how to report lottery ticket stolen, procedures in place in determining if lottery tickets were stolen, misplaced, miscounted, recorded, procedures, policies on how to contact your chief lottery, when to contact the lottery, when or how to contact management with respect to questions or issues with lottery tickets, procedures for calling or communicating with police agencies, circumstances in which calling or contacting police agencies is authorized, documents referring or relating to procedures to follow when

---

[1] Several of Plaintiff's exhibits in support of his motion are not consecutively paginated documents. Thus, this page notation refers to the overall page number within the PDF version of the document retrieved from NYSCEF.

3

there is a question of redemption of a lottery ticket at the store, policies procedures as to when to refer individuals to the New York State Lottery if there is a question regarding a lottery ticket, in effect during the period June 7, 2019 through July 31, 2020.

Feroleto Affirmation, Exhibit 1, pp. 33-34 (at ¶ 7).

13. In response, Speedway objected to the demand as overly broad and unduly burdensome "because it is not limited to the relevant time period and because it is not limited to the issues in this case," and further objected that it sought irrelevant information and was not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding those objections, Speedway stated that it would produce the documents in its possession that were relevant and responsive subject to a to-be-negotiated confidentiality and protective order ("CPO"). *See* Feroleto Affirmation, Exhibit 2, pp. 6-7 (at ¶ 7).

14. Demand No. 10 from Plaintiff's Request for Documents and Discovery sought "[a]ll items to or from employees of Speedway, or third parties, including emails, statements, renditions, reports, memoranda, reports to risk management, claims individuals, employees of Speedway with respect to Eric Martin regarding the incident involving Eric Martin for the period July 1, 2020 through June 29, 2021." *See* Feroleto Affirmation, Exhibit 1, p. 34 (at ¶ 10).

15. In response, Speedway objected because the demand was "overly broad and unduly burdensome because it is not limited to the relevant time period and because it is not limited to the issues in this case" and because it sought irrelevant information and was not reasonably calculated to lead to the discovery of admissible evidence. Speedway further objected "to the extent" that the demand sought privileged information. Speedway indicated that it was self-insured and any possibly responsive documents would be internal documents prepared in anticipation of litigation. *See* Feroleto Affirmation, Exhibit 2, p. 8 (at ¶ 10).

16. Demand No. 11 from Plaintiff's Request for Documents and Discovery sought "[a]ll documents, videos, pictures, and depictions of protests" in the vicinity of the Speedway

4

where Plaintiff was arrested, from July 7, 2020, through August 30, 2020. *See* Feroleto Affirmation, Exhibit 1, p. 35 (at ¶ 11).

17. In response, Speedway objected that this demand was overly broad and unduly burdensome because it was not limited to the issues in this case, and that the demand sought irrelevant information and was not reasonably calculated to lead to the discovery of admissible evidence. *See* Feroleto Affirmation, Exhibit 2, p. 8 (at ¶ 11).

18. Demand No. 12 from Plaintiff's Request for Documents and Discovery sought "[d]ocuments indicating the work schedule and identity of employees working at the Speedway location 535, Kenmore Avenue, Tonawanda, NY for the period June 20, 2020 through July 11, 2020". *See* Feroleto Affirmation, Exhibit 1, p. 35 (at ¶ 12).

19. Speedway objected to Demand No. 12 on the bases that it was vague, overly broad, not relevant to any claim or defense or proportional to the needs of the case, not limited to the relevant time period, and sought information about employees not on duty at the time of the alleged incident. Speedway further objected on the basis that any *ex parte* communications with Speedway employees would be restricted. Nevertheless, Speedway identified all employees on-duty on July 9, 2020 at the Speedway location at issue. *See* Feroleto Affirmation, Exhibit 2, p. 9 (at ¶ 12).

<u>Post-Response Discussions</u>

20. Before serving the responses described above, Speedway's outside counsel at Sugarman Law Firm, LLP, Brittany L. Hannah, Esq., had reached out to the other attorneys and placed them on notice of the possibility that Speedway would require a CPO to produce some documents. A true and correct copy of that email is attached as **Exhibit B**. At the time, Plaintiff's counsel appeared to have no objection to such an arrangement. A true and correct copy of Attorney Feroleto's response to Exhibit B is attached as **Exhibit C**.

5

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 135 of 256

21.     Once Speedway approved its discovery responses, Attorney Hannah advised all parties that a proposed CPO would be forthcoming.  A true and correct copy of the email to that effect is attached as **Exhibit D**.  After serving the responses discussed above, Attorney Hannah circulated a proposed CPO.  A true and correct copy of that email with its attachment, the proposed CPO, is attached as **Exhibit E**.

22.     After the CPO was circulated, Attorney Feroleto began voicing an objection to the CPO.  Following a telephone conversation on November 4, 2021, Attorney Hannah served correspondence stating Speedway's position with regard to the CPO and listing the documents that Speedway was withholding pending a So Ordered CPO.  A true and correct copy of that letter is attached as **Exhibit F**.

23.      Negotiations continued with Attorney Feroleto refusing to execute any CPO and Speedway declining to reverse its position that a CPO is required.

24.     On May 20, 2022, in response to an indication from Plaintiff's counsel that they would file a motion to compel over the CPO issue, Attorney Hannah emailed Attorney Feroleto and requested that he discuss any other issues with Speedway's disclosure in good faith before bringing the motion.  A true and correct copy of that email is attached as **Exhibit G**.

25.     On May 23, 2022, Attorney Feroleto replied via email and objected to the confidentiality of training materials because he believed that information was "widely disseminated among thousands of individuals."  He also expressed concern that the proposed CPO could create a cause of action where there is none. Finally, he objected to confidentiality for any manuals received from the lottery vendor.  In response, Attorney Hannah advised that these objections would be considered.  A true and correct copy of that email exchange is attached as **Exhibit H**.

26.     On May 27, 2022, Attorney Hannah advised that the lottery materials at issue were not provided by outside vendors or by any State agency, but were developed by Speedway and were confidential, specifically noting that there were very obvious security reasons why the manner in which Speedway instructed its employees to handle lottery tickets should not be disseminated to the public.  Contrary to Plaintiff's counsel's prior assertion, Attorney Hannah further advised that Speedway employees were never provided with their own copies of these materials.  A true and correct copy of this email is attached as **Exhibit I**.

27.     In response, Plaintiff's counsel continued to object to executing a CPO, and expressed concern that the CPO could create a new cause of action against him personally, as well as against any expert he retained, despite the fact that he claimed to have no intention to disseminate the materials.  A true and correct copy of this email is attached as **Exhibit J**.

28.     In order to assuage Plaintiff's counsel's concerns regarding a cause of action against him and to move forward, Speedway offered to incorporate additional language into the CPO to protect against that possibility or alternatively, enter into a side agreement in which Speedway agreed not to bring a cause of action for liability against Plaintiff's counsel or any expert he may retain for any inadvertent violation of the confidentiality order.  A true and correct copy of the email to this effect is attached as **Exhibit K**.

29.     Unfortunately, this arrangement was not agreeable to Plaintiff's counsel either, and thus, this motion has ensued.

30.     The CPO issue is the only issue that has been the subject of good faith discussions between the parties prior to the filing of this motion.

31.     On or about March 15, 2022, Plaintiff served a Second Request for Documents and Discovery, a true and correct copy of which is attached as **Exhibit L**.

32.     Plaintiff's Second Request contained two demands that were substantially similar to demands contained in Plaintiff's First Request for Documents and Discovery.  *See* Exhibit L, pp. 1-2.

33.     As part of Plaintiff's Second Request, Plaintiff included an unnumbered final paragraph that sought disclosure of "all items referring to or relating to, the investigation of the sale, redemption, and arrest of Eric Martin."  *Id.*, p. 2.

34.     Speedway served its Response on or about May 6, 2022, a true and correct copy of which is attached as **Exhibit M**.

35.     In response to Plaintiff's un-numbered (fifth) paragraph, Speedway asserted that said documents were privileged and that a privilege log would itself cause disclosure of privileged information, especially because litigation was immediately anticipated.  *Id.*, p. 5.

36.     There has been no "meet and confer" conversation between the parties on the subject of the Second Request for Documents and Discovery or Speedway's objections to it.

## **LEGAL ARGUMENT**

37.     The primary issue before this Court is whether Plaintiff is entitled to the documents Speedway has withheld (as described in Exhibit F), without a confidentiality agreement or a confidentiality order.

38.     There are two alternative reasons why confidentiality is necessary for these documents to be disclosed.

39.     First, a confidentiality agreement or order is necessary to disclose these documents because the withheld documents represent security-related policies and procedures, and unfettered disclosure and dissemination of these documents could very easily cause an increase in crime that endangers Speedway's employees and customers.

8

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 138 of 256

40.     As set forth in the accompanying affidavit of Beth Marvel, Lead Area Leader for 7-Eleven, Inc./Speedway, the documents include information about the use of alarms and panic buttons, when to call the authorities, and which criminal activities to react or not react to. *See* Affidavit of Beth Marvel, sworn to on August 24, 2022 ("Marvel Affidavit"), at ¶ 8.

41.     It is not difficult to understand how revealing these details to the public could cause individuals to target Speedway in an attempt to use these policies to maximize their gain or minimize their detection or consequences. Such criminal attempts are highly likely to place Speedway's employees and customers in harm's way.

42.     In fact, as recently as the beginning of August 2022, unknown individuals were continuing to re-post video footage of Plaintiff's arrest and making disparaging comments about Speedway and its employees in connection with this incident. Evidence of such social media postings can be provided to the Court *in camera* upon request. Clearly, this incident is still a matter of public ire.

43.     Such security concerns are a sufficient basis for a court to order confidentiality. *See* Memorandum of Law.

44.     Second, a confidentiality agreement or order is necessary because the withheld documents contain or constitute trade secrets. Trade secrets are not limited to product designs or formulae, but include any compilation of information that is used in one's business and which gives an advantage over competitors. *See* Memorandum of Law.

45.     Speedway's burden to establish that the documents at issue contain trade secrets is minimal, and requires only an affidavit of a Speedway employee stating that the documents contain information not known to those outside of the specific business, are kept under lock and key, are

the product of substantial effort and expense, and cannot be easily acquired or duplicated.  *See* Memorandum of Law.

46.     Once that minimal burden is met, the only way the documents can be discoverable is if there is a confidentiality agreement or order, and even that outcome only occurs when the party seeking disclosure can establish that the documents are "indispensable" and the information they contain is not otherwise available.  *See* Memorandum of Law.

47.     As explained by Beth Marvel, the withheld documents constitute proprietary documents developed after significant worker hours (and the related wages), that those documents are among the best in the industry, and that Speedway's competitors could not duplicate them without significant time and expense equivalent to the efforts used by Speedway to create them. Furthermore, the specific documents Plaintiff seeks are not disclosed by Speedway to outsiders without a confidentiality agreement or order in place.  *See* Marvel Affidavit, at ¶¶ 4-6.

48.     If Speedway's current or future competitors were to obtain these documents as a result of unfettered disclosure and dissemination (which unfettered disclosure and dissemination appears likely in this matter given the conduct to date), they would experience substantial cost savings because they would not need to develop such policies on their own.  This would represent an unfair competitive advantage against Speedway.  *See* Marvel Affidavit, at ¶ 10.

49.     Plaintiff's argument that these documents are seen by Speedway employees is irrelevant and does defeat their designation as trade secrets.  The focus on trade secrets is whether these documents are shared with people *outside* the business.  Even though the materials are used to train employees, those employees are not given copies of the documents, and all employees agree to comply with Speedway's Code of Business Conduct, which requires them not to disclose the information contained in those documents with individuals outside of the company.  *See*

10

Marvel Affidavit, at ¶ 7. A copy of the code of Business Conduct can be provided to the Court for *in camera* review if desired.

50.     Beth Marvel's affidavit is sufficient to meet Speedway's burden to establish that the documents contain trade secrets. *See* Memorandum of Law.

51.     Although Plaintiff's counsel has expressed a fear that executing a confidentiality agreement will somehow expose him and his expert consultants to liability even if they do not violate the order, such a concern is without basis and is irrelevant to the legal principles set forth above. Moreover, the courts have recognized that a confidentiality agreement or order is a "minimal burden." *See* Memorandum of Law.

52.     Thus, if Plaintiff can establish that the withheld documents are essential in opposition to this cross-motion, then Speedway is entitled to an order either compelling Plaintiff to execute a confidentiality agreement with Speedway to obtain these documents or imposing a confidentiality order directly. If he cannot meet this burden, then he is not entitled to disclosure of these documents at all. *See* Memorandum of Law.

53.     Plaintiff's remaining arguments in support of his motion, each of which involve the demands made in his "Request for Documents and Discovery," should be rejected without consideration. Plaintiff was required to undertake a diligent effort to at least attempt to meet and confer with Speedway's attorneys on each of his objections to Speedway's discovery responses, pursuant to the Uniform Rules of the Supreme Court. *See* Memorandum of Law.

54.     He then was required to explain in his moving papers "the time, place and nature of the consultation and the issues discussed and any resolutions, or shall indicate good cause why no such conferral with counsel for opposing parties was held." 22 NYCRR 202.7(c).

55.     Plaintiff has not included any language pursuant to 22 NYCRR 202.7(c) in his motion papers.  More importantly, he has not even attempted to resolve any of his current objections with Speedway other than the CPO issue.  Thus, any of his other objections are not procedurally appropriate because he has not met the condition precedent to raising such arguments in this motion.  *See* Memorandum of Law.

56.     If this Court does choose to address Plaintiff's arguments on the merits, however, they should still be denied, for the reasons set forth below.

57.     Plaintiff first references Speedway's response to Demand No. 2, in which Speedway asserted attorney/client and work product privileges, among other objections.  *See* Feroleto Affirmation, at ¶¶ 35-37.  He does not actually articulate any arguments in discussing Demand No. 2, although his inclusion of Speedway's privilege objections in the area of his affirmation dedicated to "Outstanding Discovery" does seem to indicate he has some kind of objection to Speedway's invocation of privilege.  This section of the Feroleto Affirmation should be disregarded, primarily because it does not actually assert any arguments or request any relief.

58.     Assuming that Plaintiff was attempting to argue that Speedway's invocation of privilege in response to Demand No. 2 was somehow improper, that argument would not entitle Plaintiff to any relief because Plaintiff has not objected to Speedway's other objections to Demand No. 2.  *See* Feroleto Affirmation, at ¶¶ 35-37.

59.     Speedway asserted several objections, including that the demand was overly broad and unduly burdensome, which is an objection that entitles Speedway not to respond to the demand at all.  *See* Memorandum of Law.

12

Case 1:23-cv-00419-WMS-MJR Document 1-25 Filed 05/11/23 Page 142 of 256

60.     Since those other objections are unopposed, it does not matter if Speedway's invocation of privilege was erroneous, due to the presence of the other objections with which Plaintiff apparently takes no issue. *See* Memorandum of Law.

61.     In any event, Speedway's invocation of privilege was entirely appropriate given the context of the demand. Plaintiff's overly broad demand facially sought categories of documents that would contain Speedway's communications with its own attorneys. Speedway then narrowly objected to the demand "to the extent" that it facially sought clearly privileged documents. Plaintiff has failed to make any arguments that such an invocation was in any way inappropriate. As such, that prong of Plaintiff's motion should be denied.

62.     Should Plaintiff argue in response to this cross-motion that he is entitled to a privilege log, Speedway notes that no privilege log was required because Speedway has asserted that "divulgence of such information would cause disclosure of the allegedly privileged information." *See* CPLR 3122(b); *see also* Exhibit M, ¶ 5.

63.     Plaintiff next disagrees with Speedway's assertion that it possesses no documents responsive to Demand No. 3 and speculates that Speedway must be withholding some documents responsive to that demand. Feroleto Affirmation, at ¶¶ 38-40. He also objects to Speedway's response to Demand No. 7 on the bases that Speedway has not provided any documents it allegedly received from the New York State Lottery or lottery vendor and disagrees with Speedway's objection to that demand as seeking irrelevant information. Feroleto Affirmation, at ¶¶ 41-45.

64.     These two arguments by Plaintiff are without merit for the same reason: they seek documents that either do not exist or are not within Speedway's possession. It is well-settled that a party is only entitled to discovery of documents that already exist and are within the possession and control of the party from whom discovery is sought. Plaintiff similarly cannot use a discovery

demand to compel Speedway to create documents simply because the underlying information might be known.  *See* Memorandum of Law.

65.     These arguments are based only upon Plaintiff's subjective belief that Speedway was not telling the truth when it represented that such documents did not exist.  However, baseless distrust is not a basis for a motion to compel disclosure.  If there is any remedy at all in this situation, it would arise if, and only if, Speedway attempted to utilize documents that it had previously indicated did not exist, at which point Plaintiff could then move to preclude the use of those documents as a discovery sanction.

66.     Plaintiff also disagrees with Speedway's relevance objection to Demand No. 11, which seeks documents about protests that occurred in the vicinity of the Speedway location where Plaintiff was arrested in connection with the events alleged in the Complaint.  Feroleto Affirmation, at ¶¶ 46-49.

67.     In making this argument, however, Plaintiff has failed to explain how any protests are relevant to his claims in this lawsuit.  Instead, he makes only a vague argument that "Speedway's actions and lack of actions are relevant," without explaining how the protests (which occurred after the date in question) relate to Speedway's alleged actions or lack of actions.  *See* Feroleto Affirmation, ¶ 49.

68.     Speedway's objections to this demand were entirely proper.  Evidence is relevant only if it renders a material fact more or less likely to be true.  *See* Memorandum of Law.

69.     Assuming that Plaintiff was seeking documents pertaining to particular protests about his treatment that occurred in the vicinity of that Speedway location after his arrest, those protests are nevertheless entirely unrelated to what did or did not happen in connection with this case.  All that a protest indicates is that the protestors *believed* something happened a certain way

14

Case 1:23-cv-00419-WMS-MJR Document 1-25 Filed 05/11/23 Page 144 of 256

and had certain feelings about it. Such belief does not make anything more or less likely to be true.

70.     Alternatively, this demand was also overly broad because it was not limited to protests about Plaintiff. The demand, as written, would include documents and information about any protest, not just protests related to the events in this lawsuit. Since an overly broad demand should be vacated rather than pruned, Speedway had no obligation to offer any response to this demand in its current form. *See* Memorandum of Law.

71.     Plaintiff also disagrees with Speedway's objection that Demand No. 12 is vague, overbroad, and seeks irrelevant information. Feroleto Affirmation, at ¶¶ 50-51. This demand sought "[d]ocuments indicating the work schedule and identity of employees working at the Speedway location 535, Kenmore Avenue, Tonawanda, NY for the period June 20, 2020 through July 11, 2020." Feroleto Affirmation, Exhibit 1, p. 35 (at ¶ 12).

72.     This demand was overly broad and thus, Speedway had no obligation to respond to it. *See* Memorandum of Law.

73.     More precisely, this lawsuit involves allegations of interactions between Plaintiff and Speedway on July 8th and 9th of 2020. *See* Exhibit A, at ¶¶ 9-10. Plaintiff's demand, however, seeks both the work schedule and any documents indicating the identity of any employees who happened to work at that Speedway location for approximately three weeks. Feroleto Affirmation, Exhibit 1, p. 35 (at ¶ 12). Thus, about 90% of the dates for which Plaintiff seeks discovery in this demand are dates entirely irrelevant to the events in this lawsuit. The employees who worked on those irrelevant dates do not deserve to have their private information divulged to Plaintiff simply because they work for Speedway. The proper remedy for such an overly broad demand would be

15

to vacate it without prejudice to Plaintiff serving a more appropriate demand. *See* Memorandum of Law.

74.     Finally, Plaintiff disagrees with Speedway's assertion that all documents potentially responsive to Demand No. 10 are documents prepared solely in anticipation of litigation. *See* Feroleto Affirmation, at ¶¶ 52-54. Plaintiff's argument is based upon Plaintiff's speculation that Speedway performs investigations of crimes and accidents on other occasions, so Plaintiff concludes Speedway must have also done so on this occasion. *See id.*

75.     It is irrelevant what Speedway does for other incidents. The only relevant consideration here is whether Speedway's actions in this case in particular were taken in anticipation of litigation, and they were. As such, Plaintiff is only entitled to disclosure if he can establish substantial need and undue hardship, which he has not even attempted to do in support of his motion. *See* Memorandum of Law.

76.     To the contrary, the events alleged in Plaintiff's Complaint occurred during the summer of 2020, a period during which there were national protests about police interactions with arrested suspects. Consequently, as averred by Beth Marvel, Speedway had the immediate impression that litigation would be forthcoming in connection with Plaintiff's arrest, and Speedway immediately took all actions in connection with *this* arrest with potential litigation in mind. *See* Marvel Affidavit, at ¶¶ 11-12.

77.     Plaintiff's cases discussing "mixed purpose" reports are distinguishable, as those cases are related to the entirely different context of an insurance company's pre-disclaimer investigation of a coverage issue. At no time was Speedway in a position analogous to an insurer trying to decide whether to disclaim coverage for a loss. *See* Memorandum of Law.

78.     Alternatively, Plaintiff has failed to address or oppose Speedway's other objections to this Demand, including objections that the demand was overly broad and unduly burdensome. Thus, even if Plaintiff were to receive a favorable ruling on Speedway's "anticipation of litigation" objection to Demand No. 10, disclosure would still not be required because he has not opposed Speedway's other objections.

WHEREFORE, Speedway respectfully requests an Order (1) denying Plaintiff's motion to compel disclosure; and (2) granting Speedway's cross-motion seeking that Plaintiff either be ordered to execute a confidentiality agreement with Speedway LLC or Plaintiff be ordered to keep confidential those documents thus far withheld on the basis of a confidentiality objection, as well as any further relief that as to this Court should seem just and proper.

Dated: August 25, 2022

_____
Cory J. Schoonmaker, Esq.

17

## WORD COUNT CERTIFICATION

### Pursuant to 22 NYCRR § 202.8-b

I hereby certify that the total number of words in the Attorney Affirmation, inclusive of

point headings and footnotes, and exclusive of the caption, the table of contents, table of

authorities, and signature block, is 4785 words, which complies with the word count limit.

Dated: August 25, 2022

_____
Cory J. Schoonmaker, Esq.
**SUGARMAN LAW FIRM, LLP**
*Attorneys for Speedway LLC*
Office and Post Office Address
211 West Jefferson Street
Syracuse, New York  13202
Telephone: 315-362-8941
cschoonmaker@sugarmanlaw.com

TO:

John Feroleto, Esq.
**FEROLETO LAW**
*Attorneys for Eric C. Martin*
Office and Post Office Address
438 Main Street, Suite 910
Buffalo, New York  14202
Telephone: 716-854-0700
John.feroleto@feroletolaw.com

CC:

Paul G. Joyce, Esq., and
Marc S. Smith, Esq.
**COLUCCI & GALLAHER, P.C.**
*Attorneys for the Town of Tonawanda Police Department
o/b/o The Town of Tonawanda*
Office and Post Office Address
2000 Liberty Building
424 Main Street
Buffalo, New York 14202
Telephone:  (716) 853-4080
pjoyce@colucci-gallaher.com

18

# EXHIBIT A

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 149 of 256

**STATE OF NEW YORK**
**SUPREME COURT: COUNTY OF ERIE** _____

**ERIC C. MARTIN**                                    <u>**SUMMONS**</u>
191 Brinton Street                                     **Served with Complaint**
Buffalo, New York 14216
                                                       Index No.: _____

                                    Plaintiff

   v.

**TOWN OF TONAWANDA**
**POLICE DEPARTMENT**
o/b/o the **TOWN OF TONAWANDA**
1835 Sheridan Drive
Tonawanda, New York 14223
2919 Delaware Road
Kenmore, New York 14217

**SPEEDWAY, LLC**
535 Kenmore Avenue
Tonawanda, New York 14223

**MARATHON PETROLEUM CORPORATION**
4400 Easton Commons Way, Suite 125
Columbus, Ohio 43219

**JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8**
as employees of Defendant,
**TOWN OF TONAWANDA**
**POLICE DEPARTMENT**

                                    Defendants _____

**TO THE ABOVE-NAMED DEFENDANTS:**

     **YOU ARE HEREBY SUMMONED AND REQUIRED** to serve upon the Plaintiff's
attorney, at the address stated below, a written Answer to the attached Complaint.

     If this Summons is served upon you within the State of New York by personal service you
must respond within TWENTY (20) days after service, not counting the day of service. If this
Summons is not personally delivered to you within the State of New York you must respond within
THIRTY (30) days after service is completed, as provided by law.

      If you do not respond to the attached Complaint within the applicable time limitation stated above, a judgment will be entered against you, by default, for the relief demanded in the Complaint, without further notice to you.

      This action is brought in the County of Erie because of Plaintiff's residence and the location of the incident.

DATED:      Buffalo, New York
              June 29, 2021

**JOHN FEROLETO, ESQ.**
**FEROLETO LAW**
*Attorneys for Plaintiff*
438 Main Street, Suite 910
Buffalo, New York 14202
Telephone: (716) 854-0700

**STATE OF NEW YORK**
**SUPREME COURT: COUNTY OF ERIE**

**ERIC C. MARTIN**
191 Brinton Street
Buffalo, New York 14216                              <u>**COMPLAINT**</u>

                          Plaintiff                  Index No. _____

    v.


**TOWN OF TONAWANDA**
**POLICE DEPARTMENT**
o/b/o the **TOWN OF TONAWANDA**
1835 Sheridan Drive
Tonawanda, New York 14223
2919 Delaware Road
Kenmore, New York 14217

**SPEEDWAY, LLC**
535 Kenmore Avenue
Tonawanda, New York 14223

**MARATHON PETROLEUM CORPORATION**
4400 Easton Commons Way, Suite 125
Columbus, Ohio 43219

**JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8**
as employees of Defendant,
**TOWN OF TONAWANDA**
**POLICE DEPARTMENT**

                          Defendants

         The Plaintiff above named, through his attorneys, for his cause of action against the

Defendants herein, alleges upon information and/or knowledge and/or belief:

1.      That at all relevant times, the Plaintiff, ERIC C. MARTIN was and still is a resident of Erie County, New York and at all times relevant to the allegations of this complaint was a citizen of the United States.

2.      That at all relevant times, Defendant, TOWN of TONAWANDA POLICE DEPARTMENT, hereinafter referred to as "TTPD," was and is a Department or unit of the TOWN OF TONAWANDA, a municipal corporation as defined in Section 119-n of the General Municipal Law, organized and existing pursuant to the laws of the State of New York, with its police headquarters located at 1835 Sheridan Drive, Tonawanda, New York 14223.

3.      That at all relevant times, Defendant, SPEEDWAY, LLC, was and is a foreign limited liability company organized and existing under the laws of the State of New York authorized to do business at 535 Kenmore Avenue, Tonawanda, New York 14223 with its principal place of business located at 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43219.

4.      That at all relevant times, Defendant, MARATHON PETROLEUM CORPORATION, was and is a foreign corporation with its principal place of business located at 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43219.

5.      That at all times hereinafter mentioned, on or about July 9, 2020, Defendants, SPEEDWAY, LLC and Defendant, MARATHON PETROLEUM CORPORATION, hereinafter together referred to as "SPEEDWAY," were authorized to and conducted business in Erie County and the State of New York and operated a

retail outlet, sold gasoline, and New York State lottery items at 535 Kenmore Avenue, Tonawanda, New York 14223.

6.      That upon information and belief, Defendants, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, JOHN DOE #5, JOHN DOE #6, JOHN DOE #7, and JOHN DOE #8 are residents of the State of New York.

7.      That upon information and belief, the Defendants, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, JOHN DOE #5, JOHN DOE #6, and JOHN DOE #8 were employees or agents acting within the scope of their employment for Defendant, TTPD.

8.      That Plaintiff, ERIC C. MARTIN, was a customer of the SPEEDWAY retail store/gas station at 535 Kenmore Avenue, Tonawanda, New York 14223, and on various occasions purchased lottery tickets at the SPEEDWAY store.

9.      That on July 8, 2020, Plaintiff, ERIC C. MARTIN, visited the SPEEDWAY store, made a cash withdrawal at the SPEEDWAY store, and purchased a New York State lottery ticket.

10.     That on July 9, 2020 at approximately 1:30 p.m., Plaintiff, ERIC C. MARTIN, left his home at 191 Brinton Street, Buffalo, New York 14216 and went to the SPEEDWAY store at 535 Kenmore Avenue, Tonawanda, New York 14223 to redeem his winning $50.00 New York State lottery ticket he purchased the day before, July 8, 2020 at the same SPEEDWAY store for $30.00.

11.     That on July 9, 2020, while Plaintiff, ERIC C. MARTIN, was redeeming

his winning New York State lottery ticket at the SPEEDWAY store, employees,

agents, or servants of Defendant, SPEEDWAY, with negligence and wanton

recklessness and without due care or procedure called the TTPD, claiming that

Plaintiff, MR. MARTIN, was trying to cash a stolen New York State lottery ticket.

12.     That on July 9, 2020, while the Plaintiff was at the SPEEDWAY store,

one or more of Defendant police personnel JOHN DOE #1, JOHN DOE #2, JOHN

DOE #3, JOHN DOE #4 and JOHN DOE #5, while acting within the course and scope

of their employment with Defendant, TTPD, if they chose, could have determined that

Plaintiff, MR. MARTIN, was lawfully at the SPEEDWAY store to properly redeem

his winning New York State lottery ticket.

13.     That Plaintiff, MR. MARTIN, was an African-American citizen of the

United States of America who owns a home approximately 3/10 of a mile from the

SPEEDWAY store located at 535 Kenmore Avenue, Tonawanda, New York 14223.

That on July 9, 2020, Plaintiff ERIC C. MARTIN went to the SPEEDWAY store with

his wife and infant daughter.

14.     That on July 9, 2020, at approximately 1:30 p.m., one or more of

Defendant, TTPD, personnel willfully, intentionally, and with malice exaggerated and

misstated facts to make Plaintiff, MR. MARTIN, appear to be a criminal, although he

was not.

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 155 of 256

15.     That both SPEEDWAY and the TTPD engaged in racial profiling in an objectively unreasonable manner in light of facts and circumstances readily available to them.

16.     That the acts or omissions of one or more of the Defendant, TTPD, personnel were with wanton recklessness and intent, all under the color of law, and within the capacity of their positions with the Defendants, TTPD and TOWN of TONAWANDA.

17.     That employees of Defendant, TTPD, could have readily ascertained that Plaintiff, ERIC C. MARTIN was a lawful patron at the SPEEDWAY store on July 9, 2020.

18.     That the personnel of Defendant, TTPD, could have readily issued an appearance ticket at the SPEEDWAY store at 535 Kenmore Avenue, Tonawanda, New York 14223 to Plaintiff, MR. MARTIN, for the claim against him that the lottery ticket he purchased was purportedly stolen.

19.     That the personnel of the Defendant, TTPD, could have readily met with Plaintiff, MR. MARTIN, at the TTPD police headquarters to obtain information or discuss questions of MR. MARTIN's $50 dollar lottery ticket whereas instead, personnel of the Defendant, TTPD, chose to, under the color of law, demean him and humiliate him, and perform a "perp walk" in front of SPEEDWAY employees, members of the public and in front of Plaintiff's wife, ASHLEY MARTIN, and their infant child.

20.     That at no time did one or more personnel of the Defendant, TTPD, attempt to comply with objectively reasonable rules or guidelines in issuing a desk appearance ticket and acted with wanton recklessness and intent, and that one or more of Defendants, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3,  JOHN DOE #4, and JOHN DOE #5, refused to investigate or inquire, refused to deescalate and used unnecessary force in restraining Plaintiff, deprived him of his liberty, caused him bodily harm, and caused him to be arrested and be detained at Defendant, TTPD, headquarters, at 1835 Sheridan Drive, Tonawanda, New York 14223.

21.     That while detained at Defendant, TTPD, police headquarters, in violation of fundamental rights afforded by the United States Constitution and the New York Constitution, policies and procedures, ERIC C. MARTIN was taken to a jail cell and strip searched by Defendant, TTPD, personnel, JOHN DOE #6, JOHN DOE #7, and JOHN DOE #8, before Mr. MARTIN was given his freedom.

22.     That the imprisonment and strip search resulted in humiliation, degradation, and emotional distress to the Plaintiff and were caused solely and wholly by reason of the intentional act or omissions, wanton recklessness, and disregard of the fundamental rights afforded to all Americans, including MR. MARTIN.

23.     Heretofore, and on or about September 30, 2020, a Notice of Claim was served on behalf of the Plaintiff upon the Defendant, TTPD, and TOWN OF TONAWANDA, New York, which Notice of Claim sets forth the name and post office address of MR. MARTIN, claimant, the name and post office address of his attorneys,

the nature of the claim the time when, the place where, and the manner in which the claim arose, together with the items of damages and injuries then known to exist, and the said Notice of Claim was served upon the Defendant, TTPD, and TOWN OF TONAWANDA, New York, within ninety (90) days of the date upon which the claim arose, and that Plaintiff, MR. MARTIN, came forth on December 7, 2020 and provided testimony to the attorneys representing the Defendant, TTPD, and TOWN OF TONAWANDA. At least thirty (30) days have elapsed since the service of the Notice of Claim, as aforesaid, and the Defendant, TTPD, and TOWN OF TONAWANDA, New York, has failed and neglected to adjust or pay said claim.

24. That by reason of the above, Plaintiff, ERIC C. MARTIN, has been injured and compelled to seek medical attention in an effort to alleviate his injuries and has been damaged in a sum that exceeds jurisdictional limits of all lower courts that would otherwise have jurisdiction.

## AS AND FOR A FIRST CAUSE OF ACTION

25. That the Plaintiff, MR. MARTIN, hereby restates and realleges paragraphs numbered 1-24 with the same force and effect as if they were separately restated, renumbered, and realleged at length herein.

26. That on or about July 9, 2020 at approximately 1:30 p.m., Defendants, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5, were operating within the scope of their employment for the Defendant, TTPD.

27.     That beginning on or about July 9, 2020 at approximately 1:30 p.m. in the County of Erie and State of New York, one or more of said Defendants, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5, intentionally and with wanton recklessness and negligence handcuffed and imprisoned Plaintiff to harm him, degrade him, humiliate him, and held him against his will under full force of arms until he was released on his own recognizance.

28.     That this imprisonment of Plaintiff, ERIC C. MARTIN, caused by personnel of the Defendant, TTPD, was without authority of the law and without just cause.

29.     That Plaintiff, ERIC C. MARTIN, was wholly innocent of any crime and was willing to meet Defendant's, TTPD, personnel at Defendant's, TTPD, headquarters, but was forced to submit to the arrest, imprisonment, and confinement by one or more of the Defendants, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5, entirely against his will.

30.     That one or more of Defendants, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5, while working within the scope of their employment for Defendant, TTPD, intended to confine plaintiff; plaintiff was conscious of the confinement; plaintiff did not consent to the confinement; and the confinement was not otherwise privileged.

31.     That by reason of the above-described false imprisonment and detention, Plaintiff was subjected to great indignity, humiliation, pain, and great distress of mind and body and Plaintiff has been otherwise damaged.

32.     That by reason of the above, Plaintiff has been damaged in a sum exceeding the jurisdictional limits of the lower courts.

## AS AND FOR A SECOND CAUSE OF ACTION

33.     That the Plaintiff, ERIC C. MARTIN, hereby restates and realleges paragraphs numbered 1-32 with the same force and effect as if they were separately restated, renumbered, and realleged at length herein.

34.     That on July 9, 2020 at approximately 1:30 p.m. at 535 Kenmore Avenue, Tonawanda, New York 14223, Plaintiff was arrested by Defendants, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5, while working within the scope of their employment for Defendant, TTPD.

35.     That the arrest was caused by the actions or omissions of one or more of Defendants, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5 while working within the scope of their positions for Defendant, TTPD, with wanton recklessness and intent and in violation of rules, objective reasonableness, protocols, and refusal to consider basic information, which would have readily shown that Plaintiff, ERIC C. MARTIN, while at the SPEEDWAY store with his wife and infant daughter, was lawfully redeeming the New York State lottery ticket he purchased the day before and that Defendants did not have just cause to arrest MR. MARTIN.

36.     That ERIC C. MARTIN was wholly innocent of any crime and at all times acted reasonably. However, Defendants, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5, did not, and chose to disregard, accelerate, and exacerbate the situation so as to arrest, imprison, and confine Plaintiff entirely against his will.

37.     That the Defendants intended to arrest and confine ERIC C. MARTIN; he was conscious of the arrest and confinement; did not consent to the arrest; and the arrest and his subsequent confinement was not otherwise privileged.

38.     That by reason of the above-described false arrest and detention, ERIC C. MARTIN, was subjected to great indignity, humiliation, pain, and great distress of mind and body and has otherwise been damaged.

39.     That by reason of the above, Plaintiff, ERIC C. MARTIN, has been damaged in a sum exceeding the jurisdictional limits of the lower courts.

**AS AND FOR A THIRD CAUSE OF ACTION**

40.     That the Plaintiff, ERIC C. MARTIN, hereby restates and realleges paragraphs numbered 1-39 with the same force and effect as if they were separately restated, renumbered, and realleged at length herein.

41.     That upon information and belief, at all times hereinafter mentioned, the Defendants, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, and JOHN DOE #5, were personnel of Defendant, TTPD, and were acting within the scope of their employment.

42.     That on or about July 9, 2020 at Speedway located at 535 Kenmore Avenue, Tonawanda, New York 14223, the Defendants, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5, caused injury to the Plaintiff, MR. MARTIN, as hereinafter stated.

43.     That Plaintiff ERIC C. MARTIN, had a constitutional right guaranteed by the Fourth Amendment to be free from unreasonable and excessive use of force and that the unnecessary force placed upon Plaintiff, MR. MARTIN, who had committed no crime and was lawfully at the SPEEDWAY store was without legal justification and that Defendants' method of arresting and searching Plaintiff, while handcuffed, was wanton, reckless, and exposed him to serious physical injury including his left shoulder, body, head, the areas around the said body parts, and the natural sequence and sequalae of said injuries.

44.     That the use of force, search, and injury to Plaintiff by one or more of Defendants, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5 was excessive, unreasonable, and unjustifiable under the circumstance and subjected Plaintiff to a deprivation of rights and privileges secured to him by the Constitution and law of the United States, including the Fourth and Fourteenth Amendments of the United States Constitution within the meaning of 42 U.S.C. §1983.

45.     That as a direct and proximate result of the unconstitutional acts of Defendants herein, the Plaintiff suffered physical injury, mental anguish, humiliation, and emotional distress.

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 162 of 256

## AS AND FOR A FOURTH CAUSE OF ACTION

46.     That the Plaintiff, MR. MARTIN, hereby restates and realleges paragraphs numbered 1-45 with the same force and effect as if they were separately restated, renumbered, and realleged at length herein.

47.     That this action arises under the United States Constitution, particularly under the provisions of the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and under Federal law, including Title 42 of the United States Code, §1983.

48.     That each and all of the acts of the Defendants, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, JOHN DOE #4, and JOHN DOE #5, were done by the Defendants, each of them, not as individuals, but under the color and pretense of the statutes, ordinances, regulations, customs, and usages of the Defendant, TTPD, and under the authority of their office as police officers for such town.

49.     That Plaintiff, MR. MARTIN, had a constitutional right to due process of law and to be free of punishment prior to adjudication of guilt as guaranteed by the Fourteenth Amendment.

50.     That the acts and conduct described above further deprived Plaintiff of his rights:

      (a)     To be free from false arrest and imprisonment by police officers acting under the color of law;

(b)     To be free from malicious prosecution by police officers acting
        under the color of law;

(c)     To be free from abuse of process by police officers acting under
        the color of law;

(d)     To the free exercise of due process without wrongful restraint by
        police officers acting under the color of law;

(e)     To be free of unreasonable seizure by police officers acting under
        the color of law;

(f)     To not have excessive force used against him by police officers
        acting under the color of law; and

(g)     To not have summary punishment imposed upon him by police
        officers acting under the color of law;

all in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States

Constitution and 42 U.S.C. §1983.

51.     That the acts, conduct, and behavior of these Defendants were performed

knowingly, intentionally, and maliciously.

52.     That as a direct and proximate result of the unconstitutional acts of

Defendants herein, the Plaintiff suffered physical injury, humiliation, mental anguish,

and emotional distress.

## AS AND FOR A FIFTH CAUSE OF ACTION

53.     That the Plaintiff ERIC C. MARTIN, hereby restates and realleges

paragraphs numbered 1-52 with the same force as if they were separately restated,

renumbered, and realleged herein.

54.     That Plaintiff was arrested, held in custody, and restrained of his liberty.

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 164 of 256

55.     That this arrest and detention was unlawful, wrongful, malicious.

56.     That by acting in the manner described above, Defendants, JOHN DOE #6, JOHN DOE #7, and JOHN DOE #8, acted willfully, maliciously, and without right, reason, or probable cause.

57.     That Defendants, JOHN DOE #6, JOHN DOE #7, and JOHN DOE #8, while acting within the scope of their employment for Defendant, TTPD, wrongfully caused Plaintiff to be detained, confined and strip searched at Defendant's police headquarters, 1835 Sheridan Drive, Tonawanda, New York 14223.

58.     That the imprisonment and strip search of Plaintiff, MR. MARTIN, and the ensuing restraint of his liberty was wrong, improper, and caused him great humiliation, in violation of fundamental rights afforded to all Americans under the United Stated and New York Constitutions, as a result of which he has been damaged.

59.     That prior to the arrest, Plaintiff, ERIC C. MARTIN, had enjoyed a good reputation in the City of Buffalo, Western New York Community and the State of New York.

60.     That the charges against Plaintiff were wholly dismissed.

61.     That as a direct and proximate result of the unconstitutional acts of Defendants, JOHN DOE #6, JOHN DOE #7 and JOHN DOE #8, Plaintiff, ERIC C. MARTIN, suffered physical injury, mental anguish, humiliation, and emotional distress.

62.     That by reason of the foregoing detention and violative strip search, Plaintiff's health was impaired; Plaintiff suffered great mental distress, indignity, and humiliation; and his reputation and character were injured.

## AS AND FOR A SIXTH CAUSE OF ACTION

63.     That Plaintiff, ERIC C. MARTIN, hereby restates and realleges paragraphs numbered 1-62 with the same force and effect as if they were separately restated, renumbered, and realleged at length herein.

64.     That on or about July 9, 2020 at approximately 1:30 p.m., that SPEEDWAY personnel, acting within the scope of their employment, with gross negligence, recklessness, and wanton disregard, falsely accused MR. MARTIN of possession of stolen property.

65.     That the agents, servants or employees of said Defendant, SPEEDWAY, had a duty to and could have easily verified that Plaintiff, MR. MARTIN, had purchased the ticket the day before but instead, in a wantonly reckless, deceitful, intentional, and grossly negligent manner contacted the Defendant, TTPD, causing Plaintiff to be arrested, detained, humiliated, deprived of his rights afforded to him as a United States citizen, and that said employees, agents or servants of said Defendants did so while acting within the scope of their employment for Defendant, SPEEDWAY, and took an active role in the arrest of the Plaintiff, ERIC C. MARTIN, including giving encouragement, and/or importuning the authorities to act.

66.     That the Defendant, SPEEDWAY, is vicariously and jointly liable for the wrongful acts taken by its employees against its customers.

67.     That the employees, agents or servants of said Defendants, instigated, caused, and/or initiated the arrest of Plaintiff, ERIC C. MARTIN, which resulted in his false imprisonment, arrest, and injury where no crime had been committed.

68.     Further, that the employees, agents or servants of Defendants engaged in racial profiling and wrongfully acted, instigated, caused, and/or initiated the arrest of Plaintiff, ERIC C. MARTIN, which resulted in his false imprisonment and arrest where no crime had been committed.

69.     That as a direct and proximate result of the unconstitutional acts of Defendant, SPEEDWAY, herein, the Plaintiff suffered physical injury, mental anguish, humiliation, and emotional distress.

## AS AND FOR A SEVENTH CAUSE OF ACTION

70.     That the Plaintiff, ERIC C. MARTIN, hereby restates and realleges paragraphs numbered 1-69 with the same force and effect as if they were separately restated, renumbered, and realleged at length herein.

71.     That Defendant, SPEEDWAY, along with its employees, agents, or servants, had a duty to refrain from negligent and wantonly reckless behavior.

72.     That on or about July 9, 2020, prior to and subsequent to, Defendant, SPEEDWAY, failed to use reasonable care and was reckless, negligent, and wantonly

negligent in failing to follow reasonable procedures in confirming whether MR.

MARTIN had a valid New York State lottery ticket which he purchased the day before,

and falsely represented to the Defendant, TTPD, that ERIC C. MARTIN's, winning

lottery ticket was stolen, when it wasn't, all without requisite care and with wanton

disregard concerning its accusations against customer ERIC C. MARTIN.

73.     That said Defendant, SPEEDWAY, their employees, agents or servants

further harmed customer and Plaintiff, MR. MARTIN, by allowing the false statements

of their employees, and false charges against Plaintiff to continue through and including

July 16, 2020, without bothering to confirm whether Plaintiff, ERIC C. MARTIN,

purchased the New York State lottery ticket that SPEEDWAY represented was stolen.

Further, by allowing or causing Plaintiff, ERIC C. MARTIN, to continue to be charged

with possession of stolen property through July 16, 2020, Defendant, SPEEDWAY,

was negligent, reckless, and wantonly disregarded the rights, liberties, and dignity of its

customers, including Plaintiff, MR. MARTIN, and warrants exemplary damages.

74.     That Plaintiff, ERIC C. MARTIN's, injuries were caused in whole or in

part by the carelessness, wanton recklessness, gross negligence, and negligence of the

Defendant, SPEEDWAY.

75.     That on or about July 9, 2020, Defendant, SPEEDWAY's, ownership,

operation, maintenance, management, control, operation of its stores and training with

respect to its New York State Lottery operation and procedures demonstrated a

wantonly reckless and negligent disregard for the health, safety, and rights of its customers, including Plaintiff, ERIC C. MARTIN.

76.     That as a result of the foregoing, the Plaintiff, ERIC C. MARTIN, was caused to be humiliated and sustained serious, painful, and physical bodily injuries and was caused to seek medical care and treatment and will in the future.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

77.     That the Plaintiff, ERIC C. MARTIN, hereby restates and realleges paragraphs numbered 1-76 with the same force and effect as if they were separately restated, renumbered, and realleged at length herein.

78.     That by reason of the Defendant, SPEEDWAY, their employees, agents, or servants' intentional acts, gross negligence, and wantonly reckless behavior to Plaintiff, ERIC C. MARTIN, conscious disregard for rights of others, and to the public as alleged herein and by reason of the Defendants' wanton, malicious, and intentional conduct, the Defendants, SPEEDWAY, are liable for general, exemplary, and/or punitive damages.

79.     That by reason of the above-named Defendants' actions and omissions, the Plaintiff, MR. MARTIN, suffered certain severe, permanent, and painful injuries and certain economic damages, exemplary, and punitive damages in an amount that exceeds the jurisdictional limits of all lower courts pursuant to CPLR §3017.

WHEREFORE, the Plaintiff, ERIC C. MARTIN, does hereby demand judgment against the Defendants for each cause of action herein jointly and severally in an amount which would otherwise exceed the jurisdictional limit of all lower courts together with the costs and disbursements of this action and for such other and further relief as this Court may deem just and proper.

DATED:        Buffalo, New York
              June 29, 2021

JOHN FEROLETO, ESQ.
FEROLETO LAW
*Attorneys for Plaintiff*
438 Main Street, Suite 910
Buffalo, New York 14202
Telephone: (716) 854-0700

# EXHIBIT B

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 171 of 256

From : bhannah@sugarmanlaw.com

To : john.feroleto@feroletolaw.com; PJoyce@colucci-gallaher.com

Sent : 10/12/2021 12:39PM

Subject : Martin v. Speedway LLC - Discovery Update

Hello John and Paul,

I hope you have been well.  I wanted to let you know that I expect to serve our discovery responses on or around 10/25.  Speedway is self-insured and their in-house counsel must provide approval before service of discovery responses.  John's demands are quite voluminous and broad, and it is taking them far longer than they (and I) expected to determine and pull what they have that may be responsive, as it involves coordination amongst multiple individuals/departments.  My contact has advised that they will have everything pulled together and to me by 10/22, which will allow me to finalize the responses and the documents for production and get them to you.  We appreciate your patience.

Also, there is a possibility that we may need to enter into a confidentiality and protective order in order to produce some of what John has demanded.  I do not have a definitive answer on that yet because they do not know the extent of what may exist that has been requested, but some of the demands pertain to confidential and security topics that could need to be shielded, if the documents exists.  If that is the case, I intend to produce what I can without the CPO and then circulate a CPO and supplement the production.

Thank you again for your courtesies and patience.

Regards,
Brittany


im
ag
e0
03
 Sug

211 W. Jefferson St.  Syracuse, NY 13202    **sugarmanlaw.com**

**BRITTANY L HANNAH, ESQ.**    **Direct Dial**: (315) 362-8942    **Fax**: (315) 474-0235

E-MAIL CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

FILED: ERIE COUNTY CLERK 08/25/2022 03:44 PM INDEX NO. 808523/2021

NYSCEF DOC. NO. 71 RECEIVED NYSCEF: 08/25/2022

# EXHIBIT C

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 173 of 256

From : john.feroleto@feroletolaw.com

To : bhannah@sugarmanlaw.com

Sent : 10/12/2021 2:18PM

Subject : Re: Martin v. Speedway LLC - Discovery Update

Brittany, no problem.

Paul how are you doing in terms of discovery responses? Thanks, John

**John Feroleto**
438 Main Street, Suite 910
Buffalo, NY 14202
716-854-0700
AAJ Trucking Litigation Group, Past Chair | www.yourbuffalolawyer.com




On Tue, Oct 12, 2021 at 12:39 PM Brittany Hannah <bhannah@sugarmanlaw.com> wrote:

Hello John and Paul,


I hope you have been well.  I wanted to let you know that I expect to serve our discovery responses on or around 10/25.  Speedway is self-insured and their in-house counsel must provide approval before service of discovery responses.  John's demands are quite voluminous and broad, and it is taking them far longer than they (and I) expected to determine and pull what they have that may be responsive, as it involves coordination amongst multiple individuals/departments.  My contact has advised that they will have everything pulled together and to me by 10/22, which will allow me to finalize the responses and the documents for production and get them to you.  We appreciate your patience.


Also, there is a possibility that we may need to enter into a confidentiality and protective order in order to produce some of what John has demanded.  I do not have a definitive answer on that yet because they do not know the extent of what may exist that has been requested, but some of the demands pertain to confidential and security topics that could need to be shielded, if the documents exists.  If that is the case, I intend to produce what I can without the CPO and then circulate a CPO and supplement the production.


Thank you again for your courtesies and patience.

Regards,
Brittany



im
ag
e0
03

 Sug

211 W. Jefferson St.   Syracuse, NY 13202   **sugarmanlaw.com**

**BRITTANY L HANNAH, ESQ.**      **Direct Dial**: (315) 362-8942      **Fax**: (315) 474-0235

E-MAIL CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

FILED: ERIE COUNTY CLERK 08/25/2022 03:44 PM
INDEX NO. 808523/2021
NYSCEF DOC. NO. 72
RECEIVED NYSCEF: 08/25/2022

# EXHIBIT D

From : bhannah@sugarmanlaw.com

To : john.feroleto@feroletolaw.com; PJoyce@colucci-gallaher.com

Sent : 11/02/2021 5:29PM

Subject : RE: Martin v. Speedway LLC - Discovery Update

Hello John and Paul,

I received approval from Speedway this afternoon on the responses to your demands.  I will finalize everything tomorrow.  I will also circulate the proposed CPO in the near future (as soon as I receive approval from Speedway) so that we can get that in place and I can get the remaining confidential materials to you.

Thank you for your patience.

Regards,
Brittany

Brittany L. Hannah, Esq.
Sugarman Law Firm, LLP
Direct Dial: (315) 362-8942

---

**From:** John Feroleto <john.feroleto@feroletolaw.com>
**Sent:** Tuesday, November 2, 2021 2:50 PM
**To:** Paul G. Joyce <PJoyce@colucci-gallaher.com>; Brittany Hannah <bhannah@sugarmanlaw.com>
**Subject:** Re: Martin v. Speedway LLC - Discovery Update

Paul, thanks, we just received your responses, have a good afternoon, John
**John Feroleto**
438 Main Street, Suite 910
Buffalo, NY 14202
716-854-0700
AAJ Trucking Litigation Group, Past Chair | www.yourbuffalolawyer.com



On Tue, Nov 2, 2021 at 2:27 PM Paul G. Joyce <PJoyce@colucci-gallaher.com> wrote:

John – we received the verification today; the responses and a disc will be delivered to your office today.

Brittany – they will be mailed to your office.

Thanks,

Paul

**From:** John Feroleto <john.feroleto@feroletolaw.com>
**Sent:** Tuesday, November 2, 2021 12:00 PM
**To:** Brittany Hannah <bhannah@sugarmanlaw.com>

**Cc:** Paul G. Joyce <PJoyce@colucci-gallaher.com>; Megan Commaroto <megan.commaroto@feroletolaw.com>; Diane Rockdashil <drockdashil@sugarmanlaw.com>; Jennifer Albrecht <jalbrecht@colucci-gallaher.com>; Marc Smith <msmith@colucci-gallaher.com>
**Subject:** Re: Martin v. Speedway LLC - Discovery Update

Paul, I hadn't received a response to my last two emails inquiring as to the status of your production of outstanding discovery our Request for Documents and Discovery dated September 7, 2021, and left a voice message at your office today.

Please advise and let me know if you have any questions . Thank you,
**John Feroleto**
438 Main Street, Suite 910
Buffalo, NY 14202
716-854-0700
 AAJ Trucking Litigation Group, Past Chair | www.yourbuffalolawyer.com



On Tue, Oct 26, 2021 at 8:41 AM John Feroleto <john.feroleto@feroletolaw.com> wrote:

Brittany, okay.

Paul, what is the status of your responses?

Thank you, John
**John Feroleto**
438 Main Street, Suite 910
Buffalo, NY 14202
716-854-0700
 AAJ Trucking Litigation Group, Past Chair | www.yourbuffalolawyer.com



On Mon, Oct 25, 2021 at 5:38 PM Brittany Hannah <bhannah@sugarmanlaw.com> wrote:

Hello John and Paul,

I hope you had a great weekend!  I am waiting for Speedway's in-house counsel to approve the final version of the responses.  I will serve them as soon as I have them.  I apologize for the delay.

Regards,
Brittany

Brittany L. Hannah, Esq.
Sugarman Law Firm, LLP
Direct Dial: (315) 362-8942

**From:** John Feroleto <john.feroleto@feroletolaw.com>
**Sent:** Tuesday, October 12, 2021 2:18 PM
**To:** Brittany Hannah <bhannah@sugarmanlaw.com>
**Cc:** Paul G. Joyce <PJoyce@colucci-gallaher.com>; Megan Commaroto
<megan.commaroto@feroletolaw.com>; Diane Rockdashil <drockdashil@sugarmanlaw.com>; Jennifer
Albrecht <jalbrecht@colucci-gallaher.com>; Marc Smith <msmith@colucci-gallaher.com>; John Feroleto
<john.feroleto@feroletolaw.com>
**Subject:** Re: Martin v. Speedway LLC - Discovery Update

Brittany, no problem.

Paul how are you doing in terms of discovery responses? Thanks, John
**John Feroleto**
438 Main Street, Suite 910
Buffalo, NY 14202
716-854-0700
AAJ Trucking Litigation Group, Past Chair | www.yourbuffalolawyer.com

  

On Tue, Oct 12, 2021 at 12:39 PM Brittany Hannah <bhannah@sugarmanlaw.com> wrote:

Hello John and Paul,

I hope you have been well.  I wanted to let you know that I expect to serve our discovery responses on or
around 10/25.  Speedway is self-insured and their in-house counsel must provide approval before service of
discovery responses.  John's demands are quite voluminous and broad, and it is taking them far longer than
they (and I) expected to determine and pull what they have that may be responsive, as it involves
coordination amongst multiple individuals/departments.  My contact has advised that they will have
everything pulled together and to me by 10/22, which will allow me to finalize the responses and the
documents for production and get them to you.  We appreciate your patience.

Also, there is a possibility that we may need to enter into a confidentiality and protective order in order to
produce some of what John has demanded.  I do not have a definitive answer on that yet because they do
not know the extent of what may exist that has been requested, but some of the demands pertain to
confidential and security topics that could need to be shielded, if the documents exists.  If that is the case, I
intend to produce what I can without the CPO and then circulate a CPO and supplement the production.

Thank you again for your courtesies and patience.

Regards,
Brittany

Sug          211 W. Jefferson St.   Syracuse, NY 13202     sugarmanlaw.com

**BRITTANY L HANNAH, ESQ.**     Direct Dial: (315) 362-8942     Fax: (315) 474-0235

E-MAIL CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

**Paul G. Joyce**
PJoyce@colucci-gallaher.com

COLUCCI & GALLAHER P.C.
Advisors and Advocates
424 Main Street, Suite 2000
Buffalo, NY 14202
(716) 853-6509  Direct
(716) 854-4070  Fax
(716) 853-4080  Main
http://www.colucci-gallaher.com

**p r a c t i c e G R E E N**
Save a tree. Read, don't print, emails.

The information contained in this message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, distribution or use of this information by persons or entities other than the intended recipient is prohibited. If you receive this email in error, please contact the sender and delete the material from your computer.

FILED: ERIE COUNTY CLERK 08/25/2022 03:44 PM
NYSCEF DOC. NO. 73
INDEX NO. 808523/2021
RECEIVED NYSCEF: 08/25/2022

# EXHIBIT E

From : bhannah@sugarmanlaw.com

To : john.feroleto@feroletolaw.com; PJoyce@colucci-gallaher.com; msmith@colucci-gallaher.com

Sent : 11/03/2021 4:12PM

Subject : Martin v. Speedway LLC, et al - Proposed Confidentiality and Protective Order

Hello John, Paul, and Marc,

I have attached the proposed Confidentiality and Protective Order for your review and execution.  As you will note in the Responses that were served this afternoon, we have withheld responsive materials until a So Ordered CPO is in place due to the confidential and sensitive nature of the materials requested.  Please let me know if you have any proposed revisions to the CPO and I will take them to Speedway for consideration.  Once we have a fully executed CPO, I will file it with an RJI.  We will make prompt disclosure of the materials once the CPO is in place.

Thank you.

Regards,
Brittany

  Sug

211 W. Jefferson St.   Syracuse, NY 13202   **sugarmanlaw.com**

**BRITTANY L HANNAH, ESQ.**     **Direct Dial**: (315) 362-8942       **Fax**: (315) 474-0235

E-MAIL CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

---

ERIC C. MARTIN,

                                Plaintiff,

             vs.

TOWN OF TONAWANDA POLICE DEPARTMENT
o/b/o TOWN OF TONAWANDA, SPEEDWAY, LLC,
MARATHON PETROLEUM CORPORATION and
JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8 as employees of
TOWN OF TONAWANDA POLICE DEPARTMENT,

                              Defendants.

**CONFIDENTIALITY AND PROTECTIVE ORDER**

**INDEX NO. 808523/2021**

---

WHEREAS Plaintiff, Eric C. Martin, Defendant, Speedway LLC, and Defendant, Town of Tonawanda Police Department o/b/o Town of Tonawanda[1] are parties ("Parties") to the above-captioned action (the "Action");

WHEREAS the Parties are engaged in discovery and have requested and will produce confidential information within the scope of the Civil Practice Law and Rules;

WHEREAS one or more of the Parties could be jeopardized if non-public financial data, business strategies, operational information, and other highly sensitive confidential information or documents are disclosed publicly;

WHEREAS the scope and breadth of sensitive personal, commercial, financial, business or private information involved in this case justifies additional precautions to protect against disclosure, and discovery necessarily involves the production of certain information that the Parties

---

[1] This action has been discontinued against Defendant, Marathon Petroleum Corporation. Counsel has not appeared for Defendant, John Doe # 1, 2, 3, 4, 5, 6, 7, 8 as employees of Town of Tonawanda Police Department.

Sugarman Law Firm, LLP • 211 West Jefferson Street • Syracuse, New York 13202

believe to be confidential, sensitive, personal, commercial, financial, business, and private information;

WHEREAS good cause exists for entry of this Confidentiality and Protective Order (the "Protective Order");

WHEREAS the protection of confidential information disclosed in the course of the Action will have no adverse effect upon the general public health or safety;

WHEREAS no less restrictive means than those set forth in this Protective Order will adequately and effectively protect the interests of the Parties; and

WHEREAS the entry of this Protective Order will promote the fair and expeditious resolution of the Action;

IT IS HEREBY STIPULATED AND AGREED that this Protective Order shall govern the handling of documents, materials, disclosures, and any other information produced, given, or exchanged by and among the Parties in connection with discovery in the Action (hereinafter referred to as "Discovery Material");

1.    Any Party or any non-party subject to Paragraph 24 below may designate any Discovery Material as "Confidential" under the terms of this Protective Order if such party (the "Designating Party") in good faith believes that such Material contains non-public, confidential, proprietary or commercially sensitive information of the Designating Party that requires the protections provided in this Protective Order.

2.    The designation by any Party of any Discovery Material as Confidential shall constitute a representation that such Discovery Material has been reviewed by an attorney for the Designating Party and that there is a good faith belief that such designation is valid.

3.    Discovery Material, or information derived therefrom, shall be used solely for

purposes of the Action and shall not be used for any other purpose, including, without limitation, any business or commercial purpose, or any communications with any third-party not involved in the Action.

4.     The designation of Discovery Material as Confidential for purposes of this Protective Order shall be made in the following manner:

(a)     In the case of documents or other materials (apart from depositions, other pretrial testimony, written discovery responses, or electronic data and information): by affixing the legend "Confidential" to each page containing any Confidential Discovery Material.  In the case of multi-page documents bound together by staple or other permanent binding, the "Confidential" designation need only be stamped on the first page of the document in order for the entire document to be treated as Confidential Discovery Material;

(b)     In the case of depositions or other pretrial testimony: (i) by a statement on the record, by counsel, at the time of such disclosure; or (ii) by written notice, sent by such counsel to all other counsel within ten (10) business days after the complete and final transcript of the testimony has been provided to the deponent or counsel for the deponent; and in both of the foregoing instances, by directing the court reporter that the appropriate confidential legend be affixed to the first page and all portions of the original and all copies or the transcript containing any Confidential Discovery Material.  All depositions and other pretrial testimony shall be treated as "Confidential" until the expiration of ten (10) business days after the final transcript of the testimony is received, after which time only such portions of the transcript as have been designated as set forth above shall be deemed Confidential Discovery Material, as the case may be.  The Parties may modify this procedure for any particular deposition through agreement on the record at such deposition without further order of the Court.  A deponent or counsel for the deponent shall

designate the provisions of the deponent's deposition transcript that qualify as Confidential by line and page number;

      (c)     In the case of electronic information, electronic mail, electronically stored documents or other electronic media produced in native format, by affixing the legend "Confidential" to the exterior label of the storage media on which such electronic information, data or documents are produced or within the relevant transmittal letter(s) if the Discovery Material is exchanged electronically.

      5.     Discovery Material designated "Confidential" may be disclosed, summarized, described, characterized, or otherwise communicated or made available in whole or in part only to the following persons:

      (a)     the Parties, counsel who represent such Parties and members of their firms, and regular and temporary employees of such counsel (including outside copying services and outside litigation support services) necessary to assist in the conduct of the Action, for use in accordance with this Protective Order and for purposes of the Action only;

      (b)     experts or consultants necessary to assist counsel for the Parties to the extent necessary for such expert or consultant to prepare a written opinion, to prepare to testify, or to assist counsel in connection with the Action, *provided that* such expert signs an undertaking in the form attached as Exhibit A hereto, agreeing in writing to be bound by the terms and conditions of this Protective Order, consenting to the jurisdiction of the Court for purposes of the enforcement of this Protective Order, and agreeing not to disclose or use any Confidential Discovery Material for purposes other than those permitted hereunder. Such undertakings shall be retained in the files of the counsel for the Party who has engaged such consultant or expert;

      (c)     any person indicated on the face of a document or accompanying

correspondence to be the author, addressee or a copy-recipient of the document; or as to whom there has been deposition or trial testimony or documentary evidence that the person was the author or a recipient of the document;

(d)     witnesses or deponents (other than witnesses and deponents covered by Subparagraph (e) below) whom a Party believes in good faith will be aided by reviewing the document and their counsel, during the course of, or, to the extent necessary, in preparation for depositions or testimony in the Action, *provided that* no copies or notes relating to the Confidential information shall be made by such person;

(e)     the officers, employees (including, but not limited to, inside counsel) and general or limited partners of the Parties, who are assisting the Parties in the Action or who appear as witnesses or deponents;

(f)     the Court and its employees;

(g)     court reporters employed in connection with the Action;

(h)     any mediator engaged by the Parties, provided such mediator agrees to be bound by this Protective Order or is subject to a substantially similar mediation Protective Order entered by a court of competent jurisdiction; and

(i)     any other person only upon order of the Court or upon stipulation of the Designating Party.

6.     To the extent that any Discovery Material contains any of the information set forth below in subparts a. through i. of this paragraph, and such Discovery Material is not otherwise designated as Confidential under the terms of this Protective Order, it shall nevertheless be treated as Confidential Discovery Material, and will be filed with the Court or disclosed to any person or entity not described in Paragraph 5 above only with the following information redacted or omitted:

a. Social Security numbers;

b. names of minor children;

c. names of family members of Parties to the Litigation;

d. dates of birth;

e. financial account numbers (including bank account numbers) or pass codes;

f. federal and state income tax filings;

g. home addresses;

h. home or private phone numbers or pass codes; and/or

i. information concerning an individual's medical condition.

Any document that has not been specifically designated as "Confidential" but, pursuant to the terms of this Paragraph 6, would be treated as Confidential because it contains any of the information set forth in subparts a.-i. above, does not have to be treated as Confidential if the Party seeking to use the document has redacted all of the information in the document that is set forth above.

7.    Every person given access to Confidential Discovery Material shall be advised that the information contained therein is being disclosed pursuant and subject to the terms of this Protective Order and may not be disclosed other than pursuant to the terms of the Protective Order. Accordingly, all persons who have received Confidential Discovery Material shall safeguard the same therein so as to avoid its disclosure to persons who are not eligible to receive that information pursuant to this Protective Order.

8.    All documents of any nature, including any brief, memorandum, motion, letter or other document, all or part or which have been designated as "Confidential" (or treated as such pursuant to the terms or this Protective Order) that a Party seeks to file with the Court will be

submitted in accordance with the Civil Practice Laws and Rules and all other applicable rules and regulations.

9.    In using Confidential Discovery Material in any court proceeding, the Parties shall work together to maintain protection of the confidential nature of the material, subject to the limitation set out in Paragraph 11(d) below.

10.    All materials filed under seal pursuant to this Protective Order shall be unsealed in accordance with the Civil Practice Laws and Rules and all other applicable rules and regulations.

11.    Entering into or agreeing to the Protective Order and/or producing or receiving Confidential Discovery Material, or otherwise complying with the terms of this Protective Order shall not:

(a)    operate as or constitute an admission by any non-producing Party that any particular Confidential Discovery Material contains or reflects trade secrets, proprietary or commercially sensitive information or any other type or confidential information;

(b)    prejudice in any way the rights of the Parties to object to the production of documents or other oral or written information they consider not subject to discovery, or operate as or constitute an admission by any Party that the restrictions and procedures set forth herein constitute adequate protection for any particular information deemed by any Party to be Confidential or Highly Confidential Discovery Material;

(c)    prejudice in any way the rights of any Party to object to the authenticity or admissibility into evidence of any document, testimony or other evidence subject to this Protective Order;

(d)    prejudice in any way the rights or any Party to seek a determination from the Court whether any Discovery Material, Confidential, or otherwise, should be subject to the

term of this Protective Order;

      (e)    prejudice in any way the right of a Party to petition the Court for a modification of the terms of this Protective Order to allow Discovery Material produced in this Action, or information derived therefrom, to be used by any Party in connection with any government investigation or proceeding;

      (f)    prejudice in any way the rights of a Party to petition the Court for a further protective order relating to any purportedly confidential information;

      (g)    prevent the Parties to this Protective Order from agreeing to alter or waive the provisions or protections provided for herein with respect to any particular Discovery Material; or

      (h)    operate as or constitute a waiver of any attorney client, work product, trade secret, common interest, or other privilege.

12.    This Protective Order has no effect upon, and shall not apply to, the Parties' use of their own Confidential Discovery Material for any purpose.

13.    If information or Discovery Material subject to a claim of attorney-client privilege, attorney work product, trade secret privilege, common interest privilege, or any other ground on which production of such information should not be made to any Party is nevertheless inadvertently produced to such Party or Parties, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of privilege, work product or other ground for withholding production to which the Designating Party would otherwise be entitled. The Party claiming inadvertent production shall amend its discovery response within ten (10) days after discovering that such production was made, identifying the material or information produced and stating the privilege asserted. The Party receiving the inadvertent production must then

promptly return the specified material or information and any copies in any form (paper or electronic) to the Party claiming inadvertent production, and must certify in writing the destruction of any copies maintained or created in connection with the Litigation. The Party returning such material may then move the Court for an order compelling production of the material, but said motion shall not assert as a ground for entering such an order the fact or circumstance of the inadvertent production.

14.     Each of the Parties hereto shall be entitled to seek modification of this Protective Order, or relief therefrom, by application to the Court on notice to the other Parties hereto for good cause.

15.     In the event of disclosure of any Confidential Discovery Material, or the information therein, to any person or other entity not authorized under the terms of this Protective Order to have access to that information, the Party responsible for having made, and any Party having knowledge of, that disclosure shall inform counsel for the Designating Party, within a reasonable time not to exceed ten (10) days, of all information concerning the nature and circumstances of that disclosure. The responsible Party also shall promptly take all reasonable measures to ensure that no further or greater unauthorized disclosure of such information or materials is made by anyone, and each Party shall cooperate in good faith in that effort. Nothing in this paragraph shall limit any Party's right to seek sanctions from the Court for violation of this Protective Order.

16.     The provisions of this Protective Order shall, absent written permission of the Designating Party or further order of the Court, continue to be binding throughout and after the conclusion of the Action, including, without limitation, any appeals therefrom. Within thirty (30) days after receiving notice of the entry of an order, judgment or decree finally disposing of all litigation in which Confidential Discovery Material is permitted to be used, including the

exhaustion of all permissible appeals, all persons who have received Confidential Discovery Material shall, upon written request of the Designating Party, either make a good faith effort to return such material and all copies thereof (including summaries, excerpts, and derivative works) to counsel for the Designating Party or destroy all such Confidential or Highly Confidential Discovery Material, and certify that fact to counsel for the Designating Party. Notwithstanding the prior sentence, counsel for the Parties shall be entitled to retain their own court papers, deposition and trial transcripts, and attorney work product (including discovery material containing Confidential Discovery Material) *provided that* such counsel, and employees of such counsel, shall not disclose such court papers or attorney work product to any person except pursuant to court order or agreement of the Designating Party. All materials returned to the Parties or their counsel by the Court likewise shall be disposed of in accordance with this paragraph.

17. After the termination of the Action, this Protective Order shall continue to be binding upon the Parties hereto and upon all persons to whom Confidential Discovery Material has been disclosed or communicated. This Court shall retain jurisdiction over all such Parties and persons for enforcement of its provisions. After the termination of the Action, the Parties may seek to have the Court return to the Parties any papers containing Confidential Discovery Material that were submitted in chambers.

18. In the event that any Confidential Discovery Material is used in any proceeding in the Action or any appeal therefrom, such information shall not lose its protected status through such use. Counsel shall confer on such procedures that are necessary to protect the confidentiality of any documents, information and transcripts used in the course of any court proceedings.

19. If any Party objects to the designation of information as Confidential, the Party shall state the objection in writing to counsel for the Party making the designation, and all Parties shall

make good faith efforts to resolve the dispute on an expedited basis without intervention of the Court. In the event that the Parties are unable to resolve the dispute, the Designating Party must request appropriate relief from this Court. If the Designating Party fails to request appropriate relief from this Court within ten (10) days following the parties' good faith efforts to resolve the dispute, the subject document(s) will no longer be deemed as Confidential Discovery Material. In the event the Designating Party applies to the Court for such relief, the Designating Party shall have the burden of establishing that the information has not been properly designated as Confidential. The challenged designation shall remain in effect until changed by order of the Court or agreement of the Designating Party.

20. If any person possessing or controlling documents covered by this Protective Order (the "Recipient") (a) is subpoenaed in another action or proceeding, (b) is served with a demand in another action or proceeding to which she, he or it is a party, or (c) is served with any other legal process by one not a Party to the Action, seeking Discovery Material which was designated as Confidential in the action by someone other than the Recipient (the "Subpoenaed Information"), such person shall (i) give prompt actual written notice by hand, facsimile transmission, or email within three (3) business days of receipt of such subpoena, demand or legal process to the Designating Party; and (ii) object to the production and shall not produce the Subpoenaed Information unless compelled by legal process, or otherwise ordered by a court, or by agreement with the Designating Party. The Designating Party shall be solely responsible for defending any objection to the requested production. Nothing herein shall be construed as requiring the Recipient or anyone else covered by this Protective Order to challenge or appeal any order requiring production of Confidential Discovery Material covered by this Protective Order, or to subject himself, herself or itself to any penalties for non-compliance with any legal process or order, or to

seek any relief from this Court. Compliance by such person with any court order directing production pursuant to subpoena, demand, or legal process of any Confidential Discovery Material shall not constitute a violation of this Protective Order.

21.     A Party may designate as Confidential any information contained in documents that are in the possession of a non-party if the documents contain the Party's Confidential information.

22.     If, in the course of the Action, discovery is sought from non-parties that would require such non-parties to produce and/or disclose Confidential Discovery Material or the information therein, such non-parties may gain the protections of this Protective Order by agreeing in writing to produce documents pursuant to this Protective Order and to be bound by it.

23.     Nothing in this Protective Order shall be deemed or construed to restrict or prejudice the right of any Party or non-party to assert that certain information is so confidential as not to be subject to discovery or to seek additional protective relief with respect to any documents, tangible thing or information sought in the course of discovery.

24.     Any Party seeking discovery from a non-party shall provide a copy of this Protective Order to the non-party and notify the non-party that the protections of this Protective Order are available to such non-party. Any non-party from whom discovery is sought in the Action may obtain the protection of this Protective Order by signing and providing to outside counsel for the Party seeking the discovery a certification and agreement, substantially in the form attached hereto as Exhibit B, stating that the non-party has read the Protective Order, understands the terms of the Protective Order, agrees to be fully bound by the Protective Order, submits to the jurisdiction of the Court for purposes of enforcement of the Protective Order, and understands that any violation or the terms or the Protective Order shall be punishable by relief deemed appropriate by the Court.

Dated: November _____, 2021


_____          _____
John Feroleto, Esq.                        Brittany L. Hannah, Esq.
**FEROLETO LAW**                           **SUGARMAN LAW FIRM, LLP**
*Attorneys for Eric C. Martin*             *Attorneys for Speedway LLC*
Office and Post Office Address             Office and Post Office Address
438 Main Street, Suite 910                 211 West Jefferson Street
Buffalo, New York  14202                   Syracuse, New York  13202
Telephone: (716) 854-0700                  Telephone:  (315) 474-2943
*John.feroleto@feroletolaw.com*            *bhannah@sugarmanlaw.com*


_____
Paul G. Joyce, Esq., and Marc S. Smith, Esq.
**COLUCCI & GALLAHER, P.C.**
*Attorneys for the Town of Tonawanda Police Department*
*o/b/o The Town of Tonawanda*
Office and Post Office Address
2000 Liberty Building
424 Main Street
Buffalo, New York 14202
(716) 853-4080
*pjoyce@colucci-gallaher.com*
*msmith@colucci-gallaher.com*


SO ORDERED this ___ day of November, 2021


_____
Honorable

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

_____

ERIC C. MARTIN,

Plaintiff,

vs.                                                          **INDEX NO. 808523/2021**

TOWN OF TONAWANDA POLICE DEPARTMENT
o/b/o TOWN OF TONAWANDA, SPEEDWAY, LLC,
MARATHON PETROLEUM CORPORATION and
JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8 as employees of
TOWN OF TONAWANDA POLICE DEPARTMENT,

Defendants.

_____

**EXHIBIT A**

**CERTIFICATION REGARDING**
**CONFIDENTIAL AND HIGHLY CONFIDENTIAL DISCOVERY MATERIAL**

I.        I hereby certify (i) my understanding that Discovery Material and/or Confidential Discovery Material is being provided to me pursuant to the terms and restrictions of the Confidentiality Stipulation and Protective Order (the "Protective Order") entered by the New York State Supreme Court (the "Court"), in the above-captioned litigation, and (ii) that I have read the Protective Order.  I understand the terms of the Protective Order, agree to be fully bound by the terms and conditions thereof, and hereby submit to the jurisdiction of the Court for purposes or enforcement of the Protective Order.  I understand that any violation of the terms of this Protective Order shall be punishable by relief deemed appropriate by the Court.  I have had the opportunity to consult with counsel prior to signing this certification.

II.      Signature: _____       Dated: _____

          Name (Print): _____

Sugarman Law Firm, LLP • 211 West Jefferson Street • Syracuse, New York 13202

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

_____

ERIC C. MARTIN,

                              Plaintiff,

        vs.                                              **INDEX NO. 808523/2021**

TOWN OF TONAWANDA POLICE DEPARTMENT
o/b/o TOWN OF TONAWANDA, SPEEDWAY, LLC,
MARATHON PETROLEUM CORPORATION and
JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8 as employees of
TOWN OF TONAWANDA POLICE DEPARTMENT,

                              Defendants.

_____

**EXHIBIT B**

**CERTIFICATION REGARDING
EXCHANGE OF CONFIDENTIAL INFORMATION**

I, _____, hereby certify on behalf of _____

(i) that _____, is producing Confidential Discovery Material in the

above-captioned action; (ii) that _____ seeks to obtain the protections

provided by the Confidentiality Stipulation and Protective Order (the "Protective Order") entered

by New York State Supreme Court (the "Court"), in the above-captioned action; and (iii) that I am

authorized to execute this certification on _____'s behalf.

I further certify (i) that I have read and understood the Protective Order, and agree to be

fully bound by the terms and conditions thereof; and (ii) that I hereby submit to the jurisdiction of

the Court for the purposes of enforcement of the Protective Order.

On behalf of _____, I further certify my

understanding that any violation of the terms of the Protective Order shall be punishable by relief

deemed appropriate by the Court.

I have had the opportunity to consult with counsel prior to signing this certification.

Signature: _____     Dated: _____

Name (Print): _____

Title and Affiliation: _____

Company: _____

Address: _____

Telephone: _____

# EXHIBIT F



211 West Jefferson Street, Suite 20
Syracuse, NY 13202-2680
Phone: (315) 474-2943
Fax: (315) 474-0235
www.sugarmanlaw.com

November 15, 2021

**VIA EMAIL ONLY @ john.feroleto@feroletolaw.com; megan.bechard@feroletolaw.com; jill.wnek@ Feroletolaw.com**
**John Feroleto, Esq.**
Feroleto Law
438 Main Street, Suite 910
Buffalo, New York  14202

      Re:      *Martin, Eric v. Speedway LLC, et al*
      Our File:    W08009

Dear Mr. Feroleto:

I am serving this letter pursuant to our telephone conversation on November 4, 2021 regarding the documentation that Speedway LLC has withheld in Speedway LLC's Response to Request for Documents and Discovery pending a Confidentiality and Protective Order.  I have discussed your refusal to execute a Confidentiality and Protective Order with Speedway LLC's in-house counsel.  We are providing the following list of documentation that will be produced once a So Ordered Confidentiality and Protective Order is in place.  Speedway LLC will not produce any of the documentation discussed herein without a Confidentiality and Protective Order due to the nature of the materials and the associated risk of non-protected production.  Further, the publicity around this case is atypical, which heightens the need for a Confidentiality and Protective Order to mitigate the risk of non-protected production.

In response to paragraph 4 of plaintiff's Request for Documents and Discovery, dated September 7, 2021, Speedway LLC has withheld the production of the following relevant and responsive documents and training video relating to the subject areas requested that was in effect in July 2020, pending a Confidentiality and Protective Order:

- Operations Manual Policy: Accidents/Incidents, Injuries, etc.
- Operations Manual Policy: Anti-Money Laundering Compliance
- Operations Manual Policy: Customer Satisfaction/Service
- Operations Manual Policy: Division Emergency Reporting Procedure
- Operations Manual Policy: Drive-offs
- Operations Manual Policy: Lottery
- Operations Manual Policy: Prosecution/Criminal Proceedings
- Operations Manual Policy: Robbery
- Operations Manual Policy: Security Incident Reporting
- Operations Manual Policy: Shoplifting
- Operations Manual Policy: "Stay Out" Letter
- Operations Manual Policy: Training
- Operations Manual Policy: Violent Crime
- Use Services Web Based Training (video)

SERVICE BY FAX NOT ACCEPTED

In response to paragraph 7 of plaintiff's Request for Documents and Discovery, dated September 7, 2021, Speedway LLC has withheld the production of the following relevant and responsive materials and training video relating to the subject areas requested, pending a Confidentiality and Protective Order:

- Lottery Operations Manual Policy: 24 Hour Store Lottery Reconciliation with Cashless Instant Ticket Vending Machine (ITVM)
- Lottery Operations Manual Policy: 24 Hour Store Lottery Reconciliation
- Operations Manual Policy: Lottery
- Lottery Operations Manual Policy: 18 Hour Store Lottery Reconciliation with ITVM
- Lottery Operations Manual Policy: 18 Hour Store Lottery Reconciliation
- Lottery Operations Manual Policy: 24 Hour Store Lottery Reconciliation with ITVM
- Use Services Web Based Training (video)

Please contact me if you would like to discuss this further. We will produce the above-discussed materials upon receipt of the previously provided Confidentiality and Protective Order or a mutually agreeable one if that is not sufficient and the same being So Ordered by the Court. If you are unwilling to sign a Confidentiality and Protective Order and are pursuing production of the above-described materials, then please seek (unnecessary) judicial intervention. Thank you.

Very truly yours,

Brittany L. Ho

Brittany L. Hannah, Esq.
Direct Dial No.: (315) 362-8942
bhannah@sugarmanlaw.com

BLH/dmr
cc:

**EMAIL ONLY @ pjoyce@colucci-gallaher.com and msmith@colucci-gallaher.com**
Paul G. Joyce, Esq.
Marc S. Smith, Esq.
**COLUCCI & GALLAHER, P.C.**
2000 Liberty Building
424 Main Street
Buffalo, New York 14202

# EXHIBIT G

From : bhannah@sugarmanlaw.com

To : john.feroleto@feroletolaw.com

Sent : 5/20/2022 4:51PM

Subject : Martin

Hello John,

I got your message and just called back, but I received a voicemail for Megan.  I have no issue with you bringing a motion, although I do not understand why you are so resistant to confidentiality on the materials you have requested.  Regardless, I respect your right to make the motion.  If you have any other bases for the motion, I request that you address them in good faith with me prior to bringing the motion and allow us an opportunity to work them out. Additionally, I would appreciate it if you would make the motion returnable for a later date than 6/9.  I will be out of the office from 5/26-6/6 and will not be able to respond to you motion sooner than my return based on my schedule next week.  It would save me the trouble of having to adjourn the motion.

I will be available off and on Monday-Wednesday next week, so please give me a call to discuss this and the video and if I am in a conference or deposition, I will give you a call back after.  Thank you.  Have a great weekend!

Regards,
Brittany

  Sug          211 W. Jefferson St.   Syracuse, NY 13202     **sugarmanlaw.com**

**BRITTANY L HANNAH, ESQ.**     **Direct Dial**: (315) 362-8942          **Fax**: (315) 474-0235

E-MAIL CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

# EXHIBIT H

From : bhannah@sugarmanlaw.com

To : john.feroleto@feroletolaw.com

Sent : 5/23/2022 2:03PM

Subject : Re: Martin

Hello John,

Thank you! I appreciate your consideration. Please allow me the opportunity to discuss with Speedway's in-house counsel first before you file it. They may reconsider and allow me to produce some of all of what has been withheld without a confidentiality order to avoid the motion or they may stick to their position and have you file the motion to allow the Court to decide. I will get back to you ASAP with an answer this week. I would rather work this out if we can. Thank you.

Regards,
Brittany


Brittany L. Hannah, Esq.
Sugarman Law Firm, LLP
(315) 362-8942

On May 23, 2022, at 8:19 AM, John Feroleto <john.feroleto@feroletolaw.com> wrote:


Good morning Brittany, I hope you had a good weekend.

I should be in my office after 10:30 AM today, this morning I am working remotely.

I will agree to keep confidential financial information, if any. As far as training manuals or information on how to deal with lottery matters, I believe that information is widely disseminated among thousands of individuals. Also, secrecy agreements are generally contrary to public policy, create causes of action when there are none, gives me or the potential expert, and other reasons.

Over the years I've seen plenty of policy manuals, and frankly they are pretty much the same. I don't know that there's anything that would harm your client financially. If you have manuals from the lottery vendor, I don't see how those could be confidential.

I look forward to working with you to resolving the discovery questions and yes, we can  schedule motion on a different day, thanks, John
**John Feroleto**
438 Main Street, Suite 910
Buffalo, NY 14202
716-854-0700
 AAJ Trucking Litigation Group, Past Chair | www.yourbuffalolawyer.com



On Fri, May 20, 2022 at 4:51 PM Brittany Hannah <bhannah@sugarmanlaw.com> wrote:

Hello John,

I got your message and just called back, but I received a voicemail for Megan. I have no issue with you bringing a motion, although I do not understand why you are so resistant to confidentiality on the materials you have requested. Regardless, I respect your right to make the motion. If you have any other bases for the motion, I request that you address them in good faith with me prior to bringing the motion and allow us an opportunity to work them out. Additionally, I would appreciate it if you would make the motion returnable for a later date than 6/9. I will be out of the office from 5/26-6/6 and will not be able to respond to you motion sooner than my return based on my schedule next week. It would save me the trouble of having to adjourn the motion.

I will be available off and on Monday-Wednesday next week, so please give me a call to discuss this and the video and if I am in a conference or deposition, I will give you a call back after. Thank you. Have a great weekend!

Regards,
Brittany

<image001.jpg>

<image002.png>
211 W. Jefferson St.   Syracuse, NY 13202     **sugarmanlaw.com**

**BRITTANY L HANNAH, ESQ.**     Direct Dial: (315) 362-8942     Fax: (315) 474-0235

E-MAIL CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

# EXHIBIT I

From : bhannah@sugarmanlaw.com
To : john.feroleto@feroletolaw.com
Sent : 5/27/2022 1:54PM
Subject : FW: Martin

Hello John,

I hope you have been well.  I have discussed this matter with Speedway's in-house counsel.  If we were talking about a lottery manual provided by the State or an agency, they would not have any concerns about production.  However, the lottery materials at issue were developed internally by Speedway and have been kept confidential to company employees.  They do not provide copies of this to employees and do not produce it without a protective order limiting the use to litigation purposes for very obvious security reasons.  Speedway has no issue producing the materials you have requested with a confidentiality order.  You can see from what was previously provided to you to execute that it includes provisions allowing any experts to use them, etc..  It prevents, however, their dissemination to the general public.  We have no idea why you would want to do that here.  Further, if you have issues with the language of the CPO, we are open to alternative one or revision of the existing one.   We frequently have CPOs put into place in our cases and have them signed off on by Supreme Court, District Court, and Magistrate Judges.

Ultimately, before their in-house counsel makes a final decision on the issue as to whether to standby the need for the CPO, she asked me to obtain clarification from you as to why limiting the use and disclosure of the materials for use in this litigation is unsatisfactory?  She also asked about the portion of your e-mail that says "gives me or the potential expert".  What does that mean?  Speedway will reconsider production without a confidentiality order, but they need to understand the rationale behind your refusal to sign the confidentiality order to make an informed decision.  Please let me know between now and when I get back on 6/6 so that we can work this out in good faith.   Thank you!

Have a great weekend!

Regards,
Brittany

Brittany L. Hannah, Esq.
Sugarman Law Firm, LLP
Direct Dial: (315) 362-8942

---

**From:** Brittany Hannah
**Sent:** Monday, May 23, 2022 2:04 PM
**To:** John Feroleto <john.feroletolaw.com>
**Cc:** Megan Commaroto <megan.commaroto@feroletolaw.com>; Diane Rockdashil <drockdashil@sugarmanlaw.com>
**Subject:** Re: Martin

Hello John,

Thank you! I appreciate your consideration. Please allow me the opportunity to discuss with Speedway's in-house counsel first before you file it.  They may reconsider and allow me to produce some of all of what has been withheld without a confidentiality order to avoid the motion or they may stick to their position and have you file the motion to allow the Court to decide.  I will get back to you ASAP with an answer this week.  I would rather work this out if we can.  Thank you.

Regards,
Brittany

Brittany L. Hannah, Esq.
Sugarman Law Firm, LLP
(315) 362-8942

On May 23, 2022, at 8:19 AM, John Feroleto <john.feroleto@feroletolaw.com> wrote:

Good morning Brittany, I hope you had a good weekend.

I should be in my office after 10:30 AM today, this morning I am working remotely.

I will agree to keep confidential financial information, if any. As far as training manuals or information on how to deal with lottery matters, I believe that information is widely disseminated among thousands of individuals. Also, secrecy agreements are generally contrary to public policy, create causes of action when there are none, gives me or the potential expert, and other reasons.

Over the years I've seen plenty of policy manuals, and frankly they are pretty much the same. I don't know that there's anything that would harm your client financially. If you have manuals from the lottery vendor, I don't see how those could be confidential.

I look forward to working with you to resolving the discovery questions and yes, we can  schedule motion on a different day, thanks, John

**John Feroleto**
438 Main Street, Suite 910
Buffalo, NY 14202
716-854-0700
AAJ Trucking Litigation Group, Past Chair | www.yourbuffalolawyer.com



On Fri, May 20, 2022 at 4:51 PM Brittany Hannah <bhannah@sugarmanlaw.com> wrote:

Hello John,

I got your message and just called back, but I received a voicemail for Megan.  I have no issue with you bringing a motion, although I do not understand why you are so resistant to confidentiality on the materials you have requested.  Regardless, I respect your right to make the motion.  If you have any other bases for the motion, I request that you address them in good faith with me prior to bringing the motion and allow us an opportunity to work them out. Additionally, I would appreciate it if you would make the motion returnable for a later date than 6/9. I will be out of the office from 5/26-6/6 and will not be able to respond to you motion sooner than my return based on my schedule next week.  It would save me the trouble of having to adjourn the motion.

I will be available off and on Monday-Wednesday next week, so please give me a call to discuss this and the video and if I am in a conference or deposition, I will give you a call back after.  Thank you.  Have a great weekend!

Regards,
Brittany

<image001.jpg>    <image002.png>

Case 1:23-cv-00419-WMS-MJR Document 1-25 Filed 05/11/23 Page 209 of 256

>

211 W. Jefferson St. Syracuse, NY 13202 **sugarmanlaw.com**

**BRITTANY L HANNAH, ESQ.** Direct Dial: (315) 362-8942 Fax: (315) 474-0235

E-MAIL CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

# EXHIBIT J

From : john.feroleto@feroletolaw.com

To : bhannah@sugarmanlaw.com

Sent : 6/02/2022 2:49PM

Subject : Re: FW: Martin

Brittany, I hope you are not reading this email until you return to your office.

As to the material in question, Speedway has the burden to show that it would somehow be harmed.

As to the question of why I would want to disseminate this to the public, I never indicated that. That was not my intent.

The confidentiality agreement could create a new cause of action of liability against me. I do not wish to do that.

The confidentiality agreement can also potentially create a cause of action against an expert, If Speedway accused an expert of discussing lottery, security procedures or any other matters. This could have a chilling effect on how I deem best to handle my case.

Secrecy agreements are frowned upon. See the Court Rules.

I expect the lottery procedures for Speedway include scanning and counting the tickets on a daily basis, possibly a physical count and basic daily or weekly audits. I don't see why I would need to sign a confidentiality agreement/order. I don't see how this could harm Speedway financially.

Thanks, and regards, John

**John Feroleto**
438 Main Street, Suite 910
Buffalo, NY 14202
716-854-0700
 AAJ Trucking Litigation Group, Past Chair | www.yourbuffalolawyer.com

  

On Fri, May 27, 2022 at 1:54 PM Brittany Hannah <bhannah@sugarmanlaw.com> wrote:

> Hello John,
>
>
> I hope you have been well.  I have discussed this matter with Speedway's in-house counsel.  If we were talking about a lottery manual provided by the State or an agency, they would not have any concerns about production. However, the lottery materials at issue were developed internally by Speedway and have been kept confidential to company employees.  They do not provide copies of this to employees and do not produce it without a protective order limiting the use to litigation purposes for very obvious security reasons.  Speedway has no issue producing the materials you have requested with a confidentiality order.  You can see from what was previously provided to you to execute that it includes provisions allowing any experts to use them, etc..  It prevents, however, their dissemination to the general public.  We have no idea why you would want to do that here.  Further, if you have issues with the language of the CPO, we are open to alternative one or revision of the existing one.   We frequently have CPOs put into place in our cases and have them signed off on by Supreme Court, District Court, and Magistrate Judges.
>
>
> Ultimately, before their in-house counsel makes a final decision on the issue as to whether to standby the need for the CPO, she asked me to obtain clarification from you as to why limiting the use and disclosure of the materials for use in this litigation is unsatisfactory?  She also asked about the portion of your e-mail that says "gives me or the potential expert".  What does that mean?  Speedway will reconsider production without a confidentiality order, but

they need to understand the rationale behind your refusal to sign the confidentiality order to make an informed decision.  Please let me know between now and when I get back on 6/6 so that we can work this out in good faith.   Thank you!


Have a great weekend!


Regards,
Brittany


Brittany L. Hannah, Esq.
Sugarman Law Firm, LLP

Direct Dial: (315) 362-8942

---

**From:** Brittany Hannah
**Sent:** Monday, May 23, 2022 2:04 PM
**To:** John Feroleto <john.feroleto@feroletolaw.com>
**Cc:** Megan Commaroto <megan.commaroto@feroletolaw.com>; Diane Rockdashil <drockdashil@sugarmanlaw.com>
**Subject:** Re: Martin


Hello John,


Thank you! I appreciate your consideration. Please allow me the opportunity to discuss with Speedway's in-house counsel first before you file it.  They may reconsider and allow me to produce some of all of what has been withheld without a confidentiality order to avoid the motion or they may stick to their position and have you file the motion to allow the Court to decide.  I will get back to you ASAP with an answer this week.  I would rather work this out if we can.  Thank you.


Regards,

Brittany


Brittany L. Hannah, Esq.

Sugarman Law Firm, LLP

(315) 362-8942

FILED: ERIE COUNTY CLERK 08/25/2022 03:44 PM
INDEX NO. 804423/2021
NYSCEF DOC. NO. 78
Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 213 of 256
RECEIVED NYSCEF: 08/25/2022
Page 380 of 4

On May 23, 2022, at 8:19 AM, John Feroleto <john.feroleto@feroletolaw.com> wrote:

Good morning Brittany, I hope you had a good weekend.

I should be in my office after 10:30 AM today, this morning I am working remotely.

I will agree to keep confidential financial information, if any. As far as training manuals or information on how to deal with lottery matters, I believe that information is widely disseminated among thousands of individuals. Also, secrecy agreements are generally contrary to public policy, create causes of action when there are none, gives me or the potential expert, and other reasons.

Over the years I've seen plenty of policy manuals, and frankly they are pretty much the same. I don't know that there's anything that would harm your client financially. If you have manuals from the lottery vendor, I don't see how those could be confidential.

I look forward to working with you to resolving the discovery questions and yes, we can schedule motion on a different day, thanks, John

**John Feroleto**

438 Main Street, Suite 910

Buffalo, NY 14202

716-854-0700

AAJ Trucking Litigation Group, Past Chair | www.yourbuffalolawyer.com



On Fri, May 20, 2022 at 4:51 PM Brittany Hannah <bhannah@sugarmanlaw.com> wrote:

Hello John,

I got your message and just called back, but I received a voicemail for Megan.  I have no issue with you bringing a motion, although I do not understand why you are so resistant to confidentiality on the materials you have requested.  Regardless, I respect your right to make the motion.  If you have any other bases for the motion, I request that you address them in good faith with me prior to bringing the motion and allow us an opportunity to work them out. Additionally, I would appreciate it if you would make the motion returnable for a later date than 6/9.  I will be out of the office from 5/26-6/6 and will not be able to respond to you motion sooner than my return based on my schedule next week.  It would save me the trouble of having to adjourn the motion.

I will be available off and on Monday-Wednesday next week, so please give me a call to discuss this and the video and if I am in a conference or deposition, I will give you a call back after.  Thank you. Have a great weekend!

Regards,
Brittany

<image001.jpg>

<image002.png>

211 W. Jefferson St.   Syracuse, NY 13202   **sugarmanlaw.com**

**BRITTANY L HANNAH, ESQ.**    Direct Dial: (315) 362-8942        Fax: (315) 474-0235

E-MAIL CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

# EXHIBIT K

From : bhannah@sugarmanlaw.com
To : john.feroleto@feroletolaw.com
Sent : 6/10/2022 8:16PM
Subject : FW: Martin

Hello John,

I have discussed this further with Speedway's in-house counsel. We have articulated our reasoning for withholding the materials in our response and correspondence to date. Further, Speedway's in-house counsel advised that they consider the materials that have been withheld, including the internal operations manuals, to be confidential business information. It is Speedway's routine practice to only produce excerpts only under a confidentiality order. They have not encountered a situation where any cause of action for liability was created against a plaintiff's counsel or a plaintiff's expert. If that is your concern, Speedway is willing to add additional language to the confidentiality order to protect against that that will satisfy you and/or enter into a side agreement that Speedway agrees not to bring a cause of action for liability against you or any expert you may retain for any inadvertent violation of the confidentiality order.

Have a great weekend!

Regards,
Brittany

Brittany L. Hannah, Esq.
Sugarman Law Firm, LLP
Direct Dial: (315) 362-8942

---

**From:** Brittany Hannah
**Sent:** Wednesday, June 8, 2022 4:48 PM
**To:** john.feroleto@feroletolaw.com
**Subject:** FW: Martin

Hello John,

I have not heard back yet, but I expect to hear back by the end of the day tomorrow. I will let you know as soon as I do. Also, my appearance was excused for tomorrow's oral argument, so I will not be there.

Thank you.

Regards,
Brittany

Brittany L. Hannah, Esq.
Sugarman Law Firm, LLP
Direct Dial: (315) 362-8942

---

**From:** Brittany Hannah
**Sent:** Monday, June 6, 2022 3:19 PM
**To:** John Feroleto <john.feroleto@feroletolaw.com>
**Subject:** Re: Martin

Hello John,

Thank you! I will send this along to Speedway's in-house counsel and let you know their decision. I should hear back by Wednesday. Thank you!

Regards,
Brittany

Brittany L. Hannah, Esq.
Sugarman Law Firm, LLP
(315) 362-8942

On Jun 2, 2022, at 2:49 PM, John Feroleto <john.feroleto@feroletolaw.com> wrote:

Brittany, I hope you are not reading this email until you return to your office.

As to the material in question, Speedway has the burden to show that it would somehow be harmed.

As to the question of why I would want to disseminate this to the public, I never indicated that. That was not my intent.

The confidentiality agreement could create a new cause of action of liability against me. I do not wish to do that.

The confidentiality agreement can also potentially create a cause of action against an expert, If Speedway accused an expert of discussing lottery, security procedures or any other matters. This could have a chilling effect on how I deem best to handle my case.

Secrecy agreements are frowned upon. See the Court Rules.

I expect the lottery procedures for Speedway include scanning and counting the tickets on a daily basis, possibly a physical count and basic daily or weekly audits. I don't see why I would need to sign a confidentiality agreement/order. I don't see how this could harm Speedway financially.

Thanks, and regards, John

**John Feroleto**
438 Main Street, Suite 910
Buffalo, NY 14202
716-854-0700
 AAJ Trucking Litigation Group, Past Chair | www.yourbuffalolawyer.com





On Fri, May 27, 2022 at 1:54 PM Brittany Hannah <bhannah@sugarmanlaw.com> wrote:

Hello John,

I hope you have been well.  I have discussed this matter with Speedway's in-house counsel.  If we were talking about a lottery manual provided by the State or an agency, they would not have any concerns about production.  However, the lottery materials at issue were developed internally by Speedway and have been kept confidential to company employees. They do not provide copies of this to employees and do not produce it without a protective order limiting the use to litigation purposes for very obvious security reasons.  Speedway has no issue producing the materials you have requested with a confidentiality order.  You can see from what was previously provided to you to execute that it includes provisions allowing any experts to use them, etc..  It prevents, however, their dissemination to the general public.  We have no idea why you would want to do that here.  Further, if you have issues with the language of the CPO, we are open to alternative one or revision of the existing one.   We frequently have CPOs put into place in our cases and have them signed off on by Supreme Court, District Court, and Magistrate Judges.

Ultimately, before their in-house counsel makes a final decision on the issue as to whether to standby the need for the CPO, she asked me to obtain clarification from you as to why limiting the use and disclosure of the materials for use in this litigation is unsatisfactory?  She also asked about the portion of your e-mail that says "gives me or the potential expert". What does that mean?  Speedway will reconsider production without a confidentiality order, but they need to understand the rationale behind your refusal to sign the confidentiality order to make an informed decision.  Please let me know between now and when I get back on 6/6 so that we can work this out in good faith.   Thank you!

Have a great weekend!

Regards,

Brittany

Brittany L. Hannah, Esq.
Sugarman Law Firm, LLP
Direct Dial: (315) 362-8942

---

**From:** Brittany Hannah
**Sent:** Monday, May 23, 2022 2:04 PM
**To:** John Feroleto <john.feroleto@feroletolaw.com>
**Cc:** Megan Commaroto <megan.commaroto@feroletolaw.com>; Diane Rockdashil <drockdashil@sugarmanlaw.com>
**Subject:** Re: Martin

Hello John,

Thank you! I appreciate your consideration. Please allow me the opportunity to discuss with Speedway's in-house counsel first before you file it. They may reconsider and allow me to produce some of all of what has been withheld without a confidentiality order to avoid the motion or they may stick to their position and have you file the motion to allow the Court to decide. I will get back to you ASAP with an answer this week. I would rather work this out if we can. Thank you.

Regards,
Brittany

Brittany L. Hannah, Esq.
Sugarman Law Firm, LLP
(315) 362-8942

> On May 23, 2022, at 8:19 AM, John Feroleto <john.feroleto@feroletolaw.com> wrote:
>
> Good morning Brittany, I hope you had a good weekend.
>
> I should be in my office after 10:30 AM today, this morning I am working remotely.
>
> I will agree to keep confidential financial information, if any. As far as training manuals or information on how to deal with lottery matters, I believe that information is widely disseminated among thousands of individuals. Also, secrecy agreements are generally contrary to public policy, create causes of action when there are none, gives me or the potential expert, and other reasons.
>
> Over the years I've seen plenty of policy manuals, and frankly they are pretty much the same. I don't know that there's anything that would harm your client financially. If you have manuals from the lottery vendor, I don't see how those could be confidential.
>
> I look forward to working with you to resolving the discovery questions and yes, we can schedule motion on a different day, thanks, John
> **John Feroleto**
> 438 Main Street, Suite 910
> Buffalo, NY 14202
> 716-854-0700
> AAJ Trucking Litigation Group, Past Chair | www.yourbuffalolawyer.com



> On Fri, May 20, 2022 at 4:51 PM Brittany Hannah <bhannah@sugarmanlaw.com> wrote:
>> Hello John,

I got your message and just called back, but I received a voicemail for Megan. I have no issue with you bringing a motion, although I do not understand why you are so resistant to confidentiality on the materials you have requested. Regardless, I respect your right to make the motion. If you have any other bases for the motion, I request that you address them in good faith with me prior to bringing the motion and allow us an opportunity to work them out. Additionally, I would appreciate it if you would make the motion returnable for a later date than 6/9. I will be out of the office from 5/26-6/6 and will not be able to respond to you motion sooner than my return based on my schedule next week. It would save me the trouble of having to adjourn the motion.

I will be available off and on Monday-Wednesday next week, so please give me a call to discuss this and the video and if I am in a conference or deposition, I will give you a call back after. Thank you. Have a great weekend!

Regards,
Brittany

<image001.jpg
>

<image002.png>
211 W. Jefferson St. Syracuse, NY 13202    **sugarmanlaw.com**

**BRITTANY L HANNAH, ESQ.**    **Direct Dial:** (315) 362-8942    **Fax:** (315) 474-0235

E-MAIL CONFIDENTIALITY NOTICE: The contents of this e-mail message and any attachments are intended solely for the addressee(s) and may contain confidential and/or legally privileged information. If you are not the intended recipient of this message or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and any attachments. If you are not the intended recipient, you are notified that any use, dissemination, distribution, copying, or storage of this message or any attachment is strictly prohibited.

# EXHIBIT L

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

**ERIC C. MARTIN,**

<em>Plaintiff,</em>

**<u>SECOND REQUEST FOR
DOCUMENTS AND
DISCOVERY</u>**

**vs.**

**Index No.: 808523/2021**

**TOWN OF TONAWANDA POLICE DEPARTMENT
o/b/o THE TOWN OF TONAWANDA, SPEEDWAY LLC,
MARATHON PETROLEUM CORPORATION, and
JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8,**

<em>Defendants.</em>

Pursuant to Civil Practice Law and Rules, the Plaintiff hereby demands that
SPEEDWAY, LLC produce the following documents for copying and inspection, within
TWENTY (20) DAYS of service of this demand.

For the term document, please refer to the definition in our September 7, 2021 Request
for Documents and Discovery. With regard to any term deemed by the responding party as being
ambiguous or vague, a term shall be construed in its broadest sense to encompass all reasonable
definitions of that term.

1.      Video of Tonawanda Personnel and Speedway Employees viewing surveillance
video of the July 8, burglary on or about July 8, 2020, including the period July 6, 2020 – July
18, 2020.

2.      Video of Eric Martin's father, Eric Martin, taken at the time he was at the
Kenmore Avenue Speedway with a lottery ticket on or about July 10, 2020 and documents
referring or relating thereto.

3.      Documents and video referring or relating to Eric Martin, or Eric Martin's father,
Eric Martin, and protestors in the vicinity of the Speedway store Kenmore Ave., Tonawanda,
New York for the period July 8, 2020 to July 31, 2020.

4.    Documents referring or relating to the July 8, 2020 burglary including documents referring to the relative resolution, communication for court appearances, files, photographs, statements or other items.

Some or all of these items may have been requested in the September 7, 2021 Request for Documents and Discovery, however, please provide all items referring or relating to, the investigation of the sale, redemption, and arrest of Eric Martin, including recommended procedures, documents, emails, notations of Beth Marvel, Jessica Kimes, Sherry Sowrey, Mary Birdman, individuals employed involving security and risk management for the period July 8, 2020 to June 11, 2021.

Please identify with sufficient specificity those items deemed privileged or protected pursuant to CPLR 3122(b) along with a privilege log.

DATED:      March 15, 2022
            Buffalo, New York

**JOHN FEROLETO, ESQ.**
**FEROLETO LAW**
*Attorneys for Plaintiff*
438 Main Street, Suite 910
Buffalo, New York 14202
Telephone: (716) 854-0700

TO:    **BRITTANY L. HANNAH, ESQ.**
       **SUGARMAN LAW FIRM, LLP**
       *Attorneys for Speedway LLC*
       211 West Jefferson Street, Suite 20
       Syracuse, New York 13202
       Telephone: (315) 474-2943

CC.    **PAUL G. JOYCE, ESQ.**
       **MARC S. SMITH, ESQ.**
       **COLUCCI & GALLAHER, P.C.**
       *Attorneys for Defendant The Town of Tonawanda*
       *Police Department o/b/o The Town of Tonawanda*
       2000 Liberty Building
       424 Main Street
       Buffalo, New York 14202
       Telephone: (716) 853-4080

Case 1:23-cv-00419-WMS-MJR Document 1-25 Filed 05/11/23 Page 223 of 256

# EXHIBIT M

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

ERIC C. MARTIN,

                              Plaintiff,          **SPEEDWAY LLC'S RESPONSE
                                                  TO PLAINTIFF'S SECOND
                                                  REQUEST FOR DOCUMENTS
            vs.                                   AND DISCOVERY
                                                  INDEX NO. 808523/2021**
TOWN OF TONAWANDA POLICE DEPARTMENT
o/b/o TOWN OF TONAWANDA, SPEEDWAY, LLC,
MARATHON PETROLEUM CORPORATION and
JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8 as employees of
TOWN OF TONAWANDA POLICE DEPARTMENT,

                              Defendants.

Defendant, Speedway LLC, by and through its attorneys, Sugarman Law Firm, LLP,

hereby responds Plaintiff's Second Request for Documents and Discovery, dated March 15, 2022,

as follows:

### **General Objections**

By responding to these demands, Speedway does not concede the materiality of the subject

to which it refers.  Speedway's responses are made expressly subject to, and without waiving or

intending to waive any questions or objections as to the competency, relevance, materiality,

privilege, or admissibility as evidence or for any other purpose, of any of the documents or

information produced, or the subject matter thereof, in any proceeding including the trial or any

subsequent proceeding.

Speedway objects to the extent that plaintiff demands information and/or documents which

are protected by the attorney-client privilege or work-product privilege or which constitute

material prepared for litigation purposes.

Inadvertent production of any document or information which is privileged, was prepared in anticipation of litigation, or is otherwise immune from discovery, shall not constitute waiver of any privilege or of another ground for objecting to discovery, with respect to such document or information or the information contained in any document or of Speedway's right to object to the use of any such document or the information contained therein during any proceeding in this litigation or otherwise. Speedway also objects in the entirety to any request for documents that is not limited in time.

Speedway objects in the entirety to any request for information which is not in its possession, custody, or control.

Speedway is continuing to search for information responsive to plaintiff's demands and, therefore, reserves the right to supplement its response to each demand with additional information, if and when such information becomes available to Speedway's counsel. Speedway also reserves the right to object to the future disclosure of such information.

Speedway objects to these demands to the extent they exceed the scope of the CPLR or seek to impose obligations on Speedway beyond the requirements of those rules.

Speedway reserves the right to make any further applicable objection whether or not said objection is delineated above. The above objections in no way waive Speedway's right to make applicable objections as the course of the matter progresses.

### Responses

1.      Video of Tonawanda Personnel and Speedway Employees viewing surveillance video of the July 8, burglary on or about July 8, 2020, including the period July 6, 2020 – July 18, 2020.

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 226 of 256

**RESPONSE:** Objection.  Speedway objects to this Demand because it is overly broad and unduly burdensome because it is not limited to the issues in this case.  Speedway further objects to the extent it seeks information that is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving said objections, Speedway does not have any materials responsive to this Demand.

2.     Video of Eric Martin's father, Eric Martin, taken at the time he was at the Kenmore Avenue Speedway with a lottery ticket on or about July 10, 2020 and documents referring or relating thereto.

**RESPONSE:** Objection.  Speedway objects to this Demand because it is overly broad and unduly burdensome because it is not limited to the issues in this case.  Speedway further objects to the extent it seeks information that is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence.   Subject to and without waiving said objections, this Demand is nearly identical to Demand 6 in plaintiff's Request for Documents and Discovery, dated September 7, 2021, which Speedway responded to in Speedway LLC's Response to Request for Documents and Discovery, dated November 3, 2021.  Further responding, Speedway does not have any materials responsive to this Demand.

3.     Documents and video referring or relating to Eric Martin, or Eric Martin's father, Eric Martin, and protesters in the vicinity of the Speedway store Kenmore Ave., Tonawanda, New York for the period July 8, 2020 to July 31, 2020.

**RESPONSE:** Objection.  Speedway objects to this Demand because it is overly broad and unduly burdensome and because it is not limited to the issues in this case.  Speedway further objects to the extent it seeks information that is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving said objections, this

Demand is nearly identical to Demands 2, 6, and 11 in plaintiff's Request for Documents and Discovery, dated September 7, 2021, which Speedway responded to in Speedway LLC's Response to Request for Documents and Discovery, dated November 3, 2021. Further responding, Speedway does not have any additional materials responsive to this Demand.

4.      Documents referring or relating to the July 8, 2020 burglary including documents referring to the relative resolution, communication for court appearances, files, photographs, statements or other items.

**RESPONSE:** Objection. Speedway objects to this Demand because it is overly broad and unduly burdensome. Speedway further objects to the extent it seeks information that is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence. Speedway additionally objects to the extent it seeks information and documentation that is protected from disclosure by the attorney/client privilege and/or work product doctrine. Subject to and without waiving said objections, this Demand is nearly identical to Demand 5 in plaintiff's Request for Documents and Discovery, dated September 7, 2021, which Speedway responded to in Speedway LLC's Response to Request for Documents and Discovery, dated November 3, 2021. Further responding, any documents which may be responsive in Speedway's possession were provided with Speedway LLC's Response to Plaintiff's Omnibus Discovery Demands or will be provided subject to a fully executed and So Ordered Confidentiality and Protective Order, as discussed in Speedway LLC's Response to Request for Documents and Discovery, dated November 3, 2021, which has not been executed by plaintiff's counsel to date.

5.      Some or all of these items may have been requested in the September 7, 2021 Request for Documents and Discovery, however, please provide all items referring or relating to, the investigation of the sale, redemption, and arrest of Eric Martin, including recommended

Sugarman Law Firm, LLP • 211 West Jefferson Street • Syracuse, New York 13202

procedures, documents, emails, notations of Beth Marvel, Jessica Kimes, Sherry Sawrey, Mary Birdman, individuals employed involving security and risk management for the period July 8, 2020 to June 11, 2021.

**RESPONSE:** Objection. To the extent that this unnumbered paragraph is to be construed as a demand, Speedway objects to this Demand because it is overly broad and unduly burdensome. Speedway further objects to the extent it seeks information that is irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence. Speedway also objects because it is not limited to the relevant time period. Speedway additionally objects to the extent it seeks information and documentation that is protected from disclosure by the attorney/client privilege and/or work product doctrine. Subject to and without waiving said objections, as an initial response, Speedway did not employ individuals named Sherry Sowrey or Mary Birdman. Speedway assumes that you are referring to its former employees, Sherry Sowry and Mary Bergman. Further responding, Speedway's former employees Jessica Kimes and Mary Bergman were in Speedway's Law Department and any additional responsive documentation beyond what has been produced to date is protected from disclosure by the attorney/client privilege. Pursuant to CPLR 3122(b), Speedway asserts that the divulgence of a privilege log in response to this improper and highly objectional demand would cause disclosure of privileged information, especially because litigation was immediately anticipated. Therefore, Speedway will reconsider this position and provide a privilege log in response to a proper, specific, and reasonably tailored demand.

**DEFENDANT RESERVES THE RIGHT TO SUPPLEMENT AND/OR AMEND THE RESPONSES ABOVE AFTER THE COMPLETION OF DISCOVERY OR WITHIN A REASONABLE TIME PRIOR TO TRIAL**

Dated: May 6, 2022

Sugarman Law Firm, LLP • 211 West Jefferson Street • Syracuse, New York 13202



Brittany L. Hannah, Esq.
**SUGARMAN LAW FIRM, LLP**
*Attorneys for Speedway LLC*
Office and Post Office Address
211 West Jefferson Street
Syracuse, New York  13202
Telephone: 315-362-8942
bhannah@sugarmanlaw.com

TO:     John Feroleto, Esq.
        **FEROLETO LAW**
        *Attorneys for Plaintiff*
        Office and Post Office Address
        438 Main Street, Suite 910
        Buffalo, New York  14202
        Telephone: 716-854-0700
        John.feroleto@feroletolaw.com

CC:
        Paul G. Joyce, Esq., and
        Marc S. Smith, Esq.
        **COLUCCI & GALLAHER, P.C.**
        *Attorneys for the Town of Tonawanda Police Department*
        *o/b/o The Town of Tonawanda*
        Office and Post Office Address
        2000 Liberty Building
        424 Main Street
        Buffalo, New York 14202
        Telephone:  (716) 853-4080
        pjoyce@colucci-gallaher.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

ERIC C. MARTIN,

                                        Plaintiff,

        vs.

TOWN OF TONAWANDA POLICE DEPARTMENT
o/b/o TOWN OF TONAWANDA, SPEEDWAY, LLC,
MARATHON PETROLEUM CORPORATION and
JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8 as employees of
TOWN OF TONAWANDA POLICE DEPARTMENT,

                                        Defendants.

**AFFIDAVIT OF
BETH MARVEL
INDEX NO. 808523/2021**

STATE OF NEW YORK )

COUNTY OF ERIE ) ss:

        Beth Marvel, being duly sworn, deposes and says:

        1.      My name is Beth Marvel and I am a Lead Area Leader for 7-Eleven, Inc. and

Speedway LLC ("Speedway"). I have worked for Speedway since July 2019, when Speedway

acquired my former employer, NOCO. Before working at Speedway, I was a District Manager for

NOCO from August 2015 until July 2019. I had previously worked for NOCO in other positions

from September 2009 until August 2015.

        2.      At the time of the incident that is the subject of this lawsuit, I was a District Manager

for Speedway, and I worked with the Speedway Law Department in their investigation of this

incident.

        3.      The following information is based upon my personal knowledge unless otherwise

stated.

1

4.  Speedway has created an internal, proprietary Operations Manual and an internal, proprietary Lottery Operations Manual (collectively "Manuals") for use in its convenience store business. These Manuals have been drafted and routinely updated over many years. These Manuals are the result of the expenditure of significant worker hours and related wages. As such, Speedway's competitors could not duplicate these manuals without a similarly significant time and expense. Speedway considers its policies and procedures, along with the related web-based training, to be among the best in the convenience store industry.

5.  I am informed that Speedway has six Operations Manual policies that are routinely requested and produced in litigation *without* a confidentiality agreement: (i) Cleaning; (ii) Opening/Closing; (iii) Winterizing; (iv) Snow Shoveling; (v) Wet Floors/Slips, Trips and Falls; and (vi) General Safety Guidelines. Other than these six specific policies, Speedway considers the remaining portions of its Operations Manual and all of its Lottery Operations Manual to be confidential and proprietary business information.

6.  Speedway has taken steps to protect this information from dissemination to the public, including requiring a confidentiality agreement or protective order before producing such materials in litigation and in subpoena responses. Further, Speedway does not disclose these documents to non-employees in circumstances other than litigation and subpoena responses.

7.  Although Speedway employees receive training on and have online access to these policies during their employment, they are not provided with their own copies of the Manuals to keep. In addition, all new employees must agree to Speedway's Code of Business Conduct at the time of their hire. The Code of Business Conduct prohibits employees from disclosing non-public business information to anyone outside of Speedway unless the disclosure is specifically authorized.

2

FILED: ERIE COUNTY CLERK 08/25/2022 03:44 PM INDEX NO. 808523/2021
NYSCEF DOC. NO. 82 RECEIVED NYSCEF: 08/25/2022

Case 1:23-cv-00419-WMS-MJR Document 1-25 Filed 05/11/23 Page 232 of 256.

8.    I have been made aware of the specific documents that are currently being withheld in connection with this litigation until a confidentiality agreement is in place. Many of the Operations Manual policies that Plaintiff seeks are directly intended to discover how Speedway employees are instructed to react to criminal activities, including when and under what circumstances to contact the authorities. Indeed, several of the requested policies specify how employees are supposed to react (or not react) to various criminal activities, including drive-offs, robbery, shoplifting, and violent crime. The requested policies also provide details about the use of alarms and panic buttons. If such policies were made public, it could subject Speedway to increased criminal activity and could also endanger both employees and customers.

9.    Similarly, Speedway's Lottery Operations Manual addresses issues such as the timing for lottery counts, including back stock and where tickets are stored, and is kept confidential for security reasons, one of which is because lottery tickets and the proceeds of their sale are targets of theft.

10.    Furthermore, allowing Speedway's internal policies and procedures, and related training videos, to be used and shared outside of litigation could also result in an unfair advantage to Speedway's business competitors by allowing them to utilize knowledge of these policies to create or modify their own policies and training, instead of expending the required time and money as Speedway has done.

11.    Finally, I am aware that Plaintiff is also seeking "emails, statements, renditions, reports, memoranda, reports to risk management, claims individuals, [and] employees of Speedway with respect to Eric Martin" regarding the incident.

12.    Given the political climate in the summer of 2020 and the recurring violence and theft occurring at retailers across the country, including Speedway convenience stores, Speedway

3

immediately considered this incident one that would result in litigation. All internal investigative

documents and communications were specially prepared solely for that anticipated litigation. Such

documents were not and would not have been prepared in the ordinary course of business.

BETH MARVEL

Sworn to before me this
__24__ day of August, 2022.

Notary Public

SHERYL A SANDERSON
NOTARY PUBLIC-STATE OF NEW YORK
No. 01SA6376120
Qualified in Niagara County
My Commission Expires 06-04-2026

4

## WORD COUNT CERTIFICATION

### Pursuant to 22 NYCRR § 202.8-b

I hereby certify that the total number of words in the Affidavit inclusive of point headings

and footnotes, and exclusive of the caption, the table of contents, table of authorities, and

signature block, is 737 words, which complies with the word count limit.

Dated: August 25, 2022

_____
Cory J. Schoonmaker, Esq.
**SUGARMAN LAW FIRM, LLP**
*Attorneys for Speedway LLC*
Office and Post Office Address
211 West Jefferson Street
Syracuse, New York 13202
Telephone: 315-362-8941
cschoonmaker@sugarmanlaw.com

TO:

John Feroleto, Esq.
**FEROLETO LAW**
*Attorneys for Plaintiff*
Office and Post Office Address
438 Main Street, Suite 910
Buffalo, New York 14202
Telephone: 716-854-0700
John.feroleto@feroletolaw.com

CC:

Paul G. Joyce, Esq., and
Marc S. Smith, Esq.
**COLUCCI & GALLAHER, P.C.**
*Attorneys for the Town of Tonawanda Police Department*
*o/b/o The Town of Tonawanda*
Office and Post Office Address
2000 Liberty Building
424 Main Street
Buffalo, New York 14202
Telephone: (716) 853-4080
pjoyce@colucci-gallaher.com

6

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 235 of 256

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

---

ERIC C. MARTIN,

                              Plaintiff,

        vs.

TOWN OF TONAWANDA POLICE DEPARTMENT
o/b/o TOWN OF TONAWANDA, SPEEDWAY, LLC,
MARATHON PETROLEUM CORPORATION and
JOHN DOE #1, 2, 3, 4, 5, 6, 7, 8 as employees of
TOWN OF TONAWANDA POLICE DEPARTMENT,

                              Defendants.

**MEMORANDUM OF LAW**
**INDEX NO. 808523/2021**
**JUDGE:  NUGENT-PANEPINTO**

---

      Defendant, Speedway LLC ("Speedway"), respectfully submits the following Memorandum of Law in opposition to the motion of Plaintiff, Eric C. Martin ("Plaintiff"), to compel disclosure and in support of Speedway's cross-motion for a protective order and/or an order of confidentiality.  The relevant facts are set forth in the accompanying Attorney Affirmation of Cory J. Schoonmaker, Esq., dated August 25, 2022 ("Schoonmaker Affirmation"), and its exhibits, as well as in the accompanying Affidavit of Beth Marvel, sworn to on August 24, 2022 ("Marvel Affidavit").  For the reasons set forth below, Plaintiff is not entitled to an order compelling disclosure, and Speedway is entitled to a protective order, either conditioning the disclosure of such materials on Plaintiff executing a reasonable confidentiality agreement or directly ordering Plaintiff to keep such documents confidential.

1

## **LEGAL ARGUMENT**

**I.    SPEEDWAY IS ENTITLED TO A CONFIDENTIALITY AND PROTECTIVE ORDER BEFORE DISCLOSING ITS TRAINING AND POLICY MATERIALS, BOTH BECAUSE THEY CONSTITUTE TRADE SECRETS AND BECAUSE DISCLOSURE POSES A SECURITY RISK.**

Plaintiff argues that Speedway cannot insist on a confidentiality agreement. *See* Attorney Affirmation of John P. Feroleto, Esq., dated June 30, 2022 ("Feroleto Affirmation"), at ¶¶ 24-33. This argument is based almost entirely on generalized statements of public policy, precedent from other states, and hearsay periodical articles with no relevance to the actual issues in this case. *See id.* Contrary to Plaintiff's arguments, the documents Speedway has withheld, as described in Speedway's counsel's letter, dated November 15, 2021 (*see* Schoonmaker Affirmation, Exhibit F) constitute confidential trade secrets and unrestricted disclosure thereof also poses security risks to Speedway's personnel and customers.

CPLR 3103(a) authorizes a court, "at any time on its own initiative, or on motion of any party," to issue a "protective order denying, limiting, conditioning or regulating the use of any disclosure device . . . to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts."  This power authorizes a court to impose confidentiality restrictions on disclosed documents. *Finch, Pruyn & Co. Inc. v Niagara Paper Co., Inc.*, 228 AD3d 834, 837 (3d Dept 1996).

Importantly, confidentiality orders are not limited to trade secrets.  To the contrary, courts have imposed confidentiality restrictions on the public dissemination of disclosed documents based solely on the ground that disclosure posed a security risk. *See Blum v New York Stock Exch., Inc.*, 263 AD2d 522 (2d Dept 1999).  In *Blum*, the plaintiff sought documents about security and evacuation routes of New York Stock Exchange, Inc., a private entity. *Id.* at 523.  The Second Department held that the Supreme Court had improvidently exercised its discretion in refusing to

order the plaintiff to execute a confidentiality agreement, because the documentation sought could jeopardize the safety of the entity's employees if it was publicly disclosed. *Id.*

Here, the situation is similar to *Blum*. The thrust of Plaintiff's case is that Speedway's employee allegedly called the police when they should not have done so. *See* Schoonmaker Affirmation, Exhibit A, at ¶¶ 63-69. The documents Plaintiff seeks from Speedway directly relate to how Speedway trains its employees to respond to actual or supposed criminal activity, including when and under what circumstances they should call the police, and how Speedway handles stolen lottery tickets. *See* Feroleto Affirmation, Exhibit 1, at pp. 33-34 (at ¶ 7); *see* Feroleto Affirmation, Exhibit F. It is very easy to see how this information could pose a security risk if disseminated publicly. It is not a secret that convenience stores in general, and this Speedway location in particular, are targets of criminal activity, particularly with regard to lottery tickets. Indeed, this entire incident was precipitated by a burglary that resulted in the theft of lottery tickets the day before the incident that culminated in Plaintiff's arrest. *See* Feroleto Affirmation, Exhibit 1, p. 7 (Police Report, Supplement # 4). If the public were to discover when and under what circumstances Speedway employees are trained to call the police, there is a clear and substantial risk that individuals who come into possession of this information would be emboldened to commit crimes that would endanger Speedway's employees and customers.

Beth Marvel, a Lead Area Leader for 7-Eleven, Inc. and Speedway LLC, avers that there are very significant security concerns with permitting public dissemination of the information contained within those documents. *Id.* at ¶¶ 8-9. For example, the policies sought by Plaintiff discuss the use of alarms and panic buttons, when to call the authorities, and how to react (or not react) to criminal activities. *Id.* at ¶ 9. Allowing dissemination of this information to the public would likely place Speedway employees and customers in harm's way. This is a sufficient ground

3

to order a plaintiff not to disseminate certain documents disclosed in civil litigation. *See generally Blum*, 263 AD2d at 523.

Alternatively, confidentiality is appropriate in this case because the documents sought constitute trade secrets. Trade secrets under New York law are not limited to formulae and designs, but also include any "compilation of information . . . used in one's business, . . . which gives [one] an opportunity to obtain an advantage over competitors who do not know or use it." *Mann ex rel. Akst v Cooper Tire Co.*, 33 AD3d 24, 31 (1st Dept 2006). In order to establish that something is a trade secret, a party only needs to show that the documents contain information "not known by those outside the business, [and that the documents] were kept under lock and key, were the product of substantial effort and expense, and could not easily be acquired or duplicated." *Conley & Son Excavating Co., Ltd. v Delta Alliance, LLC*, 120 AD3d 1604, 1605 (4th Dept 2014). "The initial showing required to support an assertion that trade secrets would be revealed through discovery is minimal." *Jackson v Dow Chem. Co. Inc.*, 214 AD2d 827, 828 (3d Dept 1995). An affidavit from an employee or officer with personal knowledge is sufficient to meet this minimal burden. *Id.*; *see also Terwilliger v Max Co., Ltd.*, 64 AD3d 1232 (4th Dept 2009).

Once that burden is met, the party seeking disclosure must establish that the documents are "indispensable" to their case and are otherwise unavailable. *Id.* If the party seeking disclosure meets this burden, then they are entitled to disclosure, but that disclosure is still conditioned on a confidentiality agreement. *See Conley & Son Excavating Co., Ltd.* at 1605. In other words, once the documents are established to contain trade secrets, there is no outcome in which they are subject to disclosure without a confidentiality agreement or order in place.

The Affidavit of Beth Marvel, submitted herewith, is sufficient to meet Speedway's burden. She avers that Speedway's Operations Manual and Lottery Operations Manual are

proprietary documents that have taken many years to develop, at the expense of significant worker hours and the wages that accompanied those hours.  Marvel Affidavit, at ¶ 4.  She further avers that these documents, which in Speedway's opinion are among the best training materials in the industry, are not shared with the public, and Speedway's competitors could not duplicate them without a similarly significant time and expense.  *Id.* at ¶¶ 4-6.  Although Speedway employees are trained using these materials, the employees do not retain copies of the materials, and all employees agree when they are hired to keep that information confidential.  *Id.* at ¶ 7.

Consequently, Plaintiff's argument that the information contained in these documents is disseminated to Speedway's own employees is irrelevant.  As discussed above, Speedway must establish that the documents contain information "not known by those *outside the business*." *Conley & Son Excavating Co., Ltd.*, 120 AD3d at 1605.  It is not necessary for Speedway to show that it keeps this information secret from its own employees.  Certainly, Speedway is entitled to utilize and benefit from its own trade secrets.

Although some parts of Speedway's Operations Manual policies are not kept confidential, none of those non-confidential portions are at issue in this case.  *See* Marvel Affidavit, at ¶ 5. Speedway considers the portions of the Operations Manual that Plaintiff seeks and the entire Lottery Operations Manual confidential information, and they historically have not disclosed such documents without a confidentiality agreement in place.  *Id.* at ¶ 6.  In addition, Speedway's current and future competitors in the convenience store industry would gain an unfair financial advantage against Speedway if these documents were disclosed to the public.  This is because such competitors would be able to save the significant time and expense that would have been needed to duplicate such manuals or develop their own.  *Id.* at ¶ 10.

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 240 of 256

These statements are sufficient to establish Speedway's minimal burden to show that the documents it has withheld are trade secrets, because they contain information not known by those outside the business, were kept under lock and key, were the product of substantial effort and expense, and could not be easily acquired or duplicated. *See generally Conley & Son Excavating Co., Ltd.*, 120 AD3d at 1605. Thus, the documents withheld by Speedway constitute trade secrets and are not subject to disclosure absent a confidentiality agreement. *See generally id.*

Contrary to Plaintiff's assertions, the courts recognize that a confidentiality order is only a "minimal burden" to a plaintiff. *Blum*, 263 AD2d at 523. Plaintiff's attorney's concerns that such an agreement could create a cause of action against him or his experts is an unreasonable fear, particularly in light of Speedway's offer to execute a side agreement not to pursue a cause of action against Plaintiff's counsel or an expert for inadvertent violation of the confidentiality order. *See* Schoonmaker Affirmation, Exhibit K.

Under the circumstances set forth above, unrestricted disclosure of these documents would present a significant risk of "unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person." *See* CPLR 3103(a). Thus, if Plaintiff can establish that these documents are essential to his case, this Court should grant Speedway a protective order either compelling Plaintiff to execute a confidentiality agreement with Speedway to obtain these documents or imposing a confidentiality order directly. *See generally Finch, Pruyn & Co. Inc.*, 228 AD2d at 837.

## II.  PLAINTIFF'S REMAINING OBJECTIONS ARE IMPROPERLY RAISED BECAUSE THEY WERE NOT SUBJECT TO ANY GOOD FAITH ATTEMPTS TO AVOID MOTION PRACTICE.

Motions to compel disclosure are not intended to be casually filed as a matter of course, particularly under the current version of the Uniform Civil Rules for the Supreme Court and the

County Court.  Pursuant to 22 NYCRR 202.7(a), a motion relating to disclosure requires that the moving party's attorney has conferred with counsel for the opposing party in a good faith effort to resolve "the issues raised by the motion."  The motion papers must reference and describe "the time, place and nature of the consultation and the issues discussed and any resolutions, or shall indicate good cause why no such conferral with counsel for opposing parties was held."  22 NYCRR 202.7(c).  Even before the enactment of the current form of these Uniform Rules, the failure of a movant to establish that they made a diligent effort to resolve a particular discovery dispute before moving to compel was a ground to deny a motion to compel.  *See Amherst Synagogue v Schuele Paint Co., Inc.*, 30 AD3d 1055, 1057 (4th Dept 2006).

Plaintiff's motion papers are devoid of the recitation required by 22 NYCRR 202.7(c) or any equivalent language.  The only dispute that Plaintiff has attempted to resolve before bringing this motion is the issue of whether the parties will agree to a confidentiality and protective order ("CPO") protecting Speedway's confidential documents.  If Plaintiff's motion was limited to this issue, then perhaps Plaintiff's failure to comply with 22 NYCRR 202.7 would only be a technical defect and not a material one.  However, Plaintiff's motion is not limited to this issue.  Instead, he raises several objections to Speedway's responses to Plaintiff's Request for Documents and Discovery that he has never attempted to resolve before.

First, he references Speedway's response to Demand No. 2, in which Speedway asserted attorney/client and work product privileges, among other objections (although he does not actually make any arguments about this response).  *See* Feroleto Affirmation, at ¶¶ 35-37.  Second, Plaintiff disagrees with Speedway's assertion that it possesses no documents responsive to Demand No. 3 and speculates that Speedway must be withholding some documents responsive to that demand.  *Id.* at ¶¶ 38-40.  Third, Plaintiff objects to Speedway's response to Demand No. 7 on the bases that

Speedway has not provided any documents it allegedly received from the New York State Lottery or lottery vendors and disagrees with Speedway's objection to that demand as seeking irrelevant information. *Id.* at ¶¶ 41-45. Fourth, Plaintiff disagrees with Speedway's relevance objection to Demand No. 11, which seeks documents about protests that occurred after the events alleged in the Complaint. *Id.* at ¶¶ 46-49. Fifth, Plaintiff disagrees with Speedway's objection that Demand No. 12 is vague, overbroad, and seeks irrelevant information. *Id.* at ¶¶ 50-51. Sixth, Plaintiff disagrees with Speedway's assertion that all documents potentially responsive to Demand No. 10 are documents prepared solely in anticipation of litigation. *Id.* at ¶¶ 52-54.

Plaintiff's counsel has not provided any statement of his attempts to resolve these other disagreements in good faith before bringing this motion or good cause why he failed to attempt such a resolution, as required by 22 NYCRR 202.7(c). More importantly, except with regard to the CPO dispute, Plaintiff's counsel has made no effort to resolve these discovery disputes prior to bringing this motion. As such, Plaintiff has failed to meet a condition precedent to bringing this motion in regard to these objections, and these prongs of Plaintiff's motion should be denied without consideration. If this Court instead chooses to address these prongs of Plaintiff's motion on the merits, Speedway offers the arguments set forth below in opposition.

### III. PLAINTIFF'S ARGUMENTS REGARDING DEMAND NO. 2 DO NOT ARTICULATE ANY GROUNDS TO COMPEL DISCLOSURE, AND IN ANY EVENT, THAT DEMAND WAS OVERLY BROAD AND UNDULY BURDENSOME.

In Plaintiff's Demand No. 2, Plaintiff sought "[a]ll documents, notations, emails, reports, incident reports, statements, summaries, computer entries, computer stored information or data referring or relating to Eric C. Martin from the dates July 1, 2020 through June 29, 2021, including those between or among employees of Speedway, the New York State lottery, police agencies, or other third parties." Feroleto Affirmation, Exhibit 1, p. 33 (at ¶ 2). In response to this demand,

8

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 243 of 256

Speedway made several objections, including that it was "overly broad and unduly burdensome because it is not limited to the relevant time period and because it is not limited to the issues in this case," and that it sought irrelevant information. Feroleto Affirmation, Exhibit 2, p. 4 (at ¶ 2). Speedway further objected "to the extent" that the demand facially sought documents protected by the attorney-client communication privilege and/or the work product doctrine. *Id.* Notwithstanding these objections, Speedway still disclosed some documentation and referenced other documents previously disclosed that might be considered responsive. *Id.*

Plaintiff now includes a recitation of this demand and response under the heading "Outstanding Discovery" in his affirmation, although he inaccurately frames Speedway's response as solely an objection based on privilege. Feroleto Affirmation, at ¶¶ 35-37. To be clear, though, Plaintiff does not actually assert any arguments in connection with this demand and response. *See id.* As such, there are no arguments for Speedway to respond to in connection with Demand No. 2.

Given that Plaintiff notes only one of Speedway's objections to Demand No. 2, specifically Speedway's partial reliance on attorney-client privilege and work product protection, it seems as though Plaintiff may be arguing that Speedway improperly invoked those privileges. However, such an argument is insufficient to establish Plaintiff's entitlement to an order compelling disclosure because Speedway also made a number of other objections to Demand No. 2 that are currently unopposed by Plaintiff.

Speedway notes that it properly objected to this demand as overly broad and unduly burdensome, because on its face, the demand had no limitation restricting it to the issues in this case, and because Plaintiff sought documents from a week before the incident described in the Complaint through one year afterward. Feroleto Affirmation, Exhibit 2, p. 4 (at ¶ 2). As written,

9

Case 1:23-cv-00419-WMS-MJR Document 1-25 Filed 05/11/23 Page 244 of 256

this demand encompasses everything in Speedway's possession relating to Plaintiff, even if it had no relation to the issues in this case, and it extended almost a year beyond any events relevant to Plaintiff's claims. *See id.*

Although CPLR 3101(a) provides that "[t]here shall be full disclosure of all matters material and necessary in the prosecution or defense of an action, regardless of the burden of proof," "[a] party seeking discovery must satisfy the threshold requirement that the request is reasonably calculated to yield information that is 'material and necessary' - i.e., relevant ...". *See Forman v Henkin*, 30 NY3d 656, 661 (2018); *see also Matter of Kapon v Koch*, 23 NY3d 32 (2014). The right to disclosure is not unlimited. *See id.*

According to the Court of Appeals, "litigants are not without protection against unnecessarily onerous application of the discovery statutes . . . competing interests must always be balanced, [and] the need for discovery must be weighed against any special burden to be borne by the opposing party." *See Forman*, 30 NY3d at 662, quoting *Kavanagh v Ogden Allied Maintenance Corp.*, 92 NY2d 952, 954 (1998). In fact, "it is well settled that a party need not respond to discovery demands that are overbroad." *See Kregg v Maldonado*, 98 AD3d 1289, 1290 (4th Dept 2012). "Where discovery demands are overbroad, 'the appropriate remedy is to vacate the entire demand rather than to prune it.'" *See id.*, quoting *Board of Mgrs. of the Park Regent Condominium v Park Regent Assoc.*, 78 AD3d 752, 753 (2d Dept 2010). In light of the breadth and generality of Plaintiff's demand, Speedway was not required to respond to it at all. *See id.*

If Plaintiff's objection is indeed with Speedway's assertion of privilege, Plaintiff's lack of an articulated basis for this argument makes the nature of Plaintiff's objection with Speedway's response unclear. There is no reasonable dispute that the demand itself explicitly sought a category of documents that would necessarily contain indisputably privileged documents, such as all

10

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 245 of 256

communications with both in-house and outside counsel, and their attorney work product. The demand on its face sought all post-incident communications between Speedway employees and any third parties. Without any qualifying language limiting this demand to non-privileged documents, it was entirely reasonable and proper that Speedway would object "to the extent" that the demand directly sought such privileged materials. Plaintiff has made no argument that he did not seek these clearly privileged categories of document, and as such, he has asserted no basis to compel disclosure around this partial invocation of privilege.

Incidentally, should Plaintiff contend in reply that he is entitled to a privilege log listing each of the communications between Speedway and its in-house and outside attorneys, such an argument would be erroneous. No privilege log is required where "the party withholding the document states that divulgence of such information would cause disclosure of the allegedly privileged information." *See* CPLR 3122(b). Speedway made such a declaration in its response to Plaintiff's Second Request for Documents and Discovery. *See* Schoonmaker Affirmation, Exhibit M, p. 5.

For these reasons, Plaintiff's motion in this regard should be denied.[1]

## IV.  PLAINTIFF IS NOT ENTITLED TO AN ORDER COMPELLING PRODUCTION OF DOCUMENTS THAT DO NOT EXIST.

Two of the grounds for Plaintiff's motion involve improper demands for documents that *do not exist*. Specifically, Plaintiff first objects to Speedway's response to his demand seeking "[d]ocuments indicating the hierarchical structure of Speedway, including memoranda, schematics or flow charts for Western New York, job descriptions for Speedway personnel in Western New York, in effect during July, 2020." *See* Feroleto Affirmation, at ¶¶ 38-40 (discussing Demand No.

---

[1] Ultimately, should this Court reach this issue despite the absence of any prior effort by Plaintiff to resolve it, and should this Court disagree with Speedway's position herein, the proper remedy is not to order disclosure, but is instead merely to order the *in camera* production of the documents. *See Stephen v State*, 117 AD3d 820, 821 (2d Dept 2014).

11

Case 1:23-cv-00419-WMS-MJR Document 1-25 Filed 05/11/23 Page 246 of 256

3). Plaintiff similarly objects to Speedway's alleged failure to provide "information from the New York State lottery or lottery vendor" in connection with his demand for "instructions for employees to follow with respect to lottery tickets, lottery machines, the use of lottery machines codes and lottery machines" and "policies and procedures as to when to refer individuals to the New York State Lottery if there is a question regarding a lottery ticket." Feroleto Affirmation, at ¶¶ 41-45 (discussing a portion of Demand No. 7).

For both of these demands, however, Plaintiff has already been informed that no such documents exist. Speedway has no existing documents of the nature sought by Plaintiff in his Demand No. 3. Feroleto Affirmation, Exhibit 2, p. 4 (at ¶ 3). Furthermore, all of the instructions, policies, and procedures that Speedway has in its possession regarding the topics demanded by Plaintiff are Speedway-created documents. Schoonmaker Affirmation, Exhibit I, p. 1.

It is well-settled that "[a]lthough CPLR 3101(a) is to be interpreted liberally in favor of disclosure …, a party may not be compelled to produce information that does not exist or that he or she does not control or possess, nor may a party be compelled to create new documents." *Hawley v Hasgo Power Equip. Sales, Inc.*, 269 AD2d 804, 804 (4th Dept 2000). The right to document disclosure is limited to documents that are "preexisting and tangible." *Orzech v Smith*, 12 AD3d 1150, 1151 (4th Dept 2004), citing *Durham Med. Search, Inc. v Physicians Intl. Search, Inc.*, 122 AD2d 529, 529 (4th Dept 1986).

Since the items sought by Plaintiff do not exist and/or are not in Speedway's possession, that should be the end of the inquiry and Plaintiff's motion in this respect should be denied.

With regard to the documents described in Plaintiff's Demand No. 3 in particular, Plaintiff expresses skepticism that Speedway was telling the truth when it represented, through counsel, that such documents do not exist. Feroleto Affirmation, at ¶ 40. Plaintiff's baseless skepticism is

12

not a basis to compel disclosure. Moreover, even if the *information* sought is known to employees of Speedway, that does not give Plaintiff a ground to compel Speedway to compile the information into documents. *See generally Hawley*, 269 AD2d at 804.

With regard to documents allegedly created by the New York State Lottery and/or lottery vendors that Plaintiff seeks in Demand No. 7, Speedway is not in possession of any such documents, and thus, cannot be compelled to produce what it does not possess. *Sagiv v Gamache*, 26 AD3d 368, 369 (2d Dept 2006). If such documents even exist, they would be properly obtained through Plaintiff's use of a subpoena on the nonparty entity who actually does possess them. *See generally Seddon v Postigo*, 195 AD3d 1588, 1589 (4th Dept 2021).

## V.   PLAINTIFF'S DEMAND FOR PROTEST-RELATED MATERIALS IS ENTIRELY IRRELEVANT TO THE ISSUES IN THIS CASE.

Plaintiff also seeks "documents, videos, pictures, and depictions of protests in the vicinity of Speedway, 535 Kenmore Avenue, or within 200 feet of Speedway for the period July 7, 2020 through August 30, 2020." *See* Feroleto Affirmation, Exhibit 1, p. 35 (at ¶ 11). Speedway objected to this demand on the bases that it was overly broad, unduly burdensome, seeking irrelevant information, and is not reasonably calculated to lead to the discovery of admissible evidence. Feroleto Affirmation, Exhibit 2, p. 8 (at ¶ 11). Plaintiff now argues that this Court should compel Speedway to disclose such materials without articulating how those materials are at all relevant to Plaintiff's claims or damages.

Setting aside the fact that this demand is overly broad (discussed in greater detail below), upon information and belief, the evidence that Plaintiff is seeking via this demand is evidence related to protests that occurred supporting him after his arrest. Those protests, however, have nothing to do with the issues or damages in this case. The legal standard of relevance is simple - "'evidence is relevant when it logically renders the existence of a material fact more likely or

13

probable than it would be without the evidence.'" *Matter of Rockland County Dept. of Social Servs. v Brian McM.*, 193 AD2d 121, 124 (2d Dept 1993), quoting Richardson, Evidence § 4, at 3 (Prince 10th ed).

Plaintiff's Complaint alleges negligence and intentional conduct on the part of Defendants that culminated in his arrest on July 9, 2020 and subsequent confinement. *See* Schoonmaker Affirmation, Exhibit A. He also alleges some negligence "subsequent to" his arrest, apparently referring to the period of time between his arrest and release, where he alleges that Speedway allegedly "allowed" false charges to be maintained by the authorities. *See id.* at ¶¶ 72-74. He has made no allegations related to any protests that occurred, has not alleged that they increased his damages in any way, and has not asserted any facts from which such a connection could be inferred. *See generally* Schoonmaker Affirmation, Exhibit A. There is no logical connection between post-arrest protests and any facts material to this lawsuit. After-the-fact protests could not have caused the Defendants to be more or less culpable, and they could not have increased or decreased Plaintiff's damages.

Plaintiff attempts to assert the relevance of these protests to this litigation in a single paragraph. He argues,

> From the time Speedway failed to direct Mr. Martin to the New York State Lottery and following the arrest of Eric C. Martin, Speedway's actions and lack of actions are relevant to the harms and continued harms to Mr. Martin, and to Speedways [*sic.*] actions relating to constitutional claims. The discovery is relevant and also may lead to relevant information.

Feroleto Affirmation, ¶ 49. Notably, Plaintiff does not even refer to the protests in this argument, nor does he explain how the protests are relevant. He simply provides a conclusory and vague statement that "Speedway's actions and lack of actions" are relevant. He then fails to articulate how the protests are in any way relevant to Speedway's actions and lack of actions. He does not

14

identify any material fact that these protests would render more or less likely.  In short, he has failed to show that any protest-related materials are relevant or would lead to relevant evidence.  *See generally Matter of Rockland County Dept. of Social Servs.* , 193 AD2d at 124.  It should go without saying that, just because members of the public attended a protest, that fact does not actually make Plaintiff's claims more likely to be true.  This demand appears to be nothing more than an improper "fishing expedition."

In addition to the relevance objection, this demand is also overly broad on its face, and the proper remedy for such breadth is that Speedway need not offer any response to it.  *See generally Kregg*, 98 AD3d at 1289.  This demand is overly broad because it is not limited to protests relating to Plaintiff's arrest or the other events underlying this case.  Instead, this demand is so broad that any protest that could be seen on Speedway's security cameras for almost two months in the summer of 2020 would fall within its terms.  The demand is also not limited to images and videos. Thus, any email or other reference to any protest on any topic that passed by the store during these months would be encompassed by this demand.  Because this demand is overly broad in scope, Plaintiff's motion in this regard should be denied.  *See generally id.*

## VI.   PLAINTIFF'S DEMAND FOR WORK SCHEDULES AND WORKER IDENTITY INFORMATION WAS IMPROPER.

Plaintiff also challenges Speedway's response to Demand No. 12, which sought "[d]ocuments indicating the work schedule and identity of employees working at the Speedway location 535, Kenmore Avenue, Tonawanda, NY for the period June 20, 2020 through July 11, 2020."  Feroleto Affirmation, Exhibit 1, p. 35 (at ¶ 12).  Speedway responded by identifying the name and last known address of the Speedway employees who were on-duty on July 9, 2020, the date of Plaintiff's arrest.  Feroleto Affirmation, Exhibit 2, p. 9 (at ¶ 12).  Speedway otherwise objected on the bases that the demand was vague, overly broad, unduly burdensome, that it sought

15

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 250 of 256

irrelevant information, and that it was not proportional to the needs of the case. *Id.* Specifically, Speedway's objection was based on the fact that the demand was not limited to dates relevant to this lawsuit, and thus, it sought information about employees who were not even on duty at the time of the events described in the Complaint. *Id.* Now, Plaintiff argues for the first time that Speedway's response is inadequate, based solely on the conclusory assertion that "[w]ork schedule information is routinely provided in negligence matters involving retail establishments." Feroleto Affirmation, at ¶ 51. Such a generality has no bearing on whether the demands *in this case* were proper.

As discussed above, a party need not respond at all to a demand that is overly broad. *See Kregg*, 98 AD3d at 1290. The proper remedy is not to compel disclosure, but to vacate the demand without prejudice to serve a more narrowly-tailored demand seeking only relevant information. *See Battease v State*, 129 AD3d 1579, 1580 (4th Dept 2015).

The events that are described in Plaintiff's Complaint involving Speedway occurred on July 8th and 9th of 2020. *See* Schoonmaker Affirmation, Exhibit A, at ¶¶ 9-10. Plaintiff has demanded all documents that indicate either the work schedule *or the identity* of those employees who worked at that location for a period of three weeks surrounding those dates. There is no reason, articulated by Plaintiff or otherwise, that he should be entitled to the identifying information and work schedule of all Speedway employees at that location for any days other than the dates which he alleges in his Complaint. Moreover, although he now paints his request as merely for work schedules (*see* Feroleto Affirmation, at ¶ 51), his demand is broader than that. He has also demanded any documents indicating the identity of those employees. That would arguably include internal emails, security camera footage for a period of three weeks, employee files, pay stubs or other financial information, and any number of other types of miscellaneous

16

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 251 of 256

documents, revealing personal and identifying information for employees who are not at all connected to this case. Those employees, in particular, should not have to have their private information revealed simply because they work for Speedway. If all Plaintiff actually seeks is a work schedule for those dates that are actually relevant to this litigation, then his demand should have so stated. Plaintiff's motion should be denied in this regard, without prejudice to him serving more narrowly tailored, appropriate demands for relevant information. *See generally Battease*, 129 AD3d at 1580.

### VII. PLAINTIFF'S ARGUMENT THAT INVESTIGATIVE DOCUMENTS REGARDING HIS ARREST ARE MIXED PURPOSE REPORTS IS WITHOUT MERIT.

Plaintiff further demanded "[a]ll items to or from employees of Speedway, or third parties, including emails, statements, renditions, reports, memoranda, reports to risk management, claims individuals, employees of Speedway with respect to Eric Martin regarding the incident involving Eric Martin for the period July 1, 2020, through June 29, 2021." Feroleto Affirmation, Exhibit 1, p. 34 (at ¶ 10). In response, Speedway objected on several grounds, including that the demand was overly broad and unduly burdensome (because it is not limited to the relevant time period and because it is not limited to the issues in this case), that it sought irrelevant information, and that any responsive documentation that may exist was prepared in anticipation of litigation. Feroleto Affirmation, Exhibit 2, p. 8 (at ¶ 10). Now, Plaintiff for the first time argues that whatever documents Speedway is withholding must be mixed purpose documents, based only upon Plaintiff's counsel's speculation. Feroleto Affirmation, at ¶ 54.

Materials that were prepared in anticipation of litigation "may be obtained only upon a showing that the party seeking discovery has 'substantial need' for the materials and is unable to obtain the information through other means without 'undue hardship.'" *See Peralta v New York*

Case 1:23-cv-00419-WMS-MJR   Document 1-25   Filed 05/11/23   Page 252 of 256

*City Hous. Auth.*, 169 AD3d 1071, 1074 (2d Dept 2019), quoting CPLR 3101(d)(2).  The party opposing disclosure must first establish that the documents requested were prepared solely in anticipation of litigation, at which time the burden shifts to the party seeking disclosure to establish the elements of substantial need and undue hardship.  *See Color Dynamics, Inc. v Kemper Sys. Am., Inc.*, 186 AD3d 1024, 1025 (4th Dept 2020).

Here, the investigation Speedway performed into Plaintiff's incident was entirely performed with the anticipated goal of defending against an immediately expected litigation. Contrary to Plaintiff's argument, it is irrelevant whether Speedway might prepare reports and documents in the regular course of business for *other* incidents.  The events at issue here were immediately anticipated to result in litigation.  The events alleged in the Complaint involved a police response during the summer of 2020, in which the United States was experiencing a national spike in protests about police conduct.  Under the particular circumstances of this case, therefore, Speedway had the immediate (and correct) impression that litigation would be forthcoming, and immediately adopted a litigation footing with respect to Plaintiff's arrest.  Marvel Affidavit, at ¶ 12.  According to Beth Marvel, all investigations and documents pertaining to the events described in Plaintiff's Complaint were specially prepared in anticipation of litigation.  *Id.* at ¶ 12.

The "mixed purpose" case that Plaintiff relies upon, *Hawley v Travelers Indem. Co.*, 90 AD2d 684 (4th Dept 1982), is easily distinguishable.  That case involved the report of a fire expert hired by a fire insurance company.  *Id.* at 684.  The Court held that the report was not prepared solely in anticipation of litigation because it was created before the insurance company determined that it would disclaim coverage.  *Id.*  That case stands solely for the proposition that an insurance company's initial coverage investigation is not performed in anticipation of litigation because it might not disclaim coverage.  *See id.*  This is the same general fact pattern in Plaintiff's other cited

cases, *Landmark Ins. Co. v Beau Rivage Rest., Inc.*, 121 AD2d 98, 99 (2d Dept 1986); *New England Seafood of Amherst, Inc. v Travelers Cos.*, 84 AD2d 676, 677 (4th Dept 1981).

This case, however, is not about an insurance coverage dispute, and at no point in time was Speedway in the same position as an insurance company trying to decide whether to disclaim coverage. The cases Plaintiff relies upon are thus distinguishable. From the outset, the circumstances of the incident, as later described in the Complaint, caused Speedway to reasonably anticipate that it would be sued, and all actions taken in connection with this event were performed with an eye toward that litigation. Plaintiff's argument is based entirely upon the speculation that Speedway certainly must investigate crimes and prepare crime and injury reports in the regular course of business. It does not follow from that speculation, however, that Speedway did anything in the regular course of business in connection with this case in particular. There is certainly nothing unusual or improper about a party who prepares incident reports and performs investigations solely in anticipation of litigation. *See Matos v Akram & Jamal Meat Corp.*, 99 AD2d 527, 527 (2d Dept 1984).[2]

In any event, Plaintiff's arguments with regard to Demand No. 10 are academic because they focus on only one of Speedway's objections to this Demand and Plaintiff has failed to challenge Speedway's other objections, including that the demand is overly broad and unduly burdensome. That uncontested objection is a basis for Speedway not to respond to this Demand at all, because Speedway "need not respond to discovery demands that are overbroad" and "the appropriate remedy is to vacate the entire demand rather than to prune it." *Kregg*, 98 AD3d at 1290 (quotation marks omitted). Even if Plaintiff received a favorable ruling on whether the documents

---

[2] Furthermore, as with the discussion of other privileged documents, if this Court reaches this issue and disagrees with Speedway's position, the proper remedy is not to order disclosure but instead to conduct an *in camera* review. *See John Mezzalingua Assoc., LLC v Travelers Indem. Co.*, 178 AD3d 1413, 1416 (4th Dept 2019).

19

responsive to Demand No. 10 were prepared in anticipation of litigation, Speedway's other objections would be left unopposed.

## **CONCLUSION**

For the reasons set forth above, Plaintiff's motion to compel should be denied. With regard to those documents that have been withheld pending a confidentiality agreement and protective order, Speedway has established its entitlement to an order of confidentiality on the bases of security and trade secrets. With regard to all other objections raised in Plaintiff's motion, Plaintiff has not made an attempt to resolve those other disputes with Speedway prior to bringing this motion, and as such, those prongs of his motion should be denied. Should this Court reach those other objections, however, each of the arguments Plaintiff raises with respect to them is without merit and Plaintiff's motion should still be denied. Further, for the reasons set forth above, Speedway's cross-motion should be granted.

Dated: August 25, 2022

Cory J. Schoonmaker, Esq.
**SUGARMAN LAW FIRM, LLP**
*Attorneys for Speedway LLC*
Office and Post Office Address
211 West Jefferson Street
Syracuse, New York 13202
Telephone: 315-362-8941
cschoonmaker@sugarmanlaw.com

TO:

John Feroleto, Esq.
**FEROLETO LAW**
*Attorneys for Plaintiff*
Office and Post Office Address
438 Main Street, Suite 910
Buffalo, New York 14202
Telephone: 716-854-0700
John.feroleto@feroletolaw.com

20

FILED: ERIE COUNTY CLERK 08/25/2022 03:44 PM
NYSCEF DOC. NO. 83

INDEX NO. 808523/2021
RECEIVED NYSCEF: 08/25/2022

CC:

Paul G. Joyce, Esq., and
Marc S. Smith, Esq.
**COLUCCI & GALLAHER, P.C.**
*Attorneys for the Town of Tonawanda Police Department*
*o/b/o The Town of Tonawanda*
Office and Post Office Address
2000 Liberty Building
424 Main Street
Buffalo, New York 14202
Telephone:  (716) 853-4080
pjoyce@colucci-gallaher.com

21

WORD COUNT CERTIFICATION

Pursuant to 22 NYCRR § 202.8-b

I hereby certify that the total number of words in the Memorandum of Law, inclusive of point headings and footnotes, and exclusive of the caption, the table of contents, table of authorities, and signature block, is 6173 words, which complies with the word count limit.

Dated: August 25, 2022

_____
Cory J. Schoonmaker, Esq.
**SUGARMAN LAW FIRM, LLP**
*Attorneys for Speedway LLC*
Office and Post Office Address
211 West Jefferson Street
Syracuse, New York  13202
Telephone: 315-362-8941
cschoonmaker@sugarmanlaw.com

TO:

John Feroleto, Esq.
**FEROLETO LAW**
*Attorneys for Plaintiff*
Office and Post Office Address
438 Main Street, Suite 910
Buffalo, New York  14202
Telephone: 716-854-0700
John.feroleto@feroletolaw.com

CC:

Paul G. Joyce, Esq., and
Marc S. Smith, Esq.
**COLUCCI & GALLAHER, P.C.**
*Attorneys for the Town of Tonawanda Police Department*
*o/b/o The Town of Tonawanda*
Office and Post Office Address
2000 Liberty Building
424 Main Street
Buffalo, New York 14202
Telephone:  (716) 853-4080
pjoyce@colucci-gallaher.com

22